1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
                                        )  Case No. C 13-2965 SC
9                                       )
   SYNOPSYS, INC.                       )  ORDER GRANTING IN PART AND
10                                      )  DENYING IN PART DEFENDANT'S
              Plaintiff,                )  MOTION TO DISMISS
11                                      )
       v.                               )
12                                      )
   ATOPTECH, INC.                       )
13                                      )
              Defendant.                )
14                                      )
                                        )
15                                      )
                                        )
16 _____ )

17

18

19  **I.    INTRODUCTION**

20        Now before the Court is Defendant ATopTech, Inc.'s

21  ("Defendant") motion to dismiss Plaintiff Synopsys, Inc.'s

22  ("Plaintiff") complaint.  ECF Nos. 1 ("Compl."), 9 ("MTD").

23  Defendant moves in the alternative for a more definite statement.

24  The motion is fully briefed, ECF Nos. 24 ("Opp'n"), 32 ("Reply"),

25  and appropriate for decision without oral argument, Civ. L.R. 7-

26  1(b).  As explained below, the Court GRANTS Defendant's motion to

27  dismiss.

28  ///

**United States District Court**
For the Northern District of California

**II. BACKGROUND**

Plaintiff is an electronic design automation ("EDA") company. Compl. ¶ 2. It creates, manufactures, sells, and licenses products and services that enable circuit designers to create, model, and verify complex integrated circuit designs "from concept to silicon." Id. Among Plaintiff's products are a "static timing analysis tool" called "PrimeTime" and a piece of software called "IC Compiler." Id. ¶¶ 2, 16, 17, 39. PrimeTime "computes the expected timing of a digital circuit without requiring simulation." Id. ¶ 17. It includes "hundreds of . . . input formats and output formats" that "are proprietary to [Plaintiff] and are not part of any open format or standard." Id. ¶ 18. Plaintiff also owns an EDA company called Extreme DA Corporation ("Extreme DA"), the developer of a static timing analysis tool called "GoldTime." Id. ¶¶ 4, 20. GoldTime is similar to (and incorporates parts of) PrimeTime. Id. Plaintiff calls GoldTime and PrimeTime's software and documentation collectively the "Copyrighted Software," but does not make clear whether IC Compiler is included in that group. See id. ¶ 48.

The input formats, which Plaintiff sometimes calls a "command set," are used within larger "scripts" executed by PrimeTime. Id. ¶ 18. PrimeTime provides feedback to the user via output formats. Id. PrimeTime also supports a set of open-source commands ("Synopsys Design Constraints" or "SDC") that is separate from the compilation of Plaintiff-proprietary input formats and are used to provide a standard interface that developers can use to create products that are interoperable with PrimeTime or other SDC-compliant EDA tools. Id. ¶ 19. SDC is available under a free,

open-source license.  Id.

Plaintiff asserts that its input and output formats, scripts, and technical product documentation for the products described above are all confidential, proprietary trade secrets.  Id. ¶ 21. According to Plaintiff, for example, its software and documentation contain proprietary rights notices, and users of Plaintiff's software and documentation are governed by end-user license agreements ("EULAs") that restrict the users' access to and use of Plaintiff's materials.  Id. ¶¶ 21-22.  Plaintiff also uses a variety of physical and electronic security systems to protect its facilities, websites, computers, and communications systems.  Id. ¶ 22.  These protective measures include "access cards, password protection systems, encrypted communications technology and vendor, customer and employee non-disclosure agreements."  Id.

Plaintiff owns all rights to, and has obtained federal copyright registration for, the PrimeTime and GoldTime software and user documentation.  Id. ¶¶ 23-24; Compl. Exs. 1-5 ("Copyright Registrations").  Plaintiff also possesses several patents on technologies and techniques related to integrated circuit design. Id. ¶ 24; Exs. 6 ("'348 Patent"), 7 ("'941 Patent"), 8 ("'127 Patent"), 9 ("'967 Patent") (collectively the "Patents-in-Suit").

Defendant is an EDA company that develops tools for the physical design of integrated circuits at sixty-five nanometers and below.  Id. ¶ 3.  Among these tools are Defendant's "Aprisa" "place and route" tool and the "Apogee" "floor-planning" tool.  Id. Defendant entered two license agreements with Plaintiff: (1) a Connections Program License Agreement (the "CPLA"), and (2) a license agreement related to a method for parametric on-chip

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

variation (the "POCV License") (collectively the "License Agreements").  Id. ¶ 4.

Defendant had originally entered the CPLA with Extreme DA, for use of GoldTime, but Plaintiff acquired Extreme DA -- along with all of its intellectual property and rights under the CPLA -- in June 2010.  Id. ¶ 31.  The CPLA expired on February 15, 2013.  Id.  Under the CPLA, Defendant gained access to copies of GoldTime and its documentation (and, by extension, the parts of the PrimeTime software and documentation that were incorporated into GoldTime).  Id.  According to Plaintiff, the CPLA gave Defendant only a limited license to use GoldTime for "specific interoperability purposes."  Id. ¶ 33.  Under the CPLA, Defendant was forbidden from incorporating GoldTime into other software products, reverse-engineering GoldTime, copying GoldTime (including the input and output formats), and disclosing any confidential information provided under the CPLA.  Id.

Under the POCV License, Defendant gained a limited, non-exclusive license to Extreme DA's proprietary POCV technology, which included the '640 Patent.  Id. ¶ 34.  Defendant used this technology to test timing effects resulting from manufacturing-related variations in chips (e.g., variations related to process, voltage, or temperature effects during manufacturing).  Id.  As with the CPLA, Plaintiff obtained all of Extreme DA's rights to the POCV technology, including all of the rights under the POCV License.  Id.

Plaintiff alleges that while Defendant was receiving and using Plaintiff's confidential information pursuant to the License Agreements, Defendant "copied portions of the PrimeTime and

**United States District Court**
For the Northern District of California

GoldTime software and documentation into Aprisa user documentation and software." Id. ¶ 35. Plaintiff claims to possess "a small portion of Aprisa documentation -- provided by [Defendant] -- revealing that Aprisa includes proprietary PrimeTime and GoldTime input and output formats." Id. According to Plaintiff, "[t]his copying likely is widespread," as evidenced by Defendant's statements that Aprisa has "excellent correlation with sign-off timing" and "tight correlation" with Plaintiff's PrimeTime software. Id. ¶ 36. Plaintiff contends that "such correlation is not possible without copying significant portions of the PrimeTime software." Id.

Plaintiff also claims that Defendant "improperly accessed and stole other . . . proprietary documentation, by downloading such materials from [Plaintiff's] 'SolvNet' secure website without permission." Id. ¶ 37. SolvNet is a password-protected support website on which Plaintiff "hosts software, user guides, support documentation, and other materials for customers and partners with valid user IDs." Id. ¶ 38. Users who register for SolvNet passwords must abide by various agreements signed by their companies "regarding the confidential nature of all SolvNet content." Id. Plaintiff states that it discovered in 2013 that Defendant had accessed SolvNet and "engaged in unauthorized access to and downloading of articles, FAQs, and other documentation related to PrimeTime and [IC Compiler]." Id. ¶ 39. Plaintiff asserts that such access, downloading, and other use exceeded the scope of Defendant's licenses. Id. Plaintiff alleges that all of Defendant's activity here was undertaken for commercial gain and competitive advantage. Id. ¶ 40.

**United States District Court**
For the Northern District of California

1    Finally, Plaintiff states that on November 28, 2012, it

2  invoked "its rights to verify compliance under both [L]icense

3  [A]greements, and thereafter diligently worked to commence and

4  complete the audit." Id. ¶ 41. Plaintiff did so out of an

5  apparent fear that Defendant "wrongfully copied, used, and

6  disclosed portions of the PrimeTime and GoldTime software, and

7  otherwise breached the CPLA and POCV License Agreements." Id.

8  Plaintiff contends that for months it attempted to work with

9  Defendant to establish compliance with the License Agreements, but

10 that Defendant "systematically frustrated and obstructed the audit

11 process." Id. ¶ 42. On May 8, 2013, Plaintiff served Defendant

12 with a notice of default under the POCV License, which Plaintiff

13 contends also put Defendant on notice of Plaintiff's belief that

14 Defendant had "copied proprietary PrimeTime and GoldTime command

15 sets into Aprisa, in violation of the CPLA agreement and

16 [Plaintiff's] valuable intellectual property rights, including

17 those covered by [Plaintiff's] PrimeTime and GoldTime federal

18 copyright registrations." Id. ¶¶ 43-44.

19    Plaintiff set a June 10 deadline for the completion of its

20 audit. Id. ¶ 45. The deadline passed, and one week later

21 Plaintiff gave Defendant another opportunity to demonstrate "that

22 it had not copied and was in compliance with the license

23 agreements." Id. ¶ 46. Defendant has not done so. Id.

24    On the basis of these facts, Plaintiff asserts the following

25 twelve causes of action against Defendant:

26    (1)   copyright infringement under the Copyright Act, 17 U.S.C.

27          § 101 et seq.;

28    (2)   trade secret misappropriation under the California

1  Uniform Trade Secrets Act, Cal. Civ. Code § 3426 <u>et</u>

2  <u>seq.</u>;

3  (3)  four counts of patent infringement as to the '348, '941,

4  '127, and '967 Patents;

5  (4)  violation of the Federal Computer Fraud and Abuse Act

6  ("CFAA"), 18 U.S.C. § 1030(a)(2)(C);

7  (5)  violation of California Penal Code section 502(c)(2), the

8  California Comprehensive Data Access and Fraud Act

9  ("CDAFA");

10  (6)  unfair and unlawful competition under California's Unfair

11  Competition Law, Cal. Bus. & Prof. Code § 17200 <u>et</u>

12  <u>seq.</u>;

13  (7)  common law misappropriation;

14  (8)  breach of the CPLA; and

15  (9)  breach of the implied covenant of good faith and fair

16  dealing.

17  Defendant now moves to dismiss Plaintiff's complaint, arguing that

18  Plaintiff fails to state claims under any cause of action.

19

20  **III.      <u>LEGAL STANDARD</u>**

21      A motion to dismiss under Federal Rule of Civil Procedure

22  12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

23  <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

24  on the lack of a cognizable legal theory or the absence of

25  sufficient facts alleged under a cognizable legal theory."

26  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

27  1988).  "When there are well-pleaded factual allegations, a court

28  should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court
must accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions.  Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice."  <u>Id.</u> (citing <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007)).  The allegations made in a
complaint must be both "sufficiently detailed to give fair notice
to the opposing party of the nature of the claim so that the party
may effectively defend against it" and "sufficiently plausible"
such that "it is not unfair to require the opposing party to be
subjected to the expense of discovery."  <u>Starr v. Baca</u>, 652 F.3d
1202, 1216 (9th Cir. 2011).

**IV.  <u>DISCUSSION</u>**

As explained below, the Court dismisses Plaintiff's complaint
-- except portions of its copyright infringement and UCL claims --
with leave to amend.  In general, Plaintiff's pleadings are
impermissibly vague and conclusory.

**A.  <u>Copyright Infringement</u>**

A plaintiff claiming copyright infringement must plead: (1)
ownership of a valid copyright; and (2) that the defendant violated
the copyright owner's exclusive rights under the Copyright Act by
copying original elements of the work.  17 U.S.C. § 501(a) (2003);
<u>Feist Pubs., Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361
(1991); <u>Wash. Shoe Co. v. A-Z Sporting Goods, Inc.</u>, 704 F.3d 668,
674 (9th Cir. 2012).

Defendant argues that Plaintiff fails to allege facts

United States District Court
For the Northern District of California

8

**United States District Court**
For the Northern District of California

indicating access to or copying of any portion of the massive amount of source code and documentation of the Copyrighted Software. MTD at 6. Further, Defendant contends that Plaintiff's sole point of specificity as to what Defendant allegedly copied -- Plaintiff's input and output formats -- is insufficient not only because Plaintiff does not specify which formats Defendant copied, but also because copyright does not extend to executable software methods, systems, or processes so long as the line-by-line source code is different, though this is necessarily a fact-dependent conclusion. Id. at 7-8 (citing Oracle Am., Inc. v. Google Inc., 872 F. Supp. 2d 974, 1000 (N.D. Cal. 2012)). Finally, Defendant claims that Plaintiff's allegations are mere speculation, since Plaintiff pleads that "copying likely is widespread" due to Defendant's advertisements that its software has, for example, a "tight correlation" with Plaintiff's software. Id. at 8.

Plaintiff responds that all it must do to survive a motion to dismiss its claim for copyright infringement is to allege ownership and infringement. Opp'n at 3-4. Plaintiff asserts that it did so, providing its copyright registrations and pleading that Defendant had access to the Copyrighted Software and improperly incorporated parts of it into its own software, Aprisa. Id. Plaintiff contends that the "correlation" of Defendant's software with Plaintiff's would not be possible without copying "significant portions" of PrimeTime, and that this is not mere speculation. Id. Plaintiff also claims that it need not plead with particularity either what parts of its own software were copied, or what of Defendant's software actually infringed. Id. Requiring such specificity,

1  according to Plaintiff, would raise factual issues not appropriate

2  for the pleading stage.  Id. at 4-5.

3     The Court finds for Defendant on this point, except as to the

4  input and output formats that Plaintiff claims Defendant infringed

5  in the Aprisa software and documentation.  Apart from those works,

6  discussed below, Plaintiff never makes clear what Defendant copied,

7  which makes it impossible for the Court to find Plaintiff's claim

8  plausible.  Plaintiff alleges simply that Defendant had access to,

9  copied, and prepared derivative works based on the Copyrighted

10 Software, in contravention of the CPLA.  Compl. ¶¶ 32-33, 38-39,

11 51.  Plaintiff asserts that this pleading is enough, as is its

12 allegation that Defendant's quotations about correlation support an

13 inference of copying.  See Opp'n at 3-4 (citing Compl. ¶ 36).

14 However, Plaintiff muddles this claim by also asserting that parts

15 of its software and documentation are open-source, which makes its

16 contention that essentially all of its materials are under

17 Plaintiff's copyright protection less plausible.  Plaintiff further

18 hamstrings its complaint by simply speculating on how widespread

19 the copying may be, without describing any acts or works that

20 infringe Plaintiff's Copyrighted Software.  See Compl. ¶¶ 35-36,

21 47-55.  Plaintiff need not reach any heightened level of

22 particularity for its copyright claims, but those claims must be

23 plausible under Rule 8, Twombly, and Iqbal.  See, e.g., Richtek

24 Tech. Corp. v. UPI Semiconductor Corp., No. 09-05659 WHA, 2011 WL

25 166198, at *3 (N.D. Cal. Jan. 18, 2011) (dismissing copyright

26 infringement claim for failure to identify acts and works

27 constituting infringement); Salt Optics, Inc. v. Jand, Inc., No.

28 SACV 10-0828 DOC, 2010 WL 4961702, at *6 (N.D. Cal. Nov. 19, 2010).

United States District Court
For the Northern District of California

1   Plaintiff must plead some non-speculative facts about what

2   Defendant infringed and how.  Accordingly, Plaintiff's copyright

3   infringement claim is DISMISSED with leave to amend, except as to

4   the input and output formats allegedly contained in Defendant's

5   Aprisa software and documentation.

6       Plaintiff's claim as to those formats is sufficient to state a

7   claim at this point.  See Compl. ¶ 35.  Plaintiff states, in full,

8   "Synopsys is in possession of a small portion of Aprisa

9   documentation -- provided by ATopTech -- revealing that Aprisa

10  includes proprietary PrimeTime and GoldTime input and output

11  formats."  Id.  Since Plaintiff has specifically asserted that

12  these input and output formats from PrimeTime and GoldTime

13  documentation are copyrighted and were duplicated in Defendant's

14  materials, this portion of the complaint is sufficient enough,

15  taken as true, for Plaintiff to state a claim for copyright

16  infringement based on that limited set of materials.

17      On this point, Defendant contends that the Court should find

18  as a matter of law that the input and output formats are not

19  protected under copyright, citing the decision in Oracle v. Google,

20  872 F. Supp. 2d at 997, in support of this contention.  That

21  decision came at the end of a long bench trial, and the facts as to

22  the input and output formats in that case had been fully developed

23  on the record.  See id. at 997-98.  At the pleading stage, the

24  Court declines to make a finding as a matter of law as to input and

25  output formats in general.  This holding does not, of course,

26  preclude Defendant from making a later motion on this matter.

27      Plaintiff's copyright infringement claim based on alleged

28  infringement of Plaintiff's input and output formats in Defendant's

11

1  Aprisa software and documentation is undisturbed.  The rest of the

2  claim is DISMISSED with leave to amend.

3         **B.    Trade Secret Misappropriation**

4         To plead a claim for trade secret misappropriation under the

5  California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §

6  3426 et seq., a plaintiff must assert (1) the existence of a trade

7  secret, and (2) misappropriation of the trade secret.  See, e.g.,

8  DocMagic, Inc. v. Ellie Mae, Inc., 745 F. Supp. 2d 1119, 1145 (N.D.

9  Cal. 2010); Cal. Civ. Code § 3426.1(b).  A trade secret is

10 "information, including a formula, pattern, compilation, program,

11 device, method, technique, or process, that: (1) derives

12 independent economic value, actual or potential, from not being

13 generally known to the public or to other persons who can obtain

14 economic value from its disclosure or use; and (2) is the subject

15 of efforts that are reasonable under the circumstances to maintain

16 its secrecy."  Cal. Civ. Code § 3426.1.

17
      Before a defendant is compelled to respond to a complaint
18    upon claimed misappropriation or misuse of a trade secret
      and to embark on discovery which may be both prolonged
19    and expensive, the complainant should describe the
      subject matter of the trade secret with sufficient
20    particularity to separate it from matters of general
      knowledge in the trade or of special knowledge of those
21    persons who are skilled in the trade, and to permit the
      defendant to ascertain at least the boundaries within
22    which the secret lies.

23

24 Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253 (Cal. Ct. App.

25 1968).[1]  A plaintiff alleging trade secret misappropriation need

26 _____

27 [1] Plaintiff argues that Diodes is inapposite because it predates
   CUTSA and a later codification of a rule moving the obligation to
   identify the precise trade secrets from the pleading stage to the
28 discovery stage.  See Opp'n at 7.  The Court is not convinced on
   this point: "[F]ederal courts in the Ninth Circuit look to Diodes

United States District Court
For the Northern District of California

1  not "spell out the details of the trade secret" but must identify

2  the trade secret with sufficient particularity to give defendants

3  "reasonable notice of the issues which must be met at the time of

4  trial and to provide reasonable guidance in ascertaining the scope

5  of appropriate discovery."  Id. at 252-53.

6       Defendant argues that Plaintiff neither identifies any trade

7  secrets nor pleads facts that Defendant acquired a trade secret

8  through "improper means" or other circumstances that would give

9  rise to CUTSA liability.  MTD at 8.  According to Defendant,

10  Plaintiff's complaint simply points to everything Plaintiff has

11  created and claims everything is a trade secret.  See id. at 9

12  (citing Compl. ¶¶ 18, 21-22, 33-35, 37-38, 40, 42, 44).  Further,

13  Defendant claims that because Plaintiff deposited its documentation

14  with the Copyright Office, that material would no longer constitute

15  trade secrets because such deposits are public.  Id.

16       Plaintiff responds that its complaint specifically identifies

17  the misappropriated trade secrets as information disclosed and

18  subject matter claimed in Plaintiff's several copyright

19  registrations, including all of the material related to PrimeTime,

20  IC Compiler, GoldTime, and their documentation.  Id. at 6-7 (citing

21  Compl. ¶¶ 16-18, 20-21, 24-30, 39).  Plaintiff then argues that it

22  did allege that Defendant used improper means to acquire the trade

23  secrets, since it pled that Defendant breached the parts of the

24  License Agreements that forbid it from incorporating Copyrighted

25  Software into its own products and from disclosing confidential

26

27  for guidance on the applicable pleading standard for claims brought
   under the CUTSA."  Pellerin v. Honeywell, Int'l, Inc., 877 F. Supp.
   2d 983, 988 n.1 (S.D. Cal. 2012); see also Farhang v. Indian Inst.

28  of Tech., Kharagpur, No. 08-02658 RMW, 2010 WL 2228936, at *13
   (citing Diodes, 260 Cal. App. 2d at 253).

United States District Court
For the Northern District of California

1   information under the License Agreements.  Id. at 8 (citing Compl.

2   ¶ 33).  Plaintiff also notes that it alleged that Defendant

3   "improperly accessed and stole other . . . proprietary

4   documentation by downloading such materials from [Plaintiff's]

5   'SolvNet' secure website without permission."  Id. (quoting Compl.

6   ¶ 37).  Plaintiff further states that it took reasonable measures

7   to protect its trade secrets' secrecy by redacting source code

8   submissions from its Copyright Office filings and employing

9   confidentiality agreements, but Plaintiff contends that in any

10  event, this would be a factual issue inappropriate for resolution

11  on a motion to dismiss.  Id. at 8-9.

12      The Court finds for Defendant on this point.  First,

13  Plaintiff's complaint is impermissibly conclusory.  For instance,

14  Plaintiff alleges that "its trade secrets at issue in this case,

15  which [have] been copied and misappropriated by [Defendant],

16  relates to [Plaintiff's] PrimeTime, GoldTime, and IC Compiler

17  products.  Such information includes [Plaintiff's] proprietary

18  input and output formats, scripts, and technical product

19  documentation, which generally are not publicly known, and derive

20  value from being secret."  Compl. ¶ 21.  Other pleadings refer

21  explicitly to Plaintiff's publicly available patents, which

22  Plaintiff improperly refers to as trade secrets.  See Opp'n at 7

23  (citing Compl. ¶¶ 25-29).[2]  These are conclusions of law disguised

24  _____

25  [2] Farhang held that a patent application cited in an otherwise
    vague pleading regarding trade secrets could give reasonable notice
    of the scope of a purported trade secret.  See 2010 WL 2228936, at
26  *13.  However, the patent applications in Farhang were unpublished
    and not publicly available.  Plaintiff's patents have issued and
27  been published.  "[I]t is well established that disclosure of a
    trade secret in a patent places the information comprising the
    secret into the public domain.  Once the information is in the
28  public domain and the element of secrecy is gone, the trade secret

United States District Court
For the Northern District of California

as factual pleadings, and they do not state claims under <u>Twombly</u> and <u>Iqbal</u>.  Materials are not trade secrets just because Plaintiff says they are: there must be some minimally plausible factual explanation for why trade secret protection applies.

Second, it is impossible for the Court, let alone Defendant, to determine where trade secret protection begins and ends as to any of this material (e.g., non-redacted portions of public documents, open-source code, and so forth).  Plaintiff's complaint is too sweeping and vague for Defendant to be on notice of what trade secrets are at issue and where the boundary between those secrets and general knowledge might lie.  <u>See</u> <u>Farhang</u>, 2010 WL 2228936, at *13 (citing <u>Diodes</u>, 260 Cal. App. 2d at 253).

Plaintiff does refer, as in its copyright infringement claim, to "input and output formats" being protected trade secrets, <u>see</u> ¶¶ 18-21, which is an iota more precise than the rest of Plaintiff's claims, but the Court finds that Plaintiff's pleading as to how these formats are protected by trade secret law are impermissibly conclusory.  Plaintiff need not spell out every detail of its trade secrets, but its vague references to an enormous array of potential sources do not suffice to survive Defendant's motion to dismiss.  On this point, unlike in Plaintiff's copyright claim, more is necessary.  For example, examining the manuals filed under seal, the Court cannot determine which parts of Plaintiff's code and documentation are supposed to be trade secrets and which parts are publicly available, open source commands.  <u>See, e.g.</u>, Compl. ¶ 19

is extinguished . . . ." <u>Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.</u>, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (citation and quotations omitted).

**United States District Court**
For the Northern District of California

(PrimeTime includes open source commands that are distinct from Plaintiff's proprietary code).

As to the question of whether Plaintiff's Copyright Office filings are covered by trade secret protection, the Court cannot make a broad finding at this point.  If Plaintiff filed unredacted material and now claims that material as trade secrets, Plaintiff's claims fail, since that material is publicly accessible.  See, e.g., KEMA, Inc. v. Koperwhats, No. C-09-1587 MMC, 2010 WL 726640, at *4 (N.D. Cal. Mar. 1, 2010) (holding that source code filed with the Copyright Office and not redacted can destroy secrecy required under California trade secret law).  Plaintiff argues that the Copyright Office restricts access to deposited material, but that is not quite true: the Copyright Office indeed places restrictions on requests for reproductions, 37 C.F.R. § 202.20(d), but the same restrictions do not necessarily apply to access and inspection.  See 17 U.S.C. § 705(b); see also 37 C.F.R. § 201.2(b)(1) (providing for public "inspection [at the Copyright Office] of . . . material deposited in connection with a completed copyright registration").  The Court cannot as a matter of law say that restrictions on copying will necessarily protect all publicly filed documents, when those documents are readily accessible for public inspection.  See KEMA, 2010 WL 726640, at *4.  Plaintiff claims that it redacted some of its source code from the Copyright Office filings, which could serve to protect trade secrets in some cases, 37 C.F.R. § 202.20(c)(2)(vii), but without even slightly more detailed pleadings the Court cannot determine which parts of Plaintiff's publicly filed materials may be trade secrets and which are not.

Plaintiff's pleadings, unsupported by more facts, fail to provide a reasonable basis for inferring that the formats are protected by trade secret law and therefore fail to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. Plaintiff's trade secret misappropriation claim is DISMISSED with leave to amend, per the guidelines given above.  If Plaintiff is concerned about maintaining its trade secrets' confidentiality, Plaintiff may identify the alleged trade secrets in a sealed filing.

### C.   <u>Common Law Misappropriation</u>

Plaintiff asserts a claim for common law misappropriation based on the allegation that Defendant improperly acquired, used, and disclosed Plaintiff's Copyrighted Software and confidential and proprietary information, including materials accessed and downloaded from SolvNet.  Compl. ¶¶ 113-118.  Plaintiff makes this claim in the alternative, "[t]o the extent that any portion of [its] Copyrighted Software is found not to be protectable under copyright or found not to be protectable trade secrets."  <u>Id.</u> ¶ 113.

First, Defendant argues that this claim is preempted by CUTSA because CUTSA preempts claims "based on the same nucleus of operative facts" as trade secret claims, regardless of whether the material in question meets the definition of a trade secret.  MTD at 12 (citing <u>K.C. Multimedia, Inc. v. Bank of America Tech. & Ops., Inc.</u>, 171 Cal. App. 4th 939, 962 (Cal. Ct. App. 2009); <u>SunPower Corp. v. SolarCity Corp.</u>, No. 12-CV-694 LHK, 2012 WL 6160472, at *4-6 (N.D. Cal. Dec. 11, 2012)).  Second, Defendant contends that the Copyright Act preempts this claim, since the

United States District Court

For the Northern District of California

Copyright Act preempts state law causes of action if the work involved falls within the Copyright Act's subject matter and the rights the plaintiff asserts under state law are equivalent to those established in the Copyright Act.  MTD at 13 (citing 17 U.S.C. § 301(a)).

Plaintiff responds that neither statute preempts its common law misappropriation claim.  Opp'n at 9-10.  First, Plaintiff argues that preemption is a factual issue inappropriate for resolution at this stage, and that in any event, the facts at issue under the common law misappropriation claim are different from the ones supporting the trade secret misappropriation claim.  Id. at 10-11.  Second, Plaintiff argues that the Copyright Act does not preempt the common law misappropriation claim because that cause of action contains an "extra element" beyond what copyright law requires: breach of a confidential relationship.  Id. at 11-12.  As to both statutory preemption theories, Plaintiff argues that this claim must survive in any event because Plaintiff pled it in the alternative.  Id. at 10-12.

The Court does not need to reach the copyright preemption issue, because the Court finds that CUTSA preempts Plaintiff's common law misappropriation claim.  As a threshold matter, the Court does not find this to be an inappropriate factual dispute. It is a pleading issue and is therefore entirely appropriate for resolution on a Rule 12(b)(6) motion.  See SunPower, 2012 WL 6160472, at *4-6 (resolving a similar dispute on the pleadings). Moreover, preempted claims are not saved from preemption just because they are pled in the alternative.  Lewis v. Activision Blizzard, Inc., C 12-1096 CW, 2012 WL 5199505, at *4 (N.D. Cal.

United States District Court
For the Northern District of California

Oct. 22, 2012).  In this case, as explained below, even if the Court had found that portions of the Copyrighted Software were not protectable under copyright or trade secret law -- which it did not, as those dismissals were on pleading grounds -- Plaintiff's claim would still be preempted.

In reference to preemption:

> The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b) focuses on whether other claims are not more than a restatement of the same operative facts supporting trade secret misappropriation . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim.

Farmers Ins. Exch. v. Steele Ins. Agency, Inc., No. 2:13-CV-00784-MCE-DAD, 2013 WL 3872950, at *7 (E.D. Cal. July 25, 2013) (quoting Convolve, Inc. v. Compaq Comp. Corp., No. 00 CV 5141(GBD), 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006) (internal quotations omitted) (applying California law)).

Plaintiff's argument on this point is that its common law misappropriation claim is based on a different set of facts than its CUTSA claim.  Opp'n at 10.  Plaintiff contends that its common law misappropriation claim covers "additional proprietary technical documents from SovlNet, materials which are not alleged to comprise [Plaintiff's] misappropriation claim under CUTSA." Id. at 11.  The Court cannot discern this distinction from the pleadings.

Plaintiff's trade secret misappropriation claim, Compl. ¶¶ 57-65, is so vague that it appears to encompass just about every piece of material Plaintiff has ever created or acquired, leading that claim to bleed into its common law misappropriation claim to the

19

United States District Court
For the Northern District of California

1  point that the two become indistinct and overlapping. Plaintiff's
2  CUTSA claim refers only to "trade secrets," which Plaintiff
3  indiscriminately defines throughout its complaint as (so far as the
4  Court can tell) code and documentation related to PrimeTime,
5  GoldTime, and IC Compiler, all of which -- except the IC Compiler
6  material -- would appear to be part of Plaintiff's Copyrighted
7  Software. See, e.g., id. ¶¶ 18-21, 41-44. Plaintiff alleges its
8  common law misappropriation claim in terms of its "Copyrighted
9  Software and confidential and proprietary information, including
10 those materials improperly accessed and downloaded from SolvNet."
11 See id. ¶¶ 113-114. Plaintiff contends that the SolvNet materials
12 were different from those at issue in the CUTSA misappropriation
13 claim, but while SolvNet may not be mentioned specifically in
14 Plaintiff's trade secret sections, throughout the complaint
15 Plaintiff never distinguishes the material on SolvNet from anything
16 else it claims to be a protected work. See, e.g., Compl. ¶¶ 37-40.
17 This all suggests that Plaintiff's trade secret and common law
18 misappropriation claims concern the same material.

19     The Court can therefore see no distinction between those two
20 claims, except that Plaintiff pled the common law misappropriation
21 claim in the alternative. Absent any real distinction among any of
22 Plaintiff's allegations, this pleading distinction is meaningless:
23 there is no way to distinguish Plaintiff's common law
24 misappropriation claim from its CUTSA claim. They are based on the
25 same facts. CUTSA preempts this claim. It is therefore DISMISSED
26 with leave to amend, if Plaintiff can distinguish it from its trade
27 secret misappropriation claim.
28 ///

**United States District Court**
For the Northern District of California

D.    **CFAA**

The CFAA, 18 U.S.C. § 1030 <u>et seq.</u>, establishes both civil and criminal causes of action for an array of activities concerning "protected computers," defined in relevant part as computers that are "used in or affecting interstate or foreign commerce or communication." <u>Id.</u> § 1030(e)(2).  The CFAA is "designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to access and control high technology processes vital to our everyday lives." <u>LVRC Holdings LLC v. Brekka</u>, 581 F.3d 1127, 1130 (9th Cir. 2009).  The Ninth Circuit has recently made clear that the CFAA is not meant to serve as a supplement or replacement for misappropriation claims. <u>United States v. Nosal</u>, 676 F.3d 854, 862-63 (9th Cir. 2012) (en banc).

To prevail in a civil action under the CFAA, "a private plaintiff must prove that the defendant violated one of the provisions of [section] 1030(a)(1)-(7), and that the violation involved [among other things, loss to one or more persons during any one year period . . . aggregating at least $5,000 in value]." <u>Brekka</u>, 581 F.3d at 1131.

Plaintiff alleges that Defendant violated section 1030(a)(2)(C) of the CFAA.  Compl. ¶ 95.  That section prohibits "intentionally access[ing] a computer without authorization or exceeds authorized access, and thereby obtain[ing] . . . information from any protected computer."  18 U.S.C. § 1030(a)(2)(C).  Defendant contends that Plaintiff's CFAA claim, Compl. ¶¶ 95-98, is deficient because the Ninth Circuit has made clear that the CFAA, meant to target malicious hackers, prohibits

unauthorized access but not unauthorized use, which is what Plaintiff's complaint charges.  See MTD at 14-15.  Defendant also argues that Plaintiff equivocates between allegations of "unauthorized" access versus "exceeded authorized access," which Defendant contends is legally significant; that Plaintiff pled no facts about Defendant's alleged access to Plaintiff's computer network SolvNet; and that Plaintiff's allegations describe legally insufficient violations of use restrictions rather than violations of access prohibitions.  Id. at 15.  Plaintiff contends that its license agreement and other agreements, like its privacy policy, were sufficient to restrict Defendant's "access" to SolvNet.  See Opp'n at 17 (citing Compl. ¶¶ 37-39, 94-98).

Defendant relies in large part on Nosal, 676 F.3d at 854, in which the Ninth Circuit held that the CFAA applied narrowly to punish hacking ("the circumvention of technological access barriers"), not the misappropriation of trade secrets or contravention of use policies.  676 F.3d at 863.  In Nosal, employees of an executive search firm used their authorized log-in credentials to download proprietary information from a confidential database on their employer's computer system, and then transferred that information to a competitor, in violation of their employer's use restrictions on the disclosure of confidential information to third parties or using confidential information for any purpose except company business.  See id. at 856.  The Ninth Circuit held that the CFAA prohibits only the unauthorized procurement or alteration of information, not its misuse or appropriation, and therefore the phrase "exceeds authorized access" in the CFAA "does not extend to violations of use restrictions."  Id. at 863-64.

**United States District Court**
For the Northern District of California

1    Plaintiff responds that Defendant's reliance on <u>Nosal</u> is

2    misplaced because, while that case admittedly distinguished access

3    from use restrictions, Plaintiff insists that what it imposed on

4    Defendant was an access restriction via the license agreements.

5    <u>See</u> Opp'n at 17-18.  Plaintiff contends that the fact that

6    Defendant agreed to abide by the terms of Plaintiff's Privacy

7    Policy, EULA, and other agreements with Plaintiff regarding

8    confidentiality of SolvNet content prohibits Defendant from

9    accessing SolvNet material for which it lacks a license, rendering

10   any such access a violation of the CFAA.  Compl. ¶¶ 38-39.

11   According to Plaintiff, when Defendant downloaded "articles, FAQs,

12   and other documentation related to PrimeTime and [IC Compiler],"

13   Defendant's access, downloading, and use of those materials went

14   beyond the scope of its licenses with Plaintiff and therefore

15   breached the CFAA.   <u>Id.</u>

16   The Court finds that Plaintiff has not stated a CFAA claim.

17   It is true that some courts have held that the CFAA applies to

18   access restrictions that are contractual, as well as technological

19   restrictions.  <u>See</u> <u>Weingand v. Harland Fin. Solutions, Inc.</u>, No. C

20   11-3109 EMC, 2012 WL 2327660, at *3 (N.D. Cal. June 19, 2012); <u>see</u>

21   <u>also</u> <u>Nosal</u>, 676 F.3d at 864 (distinguishing between access

22   restrictions and use restrictions, but not the form of the

23   restrictions); <u>Craigslist Inc. v. 3Taps Inc.</u>, -- F. Supp. 2d --,

24   2013 WL 1819999, at *3-4 (N.D. Cal. Apr. 30, 2013) (noting <u>Nosal</u>'s

25   distinction).  But other courts have asserted that statutes like

26   the CFAA apply only to breaches of technical barriers.  <u>See, e.g.</u>,

27   <u>In re Facebook Privacy Litig.</u>, 791 F. Supp. 2d 705, 715-16 (N.D.

28   Cal. 2011) (holding, in a California Penal Code section 502 case,

**United States District Court**
For the Northern District of California

1  that the rule of lenity requires interpreting access "without

2  permission" to apply only to access exceeding technical barriers);

3  Facebook, Inc. v. Power Ventures, Inc., No. C 08-05780-JW, 2010 WL

4  3291750, at *11 (N.D. Cal. July 20, 2010) (same).

5      Neither the Ninth Circuit nor Congress has fully explored the

6  limits of this nuanced distinction.  However, it is clear to the

7  Court that Nosal's discussion of the differences between CFAA-

8  actionable unauthorized access or procurement and non-CFAA misuse

9  or misappropriation requires plaintiffs to plead, clearly and

10  plausibly, that whatever access restriction they allege was not

11  simply a use prohibition disguised as a limit on access.  Nosal,

12  676 F.3d at 863-64; see also Craigslist Inc., 2013 WL 18199999, at

13  *4 (holding that framing a contractual prohibition in terms of

14  "access" was insufficient to state a CFAA claim because the

15  contractual prohibition depended on the accessor's purpose and did

16  not govern "who may access information, what information may be

17  accessed, or the methods by which information may be access").  In

18  other words, the state of CFAA doctrine in the Ninth Circuit

19  suggests that while a breach of a contractual provision may in some

20  cases be enough to allege unauthorized access, see Craigslist Inc.,

21  2013 WL 1819999, at *4, such an alleged breach must be pled with

22  enough clarity and plausibility to state that access itself -- not

23  just a particular use -- was prohibited.

24      Plaintiff fails to plead sufficient facts to support an

25  allegation of unauthorized access either by breach of contract or

26  by technical means.  Plaintiff's sparse allegations simply state

27  that Defendant breached its license when it accessed SolvNet and

28  downloaded "articles, FAQs, and other documentation" relating to

**United States District Court**
For the Northern District of California

software for which Defendant had a license.  Compl. ¶¶ 38-39.  The allegation that this activity exceeded authorized access, even though Plaintiff does not suggest that Defendant was not allowed to access SolvNet or that Plaintiff had restricted or revoked Defendant's access prior to Defendant's use of SolvNet, is implausible.  Further, Plaintiff does not allege with any believable precision what restricted material Defendant downloaded, given the competing allegation that Defendant had rights to use PrimeTime and GoldTime.  Absent facts stating that Defendant "has no rights, limited or otherwise, to access the computer in question," Brekka, 581 F.3d at 1133, Plaintiff's mere allegation that Defendant breached a license agreement does not sufficiently indicate that Defendant breached an access prohibition under the CFAA.

Accordingly, Plaintiff's CFAA claim is DISMISSED with leave to amend.

**E.    CDAFA**

Plaintiff asserts a claim under the CDAFA, which prohibits "[k]nowingly access[ing] and without permission tak[ing], copy[ing], or mak[ing] use of any data from a computer, computer system, or computer network, or tak[ing] or copy[ing]any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network."

Defendant moves to dismiss Plaintiff's section 502 claim for the same reasons as the CFAA claim.  Defendant argues that Plaintiff fails to plead unauthorized access under the CFAA or access "without permission" under the CDAFA.  See MTD at 14-17. Plaintiff responds that it properly alleged Defendant's accessing

**United States District Court**
For the Northern District of California

1  SolvNet without permission, as described above, and that Defendant
2  cannot use the License Agreements' authorization to argue that it
3  had permission to access SolvNet. Opp'n at 18. Plaintiff adds
4  that the CDAFA does not require that "access" be without
5  permission: the statutory language requires only that taking,
6  copying, or making use of the accessed data be without permission.
7  Id. at 18-19.

8      Defendant cites a recent case from this Court, which held that
9  the rule of lenity required limiting the CDAFA's "without
10 permission" language to apply only to the circumvention of
11 technical barriers, since to apply it more broadly -- for example,
12 to breaches of a license agreement -- would be unconstitutionally
13 vague. In re Facebook Privacy, 791 F. Supp. 2d at 716. Other
14 courts have concurred with this ruling, absent definitive
15 clarification from the legislature or courts of appeal, but there
16 is some disagreement on the point. Compare In re Google Android
17 Consumer Privacy Litig., No. 11-MD-02264 JSW, 2013 WL 1283236, at
18 *11-12 (N.D. Cal. Mar. 26, 2013) (only technical breaches are
19 actionable under the CDAFA), and Facebook, Inc. v. Power Ventures,
20 Inc., 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012) (same), with
21 Weingang, 2012 WL 2327660, at *4-6 (discussing split authority on
22 whether the CDAFA should only apply to technical breaches, but not
23 deciding which split to adopt), and Facebook, Inc. v. ConnectU LLC,
24 489 F. Supp. 2d 1087, 1090-91 (N.D. Cal. 2007) (holding that a
25 defendant's access to a plaintiff's website by using information
26 voluntarily supplied by authorized users was "without permission"
27 and a violation of the CDAFA).

28     In support of its contention that a contract alone can

**United States District Court**
For the Northern District of California

prohibit access per the CDAFA, Plaintiff cites Therapeutic Research
Faculty v. NBTY, Inc., 488 F. Supp. 2d 991, 998-99 (E.D. Cal.
2007), which held that while some of the defendants' employees'
access to the plaintiffs' computers was authorized, some was not,
so the plaintiffs could state a CDAFA claim as to the unauthorized
accessors.  Specifically, in Therapeutic Research, a corporation
bought a single-user software license -- limited specifically to a
single, individual employee of the corporation -- and shared not
only among multiple employees but also with at least one other
corporation.  See id. at 993-94.  The Court does not find this case
compelling, since the contract at issue there specifically
precluded access for a large category of users.  The same is not
the case here.

     The Court cannot find, as a matter of law, that Plaintiff does
not state a claim under the CDAFA solely because Plaintiff relies
on the alleged breach of a license agreement instead of a technical
breach.  However, Plaintiff's complaint does not state a claim
under the CDAFA for pleading reasons.  Plaintiff pleads that
SolvNet users "must abide by 'the terms of the Privacy Policy and
the end user license agreement and other agreements with
[Plaintiff]' that his or her company signed 'regarding the
confidential nature of all SolvNet content.'  This means that users
must only access and download materials for which their company has
a license."  Compl. ¶ 38.  Plaintiff then states that "[i]n 2013,
[Plaintiff] discovered that [Defendant] accessed SolvNet and
engaged in unauthorized access to and downloading of articles,
FAQs, and other documentation related to PrimeTime and [IC
Compiler].  [Defendant's] downloading and other use of these

**United States District Court**
For the Northern District of California

materials was beyond the scope of its licenses with [Plaintiff.]"
Id. ¶ 39.

The court finds Plaintiff's allegations do not provide enough
detail to be plausible.  Although Plaintiff pleads that Defendant's
access or use of the material in question, large portions of the
complaint are describe how Defendant was licensed to use much of
the material at issue here.  Defendant also apparently had access
to SolvNet unless some contractual term was clear enough to
prohibit access or there was some technical prohibition.  In this
context, alleging that the License Agreements and other contracts
Defendant had entered forbade Defendant from using SolvNet is
conclusory and not plausible.  Plaintiff must explain how the
License Agreements and its other user agreements with Defendant
were enough to put Defendant on notice that its access to SolvNet
was "without permission."

Since there are many ways for Plaintiff to repair its CDAFA
claim, the Court DISMISSES this claim with leave to amend.

**F.   Breach of Contract and Breach of the Implied Covenant**

Plaintiff asserts claims for breach of contract and breach of
the implied covenant of good faith and fair dealing against
Defendant, based on Defendant's alleged breaches of the CPLA's
confidentiality and proper use provisions, as well as Defendant's
alleged refusal to comply with Plaintiff's attempts to verify its
compliance with the CPLA.  See Compl. ¶¶ 121-25, 127-132.

**i.   Breach of Contract**

"To state a cause of action for breach of contract, a party
must plead [1] the existence of a contract, [2] his or her
performance of the contract or excuse for nonperformance, [3] the

**United States District Court**
For the Northern District of California

1    defendant's breach, and [4] resulting damage." <u>Mora v. U.S. Bank,</u>

2    <u>N.A.</u>, No. 11-6598 SC, 2012 WL 2061629, *6 (N.D. Cal. June 7, 2012)

3    (citing <u>Harris v. Rudin, Richman & Appel</u>, 74 Cal. App. 4th 299, 307

4    (Cal. Ct. App. 1999)).  Additionally, if the plaintiff alleges the

5    existence of a contract, the plaintiff may set forth the contract

6    verbatim, attach it as an exhibit, or plead it according to its

7    legal effect.  <u>See</u> <u>Lyons v. Bank of America, N.A.</u>, No. 11-01232 CW,

8    2011 WL 3607608, at *2 (N.D. Cal. Aug. 15, 2011).

9        Plaintiff has pled the existence of a contract and its

10   performance of it.  However, Plaintiff's allegation of breach is

11   deficient.  Plaintiff's pleadings on this point are sufficient only

12   as to Defendant's alleged copying of GoldTime's input and output

13   formats, which are the only portions of GoldTime that Plaintiff

14   adequately alleges Defendant copied.  Other parts of Plaintiff's

15   allegations are insufficiently vague and conclusory because, as

16   discussed above, Plaintiff does not explain what other parts of the

17   software were copied, or how? Defendant breached any

18   confidentiality clause.  These deficiencies make it impossible for

19   the Court to find Plaintiff's claim of breach plausible.

20   Separately, the parties' dispute over whether Defendant continued

21   to use GoldTime's input and output formats after its license's

22   expiration in February 2013 is a factual dispute, inappropriate for

23   decision on a motion to dismiss.  However, as noted below, this

24   does not save the claim, because Plaintiff fails to allege damages.

25   <u>See</u> MTD at 17; Opp'n at 13 n.5.

26       The more significant pleading deficiency of Plaintiff's breach

27   of contract claim is this failure to allege damages.  Plaintiff

28   merely states that Defendant "sought commercial gain and

competitive advantage by accessing and using [Plaintiff's] proprietary information to develop its products, including [Defendant's] Aprisa, which incorporate and are derived from [Plaintiff's] confidential information and trade secrets." Compl. ¶ 40; see also Opp'n at 13. Plaintiff did not make this allegation as part of its breach of contract claim, see Compl. ¶¶ 120-25, but even if it had, it does not assert that Plaintiff was damaged by Defendant's seeking commercial gain or competitive advantage -- the mere fact that Defendant sought those things does not indicate harm to Plaintiff. Plaintiff's breach of contract claim is DISMISSED with leave to amend, so that Plaintiff can more plausibly explain the alleged breach and how it damaged Plaintiff.

### ii.    Breach of Implied Covenant

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 349 (Cal. 2000). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." Id. at 349-50. The elements of a claim for breach of the covenant of good faith and fair dealing are:

> (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

**United States District Court**
For the Northern District of California

1  <u>Woods v. Google, Inc.</u>, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012)

2  (citing Judicial Counsel of California Civil Jury Instructions §

3  325 (2011)).

4      Plaintiff alleges that it had a right to confidentiality under

5  the CPLA, that the CPLA contained an implied covenant of good faith

6  and fair dealing, and that Defendant breached the implied covenants

7  by failing to maintain the confidentiality of Plaintiff's

8  proprietary information and by failing to comply with Plaintiff's

9  attempts to verify Defendant's compliance with the CPLA.  Compl. ¶¶

10 127-129.  Plaintiff asserts that it was harmed by this behavior

11 beyond mere breaches of the CPLA, because Defendant allegedly

12 maintained its relationship with Plaintiff to gain access to

13 Plaintiff's confidential material, and that Defendant, in bad

14 faith, frustrated Plaintiff's attempts to ensure confidentiality

15 and compliance with the CPLA.  <u>Id.</u> ¶¶ 130-31.  Defendant argues

16 that the CPLA included no "audit right" or "right to verify

17 compliance," and that Plaintiff's breach of the implied covenant

18 claim constitutes nothing but a breach of contract claim because

19 Plaintiff's allegations of bad faith or "independently wrongful"

20 conduct are conclusory allegations, devoid of facts to support the

21 claim.  <u>See</u> MTD at 18, Reply at 11.

22     The Court agrees with Defendant.  First, as to Plaintiff's

23 allegation that Defendant breached the implied covenant by refusing

24 to allow Plaintiff to audit Defendant's compliance, Plaintiff never

25 alleged that the CPLA contained any clause that granted it a right

26 to verify Defendant's compliance, and breaches of the implied

27 covenant apply only to "benefits of the agreement actually made."

28 <u>Guz</u>, 24 Cal. 4th at 349.  Plaintiff cannot simply add a contractual

United States District Court
For the Northern District of California

1  term after the fact.

2      Second, Plaintiff's assertions of bad faith are unacceptably

3  conclusory, because Plaintiff simply asserts -- without supporting

4  facts -- that Defendant acted in bad faith and for independently

5  wrongful purposes.  See Compl. ¶¶ 130-31.  This is defective

6  pleading under Twombly and Iqbal.

7      Finally, Plaintiff does allege that Defendant breached the

8  confidentiality provisions of the CPLA, but this allegation is

9  duplicative of Plaintiff's breach of contract claim.  "If the

10  allegations in a breach of implied covenant claim do not go beyond

11  the statement of a mere contract breach and, relying on the same

12  alleged acts, simply seek the same damages or other relief already

13  claimed in a companion contract cause of action, they may be

14  disregarded as superfluous as no additional claim is actually

15  stated."  Malcolm v. JP Morgan Chase Bank, N.A., No. 09-CV-4496,

16  2010 WL 934252, *6 (N.D. Cal. Mar. 15, 2010) (quoting Schulken v.

17  Wash. Mut. Bank, No. 09-CV-02708, 2009 WL 4173525 (N.D. Cal. Nov.

18  19, 2009)); see also Dunkel v. eBay Inc., No. 12-CV-01452-EJD, 2013

19  WL 415584, at *9-10 (N.D. Cal. Jan. 31, 2013).  Nothing in

20  Plaintiff's breach of implied covenant claim suggests that this

21  claim is at all different from Plaintiff's breach of contract

22  claim.

23      Accordingly, Plaintiff's breach of the implied covenant claim

24  is DISMISSED with leave to amend.

25      **G.  UCL**

26      The UCL prohibits unfair competition, including, inter alia,

27  "any unlawful, unfair or fraudulent business act."  Cal. Bus. &

28  Prof. Code § 17200.  "Because [section 17200] is written in the

**United States District Court**
For the Northern District of California

disjunctive, it establishes three varieties of unfair competition--
acts or practices which are unlawful, or unfair, or fraudulent."
Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554
(Cal. Ct. App. 2007).

Plaintiff brings its UCL claim under the unlawful and unfair
prongs of the UCL, having conceded that it does not allege
violation of the fraudulent prong.  See Opp'n at 15 n.6.
Plaintiffs can plead a UCL violation under the "unlawfulness" prong
by pleading that a business practice violated a predicate federal,
state, or local law.  See Cel-Tech Commc'ns, Inc. v. Los Angeles
Cellular Tel. Co., 20 Cal. 4th 163, 180 (Cal. 1999) (citing State
Farm Fire & Cas. Co. v. Superior Court, 45 Cal. App. 4th 1093, 1103
(Cal. Ct. App. 1996)).  For UCL unfairness claims brought by
competitors instead of consumers, California courts have held that
the UCL requires the competitor plaintiff to allege an incipient
violation of an antitrust law or that law's policy or spirit
"because [the unfair practice's effect] are comparable to a
violation of the law, or that otherwise significantly threatens or
harms competition."  Id. at 187.

Plaintiff's UCL unlawfulness claim alleges that Defendant's
conduct violated "numerous state and federal statutes and codes,"
including the CFAA, the CDAFA, and laws pertaining to improper use
of proprietary and confidential materials.  Compl. ¶¶ 108-09.  As
noted above, all of these claims failed and are dismissed, except -
- as a pleading matter -- Plaintiff's copyright infringement claim
as to the input and output formats in Defendant's Aprisa software
and documentation.  Plaintiff's UCL claim is DISMISSED with leave
to amend except as to that predicate copyright claim.

**United States District Court**
For the Northern District of California

As to both Plaintiff's UCL unlawfulness and unfairness claims, Defendant disputes their predication on a breach of contract claim. Defendant is correct that a breach of contract alone cannot be the predicate of a UCL unfairness or unlawfulness claim unless the breach also constitutes conduct that was unlawful, unfair, or fraudulent, see Arce v. Kaiser Found. Health Plan, Inc., 181 Cal. App. 4th 471, 489-90 (Cal. Ct. App. 2010), but Plaintiff's UCL claims are not based solely on a breach of contract.  To the extent that those claims rely on Plaintiff's breach claim, they are DISMISSED, as are Plaintiff's UCL claims based on any other dismissed claim.

Plaintiff's UCL unfairness claim primarily asserts that Defendant's alleged access to and copying of Plaintiff's confidential materials, as well as its subsequent refusal to verify a lack of anti-competitive conduct, are actionable anti-competitive behaviors covered by the UCL.  See Opp'n at 16; Compl. ¶¶ 6-7, 35-36.  Plaintiff also contends that its statement of a claim under the CDAFA supports a UCL unfairness claim, see Opp'n at 16, but the Court has dismissed that predicate claim.  As vague as Plaintiff's allegations are, the UCL cognizes them as being sufficient to state a claim at this stage of litigation -- at least for consumers.  See Williams v. Gerber Prods. Co., 552 F.3d 934, 938-39 (9th Cir. 2008) (dismissals in UCL cases are rare and generally fact-dependent); Cel-Tech, 20 Cal. App. 4th at 181 (the UCL was intentionally framed in broad, sweeping terms).  Plaintiff appears to rely mainly on the breadth of the UCL's unfairness prong on this point.  See Opp'n at 16-17.

**United States District Court**
For the Northern District of California

However, Defendant is correct that when a defendant in a UCL unfairness case is a competitor of a plaintiff (as opposed to being a consumer), a business practice is unfair only if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal. App. 4th at 187.  In this case, Plaintiff has not alleged or even suggested a violation of the letter, policy, or spirit of an antitrust law. See id.; see also Drum v. San Fernando Valley Bar Assoc., 182 Cal. App. 4th 247, 254-55 (Cal. Ct. App. 2010).  Accordingly, the Court finds that Plaintiff has failed to state a UCL unfairness claim. This claim is DISMISSED with leave to amend.

### H.  **Patent Infringement**

Plaintiff asserts claims against Defendant for direct, contributory, induced, and willful infringement of the Patents-in-Suit, based on Defendant's products Aprisa and, as to two patents, Apogee.  See Compl. ¶¶ 67, 74, 81, 88.  Plaintiff asserts that Defendant's products infringe by operating "in a manner that infringes [the asserted patent]," id., and that Defendant "has been, is currently, and unless enjoined, will continue to actively induce, encourage or contribute to the infringement of [each Patent-in-Suit]," id. ¶¶ 68, 75, 82.  According to Plaintiff, Defendant induces and contributes to its customers' patent infringement by providing allegedly infringing products and "by dictating by its design and instructions to users thereto the manner in which the software is used causing such infringement." Id.

1    Defendant concedes that the lenient pleading standard for

2    direct patent infringement protects Plaintiff's direct infringement

3    claim at this stage.  MTD at 21 n.5.  However, Defendant asserts

4    that Plaintiff's allegations of contributory, induced, and willful

5    patent infringement all fail because Plaintiff does not adequately

6    plead that Defendant knew of the Patents-in-Suit before the

7    complaint was filed, or that Defendant's software at issue here

8    lacks substantial non-infringing uses or is made or adapted for

9    infringement of the Patents-in-Suit.  Id. at 21-23.

10          i.    **Induced Infringement**

11   To state a claim for inducement of infringement, a plaintiff

12   must allege sufficient facts -- subject to Twombly and Iqbal -- to

13   raise the reasonable inference that the defendant knowingly induced

14   infringement and possessed specific intent to encourage another's

15   infringement.  See In re Bill of Lading Transmission & Processing

16   Sys. Patent Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012).

17   Plaintiff alleges that Defendant induced or encouraged infringement

18   by providing products "designed and intended to enable"

19   infringement and "by dictating by its design and instructions to

20   users thereto the manner in which the software is used causing such

21   infringement."  Compl. ¶¶ 68, 75, 82, 89.  Defendant argues that

22   these are impermissible legal conclusions couched as factual

23   allegations, and that Plaintiff does not allege the element of pre-

24   suit knowledge of the patents.  MTD at 22-23.  Plaintiff asserts

25   that it put Defendant on notice of the Patents-in-Suit at least by

26   May 8, 2013, via a warning letter, or by November 28, 2012, when it

27   contacted Defendant regarding suspected infringement.  Opp'n at 20-

28

United States District Court
For the Northern District of California

21 (citing Compl. ¶¶ 44).[3]  Plaintiff also contends that its allegations about Defendant's design and instructions, Compl. ¶¶ 68, 75, 82, 89, are sufficient to satisfy the relevant pleading standards.  Id.

The Court does not find that any of the correspondence Plaintiff references put Defendant on notice of the Patents-in-Suit.  Defendant attached copies of these letters in a declaration supporting its reply brief, and the Court takes judicial notice of these copies under Federal Rule of Evidence 201, because the letters are incorporated by reference into Plaintiff's complaint.  See Compl. ¶¶ 41, 44; ECF No. 33 ("Drummond Decl.") Exs. B ("May 8 Ltr."), C ("Nov. 20 Ltr.").  The May 8 Letter refers to alleged copying of proprietary command sets, and the November 28 Letter does not refer to any copying at all.  Thus, the Court is left only with Plaintiff's allegations that Defendant "had knowledge and notice of the [Patents-in-Suit]," Compl. ¶¶ 68, 75, 82, 89, which are merely legal conclusions pled as factual allegations.

The Court finds Plaintiff's other allegations of inducement conclusory.  Plaintiff need only provide bare facts supporting its claim, and it certainly need not prove its claim at the pleading stage, but descriptions of the Patents-in-Suit and Defendant's products, coupled with bare pleadings of the elements of these infringement claims, do not suffice to allow the Court to make a reasonable inference of Defendant's intent to induce infringement.  See Compl. ¶¶ 68, 75, 82, 89.  Plaintiff could, for example, have

---

[3] Defendant notes that it is not aware of a November 28, 2012 letter, but only of a November 20, 2012 letter.  The parties do not further address this point, so the Court analyzes only the November 20, 2012 letter.

1   pled facts as to how Defendant's design or instruction were meant
2   to induce or encourage Defendant, but Plaintiff's Complaint simply
3   states that Defendant "induced, encouraged or contributed to its
4   customers' direct infringement by providing, selling or offering
5   for sale the Aprisa software that is designed and intend to [work
6   in a manner infringing the Patents-in-Suit]."  Id.  Plaintiff has
7   not sufficiently alleged that Defendant induced infringement of the
8   Patents-in-Suit.

9        Accordingly, Plaintiff's induced infringement claims are
10  DISMISSED with leave to amend.

11           **ii.   Contributory Infringement**

12       To state a claim for contributory infringement, a plaintiff
13  must allege sufficient facts to raise the reasonable inference that
14  the defendant sells or offers to sell a material or apparatus (1)
15  for use in practicing a patented process, (2) that is material to
16  practicing the invention, (3) that has no substantial non-
17  infringing uses, and (4) is known by the party "to be especially
18  made or especially adapted for use in an infringement of such
19  patent."  In re Bill of Lading, 681 F.3d at 1337.  Plaintiff
20  contends that the Court should make the inference that Defendant
21  contributed to others' infringement of the Patents-in-Suit because
22  Plaintiff's complaint does not indicate that Defendant's products
23  have substantial non-infringing uses.  Opp'n at 19-20 (citing
24  Compl. ¶¶ 68, 75, 82, 89).  Defendant argues that it is Plaintiff's
25  burden to allege that Defendant's accused software lacks
26  substantial non-infringing uses or is especially made or adapted
27  for infringement of the Patents-in-Suit, and that Plaintiff failed
28  to do so.  MTD at 21-22; Reply at 14-15.

United States District Court
For the Northern District of California

38

**United States District Court**
For the Northern District of California

Per above, the Court finds that Plaintiff fails to allege that Defendant knew that any of its software was made or adapted for infringement of any of the Patents-in-Suit, which leads to a finding here that Plaintiff has failed to allege that Defendant's software was designed to infringe any particular patent.  See Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010) (plaintiffs must plead, among other things, knowledge of the patent in order to plead a contributory infringement claim).  Further, while Plaintiff does not have to prove its claims at the pleading stage, Plaintiff has failed to raise the reasonable inference that Defendant's software has no substantial non-infringing uses. Plaintiff does not have to explain everything that Defendant's software does, but when Plaintiff's complaint is so vague as to its own claims and Defendant's products, the Court cannot find that Defendant's software has no substantial non-infringing uses.

Plaintiff's contributory infringement claims are DISMISSED with leave to amend.

### iii.   **Willful Infringement**

To state a claim for willful infringement, a plaintiff must plead sufficient facts to raise the reasonable inference that the defendant "was aware of the asserted patent, but nonetheless acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 861 (Fed. Cir. 2010) (citation omitted). Plaintiffs need only make out a bare assertion of knowledge of an issued patent, but mere recitation of elements is insufficient. see Avocet Sports Tech., Inc. v. Garmin Int'l, Inc., No. C 11-04049 JW, 2012 WL 1030031, at *3 (N.D. Cal. Mar. 22, 2012).

United States District Court
For the Northern District of California

1       As stated above, Plaintiff fails to allege that Defendant was

2   aware of the Patents-in-Suit.  Further, Plaintiff's allegations of

3   willfulness amount to nothing more than recitation of that claim's

4   elements:

5       [Defendant's] acts of direct and indirect infringement
    are willful, as [Defendant] knew or should have known of

6       the [Patents-in-Suit] and that making, using, offering to
    sell and selling within the United States, or importing

7       into the United States, its Aprisa or Apogee software
    products would infringe the [Patents-in-Suit], but acted

8       despite an objectively high likelihood that such
    activities would infringe the patent.

9

10  Compl. ¶¶ 69, 76, 83, 90.  Such pleadings are insufficient to state

11  a claim for willful infringement.  Plaintiff's willful infringement

12  claims are therefore DISMISSED with leave to amend.

13

14  **V.**   **CONCLUSION**

15      As explained above, the Court GRANTS in part and DENIES in

16  part Defendant ATopTech Inc.'s motion to dismiss Plaintiff

17  Synopsys, Inc.'s complaint.  All of Plaintiff's claims except its

18  copyright infringement claim based on its proprietary input and

19  output formats and its UCL unlawfulness claim predicated on that

20  alleged infringement are DISMISSED with leave to amend.

21      Plaintiff may file an amended complaint within thirty (30)

22  days of this Order's signature date.  Failure to do so may result

23  in dismissal of this action with prejudice.

24

25      IT IS SO ORDERED.

26

27      Dated: October 24, 2013

28                                UNITED STATES DISTRICT JUDGE