Robert A. Mittelstaedt (SBN 60359)
Patrick T. Michael (SBN 169745)
Joe C. Liu (SBN 237356)
Mary H. McNeill (SBN 261500)
JONES DAY
555 California St 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
pmichael@jonesday.com
jcliu@jonesday.com
mmcneill@jonesday.com

Krista S. Schwartz (Admitted *Pro Hac Vice*)
JONES DAY
77 W. Wacker Drive, Suite 3500
Chicago, IL 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
ksschwartz@jonesday.com

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., | **Case No. 3:13-cv-02965-SC** |
| Plaintiff, | |
| v. | **AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, PATENT INFRINGEMENT, BREACH OF CONTRACT, AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| ATOPTECH, INC., | |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

Pursuant to the Court's October 24, 2013 Order (ECF No. 42), Plaintiff Synopsys, Inc. ("Synopsys") amends its Complaint as follows:

## NATURE OF THE ACTION

1.     This case arises out of Defendant ATopTech Inc.'s ("ATopTech") infringement of Synopsys' intellectual property and breaches of contractual obligations to Synopsys.

2.     Synopsys is a leader in the electronic design automation ("EDA") and semiconductor intellectual property industry.  It develops, manufactures, sells and licenses products and services that enable designers to create, model and verify complex integrated circuit designs from concept to silicon.  Since 1986, engineers around the world have used Synopsys technology to design and create billions of integrated circuits and systems.

3.     Synopsys' IC Compiler product provides customers with a comprehensive place-and-route system that, among other things, contains static timing technology which computes the expected timing of a digital circuit without requiring simulation.  Synopsys has a separate timing sign-off tool, PrimeTime, that also computes the expected timing of a digital circuit without requiring simulation and provides customers with a trusted solution for timing sign-off, a required verification step before manufacturing.   Synopsys' IC Compiler and PrimeTime products are tightly correlated (*i.e.* the timing engines of these two products are correlated to produce closely matched timing results) because Synopsys uses some of the same proprietary static timing technology in both products.

4.     ATopTech describes itself as an EDA company that develops tools for the physical design of integrated circuits at 65 nanometers and below including its Aprisa "place and route" tool and Apogee "floor planning" tool.  ATopTech's Aprisa and Apogee products compete with certain Synopsys products, including IC Compiler.   ATopTech claims to have offices in the United States, India, Japan, and Taiwan.

5.     ATopTech licensed certain technology from Synopsys and a company Synopsys acquired—Extreme DA Corporation ("Extreme DA")— under two royalty-free license agreements: (i) a Connections Program License Agreement ("CPLA"); and (ii) a license agreement relating to a method for parametric on chip variation ("POCV License").  ATopTech

- 2 -                                    AMENDED COMPLAINT

agreed to maintain the confidentiality of Synopsys' and Extreme DA's proprietary information and also agreed, among other things, not to reverse engineer or copy any of Synopsys' proprietary materials, including software or other proprietary materials provided under the license agreements. Under the POCV License, ATopTech further agreed to certain communications and marketing obligations, including to keep record of all customers that receive ATopTech's products in which the licensed POCV method is available and to provide Synopsys and Extreme DA with the names of such customers.

6.      In November 2012, based on concerns that ATopTech was not in compliance with these license agreements and had improperly copied Synopsys proprietary information, Synopsys exercised its right to verify ATopTech's compliance with the license agreements.

7.      Synopsys spent several months attempting to work with ATopTech on a voluntary production of information that would have allowed ATopTech, if it could, to establish compliance with the agreements and demonstrate that it did not steal or copy Synopsys' proprietary information and software.  Synopsys offered ATopTech the opportunity to provide this information under a non-disclosure agreement that would restrict access to Synopsys' outside counsel and independent experts.

8.      Instead of taking advantage of this opportunity, ATopTech engaged in a systematic effort to frustrate and obstruct Synopsys' attempt to verify ATopTech's contractual compliance and refused to provide information that would allow Synopsys to ensure its intellectual property rights were not being infringed.

9.      As a result, Synopsys has no alternative but to seek judicial relief.  ATopTech's EDA products Aprisa and Apogee infringe Synopsys' patents and copyrights and unfairly compete with and trade on Synopsys' industry leading EDA tools.  Accordingly, and as more specifically alleged herein, Synopsys brings this suit for federal copyright infringement, patent infringement, breach of contract and breach of the implied covenant of good faith and fair dealing.

## THE PARTIES

10.      Synopsys is a corporation organized under Delaware law with its principal place of business in Santa Clara County at 700 East Middlefield Road, Mountain View, California 94043.

- 3 -                              AMENDED COMPLAINT

11.     On information and belief, ATopTech is a corporation organized under Delaware law with its principal place of business in Santa Clara County at 2111 Tasman Drive, Santa Clara, California 95054.  ATopTech also claims to have offices in India, Japan, and Taiwan.

**JURISDICTION AND VENUE**

12.     This action arises in part under the United States Copyright Act, 17 U.S.C. § 101, *et seq.*, and the patent laws of the United States, 35 U.S.C. § 100, *et seq.*  This Court has subject matter jurisdiction over this action under 18 U.S.C. § 1030(g) and 28 U.S.C. §§ 1331 and 1338.

13.     This Court has supplemental subject matter jurisdiction over the pendent common law claims under 28 U.S.C. § 1367 because these claims are so related to Synopsys' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

14.     This Court has personal jurisdiction over ATopTech because its principal place of business is within the State of California and this judicial district, and because it has conducted and does conduct business within the State of California and this judicial district.

15.     Venue in this district is appropriate under 28 U.S.C. §§ 1391 and 1400 because the events giving rise to the dispute occurred in this district.

**INTRADISTRICT ASSIGNMENT**

16.     This is an intellectual property action and is assigned on a district-wide basis under Civil L.R. 3-2(c) and General Order No. 44.

**FACTUAL BACKGROUND**

**Synopsys' Intellectual Property**

17.     As a world leader in EDA, Synopsys is helping the electronics market accelerate innovation in all aspects of semiconductor design.  Synopsys provides a complete front-to-back design and test environment, software-level to silicon-level verification, design reuse technology, field-programmable gate array solutions, and professional services to help its customers get their silicon working quickly and accurately.  These technology-leading solutions help give Synopsys customers a competitive edge in quickly bringing the best products to market while reducing costs and schedule risk.  Since 1986, engineers around the world have used Synopsys technology

AMENDED COMPLAINT

1    to design and create billions of integrated circuits and systems.

2           18.    To address the important issue of timing in integrated circuit design, Synopsys

3    spent years investing in and developing PrimeTime – its proprietary static timing analysis tool

4    that computes the expected timing of a digital circuit without requiring simulation – and provides

5    customers with a trusted solution for timing sign-off, a required verification step before

6    manufacturing.  PrimeTime is a successful product and is widely used in the industry for gate-

7    level static timing analysis.

8           19.    The PrimeTime software includes hundreds of Synopsys proprietary input and

9    output formats.  The proprietary PrimeTime input formats include proprietary commands,

10   variables, and parameters (the compilation of which is sometimes referred to as a "command set").

11   The proprietary PrimeTime input formats are used within customer "scripts" that are input into

12   and executed by PrimeTime.  PrimeTime provides feedback to the user through proprietary

13   output formats.  These PrimeTime input and output formats, and the compilations of such formats,

14   are proprietary to Synopsys and are not part of any open format or standard.

15          20.    PrimeTime also supports a set of open source commands (referred to as "Synopsys

16   Design Constraints" or "SDC") that are distinct from the Synopsys proprietary input and output

17   formats and are not the subject of this lawsuit.

18          21.    Synopsys' engineers and software developers expended significant creativity, time

19   and effort in developing the individual input formats and output formats, as well as the

20   compilation of these input formats and output formats.  In addition to developing PrimeTime,

21   Synopsys also invests substantial time, effort, and money to protect its intellectual property and

22   add technology and engineering talent to advance Synopsys' timing analysis solutions.

23          22.    In June of 2011, Synopsys filed suit in the District of Delaware against Extreme

24   DA for improperly copying portions of the PrimeTime software, including proprietary PrimeTime

25   input and output formats, into Extreme DA's static timing analysis tool, GoldTime.  In October

26   2011, Synopsys acquired Extreme DA, including GoldTime, and confirmed that a significant

27   portion of the proprietary PrimeTime input and output formats had been copied into and exist

28   within GoldTime.

AMENDED COMPLAINT

23.     PrimeTime and GoldTime software and their associated user documentation are original works of authorship and are subject to copyright protection.

24.     Synopsys owns all rights to the PrimeTime and GoldTime software and user documentation, which have been registered with the United States Copyright Office: U.S. Registration Nos. TX 7-261-049, TX 7-260-556, TX 7-670-937, TX 7-663-729, and TX 7-664-316.  True and correct copies of these registrations are attached as Exhibits 1-5.

25.     Synopsys has also developed novel technologies and techniques related to integrated circuit design, which are protected by numerous U.S. patents.

26.     U.S. Patent No. 6,405,348 ("'348 Patent"), entitled "Deep sub-micron static timing analysis in the presence of crosstalk" and naming Peivand Fallah-Tehrani and Shang-Woo Chyou as inventors, was duly and legally issued by the USPTO on June 11, 2002.  Synopsys is the assignee and holder of all rights, title, and interests in the '348 Patent, including without limitation all rights to sue for damages for infringement thereof.  A true and correct copy of the '348 Patent is attached hereto as Exhibit 6.

27.     U.S. Patent No. 6,507,941 ("'941 Patent"), entitled "Subgrid detailed routing" and naming Hardy Kwok-Shing Leung and Raymond X. Nijssen as inventors, was duly and legally issued by the USPTO on January 14, 2003.  Synopsys is the owner and holder of all rights, title, and interests in the '941 Patent, including without limitation all rights to sue for damages for infringement thereof.  A true and correct copy of the '941 Patent is attached hereto as Exhibit 7.

28.     U.S. Patent No. 6,237,127  ("'127 Patent"), entitled "Static timing analysis of digital electronic circuits using non-default constraints known as exceptions" and naming Ted L. Craven, Denis M. Baylor, and Yael Rindenau as inventors, was duly and legally issued by the USPTO on May 22, 2001.  Synopsys is the owner and holder of all rights, title, and interests in the '127 Patent, including without limitation all rights to sue for damages for infringement thereof.  A true and correct copy of the '127 Patent is attached hereto as Exhibit 8.

29.     U.S. Patent No. 6,567,967 ("'967 Patent"), entitled "Method for designing large standard-cell base integrated circuits" and naming Yaacov I. Greidinger, David S. Reed, Ara Markosian, Stephen P. Sample, Jonathan A. Frankle, and Hasmik Lazaryan as inventors, was duly

AMENDED COMPLAINT

and legally issued by the USPTO on May 20, 2003.  Synopsys is the owner and holder of all rights, title, and interests in the '967 Patent, including without limitation all rights to sue for damages for infringement thereof.  A true and correct copy of the '967 Patent is attached hereto as Exhibit 9.

30.     The '348 Patent, '941 Patent, '127 Patent, and '967 Patent are collectively referred to herein as the "Patents-in-Suit."

**ATopTech's Access to Synopsys' Software and Other Proprietary Information**

31.     On June 10, 2010, ATopTech entered into the CPLA with Extreme DA, which was related to Extreme DA's GoldTime software.  When Synopsys acquired Extreme DA, Extreme DA assigned all rights, title and interest in the GoldTime intellectual property to Synopsys, including its rights under the CPLA.  Synopsys extended the CPLA three times.  The CPLA expired on February 15, 2013.

32.     Under the CPLA, ATopTech gained access to copies of GoldTime software and documentation (and by extension, proprietary PrimeTime input and output formats that were contained in the GoldTime software and documentation).

33.     The CPLA, in all of its iterations, provided only a limited license to use GoldTime, and explicitly prohibited ATopTech from "incorporat[ing]" GoldTime into other software products or "reverse engineering" GoldTime.  This limited license did not permit ATopTech to copy any part of the GoldTime software including its collection of proprietary input and output formats.  The CPLA further restricted ATopTech from disclosing any confidential information provided under the agreement, including any information related to GoldTime, and ATopTech agreed to take reasonable steps to protect the confidentiality of and avoid unauthorized use of information ATopTech obtained from Synopsys – even indirectly – including any information that would reasonably be viewed as confidential based on its content or the circumstances of its disclosure.

34.     On December 3, 2010, Extreme DA and ATopTech entered into the POCV License granting ATopTech a limited, non-exclusive license to Extreme DA's proprietary POCV technology, including U.S. Patent No. 8,407,640 ("'640 Patent"), which ATopTech used to test

timing effects resulting from variations that may occur to a chip during manufacture (from process, voltage or temperature effects).  When Synopsys acquired Extreme DA, Extreme DA assigned all rights, title, and interest in its POCV technology to Synopsys, including its rights under the POCV License.

**ATopTech Copied PrimeTime and GoldTime**

35.     On information and belief, while ATopTech was continuing to receive and use Synopsys confidential information pursuant to the terms and limitations of its agreements with Synopsys, ATopTech copied PrimeTime and GoldTime input and output formats into Aprisa user documentation and software.  Synopsys is in possession of Aprisa documentation—provided by ATopTech—revealing that Aprisa includes proprietary PrimeTime and GoldTime input and output formats.

36.     ATopTech advertises that Aprisa has "excellent correlation with sign-off timing" and a "tight correlation" with Synopsys' PrimeTime software.  On information and belief, ATopTech can only have achieved, and did achieve, such correlation through copying Synopsys' proprietary PrimeTime input and output formats and improperly using reverse engineering of Synopsys' GoldTime software in violation of the CPLA to improve and modify ATopTech's products.

**ATopTech's Unauthorized Access and Improper Downloads from SolvNet**

37.     Through its contractual relationships with Synopsys, ATopTech was also provided with access to certain Synopsys proprietary and confidential information on SolvNet.

38.     SolvNet is Synopsys' password-protected support website on which Synopsys, among other things, hosts software, user guides, support documentation and other materials for customers and partners with valid user IDs.  When a user registers for a SolvNet password, that user is informed of the confidential nature of all SolvNet content and agrees to abide by "the end user license agreement and other agreements with Synopsys . . . 'regarding the confidential nature of all SolvNet content.'"  The Synopsys SolvNet Copyright Notice also states:  "This software and documentation contain confidential and proprietary information that is the property of Synopsys, Inc.  The software and documentation are furnished under a license agreement and may

AMENDED COMPLAINT

be used or copied only in accordance with the terms of the license agreement."  In short, the permitted use of SolvNet is limited to the scope of the license agreements the users (or their companies) have with Synopsys.

39.     As discussed above, ATopTech entered into the CPLA relating to GoldTime software.  ATopTech also entered into an agreement with Synopsys that provided ATopTech access to certain SpringSoft products and documentation (the "SpringSoft Agreement").  Additionally, as recently as September 2, 2012, ATopTech entered into an agreement with Synopsys under which ATopTech was permitted limited access to the Synopsys Milkyway Database and Milkyway software (the "MAP-in License").

40.     Through these contractual relationships, ATopTech was provided with two "site IDs"—18106 and 30946—for access to SolvNet.   The scope of the CPLA is limited to GoldTime software and documentation, and nothing in the CPLA authorizes ATopTech access to any materials other than certain GoldTime materials.  The scope of the SpringSoft Agreement is limited to SpringSoft software and documentation, and nothing in the SpringSoft Agreement authorizes ATopTech access to any materials other than certain SpringSoft materials.  The scope of the Map-in License is limited to Milkyway software and documentation, and nothing in the MAP-in License authorizes ATopTech access to any materials other than certain Milkyway materials.

41.     Despite this, in January and March 2013—at the same time Synopsys was attempting to verify ATopTech's compliance with the CPLA—ATopTech accessed SolvNet and engaged in unauthorized access to and downloading of proprietary articles, application notes, FAQs, multimedia files, and other documentation describing proprietary details and operation of PrimeTime and IC Compiler, including how to include propagated clock latency within PrimeTime Extracted Timing Models and clock tree synthesis in IC Compiler; none of which are GoldTime, SpringSoft or Milkyway materials or otherwise fall within the scope of the CPLA, SpringSoft Agreement or MAP-in License.  ATopTech's access, downloading and other use of these materials was beyond the scope of its licenses with Synopsys, and not otherwise permitted.

42.     On information and belief, ATopTech sought commercial gain and competitive

AMENDED COMPLAINT

advantage by accessing and using Synopsys proprietary PrimeTime input and output formats and accessing other proprietary Synopsys information through SolvNet to develop and improve its products, including ATopTech's Aprisa, which incorporate and are derived from Synopsys' proprietary information.

**ATopTech's Refusal to Demonstrate Compliance with the License Agreements**

43.     With a reasonable suspicion that ATopTech wrongfully copied, used and disclosed portions of the PrimeTime and GoldTime software, and otherwise breached the CPLA and POCV License agreements, on November 28, 2012, Synopsys invoked its rights to verify compliance under both license agreements, and thereafter diligently worked to commence and complete the audit.

44.     For months, Synopsys attempted to work with ATopTech to establish compliance with the license agreements and confirm that ATopTech did not steal or copy Synopsys' proprietary information and software.  Synopsys even agreed that ATopTech could provide any information under a non-disclosure agreement that would restrict access to Synopsys' outside counsel and independent experts.  Rather than cooperating with Synopsys, ATopTech systematically frustrated and obstructed the audit process.

45.     On May 8, 2013—after ATopTech's continued refusal to cooperate with the audit—Synopsys served ATopTech with a default notice under the POCV license stating that ATopTech materially breached several of its obligations under the POCV license, including its obligation to comply with the audit provisions.

46.     In this May 8th letter, and in subsequent communications, Synopsys also put ATopTech on notice of Synopsys' good faith belief that ATopTech copied proprietary PrimeTime and GoldTime command sets into Aprisa, in violation of the CPLA agreement and Synopsys' valuable intellectual property rights, including those covered by Synopsys' PrimeTime and GoldTime federal copyright registrations.

47.     Synopsys set a June 10, 2013 deadline for completion of the audit.  The June 10 deadline came and went without ATopTech providing any of the requested information.

48.     On June 17, 2013, Synopsys again gave ATopTech the opportunity to demonstrate

that it had not copied and was in compliance with the license agreements.  ATopTech still refused to provide Synopsys with the information Synopsys requested under its contractual audit rights.

## COUNT I – COPYRIGHT INFRINGEMENT

49.     Synopsys incorporates paragraphs 1-48 as though fully set forth herein.

50.     The PrimeTime and GoldTime software and user documentation ("Copyrighted Software") are original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. § 101 *et seq*.  The Copyrighted Software has been registered with the Copyright Office.  The relevant U.S. Registration Numbers include: TX 7-261-049, TX 7-260-556, TX 7-670-937, TX 7-663-729, and TX 7-664-316.  Synopsys is the owner of all right, title, and interest to the copyright registrations for the Copyrighted Software and has complied in all respects with the laws governing copyright.  The Copyrighted Software includes the proprietary PrimeTime and GoldTime input and output formats.

51.     In compliance with copyright regulations, Synopsys filed with the Copyright Office a copyright application, the registration fee and a deposit of the works being registered.  The effective date of the copyright registrations is the day on which an application, deposit and fee have all been received in the Copyright Office.  17 U.S.C. § 410(d).

52.     As owner of the Copyrighted Software, Synopsys enjoys the exclusive right to, among other things, reproduce the Copyrighted Software, prepare derivative works and distribute copies of the Copyrighted Software.  17 U.S.C. §§ 101, 106.

53.     On information and belief, ATopTech had access to the Copyrighted Software and copied portions of the Copyrighted Software in the form of proprietary Gold Time and PrimeTime input and output formats.

54.     Synopsys is in possession of Aprisa documentation—provided by ATopTech— revealing that Aprisa includes proprietary PrimeTime and GoldTime input and output formats.  On information and belief, ATopTech without authorization copied significant portions of the PrimeTime and GoldTime proprietary input and output formats into its Aprisa user documentation and software.

55.     On information and belief, ATopTech without authorization created, reproduced

AMENDED COMPLAINT

1   and distributed derivative works, including the Aprisa product and the Aprisa user documentation,

2   based upon the Copyrighted Software, by copying the proprietary PrimeTime and GoldTime

3   input and output formats.

4       56.     By its actions alleged above, ATopTech directly infringed, and will continue to

5   infringe, Synopsys' copyrights in the Copyrighted Software by creating, reproducing and

6   distributing the Aprisa product and Aprisa associated documentation.

7       57.     On information and belief, ATopTech's infringement was deliberate, willful, and

8   in disregard of Synopsys' rights, and it was committed for the purpose of commercial gain.

9       58.     The infringement of Synopsys' copyrights by ATopTech harmed and will continue

10   to irreparably harm Synopsys unless restrained by this Court.  Synopsys' remedy at law is not

11   adequate, by itself, to compensate for the harm inflicted and threatened by ATopTech.  Thus, in

12   addition to all other remedies to which it is entitled, Synopsys is entitled to injunctive relief

13   restraining ATopTech, its officers, agents, employees, and all persons acting in concert with it

14   from engaging in further acts of copyright infringement as described herein.

15       59.     As a direct and proximate result of ATopTech's copyright infringement, Synopsys

16   has suffered, and will continue to suffer, monetary loss to its business reputation and goodwill.

17   Synopsys is also entitled to recover from ATopTech the damages it has suffered and will continue

18   to suffer as a result of ATopTech's infringement in actual amounts to be proven at trial and

19   including, but not limited to, any and all gains, profits, and advantages ATopTech has obtained as

20   a result of its infringement.  In the alternative, Synopsys is entitled to statutory damages pursuant

21   to 17 U.S.C. § 504(c).

22       60.     Synopsys is also entitled to recover its attorneys' fees and costs of suit pursuant to

23   17 U.S.C. § 505.

24       **COUNT II – INFRINGEMENT OF THE '348 PATENT**

25       61.     Synopsys incorporates paragraphs 1-60 as though fully set forth herein.

26       62.     On information and belief, ATopTech has been and currently is directly infringing

27   one or more claims of the '348 Patent by making, using, offering to sell, and selling within the

28   United States products that embody the inventions disclosed and claimed in the '348 Patent, or by

AMENDED COMPLAINT

1  importing into the United States products that embody the inventions disclosed and claimed in

2  the '348 Patent.  The ATopTech products that infringe the '348 Patent include, but are not limited

3  to, its Aprisa software products that embody the patented invention by analyzing and reducing

4  crosstalk effects on interconnects of an integrated circuit design represented as a netlist in a

5  manner that infringes the '348 Patent.

6      63.   On information and belief, ATopTech has been and is currently actively inducing

7  and encouraging infringement of one or more claims of the '348 Patent in violation of 35 U.S.C.

8  § 271(b).  With actual knowledge of the '348 Patent at least as of the filing date of Synopsys'

9  original Complaint or the date that ATopTech was served with Synopsys' original Complaint,

10  ATopTech actively induces and encourages its customers (including those identified on

11  ATopTech's website) to directly infringe the '348 Patent by instructing customers to use its

12  products in a manner that directly infringes the '348 Patent, including, for example, by instructing

13  its customers to run the Aprisa software products to analyze and reduce crosstalk effects on

14  interconnects of an integrated circuit design represented as a netlist in a manner that infringes

15  the '348 Patent.  ATopTech does so with the specific intent to induce and encourage such

16  infringement, or at a minimum with willful blindness to the known risk of such infringement.

17      64.   On information and belief, ATopTech has been and is currently contributing to the

18  infringement of one or more claims of the '348 Patent in violation of 35 U.S.C. § 271(c) by

19  selling and/or offering to sell within the United States and/or importing into the United States

20  products that are material components of systems that practice or embody the invention claimed

21  in the '348 Patent.  With actual knowledge of the '348 Patent at least as of the filing date of

22  Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original

23  Complaint, ATopTech sells and offers to sell products, including Aprisa software products, to its

24  customers knowing that these products are especially made or adapted for use in a manner that

25  infringes the '348 Patent, and knowing that these products are not staple articles or commodities

26  of commerce suitable for any substantial non-infringing use.

27      65.   ATopTech's acts of direct and indirect infringement are willful, as ATopTech had

28  actual knowledge of the '348 Patent at least as of the filing date of Synopsys' original Complaint

or the date that ATopTech was served with Synopsys' original Complaint, and knew or should have known that making, using, offering to sell, selling within the United States, and/or importing into the United States its Aprisa software products that analyze and reduce crosstalk effects on interconnects of an integrated circuit design represented as a netlist in a manner that infringes the '348 Patent would infringe the '348 Patent.  But ATopTech acted, for example, by continuing to sell the Aprisa software product despite an objectively high likelihood that such activities would infringe the '348 Patent.

66.     As a direct and proximate result of ATopTech's infringement of the '348 Patent, Synopsys has suffered and will continue to suffer irreparable injury unless and until ATopTech's acts of infringement are enjoined and restrained by order of this Court.  Synopsys has no adequate remedy at law and is entitled to a preliminary and permanent injunction against ATopTech and its infringing products.

67.     As a direct and proximate result of ATopTech's infringement, Synopsys suffered and will continue to suffer damages in an amount to be determined at trial.

68.     This case is an "exceptional" case within the meaning of 35 U.S.C. § 285, and Synopsys is entitled to an award of attorneys' fees.

## COUNT III – INFRINGEMENT OF THE '941 PATENT

69.     Synopsys incorporates paragraphs 1-68 as though fully set forth herein.

70.     On information and belief, ATopTech has been and currently is directly infringing one or more claims of the '941 Patent by making, using, offering to sell, and selling within the United States products that embody the inventions disclosed and claimed in the '941 Patent, or by importing into the United States products that embody the inventions disclosed and claimed in the '941 Patent.  The ATopTech products that infringe the '941 Patent include, but are not limited to, its Aprisa or Apogee software products that embody the patented invention by providing off-grid routing that automatically extends wire location representations from one grid to another grid in a manner that infringes the '941 Patent.

71.     On information and belief, ATopTech has been and is currently actively inducing and encouraging infringement of one or more claims of the '941 Patent in violation of 35 U.S.C.

§ 271(b).  With actual knowledge of the '941 Patent at least as of the filing date of Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original Complaint, ATopTech actively induces and encourages its customers (including those identified on ATopTech's website) to directly infringe the '941 Patent by instructing customers to use its products in a manner that directly infringes the '941 Patent, including, for example, by instructing its customers to run the Aprisa or Apogee software products to provide off-grid routing that automatically extends wire location representations from one grid to another grid in a manner that infringes the '941 Patent.  ATopTech does so with the specific intent to induce and encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

72.     On information and belief, ATopTech has been and is currently contributing to the infringement of one or more claims of the '941 Patent in violation of 35 U.S.C. § 271(c) by selling and/or offering to sell within the United States and/or importing into the United States products that are material components of systems that practice or embody the invention claimed in the '941 Patent.  With actual knowledge of the '941 Patent at least as of the filing date of Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original Complaint, ATopTech sells and offers to sell products, including Aprisa or Apogee software products, to its customers knowing that these products are especially made or adapted for use in a manner that infringes the '941 Patent, and knowing that these products are not staple articles or commodities of commerce suitable for any substantial non-infringing use.

73.     ATopTech's acts of direct and indirect infringement are willful, as ATopTech had actual knowledge of the '941 Patent at least as of the filing date of Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original Complaint, and knew or should have known that making, using, offering to sell, selling within the United States, and/or importing into the United States its Aprisa or Apogee software products that provide off-grid routing that automatically extends wire location representations from one grid to another grid in a manner that infringes the '941 Patent would infringe the '941 Patent.  But ATopTech, for example, continued to sell the Aprisa or Apogee software products despite an objectively high likelihood that such activities would infringe the '941 Patent.

AMENDED COMPLAINT

74.     As a direct and proximate result of ATopTech's infringement and willful infringement of the '941 Patent, Synopsys has suffered and will continue to suffer irreparable injury unless and until ATopTech's acts of infringement are enjoined and restrained by order of this Court.  Synopsys has no adequate remedy at law and is entitled to a preliminary and permanent injunction against ATopTech and its infringing products.

75.     As a direct and proximate result of ATopTech's infringement, Synopsys suffered and will continue to suffer damages in an amount to be determined at trial.

76.     This case is an "exceptional" case within the meaning of 35 U.S.C. § 285, and Synopsys is entitled to an award of attorneys' fees.

### COUNT IV – INFRINGEMENT OF THE '127 PATENT

77.     Synopsys incorporates paragraphs 1-76 as though fully set forth herein.

78.     On information and belief, ATopTech has been and currently is directly infringing one or more claims of the '127 Patent by making, using, offering to sell, and selling within the United States products that embody the inventions disclosed and claimed in the '127 Patent, or by importing into the United States products that embody the inventions disclosed and claimed in the '127 Patent.  The ATopTech products that infringe the '127 Patent include, but are not limited to, its Aprisa software products that embody the patented invention by providing static timing analysis that utilizes through exceptions in a manner that infringes the '127 Patent.

79.     On information and belief, ATopTech has been and is currently actively inducing and encouraging infringement of one or more claims of the '127 Patent in violation of 35 U.S.C. § 271(b).  With actual knowledge of the '127 Patent at least as of the filing date of Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original Complaint, ATopTech actively induces and encourages its customers (including those identified on ATopTech's website) to directly infringe the '127 Patent by instructing customers to use its products in a manner that directly infringes the '127 Patent, including, for example, by instructing its customers to run the Aprisa software products to provide static timing analysis that utilizes through exceptions in a manner that infringes the '127 Patent.  ATopTech does so with the specific intent to induce and encourage such infringement, or at a minimum with willful blindness

1    to the known risk of such infringement.

2        80.    On information and belief, ATopTech has been and is currently contributing to the

3    infringement of one or more claims of the '127 Patent in violation of 35 U.S.C. § 271(c) by

4    selling and/or offering to sell within the United States and/or importing into the United States

5    products that are material components of systems that practice or embody the invention claimed

6    in the '127 Patent.  With actual knowledge of the '127 Patent at least as of the filing date of

7    Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original

8    Complaint, ATopTech sells and offers to sell products, including Aprisa software products, to its

9    customers knowing that these products are especially made or adapted for use in a manner that

10   infringes the '127 Patent, and knowing that these products are not staple articles or commodities

11   of commerce suitable for any substantial non-infringing use.

12       81.    ATopTech's acts of direct and indirect infringement are willful, as ATopTech had

13   actual knowledge of the '127 Patent at least as of the filing date of Synopsys' original Complaint

14   or the date that ATopTech was served with Synopsys' original Complaint, and knew or should

15   have known that making, using, offering to sell, selling within the United States, and/or importing

16   into the United States its Aprisa software products that provide static timing analysis that utilizes

17   through exceptions in a manner that infringes the '127 Patent would infringe the '127 Patent.  But

18   ATopTech, for example, continued to sell to sell the Aprisa software product despite an

19   objectively high likelihood that such activities would infringe the '127 Patent.

20       82.    As a direct and proximate result of ATopTech's infringement and willful

21   infringement of the '127 Patent, Synopsys has suffered and will continue to suffer irreparable

22   injury unless and until ATopTech's acts of infringement are enjoined and restrained by order of

23   this Court.  Synopsys has no adequate remedy at law and is entitled to a preliminary and

24   permanent injunction against ATopTech and its infringing products.

25       83.    As a direct and proximate result of ATopTech's infringement, Synopsys suffered

26   and will continue to suffer damages in an amount to be determined at trial.

27       84.    This case is an "exceptional" case within the meaning of 35 U.S.C. § 285, and

28   Synopsys is entitled to an award of attorneys' fees.

## COUNT V – INFRINGEMENT OF THE '967 PATENT

85.     Synopsys incorporates paragraphs 1-84 as though fully set forth herein.

86.     On information and belief, ATopTech has been and currently is directly infringing one or more claims of the '967 Patent by making, using, offering to sell, and selling within the United States products that embody the inventions disclosed and claimed in the '967 Patent, or by importing into the United States products that embody the inventions disclosed and claimed in the '967 Patent.  The ATopTech products that infringe the '967 Patent include, but are not limited to, its Aprisa or Apogee software products that embody the patented invention by physically designing integrated circuits utilizing hierarchical partitioning in a manner that infringes the '967 Patent.

87.     On information and belief, ATopTech has been and is currently actively inducing and encouraging infringement of one or more claims of the '967 Patent in violation of 35 U.S.C. § 271(b).  With actual knowledge of the '967 Patent at least as of the filing date of Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original Complaint, ATopTech actively induces and encourages its customers (including those identified on ATopTech's website) to directly infringe the '967 Patent by instructing customers to use its products in a manner that directly infringes the '967 Patent, including, for example, by instructing its customers to run the Aprisa or Apogee software products to physically design integrated circuits utilizing hierarchical partitioning in a manner that infringes the '967 Patent.  ATopTech does so with the specific intent to induce and encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

88.     On information and belief, ATopTech has been and is currently contributing to the infringement of one or more claims of the '967 Patent in violation of 35 U.S.C. § 271(c) by selling and/or offering to sell within the United States and/or importing into the United States products that are material components of systems that practice or embody the invention claimed in the '967 Patent.  With actual knowledge of the '967 Patent at least as of the filing date of Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original Complaint, ATopTech sells and offers to sell products, including Aprisa or Apogee software

AMENDED COMPLAINT

products, to its customers knowing that these products are especially made or adapted for use in a manner that infringes the '967 Patent, and knowing that these products are not staple articles or commodities of commerce suitable for any substantial non-infringing use.

89.     ATopTech's acts of direct and indirect infringement are willful, as ATopTech had actual knowledge of the '967 Patent at least as of the filing date of Synopsys' original Complaint or the date that ATopTech was served with Synopsys' original Complaint, and knew or should have known that making, using, offering to sell, selling within the United States, and/or importing into the United States its Aprisa or Apogee software products that physically design integrated circuits utilizing hierarchical partitioning in a manner that infringes the '967 Patent would infringe the '967 Patent.  But ATopTech, for example, continued to sell the Aprisa or Apogee software products despite an objectively high likelihood that such activities would infringe the '967 Patent.

90.     As a direct and proximate result of ATopTech's infringement and willful infringement of the '967 Patent, Synopsys has suffered and will continue to suffer irreparable injury unless and until ATopTech's acts of infringement are enjoined and restrained by order of this Court.  Synopsys has no adequate remedy at law and is entitled to a preliminary and permanent injunction against ATopTech and its infringing products.

91.     As a direct and proximate result of ATopTech's infringement, Synopsys suffered and will continue to suffer damages in an amount to be determined at trial.

92.     This case is an "exceptional" case within the meaning of 35 U.S.C. § 285, and Synopsys is entitled to an award of attorneys' fees.

## **COUNT XI – BREACH OF CONTRACT – BREACH OF CPLA**

93.     Synopsys incorporates paragraphs 1-92 as though fully set forth herein.

94.     ATopTech and Synopsys were parties to the CPLA, a valid contract.

95.     Synopsys performed all conditions, covenants, and promises required on its part to be performed in accordance with the CPLA's terms and conditions, and any and all other conditions required by the CPLA for ATopTech's performance occurred.

96.     On information and belief, ATopTech breached its obligations under the CPLA by

AMENDED COMPLAINT

using the licensed GoldTime software for purposes other than those specifically permitted under the agreement, including the unauthorized use and copying of Synopsys' proprietary and confidential information in violation of the license grant and improperly using reverse engineering of Synopsys' GoldTime software in violation of the CPLA to improve and modify ATopTech's products.

97.    On information and belief, ATopTech also breached its obligations under the CPLA by disclosing to its customers Synopsys' proprietary PrimeTime and GoldTime input and output formats in violation of the confidentiality restrictions contained in the CPLA. ATopTech copied the proprietary PrimeTime and GoldTime input and output formats into its Aprisa software products and Aprisa user documents, which ATopTech distributes to its customers.

98.    As a direct and proximate result of ATopTech's breaches, Synopsys has been damaged in an amount to be proven at trial. ATopTech misused Synopsys confidential and proprietary information against Synopsys – and for the benefit of ATopTech – to compete unfairly in the marketplace. Through its breaches, ATopTech was able to accelerate substantially the development and improvement of its products to unfairly compete with Synopsys, including Synopsys' IC Compiler, even though ATopTech did not invest the time, money and/or other resources that Synopsys did to develop such products, services and technology. As a result, Synopsys has suffered and will continue to suffer economic injury and monetary loss to its business, including, for example, lost sales and price erosion of Synopsys' products.

99.    As a direct and proximate result of ATopTech's breaches, Synopsys is also entitled to injunctive relief. In Section 10.12 of the CPLA, the parties agreed that a material breach in a manner adversely affecting intellectual property rights to the licensed software or confidential information would cause irreparable injury for which monetary damages would not suffice. ATopTech's acts of incorporating proprietary PrimeTime and GoldTime input and output formats into Aprisa user documentation and software, as well as possessing and using proprietary PrimeTime and GoldTime input and output formats and other proprietary confidential information following the CPLA's termination, materially breach Sections 5.2 and 7.3 and impair Synopsys' intellectual property rights to those materials. Unless restrained and enjoined,

AMENDED COMPLAINT

ATopTech will continue to harm Synopsys' intellectual property rights.  Synopsys' remedy at law is not adequate to compensate for these inflicted and threatened injuries, entitling Synopsys to injunctive relief requiring ATopTech to cease all use of the GoldTime software and documentation to which it no longer has a license and to "return or destroy" all copies of Synopsys' confidential information, including the GoldTime software, as required by Section 7.3 of the CPLA.

### COUNT XII – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

100.    Synopsys incorporates paragraphs 1-99 as though fully set forth herein.

101.    ATopTech entered into contracts with Synopsys under which ATopTech was provided access to certain Synopsys proprietary information, agreed to terms of confidentiality and use with respect to that proprietary information, and through those contractual relationships obtained access to SolvNet.

102.    ATopTech entered into the CPLA relating to GoldTime software.  ATopTech also entered into an agreement that provided ATopTech access to certain SpringSoft products and documentation (the "SpringSoft Agreement").  Additionally, as recently as September 2, 2012, ATopTech entered into an agreement with Synopsys under which ATopTech was permitted limited access to the Synopsys Milkyway Database and Milkyway software (the "MAP-in License").

103.    Synopsys performed all duties under these agreements and all conditions for performance by ATopTech had occurred.

104.    Through these contractual relationships, ATopTech was provided with two "site IDs"—18106 and 30946—for access to SolvNet.  As alleged above, SolvNet contains confidential Synopys information, and use of SolvNet is limited to the scope of the license agreements the users (or their companies) have with Synopsys.

105.    Nothing in the CPLA authorizes ATopTech to access or use any materials other than certain GoldTime materials.  ATopTech also agreed under the CPLA to take reasonable steps to protect the confidentiality of and avoid unauthorized use of information ATopTech

AMENDED COMPLAINT

1    obtained from Synopsys – even indirectly – including any information that would reasonably be

2    viewed as confidential based on its content or the circumstances of its disclosure.  Nothing in the

3    SpringSoft Agreement authorizes AtopTech to access or use any materials other than certain

4    SpringSoft materials.  Nothing in the MAP-in License authorizes ATopTech to access or use any

5    materials other than certain Milkyway materials. As such, these agreements contained an implied

6    covenant of good faith and fair dealing that when provided site IDs for access to SolvNet,

7    ATopTech would not abuse its access to SolvNet as a means to improperly access, use and/or

8    copy materials beyond certain GoldTime, SpringSoft and Milkyway materials permitted under

9    ATopTech's agreements with Synopsys.

10         106.    Despite this, in January and March 2013—at the same time Synopsys was

11   attempting to verify ATopTech's compliance with the CPLA—ATopTech accessed SolvNet and

12   engaged in unauthorized access to and downloading of proprietary articles, application notes,

13   FAQs, multimedia files and other documentation describing proprietary details and operation of

14   PrimeTime and IC Compiler, including how to include propagated clock latency within

15   PrimeTime Extracted Timing Models and clock tree synthesis in IC Compiler; none of which are

16   GoldTime, SpringSoft or Milkyway materials.  ATopTech's access, downloading and other use

17   of these materials was beyond the scope of its licenses with Synopsys, and not otherwise

18   permitted.

19         107.    ATopTech's acts of improperly accessing these proprietary PrimeTime and IC

20   Compiler materials on SolvNet were wrongful independent of any breach of contract itself.

21   ATopTech wrongfully maintained an ongoing contractual relationship with Synopsys and took

22   advantage of that contractual relationship to gain site IDs for SolvNet and then used to those site

23   IDs to access, use and benefit from unauthorized materials on SolvNet.  The unauthorized

24   materials on SolvNet include PrimeTime and IC Compiler materials that describe proprietary

25   details and operation of PrimeTime and ICC and contain information beyond the proprietary

26   PrimeTime and GoldTime input and output formats. ATopTech's bad faith conduct denied and

27   was calculated to deny Synopsys the benefit of those contracts, including its bargained for

28   expectation that ATopTech would respect and protect Synopsys' proprietary and confidential

1  information, including on SolvNet.

2      108.    Section 7 of the CPLA also provides that Synopsys has the right to verify

3  ATopTech's performance under the CPLA.   As such, the CPLA contained an implied covenant

4  of good faith and fair dealing that when Synopsys requested an audit to verify ATopTech's

5  compliance with the CPLA, ATopTech would not deprive Synopsys of benefits under the CPLA

6  by intentionally frustrating Synopsys' ability to verify ATopTech's performance under the CPLA.

7      109.    Despite this, ATopTech frustrated Synopsys' ability to verify ATopTech's

8  performance. Starting in 2012, ATopTech spent several months (and would have spent longer)

9  employing a strategy of forcing Synopsys to expend significant resources to obtain information

10 ATopTech never had any intention of providing.   On information and belief, ATopTech was at

11 all times aware of its obligations under the CPLA and stalled the audit to force Synopsys to

12 unnecessarily waste time and money, to frustrate Synopsys' ability to verify the extent and nature

13 of ATopTech's non-compliance with the CPLA, and to continue ATopTech's improper use of

14 and access to Synopsys confidential and proprietary information.

15     110.    ATopTech's acts surrounding Synopsys' audit requests, including unnecessarily

16 delaying Synopsys' right to verify ATopTech's performance, were wrongful independent of any

17 breach of contract itself.  ATopTech intentionally and wrongfully delayed Synopsys' requests for

18 an audit to frustrate Synopsys' ability to protect its intellectual property, increase Synopsys' costs

19 in doing so, and so that ATopTech could continue to improperly use Synopsys' confidential

20 information and deprive Synopsys of its benefits under the CPLA.

21     111.    The wrongful acts of ATopTech described herein, including its breaches of the

22 implied covenants contained in the CPLA, SpringSoft Agreement, and MAP-in License, were at

23 all relevant times undertaken in bad faith.

24     112.    Through its breaches, ATopTech misused Synopsys confidential and proprietary

25 information against Synopsys – and for the benefit of ATopTech – to compete unfairly in the

26 marketplace.  As a direct and proximate result of ATopTech's breaches, Synopsys has suffered

27 and will continue to suffer economic injury and monetary loss to its business, including, for

28 example, lost sales and price erosion of Synopsys' products, as well as monetary costs relating to

AMENDED COMPLAINT

1    Synopsys' attempts to verify ATopTech's compliance with the CPLA.

2          113.    ATopTech's breaches have caused damage to Synopsys in an amount to be proven

3    at trial.

4          114.    As a direct and proximate result of the actions of ATopTech alleged herein,

5    Synopsys has been irreparably harmed, and that harm will continue absent an injunction

6    restraining ATopTech from improperly using and accessing SolvNet and using, copying,

7    publishing, disclosing, or transferring any materials gained through the improper use and access

8    of SolvNet.

9                          **RELIEF SOUGHT**

10          WHEREFORE, Synopsys asks the Court to award judgment against ATopTech:

11          A.    For injunctive relief under 17 U.S.C. § 502 enjoining ATopTech, its officers,

12   agents, servants, employees, successors, assigns and all persons acting in concert with it or them,

13   from directly or indirectly engaging in acts that infringe Synopsys' copyrights;

14          B.    For an award of actual damages and any additional infringer's profits under 17

15   U.S.C. § 504 together with pre-judgment and post-judgment interest on the damages awarded; or

16   if elected prior to final judgment, statutory damages pursuant to 17 U.S.C. §504(c);

17          C.    For an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505;

18          D.    For a judgment that ATopTech infringed one or more claims of the '348 Patent;

19          E.    For a judgment that ATopTech infringed one or more claims of the '941 Patent;

20          F.    For a judgment that ATopTech infringed one or more claims of the '127 Patent;

21          G.    For a judgment that ATopTech infringed one or more claims of the '967 Patent;

22          H.    For preliminary and permanent injunctive relief under 35 U.S.C. § 283 enjoining

23   ATopTech, its officers, agents, servants, employees, successors, assigns and all persons acting in

24   concert with it or them, from directly or indirectly engaging in acts that infringe the patents-in-

25   suit;

26          I.    For an award of damages under 35 U.S.C. § 284, including an accounting of

27   damages, adequate to compensate Synopsys for all damages caused by ATopTech's patent

28   infringement, together with pre-judgment and post-judgment interest on the damages awarded;

1    J.    For entry of a judgment declaring this case exceptional and awarding to Synopsys

2    its reasonable attorneys' fees, disbursements and costs in accordance with at least 17 U.S.C. §§

3    505, 1203 and 35 U.S.C. § 285;

4    K.    For an award of actual damages sustained as a result of ATopTech's breach of the

5    CPLA;

6    L.    For injunctive relief requiring ATopTech to cease all use and disclosure of any

7    portion of the Synopsys software to which it no longer has a license and to "return or destroy" all

8    copies of Synopsys' confidential and proprietary information;

9    M.    For an award to Synopsys of its actual damages sustained as a result of

10   ATopTech's breach of the implied covenant of good faith and fair dealing; and

11   N.    Any and all other and legal or equitable relief that the Court deems just and proper.

12   Dated:  November 25, 2013              Respectfully submitted,

13                                          JONES DAY

14                                          By:  _____/s/ Patrick T. Michael_____
                                                       Patrick T. Michael
15
                                           Attorneys for Plaintiff
16                                         SYNOPSYS, INC.

17

18                              **JURY TRIAL DEMAND**

19   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Synopsys demands a trial

20   by jury of all issues triable of right by jury.

21

22   Dated:  November 25, 2013              Respectfully submitted,

23                                          JONES DAY

24                                          By:  _____/s/ Patrick T. Michael_____
                                                       Patrick T. Michael
25
                                           Attorneys for Plaintiff
26                                         SYNOPSYS, INC.

27

28

AMENDED COMPLAINT