Robert A. Mittelstaedt (SBN 60359)
Patrick T. Michael (SBN 169745)
Nathaniel P. Garrett (SBN 248211)
Mary H. McNeill (SBN 261500)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
pmichael@jonesday.com
ngarrett@jonesday.com
mmcneill@jonesday.com

Krista S. Schwartz (Admitted *Pro Hac Vice*)
JONES DAY
77 W. Wacker Drive, Suite 3500
Chicago, IL 60601
Telephone:  (312) 782-3939
Facsimile: (312) 782-8585
ksschwartz@jonesday.com

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>ATOPTECH, INC.,<br><br>  Defendants. | **Case No. 3:13-cv-02965 CRB**<br><br>**SYNOPSYS INC.'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISQUALIFY O'MELVENY AND MYERS LLP** |

PLEASE TAKE NOTICE that on February 7, 2013 at 10:00 a.m. in Courtroom 6 at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, 17th Floor, the Honorable Charles R. Breyer presiding, Plaintiff Synopsys, Inc., (Synopsys) will and hereby

MOTION TO DISQUALIFY

1  does move this Court to disqualify O'Melveny and Myers LLP (OMM) as counsel for Defendant
2  ATopTech, Inc. (ATopTech) in this matter.
3      Synopsys seeks an order disqualifying OMM from serving as counsel for ATopTech in
4  this matter.

# TABLE OF CONTENTS

Page

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................................................ 1

**I.   INTRODUCTION AND SUMMARY OF ARGUMENT** ...................................... 1

**II.  BACKGROUND** ............................................................................................................ 2

    A.   Magma's Eda Software/Place And Route Technology And Patents. ................... 2

    B.   This Action Involves Magma, Its Eda Patent And Its Eda Technology .............. 3

    C.   OMM Represented Magma In Substantially Related Matters ............................. 3

        1.   *Synopsys V. Magma*, N.D. Cal., 2004-2007 ............................................ 3

        2.   Delaware Litigation, 2005-2007 ............................................................... 5

        3.   Golden Gate: 2011-2012 ........................................................................... 6

        4.   Other Magma Matters ................................................................................ 6

    D.   OMM's Engagement In This Action Adverse To Synopsys/Magma. .................. 6

**III. ARGUMENT** .................................................................................................................. 7

    A.   An Attorney Is Presumed To Have Confidential Information And Is Disqualified When The Representations Are Substantially Related. ........................................... 7

    B.   This Court Has Repeatedly Ordered Disqualification In Patent Litigation Whether Or Not The Specific Patents Were The Same. ................................................. 9

    C.   The Substantial Relationship Between The Prior Magma Cases And The Current Case Precludes Omm's Adverse Representation Here. ................................. 11

**IV.  CONCLUSION** ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH,*
  No. 08-04909, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) (Illston, J.) ........................ *passim*

*Golden Gate Tech. v. Magma,*
  No. 11-cv-04862, filed .................................................................................................... 6, 12

*Hitachi, Ltd. v. Tatung Co.,*
  419 F.Supp.2d 1158 (N.D. Cal. 2006) ................................................................................ 15

*Openwave Sys., Inc. v. 724 Solutions (US) Inc.,*
  No. 09-3511, 2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) (Seeborg, J.) ...................... *passim*

*Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.,*
  No. 11-04819, 2012 WL 601811 (N.D. Cal. Feb. 23, 2012) (Alsup, J.) .......................... *passim*

*Trone v. Smith,*
  621 F.2d 994 (9th Cir. 1980) ............................................................................................... 8

**OTHER AUTHORITIES**

California Rule of Professional Conduct 3-310(E) ................................................................. 7

Rule 4-100 of the California Rules of Professional Conduct ................................................... 6

Local Rule 11 ........................................................................................................................... 7

Rule 26 ................................................................................................................. 1, 12, 13, 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Under well-settled principles of professional conduct, a law firm may not, in successive litigation, represent a new client adverse to a previous client where the matters are substantially related. Applying that rule, this Court has disqualified law firms in patent infringement cases on at least three occasions in as many years. *Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.*, No. 11-04819, 2012 WL 601811 (N.D. Cal. Feb. 23, 2012) (Alsup, J.); *Openwave Sys., Inc. v. 724 Solutions (US) Inc.*, No. 09-3511, 2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) (Seeborg, J.); *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. 08-04909, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) (Illston, J.). The conflict of interest in this patent infringement case requires disqualification of ATopTech's counsel, OMM.

For nearly a decade, OMM represented Magma Design Automation, Inc. (Magma) in a series of patent infringement lawsuits related to electronic design automation (EDA) software. OMM's representation of Magma was substantial by any measure: at least 24 matters including four patent infringement cases, with multi-million dollar billings and unfettered access to Magma personnel and documents reflected by some 700 boxes of client files and terabytes of electronic data. In 2012, Synopsys and Magma merged; thus, OMM cannot be adverse to Synopsys on any matter substantially related to the matters in which OMM previously represented Magma.

That is the situation here. This patent infringement lawsuit concerns the same EDA technology, the same products, and some of the same witnesses as the previous lawsuits in which OMM represented Magma. One patent-in-suit here—U.S. Patent No. 6,507,941 (the '941 patent)—is an EDA patent that Magma owned during OMM's representation. The '941 patent has the same USPTO classification as the EDA patents-is-suit in previous Magma lawsuits, and the subject matter of two of the previously litigated EDA patents is "expressly incorporated by reference" into the '941 patent. The two inventors and the prosecuting attorney for the '941 patent are listed as Rule 26 witnesses here and in the earlier Magma cases. OMM obtained and possesses the computer hard drives of these inventors and Magma's general counsel. The privilege log from the earlier Magma cases confirms that OMM also possesses privileged

1   communications between the '941 patent's inventors and prosecuting attorney.  With OMM
2   representing it in the previous litigation, Magma's publicly-announced strategy was to "take the
3   offensive and fully enforce its patent[s]."  And with only a small number of patents to consider at
4   the time, OMM's lawyers would normally have investigated and learned confidential information
5   about all of Magma's patents, including the '941 patent-in-suit here.

6   It is understandable why ATopTech would want to benefit from OMM's intimate
7   knowledge of ATopTech's litigation adversary.  That, however, is exactly why the governing
8   rules of professional conduct required OMM to decline ATopTech's request to represent it.  But
9   not only did OMM agree to represent ATopTech adverse to its former client, it assigned to the
10  case two of the lawyers who previously represented Magma.  Under this Court's precedents,
11  OMM should be disqualified.

**II.     BACKGROUND**

   **A.     Magma's EDA Software/Place and Route Technology and Patents.**

Magma is an EDA software company founded in 1997.  EDA software is used to design integrated circuits (also referred to as ICs or chips).[1]  As OMM explained in previous litigation, Magma's "central goal" was "to create advanced EDA software that effectively integrated logic synthesis with physical design."  Liu Decl. Ex. 4 at ¶ 70.  Magma's core team was its four founders and a "talented group of [approximately nine] engineers known for their expertise in EDA."  *Id.* Ex. 4 at ¶ 71.  Two of those engineers—Hardy Leung and Raymond Nijssen—are the inventors of the '941 patent at issue in this case.  *Id.* Ex. 1, Ex. 4 at ¶ 71.

In 2004, Magma had approximately 15 issued U.S. patents—including the '941 patent at issue in this case.  Roemer Decl. ¶ 7; Liu Decl. ¶ 38.  Magma's major product was the Blast

---

[1] EDA software simplifies the design process by, among other things, mapping the layout of a chip with cells (placement), connecting those cells (routing), and testing the chip (timing analysis). Generally, a chip designer writes code for how the chip is to function; the EDA software converts the code into cells, a process referred to as logic synthesis, and generates a data file known as a "netlist."  Using the netlist, the EDA software "places" these cells on a chip and "routes" or interconnects them by wires, a process referred to as physical design.  The software for placement and routing are commonly referred to as "place and route" tools.  Due to the critical importance of "timing" within a chip, these place and route tools integrate timing analysis to ensure the design meets its timing requirements.

1   series, including its flagship place and route tool known as Blast Fusion. Magma merged with
2   Synopsys effective February 22, 2012, and the companies now operate as a single entity. *Id.* Ex.
3   32. Synopsys continues to sell the Blast product line, which has since been renamed "Talus," and
4   another place and route tool called IC Compiler.

### B. This Action Involves Magma, Its EDA Patent and Its EDA Technology

6   Synopsys alleges that ATopTech has infringed four patents related to EDA technology,
7   including the '941 patent, which was issued to Magma in 2003 and is now owned by Synopsys.
8   ECF 1, 43 at Exs. 6-9. The '941 patent is entitled "Subgrid Detailed Routing" and relates to
9   routing methods implemented in EDA place and route tools, including in Magma's Blast and
10  Talus products. Liu Decl. Ex. 1. The inventors of the '941 patent – Hardy Leung and Raymond
11  Nijssen – are former Magma employees who did not join Synopsys. The '941 patent was
12  prosecuted by David Jakopin, a lawyer at Pillsbury Winthrop who also prosecuted several of the
13  patents at issue in Magma's previous litigation involving OMM. *Id.* ¶ 40. Synopsys' right to
14  damages includes the damages Magma incurred when Magma owned the '941 patent, before
15  merging with Synopsys. OMM's familiarity with Magma and its patents and products, all
16  obtained through OMM's prior representation of Magma, is material to many of the issues and
17  topics ATopTech can be expected to explore in this case.

### C. OMM Represented Magma In Substantially Related Matters

19  From at least 2004 through last year, OMM represented Magma in dozens of matters,
20  including matters directly involving Magma's EDA patents and products at issue here. Indeed,
21  OMM's website continues to feature Magma as one of its "representative clients" in intellectual
22  property and technology. *Id.* Ex. 34.

#### 1. *Synopsys v. Magma*, N.D. Cal., 2004-2007

24  On September 17, 2004, Synopsys sued Magma for infringing three patents relating to
25  EDA technology (*Magma* NDCA case). Liu Decl. ¶ 3, Ex. 8-9. Synopsys accused Magma's
26  flagship EDA product, Blast, of infringing these patents. Because two of the patents were
27  originally assigned to Magma, the lawsuit also involved ownership dispute over these patents. *Id.*
28  Ex. 3. Magma announced that "it will not only vigorously defend itself in this matter but will also

1    take the offensive and fully enforce its patent and other rights against Synopsys." *Id.* ¶ 12, Ex.
2    10.

3         Magma's intention to "take the offensive" was consistent with the standard defense
4    practice in patent infringement actions, and illustrates how the scope of an attorney's
5    representation in defending a patent infringement case extends beyond just the patents asserted.
6    As explained by John Cooper, an experienced patent litigator with Farella, Braun + Martell,
7    attorneys representing the defendant normally investigate the strengths and weaknesses of the
8    defendant's own patents for the purpose of asserting infringement counterclaims against the
9    plaintiff. Cooper Decl. ¶¶ 10-11. That work would have involved privileged discussions with
10   Magma personnel (legal and technical) regarding the scope and novelty of Magma's patented
11   inventions, the meaning of claims terms, conception and reduction to practice, and operation and
12   commercial success of Magma products, including Blast, that may practice the claimed
13   inventions. *Id.* ¶¶ 11, 13-14. Given the small size of Magma's patent portfolio, this review
14   would have included the '941 patent. *Id.* ¶¶ 12, 13. Indeed, ***OMM obtained a copy of the entire***
15   ***hard disk drives of both of these inventors' computers***, and had those copies in its possession
16   when it was retained to represent ATopTech in this action. Liu Decl. ¶¶ 44. OMM also has
17   imaged hard drives of Magma's CEO and General Counsel. *Id.*

18         For the next two and half years, OMM vigorously litigated the *Magma* NDCA case, which
19   was settled in April 2007. The docket report contains over 1200 entries. *Id.* Ex. 2. OMM
20   collected documents from a long list of Magma employees, including the two inventors of the
21   '941 patent—Leung and Nijssen—even though neither is an inventor of the patents in that case.
22   *Id.* ¶¶ 43-46. OMM would have worked with Magma executives, in-house counsel and technical
23   teams on various legal, financial, intellectual property and business issues, including learning
24   about the value and operation of Magma's products, assessing Magma's patents, licensing and
25   strength of its patent portfolio and working with outside patent counsel on Magma patents,
26   including David Jakopin, who prosecuted two of the patents in the *Magma* NDCA case and the
27   '941 patent here.

28

OMM had over 30 attorneys working on this matter and, for the September 2004–December 2005 time period alone, billed Magma over $8.8 million, representing 27,875 hours. Liu Decl. ¶ 36. The primary OMM attorneys representing Magma were in OMM's San Francisco office, including San Francisco's managing partner Luann Simmons who alone billed 2254 hours in those 16 months. *Id.* ¶ 36, Ex. 2 (listing numerous docket entries filed by Ms. Simmons).[2]

It cannot seriously be disputed that OMM obtained confidential and privileged information material to this case. OMM's privilege log contained over 10,000 entries including privileged communications between the '941 patent inventors—Leung and Nijssen—and '941 patent prosecutor David Jakopin. *Id*. ¶ 13, Ex. 11 (excerpts of Magma's privilege log). One entry was for a communication to obtain legal advice regarding a patent; it was dated April 27, 1999 – ***one day before Magma filed the patent application for the '941 patent***. *Id*.

### 2. Delaware Litigation, 2005-2007

On September 26, 2005, Synopsys sued Magma in Delaware, alleging Magma's Blast and Talus products infringed three additional patents ("*Magma* Delaware case"). Liu Decl. ¶ 14, Exs. 13-16. On October 25, 2005, OMM answered and counterclaimed for Magma, accusing Synopsys' IC Compiler product of infringing a Magma EDA patent. Liu Decl. Exs. 17-18. Magma later amended its counterclaims to assert a total of five Magma EDA patents. *Id.* Ex. 19, 20-23. Two of the Magma EDA patents issued in the same timeframe as the '941 patent and at least two were prosecuted by David Jakopin. *Id.* ¶ 40, Exs. 18, 20. One of the patents was co-invented by a then Magma and now current Synopsys employee, and witness in the *Magma* NDCA case, Patrick Groeneveld. *Id.* Ex. 18. The Delaware case was also extensively litigated. *Id.* Ex. 12. OMM's San Francisco office and Ms. Simmons were involved from the outset. *Id.* Ex. 17. The case was two months from a June 11, 2007 trial date when the parties settled. *Id.* Ex. 12.

---

[2] Synopsys only has OMM's billing records for this 16 month period and OMM has yet to provide Synopsys with its complete billing records for the Magma matters.

### 3. Golden Gate: 2011-2012

OMM also represented Magma in another EDA patent infringement case, *Golden Gate Tech. v. Magma*, No. 11-cv-04862, filed September 30, 2011 (the "*Golden Gate* case"). Liu Decl. ¶ 27, Exs. 24, 28. Golden Gate accused Magma's Talus product of infringing two EDA patents. *Id.* Exs. 25-27. At the time the case was filed, Magma and Synopsys had already signed the merger agreement and the case continued after Magma merged with Synopsys. *Id.* Exs. 29, 32. As noted, Magma's Talus line is now Synopsys', and it practices the '941 patent asserted against ATopTech in this case.

### 4. Other Magma Matters

OMM represented Magma on at least 24 separate matters, starting with the *Magma* NDCA case and ending with the *Golden Gate* case. *Id.* ¶ 37, Ex. 33. OMM has yet to disclose the nature or extent of its work on most of these matters, and there are no Magma in-house attorneys at Synopsys today to add insight. At this point, only OMM knows the full extent of its work for Magma and the confidential information it obtained.

### D. OMM's Engagement in This Action Adverse to Synopsys/Magma.

At no point did OMM raise the conflict of interest with Synopsys or ask Synopsys for a waiver. Instead, Synopsys' counsel identified the conflict when interviewing Synopsys employees and promptly raised the conflict with OMM. Stewart Decl. ¶ 2 & Ex. A. In response, OMM's general counsel stated that he had found no "compelling basis" to advise ATopTech that OMM could not represent it in this matter. *Id.* ¶ 4. OMM stated that it had screened off OMM lawyers who had represented Magma in the previous cases, not at the outset of the case, but only later when Synopsys became aware of the conflict. *Id.* ¶ 3. As shown below, even an immediate screen would have been insufficient given the conflict. But OMM did the opposite of a screen— it assigned two of its lawyers who had represented Magma (Luann Simmons and Tim Byron) to this case. ECF Nos. 18, 26. OMM has refused to disclose the extent to which it relied on its previous representation of Magma in pitching ATopTech for this case.

On discovering the conflict, Synopsys immediately requested that OMM return all its client files as required by Rule 4-100 of the California Rules of Professional Conduct and

requested additional information from OMM to assess the apparent conflict. Stewart Decl. ¶¶ 6, 8 & Ex. B, D (listing information requested from OMM). OMM dismissed Synopsys' requests for information as a "gratuitous concatenation of interrogatories." *Id.* ¶ 9 & Ex. E. OMM claimed an inability to "grasp the need on our part to answer make-shift interrogatories and document requests without a showing of good cause--as though we were a litigant," only later to express a willingness at some future time "to entertain a request to reconsider my aversion to responding to the distraction of your email interrogatories." *Id.* ¶¶ 8,10 & Ex. D, F. Two weeks later, on December 13, OMM began providing its client files, but has removed "internal communications subject to absolute work product protection" without providing any specifics and has advised that hundreds of boxes are still to be delivered. *Id.* ¶16 & Ex. K; Liu Decl. ¶ 42.

### III. ARGUMENT

#### A. An Attorney Is Presumed To Have Confidential Information And Is Disqualified When The Representations Are Substantially Related.

Pursuant to Local Rule 11, every attorney before this Court must "comply with the standards of professional conduct required of the members of the State Bar of California." N.D. Cal. Civ. Local R. 11-4(a)(1). Although disqualification is a drastic measure and generally disfavored, "'the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar.'" *Genentech,* 2010 WL 1136478, at *4 (citation omitted).

California Rule of Professional Conduct 3-310(E) prevents a former attorney from representing an adverse party when the former attorney possesses confidential information adverse to the former client. *Genentech,* 2010 WL 1136478, at *4 (citing *HF Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal.App.3d 1445, 1452 (1991)). A party seeking disqualification need not prove "actual possession of confidential information." *Id.* "It is enough to show a 'substantial relationship' between the former and current representation." *Id.* (internal quotation marks and citation omitted). "Where the party seeking disqualification demonstrates the requisite substantial relationship, 'access to confidential information by the attorney in the course of the

- 7 -
MOTION TO DISQUALIFY

first representation is presumed and ***disqualification is mandatory***.'" *Talon Research*, 2012 WL 601811, at *1 (emphasis added) (internal citations omitted).

This same point was made by the Ninth Circuit in *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir. 1980), and reiterated by Judge Seeborg:

> While the primary purpose of the substantial relationship test is to preserve the secrets and confidences communicated by a client to a lawyer, [disqualification] does not require the former client to demonstrate that confidential information *actually* was disclosed. Requiring such a showing would imperil the very confidences the rule is intended to protect. The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney.

*Openwave*, 2010 WL 1687825, at *2 (internal citations and quotations omitted).

The substantial relationship inquiry turns on the relationship between the attorney and former client with respect to the legal problem in the former representation, and the relationship between the subjects of the former and current representations. *Genentech*, 2010 WL 1136478, at *5. A "connection" exists between successive representations sufficient to warrant disqualification "whenever the 'subjects' are linked in some rational way." *Id.* at *6. Evaluation of the successive representations is not limited to "the discrete legal and factual issues involved in the compared representations." Rather, courts are guided by the common sense recognition that "an attorney may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or lawsuit at hand." *Id.* (quoting *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal.App.4th 698, 712-13 (2003)).

Thus, a substantial relationship exists when the evidence "supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Talon Research*, 2012 WL 601811, at *4 (quoting *Jessen*, 111 Cal.App.4th at 13). "Reason, logic, and common sense should be exercised in applying the substantial-relationship test." *Id*. at *4. In the context of successive patent actions, the substantial relationship test does not require a "[l]iteral identity of patents." *Id.* Requiring that the patents involved be identical or essentially the same would endorse an "untenable standard." *Openwave*, 2010 WL 1687825, at

*3. The analysis turns instead on whether it is "reasonable to assume that confidential information material to the present action would normally have been imparted to [the law firm] in the course" of the former representations. *Id.* at *2.

### B. This Court Has Repeatedly Ordered Disqualification in Patent Litigation Whether or Not the Specific Patents were the Same.

Three patent litigation cases in this District illustrate these principles.

1. In *Talon Research,* 2012 WL 601811, this Court disqualified plaintiff's lawyers in patent litigation involving NAND flash memory technology because they represented the defendant Toshiba in earlier litigation over other patents related to that same technology. In an argument OMM echoes here, the plaintiff argued that no substantial relationship existed because the specific patents at issue in the cases were different and covered different aspects of the flash memory technology (*i.e.*, the patents at issue in the former representation described the internal circuitry of memory chips, while the patents in the later case covered other aspects of the chip). *Id.* at *5-6. The Court rejected that argument, relying heavily on the fact that (as is true here) the patents in the two cases shared the same PTO classification and, in some cases, the same subclassification. *Id.* at *5. While the PTO classification system is not dispositive, "common sense dictates that similar classifications weigh in favor of similarity" for conflict of interest purposes. *Id.*

This Court also found that the plaintiff's lawyers "may have received" confidential information material to the later lawsuit because (as is again true here) the lawsuits all related to the same product line—*i.e.*, Toshiba's NAND flash products. *Talon Research*, 2012 WL 601811, at *6. The plaintiffs' lawyers also "were privy to the identities of key decision makers at Toshiba with respect to its NAND flash technology products," and "[t]here appears to overlap even among likely witnesses." *Id.* at *7. The Court thus concluded that "[e]ven if [the plaintiffs' lawyers] performed a collective memory lobotomy, Toshiba would rightly fear adverse use of information it shared in confidence. Toshiba may not be taken hostage by its former attorneys." *Id.*

2. This Court also disqualified counsel under the successive representation rule in *Openwave,* 2010 WL 1687825. Openwave sued 724 Solutions for infringement of several U.S.

1  patents relating to using mobile phones to access the internet. *See id.* at *1. When 724 Solutions
2  retained Fish & Richardson, Openwave asserted that Fish was disqualified because its lawyers
3  had previously represented Openwave in opposing an Australian patent application of Motorola.
4  *Id.* at *4. That Australian patent was not at issue in Openwave's suit against 724 Solutions. But a
5  corresponding U.S. patent of Motorola had been the basis for an obviousness rejection of some
6  claims in one of the patents Openwave was asserting against 724 Solutions—and the Court
7  concluded that it was likely that 724 Solutions would assert that U.S. Motorola patent in support
8  of an invalidity defense against Openwave. *Id.* On this basis, the Court concluded that Fish's
9  prior representation opposing the Australia application was substantially related to the suit against
10 724 Solutions, even though the opposition to the Australian patent did not require that Fish learn
11 any confidential information about any of Openwave's patents, including the patents asserted
12 against 724 Solutions, and even though (unlike in this case) Openwave did not submit any
13 evidence showing Fish in fact obtained confidential information.
14        Rejecting the same argument OMM makes here, the Court held that the test is "not what
15 information the Fish lawyers minimally would have needed to carry out their assignment *in*
16 *theory,* but what information would normally have been imparted to them under the facts of the
17 *actual* lawyer-client relationship shown by the record." *Id.* at *4 (emphasis in original). While
18 Openwave might not have disclosed any confidential information to Fish, the Court declined to
19 adopt "overly restrictive limitations on what it is reasonable to assume is communicated between
20 lawyers and their clients," because "clients should not be expected to limit themselves to giving
21 their attorneys only the information most relevant or critical to a particular engagement." *Id.* at
22 *5. Rather, "because clients often will not know what is or is not strictly relevant, it is likely that
23 they frequently provide attorneys with far more than the bare minimum the attorneys need to
24 carry out the assignment." *Id.* In light of that real-world fact, this Court found it sufficient that
25 Openwave had extensive discussions with Fish regarding the opposition to the Motorola patent in
26 which confidential information would normally have been disclosed. *Id.*
27        3. In *Genentech,* 2010 WL 1136478, this Court similarly found a substantial relationship
28 between a patent interference proceeding and a later patent infringement suit even though the

interference did not directly involve the later asserted patent. The Court found that it was enough that some of the facts at issue in the earlier proceeding would be material to the later action. *Id.* at *8. The Court rejected the argument (again echoed by OMM here) that no substantial relationship was present because the patent in the second suit was "rarely mentioned in the briefs and affidavits" in the first proceeding and played only "an insignificant role" in that proceeding. *Id.* at *8-9. Whether or not the patent at issue in the second suit was "featured prominently" in the first case is not dispositive because (just as is true here) "an attorney may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or the lawsuit at hand." *Id.* at *9 (internal citations and quotations omitted).

### C. The Substantial Relationship Between The Prior Magma Cases and The Current Case Precludes OMM's Adverse Representation Here.

The overlap between this case and the earlier cases in which OMM represented Magma is sweeping. The technology and relevant products are the same, and the relevant witnesses significantly overlap. This is more than enough to establish a "rational" connection between the matters. *Genentech,* 2010 WL 1136478 at *6. Indeed, the factual and legal similarities between the representations here are much deeper and extensive than in *Talon Research*, *Openwave*, or *Genentech*. The information OMM normally would have learned in the former representation is material to its representation now adverse to its former client.

<u>The Technology and Patents</u>: In *Talon Research*, *Genentech* and *Openwave*, the Court found a substantial relationship even though the successive representations did not involve the same patents. In each case, the Court instead emphasized that the technology of the patents were the same or similar. That is true here. The patents-in-suit here are all EDA patents relating to place and route and timing technologies. That is the same subject matter as the EDA patents at issue in the previous Magma cases. All of the patents in this case and the prior litigation are PTO Classification No. 716 and some even share the same subclassification (Liu Decl. ¶ 41) —facts that weighs in favor of finding a substantial relationship. *See Talon Research*, 2012 WL 601811, at *5. The same attorney, David Jakopin, prosecuted one of the patents-in-suit here, two of the patents-in-suit in the previous *Magma* NDCA case and at least two of the patents-in-suit in the

*Magma* Delaware case. Liu Decl. ¶ 40. The relationship here is even stronger than in the cited cases because the '941 patent here expressly incorporates by reference the contents of U.S. patent application Ser. No. 09/054,379 – the application that matured into two of the patents (patent nos. 6,453,446 and 6,725,438) involved in the *Magma* NDCA case. *See id.* Ex. 1 at 6:30-38 (incorporating '379 application); Ex. 8 at Abstract (filed as '379 application); & Ex. 9 at Abstract ("continuation" of '379 application). As a result, the subject matter of the '446 and '438 patents is not merely related to the '941 patent – it is "part of" the '941 patent. *See* MPEP § 2163.07(b) ("information incorporated is as much a part of the application as filed as if the text was repeated in the application, and should be treated as part of the text of the application as filed.").

The Products: "Overlap of the products" also supports finding a substantial relationship. *See Talon Research*, 2012 WL 601811, at *6. Magma's Blast and Talus products, the latter which is now sold by Synopsys, are involved in the current case—they practice the '941 patent— and were also at issue in the *Magma* NDCA, *Magma* Delaware, and *Golden Gate* cases.

The Witnesses: A substantial relationship may also be shown by "overlap . . . among the likely witnesses." *Talon Research*, 2012 WL 601811, at *7. Numerous former Magma employees involved in the previous cases are likely material witnesses in this action. Most significantly, Magma listed the *inventors* of the '941 patent—Leung and Nijssen—as relevant witnesses in the *Magma* NDCA case in its answer and Rule 26 disclosure. Liu Decl. Ex. 4 at 16-17; Ex. 6. They are also identified in ATopTech's Rule 26 disclosure. *Id.* Ex. 30. Patrick Groeneveld is knowledgeable about the '941 patented technology, worked extensively with OMM in the *Magma* NDCA case (OMM represented him at deposition and presented his testimony at trial) and he is also a co-inventor on one of the patents in the *Magma* Delaware case. OMM also has the files of Ed Huijbregts, who is knowledgeable about the '941 patent's technology, and presumably OMM interviewed and worked with him in the previous case when they obtained his files. Gregory Wagenhoffer, now a Senior Director, Business Development at Synopsys, was also deposed in the *Magma* NDCA case and was represented by OMM at deposition. *Id.* ¶¶ 43-46. Groeneveld, Huijbregts and Wagenhoffer are all current Synopsys employees. David Jakopin, the attorney who prosecuted the '941 Patent and at least four of the

patents in the previous *Magma* cases, was deposed in the *Magma* NDCA case and met with OMM as counsel to Magma. *Id.* ¶¶ 40, 46. OMM has also listed him as a witness in ATopTech's Rule 26 disclosure. *Id.* Ex. 30.

Because of this substantial overlap, it is inescapable that the information OMM normally would have obtained as part of its attorney-client relationship with Magma is material to this case. For example, issues of infringement and validity of the '941 patent, including claim construction, will be central to this dispute. The inventors of the '941 patent and their documents, especially documents contemporaneous with the filing of the '941 patent, would obviously be material to these issues. OMM is already privy to this information. OMM listed the inventors Leung and Nijssen as relevant witnesses in the *Magma* NDCA case, possessed their computer hard drives when it accepted its representation of ATopTech and has reviewed the inventors' privileged communications with attorney Jakopin who prosecuted the '941 patent. That these inventors are former Magma employees but *not* employed by Synopsys today further heightens the concern – only OMM knows the information it obtained from the inventors.

ATopTech can also be expected to explore issues including: (i) the enforceability of and any inequitable conduct claims relating to the '941 patent, which will involve the state of mind of the inventors, the prosecuting attorney and others at Magma involved in the prosecution of the '941 patent; (ii) the conception, reduction to practice, development and subject matter of the '941 patent, which will depend heavily on the testimony and documents of inventors Leung and Nijssen and may also involve the "incorporated" subject matter of the '446 and '438 patents from the *Magma* NDCA case; (iii) the operation and functionality of Magma products, Blast and Talus, and whether those products practice the inventions of the '941 patent, which will involve Magma technical materials and source code; (iv) the commercial success of Magma's products, which will involve Magma's documents evidencing success for those products; and (v) damages Synopsys seeks for the pre-merger time period, which will turn on the profits that Magma (not Synopsys) lost and/or the royalty that Magma (not Synopsys) was entitled to. Information relevant to all these issues is already in OMM's possession.

The materiality of the information OMM possesses is further confirmed by considering the discovery a defendant like ATopTech would typically seek. See *Genentech*, 2010 WL 1136478, at *9 (relying on the fact that the law firm likely already possessed from its former representation documents that its new client would otherwise be seeking in discovery). ATopTech can be expected to seek extensive discovery relating to Magma's products and patents, including (a) depositions of Magma employees, the inventors and the prosecuting attorney and (b) documents such as emails, invention records, engineering notebooks, technical materials and source code on the products that practice the '941 patent. ATopTech's Rule 26 initial disclosure already identifies at least three former Magma employees whom OMM also listed as witnesses in previous cases where it represented Magma: Leung, Nijssen, and Jakopin. Liu Decl. Exs. 6, 30. Again, OMM already possesses most of this discovery information, including privileged and confidential information that it would not be entitled to in discovery. Indeed, OMM may have more complete records than Synopsys acquired from Magma in the merger.

It is also likely and must be presumed that OMM analyzed the '941 patent as would have been the normal course in representing Magma. *See* Cooper Decl. ¶¶ 10-13. Magma's itself confirmed its intention to "take the offensive" and "fully enforce its patent rights," and eventually took the offensive in the *Magma* Delaware case with OMM as its counsel. It is no answer for OMM to respond that Magma did not assert the '941 patent—a decision not to assert the '941 patent still would have involved confidential exchanges with Magma.

OMM had unfettered access to Magma documents and personnel and collected extensive documentary evidence from Magma regarding all aspects of its EDA patents, technology and products. OMM obtained five computer hard drives belonging to the '941 inventors, including privileged communications between those inventors and the prosecuting attorney for the '941 patent. Liu Decl. ¶ 13, 44 & Ex. 11. OMM obtained hard drives of Magma's CEO and General Counsel and technical documents and source code for the Blast and Talus products. *Id*. ¶¶ 44-45. This is the same information OMM would be seeking in this case for use by ATopTech if OMM did not already have it from its previous representation of Magma. OMM's access to Magma confidential information was so pervasive, and trusted, that Magma provided OMM with a laptop

- 14 -

MOTION TO DISQUALIFY

1  computer that allowed OMM to remotely access Magma's secured information technology
2  systems. Roemer Decl. ¶ 9. The confidential information OMM was privy to relating to
3  Magma's patents, products, operations, sales, business, products, licensing and the like is all
4  material to issues in this case. The risk that OMM gained confidential information it can now use
5  in this case is substantial, indeed presumed.

6  Finally, OMM's argument that it erected a "screen" is unavailing. "The established rule in California is that where an attorney is disqualified from representing a client because that attorney had previously represented a party with adverse interests in a substantially related matter that attorney's entire firm must be disqualified as well, regardless of efforts to erect an ethical wall." *Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158, 1161 (N.D. Cal. 2006) (footnote omitted) (citing *Klein v. Superior Court*, 198 Cal.App.3d 894, 912-14 (1988); *Henriksen v. Great Am. Sav. & Loan*, 11 Cal.App.4th 109, 117 (1992); *Flatt v Superior Court*, 9 Cal.4th 275, 283 (1994)). And even assuming a timely screen would have been sufficient (and it is not), OMM did the opposite of erecting a screen. After presumably touting its past representation of Magma to gain ATopTech's business, OMM assigned two of its Magma lawyers to switch sides and be adverse to its former client. Nothing in the engagement letters or the rules of professional conduct permitted OMM to do that. It was OMM's duty to determine if it had a conflict, not to wait for Synopsys to figure it out.

### IV. CONCLUSION

For these reasons, the motion to disqualify should be granted.

Dated: December 30, 2013                     Respectfully submitted,

                                             JONES DAY

                                             By:      /s/ Robert A. Mittelstaedt
                                                      Robert A. Mittelstaedt

                                             Attorneys for Plaintiff
                                             SYNOPSYS, INC.

- 15 -                                       MOTION TO DISQUALIFY