DARIN SNYDER (S.B. #136003)
dsnyder@omm.com
DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701

KENNETH L. NISSLY (S.B. #077589)
knissly@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
Telephone:    (650) 473-2600
Facsimile:    (650) 473-2601

Attorneys for Defendant
ATOPTECH, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC., | Case No. 3:13-CV-02965 MMC |
| Plaintiff, | **DECLARATION OF MARTIN CHECOV IN SUPPORT OF OPPOSITION TO MOTION TO DISQUALIFY O'MELVENY & MYERS LLP** |
| v. | |
| ATOPTECH, INC., | |
| Defendant. | Date:    February 7, 2014 |
| | Time:    9:00 a.m. |

1.    I, Martin Checov, declare as follows. I am a member of the bar of the State of California and of this Court. I am a partner in the law firm of O'Melveny & Myers.

2.    I serve as the General Counsel of O'Melveny & Myers, and I have held that position since 2004. My responsibilities as General Counsel include addressing conflict issues.

3.    On November 18, 2013 I was advised by email by Mr. Michael Tubach, a partner at OMM, that he had received an email from Mr. Robert Mittelstaedt of the Jones Day firm asserting that OMM had a conflict in representing ATopTech in the above-captioned case because Synopsys was asserting a patent, the '941, that Synopsys had acquired when it acquired our former client Magma Design. The email from Mr. Mittelstaedt was the first notice that I had of Synopsys's conflict claim, despite the fact that OMM had advised Synopsys, on June 8, 2013, two weeks before the lawsuit was filed on June 26, 2013, that OMM represented ATopTech in this matter.

4.    In response to Mr. Mittelstaedt's email I launched an immediate investigation, ascertaining with the assistance of the partners handling the above-captioned case the nature of its subject matter, reviewing lists of prior files for Magma Design, and personally questioning attorneys familiar with those matters to determine whether they involved subject matters that were, as contended by Mr. Mittelstaedt, to be substantially related to those present in the above-captioned case  I concluded that there was no substantial relationship between our prior representation of Magma Design and our current representation of ATopTech because (a) no one at OMM had ever performed work of any kind on the '941 patent or on any patent that was in the same family of patents, and (b) although we had handled several matters for Magma Design within the very broad discipline of electronic design automation, as explained by the intellectual property attorneys I spoke to at OMM who had represented Magma Design, and those who were representing ATopTech, the function and purpose of the particular technologies at issue in those cases differed significantly from those over which Synopsys was suing ATopTech.

5.    Although I was confident that there was no substantial relationship between our former work for Magma Design, in an abundance of caution, I took measures to ensure that none of the lawyers representing ATopTech could be incidentally exposed to any confidential information of Magma Design in the area of electronic design automation patent work, the possession of which might be asserted, in the absence of such measures, as an alternative ground for the Firm's disqualification.  Specifically (and I notified Mr. Mittelstaedt of this undertaking

- 2 -

DECL. OF MARTIN CHECOV ISO
OPPOSITION TO MOT. TO DISQUALIFY
3:13-CV-02965 MMC

immediately), on November 22, 2013, I followed a common practice of imposing an ethical wall to screen the lawyers who were assigned to the ATopTech representation from those who had worked on Magma Design matters. Therefore I directed that our standard OMM ethical screen policy be implemented. Under this screen, on the same date, I identified the attorneys who had previously represented Magma Design on electronic design automation patent work (Former Magma Attorneys), and who had assisted ATopTech, even briefly, and instructed them to cease all work on the ATopTech matter and comply with the screen.

6.      The screening memorandum (circulated to all personnel, a true and correct copy of which is attached hereto as Exhibit A), contained the following proscriptions:

> The Former Magma Attorneys are "screened" from (i.e., precluded from any participation or involvement in) the Firm's work with respect to the ATopTech Matter. This means:
>
> (1)      The Former Magma Attorneys may not participate in the ATopTech Matter in any capacity.
>
> (2)      No attorney or staff member shall discuss the ATopTech Matter with the Former Magma Attorneys or in or near their presence, or attempt, either directly or indirectly, to obtain their assistance in connection with the ATopTech Matter.
>
> (3)      No attorney or staff member shall pose hypothetical questions to the Former Magma Attorneys based upon the facts of the ATopTech Matter.
>
> (4)      No attorney or staff member shall provide to the Former Magma Attorneys, nor shall they request or seek access to, any files or other information related to the ATopTech Matter.
>
> The ATopTech Attorneys are "screened" from (i.e., precluded from any participation or involvement in) the Firm's work with respect to the Former Magma Matters. This means:
>
> (1)      No attorney or staff member shall discuss the Former Magma Matters with the ATopTech Attorneys or in or near their presence, or attempt, either directly or indirectly, to obtain their assistance in connection with the Former Magma Matters.
>
> (2)      No attorney or staff member shall pose hypothetical questions to the ATopTech Attorneys based upon the facts of the Former Magma Matters.
>
> (3)      No attorney or staff member shall provide to the ATopTech Attorneys, nor shall they request or seek access to, any files or other information related to the Former Magma Matters.

In addition, we invoked our IntApp-based screening procedures, which, on an automated basis, precludes access to our Firm's records, document management system, accounting system and other database collections.

DECL. OF MARTIN CHECOV ISO
OPPOSITION TO MOT. TO DISQUALIFY
3:13-CV-02965 MMC

7. In a conference call with Mr. Mittelstaedt on November 27 I agreed to explain why we disagreed his conclusions; this included my analysis of the subjects of the matters involved, as well as advising him that our engagement letters with Magma Design permitted us to take on matters adverse to it in which we possessed Magma Design's confidential information subject to an ethical screen. It was clear from that call that Synopsys claimed to have enough information to take the position that the ATopTech matter was "substantially related" to one or more of our former Magma Design engagements so as to require automatic disqualification. Nevertheless, Mr. Mittelstaedt's junior partner, Mr. Stewart, began a series of interrogating emails seeking to compel us to respond to request for information concerning the details of our former representations that I had assumed must already be available to Synopsys through its acquisition of Magma Design personnel, technology and records. I informed Mr. Stewart in a series of emails that OMM would comply with its ethical obligations to maintain client confidentiality and transfer client papers and property pursuant to California Rule of Professional Conduct 3-700(D), but did not consider myself obligated to answer further questions. Expecting a request for client papers and property in the matters allegedly involving similar technology to that involved in the above-captioned litigation, on November 29, I received a demand from Mr. Stewart in the form of a letter for "all documents" (not merely client papers and property) that "describes or relates to" any of the "work undertaken by OMM on Magma Design Automation, Inc.'s ("Magma") or Synopsys' behalf," expressly made "without limitation" to Magma Design matters Mr. Stewart had previously identified as involving potentially relevant technologies.

8. I instructed our Records staff to provide the files promptly. Rather than exercise our well-established ethical right to review all of the files to identify the client papers and property subject to Rule 3-700(D), and make copies for our protection before surrendering any records, I directed our Records personnel, assisted by attorney and paralegal resources diverted from other responsibilities, to commence a rolling production of the files beginning on December 13. I understand that approximately 500 boxes of paper files, 19 encrypted CDs and one encrypted hard drive containing client papers and property located in files maintained by OMM

DECL. OF MARTIN CHECOV ISO
OPPOSITION TO MOT. TO DISQUALIFY
3:13-CV-02965 MMC

for the retention of documents received or generated in the course of the prior Magma Design representations have been provided. We have removed from the files only administrative materials and uncommunicated, absolute work product (i.e., that containing only the notes or mental impressions of our attorneys) that the ethics opinions have not treated as client papers and property under the ethical obligation to return same.

9.    As I explained to Messrs, Mittelstaedt and Stewart, our engagement letters (See Exhibits H and I to the Declaration of Craig E. Stewart In Support of Synopsys Inc.'s Motion to Disqualify O'Melveny & Myers LLP) contain advance conflict waivers. At no time has Synopsys advised me of a basis for refusing to enforce those agreements made willingly by Magma Design.

10.    I have compared the lists of attorneys who worked on any Magma Design matter and the attorneys who also have worked or are working on the ATopTech matter. There are three attorneys who appear on both lists: Luann Simmons, Tim Byron and Darin Snyder. Ms. Simmons and Mr. Byron were immediately removed from the ATopTech matter when we implemented the ethical screen. Mr. Snyder was not screened from working on the ATopTech matter because his prior work for Magma had nothing to do with any electronic design patent automation work.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __13th__ day of January, 2014 at Newport Beach, California.

_____

Martin Checov

DECL. OF MARTIN CHECOV ISO
OPPOSITION TO MOT. TO DISQUALIFY
3:13-CV-02965 MMC