1  Robert A. Mittelstaedt (SBN 60359)
   ramittelstaedt@jonesday.com
2  Krista S. Schwartz (Admitted *Pro Hac Vice*)
   ksschwartz@jonesday.com
3  Nathaniel P. Garrett (SBN 248211)
   ngarrett@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA  94104
   Telephone:    (415) 626-3939
6  Facsimile:    (415) 875-5700

7  Patrick T. Michael (SBN 169745)
   pmichael@jonesday.com
8  Heather N. Fugitt (SBN 261588)
   hfugitt@jonesday.com
9  JONES DAY
   1755 Embarcadero Road
10 Palo Alto, CA  94303
   Telephone:    (650) 739-3939
11 Facsimile:    (650) 739-3900

12 Attorneys for Plaintiff
   SYNOPSYS, INC.

13

14                 UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16                   SAN FRANCISCO DIVISION

17

18 **SYNOPSYS, INC.,**                    | **Case No. 3:13-cv-02965-MMC (DMR)**

19            **Plaintiff,**              | **SYNOPSYS, INC.'S NOTICE OF**
                                          | **MOTION AND MOTION TO**
20       **v.**                           | **DISQUALIFY DICKSTEIN SHAPIRO**
                                          | **LLP**
21 **ATOPTECH, INC.,**

22            **Defendant.**              | **Date:      August 22, 2014**
                                          | **Time:      9:00 a.m.**
23                                        | **Judge:     Hon. Maxine M. Chesney**
                                          | **Courtroom: 7, 19th Floor**
24

25

26          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

27

28

1    **NOTICE OF MOTION AND MOTION**

2        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        **PLEASE TAKE NOTICE** that Plaintiff Synopsys, Inc. will and hereby does move the

4    Court for an order disqualifying Dickstein Shapiro LLP as counsel for Defendant ATopTech, Inc.

5    in this matter. The motion will come before the Court on August 22, 2014 at 9:00 a.m., or as

6    soon thereafter as the parties may be heard in Courtroom 7 of this Court located at 450 Golden

7    Gate Avenue, San Francisco, California, 94102. This motion is based upon this Notice, the

8    accompanying Memorandum of Points and Authorities in support thereof, the supporting

9    declarations of Robert A. Mittelstaedt, Scott I. Chase, and Norman E. Brunell, the pleadings and

10   records on file herein, and such further written and oral evidence and argument as may be

11   presented at the time of the hearing.

12

13   Dated: July 11, 2014                          Respectfully submitted,

14                                                 Jones Day

15

16                                                 By:  _/s/ Robert A. Mittelstaedt_
                                                        Robert A. Mittelstaedt

17                                                 Counsel for Plaintiff
18                                                 SYNOPSYS, INC.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

    A.     Mr. Miller—Patent Prosecutor.................................................................... 2

    B.     Synopsys Is The Successor to the Privilege of Mr. Miller's Former Client. ................. 3

    C.     This Lawsuit.................................................................................................... 5

III.    LEGAL STANDARD ........................................................................................... 6

IV.    ARGUMENT ........................................................................................................ 7

    A.     DICKSTEIN SHAPIRO SHOULD BE DISQUALIFIED UNDER CALIFORNIA'S SUBSTANTIAL RELATIONSHIP TEST. ...................................... 8

        1.     Synopsys Holds the Privilege With Respect to the '967 Patent............................. 8

        2.     ATopTech Does Not Dispute that Jeffrey Miller's Prior Representation is Substantially Related to This Case........................................ 12

    B.     THE PUBLIC INTEREST DOES NOT PERMIT A PATENT PROSECUTOR TO SUBSEQUENTLY ATTACK THE SAME PATENT FOR AN ADVERSE PARTY................................................................................................. 15

V.   CONCLUSION ................................................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

Cases

*Asyst Technologies, Inc. v. Empak, Inc.*,
   962 F. Supp. 1241 (N.D. Cal. 1997) ..................................................... 1, 13, 14

*Bernhoft Law Firm, S.C. v. Pollock*,
   No. 12-CV-1608W, 2013 U.S. Dist. LEXIS 97165 (S.D. Cal. July 11, 2013) ......................... 17

*Boston Sci. Corp. v. Mirowski Family Ventures, LLC*,
   No. 1:11-cv-736-WTL-DKL, 2012 U.S. Dist. LEXIS 76307 (S.D. Ind. June 1, 2012) .. 2, 16, 18

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
   264 F. Supp. 2d 914 (N.D. Cal. 2003) ..................................................... 6

*City of Rialto v. U.S. Dep't of Defense*,
   492 F. Supp. 2d 1193 (C.D. Cal. 2007) ................................................... 10

*Commodity Futures Trading Comm'n v. Weintraub*,
   471 U.S. 343 (1985) ...................................................................... 8

*Dimenco v. SEIU*,
   No. 10-03112, 2011 U.S. Dist. LEXIS 4068 (N.D. Cal. Jan. 4, 2011) .................... 17

*Elan Transdermal, Ltd. v. Cygnus Therapeutic Systems*,
   809 F. Supp. 1383 (N.D. Cal. 1992) ...................................................... 14

*Favila v. Katten Muchin Rosenman LLP*,
   188 Cal.App.4th 189 (2010). ............................................................. 11

*Flatt v. Superior Court*,
   9 Cal.4th 275 (1994) .................................................................... 6

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*,
   No. 08-04909-SI, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) ......................... 13

*Goldstein v. Lees*,
   46 Cal.App.3d 614 (1975) ............................................................... 16

*Gregori v. Bank of Am.*,
   207 Cal.App.3d 291 (1991) ........................................................... 16, 17

*H.F. Ahmanson & Co. v. Saloman Bros.*,
   229 Cal.App.3d 1445 (1991) ........................................................... 6, 13

*Hilleby v. FMC Corp.*,
   No. C-91-0568-FMS, 1992 WL 455436 (N.D. Cal. 1992) ............................. 14, 18

*In re County of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) ............................................................. 6

*Jessen v. Hartford Cas. Ins. Co.*,
   111 Cal.App.4th 698 (2003) .............................................................. 13

*Kennedy v. Eldrige*,
   201 Cal.App.4th 1197 (2011) ............................................................. 16

*Lopez v. Banuelos*,
   No.11-466, 2013 U.S. Dist. LEXIS 127656 (E.D. Cal. Sept. 5, 2013) .................... 17

*Melendrez v. Superior Court*,
   215 Cal.App.4th 1343 (2013) ......................................................... 10, 11

*Moeller v. Superior Court*,
   16 Cal.4th 1124 (1997) .................................................................. 8

# TABLE OF AUTHORITIES
### (continued)

Page

*Monon Corp. v. Wabash Nat'l Corp.*,
764 F. Supp. 1320 (N.D. Ind. 1991) ...................................................... 16

*Morrison Knudsen Corp. v. Hancock, Roghert & Bunshoft*,
69 Cal.App.4th 223 (1999) .................................................................. 16

*Openwave Sys., Inc. v. 724 Solutions (US) Inc.*,
No. 09-3511, 2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) ................. 6, 7

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
255 F.R.D. 98 (S.D.N.Y. 2008) ............................................................ 10

*Packard Bell NEC, Inc. v. Aztech Systems LTD.*,
No. 98-7395, 2001 WL 880957 (C.D. Cal. Jan. 22, 2001) .................... 17

*Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*,
585 F. Supp. 2d 995 (N.D. Ill. 2008) .................................................... 10

*People ex rel. Dept. of Corp. v. SpeeDee Oil Change Sys., Inc.*,
20 Cal.4th 1135 (1999) ......................................................................... 7

*Postorivo v. AG Paintball Holdings, Inc.*,
No. 2991-VCP, 2008 WL 343856 (Del. Ch. Feb. 7, 2008) ..................... 9

*Radware, Ltd. v. A10 Networks, Inc.*,
No. 13-2021, 2014 U.S. Dist. LEXIS 29839 (N.D. Cal. Mar. 5, 2014) ....... 7

*Soverain Software LLC v. The Gap, Inc.*,
340 F. Supp. 2d 760 (N.D. Tex. 2004) .................................................... 9

*State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*,
72 Cal.App.4th 1422 (1999) ................................................................... 7

*Sun Studs, Inc. v. Applied Theory Assocs., Inc.*,
772 F.2d 1557 (Fed. Cir. 1985) ..................................................... 2, 14, 15

*Sunbeam Prods. Inc. v. Oliso, Inc.*,
No. 13-03577-SI, 2014 WL 892918 (N.D. Cal. Mar. 4, 2014) ............... 7

*Tekni-Plex, Inc. v. Meyner & Landis*,
89 N.Y.2d 123 (N.Y. 1996) ............................................................. 8, 10

*Telectronics Proprietary, Ltd. v. Medtronic Inc.*,
836 F.2d 1332 (Fed. Cir. 1988) ................................................. 11, 12, 18

Statutes

Cal. Bus. & Prof. Code § 6068 ............................................................ 16, 18

Cal. Evid. Code § 953 ............................................................................ 11

Rules

ABA Model R. 1.10 ................................................................................ 14

Cal. R. Prof'l Conduct 3–310 ................................................................. 6

Md. R. Prof'l Conduct 1.10 ..................................................................... 14

N.D. Cal. Local R. 11–4 .......................................................................... 6

N.D. Cal. Local R. 7-8 ............................................................................ 2

Pl.'s Mot. to Disqualify Dickstein Shapiro LLP
3:13-cv-02965-MMC (DMR)

1   **I.      INTRODUCTION**

2           For a second time, defendant ATopTech, Inc. has retained a law firm with a disqualifying

3   conflict of interest.  Jeffrey Miller—a "core member" of ATopTech's new litigation team at

4   Dickstein Shapiro LLP—was the original prosecuting attorney for one of the patents-in-suit.

5   "Few people are more likely to have confidential information with which to attack the validity of

6   a patent than the lawyers who prosecuted it."  *Asyst Technologies, Inc. v. Empak, Inc.*, 962 F.

7   Supp. 1241, 1242 (N.D. Cal. 1997).  Yet ATopTech chose to retain Mr. Miller and his law firm.

8           ATopTech was fully aware of Mr. Miller's role in prosecuting the patent when it retained

9   him.  Last year, ATopTech identified Mr. Miller in its initial disclosures as a witness "likely to

10  have discoverable information that ATopTech may use to support its claims or defenses" on the

11  topic of "Prosecution of U.S. Patent No. 6,567,967."  Mittelstaedt Decl., Ex. 1.  And ATopTech

12  admits that Mr. Miller possesses confidential information as a result of his role as patent

13  prosecutor.  *Id.* Ex. 15.

14          ATopTech has taken the position that Synopsys has no standing because it does not

15  qualify as Mr. Miller's "former client" or the "holder of the privilege."  ATopTech argues that

16  because Synopsys did not merge with Monterey Design Systems ("Monterey")—Miller's former

17  client and the previous owner of the '967 patent—but rather purchased virtually all of its assets

18  via an Asset Purchase Agreement, the attorney-client privilege did not pass to Synopsys but

19  expired with Monterey's dissolution.  That attempted distinction exalts form over substance and

20  is contrary to law, the facts, and common sense.

21          Regardless of the form of the transaction, the attorney-client privilege passes from one

22  corporation to another whenever the practical consequence of the transaction is the transfer of

23  control of the business.  Here, Synopsys purchased substantially all of Monterey's tangible and

24  intangible assets and hired the bulk of its employees; Monterey promptly dissolved and ceased

25  operations; and its business continued only at Synopsys.  This was not the mere assignment of a

26  patent or the mere transfer of a few assets from one entity to another; it was the bona fide transfer

27  of a business.

28          But even if Monterey's privilege disappeared and Synopsys did not hold it, Dickstein

1    Shapiro should still be disqualified in the public interest. Permitting the lawyer who prosecuted a

2    patent to later attack its validity is something no "court would hold … is within the bounds of

3    propriety." *Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1567 (Fed. Cir. 1985).

4    "[I]t would cast a shadow over the integrity of the patent prosecution system." *Boston Sci. Corp.*

5    *v. Mirowski Family Ventures, LLC*, No. 1:11-cv-736-WTL-DKL, 2012 U.S. Dist. LEXIS 76307,

6    at *19-20 (S.D. Ind. June 1, 2012).

7        Because this is the second time that ATopTech has retained conflicted counsel in this

8    action and because it was fully aware of the facts giving rise to the conflict, sanctions are

9    appropriate. Without sanctions, retaining conflicted counsel is a no-lose proposition for

10   ATopTech. It forces Synopsys to choose between (a) incurring the expense of another

11   disqualification motion while further delaying prosecuting of its case and ending the infringement

12   alleged in the complaint, or (b) permitting ATopTech to use the services of a lawyer who gained

13   inside information by preparing the application for one of the patents at issue. Requiring

14   ATopTech to reimburse Synopsys' expense in bringing this motion will reduce ATopTech's

15   incentive to engage in this tactic.[1]

16   **II.      BACKGROUND**

17       **A.      Mr. Miller—Patent Prosecutor.**

18       Mr. Miller, then an attorney at Lyon & Lyon, prepared, signed, and filed the provisional

19   patent application (Appl. No. 60/230,387) in September of 2000, and the non-provisional patent

20   application (Appl. No. 09/874,942) in June of 2001 that matured into the '967 patent on behalf of

21   his then-client Monterey. Mittelstaedt Decl. Exs. 5-6; Brunell Decl. ¶¶ 7-8. The application

22   originally filed by Mr. Miller issued as the '967 patent on May 20, 2003. ECF No. 43-9.

23       Mr. Miller's involvement lasted for over a year, from sometime before filing the

24   provisional application in September 2000 through the recording at the Patent Office of the

25   "Power of Attorney (Revocation of Prior Powers)" on January 18, 2002 and the Patent Office's

26   acceptance of the new Power of Attorney on September 5, 2002. Mittelstaedt Decl. Ex. 7;

27    

28       [1] As required by Civil Local Rule 7-8, Synopsys is concurrently filing a separate motion
for sanctions.

1  Brunell Decl. ¶¶ 9, 11-13.  During that process, Mr. Miller certified to the USPTO that he had

2  conducted a reasonable inquiry into the law and facts underpinning the '967 patent applications.

3  Brunell Decl. ¶ 10.

4         Preparing and filing provisional and non-provisional applications generally requires the

5  prosecutor to conduct numerous confidential communications and analyses with the applicant,

6  interview the patent inventors, review or draft the invention disclosure, draft and revise the patent

7  specification and figures, draft the claims for non-provisional applications and confirm they are

8  supported by the specification and figures, determine that the inventors are properly identified,

9  review and analyze prior art, and strategize with the patent owner and inventors.  Brunell Decl. ¶¶

10  14-15.  Interviewing the inventors includes having privileged discussions about the technology,

11  their contributions to the art, the scope of the invention, the value of the invention, as well as

12  discussions concerning competitors, current or future products that may infringe, and other

13  confidential aspects of patent filing strategies.  *Id.* ¶15.

14         In preparing and filing the non-provisional application that led to the '967 patent, a

15  competent patent attorney would have met with members of management and technical

16  personnel.  *Id.* ¶ 16.  As a result of this process, the attorney would have likely obtained access to

17  confidential material.  *Id.* ¶¶ 17-18.  Indeed, the level of detail of the confidential technical and

18  business information and strategy made available to, and developed by, the Aristo/Monterey legal

19  team would have been extensive.  *Id.* ¶¶ 19-27.  The confidential and privileged information

20  obtained by a patent prosecutor and his legal team during a patent prosecution representation

21  likely would inform various defenses that patent defendants frequently seek to assert, including

22  that the patent at issue is invalid, unenforceable, or so limited in scope that the defendant's

23  activities do not infringe the patent's claims.  *Id.* ¶ 28.

24         **B.      Synopsys Is The Successor to the Privilege of Mr. Miller's Former Client.**

25         When Mr. Miller first began prosecuting the applications that matured into the '967

26  patent, he represented Aristo Technologies.  Aristo subsequently merged with Monterey in April

27  2001.  Mittelstaedt Decl. Ex. 4.  After the merger, Mr. Miller represented Monterey before the

28  USPTO by filing the non-provisional application, after which the inventors assigned the rights to

1   the '967 patent to Monterey.  *Id.* Exs. 4, 6, 8.  ATopTech has not disputed that Aristo and

2   Monterey are former clients of Mr. Miller.

3

4

5

6

7   After the

8   transaction, Synopsys continued to maintain Monterey's patent portfolio and prosecute

9   Monterey's pending patent applications, which issued as patents for Synopsys.  *Id.* ¶ 10.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   The day-to-day operation of the

27   group consisting of the former Monterey engineers remained the same at Synopsys.  *Id.* ¶ 15.  The

28   roles of those engineers, the management structure of the group, and the technical know-how

1   continued largely unchanged within Synopsys. *Id.*



14      On October 26, 2004, one month after the Asset Purchase Agreement was signed,

15   Monterey dissolved and ceased to exist.  Mittelstaedt Decl. Exs. 2-3; Chase Decl. ¶ 20.

16      **C.   This Lawsuit.**

17      Synopsys sued ATopTech for, *inter alia*, infringing four patents including the '967 patent.

18   ECF No. 1 (complaint filed June 26, 2013); ECF No. 43 (amended complaint, filed November 25,

19   2013).  On March 7, 2014 the Court disqualified O'Melveny & Myers as ATopTech's counsel

20   because it had represented Synopsys' predecessor in substantially related matters.  ECF No. 91.

21   On May 29, 2014, the Federal Circuit denied O'Melveny's petition for a writ of mandamus.  This

22   Court accordingly ordered ATopTech "to cause new counsel to file, no later than June 16, 2014,

23   an appearance in the above-titled action."  ECF No. 112.

24      On June 10, 2014, Mr. Miller and other attorneys from Dickstein Shapiro appeared for

25   ATopTech.  ECF Nos. 116-120.  Two days later, the parties began conferring on whether

26   Dickstein Shapiro was disqualified.  Mittelstaedt Decl. Exs. 9-18.  ATopTech has declined to

27   provide any information about Mr. Miller's role in prosecuting the patent other than to say that it

28

1   was "limited." *Id.* Ex. 11.  It has conceded, however, that Mr. Miller possesses confidential,

2   privileged materials as a result of whatever role he played in prosecuting the patent.  *Id.* Ex. 15.

3   ATopTech has not disputed that Mr. Miller's previous representation of Aristo/Monterey is

4   substantially related to the '967 patent infringement claim asserted here.[2]

5   **III.    LEGAL STANDARD**

6        "The right to disqualify counsel is a discretionary exercise of the trial court's inherent

7   powers." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914,

8   918 (N.D. Cal. 2003).  Under Local Rule 11–4(a)(1), all attorneys who practice in the Northern

9   District of California must comply with the standards of professional conduct required of

10  members of the State Bar of California.  Accordingly, California law applies in determining

11  matters of disqualification.  *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).  In

12  California, a lawyer may not, "without the informed written consent of the client or former client,

13  accept employment adverse to the client or former client where, by reason of the representation of

14  the client or former client, the member has obtained confidential information material to the

15  employment." Cal. R. Prof'l Conduct 3–310(E).

16       Despite the literal wording of Rule 3-310(E), "actual possession of confidential

17  information need not be proved in order to disqualify the former attorney." *H.F. Ahmanson &*

18  *Co. v. Saloman Bros.*, 229 Cal.App.3d 1445, 1452 (1991).  This is because "[r]equiring such a

19  showing would imperil the very confidences the rule is intended to protect." *Openwave Sys., Inc.*

20  *v. 724 Solutions (US) Inc.*, No. 09-3511, 2010 WL 1687825, at *2 (N.D. Cal. Apr. 22, 2010).

21  Rather, when a "substantial relationship" exists between the subject of successive matters, access

22  to confidential information "is *presumed* and disqualification of the attorney's representation of

23  the second client is mandatory." *Flatt v. Superior Court*, 9 Cal.4th 275, 283 (1994) (emphasis in

24  _____

25       [2] Initially, Dickstein Shapiro described Mr. Miller as a "core member" of its litigation
    team in this action, listing him at the top of the list of lawyers on its pleadings.  Mittelstaedt Decl.,
26  Ex. 1; ECF No. 116 (notice of appearance).  Three weeks later, they asserted that Miller had been
    screened "at all times" from working on the '967 patent claim, "in the hopes of staving off" a
27  disqualification motion.  Mittelstaedt Decl., Exs. 16, 18.  To date, however, they have declined to
    confirm the date that the partial screen was instituted or to provide any details or documentation.
28  *Id.*

1    original); *see also Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.*, No. 11-04819,

2    2012 WL 601811, at *1 (N.D. Cal. Feb. 23, 2012) ("Where the party seeking disqualification

3    demonstrates the requisite substantial relationship, 'access to confidential information by the

4    attorney in the course of the first representation is presumed and disqualification is mandatory.'");

5    *Radware, Ltd. v. A10 Networks, Inc.*, No. 13-2021, 2014 U.S. Dist. LEXIS 29839, at *6 (N.D.

6    Cal. Mar. 5, 2014) (same); *Openwave*, 2010 WL 1687825, at *2 ("While the primary purpose of

7    the substantial relationship test is to preserve the secrets and confidences communicated by a

8    client to a lawyer, [disqualification] does not require the former client to demonstrate that

9    confidential information *actually* was disclosed."); ECF No. 61 at 7-8.

10        In assessing motions to disqualify counsel, "the paramount concern must be the

11   preservation of public trust both in the scrupulous administration of justice and in the integrity of

12   the bar." *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal.App.4th 1422, 1428 (1999).

13   "Consequently, the recognizably important right to choose one's counsel must yield to the ethical

14   considerations that embody the moral principles of our judicial process." *Id.* "Attorneys have a

15   duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the

16   legal profession and the judicial process." *People ex rel. Dept. of Corp. v. SpeeDee Oil Change

17   Sys., Inc.*, 20 Cal.4th 1135, 1146 (1999) (citations omitted). "The effective functioning of the

18   fiduciary relationship between attorney and client depends on the client's trust and confidence in

19   counsel." *Id.* (citation omitted). "The courts will protect clients' legitimate expectations of

20   loyalty to preserve this essential basis for trust and security in the attorney-client relationship."

21   *Id.* at 1147 (citation omitted).

22   **IV.    ARGUMENT**

23        It is beyond dispute that this lawsuit is substantially related to Mr. Miller's previous

24   representation of Aristo/Monterey in prosecuting the '967 patent. Contrary to ATopTech's

25   argument, Synopsys has standing to seek disqualification. Synopsys holds the attorney-client

26   privilege vis-à-vis the '967 patent, and thus Mr. Miller may not be adverse to Synopsys in this

27   substantially related matter. *Sunbeam Prods. Inc. v. Oliso, Inc.*, No. 13-03577-SI, 2014 WL

28   892918, at *3-4 (N.D. Cal. Mar. 4, 2014) (granting motion to disqualify by holder of the privilege

based on attorney's previous representation of predecessor corporation on substantially related matters).  Even if Synopsys did not hold the privilege, the public interest does not permit an attorney who prosecutes a patent for one client to represent another entity in defending against a claim of infringing the same patent.  This is particularly true where the attorney has been identified as a witness.

**A.    DICKSTEIN SHAPIRO SHOULD BE DISQUALIFIED UNDER CALIFORNIA'S SUBSTANTIAL RELATIONSHIP TEST.**

**1.    Synopsys Holds the Privilege With Respect to the '967 Patent.**

ATopTech's position that Synopsys cannot object to Mr. Miller's adverse representation in this case because he represented Aristo and Monterey, rather than Synopsys itself, in prosecuting the '967 patent is contrary to California law and the underlying facts.  Because Synopsys is the successor/assignee/"similar representative" of Aristo, Synopsys holds the attorney-client privilege and stands in Monterey's shoes for purposes of this motion to disqualify.

Putting form over substance, ATopTech argues that because Synopsys acquired Monterey via an asset purchase agreement rather than merger, the attorney-client privilege did not pass to Synopsys.  Whether an asset sale results in the transfer of the attorney-client privilege turns on the "practical consequences" of the transaction.  *See Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 133 (N.Y. 1996) ("When ownership of a corporation changes hands, whether the attorney-client relationship transfers as well to the new owners turns on the practical consequences rather than the formalities of the particular transaction.").  Under this "practical consequences" test, "the mere transfer of assets with no attempt to continue the pre-existing operation generally does not transfer the attorney-client relationship."  *Id.*  Conversely, "'where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations.  It follows that, under such circumstances, the prior attorney-client relationship continues with the newly formed entity."  *Moeller v. Superior Court*, 16 Cal.4th 1124, 1138 (1997) (quoting *Tekni-Plex*, 89 N.Y.2d at 133); *see also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) ("when control of a corporation passes to new

1    management, the authority to assert and waive the corporation's attorney-client privilege passes

2    as well"); *Postorivo v. AG Paintball Holdings, Inc.*, No. 2991-VCP, 2008 WL 343856, at *5 (Del.

3    Ch. Feb. 7, 2008).

4         *Soverain Software LLC v. The Gap, Inc.*, 340 F. Supp. 2d 760, 763 (N.D. Tex. 2004), is

5    instructive.  In *Soverain*, the defendant (Amazon) argued that Soverain could not assert the

6    attorney-client privilege because it "merely purchased a small portion of [the former owners']

7    assets."  340 F. Supp. 2d at 762.  The district court acknowledged that, on the one hand, "a mere

8    transfer of some assets or a single patent from one corporation to the other does not transfer the

9    attorney-client privilege."  *Id.* at 763.  On the other hand, "[i]f the practical consequences of the

10   transaction result in the transfer of control of the business and the continuation of the business

11   under new management, the authority to assert or waive the attorney-client privilege will follow

12   as well."  *Id.*  The evidence showed that Soverain maintained the patents covering the product,

13   that engineering personnel from the predecessor continued to work for Soverain, that two of the

14   inventors of the patents were consultants to Soverain, and that Soverain continued to sell the

15   predecessor corporation's product.  *Id.*  On those facts, the court held that "Soverain is a

16   successor to the [prior owners'] business and the attorney-client privilege that attended that

17   business."  *Id.*[3]

18        Synopsys' acquisition of Monterey is akin to the transaction in *Soverain*, and cannot fairly

19   be characterized as a mere transfer of some assets.  ████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████  As far as Synopsys

22   is aware, none of Monterey's remaining assets was sold or distributed to other entities.  And just

23   one month after the Asset Purchase Agreement, Monterey dissolved and ceased operating as a

24   corporate entity.  All these facts weigh strongly in favor of a finding that the privilege passed to

25        [3] *See also* Opinion & Order, *SimpleAir, Inc. v. Microsoft Corp.*, No. 2:11-cv-416-JRG
26   (N.D. Tex. Aug. 27, 2013) (ECF No. 445) (holding that, under *Soverain*, privilege passed to
     successor corporation that acquired "the vast majority" of the predecessor corporation's assets,
27   was formed by inventors of the patents at issue, and employed several of predecessor's employees,
     signaling "a significant degree of continuity in the areas of corporate knowledge, management,
28   and experience").

1   Synopsys.  *See City of Rialto v. U.S. Dep't of Defense*, 492 F. Supp. 2d 1193, 1201 (C.D. Cal.

2   2007) (privilege passed when successor acquired "substantially all" of the predecessor's assets

3   and no evidence that additional assets remained or were sold to another entity).

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ██████████        To be sure, Synopsys continued the Monterey enterprise in a manner congruent with

7   its own business plan and priorities – it discontinued producing the commercial products

8   developed and sold by Monterey.  ████████████████████████████████████

9   ████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████ Chase

11  Decl. ¶¶ 14-15.  This continuation of personnel also supports the conclusion that the attorney-

12  client privilege passed to Synopsys.  *See Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F.

13  Supp. 2d 995, 1003 (N.D. Ill. 2008) (attorney-client privilege transferred where "acquisition was

14  not limited to obtaining rights to the [patented material], but also included taking on employees

15  and managers from the division").

16        All of the justifications for recognizing a transfer of privilege apply with full force here.

17  Upon a transfer of corporate control, "[t]he new owner and management are entitled to all pre-

18  acquisition confidential communications regarding the predecessor company's operations because

19  such advice is germane to the business' continued performance."  *Orbit One Commc'ns, Inc. v.*

20  *Numerex Corp.*, 255 F.R.D. 98, 104-05 (S.D.N.Y. 2008).  "This conclusion comports with [the

21  purchasing company's] right to invoke the pre-merger attorney-client relationship should it have

22  to prosecute or defend against third-party suits involving the assets, rights or liabilities that it

23  assumed from [the predecessor company]."  *Tekni-Plex*, 89 N.Y.2d at 137; *see also Melendrez v.*

24  *Superior Court*, 215 Cal.App.4th 1343, 1356 (2013) (where dissolved corporation's only

25  remaining asset was insurance policies, and policies had been assigned to insurance companies,

26  "the insurers would hold [the] attorney-client privilege, and have the authority to waive it").

27  Here, Synopsys obtained virtually all of Monterey's assets, including all of its intellectual

28  property rights.  It would be grossly inequitable if Synopsys—the only entity that may claim any

1   rights to the Monterey intellectual property—were obligated to enforce and defend its rights

2   without the benefit of the attorney-client privileges that traditionally would accompany them.  If

3   the lawyer-client privilege were deemed extinguished upon the predecessor corporation's

4   dissolution, "then the [successor] corporation's ability to effectively prosecute or defend actions

5   is eviscerated." *Favila v. Katten Muchin Rosenman LLP*, 188 Cal.App.4th 189, 220 (2010).

6        Indeed, under California law, where an entity like Monterey ceases to exists, the "holder

7   of the privilege" is not limited to that entity's "successor."  Rather, the "holder of the privilege"

8   includes the "successor, *assign*, trustee in dissolution, or any *similar representative* … of a …

9   corporation … that is no longer in existence."  Cal. Evid. Code § 953(d) (emphasis added); *see*

10  *also Melendrez*, 215 Cal.App.4th at 1354 ("[I]f the corporation 'is no longer in existence' the

11  privilege is held by a 'successor, assign, trustee in dissolution, or any similar representative' of

12  the corporate entity no longer in existence.").

13       Extinguishing the privilege, as ATopTech suggests, would run afoul of California law and

14  the parties' express intentions in entering into the Synopsys-Monterey purchase agreement, which

15  expressly assigned Monterey's powers of attorney to Synopsys. ▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Whether as

23  "successor" or "assign" or "similar representative," once Monterey ceased to exist (which

24  occurred in 2004), Synopsys became the new "holder of the privilege"

25       During the meet/confer, ATopTech argued that under *Telectronics Proprietary, Ltd. v.*

26  *Medtronic Inc.*, 836 F.2d 1332 (Fed. Cir. 1988), no inherited representation flows from an asset

27  acquisition.  *See* Mittelstaedt Decl. Ex. 9.  But nothing in *Telectronics* undermines Synopsys'

28  right to protect its attorney-client privilege and disqualify Dickstein Shapiro.  In that case, the

1    plaintiff (Telectronics) filed a declaratory judgment action seeking a declaration of patent

2    invalidity, unenforceability, and noninfringement with respect to three patents.  836 F.2d at 1334.

3    The defendant (Medtronic) counterclaimed for infringement of these three patents plus one

4    additional patent ("the '242 patent").  Medtronic then moved to disqualify Telectronics' counsel

5    on the ground that they served as counsel for the original patent holder of the '242 patent, and

6    participated in the prosecution of that patent.  *Id.*  Medtronic claimed the status of "former client"

7    because the original patent holder had assigned to it the patent at issue.  The district court denied

8    the motion to disqualify—conditioned on Telectronics' counsel not raising an issue of fraud or

9    misconduct regarding the prosecution of the patent, and restricting its proof of obviousness to art

10   discovered after the issuance of the patent—and the Federal Circuit affirmed.  *Id.*  In relevant

11   part, the court held that "Medtronic was never a client [of Telectronics' counsel] because the

12   assignment of a patent does not transfer an attorney-client relationship."  *Id.* at 1336 (citing

13   cases).

14            In *Telectronics*, Medtronic's asserted right to step into the original client's shoes was

15   based on the mere assignment of a patent.  The original client still existed and, in fact, had

16   provided a written waiver to Telectronics' lawyers, permitting them to work on the case.  836

17   F.2d at 1339.  Here, however, Synopsys did not merely acquire the '967 patent through

18   assignment in a one-off transaction.  ██████████████████████████████████

19   ████████████████████████████████████████████████ in an Asset Transfer

20   Agreement that resulted in the dissolution of Monterey Design, the migration of dozens of

21   Monterey employees to Synopsys, and the continued application of Monterey know-how under

22   the Synopsys brand.  Moreover, the original client in this case no longer exists; Monterey has not,

23   and could not, provide Dickstein Shapiro with a written waiver.  *Telectronics* simply does not

24   speak to that manifestly different scenario.

              **2.      ATopTech Does Not Dispute that Jeffrey Miller's Prior
                        Representation is Substantially Related to This Case.**

25
26            Because Synopsys holds the attorney-client privilege with respect to the '967 patent,

27   Dickstein Shapiro must be disqualified under the rule that an attorney's successive representation

28

1    of clients with adverse interests mandates disqualification.  *Ahmanson*, 229 Cal.App.3d at 1452.

2    In assessing whether a "substantial relationship" exists, "courts look at the practical consequences

3    of the attorney's representation of the former client and ask whether confidential information

4    material to the current dispute would normally have been imparted to the attorney by virtue of the

5    nature of the former representation."  *Id.* at 1454.  This inquiry turns on two variables:  (1) "the

6    relationship between the attorney and the former client with respect to the legal problem involved

7    in the former representation," and (2) the relationship between the subjects of the former and

8    current representations.  *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. 08-04909-SI,

9    2010 WL 1136478, at *5 (N.D. Cal. Mar. 20, 2010) (quoting *Jessen v. Hartford Cas. Ins. Co.*,

10   111 Cal.App.4th 698, 709-12 (2003)).

11          At the first step, ATopTech cannot plausibly argue that "there is no realistic chance that

12   confidences were disclosed" to Mr. Miller because he only "enter[ed] briefly on the periphery for

13   a limited and specific purpose related solely to legal questions."  *Ahmanson*, 229 Cal.App.3d at

14   1457.  In prosecuting the '967 patent, Mr. Miller represented Aristo and Monterey for over one

15   year.  A reasonably competent attorney in Mr. Miller's position would not merely have limited

16   himself to an analysis of legal questions, but would have obtained confidential facts through

17   interviews with the inventors and the client's legal department.  Brunell Decl. ¶¶ 16-19.  Indeed,

18   any assertion that Mr. Miller's role was only peripheral would be inconsistent with his own

19   representation to the USPTO that he conducted a reasonable inquiry into the related law and facts

20   underlying the '967 patent applications.  *Id.* ¶ 10.

21          Nor can ATopTech deny that, at the second step, the "subjects" of Mr. Miller's prior

22   representation and this case "are linked in some rational manner."  *Genentech*, 2010 WL

23   1136378, at *6.  Mr. Miller's prosecution of the '967 patent is plainly related to Synopsys'

24   pending claim that ATopTech infringed the '967 patent.  For example, in *Asyst Technologies, Inc.*

25   *v. Empak, Inc.*, 962 F. Supp. 1241 (N.D. Cal. 1997), two lawyers represented Asyst Technologies

26   in prosecuting and obtaining two patents.  After the two lawyers left their firm, and became

27   partners at Wilson, Sonsini, Goodrich & Rosatti, Asyst sued Empak for infringing the same two

28   patents.  *Id.* at 1241.  The defendants, represented by Wilson Sonsini, challenged the validity of

1    Asyst's patents.  *Id.*  The court disqualified Wilson Sonsini, finding that the work performed by

2    the two lawyers "in prosecuting and obtaining the patents at issue and the work undertaken by

3    their firm, Wilson Sonsini, in challenging the validity of those same patents on behalf of different

4    clients" was substantially related.  *Id.* at 1242.  The court reasoned, "[f]ew people are more likely

5    to have confidential information with which to attack the validity of a patent than the lawyers

6    who prosecuted it."  *Id.*  And the court noted that "[a]ll courts of which I am aware and which

7    have applied California and Ninth Circuit law have disqualified a law firm that has challenged the

8    validity of a patent one of the firm's lawyers prosecuted for a former client."  *Id.* (citing *Sun

9    Studs*, 772 F.2d at 1566).

10       In accord are:  *Elan Transdermal, Ltd. v. Cygnus Therapeutic Systems*, 809 F. Supp. 1383,

11   1388 (N.D. Cal. 1992) ("It is clear that Irell's work as Cygnus' intellectual property counsel while

12   Cygnus prepared for and made the patent application that allegedly infringes the '853 patent is

13   substantially related to its current representation of Elan."); and *Hilleby v. FMC Corp.*, No. C-91-

14   0568-FMS, 1992 WL 455436, at *2 (N.D. Cal. 1992) ("Where a member of a law firm prosecuted

15   a patent for an adverse party, and then later joined a law firm which sought to deem that very

16   patent invalid, the Federal Circuit has held those two matters to be substantially related.").

17       The conflict of interest is even more pronounced here.  In *Asyst*, the Wilson Sonsini

18   lawyers who prosecuted the patents for Asyst did not work on the infringement case, did not

19   discuss the patents with their colleagues, and were instructed by the firm not to do so.  962 F.

20   Supp. at 1243.  By contrast, ATopTech identified Mr. Miller as a witness in its initial disclosures,

21   and Dickstein Shapiro then positioned him as a "core member of the litigation team."

22   Mittelstaedt Decl. Exs. 1, 9.[4]

---

23       [4] During the meet/confer, Dickstein Shapiro was undecided whether it intended to rely on
its belatedly-asserted, purported partial screen in opposing this motion.  In any event, no

24   California court or any other court to Synopsys' knowledge has ever authorized the use of a
partial "screen" in which a "core member" of the litigation team is "screened" from only one

25   aspect of the case.  *See, e.g.*, ABA Model R. 1.10; Md. R. Prof'l Conduct 1.10 (where screen is
permitted to avoid vicarious disqualification, the tainted attorney be "timely screened from any

26   participation in the matter" and be "apportioned no part of the fee therefrom.")  Nor does the

27   "screen" described by Dickstein Shapiro (but not substantiated by any evidence) comply with
other requirements of *Kirk v. First American Title Insurance Co.*, 183 Cal.App.4th 776, 802-03

28   (2010), or fit its limited circumstances.  *See* ECF No. 75 at 10-12.

## B.   THE PUBLIC INTEREST DOES NOT PERMIT A PATENT PROSECUTOR TO SUBSEQUENTLY ATTACK THE SAME PATENT FOR AN ADVERSE PARTY.

Even if the attorney-client privilege did not pass to Synopsys, Dickstein Shapiro still should be disqualified in the public interest and to promote the fair administration of justice.  As several courts have held, a former patent prosecutor should be disqualified to prevent the attorney or his firm from attacking the validity of the same patent, even if the adverse party is not the attorney's former client.

In *Sun Studs, Inc. v. Applied Theory Associates, Inc.*, 772 F.2d 1557 (Fed. Cir. 1985), the Kolisch law firm represented an inventor, Howard C. Mason, by preparing, filing, and prosecuting through issuance a patent for automatic sawmills.  The patent, which was conceived during the course of the inventor's work for Sun Studs, subsequently was assigned to the company.  *Id.* at 1564.  Sun Studs sued Applied Theory Associates ("ATA") on the patent, and ATA hired the Kolisch firm.  772 F.2d at 1565.  Over ATA's objection that Sun Studs was not the client of the Kolisch firm with regard to patent, the district court granted the disqualification motion, holding that:

> While the Kolisch firm is not taking a position which is adverse to a former client, it is taking a position which is totally contrary to the work it performed for its former client. It is now questioning the validity of one of the patents it helped create. I find that the impropriety of its continued representation of ATA is such that disqualification is warranted.

*Id.* at 1565.

The Federal Circuit affirmed "under Ninth Circuit precedent," holding that, regardless whether the Kolisch firm had access to confidential information that would taint the underlying trial, disqualification was warranted due to the threat "that public perception of the legal system would be damaged."  772 F.2d at 1567.  The Federal Circuit reasoned that permitting a law firm that assisted a client in obtaining a patent to "lead the attack against the patent's validity" is something no "court would hold … is within the bounds of propriety."  *Id.*

In the meet/confer, ATopTech attempted to distinguish *Sun Studs* on the ground that Sun Studs was the equitable owner of the patent at issue.  Yet the plain language of the Federal Circuit's opinion guts that distinction.  The Federal Circuit explained that "whether it is theorized

1    that Mason and his counsel must be considered to have been acting for Sun Studs *or that public*

2    *perception of the legal system would be damaged*," the impropriety of a former patent prosecutor

3    attacking his own patent "is clear." *Sun Studs*, 772 F.2d at 1567 (emphasis added).

4          Other courts have similarly held that it is inappropriate for a patent prosecutor to

5    subsequently defend another client against an infringement claim based on the same patent. *See,*

6    *e.g.*, *Monon Corp. v. Wabash Nat'l Corp.*, 764 F. Supp. 1320, 1323 (N.D. Ind. 1991) ("No matter

7    who the clients were or are; no matter what confidential information is possessed by whom, this

8    simple circumstance gives 'an unsavory appearance of conflict of interest that is difficult to dispel

9    in the eyes of the lay public—or for that matter the bench and bar.'"); *Boston Sci. Corp.*, 2012

10   U.S. Dist. LEXIS 76307, at *19-20 ("permitting a law firm to later question the validity of patents

11   it helped prosecute would cast a shadow over the integrity of the patent prosecution system").

12         The Federal Circuit's reasoning in *Sun Studs* is harmonious with California cases

13   confirming that "no California case has held that only a client or former client may bring a

14   disqualification motion." *Kennedy v. Eldrige*, 201 Cal.App.4th 1197, 1204 (2011).  In particular,

15   California precedent holds that disqualification may be predicated on the risk that an attorney will

16   expose the confidences of a non-client adversary if "there exists a genuine likelihood that the

17   status or misconduct of the attorney in question will affect the outcome of the proceedings before

18   the court." *Id.* at 1205.  Disqualification is thus proper where, "as a result of a prior

19   representation or through improper means, there is a reasonable probability counsel has obtained

20   information the court believes would likely be used advantageously against an adverse party

21   during the course of the litigation." *Id.*; *see also Gregori v. Bank of Am.*, 207 Cal.App.3d 291,

22   308-09 (1991) (same); *Goldstein v. Lees*, 46 Cal.App.3d 614, 619-20 (1975) (holding that conflict

23   of interest exists and attorney violated California Business & Professions Code § 6068(e) when

24   attorney "accepted employment which surely at best must have tempted him to reveal or to

25   improperly monopolize the confidences and secrets of his former client"); *Morrison Knudsen*

26   *Corp. v. Hancock, Roghert & Bunshoft*, 69 Cal.App.4th 223, 253 (1999) (granting non-client's

27   motion to disqualify based on attorney's prior representation of corporate affiliate in related

28   matter; if the attorney's relationship with the corporate family "may give the attorney a

1    significant practical advantage in a case against an affiliate, then the attorney can be

2    disqualified").

3        The same rule applies in federal courts – standing to bring a disqualification motion is not

4    limited to clients or former clients.  To the contrary, "[j]udges within the Northern District

5    consistently have … adopt[ed] the view that non-clients have standing to bring a motion for

6    disqualification." *Dimenco v. SEIU*, No. 10-03112, 2011 U.S. Dist. LEXIS 4068, at *10 n.4

7    (N.D. Cal. Jan. 4, 2011); *see also Bernhoft Law Firm, S.C. v. Pollock*, No. 12-CV-1608W, 2013

8    U.S. Dist. LEXIS 97165, at *8 (S.D. Cal. July 11, 2013) (adopting analysis in *Kennedy*).

9        For example, in *Packard Bell NEC, Inc. v. Aztech Systems LTD.*, No. 98-7395, 2001 WL

10   880957 (C.D. Cal. Jan. 22, 2001), the district court disqualified counsel who first represented a

11   former Packard Bell employee (and thereby obtained confidential information about Packard

12   Bell), and then sought to represent the defendant, Aztech, against Packard Bell.  The court held

13   that disqualification was warranted under Rule 3-310, even though the tainted counsel never

14   represented Packard Bell itself.  The court explained that disqualification is warranted when the

15   attorney "wrongfully acquired an unfair advantage that undermines the integrity of the judicial

16   process and will have a continuing effect on the proceedings before the court." *Id.* at *9 (quoting

17   *Gregori*, 207 Cal.App.3d at 301).  Thus, when "as a result of a prior representation or through

18   improper means, there is a reasonable probability counsel has obtained information the court

19   believes would likely be used advantageously against an adverse party during the course of the

20   litigation," disqualification serves "the useful purpose of eliminating from the case the attorney

21   who could most effectively exploit the unfair advantage." *Id.* at *9-10 (quoting *Gregori*, 207

22   Cal.App.3d at 309); *see also Lopez v. Banuelos*, No.11-466, 2013 U.S. Dist. LEXIS 127656, at

23   *11 (E.D. Cal. Sept. 5, 2013) ("Courts may disqualify an attorney when it has been satisfactorily

24   established that the attorney has acquired an unfair advantage that undermines the integrity of the

25   judicial process and will have a continuing effect on the proceedings before the court.").

26       Under this authority, it matters not whether Synopsys steps into the shoes of Aristo and

27   Monterey for purposes of the '967 patent prosecution.  What matters is whether, as a result of Mr.

28   Miller's prior representation, he obtained confidential information material to this action that will

1    give him a practical advantage against Synopsys.  On that score, Mr. Miller's attorney already has

2    conceded that he has "privileged or confidential" information about the '967 patent in his

3    possession.  Mittelstaedt Decl. Ex. 15.  Mr. Miller cannot now use that information against

4    Synopsys, to the benefit of himself and his client.  *See* Cal. Bus. & Prof. Code § 6068(e) ("It is

5    the duty of an attorney … [t]o maintain inviolate the confidence, and at every peril to himself or

6    herself to preserve the secrets, of his or her client.").

7        ATopTech's identification of Mr. Miller as a witness likely to have discoverable

8    information that ATopTech may use to support its defenses on the topic of the '967 reinforces the

9    point.  It rebuts any claim that the information he gained as patent prosecutor is immaterial to this

10   case.

11       Once again, nothing in ATopTech's cited case suggests that courts look approvingly on a

12   former patent prosecutor's use of confidential information to attack the attorney's own work.  To

13   the contrary, Telectronics itself conceded "that it would be unusual to have counsel impeaching

14   their own work product."  *Telectronics*, 836 F.2d at 1338.  Critically, however, Telectronics

15   agreed that it would not raise issues of fraud or misconduct regarding the prosecution of the

16   patent, and would restrict its proof of obviousness to art discovered after the issuance of the

17   patent.  *Id.* at 1337.  Given that concession, the Federal Circuit found no ground for

18   disqualification.  *Id.*; *see also Hilleby*, 1992 WL 455436, at *3 (permitting participation of former

19   patent prosecution firm on condition that it not raise "the defenses of the invalidity,

20   unenforceability, or voidness of the … patent, or any other defense that attacks the application,

21   prosecution or issuance of the patent").

22       Synopsys is unaware of any case, however, where the former patent prosecutor was

23   permitted to attack his patent without limitation.  *See Boston Sci. Corp.*, 2012 U.S. Dist. LEXIS

24   76307, at *20-21 (former patent prosecutor agreed not to challenge validity of patent).  Yet

25   ATopTech has made no indication that it is willing to forego any defense that attacks the

26   application, prosecution or issuance of the patent, or to limit its defense in any way.  The public

27   interest and confidence in the legal system is greatly promoted—with no grave burden on

28   attorneys—from a rule prohibiting attorneys from prosecuting a patent for one client and then

1  challenging the same patent as invalid, unenforceable, or void for another.  Accordingly, even if

2  Synopsys is found not to be the holder of the privilege, Dickstein Shapiro should be disqualified

3  to preserve public trust in the scrupulous administration of justice and the integrity of the bar.

4  **V.      CONCLUSION**

5          For these reasons, Dickstein Shapiro LLP should be disqualified from serving as counsel

6  for ATopTech in this matter.

7  Dated: July 11, 2014                          Respectfully submitted,

8                                                Jones Day

9

10                                               By:  */s/ Robert A. Mittelstaedt*
                                                     Robert A. Mittelstaedt
11

12                                               Counsel for Plaintiff
                                                 SYNOPSYS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28