1   Robert A. Mittelstaedt (SBN 60359)
    ramittelstaedt@jonesday.com
2   Patrick T. Michael (SBN 169745)
    pmichael@jonesday.com
3   Krista S. Schwartz (Admitted *Pro Hac Vice*)
    ksschwartz@jonesday.com
4   Joe C. Liu (SBN 237356)
    jcliu@jonesday.com
5   JONES DAY
    555 California Street, 26th Floor
6   San Francisco, CA  94104
    Telephone:     (415) 626-3939
7   Facsimile:     (415) 875-5700

8   Attorneys for Plaintiff
    SYNOPSYS, INC.

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14   SYNOPSYS, INC.,                    **Case No. 3:13-cv-02965-MMC (DMR)**

15            Plaintiff,                **PLAINTIFF SYNOPSYS' MOTION
                                        TO DISMISS DEFENDANT
16   v.                                 ATOPTECH'S COUNTERCLAIMS
                                        AND TO STRIKE AFFIRMATIVE
17   ATOPTECH, INC.,                    DEFENSES 6-8 AND
                                        MEMORANDUM OF POINTS AND
18            Defendants.               AUTHORITIES**

19                                      **Date:        March 27, 2015
20                                      Time:        09:00 AM
                                        Judge:       Hon. Maxine M. Chesney
21                                      Courtroom:   7, 19th Floor**

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2        PLEASE TAKE NOTICE that on March 27, 2015, at 9:00 a.m. before the Honorable

3   Maxine Chesney, United States District Court, San Francisco, California, Plaintiff Synopsys, Inc.

4   ("Synopsys") will, and hereby does, move the Court pursuant to Federal Rules of Civil Procedure

5   12(b)(6) and 12(f) for an Order dismissing Defendant ATopTech, Inc.'s ("ATopTech") Antitrust

6   Counterclaims and striking ATopTech's Affirmative Defenses 6-8.

7        Synopsys respectfully requests that Counts I-VI be dismissed for failure to state a claim

8   and Affirmative Defenses 6-8 be stricken for failure to allege any supporting, well-pled facts.

9        Synopsys' motion is based on this Notice of Motion and Motion, the accompanying

10   Memorandum of Points and Authorities, the complete files and records in this action, oral

11   argument of counsel, and such other and further matters as this Court may consider.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................... 2

      A.    ATopTech's Claim For Copyright Misuse Fails............................................... 3

      B.    ATopTech's Antitrust Counterclaims Suffer From Common Defects
            (Counts II-IV) ................................................................................................... 5

            1.    ATopTech's Allegations Fail To Define The Relevant Markets ............... 5

            2.    ATopTech's Antitrust Claims Are Barred To The Extent They
                  Challenge Synopsys' Efforts To Enforce Its Copyrights ......................... 8

      C.    ATopTech's Tying And Monopolization Claims Fail For Independent
            Reasons ............................................................................................................. 9

            1.    ATopTech's Section 1 Tying Claim Fails To State A Claim .................... 9

                  (a)    ATopTech Has Not Alleged A Tie ................................................ 9

                  (b)    ATopTech Has Failed To Allege Facts Supporting The
                         Remaining Elements Necessary To State A Tying Claim ........... 12

            2.    ATopTech's Section 2 Monopolization Claims Also Fail (Counts
                  III-IV)..................................................................................................... 14

                  (a)    ATopTech Lacks Of Standing To Assert Monopolization Of
                         The Verification Market (Count III) ............................................ 14

                  (b)    ATopTech Fails To Allege Harm To Competition (Counts
                         III-IV)......................................................................................... 15

                  (c)    ATopTech Fails To Allege Attempted Monopolization Of
                         The Place And Route Market (Count IV) ..................................... 16

      D.    ATopTech's State Law Claims Fail................................................................ 16

            1.    ATopTech's Cartwright Claims Are Derivative Of Its Sherman Act
                  Claims And Fail For The Same Reasons ................................................. 16

            2.    ATopTech Has Failed To State A Claim For Violation Of The
                  Unfair Competition Law ......................................................................... 16

      E.    ATopTech's Affirmative Defenses Six Through Eight Should Be Stricken ........ 17

III.  CONCLUSION .......................................................................................................... 18

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

*A & M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001)...............................................................................4

*Adobe Sys. Inc. v. Kornrumpf*,
   2011 U.S. Dist. LEXIS 80631 (N.D. Cal. July 25, 2011) ......................................5

*Allen v. AVT Event Techs., Inc.*,
   2013 U.S. Dist. LEXIS 87070 (N.D. Cal. June 20, 2013) .....................................17

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005)...............................................................................4

*Am. Prof. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof. Publs.*,
   *Inc.*, 108 F.3d 1147 (9th Cir. 1997).......................................................................11

*Ansari v. Electronic Document Processing, Inc.*,
   2012 U.S. Dist. LEXIS 128622 (N.D. Cal. Sept. 10, 2012)...................................17

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011)............................................................................3, 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... passim

*Atlantic Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990) ..............................................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... passim

*Bhan v. NME Hosps., Inc.*,
   772 F.2d 1467 (9th Cir. 1985)...............................................................................14

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
   182 F.3d 1096 (9th Cir. 1999)............................................................................5, 6

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962)................................................................................................6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES (CONTINUED)

**Page**

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998) ............................................................... 8

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) ........................................................... 16, 17

*Coalition for ICANN Transp., Inc. v. VeriSign, Inc.*,
  611 F.3d 495 (9th Cir. 2010) ................................................................ 16

*Colonial Med. Group, Inc. v. Catholic Healthcare West*,
  2010 U.S. Dist. LEXIS 51350 (N.D. Cal. May 25, 2010) ....................... 2, 7

*Digital Sun v. Toro Co.*,
  2011 U.S. Dist. LEXIS 30222 (N.D. Cal. Mar. 22, 2011) ...................... 17

*E&E Co. v. Kam Hing Enters., Inc.*,
  2008 U.S. Dist. LEXIS 65323 (N.D. Cal. Aug. 25, 2008) ......................... 7

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
  703 F.2d 534 (9th Cir. 1983) ................................................................ 10

*Golden Gate Pharmacy Servs. v. Pfizer, Inc.*,
  2009 U.S. Dist. LEXIS 96003 (N.D. Cal. Oct. 14, 2009) ...................... 5, 7

*Gyore v. Krausz Precision Mfg. Corp.*,
  1992 U.S. App. LEXIS 2241 (9th Cir. Feb. 11, 1992) ............................ 11

*Handgards, Inc. v. Ethicon, Inc.*,
  601 F.2d (9th Cir. 1979) ..................................................................... 8, 9

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
  547 U.S. 28 (2006) .............................................................................. 5, 9

*In re Rubber Chems. Antitrust Litig.*,
  2008 U.S. Dist. LEXIS 98393 (N.D. Cal. Dec. 4, 2008) ...................... 14, 15

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ......................................................................... 17

*In re Webkinz Antitrust Litig.*,
  2010 U.S. Dist. LEXIS 111810 (N.D. Cal. Oct. 20, 2010) ..................... 13

1

**TABLE OF AUTHORITIES (CONTINUED)**

2

**Page**

3

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,

4       466 U.S. 2 (1984) ........................................................................................................9, 13

5

*Kearns v. Ford Motor Co.*,

6       567 F.3d 1120 (9th Cir. 2009) ........................................................................... passim

7

*Kendall v. Visa U.S.A., Inc.*,

8       518 F.3d 1042 (9th Cir. 2008) .................................................................................2, 4

9

*Kottle v. Nw. Kidney Ctrs.*,

10      146 F.3d 1056 (9th Cir. 1998) .....................................................................................8

11

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*

        884 F.2d 504 (9th Cir. 1989) ................................................................................14, 15

12

13

*Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*,

        2014 U.S. Dist. LEXIS 133540 (N.D. Cal. Sept. 22, 2014) ......................................14

14

*Marin Co. Bd. Of Realtors, Inc. v. Palsson*,

15      16 Cal. 3d 920 (1976) ................................................................................................16

16

*Monsanto Co. v. Scruggs*,

17      459 F.3d 1328 (Fed. Cir. 2006) ...................................................................................9

18

*N. Pac. Ry. Co. v. United States*,

19      356 U.S. 1 (1958) .........................................................................................................9

20

*nSight v. PeopleSoft*,

        296 Fed. App'x 555 (9th Cir. 2008) .......................................................................5, 16

21

22

*NYNEX Corp. v. Discon, Inc.*,

        525 U.S. 128 (1998) ...................................................................................................15

23

*Oracle Am., Inc. v. Terix Computer Co.*,

24      2014 U.S. Dist. LEXIS 158060 (N.D. Cal. Nov. 7, 2014) ...........................................4

25

*Paladin Assocs., Inc. v. Mont. Power Co.*,

26      328 F.3d 1145 (9th Cir. 2003) ................................................................................9, 12

27

28

Motion to Dismiss and Strike
Case No. 3:13-cv-02965-MMC (DMR)

# TABLE OF AUTHORITIES (CONTINUED)

**Page**

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
121 F.3d 516 (9th Cir. 1997)............................................................................4

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
508 U.S. 49 (1993)...........................................................................................8

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
124 F.3d 430 (3d Cir. 1997).............................................................................6

*Rebel Oil Co. v. Atl. Richfield Co,*
51 F.3d 1421 (9th Cir. 1995).....................................................................5, 6, 13

*Sec. People, Inc. v. Classic Woodworking, LLC,*
2005 U.S. Dist. LEXIS 44641 (N.D. Cal. Mar. 4, 2005)....................................17

*Sidibe v. Sutter Health,*
4 F. Supp. 3d 1160, 1178 (N.D. Cal. 2013) ......................................................13

*Spectrum Sports, Inc. v. McQuillan,*
506 U.S. 447 (1993).........................................................................................5

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011)...........................................................................2

*Surface Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.,*
2013 U.S. Dist. LEXIS 143478 (N.D. Cal. Oct. 3, 2013).....................9, 15, 16, 18

*Tanaka v. Univ. of So. Cal.,*
252 F.3d 1059 (9th Cir. 2001)....................................................................5, 6, 7

*United States v. E.I. du Pont de Nemours & Co.,*
351 U.S. 377 (1956).........................................................................................6

*USS-Posco Indus. v. Contra Costa Co. Bldg. & Constr. Trades Council, AFL-CIO,*
31 F.3d 800, 810 (9th Cir. 1994).......................................................................8

*Vess v. Ciba-Geigy Corp., USA,*
317 F.3d 1097 (9th Cir. 2003)..........................................................................11

# TABLE OF AUTHORITIES (CONTINUED)

**Page**

*Voltage Pictures, LLC v. Revitch,*
   2015 U.S. Dist. LEXIS 10330 (D. Or. Jan. 23, 2015).................................................4

*Ways & Means, Inc. v. IVAC Corp.,*
   506 F. Supp. 697 (N.D. Cal. 1979) ..........................................................................10


**STATUTES**

15 U.S.C. § 15(b) ........................................................................................................12

Cal. Bus. & Prof. Code § 17200 ...........................................................................16, 17


**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ..........................................................................................................11

Fed. R. Civ. P. 9(b) ................................................................................................ passim

Fed. R. Civ. P. 12(b)(6)......................................................................................2, 14, 16

Fed. R. Civ. P. 12(f) ....................................................................................................17

Motion to Dismiss and Strike
Case No. 3:13-cv-02965-MMC (DMR)

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3        Over two years ago, Synopsys filed suit against ATopTech to halt ATopTech's

4    widespread and ongoing infringement of Synopsys' intellectual property rights and seek redress

5    for breaches of certain licensing agreements.  Discovery on Synopsys' claims closes in just four

6    months and trial is set for next February.  In a transparent attempt to delay the case and divert

7    attention from its ongoing infringement, ATopTech asserts copyright misuse and antitrust

8    counterclaims alleging that Synopsys' "use" of, and efforts to protect, its intellectual property are

9    designed "to eliminate competition in the place and route software market."  ECF No. 210 ¶ 54.

10   Despite having nearly two years to draft its counterclaims, ATopTech rests solely on labels,

11   conclusory assertions, and recitations of legal elements without any facts giving rise to a plausible

12   entitlement to relief.

13       ATopTech's copyright misuse claim fails to identify any facts giving rise to a claim.  The

14   doctrine is "sparingly" used only where a copyright holder improperly uses a copyright to injure

15   competition by conditioning the licensing of the copyright on a customer's promise not to use a

16   competitor's products.  ATopTech does not allege any such condition or any injury to

17   competition.  Thus, its claim fails as a matter of law.

18       ATopTech's federal and state antitrust counterclaims fare no better.  As a threshold

19   matter, ATopTech has not defined the relevant markets to assess market or monopoly power.

20   Each antitrust claim fails for multiple other reasons.  The tying claim fails to allege a product tie

21   or impact in the tied market.  The monopolization claims fail because ATopTech lacks standing,

22   alleges no facts giving rise to a plausible claim of exclusionary conduct and alleges no facts

23   indicating an impact on competition.

24       ATopTech's Unfair Competition Law ("UCL") claim is based on the same theories as the

25   defective copyright misuse and antitrust claims and fails for the same reasons.

26       Finally, ATopTech's Answer asserts a litany of affirmative defenses that plead no

27   supporting factual allegations.  Accordingly, Affirmative Defenses 6-8 should be stricken.

28

1

## II.     ARGUMENT

2        Rule 12(b)(6) requires dismissal of any cause of action that fails to state facts sufficient to

3   state a claim for relief.  Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable

4   legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Colonial*

5   *Med. Group, Inc. v. Catholic Healthcare West*, 2010 U.S. Dist. LEXIS 51350, at *7 (N.D. Cal.

6   May 25, 2010).  A complaint may survive a motion to dismiss only if it pleads sufficient

7   evidentiary facts (as opposed to ultimate facts) which, if accepted as true, "'state a claim to relief

8   that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

9   *v. Twombly*, 550 U.S. 544, 570 (2007)).[1]  This standard incorporates two important principles.

10  First, a complaint cannot rest on conclusory allegations, unreasonable inferences or legal

11  conclusions masquerading as facts.  As this Court has explained, "'a plaintiff's obligation to

12  provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

13  formulaic recitation of the elements of a cause of action will not do.'"  *Colonial Med.*, 2010 U.S.

14  Dist. LEXIS 51350, at *7 (quoting *Twombly*, 550 U.S. at 555).  The complaint must "answer the

15  basic questions: who, did what, to whom (or with whom), where, and when?"  *Kendall v. Visa*

16  *U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).  Second, a plaintiff's factual allegations must

17  "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679 ("only a complaint that

18  states a plausible claim for relief survives a motion to dismiss.").  The plausibility standard

19  requires allegations of actual facts that make a claim for relief plausible, not merely conceivable.

20  *Twombly*, 550 U.S. at 570.

21        Where a complaint contains allegations of fraudulent misrepresentations, it is subject to

22  the heightened pleading standards of Fed. R. Civ. P. 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d

23

24        [1] The Court in *Twombly* noted that the costs of modern federal antitrust litigation, in
    particular, counsels against sending the parties into discovery when there is no reasonable
25  likelihood that the antitrust plaintiffs can construct a claim from the events set forth in the
    complaint.  *See Twombly*, 550 U.S. at 558 ("'a district court must retain the power to insist upon
26  some specificity in pleading before allowing a potentially massive factual controversy to
    proceed.'") (internal citations omitted); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.
27  2011) (complaint must be sufficiently plausible that it is "not unfair to require the opposing party
    to be subjected to the expense of discovery.").

28

1   1120, 1126 (9th Cir. 2009).  Such allegations require specific facts regarding "the particular

2   circumstances surrounding" the alleged misrepresentations, including the "who, what, when,

3   where, and how of the misconduct alleged."  *Id.*

4   **A.     ATOPTECH'S CLAIM FOR COPYRIGHT MISUSE FAILS.**

5   Copyright misuse is a narrow doctrine, used "sparingly" and limited to where a copyright

6   holder uses a copyright to stifle competition by "conditioning the licens[ing] [of the copyright] on

7   the promise not to use competitors' products."  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157-

8   58 (9th Cir. 2011).  The purpose is to "prevent[] holders of copyrights 'from leveraging their

9   limited monopoly [granted by the copyright] to allow them control of areas outside the

10   monopoly.'"  *Psystar Corp.*, 658 F.3d at 1157 (9th Cir. 2011) (quoting *A & M Records, Inc. v.

11   Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001)).  This narrow circumscription is sound policy.

12   Otherwise, a copyright holder would face a claim of misuse whenever it sought to enforce its

13   property right, diverting resources from continued investment in the creation of new works.  Thus,

14   the doctrine is applicable only when a licensee has been *prohibited* from using a competitor's

15   products as a condition of being allowed to use the copyrighted product.  *See Psystar*, 658 F.3d at

16   1157.

17   Here, ATopTech has not alleged—nor can it—that Synopsys places any restrictions on

18   use of a competitive product as a condition of licensing its copyrighted products (PrimeTime

19   and/or GoldTime).  Instead, ATopTech alleges that Synopsys "unlawfully demanded" to inspect

20   ATopTech's Aprisa software, "threatened ATopTech," "initiated litigation against ATopTech,"

21   and "falsely assert[ed] to customers of ATopTech that ATopTech is engaging in unlawful

22   conduct and that ATopTech will not be able to continue as a viable supplier of software and

23   related false statements."  ECF No. 210 ¶¶ 54-56.  This was all done allegedly "to eliminate

24   competition" and "destroy ATopTech as a competitor."  *Id.*

25   These threadbare allegations fall far short of what is required to assert a copyright misuse

26   claim.  As an initial matter, none of the statements satisfy *Twombly* and *Iqbal*.  No facts are

27   provided regarding when the alleged demand and threats were made, under what circumstances,

28   by and to whom, and why they were "unlawful"; and what "objectively baseless" litigation was

1    initiated against ATopTech.  *See Kendall*, 518 F.3d at 1048 (complaint must "answer the basic

2    questions: who, did what, to whom (or with whom), where, and when?").  Nor does the

3    countercomplaint identify who made the false statements, to whom, when, where, and whether a

4    customer decided to purchase Synopsys software and not ATopTech's because of such statements.

5    *See id.*[2]  Nor is there any factual support that Synopsys attempted "to eliminate competition."

6           But even accepting these insufficient allegations as true, they do not support a plausible

7    conclusion, much less inference, that Synopsys has "conditioned" licensing of its products on a

8    customer's "promise" not to use a competitor's product.  Indeed, not one customer is identified

9    who promised not to use a competitor's promise.  The copyright misuse claim, therefore, fails as a

10   matter of law.  *See Oracle Am., Inc. v. Terix Computer Co.*, 2014 U.S. Dist. LEXIS 158060, at

11   *26 (N.D. Cal. Nov. 7, 2014) ("Because Defendants do not allege any … restriction on use of a

12   competitive product as a condition of licensing Oracle's copyrighted software, Defendants do not

13   plead a plausible copyright misuse defense"); *see also Psystar*, 658 F.3d at 1159; *Practice Mgmt.

14   Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 521 (9th Cir. 1997).

15          ATopTech's copyright misuse claim also fails because, at best, it is an affirmative defense,

16   not a standalone cause of action.  *Psystar*, 658 F.3d at 1157.  It has no role "beyond 'its logical

17   place as a defense to a claim of copyright infringement.'" *Altera Corp. v. Clear Logic, Inc.*, 424

18   F.3d 1079,1090 (9th Cir. 2005); *Napster*, 239 F.3d at 1026-27 (discussing copyright misuse as an

19   affirmative defense); *Practice Mgmt.*, 121 F.3d at 520 (describing the doctrine as a "defense to

20   copyright infringement").  Lacking any plausible theory under which it could allege copyright

21   misuse, ATopTech's declaratory judgment claim for copyright misuse should be dismissed

22   without leave to amend.  To the extent ATopTech is given leave to amend, it should be permitted

23

24          [2] To the extent ATopTech seeks to premise its claim of copyright misuse on allegations of
     "misleading" statements contained in ¶ 56 of the countercomplaint, those allegations sound in
25   fraud (see *infra* § C.1.a.2) and must meet Rule 9(b)'s heightened pleading standard.  *Kearns*, 567
     F.3d at 1126.  ATopTech has failed to allege the "who, what, when, where, and how of the
26   misconduct alleged" and thus fails the Rule 9(b) inquiry.  *See id.*; *see also Voltage Pictures, LLC
     v. Revitch*, 2015 U.S. Dist. LEXIS 10330, at *7 (D. Or. Jan. 23, 2015) (dismissing copyright
27   misuse claim for, among other reasons, sounding in fraud but failing to meet the particularity
     requirements of Rule 9(b)).

28

Motion to Dismiss and Strike
Case No. 3:13-cv-02965-MMC (DMR)

1    amendment only to assert, and properly plead, copyright misuse as an affirmative defense.  *See*

2    *Adobe Sys. Inc. v. Kornrumpf*, 2011 U.S. Dist. LEXIS 80631, at *8-9 (N.D. Cal. July 25, 2011)

3    ("Because a declaratory judgment of copyright misuse would not serve a useful purpose and

4    Defendants' affirmative defense will afford them sufficient clarification of their rights, the Court

5    declines to exercise its discretion to hear this counterclaim.").

6    **B.    ATOPTECH'S ANTITRUST COUNTERCLAIMS SUFFER FROM COMMON DEFECTS (COUNTS II-IV).**

7
8         Counts II-IV are defective because ATopTech has failed to define the relevant antitrust

9    markets and to the extent that they are predicated on litigation by Synopsys to enforce its

10   intellectual property and other legal rights.

11             **1.    ATopTech's Allegations Fail To Define the Relevant Markets.**

12        To state a valid tying claim, ATopTech must allege that Synopsys has market power in the

13   tying market.  *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006).  To state valid

14   monopolization claims, ATopTech must allege that Synopsys has monopoly power or (for an

15   attempted monopolization) a dangerous probability of monopoly power in the relevant market.

16   *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *nSight v. PeopleSoft*, 296 Fed.

17   App'x 555, 558 (9th Cir. 2008).  Without a proper definition of the relevant markets, it is

18   impossible to determine whether a party has sufficient market or monopoly power.  *Rebel Oil Co.*

19   *v. Atl. Richfield Co*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("Market definition is crucial.  Without a

20   definition of the relevant market, it is impossible to determine market share."); *see also Big Bear*

21   *Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104-05 (9th Cir. 1999).  Allegations that

22   the relevant markets exist "must be, as with any element of a claim, supported by sufficient

23   factual matter" or the complaint is "subject to dismissal for failure to allege sufficient facts to

24   support a cognizable . . . market."  *Golden Gate Pharmacy Servs. v. Pfizer, Inc.*, 2009 U.S. Dist.

25   LEXIS 96003, at *4 (N.D. Cal. Oct. 14, 2009) (quotations and citations omitted); *Tanaka v. Univ.*

26   *of So. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) ("[The] failure to identify a relevant market is a

27   proper ground for dismissing a Sherman Act claim."); *Big Bear*, 182 F.3d at 1105 ("Market

28   definition is . . . essential to establish a monopolization claim.").

1   A relevant market has two components:  the product market and the geographic market.

2   *See Big Bear*, 182 F.3d at 1105.  A product market consists of "commodities reasonably

3   interchangeable by consumers for the same purposes."  *See United States v. E.I. du Pont de*

4   *Nemours & Co.*, 351 U.S. 377, 395 (1956).[3]  A geographic market is the "area of effective

5   competition . . . where buyers can turn for alternative sources of supply."  *Tanaka*, 252 F.3d at

6   1063 (internal quotations omitted).

7   AToPTech alleges that Synopsys has a 90% in what ATopTech calls the " United States

8   verification software market" and a 75% share in what it has termed the "United States place and

9   route software market."  Neither of these markets, however, are defined with any semblance of

10  precision, and thus the assertions of market share are meaningless.  *See Rebel Oil Co. v. Atl.*

11  *Richfield Co*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("Market definition is crucial.  Without a

12  definition of the relevant market, it is impossible to determine market share.").  Instead,

13  ATopTech merely recites a collection of ultimate facts that must be found to define the relevant

14  antitrust markets.  *See, e.g.*, ECF No. 210 ¶¶ 49-53.  Paragraph 49, for example, alleges in

15  conclusory fashion that (i) there is "a separate and distinct product market … for software that

16  performs a 'place and route' function,'" (ii) (unnamed) customers and (unnamed) competitors

17  "regard the market for [place and route] software as a separate and distinct product market," and

18  (iii) "[t]here are no reasonably available substitutes."[4]  No facts are alleged to support any of

19  these conclusory statements.

20  No facts are offered to show that "there are no reasonably available substitutes," including

21  facts indicating what products are in and not in the alleged markets or the cross-elasticity of

22

23  [3] "The outer boundaries of a product market are determined by the reasonable
    interchangeability of use or the cross-elasticity of demand between the product itself and
24  substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325, (1962).
    "Interchangeability implies that one product is roughly equivalent to another for the use to which
25  it is put," and "[c]ross-elasticity of demand is a measure of the substitutability of products from
    the point of view of buyers." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437,
26  438 n.6 (3d Cir. 1997) (internal quotations and citations omitted).

27  [4] ATopTech's allegations regarding the "verification" software market are materially
    indistinguishable from its allegations about the "place and route" software market.  *Compare* ECF
28  No. 210 ¶¶ 49-50 *with* ¶¶ 51-52.

demand for such products.[5]  This failure alone requires dismissal.  *Colonial Med.* 2010 U.S. Dist. LEXIS 51350, at *10 ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiffs' favor, the relevant market is legally insufficient and a motion to dismiss may be granted.") (quotations and citation omitted).  Nor are there any facts to identify which competitors compete in either of the purported markets or who the consumers of products in those markets are.  *See, e.g., Tanaka*, 252 F.3d at 1063 (antitrust claims dismissed where plaintiff identified a product market but failed to allege facts to support existence of the market); *Colonial Med.*, 2010 U.S. Dist. LEXIS 51350, at *10; *Golden Gate*, 2009 U.S. Dist. LEXIS 96003, at *4; *see also Twombly* 550 U.S. at 555("formulaic recitation of the elements of a cause of action will not do").

With respect to the geographic market, ATopTech has provided no support for why the market is limited to the United States, including any facts regarding whether foreign consumers purchase these products or whether products developed by foreign manufacturers are purchased by U.S. consumers.  *Cf. E&E Co. v. Kam Hing Enters., Inc.*, 2008 U.S. Dist. LEXIS 65323, at *8 (N.D. Cal. Aug. 25, 2008) (dismissing complaint because plaintiff "fail[ed] to indicate why similar [products] originating from other countries would not be 'reasonably interchangeable by consumers for the same purposes'") (citations omitted).

ATopTech's failure to allege facts to support the existence of the relevant product and geographic markets alone requires dismissal of all the antitrust counterclaims (Counts II-IV).

---

[5] For example, ATopTech admits that PrimeTime is a "sign-off tool," which it contends is in the "verification software market."  (ECF No. 210 ¶¶ 3, 9 & 54.)  However, it also contends that "sign-off tools" like PrimeTime "are essential to the operation of the verification tool" (*Id.* ¶¶ 40).  This would suggest that sign-off tools are only one piece of "verification tools."  ATopTech fails to explain whether its "verification software market" includes only sign-off tools, both sign-off tools and verification tools, the role sign-off tools play in the verification tool, what other sign-off tools exist, etc.

2. **ATopTech's Antitrust Claims Are Barred To The Extent They Challenge Synopsys' Efforts To Enforce Its Copyrights.**

ATopTech's antitrust counterclaims are predicated, in part, on the filing of this lawsuit. ECF No. 210 ¶ 69 (tying), ¶ 78 (monopolization of "verification software market"); ¶ 90 (monopolization of "place and route software" market). Under the *Noerr-Pennington* doctrine, "those who petition government for redress are generally immune from antitrust liability." *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56 (1993). Immunity is lost "only if a party engages in 'sham' petitioning." *See USS-Posco Indus. v. Contra Costa Co. Bldg. & Constr. Trades Council, AFL-CIO,* 31 F.3d 800, 810 (9th Cir. 1994). To establish "sham petitioning," the complaint must demonstrate with specificity that the lawsuit is (1) "objectively baseless, in the sense that no reasonable litigant could realistically expect success on the merits" and (2) subjectively motivated by bad faith. *Prof'l Real Estate Investors*, 508 U.S. at 60; *see also Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998). A claimant must show "clear and convincing evidence of bad faith." *See Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d, 996 (9th Cir. 1979). Relying only on "a failed legal theory" is not enough. *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368-69 (Fed. Cir. 1998) ("Neither the bringing of an unsuccessful suit . . . not the effort to enforce a patent that falls to invalidity, subjects the suitor to antitrust liability.").

The counterclaims fall far short of satisfying the traditional 12(b)(6) standard, much less the requisite "heightened" standard. ATopTech contends only that "Synopsys has initiated litigation against ATopTech in which it has asserted numerous claims that are objectively baseless and which have been dismissed by the Court, in an attempt to eliminate competition in the place and route software market and to destroy ATopTech as a competitor." ECF No. 210 ¶ 54. ATopTech does not allege any facts to support these conclusory statements or that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors*, 508 U.S. at 60. ATopTech does not specify which claims it alleges to be objectively baseless, including whether the alleged objectively baseless claims are limited to those that were dismissed. *Cf. C.R. Bard*, 157 F.3d at 1368-69 (failed legal theory insufficient to invoke sham exception).

Nor has it alleged "clear and convincing evidence of bad faith." *Handgards*, 601 F.3d at 996. And it ignores that no claims in the original complaint were dismissed without prejudice and all claims in the Amended Complaint survived ATopTech's motion to dismiss.

In short, ATopTech's counterclaim is devoid of any explanation, conclusory or otherwise, as to how Synopsys' litigation activities here could give rise to a plausible claim of "sham litigation." Each of ATopTech's counterclaims, to the extent premised on "sham litigation," should be dismissed. *Surface Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.,* 2013 U.S. Dist. LEXIS 143478, at *18 (N.D. Cal. Oct. 3, 2013) (finding claim of sham litigation deficient for failure to "plead any facts showing those lawsuits to be 'objectively baseless.'").

## C.   ATOPTECH'S TYING AND MONOPOLIZATION CLAIMS FAIL FOR INDEPENDENT REASONS.

### 1.   ATopTech's Section 1 Tying Claim Fails to State a Claim.

ATopTech's per se and rule of reason tying claims fail for multiple reasons.

#### (a)   ATopTech has Not Alleged a Tie.

A tying arrangement is defined as "an agreement by a party to sell one product [the tying product] but only *on the condition* that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958) (emphasis added). "[W]here the buyer is free to take either product by itself there is no tying problem." *Id.* at 6 n.4.[6]  The Supreme Court has made clear that coercion to buy the second product that the customer did not want is an "essential characteristic" of a tying claim. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) ("Our cases have concluded that the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms."); *Ill. Tool*, 547 U.S. 34-35.[7]  The coercion test distinguishes

---

[6]*Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1340-41 (Fed. Cir. 2006) no tying where patented genetic portion of seed available separately)

[7] Ninth Circuit law is in accord. *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145,

transactions where customers voluntarily choose to purchase two products together from those where the seller forces the customer to do so.

(1) <u>Alleged Coercive Pricing</u>:  In a single sentence, ATopTech states that Synopsys ties its products by engaging in "discriminatory and punitive pricing for verification software to customers who wish to purchase their place and route software elsewhere (such that it is not economically viable for the customer to purchase third-party place and route software)…."  ECF No. 210 ¶ 69; *see also* ¶ 58 (same).  ATopTech offers no explanation what this sentence means and no facts to support it.  Indeed, no prices are stated anywhere in the counterclaims, which makes it impossible to assess what it means by "discriminatory and punitive pricing" and that there is no "economically viable" option.  *See, e.g.*, *Ways & Means, Inc. v. IVAC Corp.*, 506 F. Supp. 697, 702-03 (N.D. Cal. 1979) (comparing prices for products sold separately to prices for packaged goods to determine economic viability).  Nor are any facts alleged showing that any customers were in fact forced into purchasing Synopsys' products together where they would have preferred to purchase a different product.  Such allegations do not establish a cognizable tie.

(2) <u>Allegedly Misleading Statements</u>:  ATopTech next contends that Synopsys tied its products by "falsely asserting to customers of ATopTech that ATopTech is engaging in unlawful conduct and that ATopTech will not be able to continue as a viable supplier of software and related false statements."  It further alleges that Synopsys made these statements "to urge customers of ATopTech to not do business with ATopTech and to not purchase ATopTech place and route software, but to buy software from Synopsys instead, in order to eliminate competition from ATopTech and destroy ATopTech as a competitor."  ECF No. 210 ¶ 56.

As with its other counterclaims, ATopTech provides no factual support for any of these allegations.  ATopTech's failure to do so is all the more glaring because the allegations in ¶ 56 sound in fraud and must be pled with particularity pursuant to Rule 9(b).  *See Kearns*, 567 F.3d at

(continued…)

1159 (9th Cir. 2003); *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 540 (9th Cir. 1983).

Motion to Dismiss and Strike
Case No. 3:13-cv-02965-MMC (DMR)

1126; *see also Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (where a plaintiff bases its claim on some fraudulent and some not fraudulent conduct, "the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements").  Contrary to the requirements of Rule 9(b), ATopTech has not identified a single statement made to any consumer or competitor, much less any "misleading and false" statement.  The counterclaim gives Synopsys no notice regarding what statements were allegedly anticompetitive, when those statements were made, to whom they were made, or to how many people they were made.  *See Kearns,* 567 F.3d at 1126 (dismissing complaint for failure to allege "the particular circumstances surrounding" alleged misrepresentations, including the contents of specific statements, reliance on such statements and the identity of the person making the statement); *see also Gyore v. Krausz Precision Mfg. Corp.*, 1992 U.S. App. LEXIS 2241, at *2 (9th Cir. Feb. 11, 1992) (dismissing antitrust claim premised on fraud for failure to meet Rule 9(b)'s heightened pleading standard).  ATopTech's allegations fall short of establishing a plausible tie.

Nor does ATopTech allege that any customer relied on these statements, chose not to purchase an ATopTech product as a result of these alleged statements, or was forced to purchase a Synopsys product instead of products sold by a Synopsys competitor.  Such a theory, devoid of any supporting facts, is not plausible.  Courts have recognized that consumers rarely place much credence in a seller's disparaging comments about a rival.  *Am. Prof. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof. Publs., Inc.,* 108 F.3d 1147, 1152 (9th Cir. 1997) (affirming district court's overturning of jury's finding that false statements were exclusionary conduct in violation of Sherman Act).  Even under the lower Rule 8 standard, because *no* facts are alleged to make this theory plausible, it must be rejected.  *See Twombly*, 550 U.S. at 570.

(3)  <u>Acquisitions</u>:  ATopTech's also alleges that Synopsys created a tie by acquiring a number of competitors that sold place and route software.  To support this allegation, ATopTech identifies ten acquisitions of "competitors in the place and route market, the verification tool market and the EDA industry generally."  *See* ECF No. 210 ¶ 59 (identifying 10 acquisitions).  Notably, as ATopTech acknowledges, seven of the ten acquisitions took place before the Sherman Act's four-year statute of limitations period, and thus cannot form the basis of an

1    antitrust claim.[8]  *See*, ECF No. 210 ¶ 59 (7 of the acquisitions occurred prior to 2011).  And of the

2    remaining three, ATopTech fails to explain what market the acquired companies conducted

3    business.

4         Nothing in the counterclaims links the acquisitions to consumer coercion.  Nor can it.

5    Even assuming the facts as alleged are true, consumers remain free to purchase "place and route

6    software" from remaining firms in the market.  In short, the countercomplaint alleges no set of

7    facts that would lead to a plausible conclusion that Synopsys' acquisition of some firms in certain

8    markets forces consumers to purchase "place and route software" from only Synopsys—this

9    theory too must be dismissed.  *See Twombly*, 550 U.S. at 570.  ATopTech's theory regarding how

10   acquisitions of certain firms leads to coercion of consumers is completely implausible and cannot

11   support the assertion that Synopsys has unlawfully tied its products.

12        (4)  Allegedly "Objectively Baseless Litigation":  As noted above, Synopsys' litigation is

13   protected petitioning activity under the *Noerr-Pennington* doctrine.  Thus, it cannot serve as a

14   predicate act for ATopTech's Section 1 claim.  ATopTech's bare assertion that Synopsys'

15   copyright infringement action is "objectively baseless" contains no facts connecting it to

16   consumer coercion.  No set of facts are alleged under which it is plausible that Synopsys' filing of

17   a lawsuit against ATopTech has coerced consumers into purchasing Synopsys place and route

18   products instead of "third-party place and route software."  ECF No. 210 ¶ 69.  Simply put, this

19   theory (like those before it) is too attenuated to make sense.  Because the allegations are not

20   plausible, this theory too should be dismissed.  *See Twombly*, 550 U.S. at 570.

21        **(b)      ATopTech Has Failed to Allege Facts Supporting the**

22        **Remaining Elements Necessary to State a Tying Claim.**

23        For a per se tying claim, ATopTech must allege that the tie affects a substantial volume of

24   interstate commerce in the tied market and that Synopsys has market power in the tying market.

25   *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (stating that an

26   essential element of a tying claim is that the tying arrangement impacted a "not insubstantial

27

28        [8] *See* 15 U.S.C. § 15(b).

1  volume" of commerce in the tied market);[9] *Jefferson Parish*, 466 U.S. at 14 (tying arrangements

2  are per se illegal where seller has market power).[10]  For its rule of reason tying claim, ATopTech

3  must allege a negative impact on competition in the tied product market.  *Sidibe v. Sutter Health*,

4  4 F. Supp. 3d 1160, 1177 (N.D. Cal. 2013) ("To state a 'rule of reason' tying claim, a plaintiff

5  must allege that the defendant (1) entered into a tying arrangement (2) that adversely affected

6  competition.") (citing *Jefferson Parish*, 466 U.S. at 31).

7       ATopTech, however, merely alleges that "Synopsys' tying arrangement affects a

8  substantial volume of interstate commerce" (ECF No. 210 ¶ 70) and that the alleged tie has the

9  effect of "(a) decreasing competitors' ability to compete … (b) enabling Synopsys to extract

10  higher, supra-competitive prices for its place and route software, and (c) facilitating Synopsys'

11  acquisition and maintenance of market power in both the place and route software market and the

12  verification software market."  *Id.* ¶ 72.

13       These "allegations" are restatements of legal elements, conclusions and "ultimate facts"

14  necessary to establish impact to competition, not "evidentiary facts" that support any such impact.

15  *See Iqbal*, 556 U.S. at 678.  The statements do not identify which and what percentage of

16  competitors have been impacted by Synopsys' alleged conduct; how and for how long the ability

17  to compete, consumer choice or innovation has decreased; what the relevant prices are, including

18  prices offered by others, Synopsys' alleged supra-competitive prices or the alleged percentage

19  overcharge; or how Synopsys' conduct has facilitated its acquisition and maintenance of market

20  power.  ATopTech's failure to assert any facts showing impact in the tied market or on

21

22       [9] More recent courts require pleading a "pernicious effect on competition."  *See Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1178 (N.D. Cal. 2013) (collecting cases).  The Court need not

23  determine whether this element is necessary, because (as discussed above) ATopTech has not alleged that a substantial amount of commerce has been affected or that the tie has had a

24  "significant negative impact on competition."  *See In re Webkinz Antitrust Litig.*, 2010 U.S. Dist. LEXIS 111810, at *7,*9 (N.D. Cal. Oct. 20, 2010) (concluding that whether or not a "pernicious

25  effect on competition" is necessary, party "must allege and ultimately prove facts showing a significant negative impact on competition in the tied product market.").

26       [10] As discussed above, ATopTech's failure to define the tying market makes it impossible

27  to determine Synopsys' market share, much less its market power.  *See Rebel Oil*, 51 F.3d at 1434 ("Market definition is crucial.  Without a definition of the relevant market, it is impossible to

28  determine market share.").

1   completion (as opposed to simply harm to itself), is fatal to its antitrust claim.  *See Les Shockley*

2   *Racing*, *Inc. v. Nat'l Hot Rod Assoc.,* 884 F.2d 504, 507-08 (9th Cir. 1989) (holding plaintiff

3   "may not merely recite the bare legal conclusion that competition has been restrained") *see also*

4   *In re Rubber Chems. Antitrust Litig.*, 2008 U.S. Dist. LEXIS 98393, at *4-5 (N.D. Cal. Dec. 4,

5   2008) (dismissing complaint for asserting bare allegation that allegedly anticompetitive conduct

6   "caused injury to competition in the United States by reducing and restraining . . . competition" in

7   the relevant market).

8              **2.      ATopTech's Section 2 Monopolization Claims Also Fail (Counts III-**
             **IV).**
9

10          ATopTech claims that Synopsys has engaged in monopolization or attempted

11   monopolization of the undefined "verification" and "place and route" markets.  The

12   monopolization claims are predicated on the same acts that form the basis of the tying claims, and

13   fail because they are not based on facts as required by *Iqbal* and *Twombly*.  *See supra* § C.1.a.  In

14   addition, the monopolization claims fail for other, independent reasons.

15                  **(a)      ATopTech Lacks of Standing To Assert Monopolization of the**
                          **Verification Market (Count III).**
16

17          To state a valid antitrust claim, the "injured party [must] be a participant in the same

18   market as the alleged malefactors."  *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir.

19   1985).  ATopTech alleges that it and "its customers are purchasers of Synopsys' verification

20   software, and require access to Synopsys' verification software for interoperability."  ECF No.

21   210 ¶ 85.  ATopTech does not identify what "verification software" it has purchased or when

22   such purchase took place (such that Synopsys can determine if the purchase fell within the

23   limitations period).  Count III should fail for this reason alone.  *Los Gatos Mercantile, Inc. v. E.I.*

24   *Dupont de Nemours & Co.*, 2014 U.S. Dist. LEXIS 133540, at *16 (N.D. Cal. Sept. 22, 2014)

25   (challenge to antitrust standing properly is brought under Rule 12(b)(6)).

26

27

28

1

          (b)      **ATopTech Fails To Allege Harm to Competition (Counts III-**

2

                  **IV).**

3

      As addressed above with respect to ATopTech's defective tying claim, antitrust laws are

4

concerned with protecting competition, not specific competitors. *Atlantic Richfield Co. v. USA*

5

*Petroleum Co.*, 495 U.S. 328, 334 (1990) (quotations and citation omitted); *see also NYNEX*

6

*Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (must allege "harm, not just to [plaintiff], but to

7

the competitive process."). The purpose of the antitrust injury requirement is to "ensure[] that the

8

harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust

9

laws." *Id.* at 342. ATopTech's monopolization claims fail because ATopTech has not alleged

10

any facts regarding harm to competition in either the "verification" or "place and route" market.

11

      ATopTech makes identical, conclusory allegations of competitive harm in support of both

12

monopoly claims, stating that Synopsys' conduct has injured "consumers and competitors in the

13

relevant market through increased prices, decreased choices, reduced innovation, and other anti-

14

competitive effects, including raising additional barriers to entry the relevant market." ECF No.

15

210 ¶¶ 83, 95. Nowhere does ATopTech state facts regarding any price increase, any decreased

16

consumer choice, any reduced innovation, or any barriers to entry. Absent such evidentiary facts,

17

the bare legal conclusions in the countercomplaint must be dismissed. *See Les Shockley Racing*,

18

884 F.2d at 507-08; *In re Rubber Chems. Antitrust Litig.*, 2008 U.S. Dist. LEXIS 98393, at *4-5.

19

      Additionally, the specific exclusionary conduct that ATopTech alleges gives rise to

20

antitrust liability lacks any factual support to make either claim plausible. ATopTech claims that

21

Synopsys' alleged copyright misuse, false statements, sham litigation, and unlawful tying have

22

allowed it to unlawfully maintain monopoly power in both markets. ECF No. 210 ¶¶ 78-79

23

("verification"), ¶ 90 ("place and route"). Synopsys has addressed each of these allegations

24

above, illustrating the utter lack of actual facts supporting the legal elements of each. Allegations

25

of monopolization that are "nothing more than 'labels and conclusions,' and a 'formulaic

26

recitation of the elements of a cause of action,'" simply "'will not do.'" *Surface Supplied*, 2013

27

U.S. Dist. LEXIS 143478, at *19-20 (dismissing monopolization and attempted monopolization

28

claim for failure to plead adequate facts).

          **(c)**       **ATopTech Fails to Allege Attempted Monopolization of the Place and Route Market (Count IV)**

ATopTech's claim for attempted monopolization of the "place and route" fails because ATopTech has not sufficiently pled "a dangerous probability of achieving monopoly power" or "a specific intent to monopolize." *See Coalition for ICANN Transp., Inc. v. VeriSign, Inc.*, 611 F.3d 495, 506 (9th Cir. 2010) (listing same as essential element of attempted monopolization claim) (quotation and citation omitted). ATopTech has alleged only that Synopsys "holds a greater than 75% market share" in the "place and route software market" (¶ 50) and that "if for any reason Synopsis is not deemed to have monopoly power in this market there exists a dangerous probability of Synopsis' acquiring such power." (¶ 89). ATopTech provides no facts supporting its conclusion regarding the probability that Synopsys will acquire monopoly power or Synopsys' specific intent to do so. Courts have found nearly identical allegations as insufficient to state a claim for attempted monopolization. *See Surface Supplied*, 2013 U.S. Dist. LEXIS 143478, at *19-20 (dismissing similarly deficient conclusory allegation and collecting cases).

     **D.**       **ATOPTECH'S STATE LAW CLAIMS FAIL.**

          **1.**      **ATopTech's Cartwright Claims are Derivative of its Sherman Act Claims and Fail for the Same Reasons.**

The Cartwright Act is patterned after the Sherman Act. *See Marin Co. Bd. Of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976). Thus, for the same reasons that each of ATopTech's Sherman Act claims fail, the Cartwright Claim should also be dismissed. *See nSight*, 296 Fed. App'x at 558 n.3 (9th Cir. 2008) (affirming dismissal of Cartwright claim because plaintiff's Sherman Act claim was deficient under Rule 12(b)(6)).

          **2.**      **ATopTech has Failed to State a Claim for Violation of the Unfair Competition Law.**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. ATopTech's counterclaim is a formulaic, boilerplate UCL allegation, failing to even identify which prong of the statute it invokes.

Assuming ATopTech seeks to assert an "unlawful" claim under the UCL, it must properly allege a violation of the underlying law upon which the UCL claim is based. *See Chavez v.*

1    *Whirlpool Corp.*, 93 Cal. App. 4th 363, 374 (2001).  Here, the "unlawful" claim is derivative of

2    the Sherman Act claims.  For the reasons stated above, those claims fail and thus the "unlawful" §

3    17200 claim must be dismissed.  *See Digital Sun v. Toro Co.*, 2011 U.S. Dist. LEXIS 30222, at

4    *14 (N.D. Cal. Mar. 22, 2011) ("Because the Sherman Act violation is insufficiently pled, it

5    follows that [plaintiff] has also failed to plead any violation of the Unfair Competition Law.").

6           Assuming that ATopTech seeks to impose UCL liability pursuant to the "unfair" prong,

7    the cause of action should be dismissed as unnecessarily duplicative of its antitrust claims.  *See*

8    *Chavez*, 93 Cal. App. 4th at 375 ("To permit a separate inquiry into essentially the same question

9    under the unfair competition law would only invite conflict and uncertainty and could lead to the

10   enjoining of precompetitive conduct.").

11          Finally, assuming ATopTech is attempting to allege fraudulent conduct it must plead its

12   allegations under Rule 9(b)'s heightened pleading standards.  *See Kearns*, 567 F3d at 1125.  This

13   requires particularized allegations of fraud, including "actual reliance on . . . allegedly deceptive

14   or misleading statements . . . ."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).  Here,

15   ATopTech has not even made clear that it is asserting fraud, let alone identified allegedly

16   fraudulent conduct or reliance on such conduct.  Such pleading fails Rule 9(b)'s heightened

17   standard.

18   **E.      ATOPTECH'S AFFIRMATIVE DEFENSES SIX THROUGH EIGHT**

19           **SHOULD BE STRICKEN.**

20          A court may "strike from a pleading an insufficient defense or any redundant, immaterial,

21   impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  A defense may be insufficient "as a

22   matter of pleading or as a matter of substance." *Sec. People, Inc. v. Classic Woodworking, LLC*,

23   2005 U.S. Dist. LEXIS 44641, at *5 (N.D. Cal. Mar. 4, 2005).  The sufficiency of an Answer's

24   pleading of affirmative defenses are subject to the *Iqbal* and *Twombly* standard; thus labels and

25   conclusions are insufficient and ATopTech must allege facts supporting its defenses.  *See, e.g.*,

26   *Allen v. AVT Event Techs., Inc.*, 2013 U.S. Dist. LEXIS 87070, at *4-5 (N.D. Cal. June 20, 2013)

27   (striking all of defendant's affirmative defenses because each failed to plead facts and violated the

28   *Twombly/Iqbal* pleading standard); *Ansari v. Electronic Document Processing, Inc.*, 2012 U.S.

1   Dist. LEXIS 128622, at *13 (N.D. Cal. Sept. 10, 2012) ("[A]ll twenty-four affirmative defenses

2   raised by Defendants are insufficiently pled, and Plaintiff's motion to strike is GRANTED as to

3   all twenty-four affirmative defenses."); *Surface Supplied*, 2013 U.S. Dist. LEXIS 143478, at *7.

4          Affirmative defenses must allege well-pled facts that state plausible affirmative defenses.

5   ATopTech's affirmative defenses simply assert legal elements without any facts supporting their

6   application (or relevance) to the claims in this case.  As an initial matter, each of these affirmative

7   defenses refer to "Plaintiff's claims" but fail to identify to which claims the affirmative defense is

8   directed.  For example, ATopTech's Sixth Affirmative Defense states that Synopsys' claims are

9   barred "because ATopTech's conduct was at all times in good faith and with non-willful intent."

10  ECF No. 210 ¶ 40.  Synopsys is unaware of any "good faith or non-willful intent" defense to any

11  of its claims.  Nor does ATopTech allege how it was acting in good faith, why its actions were

12  necessary or what it means by, or whether there is a difference between, a "sign-off tool" and

13  "verification tool."

14         The Seventh and Eighth Affirmative Defenses lack any factual support.  For example, the

15  Seventh Affirmative Defense fails to identify to whom or how Synopsys licensed, authorized or

16  consented to the use of the input/output formats for interoperability, nor does it articulate how any

17  such license, authorization or consent could give rise to estoppel.  *Id.* ¶ 91.  Similarly, the Eighth

18  Affirmative Defense asserts the doctrine of unclean hands without any factual support.  *Id.* ¶ 92.

19         ATopTech's Sixth, Seventh and Eighth Affirmative Defenses should be stricken.

20  **III.    <u>CONCLUSION</u>**

21         For these reasons, ATopTech's counterclaims should be dismissed and its Affirmative

22  Defenses 6-8 should be stricken.

23  Dated: February 20, 2015                         Respectfully submitted,

24                                                   JONES DAY

25                                                   By: _/s/ Patrick T. Michael_____
                                                     Patrick T. Michael
26

27                                                   Attorneys for Plaintiff
                                                     SYNOPSYS, INC.
28  SFI-620893719