United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., | No. C-13-02965-MMC (DMR) |
| Plaintiff(s), | |
| v. | **ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 243]** |
| ATOPTECH, INC., | |
| Defendant(s). | |

Before the court is a joint discovery letter filed by Plaintiff Synopsys, Inc. and Defendant ATopTech, Inc. [Docket No. 243.] The letter follows from an earlier discovery dispute between the parties regarding Synopsys' claim that ATopTech infringed copyrighted input and output formats in Synopsys's PrimeTime and GoldTime software. *See* Docket No. 193. The court held a hearing on the letter on March 12, 2015. For the reasons stated at the hearing and set forth below, the court orders ATopTech to produce a copy of its Aprisa and Apogee software programs ("the executables"), but not the underlying source code.

## I. BACKGROUND

**A. Factual Allegations**

Synopsys is a company in the electronic design automation ("EDA") and semiconductor intellectual property industry. Am. Compl. [Docket No. 43] at ¶ 2. Synopsys "develops, manufactures, sells and licenses products and services that enable designers to create, model and

verify complex integrated circuit designs." *Id.* Synopsys owns a tool called PrimeTime that "provides customers with a trusted solution for timing sign-off, a required verification step before manufacturing" a digital circuit. *Id.* at ¶ 3. The PrimeTime software includes hundreds of proprietary input and output formats, including proprietary commands, variables, and parameters. *Id.* at ¶ 19.

In June 2011, Synopsys sued a company called Extreme DA Corporation, which owned software called GoldTime. *Id.* at ¶ 22. Synopsys alleged that GoldTime copied the proprietary PrimeTime input and output formats. In October 2011, Synopsys acquired Extreme DA and now owns all rights to GoldTime. *Id.* at ¶ 24.

ATopTech is an EDA company that develops tools for the physical design of integrated circuits. *Id.* at ¶ 4. ATopTech makes a "place and route" tool know as Aprisa that can "talk to" the PrimeTime tool. *Id.* at ¶ 3; Docket No. 188 at 2-3. Aprisa and PrimeTime are thus complementary programs that interoperate with each other to perform different steps in the process of designing integrated circuits. Letter at 6. In June 2010, ATopTech licensed GoldTime from Extreme DA. Am. Compl. at ¶ 31. When Synopsys acquired Extreme DA in October 2011, Synopsys also acquired Extreme DA's rights under its license agreement with ATopTech. Synopsys extended the license agreement three times. *Id.* at ¶ 31.

Synopsys now contends that ATopTech's products, including Aprisa, copy PrimeTime and GoldTime input and output formats. *Id.* at ¶¶ 9, 35. Synopsys also contends that ATopTech improperly accessed SolvNet—Synopsys' password-protected website that hosts software, user guides, and support documentation—to download proprietary information about the operation of PrimeTime and other Synopsys software. *Id.* at ¶ 41.

In the Amended Complaint, Synopsys brings claims for (1) federal copyright infringement, (2) patent infringement, (3) breach of contract and (4) breach of the implied covenant of good faith and fair dealing. *Id.*

**B. Procedural History**

This discovery letter is a continuation of the same dispute raised in the parties' earlier discovery letters. *See* Docket No. 133, 154, 193. In the earlier letters, Synopsys sought a wide

swath of information regarding the design and development of certain ATopTech products, source code for those products, and documents related to the input and output formats for those products. In an order dated August 28, 2014, this court ordered phased discovery, and instructed ATopTech to produce certain discovery responsive to Synopsys' requests. Docket No. 166. In response, ATopTech produced unredacted copies of user guides and manuals for several versions of its Aprisa and Apogee products (specifically, the "Aprisa/Apogee Parameter Guide" and "Aprisa/Apogee Reference Manual"). Synopsys claims that this production revealed "over 500 instances of copying of Synopsys' input/output formats"[1] (although ATopTech disputes both Synopsys' definition of "copying" and the way that Synopsys counted instances of copying). *See* Docket No. 193.

Subsequent to ATopTech's production of this documentation, Synopsys repeated its request for source code and executable files for ATopTech's Aprisa and Apogee products. *See* Docket No. 193. At the February 12, 2015 hearing, the court heard argument on this matter and ordered the parties to meet and confer further regarding specific issues. The parties did so, but were unable to resolve their disputes without judicial intervention. The instant letter followed.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the

---

[1] Synopsys describes the allegedly copied "input formats" as including the command names, parameters, and the syntax of the instructions received by ATopTech's software. *See* Docket No. 171 (Transcript of August 28, 2014 hearing) at 12:5-12. Synopsys describes output format as "the format or the general appearance and type of information that is provided to the user as a display or as a file" by ATopTech's software. *Id.* at 12:25-13:3.

3

1 amount in controversy, the parties' resources, the importance of the issues at stake in the action, and
2 the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). The court
3 may, for good cause, issue an order to protect a party or person from undue burden or expense by
4 "requiring that a trade secret or other confidential research, development, or commercial information
5 not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

### III.  DISCUSSION

Synopsys seeks executables and source code for all versions of Aprisa and Apogee. ATopTech claims that this material contains extremely sensitive information, production of which (to the dominant competitor in the industry) could cause permanent harm to ATopTech.

**A.  Input Formats**

As described above, ATopTech has already produced the user documentation and manuals for Aprisa and Apogee, and Synopsys has identified what it alleges to be copied input and output formats in those documents. At the hearing, ATopTech's counsel confirmed that the discovery produced to date contains all of the input formats for its Aprisa and Apogee software, and ATopTech could provide an attestation under oath to that effect. Accordingly, the court orders that by **March 16, 2015**, ATopTech shall produce an attestation under oath that the discovery produced to date contains all input formats for its Aprisa and Apogee software.

**B.  Executables**

Synopsys argues that "[o]nly through using ATopTech's executable programs . . . will Synopsys have the ability to uncover authorized uses of Synopsys' output formats." Letter at 2. Specifically, Synopsys intends to run ATopTech's software programs (by running the executable files) to generate examples of output reports, some of which Synopsys believes will be formatted in a way that copies Synopsys' copyrighted works. At the hearing, ATopTech's counsel conceded that the user documentation and manuals for Aprisa and Apogee do not capture all of output formats for

those products, and that the software itself would. Accordingly, ATopTech shall produce to Synopsys a copy of the executable files for Aprisa and Apogee by **March 16, 2015**.[2]

**C. Source Code**

Synopsys also seeks the source code for the Aprisa and Apogee products. ATopTech's confidential source code contains sensitive proprietary information that is not commercially available, and Synopsys' arguments for the relevance and discoverability of the source code must be balanced against the risk of harm to ATopTech that may result from the disclosure of its source code to its main competitor. Synopsys has done a poor job of articulating the relevance of the source code to the copyright cause of action, especially where the information contained in the source code is cumulative of information already available to Synopsys.[3]

Synopsys contends that the source code will show that the software itself (rather than just the user documentation and the manuals for the software) includes the allegedly copied input and output formats. *See* Letter at 1-2. But this argument lacks substance, for Synopsys asserts, but does not explain, why the source code is the "single most relevant evidence" bearing on copyright infringement. *Id.* Furthermore, with ATopTech's production of the software programs themselves, Synopsys will have what it needs to show that the allegedly copied input and output formats appear in the software.

Synopsys further contends that the source code is relevant to the issue of damages. The remedy for copyright infringement is either actual damages and infringer profits, or statutory damages. For the former, "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the

---

[2] ATopTech expressed concern at the hearing about the confidentiality and sensitivity of this information. The court finds that these concerns are not well taken. Aprisa and Apogee are software products. Unlike the underlying source code, the software programs themselves are commercially available. Their production in this litigation is subject to the parties' stipulated protective order, which is adequate to protect ATopTech's concerns.

[3] Synopsys does not argue that production of source code will reveal any more unique examples of input or output formats that have been allegedly copied beyond those stated in documents already provided or the executable files that will be provided by ATopTech pursuant to this order.

5

infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). A copyright owner may also elect to recover "statutory damages for all infringement involved in the action, with respect to any one work" instead of actual damages and profits. 17 U.S.C. § 504(c)(1).

Synopsys has not yet elected the type of damages it intends to pursue in this action, but nonetheless argues that "an analysis of the executables and source code will uncover the nature and extent of the infringement, which is directly relevant to damages." Letter at 2. At the hearing, Synopsys' attorney reiterated the position that the extent of copying is relevant to the determination of damages. But beyond these conclusory statements, Synopsys does not otherwise explain why the presence of the already-identified input and output formats in the source code would assist Synopsys in making its damages case for either statutory damages or actual damages and profits. The extent of copying is not relevant to statutory damages. "Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements." *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990). *Accord Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011) ("[W]hen statutory damages are assessed against one defendant . . . each work infringed may form the basis of only one award, regardless of the number of separate infringements of that work.") (citation omitted); *Venegas-Hernandez v. Sonolux Records,* 370 F.3d 183, 193 (1st Cir. 2004); *Rosen v. Netfronts, Inc.,* No. CV 12-658 CAS FFMX, 2013 WL 3467205, at *4 (C.D. Cal. July 9, 2013).

The nexus between the extent of ATopTech's copying and Synopsys' case for actual damages and profits is likewise unclear. Synopsys cites two out-of-circuit cases that purportedly state that the extent of copying is relevant to the issue of damages, but closer inspection of the cases shows that they do not stand for the proposition for which Synopsys cites them. In *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, the court held that "the extent of copying would be relevant to a determination of damages." 785 F. Supp. 576, 583 (E.D. La. 1991) *aff'd in part, rev'd in part*, 26 F.3d 1335 (5th Cir. 1994) *opinion supplemented on denial of reh'g*, 46 F.3d 408 (5th Cir. 1995).

6

But there the court was referring to the percentage of the copyrighted work that had been copied, rather than the amount of times infringing copies had been made. The court, considering the plaintiff's request for actual damages, found that a substantial part of the copyrighted manuals had been copied, causing the plaintiff to suffer some harm in the market. In *Tennessee Walking Horse Breeders' & Exhibitors' Ass'n v. Nat'l Walking Horse Ass'n*, No. 1:05-0088, 2007 WL 325774, at *7 (M.D. Tenn. Jan. 31, 2007), the court stated "[t]he extent of copying, of course, also goes to the issue of damages." There is no citation for this statement, nor any context, as the *Walking Horse* court was not even considering the issue of damages in that order. *Id.* at *8.

      Relatedly, Synopsys argues that ATopTech "has put the totality of its software directly at issue" by arguing that the allegedly copied input and output formats comprise only a small fraction of all of the software elements that make up Aprisa. This argument misstates the nature of ATopTech's asserted *de minimis* defense. In the copyright infringement context, "a taking is considered de minimis only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees*, 794 F.2d 432, 434 n. 2 (9th Cir.1986). "The extent of the copying 'is measured by considering the qualitative and quantitative significance of the copied portion in relation to the *plaintiff's work* as a whole.'" *Oracle Am., Inc. v. Google Inc.*, 810 F. Supp. 2d 1002, 1008 (N.D. Cal. 2011) (quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)) (emphasis added). "The relevant question in copyright infringement cases is whether the segment in question constituted a substantial portion of the *plaintiff's* work, not whether it constituted a substantial portion of the defendant's work." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1257 (C.D. Cal. 2002) *aff'd*, 349 F.3d 591 (9th Cir. 2003) *opinion amended and superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004) and *aff'd*, 388 F.3d 1189 (9th Cir. 2004) (emphasis in original) (finding that it was not relevant that defendants used copied portion of plaintiff's song "throughout their entire song, as the focus is on whether the sample comprises a substantial portion of Plaintiff's song"). Synopsys's relevance arguments regarding ATopTech's *de minimis* defense and the issue of "substantial similarity" have little value because they are not targeted to the correct analysis.

      The court therefore remains unconvinced that Synopsys is entitled to source code for the Aprisa and Apogee products, at least with respect to its copyright claim. Synopsys has not

explained how the source code will reveal copied input or output formats that Synopsys will not already be able to identify through ATopTech's document production or forthcoming production of executables, or how the source code is relevant to Synopsys' case for damages or ATopTech's defenses.  Furthermore, Synopsys points this court to no cases in which the discovery of source code was permitted under analogous circumstances (i.e., where the plaintiff brings a claim for copyright infringement on the basis of words, syntax, and formats used in the defendant's software that are amply documented in user manuals and present in the executable).[4]  Because production of source code would be duplicative of discovery Synopsys already possesses or will shortly possess, and the risk to ATopTech resulting from the exposure of its valuable proprietary information is significant, the court **denies** Synopsys' motion to compel ATopTech to produce source code for Aprisa and Apogee.

## IV.  CONCLUSION

For the reasons stated above, Synopsys' motion to compel is **granted in part and denied in part.**  By **March 16, 2015**, ATopTech shall produce the executable files for Aprisa and Apogee, as well as the attestation described above.

IT IS SO ORDERED.

Dated:  March 16, 2015



_____
DONNA M. RYU
United States Magistrate Judge

---

[4] Most of the cases Synopsys cites involve the discovery of source code of the product that is accused of infringing a patent, which is not the scenario here.  *See Apple Inc. v. Samsung Electronics Co.*, No. C 11-1846 LHK PSG, 2012 WL 1595784 (N.D. Cal. May 4, 2012); *Optimize Tech. Solutions, LLC. v. Staples, Inc.*, No. 14-MC-80095-LHK-HRL, 2014 WL 1477651 (N.D. Cal. Apr. 14, 2014); *Forterra Sys., Inc. v. Avatar Factory*, No. C-05-04472 PVT, 2006 WL 2458804 (N.D. Cal. Aug. 22, 2006); *In re Google Litig.*, No. C-08-03172 RMW PSG, 2011 WL 286173, at *1 (N.D. Cal. Jan. 27, 2011).  The remaining case gives no indication why the production of source code was relevant to the parties' claims or defenses, as the party producing the source code raised only burden and access and not relevance arguments.  *See Echostar Satellite LLC v. Freetech Inc.*, No. C 07-06124 JW, 2008 WL 8648905 (N.D. Cal. May 8, 2008).