Robert A. Mittelstaedt (SBN 60359)
ramittelstaedt@jonesday.com
Patrick T. Michael (SBN 169745)
pmichael@jonesday.com
Krista S. Schwartz (Admitted *Pro Hac Vice*)
ksschwartz@jonesday.com
David C. Kiernan (SBN 215335)
dkiernan@jonesday.com
Joe C. Liu (SBN 237356)
jcliu@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:      (415) 875-5700

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ATOPTECH, INC.,<br><br>Defendant. | **Case No. 3:13-cv-02965-MMC (DMR)**<br><br>**PLAINTIFF SYNOPSYS' MOTION TO DISMISS DEFENDANT ATOPTECH'S AMENDED COUNTERCLAIMS AND TO STRIKE ALLEGATIONS AND AFFIRMATIVE DEFENSES AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:          May 8, 2015**<br>**Time:          09:00 AM**<br>**Judge:        Hon. Maxine M. Chesney**<br>**Courtroom:  7, 19th Floor** |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 8, 2015 at 9:00 a.m. before the Honorable Maxine Chesney, United States District Court, San Francisco, California, Plaintiff Synopsys, Inc. ("Synopsys") will, and hereby does, move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) for an Order dismissing Defendant ATopTech, Inc.'s ("ATopTech") Amended Counterclaims and striking allegations and affirmative defenses in ATopTech's Amended Answer.

Synopsys respectfully requests that Counts I-VII be dismissed with prejudice for failure to state a claim and that the allegations in Paragraphs 2, 6, 9, 12, 15 and 28 be stricken as immaterial and impertinent and Affirmative Defenses 9 and 11 be stricken as insufficient.

Synopsys' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the complete files and records in this action, oral argument of counsel, and such other and further matters as this Court may consider.

1

**TABLE OF CONTENTS**

2

Page

3    I.     INTRODUCTION ................................................................................................. 1

4    II.    FACTUAL BACKGROUND ................................................................................ 2

5    III.   ATOPTECH'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE

6           TO STATE A CLAIM .......................................................................................... 3

7           A.    ATopTech's Copyright misuse failS (count I)........................................... 3

8           B.    Atoptech's Clayton Act Claim Fails (Count II) ....................................... 5

9                 1.    ATopTech's Challenge of the Extreme DA Acquisition Fails ................. 5

10                      (a)   ATopTech has Failed to Allege Standing ...................................... 5

11                      (b)   Synopsys' Conduct is not Actionable ........................................... 7

12                            (i)    No Duty to Continue to Sell Products ................................ 7

13                            (ii)   No Duty to Assist Rivals .................................................. 8

14                2. ATopTech's Challenge to the Magma Acquisition Fails.................................. 9

15                3. ATopTech has not Defined the Relevant Markets ........................................... 10

16           C.    Atoptech's Tying claim fails (Count III) ............................................... 11

17                 1.    No Tie Exists Where the Products are Sold Separately ........................... 12

18                      (a)   Discriminatory and Punitive Pricing ........................................... 13

19                      (b)   Allegedly Misleading Statements ............................................... 14

20                      (c)   Acquisitions ............................................................................. 15

21                      (d)   Allegedly "Objectively Baseless Litigation" ............................... 15

22                 2.    ATopTech's has not Alleged Anticompetitive Harm ............................. 16

23           D.    Atoptech's monopolization claims fail (Counts IV-V)........................... 17

24           E.    ATopTech also fails to allege attempted monopolization (Counts IV-V) ........... 19

25           F.    ATopTech's Cartwright Claims are Derivative of its Sherman and clayton

26                Act Claims and Fail for the Same Reasons (Claim VI) ........................... 20

27           G.    ATopTech's Unfair Competition Law Claims Fail  (Claim VII) ........................ 20

28

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3   IV.    ATOPTECH'S COUNTERCLAIMS SHOULD BE DISMISSED WITH

4           PREJUDICE..............................................................................................................21

5   V.     THE COURT SHOULD STRIKE INAPPROPRIATE ALLEGATIONS FROM

6           ATOPTECH'S AMENDED ANSWER ........................................................................22

7   VI.    THE COURT SHOULD STRIKE ATOPTECH'S UNCLEAN HANDS

8           AFFIRMATIVE DEFENSES ......................................................................................23

9   VII.   CONCLUSION ..........................................................................................................24

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Dismiss and Strike
Case No. 3:13-cv-02965-MMC (DMR)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### CASES

4

*A & M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001)...............................................................................3, 5

*Abcor Corp. v. AM Int'l*,
    916 F.2d 924 (4th Cir. 1990)...................................................................................17

*Adobe Sys. Inc. v. Kornrumpf*,
    2011 U.S. Dist. LEXIS 80631 (N.D. Cal. July 25, 2011) .........................................5

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991)...................................................................................17

*Allen v. City of Beverly Hills*,
    911 F.2d 367 (9th Cir. 1990)...................................................................................21

*Altera Corp. v. Clear Logic, Inc.*,
    424 F.3d 1079 (9th Cir. 2005)...................................................................................5

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof. Publs.,
    Inc.*,
    108 F.3d 1147 (9th Cir. 1997).............................................................................15, 19

*Apple Inc. v. Psystar Corp.*,
    658 F.3d 1150 (9th Cir. 2011)............................................................................3, 4, 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ passim

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985)..................................................................................................9

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Co. of Carpenters*,
    459 U.S. 519 (1983)..................................................................................................6

*Atlantic Richfield Co. v. U.S.A. Petroleum Co.*,
    495 U.S. 328 (1990)..................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................3, 10, 11

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
  182 F.3d 1096 (9th Cir. 1999)............................................................10, 20

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,*
  985 F. Supp. 2d 612 (S.D.N.Y. 2013)........................................................18

*Brantley v. NBC Universal,*
  675 F.3d 1192 (9th Cir. 2012)...............................................................7, 19

*Brooke Group v. Brown,*
  509 U.S. 209 (1993)..................................................................................14

*Brown Shoe Co. v. United States,*
  370 U.S. 294 (1962)..................................................................................10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
  429 U.S. 477 (1977)....................................................................................6

*C.R. Bard, Inc. v. M3 Sys., Inc.,*
  157 F.3d 1340 (Fed. Cir. 1998).................................................................16

*Cal. Computer Prods. v. IBM,*
  613 F.2d 727 (9th Cir. 1979)................................................................8, 18

*Cascade Health Solutions v. Peacehealth,*
  515 F.3d 883 (9th Cir. 2008)....................................................................13

*Chavez v. Whirlpool Corp.,*
  93 Cal. App. 4th 363 (2001)......................................................................21

*Cnty of Tuolumne v. Sonora Cmty. Hosp.,*
  236 F.3d 1148 (9th Cir. 2001)..................................................................16

*Colonial Med Grp., Inc. v. Catholic Healthcare W.,*
  2010 U.S. Dist. LEXIS 51350 (N.D. Cal. May 25, 2010) ...................3, 11

*Digital Sun v. Toro Co.,*
  2011 U.S. Dist. LEXIS 30222 (N.D. Cal. Mar. 22, 2011) ........................21

*Dream Games of Ariz., Inc. v. PC Onsite,*
  561 F.3d 983 (9th Cir. 2009)....................................................................24

*DSM Desotech, Inc. v. 3D Sys. Corp.,*
  2013 WL 389003 (N.D. Ill. Jan. 31, 2013) .................................................8

*Fantasy, Inc. v. Fogerty*,
     984 F.2d 1524 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994)...................22, 23

*Fidelity Fin. Corp. v. Fed. Home Loan Bank*,
     792 F.2d 1432 (9th Cir. 1986)........................................................................................21

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*,
     198 Cal. App. 4th 1366 (2011)........................................................................................20

*Foremost Pro Color, Inc.*, 703 F.2d at 534 (9th Cir. 1983),
     *overruled sub silentio on other grounds by Hasbrouck v. Texaco, Inc.*, 842
     F.2d 1034 (9th Cir. 1987)................................................................................................12

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
     703 F.2d 534 (9th Cir. 1983)..............................................................................8, 12, 18

*GAF Corp. v. Eastman Kodak Co.*,
     519 F. Supp. 1203 (S.D.N.Y. 1981).................................................................................19

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
     352 F. 3d 367 (9th Cir. 2003)............................................................................................7

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
     433 Fed. App'x. 598 (9th Cir. 2011)...............................................................................11

*Gyore v. Krausz Precision Mfg. Corp.*,
     954 F.2d 727 (9th Cir. Feb. 11, 1992).............................................................................14

*Handgards, Inc. v. Ethicon, Inc.*,
     601 F.2d 996 (9th Cir. 1979)..........................................................................................16

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
     547 U.S. 28 (2006).................................................................................................11, 12

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
     125 F.3d 1195 (9th Cir. 1997).........................................................................................17

*In re Adderall XR Antitrust Litigation*,
     754 F.3d 128 (2d Cir. 2014)..............................................................................................9

*In re Rubber Chems. Antitrust Litig.*,
     2008 U.S. Dist. LEXIS 98393 (N.D. Cal. Dec. 4, 2008) ................................................17

*In re Tobacco II Cases*,
     46 Cal. 4th 298 (2009) ...................................................................................................21

*Indeck Energy Servs. v. Consumers Energy Co.,*
250 F.3d 972 (6th Cir. 2000)................................................................6, 14

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde,*
466 U.S. 2 (1984)...................................................................................12

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009)................................................3, 4, 14, 21

*Kendall v. Visa U.S.A., Inc.,*
518 F.3d 1042 (9th Cir. 2008).................................................................3

*Kinderstart.com LLC v. Google, Inc.,*
2006 WL 3246596 (July 13, 2006) .........................................................9

*Kottle v. Nw. Kidney Ctrs.,*
146 F.3d 1056 (9th Cir. 1998)...............................................................16

*Lambtek Yogurt Machines v. Dreyer's Grand Ice Cream, Inc.,*
1997 WL 108718 (N.D. Cal. Mar. 3, 2007)..........................................6, 7

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.,*
884 F.2d 504 (9th Cir. 1989).................................................................17

*LiveUniverse, Inc. v. MySpace, Inc.*
304 F. App'x 554 (9th Cir. 2008) ..........................................................18

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.,*
140 F.3d 1228 (9th Cir. 1998).................................................................6

*Marin Co. Bd. of Realtors, Inc. v. Palsson,*
16 Cal. 3d 920 (1976) ...........................................................................20

*Medtronic Minimed Inc. v. Smiths Med. MD Inc.,*
371 F. Supp. 2d 578 (D. Del. 2005).......................................................18

*MGM Studios, Inc. v. Grokster, Ltd.,*
454 F. Supp. 2d 966 (C.D. Cal. 2006).................................................3, 4

*MiniFrame Ltd. v. Microsoft Corp.,*
2013 WL 1385704 (S.D.N.Y. Mar. 28, 2013) .......................................18

*Monsanto Co. v. Scruggs,*
459 F.3d 1328 (Fed. Cir. 2006)..............................................................12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013)......................................................................................8, 9, 18

*nSight v. PeopleSoft*, 296
  Fed. App'x 555 (9th Cir. 2008)..................................................................................................20

*Oracle Am., Inc. v. Terix Computer Co.*,
  2014 U.S. Dist. LEXIS 158060 (N.D. Cal. Nov. 7, 2014)..........................................................4

*Orchard Supply Hardware LLC v. Home Depot USA*,
  939 F. Supp. 2d 1002, 1010-11 (E.D. Cal. 2013) .............................................................6, 19

*Paladin Assocs., Inc. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003)..............................................................................11, 12, 16

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
  121 F.3d 516 (9th Cir. 1997)........................................................................................................5

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)....................................................................................................15, 16

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997)......................................................................................................10

*Rebel Oil Co. v. Atl. Richfield Co*,
  51 F.3d 1421 (9th Cir. 1995)..........................................................................................10, 18

*Ricchetti v. Meister Brau, Inc.*,
  431 F.2d 1211 (9th Cir. 1970)....................................................................................................8

*Schor v. Abbott Lab.*,
  457 F.3d 608 (7th Cir. 2006)..............................................................................................8, 12

*Sidibe v. Sutter Health*,
  4 F. Supp. 3d 1160 (N.D. Cal. 2013) ....................................................................................16

*Spectrum Sports v. McQuillan*,
  506 U.S. 447 (1993)..................................................................................................................19

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011)....................................................................................................3

*State of Ill. ex rel. Burris v. Panhandle E. Pipe Line Co.*,
  935 F.2d 1469 (7th Cir. 1991)....................................................................................................9

*Stearns Airport Equip. Co., Inc. v. FMC Corp.*,
   170 F.3d 518 (5th Cir. 1999)..................................................................................13

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. Of Realtors*,
   786 F.2d 1400 (9th Cir. 1986)................................................................................24

*Surface Supplied, Inc. v. Kirby Morgan Dike Sys., Inc.*,
   2013 U.S. Dist. LEXIS 143478 (N.D. Cal. Oct. 3, 2010).......................................18

*Tanaka v. Univ. of So. Cal.*,
   252 F.3d 1059 (9th Cir. 2001)..........................................................................10, 11

*Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*,
   55 F. Supp. 2d 1113 (D. Nev. 1999) ......................................................................24

*Twin City Sportserv v. Charles O. Finley Co.*,
   512 F.2d 1264 (9th Cir. 1975)................................................................................10

*United States v. E.I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956) ................................................................................................10

*United States v. Westinghouse Elec. Corp.*,
   648 F.2d 642 (9th Cir. 1981)....................................................................................9

*USS-Posco Indus. v. Contra Costa Co. Bldg. & Constr. Trades Council, AFL-CIO*,
   31 F.3d 800 (9th Cir. 1994)....................................................................................15

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)........................................................................................8, 9, 17

*Vess v. Ciba-Geigy Corp., USA*,
   317 F.3d 1097 (9th Cir. 2003)................................................................................14

*Vincent v. Trend W. Tech. Corp.*,
   828 F.2d 563 (9th Cir. 1987)..................................................................................21

*Voltage Pictures, LLC v. Revitch*,
   2015 U.S. Dist. LEXIS 10330 (D. Or. Jan. 23, 2015)..............................................4

*W. Parcel Expres v. UPS of Am.*,
   190 F.3d 974 (9th Cir. 1999)..................................................................................13

*Ways & Means, Inc., v. IVAC Corp.*,
   506 F. Supp. 697 (N.D. Cal. 1979) ...................................................................12, 13

1

**STATUTES**

15 U.S.C. § 2 ....................................................................................................17, 20

15 U.S.C. § 15(a) ..................................................................................................5, 19

15 U.S.C. § 18 ..............................................................................................5, 10, 15

ATopTech's Cartwright Act and Unfair Competition Law ........................................2

Cal. Bus. & Prof. Code § 16720 ............................................................................20

Cal. Bus. & Prof. Code § 17200 ........................................................................20, 21

§ 7 of the Clayton Act ..................................................................................... passim

UCL....................................................................................................................20, 21

**OTHER AUTHORITIES**

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.09[B] ..............24

Fed. R. Civ. P. 8 ...................................................................................................23

Fed. R. Civ. P. 8(a)...............................................................................................22

Fed. R. Civ. P. Rule 8(b).......................................................................................22

Fed. R. Civ. P. 8(b)(1)...........................................................................................22

Fed. R. Civ. P. 8(b)(2)...........................................................................................22

Fed. R. Civ. P. 9(b) .................................................................................................3

Fed. R. Civ. P. 12(b)(6)......................................................................................3, 20

Fed. R. Civ. P. 12(f)..............................................................................................22

Jonathan I. Gleklen, *Per Se Legality for Unilateral Refusals to License IP Is
Correct as a*............................................................................................................9

*Matter of Law and Policy* (July 2002), Available at:
http://www.arnoldporter.com/resources/documents/Legality.pdf .............................9

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3    ATopTech's amended counterclaims are founded on the flawed premise that it is entitled

4    to use Synopsys' intellectual property and that Synopsys' efforts to enforce its intellectual

5    property rights amount to illegal and impermissible anticompetitive conduct.  These assertions

6    ignore the fact that Synopsys has the absolute right to exclude others from using its intellectual

7    property and has no obligation, under the antitrust laws or otherwise, to share its intellectual

8    property with or otherwise assist ATopTech.  Each of ATopTech's ill-pled counterclaims fail to

9    state plausible claims for relief.

10   ATopTech's amended copyright misuse counterclaim seeks a declaration that Synopsys'

11   copyrights are void because Synopsys has engaged in certain conduct unrelated to its use or

12   licensing of its copyrights.  The doctrine has no application here.  It applies only where a

13   copyright holder improperly uses a copyright to injure competition by conditioning the licensing

14   of the copyright on a customer's promise not to use a competitor's products.  ATopTech does not

15   allege any such condition, and thus the claims fails as a matter of law.

16   ATopTech's federal and state antitrust counterclaims are similarly flawed.  ATopTech's

17   claim under Section 7 of the Clayton Act challenges two acquisitions as unlawful on the grounds

18   that, after the acquisition, Synopsys discontinued products that had a higher level of

19   interoperability with ATopTech's products and failed to help ATopTech improve its products.

20   Under well-established law, even an alleged monopolist has the right to make unilateral product

21   line decisions, including discontinuing products desired by consumers.  And no antitrust duty

22   exists to assist competitors to develop competing products.  Indeed, such a duty would run

23   contrary to the guiding principle of antitrust laws to promote competition and innovation.

24   The tying claim similarly fails.  As ATopTech concedes, Synopsys offers its products

25   separately.  This alone defeats the tying claim.  The monopolization claims fare no better.

26   ATopTech alleges that Synopsys monopolized or attempted to monopolize the relevant markets

27   by violating Section 7, engaging in tying, refusing to assist ATopTech, and engaging in other

28   conduct.  None of the conduct is actionable under the antitrust laws.  Nor has ATopTech alleged

1   any cognizable antitrust injury such as increased consumer prices.  Instead, it complains only

2   about injury to itself.  But the antitrust laws protect competition, not competitors.

3       ATopTech's Cartwright Act and Unfair Competition Law ("UCL") claims are based on

4   the same theories as the defective copyright misuse and antitrust claims and thus fail for the same

5   reasons.  Finally, ATopTech's Amended Answer contains affirmative defenses without factual

6   support which should be stricken as insufficiently pled.  And the litany of irrelevant allegations

7   regarding Synopsys' alleged conduct that are divorced from admitting or denying the truth of the

8   claims contained in Synopsys' Amended Complaint should also be stricken as irrelevant.

9       Having had ATopTech has now had two chances to assert viable counterclaims it is clear

10  that further amendment would be futile.  Thus, the Court, should dismiss the counterclaims with

11  prejudice.

12  **II.     FACTUAL BACKGROUND**

13      To design computer chips, engineers use "place-and-route software" to design the

14  physical layout of the circuits and separate "verification software" to sign off on the timing

15  performance.[1]  ECF No. 252, ¶ 53.  According to ATopTech, these software tools need some

16  level of compatibility and interoperability to assure satisfactory results by the end-user.  *Id.*,

17  ¶¶ 58, 63.  Synopsys offers a place-and-route software known as IC Compiler, which "competes

18  directly" with ATopTech's place-and-route software Aprisa.  *Id.*, ¶ 54.  Synopsys also offers

19  separately a "verification software" tool known as PrimeTime.  *Id.*, ¶ 56.

20      In 2011, Synopsys acquired Extreme DA, which sold verification software known as

21  GoldTime.  *Id.*, ¶ 62.  According to ATopTech, before the acquisition, ATopTech had optimized

22  Aprisa to "work well" with GoldTime and also had a "collaboration agreement" with Extreme

23  DA to improve interoperability.  *Id.*  Sometime after the acquisition, Synopsys decided to

24  discontinue GoldTime.  *Id.*, ¶¶ 61-62.  In 2012, Synopsys acquired Magma Design Automation,

25  which allegedly sold "verification software." *Id.*, ¶ 61.  The amended counterclaims do not

26

27  ────────────────
    [1] The following allegations are taken from the Amended Counterclaims and are assumed
28  as true for purposes of this motion only.

identify the Magma software or allege whether it competed with GoldTime and PrimeTime.  Nor does ATopTech allege that it used the product or optimized Aprisa to work with it.

### III.   ATOPTECH'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

A complaint may survive a motion to dismiss under Rule 12(b)(6) only if it pleads sufficient evidentiary facts (as opposed to ultimate facts), which "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  "'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Colonial Med Grp., Inc. v. Catholic Healthcare W.*, 2010 U.S. Dist. LEXIS 51350, at *7 (N.D. Cal. May 25, 2010) (quoting *Twombly*, 550 U.S. at 555).  The complaint must "answer the basic questions: who, did what, to whom (or with whom), where, and when?"  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).  Plaintiff's factual allegations must make a claim for relief plausible, not merely conceivable.  *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 679.  Where a claim sounds in fraud, it is subject to the heightened pleading standards of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

### A.   ATOPTECH'S COPYRIGHT MISUSE FAILS (COUNT I).

Copyright misuse is a narrow doctrine, used "sparingly" where a copyright holder uses a copyright to stifle competition by "conditioning the licens[ing] [of the copyright] on the promise not to use competitors' products."  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157-58 (9th Cir. 2011).  The purpose of the doctrine is to "prevent[] holders of copyrights 'from leveraging their limited monopoly [granted by the copyright] to allow them control of areas outside the monopoly.'"  *Psystar Corp.*, 658 F.3d at 1157 (9th Cir. 2011) (quoting *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001)); *MGM Studios, Inc. v. Grokster, Ltd.*, 454 F.

---

[2]  The Court in *Twombly* noted that costs of modern federal antitrust litigation, in particular, counsel against sending the parties into discovery when there is no reasonable likelihood that the antitrust plaintiffs can construct a claim.  *See Twombly*, 550 U.S. at 558; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (same).

Motion to Dismiss and Strike
Case No. 3:13-cv-02965-MMC (DMR)

Supp. 2d 966, 995 (C.D. Cal. 2006) (collecting cases and concluding that copyright misuse must "involve[] restraints on inventive or creative activity").

Here, ATopTech has not alleged—nor can it—that Synopsys places any restrictions on the use of any competitive products as a condition of licensing PrimeTime.  In fact, ATopTech does not allege any terms of Synopsys' licenses or any restrictions Synopsys places on customers.  No customers are identified who promised not to use Aprisa or any other product.  Instead, ATopTech alleges without factual support that Synopsys "unlawfully demanded" to inspect ATopTech's Aprisa software, "threatened ATopTech," "initiated litigation against ATopTech" (ECF No. 252, ¶ 64), and "falsely assert[ed] to customers of ATopTech that ATopTech is engaging in unlawful conduct and that ATopTech will not be able to continue as a viable supplier of place-and-route software" (*Id.*, ¶ 66).

These threadbare allegations fall short.  As an initial matter, no facts are alleged to support any of these allegations.  For example, ATopTech offers no facts as to when the alleged demand and threats were made, under what circumstances, by and to whom or why they were "unlawful"; what "objectively baseless" litigation was initiated against ATopTech; or who made the "false and misleading" statements, when, where, and whether a customer decided not to purchase ATopTech's product because of such statements.[3]  But accepting these conclusory statements as true, they do not support a plausible conclusion that Synopsys "conditioned" licensing of its products on a customer's "promise" not to use ATopTech's or other competitor products.  *See Psystar*, 658 F.3d at 1158.  The copyright misuse claim, therefore, fails as a matter of law.  *See Oracle Am., Inc. v. Terix Computer Co.*, 2014 U.S. Dist. LEXIS 158060, at *26 (N.D. Cal. Nov. 7, 2014) ("Because Defendants do not allege any … restriction on use of a competitive product as a condition of licensing Oracle's copyrighted software, Defendants do not plead a plausible copyright misuse defense"); *Grokster*, 454 F. Supp. 2d at 997 ("none of the alleged misconduct

---

[3] To the extent ATopTech seeks to premise its claim of copyright misuse on the allegations of "false and misleading" statements contained in ¶ 66, it must meet Rule 9(b)'s heightened pleading standard, which it has failed to do.  *Kearns*, 567 F.3d at 1126; *Voltage Pictures, LLC v. Revitch*, 2015 U.S. Dist. LEXIS 10330, at *7 (D. Or. Jan. 23, 2015) (dismissing copyright misuse claim for failing to meet the particularity requirements of Rule 9(b)).

has [a] sufficient nexus with the public policy embodied in the grant of a copyright to implicate the misuse defense").

ATopTech's copyright misuse claim also fails because, at best, it is an affirmative defense and not a standalone cause of action. *See Psystar*, 658 F.3d at 1157. It has no role "beyond 'its logical place as a defense to a claim of copyright infringement.'" *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005); *see also Napster*, 239 F.3d at 1026-27 (discussing an affirmative defense); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520 (9th Cir. 1997). In addition, at the recent case management conference, ATopTech represented that it asserted copyright misuse as an affirmative defense and that its cause of action is "belt and suspenders." *See* ECF No. 260, at 28:23. As such, the cause of action should be dismissed as duplicative. *See Adobe Sys. Inc. v. Kornrumpf*, 2011 U.S. Dist. LEXIS 80631, at *8-9 (N.D. Cal. July 25, 2011) (dismissing declaratory relief copyright misuse claim as duplicative). In short, ATopTech's counterclaim for declaratory relief for copyright misuse should be dismissed without leave to amend.

## B.     ATOPTECH'S CLAYTON ACT CLAIM FAILS (COUNT II).

ATopTech now seeks damages under Section 7 of the Clayton Act for alleged conduct Synopsys took after acquiring Extreme DA in 2011 and Magma in 2012, which ATopTech alleges harmed competition in the verification market. Specifically, ATopTech challenges Synopsys: (i) decision to discontinue GoldTime after it acquired Extreme DA and an unnamed product after it acquired Magma and (ii) failure to offer ATopTech the same level of technical assistance and other cooperation offered by Extreme DA. ECF No. 252, §§ 61, 86.

### 1.     ATopTech's Challenge of the Extreme DA Acquisition Fails.

#### (a)     ATopTech has Failed to Allege Standing.

Section 7 of the Clayton Act makes unlawful any acquisition that may "substantially . . . lessen competition, or tend to create a monopoly." 15 U.S.C. § 18. Section 4 of the Clayton Act confers standing to any person who has been "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a). As with all antitrust claims, a plaintiff must allege "antitrust injury," which is to say "injury of the type the antitrust laws were

1   intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick*

2   *Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Antitrust injury requires pleading

3   an injury to "competition," not competitors.  *Id.* at 488.  This requirement ensures that a plaintiff

4   can recover only "if the loss stems from a competition-reducing aspect or effect of the

5   defendant's behavior."  *Id.*; *see also Atlantic Richfield Co. v. U.S.A. Petroleum Co.*,  495 U.S. 328

6   (1990); *Lambtek Yogurt Machines v. Dreyer's Grand Ice Cream, Inc.*, 1997 WL 108718, at *2

7   (N.D. Cal. Mar. 3, 2007).[4]

8       As an initial matter, ATopTech failed to allege any facts supporting its conclusory

9   assertion that it suffered injury resulting directly from the acquisitions.  Only a "direct victim of

10  the alleged antitrust violation" can "prosecute its own cause of action," not a competitor.  *Indeck*

11  *Energy Servs. v. Consumers Energy Co.,* 250 F.3d at 972, 977 (6th Cir. 2000); *see also Assoc.*

12  *Gen. Contractors of Cal., Inc. v. Cal. State Co. of Carpenters*, 459 U.S. 519, 535 n.31 (1983).

13  Here, ATopTech alleges that it "lost the benefit of technical cooperation" it had with Extreme DA

14  (ECF 252, ¶¶ 63, 79), "faced much greater challenges guaranteeing the interoperability of Aprisa

15  with PrimeTime," "lost its ability to secure new customers" (*id.*, ¶ 82), and suffered "financial

16  injury" (*id.*, 85).  The counterclaim, however, is devoid of any facts that support any of these

17  statements.  Without personal injury arising from the alleged antitcompetitive conduct, ATopTech

18  has no standing.

19      Nor has ATopTech alleged sufficient antitrust injury—*i.e.*, injury to competition.

20  ATopTech alleges that Synopsys' decision to discontinue GoldTime and failure to assist

21  ATopTech has led to "reduced competition, deprived consumers of choices, and increased

22  prices."  *Id.*, ¶ 86.  Such bare allegations, without more, are insufficient as a matter of law.  *See*

23  *Orchard Supply Hardware LLC v. Home Depot USA*, 939 F. Supp. 2d 1002, 1010-11 (E.D. Cal.

24

---

25      [4] This nexus is necessary because "[e]very merger of two existing entities into one,
26  whether lawful or unlawful, has the potential for producing economic readjustments that
    adversely affect some persons.  But Congress has not condemned mergers on that account; it has
    condemned them only when they may produce anticompetitive effects."  *Brunswick*, 429 U.S. at
27  487; *see also Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233-34 (9th
    Cir. 1998).

28

1    2013) (granting motion to dismiss in part because allegations of higher prices and decreased

2    consumer choices are insufficient to allege antitrust injury); *see also Brantley v. NBC Universal*,

3    675 F.3d 1192, 1202 (9th Cir. 2012) ("Allegations that an agreement has the effect of reducing

4    consumers' choices or increasing prices to consumers does not sufficiently allege an injury to

5    competition.").[5]

6                          **(b)       Synopsys' Conduct is not Actionable.**

7            ATopTech challenges under Section 7 Synopsys' decision to discontinue products and

8    failure to offer the same level of technical assistance that Extreme DA.  Neither is actionable

9    under the antitrust laws.

10                         **(i)       No Duty to Continue to Sell Products.**

11           It is not a violation of the antitrust laws to discontinue products even if that means fewer

12   choices for consumers.  All companies, including alleged monopolists, are entitled to make

13   unilateral product line decisions, including discontinuing products.  *See Glen Holly Entm't, Inc. v.*

14   *Tektronix, Inc.*, 352 F. 3d 367, 372 (9th Cir. 2003) ("[T]he antitrust laws 'do not preclude any

15   manufacturer from independently discontinuing a product line any more than they preclude a

16   manufacturer from independently raising prices.'"); *Brantley*, 675 F.3d at 1202.  Moreover,

17   removing a product only reduces a firm's purported market power and gives greater opportunities

18   to actual or potential rivals.  Here, for example, ATopTech does not allege that withdrawing

19   GoldTime foreclosed all other alternatives.  Instead, ATopTech's allegations reflect that up to

20   30% of the market was controlled by competing verification software.  *See* ECF No. 252, ¶ 56

21   (indicating Synopsys' market share in verification market is between 70%-90%).  Had Synopsys

22   continued to offer and develop GoldTime, those sales would have been captured by Synopsys and

23   contributed to its market share.  Discontinuing GoldTime placed its customers back into the

24   competitive mix, free to choose PrimeTime or to select competitive products such as those

25   offered by other competitors.  *See, e.g., Lambtek Yogurt Machs. v. Dreyer's Grand Ice Cream,*

26   _____

27           [5] Although ATopTech alleges that two customers preferred GoldTime (*See id.,* ¶ 62), no
     facts are alleged identify the customers or whether they terminated their relationships with
28   ATopTech or purchased PrimeTime.

*Inc.,* 1997 WL 108718, at *4 (N.D. Cal. Mar. 3, 2007) (despite plaintiff distributor's half-million

dollar investment in ice cream machines that were compatible only with defendant's ice cream,

no anticompetitive harm when defendant and manufacturer merged and began manufacturing and

distributing new-generation ice cream machines direct to consumers); *see also DSM Desotech,*

*Inc. v. 3D Sys. Corp.*, 2013 WL 389003, at *14 (N.D. Ill. Jan. 31, 2013) (inclusion of technology

in printers that "locked out" unapproved resins justified as enhancing operation of defendant's

printers and approved resins).  ATopTech may prefer GoldTime to PrimeTime, but it has no right

to force Synopsys to develop two product lines; nor do the antitrust laws preclude Synopsys from

discontinuing one or more of its products.

### (ii)    No Duty to Assist Rivals.

Nor is it a violation of the antitrust laws to refuse to give technical or other assistance to

rivals or anyone else.  ATopTech does not contend that Synopsys prevents interoperability

between Aprisa and PrimeTime.  Instead, the crux of ATopTech's claim is that Synopsys should

provide the same level of technical assistance that Extreme DA provided to ATopTech, including

sharing its protected intellectual property, to assure that ATopTech's products "work well" with

PrimeTime.  ECF No. 252, ¶¶ 61-63, 80-82.  The antitrust laws impose no such duty.  *See Verizon*

*Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004).[6]  In *Trinko*, in

affirming dismissal at the pleading stage, the Supreme Court held that companies have "no duty

to aid competitors" even where consumers would allegedly benefit from the cooperation.  *Id.*

Even alleged "monopolists needn't acquiesce to every demand placed upon them by competitors

---

[6] *See also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013) ("Even a monopolist generally has no duty to share (or continue to share) its intellectual or physical property with a rival."); *Schor v. Abbott Lab.*, 457 F.3d 608, 610 (7th Cir. 2006) ("Cooperation is a *problem* in antitrust, not one of its obligations."); *Cal. Computer Prods. v. IBM*, 613 F.2d 727, 744 (9th Cir. 1979) (CalComp) ("IBM, assuming it was a monopolist . . . was under no duty to help CalComp or other peripheral equipment manufacturers survive or expand"); *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545 (9th Cir. 1983) ("The antitrust laws did not impose a duty on Kodak to assist … manufacturers of competing cameras, film, paper or chemicals to survive or expand"); *Ricchetti v. Meister Brau, Inc.*, 431 F.2d 1211, 1215 (9th Cir. 1970) (refusal to deal does not violate "Section 7 simply because the manufacturer or supplier taking such action has recently been involved in a merger or acquisition of stock or assets with another company").

1   or customers; a monopolist's duties are negative—to refrain from anticompetitive conduct—

2   rather than affirmative—to promote competition." *State of Ill. ex rel. Burris v. Panhandle E. Pipe*

3   *Line Co.*, 935 F.2d 1469, 1484 (7th Cir. 1991). And courts have held that the antitrust laws do

4   not require even an alleged dominant company to compete against itself by licensing its

5   intellectual property to others. *See United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647

6   (9th Cir. 1981).[7]

7        As the Supreme Court explained in *Trinko*, a contrary rule would facilitate collusion

8   among competitors, stifle investment in new products and innovation, and would be

9   unadministrable, requiring courts to act as "central planners" for the economy, setting the price

10  and terms of compelled sharing. *Trinko*, 540 U.S. at 407-08, 415; *see also* Novell, 731 F.3d at

11  1073 ("Experience teaches that independent firms competing against one another is almost

12  always good for the consumer and thus warrants a strong presumption of legality."). Those

13  concerns are implicated here. ATopTech asks the Court to decide how Synopsys should design

14  PrimeTime and what level of technical assistance it should provide rivals. And the sort of

15  cooperation ATopTech seeks would "lessen the incentive for the monopolist, the rival, or both to

16  invest" in new products or facilities. *Trinko*, 540 U.S. at 408.[8]

17          **2.**     **ATopTech's Challenge to the Magma Acquisition Fails.**

18       ATopTech also challenges Synopsys' Magma acquisition on the ground that Synopsys

19  supposedly discontinued a verification software offered by Magma. ECF No. 252, ¶ 76. As

20

21         [7] *See also* Jonathan I. Gleklen, *Per Se Legality for Unilateral Refusals to License IP Is*
    *Correct as a Matter of Law and Policy* (July 2002), Available at:

22  http://www.arnoldporter.com/resources/documents/Legality.pdf

23         [8] Courts have recognized a "limited exception" to an alleged monopolist's freedom to
    refuse to deal with competitors where a party unilaterally terminates a voluntary (and profitable)
    course of dealing and forsakes short-term profits. *Aspen Skiing Co. v. Aspen Highlands Skiing*

24  *Corp.*, 472 U.S. 585 (1985). Here, the counterclaim contains no allegations of a voluntary and
    profitable course of dealing existed between Synopsys and ATopTech or that Synopsys sacrificed

25  short-term profits. *See In re Adderall XR Antitrust Litigation*, 754 F.3d 128, 135-136 (2d Cir.
    2014) (affirming dismissal of complaint because complaint "failed to allege facts that would place

26  [the] case within Aspen Skiing's narrow exception to the long recognized right" of a firm's
    freedom to determine with who it will deal); *see also Kinderstart.com LLC v. Google, Inc.*, 2006

27  WL 3246596, at *8, 10 (July 13, 2006) (dismissing complaint for failure to allege facts giving rise
    to refusal to deal pursuant to Aspen Skiing).

28

noted, Synopsys had a unilateral right to discontinue its products.  The challenge to the Magma

acquisition fails for the independent reason that it is not supported by any facts.  *See Twombly*,

550 U.S. at 570.  For example, ATopTech does not even identify the product, if any, Magma

offered in the verification market; nor does it describe what, if any, relationship ATopTech had

with Magma.  ECF No. 252, ¶¶ 76-83.  Such barebones pleading is insufficient under *Twombly*

and *Iqbal*.

### 3.    ATopTech has not Defined the Relevant Markets.

ATopTech's counterclaim fails because ATopTech has not defined the relevant product

markets.  "[A] determination of the relevant market is a necessary predicate to finding a violation

of [Section] 7 of the Clayton Act because the threatened monopoly must be one which will

substantially lessen competition 'within the area of effective competition.'"  *Twin City Sportserv

v. Charles O. Finley Co.*, 512 F.2d 1264, 1270 (9th Cir. 1975) (quoting *Brown Shoe v. United

States*, 370 U.S. 294, 324 (1962)); *Rebel Oil Co. v. Atl. Richfield Co*, 51 F.3d 1421, 1434 (9th Cir.

1995); *see also Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104-05 (9th Cir.

1999).  A relevant market has two components:  the product market and the geographic market.

*See Big Bear*, 182 F.3d at 1105.[9]

ATopTech alleges that Synopsys has a "70% to 90%" share in what ATopTech calls the

"verification software market" and a 65% share in what it has terms the "place-and-route software

market."  ECF No. 252, ¶¶ 56, 54.  ATopTech alleges that both "markets" are global in

geographic scope.  *Id.,* at ¶ 59.  Rather than alleging facts to supports allegations, ATopTech

merely recites a collection of ultimate facts that must be found to define the relevant antitrust

markets.  *See, e.g., id.*, ¶¶ 53-56.  Paragraph 53, for example, alleges in conclusory fashion that (i)

---

[9] A product market consists of "commodities reasonably interchangeable by consumers for the same purposes."  *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).  "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 325, (1962); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437, 438 n.6 (3d Cir. 1997) (internal quotations and citations omitted).  A geographic market is the "area of effective competition … where buyers can turn for alternative sources of supply."  *Tanaka*, 252 F.3d at 1063.

1   "the place-and-route software market is a separate and distinct product market," (ii) (unnamed)

2   "customers, competitors and market analysts all regard place-and-route software as a separate

3   market," and (iii) "[t]here are no reasonably available substitutes for place-and-route software"[10]

4   No facts are alleged to support any of these conclusory statements. *Colonial Med.* 2010 U.S.

5   Dist. LEXIS 51350, at *10 ("Where the plaintiff fails to define its proposed relevant market with

6   reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a

7   proposed relevant market that clearly does not encompass all interchangeable substitute products

8   even when all factual inferences are granted in plaintiffs' favor, the relevant market is legally

9   insufficient and a motion to dismiss may be granted.") (quotations and citation omitted).[11]

10      Such insufficient pleading requires dismissal. *Tanaka v. Univ. of So. Cal.*, 252 F.3d 1059,

11   1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for dismissing a

12   Sherman Act claim"); *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.,* 433 Fed. App'x. 598

13   (9th Cir. 2011); *Colonial Med.*, 2010 U.S. Dist. LEXIS 51350, at *10; *see also Twombly* 550 U.S.

14   at 555 ("formulaic recitation of the elements of a cause of action will not do").

15          **C.      ATOPTECH'S TYING CLAIM FAILS (COUNT III).**

16      A tying arrangement is defined as "an agreement by a party to sell one product [the tying

17   product] but only on the condition that the buyer also purchases a different (or tied) product, or at

18   least agrees that he will not purchase that product from any other supplier." *N. Pac. Ry.*, 356 U.S.

19   at 5-6.  To prevail on a its tying claim, ATopTech must establish: "(1) that there exist two distinct

20   products or services in different markets whose sales are tied together; (2) that the seller possesses

21   appreciable economic power in the tying product market sufficient to coerce acceptance of the

22   tied product" and negative impact in the tied market. *Paladin Assocs., Inc. v. Mont. Power Co.,*

23   328 F.3d 1145, 1159 (9th Cir. 2003) (internal citations and quotations omitted); *Ill. Tool Works*

24

25      [10] ATopTech's allegations regarding the "verification software market" are materially
    indistinguishable from its allegations about the "place-and-route software market. " *Compare*
26   ECF No. 252, ¶¶ 55-56 *with* ¶¶ 53-54.

27      [11] Moreover, with respect to the geographic market, ATopTech has provided no support
    for why the relevant verification and place-and-route submarkets are global in scope while the
    overall EDA market exists only in United States. *Compare* ECF No. 252, ¶ 59 *with* ¶ 52.
28

Motion to Dismiss and Strike
Case No. 3:13-cv-02965-MMC (DMR)

1  *Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006).  ATopTech's tying claim fails to allege a tie,

2  sufficient market power, or sufficient harm to competition.[12]

3  **1.**   **No Tie Exists Where the Products are Sold Separately.**

4  "[W]here the buyer is free to take either product by itself there is no tying problem."  *N.*

5  *Pac. Ry. Co.*, 356 U.S. at 6 n.4.  Here, Synopsys does not condition the sale of PrimeTime on the

6  purchase of IC Compiler.  Instead, the products are offered separately, and ATopTech does not

7  allege otherwise.  This alone defeats tying claim.  *See id.*; *see also Foremost Pro Color, Inc.,* 703

8  F.2d at 540 ("[T]he seller must condition the sale of the tying product on the buyer's purchase of

9  the tied product."), *overruled sub silentio on other grounds by Hasbrouck v. Texaco, Inc.*, 842

10  F.2d 1034 (9th Cir. 1987); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1340-41 (Fed. Cir. 2006)

11  (no tying where patented genetic portion of seed available separately); *Schor v. Abbott Lab.*, 457

12  F.3d 608, 610 (7th Cir. 2006) ("Abbott sells ritonavir as part of Kaletra, but this is not a tie-in

13  because ritonavir is available separately . . . ."); *Ways & Means, Inc., v. IVAC Corp.*, 506 F. Supp.

14  697, 700 (N.D. Cal. 1979) ("[T]here must in fact exist a tying scheme by which purchasers are

15  required to buy one commodity or service in order to obtain a second, distinct commodity or

16  service.").

17  In an effort to avoid this outcome, ATopTech alleges that Synopsys has engaged in certain

18  conduct it alleges forced customers of PrimeTime to purchase IC Compiler.  Coercion to buy the

19  tied product that the customer "did not want at all, or might have preferred to purchase elsewhere

20  on different terms" or might have is an "essential characteristic" of a tying claim.  *Jefferson*

21  *Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984); *Ill. Tool*, 547 U.S. 34-35; *Paladin*

22  *Assocs.*, 328 F.3d at 1159; *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 540

23  (9th Cir. 1983).  The coercion test distinguishes transactions where customers voluntarily choose

24  to purchase two products together from those where the seller forces the customer to do so.  Here,

25  ATopTech has fallen well short of alleging such coercion.

26

27  _____

[12] As discussed above, ATopTech has failed to define the "verification market" making it impossible to determine whether Synopsys had sufficient market power.

28

1

### (a)    Discriminatory and Punitive Pricing.

2          ATopTech claims that Synopsys forced customers to purchase its products together by

3     engaging in "discriminatory and punitive pricing of its verification software PrimeTime to

4     customers who wish to purchase their place-and-route software elsewhere (such that it is not

5     economically viable for the customer to purchase third-party place-and-route software)...."  ECF

6     No. 252 ¶ 92; *see also* ¶ 68.  Beyond using antitrust buzzwords, ATopTech does not explain what

7     it means by the terms "discriminatory" or "punitive pricing," which makes it impossible to assess

8     ATopTech's claim.  Nor does it provide any facts to support the claim, including what prices

9     Synopsys actually charged or that customers were in fact forced into purchasing Synopsys'

10    products together where they would have preferred to purchase a different product.  *See, e.g.*,

11    *Ways & Means, Inc.*, 506 F. Supp. at 702-03 (comparing prices for products sold separately to

12    prices for packaged goods to determine economic viability).[13]

13         To the extent that ATopTech is referring to Synopsys offering discounts to customers who

14    purchase its products together, such a claim fails as a matter of law.  Discounting products as a

15    package is a ubiquitous practice that provides significant benefits to consumers in the form of

16    lower prices, and thus is generally legal under the antitrust laws.  *See e.g., Cascade Health*

17    *Solutions v. Peacehealth*, 515 F.3d 883, 894-95 (9th Cir. 2008); *W. Parcel Expres v. UPS of Am.*,

18    190 F.3d 974, 976 (9th Cir. 1999).  The antitrust laws "leave unhampered pricing practices that

19    might benefit consumers, absent the clearest showing that an injury to the competitive process

20    will result."  *Cascade* 515 F.3d at 902).  Only in very specific circumstances, which ATopTech

21    has not and cannot allege, can discounts give rise to an antitrust claim.  *Id.* at 903, 906-07.  For

22    example, a plaintiff challenging discounting must at a minimum allege that "the prices at issue

23    were below an appropriate measure of its rival's costs."  *Stearns Airport Equip. Co., Inc. v. FMC*

24    *Corp.*, 170 F.3d 518, 532 (5th Cir. 1999).  But nowhere does ATopTech allege facts that

25    _____

26         [13] ATopTech asserts in cryptic fashion that it is aware of "at least one customer in 2015"
      who was told by Synopsys that the customer's price for PrimeTime would increase if the
      customer did not also purchase place-and-route software from Synopsys.  *Id.*, ¶ 93.  ATopTech

27    does not identify the customer or even allege that the customer ultimately purchased place-and-
      route software from Synopsys as a result of this alleged statement.

28

Motion to Dismiss and Strike
Case No. 3:13-cv-02965-MMC (DMR)

1    Synopsys charges prices below its costs.  *Brooke Group v. Brown*, 509 U.S. 209, 224 (1993)

2    (holding that predatory pricing requires pricing below marginal or average variable cost and a

3    dangerous probability of recouping investment after driving rivals from the market).

4          At bottom, ATopTech is not suing on behalf of customers who want to avoid higher

5    prices.  Instead, it is suing on behalf of itself for its alleged lost business that supposedly flows

6    from Synopsys offering PrimeTime and IC Compiler together at lower prices.  Protecting profit

7    margins of competitors is not the purpose of the antitrust laws.  *Indeck*, 250 F.3d at 978-79.

8                    **(b)      Allegedly Misleading Statements.**

9          ATopTech next contends that Synopsys has forced customers to purchase Synopsys

10   products instead of competing place-and-route software by "falsely asserting to customers of

11   ATopTech that ATopTech is engaging in unlawful conduct and that ATopTech will not be able to

12   continue as a viable supplier of place-and-route software."  *Id.*, ¶¶ 66, 68.  As with its other

13   counterclaims, ATopTech provides no factual support for any of these alleged falsehoods.

14   ATopTech's failure to do so is all the more glaring because the allegations in ¶ 66 sound in fraud

15   and must be pled with particularity pursuant to Rule 9(b).  *See Kearns*, 567 F.3d at 1126; *see also*

16   *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (where a plaintiff bases its

17   claim on some fraudulent and some not fraudulent conduct, "the allegations of fraud are subject

18   to Rule 9(b)'s heightened pleading requirements").  The amended counterclaim gives Synopsys

19   no notice regarding what statements were allegedly false, when those statements were made, to

20   whom they were made, or to how many people they were made.  *See Kearns,* 567 F.3d at 1126

21   (dismissing complaint for failure to allege "the particular circumstances surrounding" alleged

22   misrepresentations, including the contents of specific statements, reliance on such statements and

23   the identity of the person making the statement); *see also Gyore v. Krausz Precision Mfg. Corp.*,

24   1992 U.S. App. LEXIS 2241, at *2 (9th Cir. Feb. 11, 1992) (dismissing antitrust claim premised

25   on fraud for failure to meet Rule 9(b)'s heightened pleading standard).

26         Nor does ATopTech allege that any customer relied on the alleged statements, chose not

27   to purchase an ATopTech product as a result, or was forced to purchase a Synopsys product

28   instead of products sold by a Synopsys competitor.  Such a theory, devoid of any supporting facts,

1   is simply not plausible.  Courts have recognized that consumers rarely place much credence in a

2   seller's disparaging comments about a rival.  *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace*

3   *Jovanovich Legal & Prof. Publs., Inc.,* 108 F.3d 1147, 1152 (9th Cir. 1997) (affirming district

4   court's overturning of jury's finding that false statements were exclusionary conduct in violation

5   of Sherman Act).  This is because customers remain free to ignore the statements and purchase

6   any products they desire.

7                             **(c)        Acquisitions.**

8        ATopTech's also alleges that Synopsys forced customers to purchase IC Compiler by

9   acquiring Extreme DA and Magma.  As discussed above with respect to the Section 7

10  counterclaim, ATopTech has failed to allege facts supporting the conclusory assertion that any

11  customers were forced into purchasing IC Compiler.  Nor could it.  Consumers remain free after

12  the acquisition to purchase "place-and-route software" from other firms, including ATopTech.  In

13  short, the amended counterclaims allege no set of facts that would lead to a plausible conclusion

14  that Synopsys' acquisition of some firms in the verification market forces consumers to purchase

15  "place-and-route software" from only Synopsys.

16                          **(d)        Allegedly "Objectively Baseless Litigation".**

17       ATopTech allegations of coercion through objectively baseless litigation also fails.  First,

18  no set of facts are alleged supporting the notion that Synopsys' mere filing of a lawsuit forced

19  consumers into purchasing Synopsys' place-and-route products instead of third-party products.

20  Because the allegations are not plausible, this theory too should be dismissed.

21       Second, Synopsys' litigation conduct is protected activity under the *Noerr-Pennington*

22  doctrine and cannot serve as the basis for antitrust liability.  *See Prof'l Real Estate Investors, Inc.*

23  *v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56 (1993) ("[T]hose who petition government for

24  redress are generally immune from antitrust liability.").  Immunity is lost "only if a party engages

25  in 'sham' petitioning." *See USS-Posco Indus. v. Contra Costa Co. Bldg. & Constr. Trades*

26  *Council, AFL-CIO,* 31 F.3d 800, 810 (9th Cir. 1994).  To establish "sham petitioning," the

27  complaint must demonstrate with specificity that the lawsuit is (1) "objectively baseless, in the

28  sense that no reasonable litigant could realistically expect success on the merits" and (2)

1  subjectively motivated by bad faith.  *Prof'l Real Estate Investors*, 508 U.S. at 60; *see also Kottle*

2  *v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998).  A claimant must show "clear and

3  convincing evidence of bad faith."  *See  Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d, 996 (9th Cir.

4  1979).  Relying only on "a failed legal theory" is not enough.  *See C.R. Bard, Inc. v. M3 Sys.,*

5  *Inc.,* 157 F.3d 1340, 1368-69 (Fed. Cir. 1998) ("Neither the bringing of an unsuccessful suit …

6  nor the effort to enforce a patent that falls to invalidity, subjects the suitor to antitrust liability.").

7       ATopTech falls far short of satisfying the traditional 12(b)(6) standard, much less the

8  requisite "heightened" standard.  ATopTech does not specify which claims it alleges to be

9  objectively baseless, including whether the alleged objectively baseless claims are limited to

10  those claims that the Court previously dismissed.  *Cf. C.R. Bard*, 157 F.3d at 1368-69 (failed legal

11  theory insufficient to invoke sham exception).  Further, ATopTech has failed to allege "clear and

12  convincing evidence of bad faith."  *Handgards*, 601 F.3d at 996.  And it ignores that no claims in

13  the original complaint were dismissed with prejudice and all claims in the Amended Complaint

14  survived ATopTech's motion to dismiss.

15              **2.      ATopTech's has not Alleged Anticompetitive Harm.**

16       Under both per se and rule of reason tying claims, ATopTech must allege that the tie

17  negatively impacted the tied market.  *Paladin*, 328 F.3d at 1159; *Sidibe*, 4 F. Supp. 3d at 1177;

18  *see also County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1157 (9th Cir. 2001).[14]

19  Thus, for a tying claim to proceed, plaintiff must allege a reduction in competition in the tied

20  market.

21       Here, ATopTech merely alleges that "Synopsys' tying arrangement affects a substantial

22  volume of interstate commerce" and "harms competition in the place-and-route software market"

23  (ECF No. 252, ¶¶  95, 97).  Beyond stating these conclusions, ATopTech provides no facts

24  regarding how competition was harmed, such as which and what percentage of competitors in the

25  place-and-route software market have been impacted by Synopsys' alleged conduct or whether

26

27       _____

          [14] Under the per se test, a plaintiff must plead a "pernicious effect on competition."  *See*

28  *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1178 (N.D. Cal. 2013) (collecting cases).

1    prices increased.  *See Les Shockley Racing*, *Inc. v. Nat'l Hot Rod Assoc.,* 884 F.2d 504, 507-08

2    (9th Cir. 1989) (holding plaintiff "may not merely recite the bare legal conclusion that

3    competition has been restrained"); *see also In re Rubber Chems. Antitrust Litig.*, 2008 U.S. Dist.

4    LEXIS 98393, at *4-5 (N.D. Cal. Dec. 4, 2008) (dismissing complaint for asserting bare

5    allegation that allegedly anticompetitive conduct "caused injury to competition in the United

6    States by reducing and restraining . . . competition" in the relevant market).  Instead, the

7    counterclaims allege only injury to ATopTech, which is not actionable under the antitrust laws.

8              **D.      ATOPTECH'S MONOPOLIZATION CLAIMS FAIL (COUNTS IV-V).**

9            To state valid monopolization claims, ATopTech must allege "'(1) the possession of

10   monopoly power in the relevant market and (2) the willful acquisition or maintenance of that

11   power as distinguished from growth or development as a consequence of a superior product,

12   business acumen, or historic accident.'"  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d

13   536, 541 (9th Cir. 1991).  To safeguard the incentive to innovate, the possession of monopoly

14   power will not be found unlawful unless it is accompanied by an element of anticompetitive

15   conduct.  *Trinko* 540 U.S. at 407.  In fact, the "mere possession of monopoly power, and the

16   concomitant charging of monopoly prices, is not only not unlawful; it is an important element of

17   the free market system."  *Id.*; see also *Alaska Airlines*, 948 F.2d at 549 ("setting a high price … is

18   not in itself anticompetitive").

19          The Supreme Court has cautioned that, although the nature of the acts that can support a

20   Section 2 claim are "difficult" to describe, [t]he cost of false positives counsel against an undue

21   expansion of § 2 liability."  *Trinko*, 540 U.S. at 414.  "A desire to increase market share or even

22   drive a competitor out business through vigorous competition on the merits is not sufficient."

23   *Abcor Corp. v. AM Int'l*, 916 F.2d 924, 927 (4th Cir. 1990).  And a defendant can avoid Section 2

24   liability by demonstrating that it had a legitimate business justification for its conduct.  *See Image*

25   *Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1219 (9th Cir. 1997) ("When a

26   legitimate business justification supports a monopolist's exclusionary conduct, that conduct does

27   not violate § 2 of the Sherman Act.").

28          ATopTech claims that Synopsys engaged in a series of conduct to monopolize or attempt

1   to monopolize the undefined "verification" and "place-and-route" markets.  Its claims fail for a

2   number of reasons.  First, ATopTech fails to define the relevant markets, rendering ATopTech's

3   claims regarding monopoly power insufficient.  *See supra* § B.4.  Its estimations of market shares

4   are therefore meaningless.  *See Rebel Oil*, 51 F.3d at 1434 ("Market definition is crucial.  Without

5   a definition of the relevant market, it is impossible to determine market share."); *See Surface*

6   *Supplied, Inc. v. Kirby Morgan Dike Sys., Inc.*, 2013 U.S. Dist. LEXIS 143478, at *19-20 (N.D.

7   Cal. Oct. 3, 2010) (dismissing conclusory allegation regarding market power).

8        Second, ATopTech has failed to allege any actionable "exclusionary acts."  ATopTech

9   alleges that Synopsys has monopolized (or attempted to) by acquiring companies in violation of

10  Section 7 of the Clayton Act and engaging in tying and copyright misuse.  ECF No. 252, ¶¶ 104,

11  116.  As demonstrated above, each of those claims fail as a matter of law and are not supported

12  by any facts.

13       ATopTech also alleges that Synopsys has monopolized by refusing to give information to

14  or otherwise assist competitors of IC Compiler that attempt to interoperate with PrimeTime and

15  by periodically altering the verification tests in PrimeTime without providing information to

16  others to assist with interoperability.  *Id.*  As a threshold matter, this allegation fails

17  *Iqbal/Twombley* because no facts are alleged supporting the assertion, including identity of the

18  alterations, when made, and what impact they allegedly had on interoperability.  Without those

19  facts, Synopsys is unable to evaluate the plausibility of the claim.  Putting aside the pleading

20  deficiencies, as discussed above, firms have no duty to assist competitors to ensure that their

21  products work better or interoperate.  *See also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 at

22  1074; *LiveUniverse, Inc. v. MySpace, Inc.* 304 F. App'x 554, 556-57 (9th Cir. 2008); *CalComp*,

23  613 F.2d at 744; *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545 (9th Cir.

24  1983).[15]

25

26       [15] *See also Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612,
    617, 623 (S.D.N.Y. 2013); *MiniFrame Ltd. v. Microsoft Corp.*, No. 11 Civ. 7419 (RJS), 2013 WL
27  1385704, at *3-5 (S.D.N.Y. Mar. 28, 2013); *Medtronic Minimed Inc. v. Smiths Med. MD Inc.*,
    371 F. Supp. 2d 578, 588-89 (D. Del. 2005).

28

1    Finally, ATopTech contends that Synopsys has monopolized the market by filing

2   objectively baseless litigation and making false and misleading statements regarding ATopTech.

3   Such conduct is not exclusionary.  As demonstrated above, Synopsys' litigation conduct is

4   protected petitioning activity under the *Noerr-Pennington* doctrine.  With respect to false and

5   misleading statements, ATopTech has failed to allege sufficient facts to analyze the claim,

6   including the actual statements made and when and to whom they were made.  And it is not

7   plausible that Synopsys acquired or maintained monopoly power by making alleged false

8   statements because, as courts have recognized, puffery is rarely taken seriously by consumers and

9   thus not exclusionary.  *See Am. Prof. Testing*, 108 F.3d at 1152 (affirming district court's

10  overturning of jury's finding that false statements were exclusionary conduct in violation of

11  Sherman Act).

12    Third, ATopTech's monopolization claims also fail because no facts regarding harm to

13  competition are alleged.  As with the Section 7 and tying claims, ATopTech's bare allegations of

14  harm to "consumers and competitors" in support of both claims (see ECF No. 252, ¶¶ 109, 121)

15  lack evidentiary factual support and are therefore insufficient to allege antitrust injury.  *See*

16  *Orchard Supply*, 939 F. Supp. 2d at 1010-11; *see also Brantley*, 675 F.3d at 1202.

17    Fourth, although ATopTech is seeking treble damages for its monopolization claims

18  pursuant to Section 4 of the Clayton Act, it has provided no factual allegations to support its

19  damages.  *See, e.g.*, ECF No. 252, ¶¶ 111, 123.  Accordingly, ATopTech has not sufficiently

20  alleged monetary damages and its claims should be dismissed.  *See GAF Corp. v. Eastman Kodak*

21  *Co.*, 519 F. Supp. 1203 (S.D.N.Y. 1981) ("In order to prevail on a monopolization claim, a

22  plaintiff must prove . . . sufficient facts to support a determination of monetary damages to

23  compensate for the injury.").

24    **E.    ATOPTECH ALSO FAILS TO ALLEGE ATTEMPTED**

25      **MONOPOLIZATION (COUNTS IV-V).**

26    A claim of attempted monopolization requires "(1) that the defendant has engaged in

27  predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous

28  probability of achieving monopoly power."  *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456

1   (1993).  A plaintiff must also adequately plead a relevant market.  *See Big Bear Lodging Ass'n v.*

2   *Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) ("Market definition is . . . essential to

3   establish a monopolization claim.").  ATopTech's amended counterclaim for attempted

4   monopolization of both the verification market (Count IV) and place-and-route market (Count V)

5   fail for the same reasons that the monopolization of both respective counts fail:  ATopTech has

6   not pled a relevant market, does not allege sufficient anticompetitive conduct, and has not

7   established antitrust injury.  Moreover, the amended counterclaims fail to allege any facts

8   regarding Synopsys' specific intent to monopolize.

9       **F.**      **ATOPTECH'S CARTWRIGHT CLAIMS ARE DERIVATIVE OF ITS**

10                   **SHERMAN AND CLAYTON ACT CLAIMS AND FAIL FOR THE SAME**

11                   **REASONS (CLAIM VI).**

12         The Cartwright Act is patterned after the Sherman Act.  *See Marin Co. Bd. of Realtors,*

13   *Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976).  Thus, for the same reasons that each of ATopTech's

14   Sherman Act claims fail, the Cartwright Claim should also be dismissed.  *See nSight v.*

15   *PeopleSoft*, 296 Fed. App'x 555, 558 (9th Cir. 2008) (affirming dismissal of Cartwright claim

16   because plaintiff's Sherman Act claim was deficient under Rule 12(b)(6)).  Moreover, because the

17   Cartwright Act does not address unilateral conduct ATopTech cannot seek to recover for its

18   amended monopolization counterclaims pursuant to the Act.  *See Flagship Theatres of Palm*

19   *Desert, LLC v. Century Theatres, Inc.*, 198 Cal. App. 4th 1366, 1386 (2011) ("[T]he Cartwright

20   Act contains no provision parallel to the Sherman Act's prohibition against monopolization (15

21   U.S.C. § 2), and the Cartwright Act applies only to a 'combination' involving 'two or more

22   persons (§ 16720), not to *unilateral* conduct.") (emphasis in original).

23       **G.**      **ATOPTECH'S UNFAIR COMPETITION LAW CLAIMS FAIL**

24                   **(CLAIM VII).**

25         The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal.

26   Bus. & Prof. Code § 17200.  ATopTech's counterclaim is a formulaic, boilerplate UCL

27   allegation, failing to even identify which prong of the statute it invokes.

28         Assuming ATopTech seeks to assert an "unlawful" claim under the UCL, it must properly

allege a violation of the underlying law upon which the UCL claim is based. *See Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 374 (2001). Here, the "unlawful" claim is derivative of the Sherman Act claims. For the reasons stated above, those claims fail and thus the "unlawful" § 17200 claim must be dismissed. *See Digital Sun v. Toro Co.*, 2011 U.S. Dist. LEXIS 30222, at *14 (N.D. Cal. Mar. 22, 2011) ("Because the Sherman Act violation is insufficiently pled, it follows that [plaintiff] has also failed to plead any violation of the Unfair Competition Law.").

Assuming ATopTech seeks to impose UCL liability pursuant to the "unfair" prong, the cause of action should be dismissed as unnecessarily duplicative of its failed antitrust claims. *See Chavez*, 93 Cal. App. 4th at 375 ("To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of precompetitive conduct.").

Finally, assuming ATopTech is attempting to allege fraudulent conduct, it must plead its allegations under Rule 9(b)'s heightened pleading standards. *See Kearns*, 567 F3d at 1125. This requires particularized allegations of fraud, including "actual reliance on . . . allegedly deceptive or misleading statements…." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). Here, ATopTech does not even make clear whether it is asserting fraud, let alone identified allegedly fraudulent conduct or reliance on such conduct. Such pleading fails Rule 9(b)'s heightened standard.

## IV.   ATOPTECH'S COUNTERCLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

The Court has broad discretion to dismiss an action with prejudice where "a party has previously amended the complaint." *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *see also Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1438 (9th Cir. 1986) (refusing to allow plaintiff to file a successive amended complaint where "[t]he factual bases of the claims were known to [plaintiff] long before"). ATopTech has now had two years and two attempts to draft counterclaims against Synopsys. Further amendment would be futile and do nothing more than prejudice Synopsys and potentially delay the proceedings. *Allen*, 911 F.2d at 374; *Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563, 570–71 (9th Cir. 1987).

1

2

**V.      THE COURT SHOULD STRIKE INAPPROPRIATE ALLEGATIONS FROM**
        **ATOPTECH'S AMENDED ANSWER**

3      A court may "strike from a pleading an insufficient defense or any redundant, immaterial,

4  impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Although motions to strike are

5  generally looked upon with disfavor, they may be granted on the grounds of immateriality or

6  impertinence when the allegations in question have no possible relation to the controversy.

7  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir.1993), *rev'd on other grounds*, 510 U.S.

8  517 (1994).  Immaterial matter is "that which has no essential or important relationship to the

9  claim for relief or the defenses being pleaded."  *Id.* at 1527.  "'Impertinent' matter consists of

10 statements that do not pertain, and are not necessary, to the issues in question."  *Id.*  ATopTech's

11 Amended Answer contains multiple unsubstantiated allegations that serve no purpose other than

12 to paint Synopsys as an anticompetitive monopolist and prejudice Synopsys before a jury.  These

13 allegations are irrelevant to the copyright and breach of contract claims asserted in Synopsys'

14 Amended Complaint, and should be stricken as both immaterial and impertinent.

15     In responding to a complaint, Rule 8(b) requires that a defendant "state in short and plain

16 terms it each claim asserted against it; and admit or deny the allegations asserted against it by the

17 opposing party."  *See* Fed. R. Civ. P. 8(b)(1).  ATopTech went beyond these requirements and

18 drafted its Amended Answer to allege a series of unsubstantiated accusations.  Such allegations to

19 the extent any survive the motion to dismiss rightly belong in a counterclaim, not an answer.

20 *Compare* Fed. R. Civ. P. 8(a) *with* 8(b).

21     For example, ¶ 2 of the Amended Answer admits allegations made in Synopsys' Amended

22 Complaint, but goes on to "allege[] that Synopsys is the dominant competitor in the electronic

23 design automation industry."  ECF No. 252, ¶ 2.[16]  Such additional "allegations" are unnecessary

24 pursuant to the requirements of Fed. R. Civ. P. 8(b)(2) and immaterial and impertinent to the truth

25 or falsity of allegations asserted against ATopTech in Synopsys' Amended Complaint.  Similarly,

26

27     [16] Attached as Appendix A is a copy of ATopTech's Amended Answer identifying each of
   the impertinent allegations Synopsys requests stricken.

28

¶ 6 denies allegations made in Synopsys' Amended Complaint, but proceeds to "allege" an "unlawful" attempt by Synopsys to gain access to ATopTech's superior software and to "destroy ATopTech as a competitor."  Again, such allegations (which Synopsys disputes) are immaterial and impertinent to whether or not ATopTech denies the allegations made in the Amended Complaint.  Paragraphs 9, 12, 15 and 28 similarly allege numerous inappropriate, immaterial and impertinent factual matter attempting to portray Synopsys in a negative light and set the stage for ATopTech's thinly pled antitrust allegations.  ATopTech should assert any allegations it believes support its antitrust allegations in its countercomplaint rather than hijack the procedural vehicles provided by Rule 8 to plead its case.  Because none of these allegations bear any relationship to the admission or denial of the copyright and breach of contract claims made in Synopsys' Amended Complaint they should each be stricken as immaterial.  *See Fantasy, Inc.*, 984 F.2d  at 1527 (immaterial allegations have "no essential or important relationship to the claim for relief or the defenses being pleaded.").  Moreover, because none of this extraneous material is necessary to the "short and plain" statement required by Rule 8, they should be stricken as impertinent.  *See id.* ("'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question.").

## VI.   THE COURT SHOULD STRIKE ATOPTECH'S UNCLEAN HANDS AFFIRMATIVE DEFENSES

ATopTech raises two independent unclean hands defenses, but both fail.  In its copyright infringement action, Synopsys contends, among other things, that Extreme DA copied portions of PrimeTime and incorporated them into GoldTime.  Affirmative Defense No. 9 alleges that by ratifying the GoldTime licensing agreement between Extreme DA and ATopTech "without ever asserting or disclosing its current contention that Extreme DA lacked the ownership rights … or that GoldTime was an unauthorized copy…of PrimeTime," Synopsys is guilty of unclean hands. ECF No. 252, ¶¶ 43, 41.  Affirmative Defense No. 11, by contrast, alleges that Synopsys engaged in "conduct that constitutes unreasonable restraints of trade and acts of monopolization" and its copyright infringement claims are therefore barred by the doctrine of unclean hands.  *Id.*, ¶ 45.

Both affirmative defenses fail, because in the copyright context, the defense of unclean

1   hands is limited to where "plaintiff's evidence was false and that plaintiff was involved in a

2   scheme to defraud the public." *Supermarket of Homes, Inc. v. San Fernando Valley Bd. Of*

3   *Realtors,* 786 F.2d 1400, 1408 (9th Cir. 1986).  The defense should be granted "only where the

4   alleged misconduct relates directly to the right asserted by the plaintiff." *Tiffany Design, Inc. v.*

5   *Reno-Tahoe Specialty, Inc.,* 55 F. Supp.2d 1113, 1123 (D. Nev. 19999).  The defense is rarely

6   recognized.  *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 991 (9th Cir. 2009), and

7   courts have declined to broaden its reach.  *See id.* at 992 (declining extend defense to the illegal

8   use of copyrights); *see also* 4 Nimmer on Copyright § 13.09[B].  ("[S]uch a defense is recognized

9   only rarely," such as "when the plaintiff misused the process of the courts by falsifying a court

10  order, by falsifying evidence, or by misrepresenting the scope of his copyright to the court and

11  opposing party.").

12      At the recent case management conference, counsel for ATopTech stated that it had also

13  alleged copyright misuse as an affirmative defense.  *See* ECF No. 260, at 28:23-25.  To the extent

14  ATopTech intends to characterize Affirmative Defense No. 11 as a copyright misuse defense, it

15  fails for the same reasons Count I of the countercomplaint fails.  *See supra* § III.A.

16  **VII.   CONCLUSION**

17      For these reasons, ATopTech's counterclaims should be dismissed and the immaterial and

18  impertinent allegations in ¶¶ 2, 6, 9, 12, 15 and 28 and Affirmative Defenses 9 and 11 should be

19  stricken.

20

21  Dated:  March 30, 2015                Respectfully submitted,

22                                        JONES DAY

23                                        By: */s/ David C. Kiernan*

24                                           David C. Kiernan

25                                        Attorneys for Plaintiff
                                          SYNOPSYS, INC.

26

27

28

# APPENDIX A

1  Paul Alexander (#49997)
   ARNOLD & PORTER LLP
2  1801 Page Mill Road, Suite 110
   Palo Alto, CA 94304-1216
3  Telephone: (650) 798-2920
   Fax: (650) 798-2999
4  E-Mail: Paul.Alexander@aporter.com

5  Martin R. Glick (#40187)
   Daniel Asimow (#165661)
6  Willow Noonan (#277584)
   Daniel Pastor (#297948)
7  ARNOLD & PORTER LLP
   Three Embarcadero Center, 7th Floor
8  San Francisco, CA 94111-4024
   Telephone: (415) 471-3100
9  Fax: (415) 471-3400
   E-Mail: Marty.Glick@aporter.com
10 E-Mail: Daniel.Asimow@aporter.com
   E-Mail: Willow.Noonan@aporter.com
11 E-Mail: Daniel.Pastor@aporter.com

12 Denise McKenzie (#193313)
   Ryan M. Nishimoto (#235208)
13 ARNOLD & PORTER LLP
   777 South Figueroa Street, Forty-Fourth Floor
14 Los Angeles, CA 90017-5844
   Telephone: (213) 243-4000
15 Fax: (213) 243-4199
   E-Mail: Denise.McKenzie@aporter.com
16 E-Mail: Ryan.Nishimoto@aporter.com

17 Attorneys for Defendant
   ATOPTECH, INC.

18

19                    UNITED STATES DISTRICT COURT

20                   NORTHERN DISTRICT OF CALIFORNIA

21                       SAN FRANCISCO DIVISION

22

23 SYNOPSYS, INC.,                    Case No. 3:13-cv-02965 MMC (DMR)

                    Plaintiff,        **DEFENDANT ATOPTECH, INC.'S FIRST
24                                    AMENDED ANSWER TO AMENDED
        v.                            COMPLAINT AND FIRST AMENDED
25                                    COUNTERCLAIMS; DEMAND FOR JURY
   ATOPTECH, INC.,                    TRIAL**
26
                    Defendant.
27

28

1   Defendant ATopTech, Inc. ("Defendant" or "ATopTech") hereby answers the Amended

2   Complaint for Copyright Infringement, Patent Infringement, Breach of Contract and Breach of

3   Implied Covenant of Good Faith and Fair Dealing of Plaintiff Synopsys, Inc. ("Plaintiff" or

4   "Synopsys"). By Order of the Court dated July 22, 1014 (ECF No. 142), the patent claims (Counts

5   II-V) asserted in the Amended Complaint have been stayed. Accordingly, no answer or response to

6   these claims in the Amended Complaint is now due and ATopTech hereby reserves all rights and

7   defenses to said claims, including but not limited to the right to supplement this Answer and to

8   assert any and all defenses and counterclaims. ATopTech will answer, assert affirmative defenses

9   and assert any applicable counterclaims in response to the currently stayed patent claims at the

10  appropriate time if and when the Court issues an Order removing the stay with respect to these

11  claims.

12      1.      Answering the allegations of paragraph 1 of the Amended Complaint, ATopTech

13  denies each and every allegation contained in that paragraph.

14      2.      Answering the allegations of paragraph 2 of the Amended Complaint, ATopTech

15  admits and alleges that Synopsys is the ~~dominant~~ competitor in the electronic design automation

16  ("EDA") industry and that it manufactures and sells products in that industry.

17      3.      Answering the allegations of paragraph 3 of the Amended Complaint, ATopTech

18  admits that Synopsys manufactures and sells a product known as IC Compiler and a "sign-off tool"

19  known as PrimeTime, and that a "sign-off tool" provides "a required verification step before

20  manufacturing" a semiconductor. Except as thus admitted, ATopTech denies each and every

21  allegation contained in paragraph 3.

22      4.      Answering the allegations of paragraph 4 of the Amended Complaint, ATopTech

23  admits that it is a company that competes in the EDA industry and has developed and sells certain

24  software tools for the physical design of integrated circuits, that its products are named "Aprisa,"

25  which is a "place-and-route" software tool, and "Apogee," which is a "floor planning" software

26  tool, and that ATopTech currently has offices in the United States, India, Japan and Taiwan. Except

27  as thus admitted, ATopTech denies each and every allegation contained in paragraph 4.

28

5.      Answering the allegations of paragraph 5 of the Amended Complaint, ATopTech admits that it entered into a licensing agreement entitled Connections Program License Agreement ("CPLA"), which agreement was extended pursuant to further written agreements and a license agreement relating to parametric on chip variation.  Further answering, ATopTech admits and alleges that the terms of these agreements speak for themselves.  Except as thus admitted and alleged, ATopTech denies each and every allegation contained in paragraph 5.

6.      Answering the allegations of paragraphs 6, 7, 8 and 9 of the Amended Complaint, ATopTech denies each and every allegation contained in those paragraphs ~~and, further answering, alleges that Synopsys made groundless and unauthorized demands for data and information concerning ATopTech's proprietary software pursuant to an unlawful attempt by Synopsys to gain access to ATopTech's superior software in order to compete with ATopTech and to destroy ATopTech as a competitor.~~

7.      Answering the allegations of paragraphs 10 and 11 of the Amended Complaint, ATopTech admits the allegations contained in these paragraphs.

8.      Answering the allegations of paragraphs 12, 13, 14, 15 and 16 of the Amended Complaint, ATopTech admits that this Court has subject matter jurisdiction of this action in that it arises in part under the United States Copyright Act ("U.S. Copyright Act" or "Copyright Act"), that the Court has personal jurisdiction over ATopTech in this action, that venue is appropriate in this District, and that this action is assigned on a district-wide basis under the Local Rules and General Orders of this Court.  Except as thus admitted, ATopTech denies each and every allegation contained in these paragraphs.

9.      Answering the allegations of paragraphs 17, 18, 19, 20, 21 and 22 of the Amended Complaint, ATopTech admits that Synopsys is the ~~dominant~~ competitor in the EDA industry and ~~possesses dominant market power in that industry as well as submarkets within that industry,~~ that Synopsys manufactures and sells a "sign-off" tool known as PrimeTime and ~~possesses monopoly power with respect to the market for sign-off tools in the EDA industry, that Synopsys expends significant time, effort and money in asserting claims in litigation against its competitors and in acquiring its competitors in the EDA industry, that~~ Synopsys filed suit in June 2011 in the District

DEF. ATOPTECH'S 1ST AMENDED ANSWER & 1ST
AMENDED COUNTERCLAIMS; JURY DEMAND
Case No. 3:13-cv-02965-MMC (DMR)

of Delaware against a competitor known as Extreme Design Automation ("Extreme DA") ~~and that~~ ~~Synopsys thereafter acquired Extreme DA and eliminated it as a competitor in the EDA industry~~. Except as thus admitted, ATopTech denies each and every allegation contained in these paragraphs.

10.     Answering the allegations of paragraphs 23 and 24 of the Amended Complaint, ATopTech admits that Synopsys claims copyright protection for certain software and user documentation associated with products known as PrimeTime and GoldTime and that Synopsys has filed the user documentation, which includes all of the commands, parameters and related matters that Synopsys asserts in this case, with the U.S. Copyright Office and, further answering, ATopTech alleges that, with the exception of certain source code, Synopsys publicly filed all of this information with the U.S. Copyright Office and that it has at all times thereafter been a matter of public record, available for public inspection pursuant to law.  Except as thus admitted and alleged, ATopTech denies each and every allegation contain paragraphs 23 and 24.

11.     Answering the allegations of paragraphs 25, 26, 27, 28, 29 and 30 of the Amended Complaint, ATopTech alleges that pursuant to the Order the Court dated July 22, 2014 (ECF No. 142), the patent claims asserted in these paragraphs have been stayed and no response is currently permitted with respect to these paragraphs.  ATopTech reserves all rights to assert further responses, defenses and counterclaims in response to these claims and to Counts II-V of the Amended Complaint at the appropriate time if the Order referred to above is modified by the Court. Thus, no answer or response is now due with respect to these paragraphs, but if any such response is due, ATopTech admits that Synopsys asserts that it owns certain patents as alleged therein and attaches copies of those claimed patents to the Amended Complaint, but otherwise denies each and every allegation contained in said paragraphs.

12.     Answering the allegations of paragraphs 31, 32, 33 and 34 of the Amended Complaint, ATopTech admits that it entered into the CPLA on or about June 10, 2010, that the CPLA was extended on three occasions and expired on or about February 15, 2013, that ATopTech entered into a further licensing agreement with Extreme DA, referred to by the parties as the POCV license agreement ("POCV"), and that Synopsys acquired Extreme DA ~~and eliminated it as a~~ ~~competitor in the EDA industry~~.  Further answering, ATopTech alleges that the terms of the CPLA

and the POCV license agreement are in writing and speak for themselves.  Except as thus admitted, ATopTech denies each and every allegation contained in these paragraphs.

13.     Answering the allegations of paragraphs 35 and 36, ATopTech admits and alleges that it has claimed for many years in its public website that its Aprisa software achieves "excellent" and/or "tight" correlation with sign-off timing software, including PrimeTime sign-off timing software, which it has achieved in a lawful and proper manner through its own efforts.  Except as thus admitted and alleged, ATopTech denies each and every allegation contained in these paragraphs.

14.     Answering the allegations of paragraphs 37, 38, 39, 40, 41 and 42 of the Amended Complaint, ATopTech admits that it entered into an agreement with Synopsys referred to by the parties as the "SpringSoft Agreement" and the "Map-in License," which written agreements speak for themselves and include, among other things, access to a Synopsys website known as "SolvNet." Beyond this, ATopTech denies each and every allegation contained in these paragraphs.

15.     Answering the allegations of paragraphs 43, 44, 45, 46, 47 and 48 of the Amended Complaint, ATopTech admits that Synopsys sent to it correspondence dated May 8, 2013 and June 10, 2013, ~~by which Synopsys made unauthorized and unlawful demands for ATopTech's proprietary information.~~  Further answering, ATopTech alleges that these written communications speak for themselves ~~and attempt to assert rights that did not exist and make unlawful and improper demands upon ATopTech.~~  Except as thus admitted and alleged, ATopTech denies each and every allegation contained in these paragraphs.

## COUNT I - COPYRIGHT INFRINGEMENT

16.     ATopTech re-alleges and incorporates by reference paragraphs 1-15 above, as if fully set forth herein.

17.     Answering the allegations of paragraphs 49, 50, 51 and 52 of the Amended Complaint, ATopTech admits that Synopsys has filed certain software and documentation related to PrimeTime and GoldTime software with the U.S. Copyright Office, has filed much of this information in a manner that allows it to be available for public inspection, has paid certain fees and deposits required in connection with its filings with the U.S. Copyright Office, and claims a

1   copyright in such materials pursuant to U.S. copyright law.  Except as thus admitted, ATopTech

2   denies each and every allegation contained in these paragraphs.

3       18.     Answering the allegations contained in paragraphs 53, 54, 55, 56, 57, 58, 59 and 60

4   of the Amended Complaint, ATopTech denies each and every allegation contained in said

5   paragraphs.

6                   **COUNT II - INFRINGEMENT OF THE '348 PATENT**

7       19.     Answering the allegations of paragraph 61 of the Amended Complaint, ATopTech

8   re-alleges and incorporates by reference paragraphs 1-18 above, as if fully set forth herein.

9       20.     Answering the allegations of paragraphs 62, 63, 64, 65, 66, 67 and 68 of the

10  Amended Complaint, this claim and the allegations contained therein are currently stayed pursuant

11  to the Order issued by the Court on July 22, 2014, and therefore no response is currently permitted

12  or due to this claim or these paragraphs.  ATopTech hereby reserves all rights and defenses to said

13  claims, including but not limited to the right to supplement this Answer and to assert any and all

14  defenses and counterclaims.  To the extent that any answer or response may currently be due to this

15  claim or these paragraphs, ATopTech denies each and every allegation contained therein.

16                  **COUNT III - INFRINGEMENT OF THE '941 PATENT**

17      21.     Answering the allegations of paragraph 69 of the Amended Complaint, ATopTech

18  re-alleges and incorporates by reference paragraphs 1-20 above, as if fully set forth herein.

19      22.     Answering the allegations of paragraphs 70, 71, 72, 73, 74, 75 and 76 of the

20  Amended Complaint, this claim and the allegations contained therein are currently stayed pursuant

21  to the Order issued by the Court on July 22, 2014, and therefore no response is currently permitted

22  or due to this claim or these paragraphs.  ATopTech hereby reserves all rights and defenses to said

23  claims, including but not limited to the right to supplement this Answer and to assert any and all

24  defenses and counterclaims.  To the extent that any answer or response may currently be due to this

25  claim or these paragraphs, ATopTech denies each and every allegation contained therein.

26                  **COUNT IV - INFRINGEMENT OF THE '127 PATENT**

27      23.     Answering the allegations of paragraph 77 of the Amended Complaint, ATopTech

28  re-alleges and incorporates by reference paragraphs 1-22 above, as if fully set forth herein.

24.     Answering the allegations of paragraphs 78, 79, 80, 81, 82, 83 and 84 of the Amended Complaint, this claim and the allegations contained therein are currently stayed pursuant to the Order issued by the Court on July 22, 2014, and therefore no response is currently permitted or due to this claim or these paragraphs. ATopTech hereby reserves all rights and defenses to said claims, including but not limited to the right to supplement this Answer and to assert any and all defenses and counterclaims. To the extent that any answer or response may currently be due to this claim or these paragraphs, ATopTech denies each and every allegation contained therein.

### COUNT V - INFRINGEMENT OF THE '967 PATENT

25.     Answering the allegations of paragraph 85 of the Amended Complaint, ATopTech re-alleges and incorporates by reference paragraphs 1-24 above, as if fully set forth herein.

26.     Answering the allegations of paragraphs 86, 87, 88, 89, 90, 91 and 92 of the Amended Complaint, this claim and the allegations contained therein are currently stayed pursuant to the Order issued by the Court on July 22, 2014, and therefore no response is currently permitted or due to this claim or these paragraphs. ATopTech hereby reserves all rights and defenses to said claims, including but not limited to the right to supplement this Answer and to assert any and all defenses and counterclaims. To the extent that any answer or response may currently be due to this claim or these paragraphs, ATopTech denies each and every allegation contained therein.

### COUNT VI - BREACH OF CONTRACT - BREACH OF CPLA

27.     Answering the allegations of paragraph 93 of the Amended Complaint, ATopTech re-alleges and incorporates by reference paragraphs 1-26 above, as if fully set forth herein.

28.     Answering the allegations of paragraph 94 of the Amended Complaint, ATopTech admits that it entered into the CPLA with Extreme DA and that Synopsys thereafter brought litigation against it and, in settlement of that litigation, ~~acquired Extreme DA and eliminated it as a competitor,~~ that the terms of the CPLA speak for themselves, and that it was a valid contract. To the extent that Synopsys alleges anything further and/or any wrongful conduct by ATopTech, ATopTech denies any remaining allegations contained in said paragraph.

29.     Answering the allegations of paragraphs 95, 96 and 97 of the Amended Complaint, ATopTech denies each and every allegation contained in said paragraphs.

30.     Answering the allegations of paragraph 98 of the Amended Complaint, ATopTech denies each and every allegation contained in said paragraph and, further answering, denies that Synopsys has been damaged in any amount by reason of any wrongful conduct of ATopTech.

31.     Answering the allegations of paragraph 99 of the Amended Complaint, ATopTech denies each and every allegation contained in said paragraph and, further answering, denies that Synopsys is entitled to injunctive relief or any other form of relief against ATopTech in this action.

### COUNT VII- BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

32.     Answering the allegations of paragraph 100 of the Amended Complaint, ATopTech re-alleges and incorporates by reference paragraphs 1-31 above, as if fully set forth herein.

33.     Answering the allegations of paragraphs 101, 102, 103, 104, 105, 106 and 107 of the Amended Complaint, by Order dated January 7, 2015, the Court dismissed Synopsys' claim for alleged breach of the covenant of good faith and fair dealing with respect to the actions alleged in said paragraphs and therefore no answer is currently due with respect to these paragraphs.  To the extent that Synopsys continues to assert a claim based on these paragraphs, ATopTech denies each and every allegation contained in said paragraphs and denies that Synopsys has suffered any damage of any kind or is entitled to any relief of any kind by reason of any of the allegations contained therein.

34.     Answering the allegations of paragraphs 108, 109, 110, 111, 112, 113 and 114 of the Amended Complaint, ATopTech denies each and every allegation contained in said paragraphs and, further answering, denies that Synopsys has been damaged or harmed in any way by reason of any wrongful act of ATopTech and, further answering, denies that Synopsys is entitled to injunctive relief or any relief whatsoever against ATopTech by reason of the allegations contained therein.

### AFFIRMATIVE DEFENSES

As and for affirmative defenses to the claims of Synopsys' Amended Complaint, and based on knowledge and information available to it to date, Defendant is informed and believes and based thereon alleges as follows:

DEF. ATOPTECH'S 1ST AMENDED ANSWER & 1ST AMENDED COUNTERCLAIMS; JURY DEMAND
Case No. 3:13-cv-02965-MMC (DMR)

**FIRST AFFIRMATIVE DEFENSE**

35.     Synopsys has no valid copyright with respect to the input and output formats and related material asserted in this matter under 17 U.S.C. §§ 102(a) and 102(b), in that, among other things, the asserted input and output formats are functional in nature, are a method of operation, are not original and are the product of mathematics, physics, and/or other requirements within the body of public knowledge and the only claimed use of the asserted formats relates to the necessity for interoperability.  The alleged use of these formats is solely for the purpose of interoperability with an essential sign-off tool.  These formats are essential to and a method of operation of the verification tool, not creative, and, therefore, not copyrightable and not entitled to copyright protection.

**SECOND AFFIRMATIVE DEFENSE**

36.     Defendant's alleged use of the claimed copyrighted input and output formats and related material alleged in this case is a lawful use under the doctrine of fair use, in that, among other things, the asserted formats consist of short functional phrases that describe the function to be performed, the alleged use of these formats is for the purpose of interoperability and communication with a verification software necessary for the fabrication of a chip for which the place-and-route function has been performed, the use of any similar terms does not undermine any market for or reduce sales of the software for which Plaintiff claims copyright protection but rather enhances sale of that product, and in addition confers a benefit on the public by allowing alternative place-and-route software to exist, with the result that, considering the purpose and character of the use, the amount and nature of the use, and the effect of the use on the market for the copyrighted software, any use by ATopTech of the alleged copyrighted formats is a fair use under the doctrine of fair use.

**THIRD AFFIRMATIVE DEFENSE**

37.     Defendant's claimed copyrighted input and output formats and related material alleged in this case do not constitute protected expression under the doctrine of merger, in that the asserted elements of the formats are dictated by efficiency and, to the extent they are used by ATopTech with its customers, they are the only practical way to perform the functions and interoperate with an essential sign off tool.

## FOURTH AFFIRMATIVE DEFENSE

38.     The claimed copyrighted input and output formats alleged in this case lack originality, are industry standards and practices, are necessary for interoperability, and are not protectable under the doctrine of *scènes à faire*, in that, among other things, the asserted formats employ standard techniques that are commonplace expressions in the industry that are naturally associated with the software and hardware constraints, functions and standards in the industry and are widely accepted circuit design terms within the industry.

## FIFTH AFFIRMATIVE DEFENSE

39.     Synopsys alleges that there is substantial similarity in protected expression between the input and output formats of PrimeTime and GoldTime on the one hand and those same formats in Aprisa and Apogee on the other hand.  Any similarity between the Synopsys input and output formats in PrimeTime and/or GoldTime and the input and output formats in Aprisa and/or Apogee are *de minimis* and therefore there is neither substantial similarity between the input and output formats nor infringement of any copyright rights in those formats.

## SIXTH AFFIRMATIVE DEFENSE

40.     Plaintiff's claims are barred, in whole or in part, because ATopTech's conduct was at all times in good faith and with innocent intent, in that, in whole or in part, the alleged use of the asserted input and output copyrighted material was based upon material provided to ATopTech by third parties and without knowledge that Synopsys claimed a copyright on the alleged copyrighted formats and with the innocent and good faith belief that its conduct would not constitute infringement of any copyright owned or claimed by Synopsys.  Further, with respect to certain of the materials as to which Synopsys now claims copyright protection, in particular various output formats, ATopTech is informed and believes that no notice of copyright protection was provided by Synopsys.  These factors authorize the Court to award no damage for the claimed infringement, even if an infringement were to be found.

## SEVENTH AFFIRMATIVE DEFENSE

41.     In the Connections Program Licensing Agreement ("CPLA"), the licensor Extreme DA represented that it owned and retained all right, title, and interest in the licensed software

GoldTime. Synopsys alleges that the representation was false and that, in fact, the input and output formats in the licensed software were copied by Extreme DA from PrimeTime. After Synopsys purchased all rights to GoldTime, it ratified all conditions in the CPLA by extending that contract without ever asserting or disclosing its current contention that Extreme DA lacked the ownership rights that were at the heart of the CPLA or that GoldTime was an unauthorized copy, in relevant part, of PrimeTime. As a direct result of the false representation and/or as a result of Synopsys' conduct and ratification after it obtained ownership of GoldTime, Extreme DA and its successor, Synopsys breached the CPLA and failed to perform essential conditions in that agreement and therefore may not assert it against ATopTech.

### EIGHTH AFFIRMATIVE DEFENSE

42.     The allegations in Paragraph 41 are fully incorporated by reference herein. As a result, Synopsys is estopped from asserting its contract and copyright claims and waived any such claims when it extended the CPLA.

### NINTH AFFIRMATIVE DEFENSE

43.     The allegations in Paragraph 41 are fully incorporated by reference herein. As a result, Synopsys has engaged in conduct that constitutes unclean hands and should therefore be barred from asserting its contract and copyright claims under the doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE

44.     Plaintiff's claims are barred by estoppel in that, among other things, Plaintiff authorized or licensed, explicitly or impliedly, the use of the commands and related material alleged in this case and has consented to the use of these formats for purposes of interoperability with a verification tool. ATopTech is informed and believes that Synopsys provides its PrimeTime software to customers who desire to have their place-and-route functions performed by ATopTech software, which they have the right to do. ATopTech is informed and believes and based thereon alleges that Synopsys states to these customers, including those who use ATopTech's place-and-route software, that it will permit rather than prohibit that software to be used in a reasonable manner such that the verification tests required by PrimeTime before the chip can be fabricated can be understood and met. The use of commands and formats that Synopsys seeks to prevent by these

copyright claims are the same reasonable steps to allow an integrated circuit whose circuitry was placed and routed by ATopTech software to reasonably respond to and ultimately pass the verification tests required by PrimeTime. Having represented to customers, including customers of ATopTech, that all reasonable steps to permit interoperability would be permitted, Synopsys is estopped from now attempting to assert copyright claims to various "formats" which are necessary and appropriate to the interoperability that Synopsys represented would be allowed.

## ELEVENTH AFFIRMATIVE DEFENSE

45.     Plaintiff's claims are barred by the doctrine of unclean hands in that, among other things, Plaintiff has engaged in conduct that constitutes unreasonable restraints of trade and acts of monopolization that are a part of Synopsys' attempt to assert the copyrights it alleges in this case. This conduct is more particularly alleged in paragraphs 49 - 128 below. Because the allegations of copyright infringement by Synopsys relate directly to these copyrights and to Synopsys' attempts to enforce these alleged copyrights, Synopsys has engaged in conduct that constitutes unclean hands with respect to these copyrights and should therefore be barred from asserting these copyrights under the doctrine of unclean hands.

## ADDITIONAL DEFENSES

46.     Defendant reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure and any other defenses at law or in equity that may be available now or may become available in the future based on discovery or any other factual investigation in this case.

## FIRST AMENDED COUNTERCLAIMS

ATopTech hereby asserts the following First Amended Counterclaims against Synopsys:

47.     ATopTech repeats and incorporates by reference each of the foregoing paragraphs of its Answer and Affirmative Defenses to Synopsys' Amended Complaint.

## PARTIES

48.     ATopTech is a Delaware corporation with its principal place of business in Santa Clara County at 2111 Tasman Drive, Santa Clara, California 95054.

49.     On information and belief, Synopsys is a Delaware corporation with its principal

place of business in Santa Clara County at 700 East Middlefield Road, Mountain View, California

94043

## JURISDICTION AND VENUE

50.     This Court has jurisdiction over ATopTech's counterclaims pursuant to 28 U.S.C.

§ 1331, 28 U.S.C. § 1338, 15 U.S.C. §§ 1 and 2, 15, 15c, 22 and 26, and 28 U.S.C. §§ 2201(a) and

2202.  To the extent ATopTech's counterclaims arise under state law, this Court has supplemental

jurisdiction under 28 U.S.C. § 1367.

51.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b), 1391(c)

and 1400(a), in that, among other things, Synopsys resides or may be found in this district and is

subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

### Relevant Markets

52.     ATopTech and Synopsys are competitors in the electronic design automation

("EDA") industry in the United States.  The EDA market involves the software tools for the design

and testing of integrated circuits.  There are at least two submarkets of EDA that are pertinent to this

matter.

53.     The first relevant product submarket is the market for place-and-route software.

Place-and-route software is used to design the physical layout of integrated circuits.  Because of the

complexity of modern integrated circuit design, it is not possible for engineers to successfully lay

out the chips without the aid of such software.  The place-and-route software market is a separate

and distinct product market.  Customers, competitors and market analysts all regard place-and-route

software as a separate market.  There are no reasonably available substitutes for place-and-route

software in accomplishing the physical design of an integrated circuit.  There are high barriers to

entry—including but not limited to the difficulty for customers of switching between place-and-

route software tools, the cost to potential entrants of hiring engineers who understand the

technology, and the difficulty for a new entrant of raising capital in an industry that is perceived by

investors to offer a small market—that prevent new firms from entering the place-and-route

software market, or at least would prevent them from doing so in a reasonable period of time in order to deter or counteract the exercise of market power. In addition, because of high switching costs for a customer, there are barriers to expansion by incumbent firms who likely would not be able to increase their sales significantly in a reasonable period of time in response to a price increase by an incumbent firm.

54. Synopsys offers place-and-route software called IC Compiler. On information and belief, Synopsys currently possesses dominant market power in the market for "place-and-route" software, in which it holds a greater than 65% market share. ATopTech competes directly with Synopsys in the place-and-route software market with its product Aprisa. Aprisa is a technically superior product and is preferred by customers who have installed it. However, at least in part as a result of anti-competitive conduct by Synopsys, Aprisa has only a 1% to 3% market share in the place-and-route software market.

55. The second relevant product submarket is "verification software." Verification software is used to verify the integrity of an integrated circuit design by testing its electrical and timing performance under various conditions. Again, because of the complexity of modern integrated circuit design, it is not possible for engineers to successfully verify their designs without the aid of specialized software. In addition, because of the high costs of fabrication, it is not feasible for customers to fabricate integrated circuits without first using verification software to test the design. Indeed, on information and belief, major fabricators will not even agree to manufacture integrated circuits unless they have first been "signed off" with verification software. Customers, competitors, and market analysts regard verification software as a separate and distinct market. There are no reasonably available substitutes for "verification" software in accomplishing the verification of the physical design of an integrated circuit. There are high barriers to entry— including but not limited to the support of integrated circuit foundries for a new verification software product, the lag time and cost to customers of switching between verification software, the cost to potential entrants of hiring engineers who understand the technology, and the difficulty for a new entrant of raising capital in an industry that is perceived by investors to offer a small market— that prevent new firms from entering the "verification" software market, or at least would prevent

them from doing so in a reasonable period of time in order to deter or counteract the exercise of market power.  In addition, because of high switching costs for a customer, there are barriers to expansion by incumbent firms who likely would not be able to increase their sales significantly in a reasonable period of time in response to a price increase by an incumbent firm.

56.     Synopsys offers verification software known as PrimeTime.  On information and belief, Synopsys currently possesses dominant market power in the market for "verification" software, in which it holds a market share estimated at 70% to 90%.  This market share has been extremely high for a number of years.  For instance, in 2004, Gartner Dataquest reported that Synopsys had a 93% market share.  In 2008, a leading industry analyst known as Gary Smith EDA estimated Synopsys' market share at 87%.

57.     ATopTech does not sell verification software, but the place-and-route software it does sell must be interoperable with verification software.  With respect to computer programs, interoperability means "the ability of computer programs to exchange information, and of such programs mutually to use the information which has been exchanged."  17 U.S.C. § 1201(f).  The level of interoperability and compatibility between place-and-route software and verification software is a critical competitive dynamic.

58.     An example of the importance of interoperability and compatibility is "timing." Verification software performs elaborate timing tests on a design in order to inform the customer as to whether the design meets the customer's specifications.  In order to assure satisfactory results on the timing tests performed by the verification software, the place-and-route software must to some degree anticipate the timing tests that will be run by the verification software and compute a design that will produce acceptable timing results.  As a result, even though the place-and-route software is not intended to provide final timing analysis, the customer will provide it with parameters and other inputs so that it can produce a design likely to give acceptable results when the design is later submitted to the verification software for timing analysis.

59.     On information and belief, the geographic scope of the place-and-route and timing software markets is worldwide.

**Acquisitions by Synopsys in the Verification Market**

60.     One of the methods by which Synopsys has increased and/or maintained its power in the verification market and simultaneously enhanced its power in the place-and-route market is through the acquisition of its verification competitors.  In 2002, Synopsys acquired Avanti Corporation and Co-Design Automation, Inc.  In 2003, Synopsys acquired Numerical Technology, Inc.  In 2004, Synopsys acquired Analog Design Automation, Inc., Monterey Design Systems, Inc., Cascade Semiconductor Solutions, Inc. and Nassda Corp.  In 2005, Synopsys acquired HPL Technologies, Inc.  In 2007, Synopsys acquired ArchPro Design Automation, Inc.  In 2008, Synopsys acquired Synlicity, Inc.  In 2010, Synopsys acquired VaST Systems Technology, CoWare, Synfora, Inc. and Virage Logic Corporation.  In 2011, Synopsys acquired Extreme DA.  In 2012, Synopsys acquired Magma Design Automation, RSoft Design Group, Ciranova, Inc. and SpringSoft, Inc.

61.     At least as to two of these recent acquisitions—those of Magma Design Automation ("Magma") and Extreme DA—Synopsys removed from the market these former competitors' verification software products.  In addition to forcing customers to switch to Synopsys' own verification software, this tactic harmed competition in the place-and-route market by destroying the value of place-and-route software that had been optimized to work with the verification software previously offered by Magma and Extreme DA.

62.     For instance, Extreme DA offered a verification product known as GoldTime. ATopTech invested substantially in optimizing its Aprisa place-and-route product to work well with GoldTime.  ATopTech entered into a collaboration agreement with Extreme DA, and the companies jointly marketed GoldTime and Aprisa.  Customers who had installed GoldTime often purchased Aprisa because of its level of interoperability and compatibility with GoldTime.  Indeed, two major customers were so impressed with the level of interoperability between GoldTime and Aprisa that they switched from using PrimeTime to GoldTime as their verification tool.  However, once GoldTime was removed from the market, this feature of Aprisa was no longer of benefit to customers, and the investment made by ATopTech in optimizing its program to work with GoldTime was lost.

DEF. ATOPTECH'S 1ST AMENDED ANSWER & 1ST
AMENDED COUNTERCLAIMS; JURY DEMAND
Case No. 3:13-cv-02965-MMC (DMR)

63.     Because of the need for interoperability and compatibility between verification and place-and-route software, verification software vendors will often provide close technical cooperation to place-and-route software vendors so that the place-and-route software can work as well as possible with the verification software.  Extreme DA provided exactly this sort of cooperation to ATopTech, resulting in a superior product that was attractive to consumers. Synopsys, however, declines to provide any meaningful cooperation to competing place-and-route companies; to the contrary, as illustrated by this lawsuit, it takes the position that any meaningful interoperability with its PrimeTime verification program is a violation of law.  Accordingly, as a result of Synopsys' acquisitions, ATopTech lost the benefit of technical cooperation and consumers lost the benefit of interoperability and compatibility.

**Copyright Misuse and Sham Litigation by Synopsys**

64.     Synopsys has filed certain written manuals relating to its verification software, known as PrimeTime and GoldTime, with the U.S. Copyright Office and claims copyright protection with respect to these materials.  Synopsys has attempted to and continues to attempt to use this limited copyright in its verification software to eliminate competition in the place-and-route software market.  Synopsys has unlawfully demanded that ATopTech make its place-and-route proprietary software known as Aprisa available to it for inspection and threatened ATopTech in an effort to destroy competition and maintain and enhance its monopoly power in both the markets for place-and-route software tools and verification software tools.  For example, Synopsys has falsely asserted that any place-and-route software such as Aprisa that correlates to its PrimeTime verification software has violated its copyright in source code and/or the manuals and other documentation with respect to the input and output commands of PrimeTime.  In addition, Synopsys has initiated litigation against ATopTech in which it has asserted numerous claims that are objectively baseless and which have been dismissed by the Court, in an attempt to eliminate competition in the place-and-route software market and to destroy ATopTech as a competitor. Synopsys' conduct in making demands, threats and asserting objectively baseless claims in litigation against ATopTech is intended to prevent and eliminate competition for Synopsys' place-and-route software known as IC Compiler, to perpetuate and increase Synopsys' dominant market

1    power in both the market for place-and-route software tools and verification software tools, and to

2    eliminate competition in the EDA industry generally. Synopsys' conduct constitutes a misuse of its

3    alleged copyrights in order to eliminate competition in the market for place-and-route software.

4        65.     Synopsys' conduct constitutes further copyright misuse in that it is attempting to

5    leverage rights under the Copyright Act allegedly obtained with respect to its PrimeTime and

6    GoldTime software products in order to prevent competition with other products. Synopsys is

7    engaging in anti-competitive behavior and use of its alleged copyrights that do not serve the

8    purposes of the Copyright Act but rather are in violation of public policy as intended by the

9    Copyright Act.

10       66.     On information and belief, ATopTech alleges that Synopsys has used and attempted

11    to use its assertion of copyright claims as a competitive weapon by falsely asserting to customers of

12    ATopTech that ATopTech is engaging in unlawful conduct and that ATopTech will not be able to

13    continue as a viable supplier of place-and-route software. It has made this and related false

14    statements with the purpose of avoiding competition on the merits and using its market dominance

15    and false and misleading statements to urge ATopTech's customers not to do business with

16    ATopTech and not to purchase ATopTech place-and-route software, and to buy place-and-route

17    software from Synopsys instead, in order to eliminate competition from ATopTech and destroy

18    ATopTech as a competitor.

19       67.     Synopsys' conduct constitutes misuse of its alleged copyrights under the doctrine of

20    copyright misuse and its conduct has caused substantial financial damage to ATopTech in the form

21    of lost customers, diverting essential management attention away from its business to defending

22    against Synopsys' improper claims, and substantial legal costs in defending against these improper

23    and unjustified claims. This conduct causes, and continues to cause, substantial and irreparable

24    harm to ATopTech.

25                                    **Tying**

26       68.     On information and belief, Synopsys engages in tying by forcing customers of its

27    verification software to also purchase its place-and-route software. Synopsys accomplishes this

28    forcing through a variety of means, including the threats and other conduct described above. In

addition, Synopsys charges customers who wish to use ATopTech's place-and-route software

discriminatory prices for Synopsys' verification software, such that it is not economically viable for

many customers to purchase their place-and-route software from ATopTech and their verification

software from Synopsys.

### Anticompetitive Investing Activity and Demands for Information

69.   In 2014, Synopsys acquired an investment firm that owned a significant quantity of

the shares of ATopTech.  Following that acquisition, Synopsys began to demand access to

ATopTech's confidential financial statements and related financial information, in order to allow it

to compete unfairly with, acquire, or eliminate ATopTech as a competitor.

### COUNT I

### Declaratory Judgment for Invalidity of Alleged Copyrights Arising From Copyright Misuse

70.   ATopTech repeats and re-alleges all the foregoing allegations made in its affirmative

defenses and counterclaims as if fully set forth herein.

71.   Synopsys' use of its copyrights in this manner is anti-competitive, has the purpose

and effect of using asserted copyright claims in verification software in order to destroy competition

in place-and-route software tools, is contrary to public policy, and constitutes a misuse of Synopsys'

copyrights under the doctrine of copyright misuse.

72.   ATopTech has been directly harmed by Synopsys' misuse of its copyrights,

including loss of business and other costs as alleged above.

73.   ATopTech is entitled to a declaratory judgment finding Synopsys' copyrights to be

unenforceable and to judgment in its favor on Synopsys' claims of copyright infringement.

### COUNT II

### Violation of the Clayton Act, Section 7 (15 U.S.C. § 18)

74.   ATopTech repeats and re-alleges all the foregoing allegations made in its affirmative

defenses and counterclaims as if fully set forth herein.

75.   A violation of Section 7 of the Clayton Act (15 U.S.C. § 18) occurs when a

corporation acquires the whole or any part of another corporation also engaged in commerce where

1   "the effect of such acquisition may be substantially to lessen competition, or tend to create a

2   monopoly."

3       76.     Synopsys' acquisition of Extreme DA in 2011 after a protracted lawsuit for

4   copyright infringement and Synopsys' acquisition of Magma in 2012 substantially lessened

5   competition in the verification software market.  After acquiring these companies, Synopsys killed

6   their verification software products, thereby removing from the market the verification software

7   products of two of its strongest competitors.

8       77.     On information and belief, the only remaining viable competitor to Synopsys'

9   verification software PrimeTime in the verification software market is Tempus, the verification

10  software of Cadence Design Systems, Inc.

11      78.     Synopsys' acquisitions of Extreme DA and Magma injured ATopTech by reducing

12  competition in the verification software market.

13      79.     These acquisitions deprived ATopTech of the extensive technical cooperation it

14  previously enjoyed with Extreme DA and Magma that allowed ATopTech to ensure the

15  interoperability of its place-and-route software Aprisa with Extreme DA's and Magma's

16  verification software products.

17      80.     Synopsys' acquisitions of Extreme DA and Magma reinforced its monopoly in the

18  verification software market and deprived customers of promising verification software alternatives

19  to PrimeTime that were guaranteed to be compatible with ATopTech's place-and-route software

20  Aprisa.

21      81.     ATopTech had a co-marketing agreement with Extreme DA to market jointly

22  Aprisa—ATopTech's place-and-route tool—and Extreme DA's GoldTime timing software.  At the

23  request of shared customers, ATopTech licensed Extreme DA's patent for GoldTime and worked

24  closely with Extreme DA to assure the interoperability of Aprisa and GoldTime.  The success of

25  that collaboration led these shared customers to adopt GoldTime as their preferred verification

26  software tool.  ATopTech and Extreme DA subsequently planned cross-marketing efforts with other

27  customers.

28

DEF. ATOPTECH'S 1ST AMENDED ANSWER & 1ST
AMENDED COUNTERCLAIMS; JURY DEMAND
Case No. 3:13-cv-02965-MMC (DMR)

82.     Synopsys then acquired Extreme DA during the course of litigation similar to the present action and discontinued GoldTime, forcing customers that had adopted Aprisa and GoldTime to switch to other verification software:  namely, Synopsys' PrimeTime software.  This harmed not only those customers but also ATopTech, which faced much greater challenges guaranteeing the interoperability of Aprisa with PrimeTime due to Synopsys' refusal to share output data essential to verification.  ATopTech also lost its ability to secure new customers through the Aprisa/GoldTime joint marketing effort with Extreme DA.

83.     The predictable effect of the elimination of Extreme DA's and Magma's promising verification software products from the marketplace has been and will be to lessen competition in the verification software market, reinforcing PrimeTime's monopoly position as the industry standard for verification testing used by integrated circuit foundries before they will agree to fabricate an integrated circuit.

84.     Synopsys' 87% market share of the verification software market, the barriers to entry present in the market, and Synopsys' anti-competitive practice of tying the sale of its dominant PrimeTime verification program to the sale of its place-and-route software IC Compiler create an appreciable danger of higher prices for customers now and in the future.

85.     ATopTech has suffered and will continue to suffer financial injury and damage to its business and property as a direct and proximate result of Synopsys' violations of the Clayton Act as alleged above, and will continue to suffer injury and damage unless and until Synopsys' unlawful conduct is restrained or enjoined by the Court.

86.     The injuries to ATopTech and to competition described herein are the types of injuries the antitrust laws were intended to prevent because they are a direct result of those aspects of Synopsys' conduct that reduced competition, deprived consumers of choices, and increased prices.

<u>**COUNT III**</u>

<u>**Violation of the Sherman Act, Section 1 (15 U.S.C. § 1) and the Clayton Act, Section 3**</u>
<u>**(15 U.S.C. § 14) (Tying)**</u>

87.    ATopTech repeats and re-alleges all the foregoing allegations made in its affirmative defenses and counterclaims as if fully set forth herein.

88.    Place-and-route software and verification software, while related, constitute two separate products.

89.    Customers often wish to purchase, and historically have purchased, place-and-route software and verification software from different suppliers.

90.    Synopsys has substantial market power in the market for verification software with an over 87% market share.

91.    Synopsys forces customers who wish to purchase its verification software PrimeTime (the tying product) to also purchase place-and-route software (the tied product) from Synopsys.  Synopsys' unlawful acts create an unreasonable restraint of trade and commerce and threaten to extend Synopsys' monopoly in the verification software market into the separate place-and-route software market without legitimate business or technological justification, in a manner which has caused harm to competition in both markets, and in violation of Section 1 of the Sherman Act.

92.    On information and belief, Synopsys accomplishes this forcing through a variety of means, including but not limited to discriminatory and punitive pricing of its verification software PrimeTime to customers who wish to purchase their place-and-route software elsewhere (such that it is not economically viable for the customer to purchase third-party place-and-route software), misleading and false statements concerning the legality of third-party place-and-route software, acquisition and elimination of competitors who sell verification software, and objectively baseless litigation brought against sellers of competing place-and-route software.

93.    ATopTech knows of at least one customer in 2015 that was told by Synopsys that if the customer did not purchase all of its place-and-route software from Synopsys, the price it pays for Synopsys' PrimeTime verification software tool would increase substantially to the extent that it

DEF. ATOPTECH'S 1ST AMENDED ANSWER & 1ST
AMENDED COUNTERCLAIMS; JURY DEMAND
Case No. 3:13-cv-02965-MMC (DMR)

1 would not be economically viable for the customer to purchase its place-and-route software other

2 than from Synopsys.  On information and belief, the threatened price increase was motivated by a

3 specific intent that the customer buy all of its place-and-route and verification software from

4 Synopsys.

5        94.    On information and belief, Synopsys has used its dominant position in the

6 verification software market to dissuade other customers from purchasing competitors' place-and-

7 route software.

8        95.    Synopsys' tying arrangement affects a substantial volume of interstate commerce

9 regarding place-and-route software.

10        96.    Under well-established law, a tying arrangement is *per se* unlawful if four elements

11 are shown.  Each is present here:  (a) there are two separate products, verification software (tying

12 product) and place-and-route software (tied product), (b) Synopsys has market power in the tying

13 product, (c) Synopsys forces purchasers of the tying product to also take their requirements of the

14 tied product from Synopsys, and (d) there is not insubstantial effect in the marketplace for the tied

15 product.

16        97.    In addition, Synopsys' tying arrangement is unlawful under the rule of reason

17 because it harms competition in the place-and-route software market in a variety of ways, including:

18        (a)    decreasing competitors' ability to compete in the place-and-route software

19       market;

20        (b)    increasing the barriers to entry in the place-and-route software market;

21        (c)    enabling Synopsys to extract higher, supra-competitive prices for its place-

22       and-route software; and

23        (d)    facilitating Synopsys' acquisition and maintenance of market power in both

24       the place-and-route software market and the verification software market.

25        98.    The anti-competitive effects of Synopsys' conduct outweigh any pro-competitive

26 justifications for such conduct.

27        99.    ATopTech has suffered and will continue to suffer financial injury and damage to its

28 business and property as a direct and proximate result of Synopsys' violations of the Sherman Act

as alleged above, and will continue to suffer injury and damage unless and until Synopsys' unlawful conduct is restrained or enjoined by the Court.

100.     The injuries to ATopTech and to competition described herein are the types of injuries the antitrust laws were intended to prevent because they are a direct result of those aspects of Synopsys' conduct that reduced competition, deprived consumers of choices, and increased prices.

**COUNT IV**

**Violation of the Sherman Act, Section 2 (Verification Software Market)**

101.     ATopTech repeats and re-alleges all the foregoing allegations as though fully set forth.

102.     Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*, the willful monopolization of any part of the trade or commerce among the States, as well as attempts to monopolize any part of the trade or commerce among the States.

103.     Synopsys has monopoly power in the relevant market for verification software with a market share of over 70%. That power is persistent and stable. If for any reason Synopsys is not deemed to have monopoly power in this market there exists a dangerous probability of Synopsys acquiring such power.

104.     Synopsys has engaged in anti-competitive conduct, as detailed above, including but not limited to:

(a)     acquisition of competitors in violation of Section 7 of the Clayton Act;

(b)     imposing a tying arrangement on customers;

(c)     refusing to allow competitors in the place-and-route software market access to essential sign-off information within its PrimeTime verification software necessary to assure the interoperability of place-and-route software;

(d)     periodically altering the verification tests within its PrimeTime software without disclosing this information to competitors to prevent the interoperability of competitors' place-and-route software;

(e)     engaging in copyright misuse;

(f)     filing objectively baseless litigation; and

(g)     making false and misleading statements concerning the interoperability of competitors' software.

105.    Synopsys has engaged in the anti-competitive conduct alleged above with the specific intent of allowing it to create, maintain, and enhance monopoly power in the verification software market.  Synopsys' conduct has given it the power to control prices and exclude competition in the verification software market.

106.    There are high barriers to entry in the relevant market that would prevent new competition from entering the market for at least two years at a level sufficient to deter or counteract Synopsys' exercise of monopoly power.  These barriers include but are not limited to:

(a)     technical support from integrated circuit foundries for a new software verification product;

(b)     difficulty for customers of switching between verification software tools;

(c)     difficulty of hiring engineers who understand the relevant technology; and

(d)     difficulty of raising investment capital for a new entrant in a market that investors perceive to be small.

107.    Synopsys' willful and wrongful acquisition, maintenance, and/or extension of its monopoly power (or its attempt to monopolize) are not the result of growth and development as a consequence of business acumen, or historical accident, or by virtue of offering a superior product or service, greater efficiency, or lower prices, but rather the direct consequence of its intentional exclusionary and predatory conduct as alleged herein.

108.    There is no efficiency-enhancing pro-competitive business justification for Synopsys' unfair, anti-competitive, and predatory conduct.

109.    Synopsys' anti-competitive conduct alleged herein has injured (and unless enjoined, will continue to injure) consumers and competitors in the relevant market through increased prices, decreased choices, reduced innovation, and other anti-competitive effects, including raising additional barriers to entry in the relevant market.

110.    Synopsys' conduct as alleged above occurred in and affected interstate commerce.

111.    ATopTech and its customers are purchasers of Synopsys' verification software, and require access to Synopsys' verification software for interoperability.  ATopTech has suffered and will continue to suffer financial injury and damage to its business and property, including but not limited to loss of customers and business, as a direct and proximate result of Synopsys' violations of the Sherman Act as alleged above, and will continue to suffer injury and damage unless and until Synopsys' unlawful conduct is restrained or enjoined by the Court.

112.    The injuries to ATopTech and to competition described herein are the types of injuries the antitrust laws were intended to prevent because they are a direct result of those aspects of Synopsys' conduct that reduced competition, deprived consumers of choices, and increased prices.

### COUNT V

### Violation of the Sherman Act, Section 2 (Place-and-Route Software Market)

113.    ATopTech repeats and re-alleges all the foregoing allegations as though fully set forth.

114.    Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*, the willful monopolization of any part of the trade or commerce among the States, as well as attempts to monopolize any part of the trade or commerce among the States.

115.    Synopsys has monopoly power in the relevant market for place-and-route software with over a 65% market share.  That power is persistent and stable.  If for any reason Synopsys is not deemed to have monopoly power in this market, there exists a dangerous probability of Synopsys acquiring such power.

116.    Synopsys has engaged in anti-competitive conduct, as detailed above, including but not limited to:

> (a)    imposing a tying arrangement on customers;

> (b)    refusing to allow competitors in the place-and-route software market access to essential sign-off information within its PrimeTime verification software necessary to assure interoperability of competitors' place-and-route software;

DEF. ATOPTECH'S 1ST AMENDED ANSWER & 1ST
AMENDED COUNTERCLAIMS; JURY DEMAND
Case No. 3:13-cv-02965-MMC (DMR)

(c)    periodically altering the verification tests within its PrimeTime verification software without disclosing this information to competitors to prevent the interoperability of competitors' place-and-route software;

(d)    engaging in copyright misuse;

(e)    filing objectively baseless litigation; and

(f)    making false and misleading statements concerning the interoperability of competitors' software.

117.    Synopsys has engaged in the anti-competitive conduct alleged above with the specific intent to create, maintain, and enhance its monopoly power in the place-and-route software market.  Synopsys' conduct has given it the power to control prices and exclude competition in the place-and-route software market.

118.    Upon information and belief, there are high barriers to entry in the relevant market that would prevent new competition from entering the market for at least two years at a level sufficient to deter or counteract Synopsys' exercise of monopoly power.  These barriers include but are not limited to:

(a)    the difficulty for customers of switching between place-and-route software tools;

(b)    the cost to potential entrants of hiring engineers who understand the technology; and

(c)    the difficulty for a new entrant of raising capital in an industry that is perceived by investors to be a small market.

119.    Synopsys' willful and wrongful acquisition, maintenance, and/or extension of its monopoly power (or its attempt to monopolize) are not the result of growth and development as a consequence of business acumen, or historical accident, or by virtue of offering a superior product or service, greater efficiency, or lower prices, but rather the direct consequence of its intentional, exclusionary, and predatory conduct as alleged herein.

120.    There is no efficiency-enhancing pro-competitive business justification for Synopsys' unfair, anti-competitive, and predatory conduct.

121.    Synopsys' anti-competitive conduct alleged herein has injured (and unless enjoined, will continue to injure) consumers and competitors in the relevant market through increased prices, decreased choices, reduced innovation, and other anti-competitive effects, including raising additional barriers to entry in the relevant market.

122.    Synopsys' conduct as alleged above occurred in and affected interstate commerce.

123.    ATopTech directly competes with Synopsys in the place-and-route software market. ATopTech has suffered and will continue to suffer financial injury and damage to its business and property, including loss of customers and business, as a direct and proximate result of Synopsys' violations of the Sherman Act as alleged above, and will continue to suffer injury and damage unless and until Synopsys' unlawful conduct is restrained or enjoined by the Court.

124.    The injuries to ATopTech and to competition described herein are the types of injuries the antitrust laws were intended to prevent because they are a direct result of those aspects of Synopsys' conduct that reduced competition, deprived consumers of choices, and increased prices.

## COUNT VI

### Violation of Business & Professions Code Sections 16720 et seq.

125.    ATopTech repeats and re-alleges all the foregoing allegations as though fully set forth.

126.    Synopsys' unlawful acts described herein constitute an unreasonable restraint of trade and commerce throughout California and the rest of the United States in violation of the Cartwright Act, Sections 16720 et seq. of the California Business and Professions Code, including but not limited to Section 16727 of said Act.

127.    Synopsys has substantial power in the market for verification software.

128.    Synopsys has tied its verification software to sales of a separate product, place-and-route software.  Specifically, through the conduct herein alleged, Synopsys has coerced a substantial number of consumers of place-and-route software into purchasing such software from Synopsys and not from competitors (such as ATopTech).

129.     Synopsys' unlawful tying arrangement affects a substantial volume of commerce, substantially lessens competition, and allows Synopsys to charge supra-competitive prices for place-and-route software.

130.     As a competitor in the place-and-route software market, ATopTech has suffered, and will continue to suffer, damages as a direct and proximate result of Synopsys' unlawful tying practices.

**COUNT VII**

**Violation of Business & Professions Code Sections 17200 et seq.**

131.     ATopTech repeats and re-alleges all the foregoing allegations as though fully set forth.

132.     Synopsys' conduct as alleged above constitutes unlawful, unfair and fraudulent business practices in violation of California Business & Professions Code Sections 17200 et seq.

133.     As a direct and proximate result of Synopsys' unlawful, unfair and fraudulent business practices, ATopTech has suffered and continued to suffer damages to its business and property, loss of business and loss of valuable customer relationships and will continue to suffer such damages unless and until restrained by the Court.

**WHEREFORE, ATopTech seeks judgment as follows:**

1.     That Synopsys' actions be determined to be a misuse of the U.S. copyright laws and that the copyrights asserted as a part of that misuse be declared invalid or unenforceable, or in the alternative that judgment of non-infringement of these copyrights in favor of ATopTech be entered;

2.     That a judgment issue determining the copyrights asserted in this action to be invalid and unenforceable;

3.     That Synopsys has violated Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, and California's Cartwright Act;

4.     That judgment be entered in favor of ATopTech and against Synopsys for all damages proximately caused by Synopsys in violation of Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, and California's Cartwright Act;

5.     That Synopsys has violated Business & Professions Code Sections 17200 et seq.;

6.      For treble damages according to law;

7.      For attorneys' fees and costs according to law;

8.      For restitution and disgorgement according to proof for Synopsys' violations of Business & Professions Code Sections 17200 et seq.;

9.      For appropriate injunctive relief restraining Synopsys from further unlawful conduct;

10.     For costs of suit incurred herein; and

11.     For such other and further relief as the Court finds just and proper.

### DEMAND FOR JURY TRIAL

ATopTech hereby demands a trial by jury of all issues in this action so triable.

1    Dated:  March 13, 2015                    ARNOLD & PORTER LLP

2

3                                              By:  /s/  Paul Alexander
                                               Paul Alexander (#49997)
4                                              ARNOLD & PORTER LLP
                                               1801 Page Mill Road, Suite 110
5                                              Palo Alto, CA 94304-1216
                                               Telephone:  (650) 798-2920
6                                              Fax:  (650) 798-2999
                                               E-Mail:  Paul.Alexander@aporter.com
7
                                               Martin R. Glick (#40187)
8                                              Daniel Asimow (#165661)
                                               Willow Noonan (#277584)
9                                              Daniel Pastor (#297948)
                                               ARNOLD & PORTER LLP
10                                             Three Embarcadero Center, 7th Floor
                                               San Francisco, CA 94111-4024
11                                             Telephone:  (415) 471-3100
                                               Fax:  (415) 471-3400
12                                             E-Mail:  Marty.Glick@aporter.com
                                               E-Mail:  Daniel.Asimow@aporter.com
13                                             E-Mail:  Willow.Noonan@aporter.com
                                               E-Mail:  Daniel.Pastor@aporter.com
14
                                               Denise McKenzie (#193313)
15                                             Ryan M. Nishimoto (#235208)
                                               ARNOLD & PORTER LLP
16                                             777 South Figueroa Street, Forty-Fourth Floor
                                               Los Angeles, CA 90017-5844
17                                             Telephone:  (213) 243-4000
                                               Fax:  (213) 243-4199
18                                             E-Mail:  Denise.McKenzie@aporter.com
                                               E-Mail:  Ryan.Nishimoto@aporter.com
19
                                               Attorneys for Defendant
20                                             ATOPTECH, INC.

21

22   35111281v9

23

24

25

26

27

28

DEF. ATOPTECH'S 1ST AMENDED ANSWER & 1ST
AMENDED COUNTERCLAIMS; JURY DEMAND
Case No. 3:13-cv-02965-MMC (DMR)