Paul Alexander (#49997)
ARNOLD & PORTER LLP
1801 Page Mill Road, Suite 110
Palo Alto, CA 94304-1216
Telephone:  (650) 798-2920
Fax:  (650) 798-2999
E-Mail:  Paul.Alexander@aporter.com

Martin R. Glick (#40187)
Daniel Asimow (#165661)
Willow Noonan (#277584)
Daniel Pastor (#297948)
ARNOLD & PORTER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024
Telephone:  (415) 471-3100
Fax:  (415) 471-3400
E-Mail:  Marty.Glick@aporter.com
E-Mail:  Daniel.Asimow@aporter.com
E-Mail:  Willow.Noonan@aporter.com
E-Mail:  Daniel.Pastor@aporter.com

Denise McKenzie (#193313)
Ryan M. Nishimoto (#235208)
ARNOLD & PORTER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, CA 90017-5844
Telephone:  (213) 243-4000
Fax:  (213) 243-4199
E-Mail:  Denise.McKenzie@aporter.com
E-Mail:  Ryan.Nishimoto@aporter.com

Attorneys for Defendant
ATOPTECH, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC., | Case No. 3:13-cv-02965 MMC (DMR) |
| Plaintiff, | **DEFENDANT ATOPTECH, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SYNOPSYS'S MOTION TO DISMISS AMENDED COUNTERCLAIMS AND TO STRIKE ALLEGATIONS AND AFFIRMATIVE DEFENSES** |
| v. | |
| ATOPTECH, INC., | |
| Defendant. | |
| | Date:      May 8, 2015 |
| | Time:      9:00 a.m. |
| | Judge:     Hon. Maxine M. Chesney |
| | Courtroom: 7, 19th Floor |

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| INTRODUCTION |  |  | 1 |
| I. | ATOPTECH HAS PROPERLY PLED ITS ANTITRUST COUNTERCLAIMS |  | 2 |
|  | A. | ATopTech Has Properly Alleged Copyright Misuse | 2 |
|  | B. | ATopTech Has Properly Alleged a Violation of Section 7 the Clayton Act | 4 |
|  |  | 1. ATopTech Has Alleged Antitrust Injury. | 5 |
|  |  | 2. Synopsys' Intellectual Property Rights Do Not Immunize Its Conduct. | 8 |
|  |  | 3. ATopTech Has Defined the Relevant Markets | 11 |
|  | C. | ATopTech Has Properly Alleged a Tying Claim | 12 |
|  |  | 1. Synopsys Has Illegally Tied The Sale of Place-and-Route Software and Verification Software Together | 13 |
|  |  | a. Coercion and Market Power | 13 |
|  |  | b. Other Forcing Mechanisms | 15 |
|  |  | 2. Harm to Competition | 16 |
|  | D. | ATopTech Has Properly Alleged Monopolization Claims | 17 |
|  | E. | ATopTech Has Properly Alleged Attempted Monopolization | 19 |
|  | F. | ATopTech Has Properly Alleged a Cartwright Act Claim | 20 |
|  | G. | ATopTech Has Properly Alleged Unfair Competition Law Claims | 20 |
|  | H. | ATopTech Should Be Allowed to Amend If the Court Finds Its Counterclaims Insufficient. | 20 |
| II. | THE COURT SHOULD DENY SYNOPSYS' MOTION TO STRIKE MATERIAL FROM ATOPTECH'S AMENDED ANSWER |  | 21 |
| III. | THE COURT SHOULD DENY SYNOPSYS' MOTION TO STRIKE ATOPTECH'S UNCLEAN HANDS AFFIRMATIVE DEFENSES. |  | 22 |
| CONCLUSION |  |  | 24 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adobe Sys. Inc. v. Kornrumpf,*
    2011 WL 3055223 (N.D. Cal. July 25, 2011) ..................................................... 4

*Adobe Sys. Inc. v. Norwood,*
    2011 WL 845923 (N.D. Cal. Mar. 8, 2011) ......................................................... 4

*Alaska Airlines, Inc. v. United Airlines, Inc.,*
    948 F.2d 536 (9th Cir. 1991) ............................................................................. 17

*Alcatel USA, Inc. v. DGI Technologies, Inc.,*
    166 F.3d 772 (5th Cir. 1999) ............................................................................... 3

*Allen v. City of Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990) ............................................................................. 21

*Altera Corp. v. Clear Logic, Inc.,*
    424 F.3d 1079 (9th Cir. 2005) ......................................................................... 3, 4

*Apple Inc. v. Psystar Corp.,*
    658 F.3d 1150 (9th Cir. 2011) ......................................................................... 2, 3

*Apple Inc. v. Psystar Corp.,*
    2009 WL 303046 (N.D. Cal. Feb. 6, 2009) ......................................................... 4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 2, 6, 17, 18

*Axis Reinsurance Co. v. Telekenex, Inc.,*
    2013 WL 1501468 (N.D. Cal. Apr. 10, 2013) ................................................... 21

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
    182 F.3d 1096 (9th Cir. 1999) ........................................................................... 21

*Blue Shield of Virginia v. McCready,*
    457 U.S. 465 (1982) ...................................................................................... 9, 10

*Brantley v. NBC Universal,*
    675 F.3d 1192 (9th Cir. 2012) ....................................................................... 8, 17

*Brazil v. Dole Food Co., Inc.,*
    935 F. Supp. 2d 947 (N.D. Cal. 2013) ................................................................ 6

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993) ........................................................................................... 15

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1997) ............................................................................................. 5

*State of Ill. Ex rel. Burris v. Panhandle E. Pipe Line Co.,*
    935 F.2d 1469 (7th Cir. 1991) ........................................................................... 10

*Cal. Computer Products, Inc. v. Int'l Bus. Machines Corp.*,
   613 F.2d 727 (9th Cir. 1979) .................................................................. 19

*Cascade Health Solutions v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2007) ................................................... 14, 15, 16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .......................................................................... 20

*Data General Corp. v. Grumman Sys. Supp. Corp.*,
   36 F.3d 1147 (1st Cir. 1994) .................................................................... 8

*DSC Communications Corp. v. DGI Techs. Inc.*,
   81 F.3d 597 (5th Cir. 1996) .................................................................... 10

*DSM Desotech, Inc. v. 3D Sys. Corp.*,
   2013 WL 389003 (N.D. Ill. Jan. 31, 2013) ............................................. 8

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
   504 U.S. 451 (1992) ............................................................................... 10

*F.T.C. v. Warner Commc'n*,
   742 F.2d 1156 (9th Cir. 1984) ............................................................ 8, 9

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) ............................................................... 21

*Fidelity Fin. Corp. v. Fed. Home Loan Bank*,
   792 F.2d 1432 (9th Cir. 1986) ............................................................... 21

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
   703 F.2d 534 (9th Cir. 1983) ........................................................... 14, 19

*Fraser v. Major League Soccer*,
   284 F.3d 47 (1st Cir. 2002) .................................................................... 18

*GAF Corp. v. Eastman Kodak Co.*,
   519 F. Supp. 1203 (S.D.N.Y. 1981) ...................................................... 19

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   352 F.3d 367 (9th Cir. 2013) ...................................................... 6, 7, 9, 19

*Hightower v. City & Cnty. of San Francisco*,
   2014 WL 7336677 (N.D. Cal. Dec. 24, 2014) ....................................... 6

*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ................................................ 5, 8, 16, 19

*Indeck Energy Servs. v. Consumers Energy Co.*,
   250 F.3d 972 (6th Cir. 2000) ................................................................... 6

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ............................................................................. 13, 14

*Lambtek Yogurt Machs. v. Dreyer's Grand Ice Cream, Inc.*,
   1997 WL 108718 (N.D. Cal. Mar. 3, 2007) ........................................... 8

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

*Lasercomb America, Inc. v. Reynolds,*
   911 F.2d 970 (4th Cir. 1990).................................................................. 4, 22

*LiveUniverse, Inc. v. MySpace, Inc.,*
   304 F. Appx. 554 (9th Cir. 2008)............................................................. 19

*M&M Med. Supplies & Serv. v. Pleasant Valley Hosp.,*
   981 F.2d 160 (4th Cir. 1992) (en banc).................................................... 20

*Marin Co. Bd. of Realtors, Inc. v. Palsson,*
   16 Cal. 3d 920 (1976) ............................................................................. 20

*Marts v. Xerox, Inc.,*
   77 F.3d 1109 (8th Cir. 1996)................................................................... 15

*Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC,*
   2012 WL 5499871 (W.D. Wash. Nov. 13, 2012) .................................... 18

*MGM Studios, Inc. v. Grokster, Ltd.,*
   454 F. Supp. 2d 966 (C.D. Cal. 2006)....................................................... 3

*Monsanto Co. v. Scruggs,*
   459 F.3d 1328 (Fed. Cir. 2006)................................................................ 14

*Newcal Industries, Inc. v. Ikon Office Solution,*
   513 F.3d 1038 (9th Cir. 2008)............................................................ 11, 12

*Novell v. Microsoft Corp.,*
   731 F.3d 1064 (10th Cir. 2013)............................................................... 19

*Paladin Assocs., Inc. v. Mont. Power Co.,*
   328 F.3d 1145 (9th Cir. 2003)........................................................ 12, 16, 17

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n.,*
   121 F.3d 516 (9th Cir. 1997)........................................................... 4, 22, 23

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
   508 U.S. 49 (1993) ............................................................................. 16, 18

*Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.,*
   732 F.2d 1403 (9th Cir. 1984).................................................................. 14

*Rosales v. Citibank, Fed. Sav. Bank,*
   133 F. Supp. 2d 1177 (N.D. Cal. 2001) ................................................... 21

*Saxon v. Blann,*
   968 F.2d 676 (8th Cir. 1992)............................................................. 22, 23

*Schor v. Abbott Labs.,*
   457 F.3d 608 (7th Cir. 2006).................................................................... 14

*Standard Oil Co. v. United States,*
   221 U.S. 1 (1911) .................................................................................... 18

*Stearns Airport Equip. Co., Inc. v. FMC Corp.,*
   170 F.3d 518 (5th Cir. 1999)................................................................... 15

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

*Supermarket Homes, Inc. v. San Fernando Cnty. Bd. of Realtors*,
  786 F.2d 1400 (9th Cir. 1986) ............................................................ 22

*Tanaka v. Univ. of So. Cal.*,
  252 F.3d 1059 (9th Cir. 2001) ............................................................ 12

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,
  512 F.2d 1264 (9th Cir. 1975) ............................................................ 11

*United States v. General Dynamics Corp.*,
  415 U.S. 486 (1974) ............................................................................. 5

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) ........................................................................... 18

*United States v. H & R Block, Inc.*,
  833 F. Supp. 2d 36 (D.D.C. 2011) ................................................... 7, 9

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ............................................................ 18

*United States v. Westinghouse Elec. Corp.*,
  648 F.2d 642 (9th Cir. 1981) ............................................................ 11

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) .............................................................. 4, 10, 17

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................... 21

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
  342 F.3d 191 (3d Cir. 2003) ................................................................ 3

*Vincent v. Trend W. Tech. Corp.*,
  828 F.2d 563 (9th Cir. 1987) ............................................................ 21

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*,
  857 F.2d 55 (2d Cir. 1988) ............................................................... 20

*Wahoo Int'l, Inc. v. Phix Doctor, Inc.*,
  2014 WL 2864343 (S.D. Cal. June 24, 2014) ...................................... 6

*Western Parcel Express v. United Parcel Service of Am., Inc.*,
  190 F.3d 974 (9th Cir. 1999) ............................................................ 15

**DOCKETED CASES**

*F.T.C. v. Staples*,
  970 F.Supp. 1066 (D.D.C. 1997) ...................................................... 7, 9

*United States v. Comcast Corp.*,
  No. 11-106-cv-00106 (D.D.C. 2011) ................................................... 5

*United States v. Google Inc. and ITA Software, Inc.*,
  No. 1:11-cv-00688 (D.D.C. Apr. 8, 2011) .......................................... 5

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

**STATUTES AND RULES**

15 U.S.C. § 2 ............................................................................. 4, 9, 17, 18, 19

15 U.S.C. § 15 ............................................................................................ 4

15 U.S.C. § 18 ............................................................................................ 4

Cal. Bus. & Prof. Code § 16720(e)(3) ...................................................... 20

Clayton Act section 7 ...................................................................... passim

Fed. R. Civ. P. 12(b)(6) ................................................................... 6, 11, 12

Fed. R. Civ. P. 12(f) ................................................................................ 21

Fed. R. Civ. P. 15 .................................................................................... 21

Fed. R. Civ. P. 15(a)(2) ........................................................................... 21

**OTHER AUTHORITIES**

3 MELVILLE B. NIMMER, COPYRIGHT, § 13.09[B] at 13-148-49 (1991) ............................ 22

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

1

**INTRODUCTION**

2

Synopsys' Motion to Dismiss ("MTD") ATopTech's Amended Counterclaims ("ACC")

3

erroneously assumes that a company's intellectual property rights grant it a privilege to violate the

4

antitrust laws.  ATopTech has carefully alleged conduct by Synopsys that constitutes multiple

5

antitrust and copyright misuse violations even if Synopsys has valid intellectual property rights.  For

6

instance, a merger that violates Section 7 (because it results in a substantial reduction in

7

competition) is not immunized because the merging firms possess intellectual property and intend to

8

use it post-merger to exclude competition.  Likewise, the fact that a firm's market power is derived

9

from intellectual property does not privilege the firm to use its intellectual property to impose tying

10

arrangements, monopolize relevant markets, compete unfairly, or misuse its copyrights.  As detailed

11

below, each count in ATopTech's Amended Counterclaims, as well as the affirmative defenses and

12

other matter contained in ATopTech's Answer, is properly pled.  The MTD should be denied.

13

As explained in the ACC, there are two closely related markets involved in the design of

14

integrated circuits.  Engineers must use both "place-and-route software" to design the physical

15

layout of a circuit and separate "verification software" to assure the circuit's timing and

16

performance before a fabricator will agree to manufacture it.  ACC ¶¶53, 56.  ATopTech and

17

Synopsys are competitors in the place-and-route software market.  *Id.* ¶53.  ATopTech sells a place-

18

and-route software product called Aprisa; Synopsys sells a place-and-route software product called

19

IC Compiler.  *Id.* ¶54.  Synopsys also sells the dominant verification software product PrimeTime

20

used to test the timing and performance of circuits before they can be manufactured.  *Id.* ¶55.

21

PrimeTime has an 87% market share of the verification software market.  *Id.* ¶56.

22

Synopsys has a history of acquiring companies in both the place-and-route software market

23

and the verification software market that it believed presented competitive threats to its monopoly

24

position.  *Id.* ¶60.  In 2011 and 2012, Synopsys acquired Extreme DA and Magma Design

25

Automation, *id.*, companies that sold rival verification software and which had worked closely with

26

ATopTech to ensure the interoperability of its Aprisa product with their products.  *Id.* ¶¶60, 62, 76.

27

ATopTech alleges that these acquisitions by Synopsys were anti-competitive conduct intended to

28

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

1   prevent the emergence of strong alternatives to Synopsys' IC Compiler and PrimeTime software.

2   *Id.* ¶76.

3          In addition, to prevent competition in the place-and-route software market, Synopsys

4   employs various tactics intended to prevent competitors from developing software that is fully

5   interoperable with Synopsys' PrimeTime verification software.  *Id.* ¶82.  For instance, Synopsys

6   attempts to impose restrictions on customers to prevent them from sharing PrimeTime output

7   reports with place-and-route companies that would allow the competitors to understand how their

8   circuit designs would be evaluated by PrimeTime.  *Id.*  Synopsys has also taken the position in this

9   lawsuit, and other past lawsuits against competitors, that any interoperability of competitors' place-

10  and-route software must be the result of violations of its copyright in PrimeTime.  *Id.* ¶63.

11  ATopTech has threatened at least one customer with a punitive price increase on PrimeTime unless

12  that customer also purchased IC Compiler from Synopsys (to the exclusion of Aprisa).  *Id.* ¶92.

13  ATopTech's amended counterclaims seek to end this cycle of anti-competitive conduct by

14  Synopsys and to hold it accountable for harming competition in the place-and-route and verification

15  software markets.

## I.      ATOPTECH HAS PROPERLY PLED ITS ANTITRUST COUNTERCLAIMS

17         "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

18  as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

19  (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads

20  factual content that allows the court to draw the reasonable inference that the defendant is liable for

21  the misconduct alleged."  *Id.*  For purposes of a motion to dismiss, the Court must "take all of the

22  factual allegations in the complaint as true."  *Id.*

### A.      ATopTech Has Properly Alleged Copyright Misuse

24         The copyright misuse doctrine prohibits copyright holders from "using conditions to control

25  use of copyrighted material" as a means "to stifle competition."  *Apple Inc. v. Psystar Corp.*, 658

26  F.3d 1150, 1159 (9th Cir. 2011).  The purpose of the doctrine is to prevent "holders of copyrights

27  from leveraging their limited monopoly to allow them control of areas outside the monopoly."  *Id.*

28  at 1157.  Where a copyright holder uses "license conditions to prevent the "development of

competing products," the doctrine of copyright misuse applies. *Id.* at 1159. Copyright "[m]isuse often exists where the . . . copyright holder has engaged in some form of anti-competitive behavior." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 204 (3d Cir. 2003). For instance, in *Alcatel USA, Inc. v. DGI Technologies, Inc.*, the Fifth Circuit held that a software license agreement—for a computer program operating a telephone switch—which prevented competitors from designing and testing a compatible switch using the copyright holder's protocol constituted copyright misuse. 166 F.3d 772, 777 (5th Cir. 1999). In *Psystar*, the Ninth Circuit relied on *Alcatel* for its conclusion that no copyright misuse had occurred where an Apple, Inc. licensing agreement did not "restrict competitors' ability to develop their own software" and did not "preclude customers from using non-Apple components with Apple computers." 658 F.3d at 1160. In this case, conversely, ATopTech alleges that Synopsys has used its copyright for its dominant PrimeTime verification software to prevent competitors from developing place-and-route software that is interoperable with PrimeTime. ACC ¶¶ 64, 65. Synopsys restricts its competitors' ability to develop their own place-and-route software by imposing contractual restrictions on customers that preclude them from sharing their own output verification data with firms (like ATopTech) that wish to develop interoperable place-and-route programs. *Id.* ¶¶ 68, 82. Far from denying this behavior, the MTD seeks to justify it. *See* MTD at 8–9. These contractual restrictions on customers' ability to share PrimeTime output data with competitor place-and-route software firms are the precise licensing conditions that Synopsys somehow contends ATopTech has failed to allege. *See* MTD at 4. As the Ninth Circuit has explained, a "software licensing agreement may reasonably restrict use of the software" but only "so long as it does not prevent the development of competing products." 658 F.3d at 1159. The effect of Synopsys' restrictions is to deter the development of products that are interoperable with its PrimeTime verification software —a specific restraint on inventive activity. *Cf. MGM Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 995 (C.D. Cal. 2006) (copyright misuse must involve restraints on creative or inventive activity).

Synopsys also complains that copyright misuse is an affirmative defense, not a counterclaim for declaratory relief. MTD at 5. Synopsys relies on *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION TO DISMISS AMENDED COUNTERCLAIMS AND TO STRIKE ALLEGATIONS AND AFF. DEFENSES

1079, 1090 (9th Cir. 2005), in which the Ninth Circuit refused to allow "an independent claim for copyright misuse" because "there ha[d] been no allegation of copyright infringement." *Id.* Here, by contrast, Synopsys' claims of copyright infringement are central to the case and intimately connected to ATopTech's antitrust claims.[1] Declaratory relief is also proper because copyright misuse may be maintained as a counterclaim where a plaintiff has "a legitimate interest in establishing misuse independent of resolving the copyright infringement claim" or where "the counterclaim may be appropriate to provide relief for potential defendants not themselves injured by the misuse who may have similar interests as the counterclaiming defendant." *Adobe Sys. Inc. v. Kornrumpf*, No. C 10-02769 CW, 2011 WL 3055223, at *2 (N.D. Cal. July 25, 2011) (internal quotation marks omitted); *see also Apple Inc. v. Psystar Corp.*, No. C 08-03251 WHA, 2009 WL 303046, at *1 (N.D. Cal. Feb. 6, 2009) (recognizing copyright misuse as a counterclaim for declaratory relief); *Adobe Sys. Inc. v. Norwood*, No. C 10-03564 SI, 2011 WL 845923, at *5 (N.D. Cal. Mar. 8, 2011) (same). Here, ATopTech brings its copyright misuse counterclaim not only as an integral part of its antitrust counterclaims but also for the benefit of other competitors in the place-and-route software market who face the same interoperability challenges with PrimeTime that it does.

## B. ATopTech Has Properly Alleged a Violation of Section 7 the Clayton Act

Section 7 of the Clayton Act makes unlawful any acquisition that may "substantially . . . lessen competition, or tend to create a monopoly." 15 U.S.C. § 18. Section 4 of the Clayton Act confers standing on any person who has been "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. In moving to dismiss the Section 7 claim, Synopsys erroneously relies on cases that find certain conduct lawful for individual firms but that have no application in the Section 7 context. For instance, a monopolist does not violate Section 2 merely by charging high prices, *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004), but that does not mean that Section 7 authorizes a merger

---

[1] The "analysis necessary to a finding of [copyright] misuse is similar but separate from the analysis necessary to a finding of antitrust violation." *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990). Copyright misuse may be found "regardless of whether such conduct amounts to an antitrust violation." *Id.; Practice Mgmt. Info. Corp. v. Am. Med. Ass'n.*, 121 F.3d 516, 521 (9th Cir. 1997) (same).

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

that results in the combined firm's charging higher prices; rather, that is one of the primary harms against which Section 7 is directed. *United States v. General Dynamics Corp.*, 415 U.S. 486, 497 (1974) (Section 7 case may rest "on a showing of even small increases of market share or market concentration in those industries or markets where concentration is already great or has been recently increasing"). Similarly, a single firm in most instances is not required to license its intellectual property, *but see Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220, 1224–26 (9th Cir. 1997) (requiring Kodak to sell parts its parts to independent service organizations based on jury finding that Kodak used its monopoly in the photocopier market to create a second monopoly in the equipment service market), but that does not immunize a merger that results in a systematic refusal to license intellectual property and resulting harm to competition. *See, e.g., United States v. Google Inc. and ITA Software, Inc.*, No. 1:11-cv-00688 (D.D.C. Apr. 8, 2011) (final judgment resolving concern that acquisition of airfare pricing system development would foreclose online travel websites from access to innovation); *United States v. Comcast Corp.*, No. 11-106-cv-00106 (D.D.C. 2011) (order ensuring that cable company's acquisition of NBC-Universal would not foreclose online video programming distributors from accessing content). That is precisely the sort of harm alleged here. By acquiring its competitors in the verification software market, Synopsys has deprived consumers of the benefit of vibrant competition in that market, including the willingness of those firms to license their intellectual property for the purpose of developing interoperable place-and-route software. ACC ¶80. Whether or not Synopsys has an independent duty to continue certain products or license its intellectual property is beside the point in analyzing this claim. The Amended Counterclaims properly allege all elements of a Section 7 violation.

### 1.    ATopTech Has Alleged Antitrust Injury.

Synopsys complains that ATopTech has not alleged antitrust injury because it has alleged only injury to itself, or has pled injury without sufficient detail. MTD at 5-6. To the contrary, the Amended Counterclaims properly plead antitrust injury, *i.e.*, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1997). Antitrust injury has four

1    elements "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which

2    makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."

3    *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2013).  Here, ATopTech has

4    alleged that Synopsys' acquisitions of Extreme DA in 2011 and Magma in 2012 harmed both

5    ATopTech and competition generally by "removing from the market the verification software

6    products of two of [Synopsys'] strongest competitors."  ACC ¶76.  ATopTech specifically alleges

7    that it "lost the benefit of technical cooperation," it had with Extreme DA, *id.* ¶¶63, 79, "faced much

8    greater challenges guaranteeing the interoperability of Aprisa with PrimeTime," *id.* ¶82, "lost its

9    ability to secure new customers" through a co-marketing agreement it had with Extreme DA, *id.*,

10   and suffered "financial injury," *id.* ¶85.  ATopTech alleges that Synopsys purposefully acquired

11   Extreme DA and Magma to remove from the marketplace two strong competitors in the verification

12   software market with whom ATopTech enjoyed extensive technical cooperation that ensured the

13   interoperability of ATopTech's place-and-route tool—Aprisa—with their verification software.  *Id.*

14   ¶¶76, 79.  ATopTech also had a co-marketing agreement with Extreme DA, wherein the two

15   companies jointly marketed Aprisa and Extreme DA's GoldTime timing software, products that the

16   two companies had optimized for interoperability.  *Id.* ¶62.  These allegations of injury are

17   sufficiently factual to put Synopsys on notice of ATopTech's injury and are not merely implausible

18   conclusions, as Synopsys contends.[2]

19           Synopsys contends that "only a direct victim of the alleged antitrust violation can prosecute

20   its own cause of action, not a competitor."  MTD at 6 (*citing Indeck Energy Servs. v. Consumers

21   *Energy Co.*, 250 F.3d 972, 977 (6th Cir. 2000)).  Synopsys would apparently elevate the general

22   principle that the antitrust laws protect competition, not competitors, into a prohibition on

23   competitors' standing.  That is plainly not the law.  For instance, *Indeck* itself notes that "antitrust

24

25           [2] *See, e.g.*, *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013)
     (denying motion to dismiss and recognizing that the *Iqbal* "plausibility standard is not akin to a
26   probability requirement") (internal quotation marks omitted); *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*,
     No. 13CV1395-GPC BLM, 2014 WL 2864343, at *5 (S.D. Cal. June 24, 2014) (denying motion to
27   dismiss in a trademark action, noting that the "inquiry under Rule 12(b)(6) is the adequacy of the
     pleadings, not adequacy of the evidence"); *Hightower v. City & Cnty. of San Francisco*, No. C-12-
28   5841 EMC, 2014 WL 7336677, at *12 (N.D. Cal. Dec. 24, 2014) (denying motion to dismiss where
     the "facts lend support to a plausible inference that the SFPD took action against the Plaintiff
     because of not merely in spite of [his] message") (internal quotation marks omitted).

1    actions may, of course, be initiated by marketplace competitors" that allege harm to competition.

2    *Id.* ATopTech alleges that Synopsys' acquisition of Extreme DA injured consumers—who were

3    forced to switch from Extreme DA's discontinued GoldTime verification software to Synopsys'

4    PrimeTime software, which was less compatible with ATopTech's Aprisa place-and-route product.

5    *Id.* ¶82.

6         The Extreme DA and Magma acquisitions occurred in an industry context in which

7    Synopsys had steadily increased its market power by acquiring verification software competitors

8    over a decade.  *Id.* ¶60.  Both ATopTech and customers were harmed by Synopsys' acquisitions of

9    Extreme DA and Magma because customers that had specifically "purchased Aprisa because of its

10   level of interoperability and compatibility with [Extreme DA's] GoldTime" were deprived of the

11   benefits of their investment when Synopsys removed GoldTime from the market.  *Id.* ¶82.  The

12   injury to ATopTech and to consumers from the acquisitions was one and the same: customers that

13   had adopted the optimized the Aprisa / GoldTime software combination were suddenly forced to

14   switch to other verification software, and ATopTech and its customers, "faced much greater

15   challenges" with "the interoperability of Aprisa [and] PrimeTime due to Synopsys' refusal to share

16   output data essential" to making place-and-route and verification tools compatible with one

17   another."  *Id.*  The acquisitions thus injured both ATopTech and competition.

18        Alternatively, Synopsys contends that its elimination of Extreme DA's GoldTime

19   verification software actually reduced its market power and gave "greater opportunities to actual or

20   potential rivals."  MTD at 7.  This is utterly false—or at a minimum represents a factual assertion

21   by Synopsys that is impermissible on a motion to dismiss.  Given the dominance of Synopsys'

22   PrimeTime verification software—with 87% market share—the elimination of Extreme DA's

23   GoldTime and Magma's verification software through the acquisition of the companies was

24   overwhelmingly likely to have an anti-competitive effect on the market.  *F.T.C. v. Staples*, 970

25   F.Supp. at 1089 (elimination of aggressive competitor in highly concentrated market an important

26   consideration in analyzing anti-competitive effect); *H & R Block, Inc.*, 833 F. Supp. 2d 36, 81–82

27

28

1   (D.D.C. 2011) (finding "unilateral anticompetitive effect" likely where the merger eliminated head-

2   to-head competition).[3]

3       Synopsys also cites *Brantley v. NBC Universal*, 675 F.3d 1192, 1202 (9th Cir. 2012), for the

4   proposition that "[a]llegations that an agreement has the effect of reducing consumers' choices or

5   increasing prices to consumers do not sufficiently allege an injury to competition."  MTD at 7.

6   *Brantley* dealt with Section 1 of the Sherman Act (rather than Section 7 of the Clayton Act) and the

7   Ninth Circuit upheld dismissal in the case because the plaintiffs had not alleged the injury to

8   competition posed by the practices at issue.  675 F.3d at 1201–02.  Synopsys again misses the point

9   of a Section 7 claim.  A Section 7 claim does not concern whether particular practices are anti-

10  competitive; it concerns whether an acquisition substantially reduced competition.  *F.T.C. v.*

11  *Warner Commc'n*, 742 F.2d 1156, 1164 (9th Cir. 1984) ("Section 7 is concerned only with the

12  effect upon competition of an acquisition, and the statutory language was carefully drafted to refer

13  only to an acquisition's effect.  If the acquisition has a substantial anticompetitive effect, it is illegal

14  under § 7").  ATopTech has adequately alleged that the two Synopsys acquisitions in question did

15  so.

16              **2.      Synopsys' Intellectual Property Rights Do Not Immunize Its Conduct.**

17      Synopsys also argues that it somehow had an absolute right to enter into an unlawful merger

18  if the mechanism by which it thereafter harmed competition was the discontinuation of products or

19  the refusal to provide technical cooperation.  MTD at 7–9.  This badly misconstrues antitrust law.

20  *See Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1215 (9th Cir. 1997)

21  ("neither patent nor copyright holders are immune from antitrust liability . . . a holder of a patent or

22  copyright violates the antitrust laws by concerted and contractual behavior that threatens

23  competition") (internal quotation marks omitted); *Data General Corp. v. Grumman Sys. Supp.*

24  *Corp.*, 36 F.3d 1147, 1185 n. 63 (1st Cir. 1994) ("It is . . . well settled that concerted and contractual

25  behavior that threatens competition is not immune from antitrust inquiry simply because it involves

26

27      [3] The cases cited by Synopsys are inapposite to the issue ATopTech raises: the anti-
    competitive effect of an acquisition.  In *Lambtek Yogurt Machs. v. Dreyer's Grand Ice Cream, Inc.*,
    "[t]he Complaint contain[ed] no allegation whatsoever that the acquisition itself ha[d] diminished

28  competition."  1997 WL 108718, at *4 (N.D. Cal. Mar. 3, 2007).  In *DSM Desotech, Inc. v. 3D Sys.*
    *Corp.*, there was no merger at issue in the case.  2013 WL 389003 (N.D. Ill. Jan. 31, 2013).

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

the exercise of copyright privileges.").  The limits on liability under Section 2 for certain single-firm

conduct have no application in a discussion of whether a merger substantially reduces competition

under Section 7.  *Warner Commc'n*, 742 F.2d at 1164 ("Section 7 is concerned only with the effect

upon competition of an acquisition"); *United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 81–82

(D.D.C. 2011) (finding "unilateral anticompetitive effect" likely where "the merger will eliminate

head-to-head competition between HRB and TaxAct" and create incentives for HRB to "limit the

functionality of TaxAct's products" despite HRB pledge to continue offering TaxAct).

　　　　With respect to the discontinuation of the Extreme DA and Magma products, Synopsys

again improperly conflates the rights of a single firm under Section 2 with the mechanism of

competitive harm under Section 7.  *See F.T.C. v. Staples*, 970 F.Supp. 1066, 1083, 1089 (D.D.C.

1997) (finding likelihood that proposed merger between Staples and Office Depot would violate

Section 7 of the Clayton Act by eliminating "a particularly aggressive competitor in a highly

concentrated market, a factor which is certainly an important consideration when analyzing possible

anti-competitive effects"); *Warner Commc'n*, 742 F.2d at 1164 (rejecting the argument that "an

acquisition would not violate section 7 where the acquired company intended to go out of

business").  Synopsys also overstates the rights of a single firm under Section 2.  Synopsys cites

*Glen Holly* for the proposition that "the antitrust laws do not preclude any manufacturer from

independently discontinuing a product line any more than they preclude a manufacturer from

independently raising prices."  352 F.3d at 372.  But in *Glen Holly*, the Ninth Circuit reversed the

district court for adopting an overly limited concept of antitrust injury.  *Id.* at 375.  The Ninth

Circuit cited the Supreme Court's holding in *Blue Shield of Virginia v. McCready*, 457 U.S. 465

(1982), that:  "a § 4 plaintiff need not prove an actual lessening of competition in order to recover.

Competitors may be able to prove antitrust injury before they actually are driven from the market

and competition is thereby lessened."  *Id.* at 482 (internal quotation marks and brackets omitted).[4]

*McCready* noted that "while an increase in price resulting from a dampening of competitive forces

is assuredly one type of injury for which § 4 potentially offers redress, it is not the only form of

---

[4] *Glen Holly* also found that a concerted agreement to discontinue a product could violate Section 1: "It is one thing for a business to have cast its fate with a product that disappears because of the normal forces of the market; it is another to have the rug pulled out from under a business by a conspiratorial agreement to eliminate a competing product."  352 F.3d at 378.

injury remediable under § 4." *Id.* at 482–83.  McCready had charged "Blue Shield with a

purposefully *anticompetitive scheme*" and "sought to recover as damages the sums lost to her as the

consequence of Blue Shield's attempt to pursue that scheme." *Id.* at 483.  She alleged that Blue

Shield sought to induce its customers to select psychiatrists over psychologists by forcing them to

choose between visiting a psychologist and forfeiting reimbursement or visiting a psychiatrist and

receiving reimbursement while foregoing treatment by the practitioner of their choice. *Id.* at 376.

The Supreme Court noted that the injury McCready "suffered was inextricably intertwined with the

injury" suffered by "psychologists and the psychotherapy market." *Id.*

Synopsys also attacks ATopTech's Section 7 claims as improperly based on an alleged

refusal to share information.  MTD at 8–9.  Again, Synopsys misses the point.  ATopTech alleges

that as a result of Synopsys' unlawful acquisitions, Synopsys has effectuated a regime where place-

and-route software competitors like ATopTech are denied the sharing of information that was

routine prior to the acquisitions.  ATopTech alleges that Synopsys' "refusal to share output data

essential to verification" testing actively impedes rival firms from developing place-and-route

software that is interoperable with Synopsys' PrimeTime verification tool. *Id.* ¶82; *see DSC*

*Communications Corp. v. DGI Techs. Inc.*, 81 F.3d 597, 601 (5th Cir. 1996) (likely copyright

misuse to use copyright in a computer program operating a telephone switch to prevent a competitor

from designing and testing a compatible switch using copyright holder's protocol); *Eastman Kodak*

*Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 479 n. 29 (1992) ("The Court has held many

times that power gained through some natural and legal advantage such as a patent, copyright, or

business acumen can give rise to [antitrust] liability if a seller exploits his dominant position in one

market to expand his empire into the next.").  ATopTech is not claiming that "Synopsys should

provide the same level of technical assistance that Extreme DA provided to ATopTech."  MTD at 8.

What ATopTech does claim is that Synopsys acquired Extreme DA, substantially reducing

competition in the verification market, and that one aspect of that reduction in competition was the

loss of a firm that provided technical cooperation to firms like ATopTech that developed

interoperable place-and-route software.  ACC ¶82.[5]

---

[5] For this reason, the authority cited by Synopsys concerning whether it has a "duty to aid
competitor[s]," *see Trinko*, 540 U.S. at 411, is inapposite. *See, e.g.*, *State of Ill. Ex rel. Burris v.*

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

1

### 3.   ATopTech Has Defined the Relevant Markets

2    Synopsys also attacks ATopTech's definition of the relevant markets.  MTD at 10–11.

3    Market definition is normally not an issue for resolution at the pleading state; the definition must be

4    wholly implausible to justify termination of a case on a motion to dismiss.  *Newcal Industries,*

5    *Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008) ("since the validity of the 'relevant

6    market' is typically a factual element rather than a legal element, alleged markets may survive

7    scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial").  Here,

8    ATopTech alleges that there is a global market for "place-and-route software," which is software

9    used to design the physical layout of integrated circuits, ACC ¶¶53, 59 and a global market for

10   "verification software," which is software used to verify the integrity of an integrated circuit design

11   by testing its electrical and timing performance under various conditions before a major chip

12   fabricator will agree to manufacture it.  *Id.* ¶¶55, 59.

13    These markets are highly plausible and pled with sufficient detail.  ATopTech has defined

14   the relevant product markets for place-and-route software and verification software by reference to

15   the product—as the law requires it to do.  *Twin City Sportservice, Inc. v. Charles O. Finley & Co.,*

16   *Inc.*, 512 F.2d 1264, 1271 (9th Cir. 1975) ("The proper point of departure in any discussion of the

17   relevant product market must be the rule of 'reasonable interchangeability.'").  Software that cannot

18   be used to design the physical layout of an integrated circuit is not place-and-route software and is

19   not reasonably interchangeable for it.  Similarly, software that cannot be used to verify the integrity

20   of an integrated circuit design by testing its electrical and timing performance under various

21   conditions is not verification software and is not a reasonable substitute for it.  *See id.* ("where there

22   is a high degree of substitutability in the use of two commodities, it may be said that the cross-

23   elasticity of demand between them is relatively high, and therefore the two should be considered in

24   the same market").  ATopTech has defined both the product and geographic markets for both place-

25

26   (continued…)

27   *Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1484 (7th Cir. 1991); ("a monopolist's duties are
     negative—to refrain from anticompetitive conduct rather than affirmative—to promote
28   competition"); *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 648 (9th Cir. 1981)
     (refusal to license patent to a competitor).

and-route and verification software and has therefore defined the relevant markets sufficiently at the pleading stage.  The relevant market need not be pled with the specificity that Synopsys argues is required.  *Newcal*, 513 F.3d at 1045 (relevant product market need not be pled with specificity "since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial").[6]

Synopsys further contends that ATopTech does not allege any facts to support its definition of the relevant markets.  To the contrary, the amended counterclaims identify the key producers and products within both the place-and-route software market and the verification software market including Synopsys, ATopTech, Cadence Design Systems, Extreme DA, and Magma.  *Newcal*, 513 F.3d at 1045 ("The consumers do not define the boundaries of the market; the products or producers do.").  Moreover, the counterclaims discuss at length the structure of the submarkets for software necessary for designing and laying out an integrated circuit before a manufacturer will agree to produce it.  ACC ¶¶52–63.  Finally, ATopTech has alleged Synopsys' market power within the verification software market on the basis of industry analyst studies which define the market for verification software as ATopTech does.  *Id.* ¶56.  Synopsys' argument that ATopTech has provided no facts is simply false.

### C.    ATopTech Has Properly Alleged a Tying Claim

To state a claim for illegal tying, a plaintiff must allege three elements: "(1) that there exist two distinct products or services in different markets whose sales are tied together; (2) that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market."  *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145,

---

[6] Synopsys cites *Tanaka v. Univ. of So. Cal.*, 252 F.3d 1059 (9th Cir. 2001) to support its argument that ATopTech has not defined the relevant product and geographic markets.  In *Tanaka*, the Ninth Circuit concluded that a USC student athlete who "attempt[ed] to restrict the relevant market to a single athletic program in Los Angeles based solely on her own preferences" had not stated a claim under Section 1 of the Sherman Act in challenging a PAC-10 athletic association rule that discouraged student-athletes from transferring to other PAC-10 institutions during their college athletic careers.  *Id.* at 1065.  The Ninth Circuit found the relevant geographic markets was national in scope.  *Id.* at 1063.  Here, of course, ATopTech has not alleged a single brand market or attempted to define the market based on its own preferences.

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

1159 (9th Cir. 2003) (internal quotation marks omitted).  Synopsys argues that ATopTech has not

alleged a tie, sufficient market power, or sufficient harm to competition.  MTD at 12.

    1.    **Synopsys Has Illegally Tied The Sale of Place-and-Route Software and Verification Software Together**

    a.    **Coercion and Market Power**

ATopTech alleges that "Synopsys forces customers who wish to purchase its verification

software PrimeTime (the tying product) to also purchase place-and-route software (the tied product)

from Synopsys" through a variety of means, including "discriminatory and punitive pricing of

PrimeTime . . . such that it is not economically viable for the customer to purchase third-party

place-and-route software," "misleading statements concerning the legality of third-party place-and-

route software," "acquisition and elimination of competitors who sell verification software," and

objectively baseless litigation brought against sellers of competing place-and-route software."  ACC

¶¶91, 92.  Synopsys argues that these allegations fail to allege coercion, which is "the essential

characteristic of an invalid tying arrangement . . . ." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,

466 U.S. 2, 12 (1984); MTD at 12.  Again, Synopsys charges that ATopTech can point to no facts

to support its claim of illegal coercion.  ATopTech, however, has pled that it has actual knowledge

of at least one PrimeTime customer who Synopsys recently threatened with substantial price

increases for PrimeTime if they did not also purchase place-and-route software from Synopsys.

ACC ¶93.  Synopsys acknowledges this in a footnote, MTD at 13 n. 13, but maintains that it is

insufficient because ATopTech has not furnished the customer's identity at this stage of the

litigation.  Nonetheless, the alleged facts must be taken as true for purposes of a motion to dismiss,

and they constitute a classic example of illegal coercion. *Jefferson Parish*, 466 U.S. at 12 ("an

invalid tying arrangement lies in the seller's exploitation of its control over the tying product to

force the buyer into the purchase of a tied product the buyer . . . [it] might have preferred to

purchase elsewhere on different terms").[7]

---

[7] ATopTech did not provide the name of this customer in a public pleading but of course is willing to identity the customer to Synopsys in discovery, subject to an attorneys' eyes only provision.  Alternatively, ATopTech is willing to identify the customer in an amended pleading filed under seal.

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

Furthermore, the "coercion" element is not strictly independent of the market power element, and Synopsys' dominant position in the tying product market strongly supports the sufficiency of ATopTech's allegations of coercion. *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 915 (9th Cir. 2007) (defendant's "substantial market power . . . creates a possibility that [it] was able to force unwanted purchases of [tied products]"); *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.*, 732 F.2d 1403, 1407 (9th Cir. 1984) ("forcing (or coercion) likely if seller has power in the tying product market"); *Jefferson Parish*, 466 U.S. at 17 ("When the seller's share of the market is high . . . the Court has held that the likelihood that market power exists and is being used to restrain competition in a separate market is sufficient to make per se condemnation appropriate."). Here, ATopTech alleges that Synopsys has the dominant share of the verification software market with "over 87% market share," and has used that market power to dissuade "customers from purchasing competitors' place-and-route software." ACC ¶¶90, 94. Despite Synopsys' protest that ATopTech has failed to define the verification software market, MTD at 12 n. 12, ATopTech has adequately defined the verification market in terms of the function of verification software and pointed to independent industry analyst estimates of Synopsys' market share. ACC ¶56.

Synopsys' assertion that the mere offer of its place-and-route software and verification software as separate products is by itself enough to defeat the alleged illegal tying claim, MTD at 12, is mistaken. Synopsys cites cases to suggest that for tying to occur "the seller must condition the sale of the tying product on the buyer's purchase of the tied product." *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 540 (9th Cir. 1983). But the key element is "coercion by the seller." *Id.*[8] Although a seller's total refusal to sell the tying product to a buyer who refuses to purchase the tied product is one form of a tying violation, it is not the only one. *Schor v. Abbott Labs.*, 457 F.3d 608 (7th Cir. 2006), cited by Synopsys (MTD at 12), recognized predatory pricing as another form of illegal tying. *Id.* at 611.

Synopsys' argument also overlooks well-established precedent that coercion can be established "as a matter of economic imperative"—by showing that an arrangement left buyers

---

[8] *Monsanto Co. v. Scruggs*, 459 F.3d 1328 (Fed. Cir. 2006), also focused on the broader issue of illegal coercion. *Id.* at 1340-41.

1    "with no rational economic choice other than purchasing [the tied product]"—and cannot be

2    decided at the pleading stage. *Cascade Health*, 512 F.3d at 914, 916 & n. 27 ("whether

3    PeaceHealth in fact used its market power to effectively coerce purchases of [the tied products] is a

4    question that can be answered only through further factual development"); *Marts v. Xerox, Inc.*, 77

5    F.3d 1109, 1113 (8th Cir. 1996) (unlawful tying arrangement is possible even where products are

6    offered separately if purchasing them together is the only viable option).  This is exactly the type of

7    coercion ATopTech alleges.  ACC ¶68 ("Synopsys charges customers who use ATopTech's place-

8    and-route software discriminatory prices for Synopsys' verification software, such that it is not

9    economically viable for many customers to purchase their place-and-route software from ATopTech

10   and their verification software from Synopsys.").

11        The cases cited by Synopsys to support its argument that to prove discriminatory or punitive

12   pricing exists, a plaintiff must establish that "the prices at issue were below an appropriate measure

13   of its rival's costs,"  do not involve illegal tying.  *See* MTD at 13–14; *Stearns Airport Equip. Co.,*

14   *Inc. v. FMC Corp.*, 170 F.3d 518, 532 (5th Cir. 1999) (no illegal tying claim alleged); *Brooke*

15   *Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) (no illegal tying claim

16   at issue).  *Western Parcel Express v. United Parcel Service of Am., Inc.*, MTD at 13, dealt with

17   volume discount contracts, which are not at issue in this case.  190 F.3d 974, 976 (9th Cir. 1999).  If

18   the discriminatory pricing is such that the customer has no economic choice but to accept both

19   prices, an unlawful tie can exist.

20              **b.    Other Forcing Mechanisms**

21        In addition to coercive pricing, ATopTech has alleged several other mechanisms by which

22   Synopsys forced customers to purchase IC Compiler rather than Aprisa.  These include the

23   acquisition and elimination of competitors who sell verification software, misleading statements to

24   customers about the legality of competitor place-and-route software, and objectively baseless

25   litigation brought against companies that sell competing place-and-route software.  ACC ¶¶ 60–67.

26   Synopsys contends that these allegations are not plausible.  MTD 14–16.  Synopsys' anti-

27   competitive strategy of acquiring and eliminating competitors that sold verification software over

28   the course of a decade is well-documented in the counterclaims.  ACC ¶60.  ATopTech alleges the

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

misleading statements to customers about the legality of competitors' place-and-route software on the basis of many years of experience interacting with customers who are reluctant to insert themselves into this case.  ATopTech alleges that Synopsys has brought objectively baseless litigation against companies that sell competing place-and-route software as a means to protect its dominant position in the industry based on Synopsys' history of intellectual property litigation against competitors in the verification software market, particularly its protracted litigation against Extreme DA, which ended with Synopsys' acquisition of Extreme DA and elimination of its rival GoldTime verification software.  ACC ¶82.  Although Synopsys' past litigation conduct may turn out to be immune from antitrust liability if the court finds it was not sham petitioning, that determination is a matter for the Court to resolve at a later stage of the proceeding.  *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993) ("recourse to agencies and courts should not be condemned as sham until a reviewing court has discerned and drawn the difficult line separating objectively reasonable claims from a pattern of baseless, repetitive claims which leads the factfinder to conclude that the administrative and judicial processes have been abused").  The forcing ATopTech alleges—whereby customers were deprived of verification software alternatives to Synopsys' PrimeTime—occurred through all of these mechanisms.

### 2.    Harm to Competition

Synopsys argues that ATopTech has failed to provide facts tending to show that competition was harmed in the place-and-route software market under either the per se rule analysis or rule of reason analysis used by courts to examine illegal tying claims.  MTD at 16.  As an initial matter, Synopsys overstates the harm to competition that must be established for a per se tying claim.  Because tying is subject to a per se rule, courts do not require proof of substantial harm to competition in the tied product market; rather, it suffices to show that a meaningful amount of commerce in the tied product market has been affected.  *Cascade Health*, 515 F.3d at 913; *Paladin*, 328 F.3d at 1159 (*citing Kodak*, 504 U.S. at 461–62).  ATopTech adequately pleads this element.  ACC ¶¶92–96.  Moreover, even for purposes of a rule of reason claim, ATopTech has adequately pled harm in the tied product market.  ATopTech has pled facts showing that this market is highly

1   concentrated, with Synopsys already enjoying a dominant market share.  ACC ¶¶53–54, 97–100.  It

2   has alleged that Synopsys sought to deny or disrupt its competitors' relations with customers and

3   business partners at every turn.  ACC ¶¶60–66; *Paladin*, 328 F.3d at 1156 (applying rule of reason

4   test in assessing harm to the market); *Brantley*, 675 F.3d at 1197 (discussing pleading requirements

5   under the rule of reason test).

6        **D.      ATopTech Has Properly Alleged Monopolization Claims**

7        Section 2 of the Sherman Act prohibits the willful monopolization of any part of the trade or

8   commerce among the States.  15 U.S.C. § 2.  To properly state a section 2 monopolization claim, a

9   plaintiff must allege "(1) the possession of monopoly power in the relevant market and (2) the

10   willful acquisition or maintenance of that power as distinguished from growth or development as a

11   consequence of a superior product, business acumen, or historic accident."  *Alaska Airlines, Inc. v.*

12   *United Airlines, Inc.*, 948 F.2d 536, 541 (9th Cir. 1991).  "[P]ossession of monopoly power will not

13   be found unlawful unless it is accompanied by an element of anticompetitive conduct."  *Trinko*, 540

14   U.S. at 407.  ATopTech has alleged both of these elements and anti-competitive conduct.  ACC

15   ¶¶101–24.

16        Apart from its attack on ATopTech's market definition, discussed *supra*, Synopsys does not

17   challenge ATopTech's assertion that Synopsys enjoys monopoly power in both the verification and

18   place-and-route software markets.  Instead, Synopsys contends that ATopTech has failed to plead

19   the anti-competitive conduct element of a Section 2 violation.  MTD at 18.  Synopsys again

20   complains that ATopTech's allegations regarding its anti-competitive acquisitions of Extreme DA

21   and Magma, Synopsys' refusal to share PrimeTime output data essential to the interoperability of

22   competitors' place-and-route software, and Synopsys' threats to customers that it will increase the

23   price it charges them for its dominant PrimeTime verification software if they buy their place-and-

24   route software from competitors, do not meet the *Iqbal*/*Twombly* plausibility standard.  *Id.*  The

25   argument that "Synopsys is unable to evaluate the plausibility" of these allegations, however,

26   misstates the applicable legal test for a motion to dismiss.  *Id.*  It is the Court that must determine

27   whether these allegations state a plausible claim, not Synopsys.  *Ashcroft v. Iqbal*, 556 U.S. 662,

28   679 (2009) ("Determining whether a complaint states a plausible claim  for relief [is] . . . a context-

1   specific task that requires the reviewing court to draw on its judicial experience and common

2   sense."). In doing so, the Court "must take all of the factual allegations in the complaint as true ."

3   *Id.* at 678.

4          With respect to the specific allegations of competitive harm, Synopsys overstates the

5   immunity that it enjoys for certain single firm conduct. Acquisitions of competitors that result in a

6   substantial reduction of competition not only violate Section 7 but constitute anti-competitive

7   conduct under Section 2. *Fraser v. Major League Soccer*, 284 F.3d 47, 61 (1st Cir. 2002) ("merger

8   to monopoly, benign as to the merged competitors, is a feasible section 2 claim . . . even if it is more

9   often challenged under Clayton Act section 7, which requires much less") (internal quotation marks

10  and citation omitted) *Standard Oil Co. v. United States*, 221 U.S. 1, 72–75 (1911) (holding that

11  Standard Oil had monopolized the petroleum industry in violation of Section 2 by acquiring a

12  controlling interest in multiple competitors); *United States v. Grinnell Corp.*, 384 U.S. 563, 567,

13  576 (1966) (holding that defendant had engaged in monopolization by acquiring control over three

14  companies, which combined held 87% of the relevant market) . ATopTech has alleged that

15  Synopsys pursued an anti-competitive scheme in which it acquired two of its leading competitors

16  who had significant business alliances with ATopTech in order to lessen competition in the place-

17  and-route software market and to consolidate its monopoly position in the verification software

18  market. ATopTech also alleges that Synopsys has imposed a tying arrangement. A tying

19  arrangement imposed by a monopolist violates not only Section 1 of the Sherman Act but Section 2

20  as well. *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001).

21         As to Synopsys' lawsuits against competitors, it is of course true that Synopsys enjoys

22  *Noerr-Pennington* immunity for *legitimate* petitioning activity. But the counterclaims allege that

23  Synopsys engaged in sham litigation, which would take the conduct outside of *Noerr*. *See Prof'l*

24  *Real Estate Investors*, 508 U.S. at 58 ("recourse to agencies and courts should not be condemned as

25  sham until a reviewing court has discerned and drawn the difficult line separating objectively

26  reasonable claims from a pattern of baseless, repetitive claims which leads the factfinder to

27  conclude that the administrative and judicial processes have been abused"); *Mercer Publ'g, Inc. v.*

28  *Smart Cookie Ink, LLC*, No. C12-0188JLR, 2012 WL 5499871, at *1 (W.D. Wash. Nov. 13, 2012)

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

1    (denying motion to dismiss where plaintiffs claimed immunity under the *Noerr-Pennington* doctrine

2    but defendants alleged the litigation was objectively baseless).  Finally, while the counterclaims do

3    allege in considerable detail that Synopsys has refused to provide meaningful technical cooperation

4    and has discontinued competitive products, this is pled as the mechanism by which competition was

5    harmed following an anti-competitive acquisition in violation of Section 7 of the Clayton Act (*see*

6    discussion at pp. 4–10, *supra*), not as independently wrongful conduct under Section 2 of the

7    Sherman Act.  For this reason, the cases relied on by Synopsys that decline to impose liability on a

8    monopolist for refusing to aid competitors are inapposite.  MTD at 18; *see, e.g.*, *Novell v. Microsoft

9    Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013); *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. Appx.

10   554, 556–57 (9th Cir. 2008); *Cal. Computer Products, Inc. v. Int'l Bus. Machines Corp.*, 613 F.2d

11   727, 744 (9th Cir. 1979); *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545 (9th

12   Cir. 1983).

13        Finally, Synopsys argues that ATopTech "has not sufficiently alleged monetary damages."

14   MTD at 19.  There is no pleading requirement requiring ATopTech to allege detailed monetary

15   damages under either the case Synopsys cites, *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp.

16   1203, 1213 (S.D.N.Y. 1981), or the controlling Ninth Circuit cases.  *See Eastman Kodak Co.*, 125

17   F.3d at 1202; *Glen Holly*, 352 F.3d at 372.  ATopTech has adequately pled its injury; the

18   quantification of that injury can await fact and expert discovery.

19        **E.    ATopTech Has Properly Alleged Attempted Monopolization**

20        To properly state a section 2 attempted monopolization claim, a plaintiff must allege "(1) a

21   specific intent to control prices or destroy competition; (2) predatory or anti-competitive conduct

22   directed at accomplishing that purpose; (3) a dangerous probability of achieving monopoly power,

23   and (4) causal antitrust injury."  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195,

24   1202 (9th Cir. 1997) (internal quotation marks omitted).  ATopTech has alleged all of these

25   elements for Count IV (Monopolization of the Verification Software Market), ACC ¶¶101–12, and

26   Count V (Monopolization of the Place-and-Route Software Market), ACC 113–24.  The only

27   separate argument raised by Synopsys in challenging the attempted monopolization claims is the

28   assertion that ATopTech has not pled a specific intent to monopolize.  MTD at 20.  But the

1    underlying facts supporting Synopsys' specific intent are reiterated throughout ATopTech's

2    counterclaims. *See supra* I.B. And, of course, "[s]pecific intent may be inferred from the

3    defendant's anticompetitive practices." *M&M Med. Supplies & Serv. v. Pleasant Valley Hosp.*, 981

4    F.2d 160, 166 (4th Cir. 1992) (en banc); *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*,

5    857 F.2d 55, 74 (2d Cir. 1988) ("[p]roof of . . . anticompetitive or exclusionary conduct, may be

6    used to infer . . . specific intent to monopolize").

7            **F.      ATopTech Has Properly Alleged a Cartwright Act Claim**

8            Because the Cartwright Act is patterned after the Sherman Act, *Marin Co. Bd. of Realtors,*

9    *Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976), ATopTech has properly alleged claims under the

10   Cartwright Act based on its illegal tying claims. *See* Cal. Bus. & Prof. Code § 16720(e)(3) (making

11   it unlawful to "settle the price of any article . . . so as directly or indirectly to preclude a free and

12   unrestricted competition . . . in the sale . . . of any such article").[9]

13           **G.      ATopTech Has Properly Alleged Unfair Competition Law Claims**

14           ATopTech's antitrust claims form the basis for its UCL claims. ATopTech has properly

15   alleged unlawful conduct by Synopsys in the form of violations of the Sherman Act, the Clayton

16   Act, and the Cartwright Act. Because the UCL borrows from all of these laws, *Cel-Tech*

17   *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186–187 (1999), ATopTech may

18   proceed under the UCL. In addition, even if for some reason Synopsys' conduct is not found to be

19   unlawful, ATopTech may proceed under the unfair prong of the UCL. *See id.* at 187 ("the word

20   'unfair' in [section 17200] means conduct that threatens an incipient violation of an antitrust law, or

21   violates the policy or spirit of one of those laws because its effects are comparable to or the same as

22   a violation of the law, or otherwise significantly threatens or harms competition").

23

24           **H.      ATopTech Should Be Allowed to Amend If the Court Finds Its Counterclaims
                        Insufficient.**

25           Finally, if for any reason the Court finds ATopTech's allegations insufficient, the Court

26   should allow ATopTech to amend its counterclaims. While it is true that ATopTech has voluntarily

27   ───────────────

28   [9] Because the Cartwright Act generally concerns agreements in restraint of trade (such as
     price fixing agreement and tying arrangements), ATopTech's Cartwright Act claim is based on the
     tying arrangement alleged in the complaint and not on the allegations of anticompetitive
     acquisitions or monopolization.

amended its counterclaims once, it did so prior to any ruling on a motion to dismiss and out of a

desire to avoid unnecessary motion practice.  Leave to amend is routinely allowed in these

circumstances and should be permitted here.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108

(9th Cir. 2003) ("leave to amend should be granted if it appears at all possible that the plaintiff can

correct the defect"); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102, 1005 (9th

Cir. 1999) (reversing the denial of leave to amend antitrust claims); *Axis Reinsurance Co. v.

Telekenex, Inc.*, No. 12-2979 SC, 2013 WL 1501468, at *1 (N.D. Cal. Apr. 10, 2013) (Rule 15(a)(2)

provides that courts should 'freely give leave [to amend] when justice so requires,' and the Ninth

Circuit has stressed Rule 15's policy of favoring amendments.").[10]

Because Synopsys has now added patent claims to the case in accordance with the April 9,

2015 Order, ATopTech will, as a practical matter, seek leave to amend  to assert defenses in

response to those patent claims.  Thus amendment will create no delay in the case.

## II.   THE COURT SHOULD DENY SYNOPSYS' MOTION TO STRIKE MATERIAL FROM ATOPTECH'S AMENDED ANSWER

"Motions to strike are generally not granted unless it is clear that the matter sought to be

stricken could have no possible bearing on the subject matter of the litigation."  *Rosales v. Citibank,

Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  A party may move to strike from a

pleading "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must

arise from litigating spurious issues by dispensing with those issues prior to trial."  *Fantasy, Inc. v.

Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  Here,

Synopsys argues that ATopTech's Amended Answer contains allegations that "paint Synopsys as

---

[10] The cases cited by Synopsys, MTD at 21, do not supports its position that leave to amend
should be denied.  *Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990), dealt with a former
city attorney who claimed his former employer deprived him of a constitutionally protected
property interest without due process of law. *Id.* at 369.  The Ninth Circuit noted that "any further
amendment to the complaint would likely prove futile" because "provisions of the municipal code
and the Personnel Rules do not give rise to a right of continued employment . . . no matter what
facts are alleged." *Id.* at 374.  *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1438
(9th Cir. 1986), dealt with a plaintiff who sought leave to amend to file a fourth amended complaint
after the district court announced its decision to grant summary judgment to the defendant.  *Id.* at
1437-38.  *Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563 (9th Cir. 1987) dealt with a plaintiff that
allowed his complaint to languish nearly a year before the district court without seeking to amend
and who did not move to have the judgment reopened after it was dismissed.  *Id.* at 570.

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

an anticompetitive monopolist."  MTD at 22.  This is unsurprising given that ATopTech alleges precisely that in its amended counterclaims.  Synopsys complains that ATopTech's description of Synopsys as the "dominant" competitor in the industry and its mention of Synopsys' acquisition of competitors are immaterial or impertinent to the issues raised in the case.  If the court denies Synopsys' Motion to Dismiss the Amended Counterclaims, however, the jury will hear these allegations whether the Court strikes them from ATopTech's Amended Answer or not.  They are not unrelated spurious issues that the parties will waste time or money litigating prior to trial. Rather, as ATopTech's Amended Counterclaims demonstrate, Synopsys' intellectual property claims against ATopTech and ATopTech's copyright misuse and antitrust counterclaims against Synopsys are deeply intertwined.  Synopsys' motion to strike those phrases from ATopTech's Amended Answer it feels "portray Synopsys in a negative light" should be denied.  MTD at 23.

## III.   THE COURT SHOULD DENY SYNOPSYS' MOTION TO STRIKE ATOPTECH'S UNCLEAN HANDS AFFIRMATIVE DEFENSES.

The affirmative defense of unclean hands is a recognized defense in copyright actions.  The defense applies to bar enforcement of a copyright "when a plaintiff commits wrongdoing 'of serious proportions.'"  *Saxon v. Blann*, 968 F.2d 676, 680  (8th Cir. 1992) (*quoting* 3 MELVILLE B. NIMMER, COPYRIGHT, § 13.09[B] at 13-148-49 (1991)).  The defense applies where this alleged wrongdoing "relates to the merits of the controversy between the parties" that is before the Court. *Id.*  See also *Lasercomb America Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990).  The Ninth Circuit has recognized this defense.  *Practice Management Info. Corp. v. Am. Med. Ass'n,* 121 F.3d 516 (9th Cir. 1997), amended 133 F.3d 1140 (9th Cir. 1998).

Synopsys misstates the law in arguing that the unclean hands defense in a copyright action is "limited to where 'plaintiff's evidence was false and that plaintiff was engaged in a scheme to defraud the public.'"  MTD at 24 (*citing Supermarket Homes, Inc. v. San Fernando Cnty. Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986)).  The court in *Supermarket Homes* was simply providing one example of unclean hands, not a definition of the doctrine.  *Id.*  The law is plain that an unclean hands defense is properly alleged when the defendant alleges "wrongdoing of serious proportions" by the plaintiff that "relates to the merits of the controversy between the parties."

*Saxon v. Blann*, 968 F.2d at 980.  The affirmative defense is not a limited one, as Synopsys incorrectly argues, but applies when serious wrongdoing by the copyright owner is alleged that relates to the merits of the dispute before the court (as opposed to a claim of unrelated wrongdoing by the plaintiff).  ATopTech's assertions of unclean hands by Synopsys plainly meet the applicable standard.

In its Eleventh Affirmative Defense, ACC ¶45, ATopTech asserts Synopsys' conduct that is described in the allegations of antitrust violations and copyright misuse constitutes copyright misuse and therefore unclean hands by Synopsys.  The unclean hands defense specifically incorporates the anti-competitive conduct alleged in the antitrust counterclaims and the claim of copyright misuse by Synopsys.  *See, e.g.*, ACC ¶¶64 – 67.  This is an allegation of serious wrongdoing by Synopsys that relates directly to the copyrights at issue and to the merits of this dispute.

The Ninth Circuit explicitly recognized copyright misuse as a valid affirmative defense to copyright infringement in *Practice Management*, 121 F.3d at 520-21.  *Practice Management* held that the copyright misuse affirmative defense may apply even if all of the formal requirements of an antitrust violation are not met.  *Id.* at 521.  Copyright misuse occurs whenever conduct by the plaintiff violates the public policy underlying the grant of a copyright, *id.*, by attempting to leverage the copyright to gain control over areas outside its limited monopoly.  *Id.* at 520.  That is exactly what ATopTech has alleged in this case.  ACC ¶45, 64–67.  ATopTech alleges that Synopsys is attempting to expand its claim of copyright to certain command  terms (and "formats") contained in its PrimeTime software product manuals to prevent competition in different products in a different market—place-and-route software—for which it has no valid copyright.  ACC ¶64.  Moreover, as described below in connection with the Ninth Affirmative defense, Synopsys is attempting to expand its copyright claim even to commonly used command terms that it did not originate.  ACC ¶35.  This attempt to use expand the role of its copyright protection beyond its legitimate bound violates the public policy behind the copyright law and constitutes copyright misuse and unclean hands.  The Eleventh Affirmative defense thus alleges a valid unclean hands defense.

The Ninth Affirmative Defense, ACC ¶43, also states a valid claim of unclean hands by Synopsys that arises directly from the copyrights at issue in this case and the dispute before the

1   Court.  ATopTech alleges that Synopsys has incorporated into its PrimeTime and GoldTime

2   Product Manuals numerous generic and widely-used "commands" that it did not originate but rather

3   took from those who went before.  ACC ¶¶35, 41, 43.  Many of these commands (and their related

4   options and parameters) are nothing more than functional command terms that software engineers

5   have commonly recognized for many years.  ACC ¶35.  Then, by entering into and ratifying the

6   CPLA contract and in its dealings with ATopTech related to that contract, Synopsys effectively

7   urged that these command terms and "formats" be used in Aprisa in order to make Aprisa

8   interoperable with GoldTime (and, by extension, with PrimeTime), in order to enhance the sales and

9   market share of Synopsys' own verification tools.  ACC ¶41.

10          In effect, Synopsys has incorporated into its Product Manuals many commonly used

11   command terms  (and related "formats") that it did not create and urged that others, specifically

12   including ATopTech, take steps to make place-and-route tools interoperable with GoldTime and

13   PrimeTime.  Having done so, it then claims that use of these very same common command terms

14   (and "formats") in place-and-route software constitutes copyright infringement simply because the

15   terms appear in Synopsys' copyrighted manuals for its verification software.  Synopsys is falsely

16   claiming ownership of common command terms that it did not develop and that it urged be used by

17   others in order to enhance interoperability with GoldTime and PrimeTime (and thus increase its

18   sales of those products) in order to prevent ATopTech from competing in the separate place-and-

19   route software market and thereby damage (and ultimately destroy) ATopTech.  This is a valid

20   factual allegation of "wrongful conduct of serious proportions" that relates directly to the merits of

21   the dispute before the Court.  These allegations therefore state a valid separate affirmative defense

22   of unclean hands.  Synopsys' attempt to avoid these defenses on a pleading motion has no merit and

23   its motion to strike these affirmative defenses should be denied.

24                                          **CONCLUSION**

25          For the foregoing reasons, Synopsys' Motion to Dismiss Amended Counterclaims and to

26   Strike Allegations and Affirmative Defenses should be denied.

27

28

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
TO DISMISS AMENDED COUNTERCLAIMS AND TO
STRIKE ALLEGATIONS AND AFF. DEFENSES

1   Dated:  April 13, 2015                    ARNOLD & PORTER LLP

2

3                                             By:  /s/  Paul Alexander
                                              Paul Alexander (#49997)
4                                             ARNOLD & PORTER LLP
                                              1801 Page Mill Road, Suite 110
5                                             Palo Alto, CA 94304-1216
                                              Telephone:  (650) 798-2920
6                                             Fax:  (650) 798-2999
                                              E-Mail:  Paul.Alexander@aporter.com
7
                                              Martin R. Glick (#40187)
8                                             Daniel Asimow (#165661)
                                              Willow Noonan (#277584)
9                                             Daniel Pastor (#297948)
                                              ARNOLD & PORTER LLP
10                                            Three Embarcadero Center, 7th Floor
                                              San Francisco, CA 94111-4024
11                                            Telephone:  (415) 471-3100
                                              Fax:  (415) 471-3400
12                                            E-Mail:  Marty.Glick@aporter.com
                                              E-Mail:  Daniel.Asimow@aporter.com
13                                            E-Mail:  Willow.Noonan@aporter.com
                                              E-Mail:  Daniel.Pastor@aporter.com
14
                                              Denise McKenzie (#193313)
15                                            Ryan M. Nishimoto (#235208)
                                              ARNOLD & PORTER LLP
16                                            777 South Figueroa Street, Forty-Fourth Floor
                                              Los Angeles, CA 90017-5844
17                                            Telephone:  (213) 243-4000
                                              Fax:  (213) 243-4199
18                                            E-Mail:  Denise.McKenzie@aporter.com
                                              E-Mail:  Ryan.Nishimoto@aporter.com
19
                                              Attorneys for Defendant
20                                            ATOPTECH, INC.

21

22

23

24

25

26

27

28

DEF. ATOPTECH'S OPP. TO SYNOPSYS'S MOTION
                                                                        TO DISMISS AMENDED COUNTERCLAIMS AND TO
                                                                        STRIKE ALLEGATIONS AND AFF. DEFENSES