UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., <br>     Plaintiff, <br> v. <br> ATOPTECH, INC, <br>     Defendant. | Case No. 13-cv-02965-MMC (DMR) <br><br> **ORDER RE: MOTION FOR SANCTIONS AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** <br><br> Re: Dkt. Nos. 272, 273 |

Plaintiff Synopsys, Inc. filed a motion for sanctions against Defendant ATopTech, Inc. Synopsys also filed a motion for leave to file a motion for reconsideration,[1] which is cross-referenced in the sanctions briefing. [Docket Nos. 273, 272.] Synopsys seeks sanctions against ATopTech for alleged failures to produce discovery as ordered by this court in orders dated February 21, 2015 and March 16, 2015. [Docket Nos. 232, 255]. Synopsys also requests that the court reconsider its March 16, 2015 order to the extent it denied Synopsys's motion to compel production of source code. The court finds that these matters are appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and without further briefing on the motion for leave to file a motion for reconsideration pursuant to Civil Local Rule 7-9(d).[2]

---

[1] Synopsys initially filed this second motion as a "Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge" before Judge Chesney, who is the presiding judge. *See* Docket No. 263. Judge Chesney found that the motion was "based on evidence not available for submission to Magistrate Judge Ryu prior to the order Synopsys now challenges and thus is, in essence, a motion for reconsideration based on newly obtained evidence." *Id. See also* Civil L.R. 7-9(b)(2) (party moving for reconsideration must show reasonable diligence and a basis for the reconsideration, such as "[t]he emergence of new material facts or a change of law occurring after the time of such order"). Judge Chesney then denied the motion without prejudice to Synopsys submitting to the undersigned a motion for leave to file a motion for reconsideration pursuant to Civil Local Rule 7-9(b). Synopsys's motion followed.

[2] The Civil Local Rules require a party seeking reconsideration of an earlier ruling to file a

## I. BACKGROUND

### A. Factual Allegations

Synopsys is a company in the electronic design automation ("EDA") and semiconductor intellectual property industry. Am. Compl. [Docket No. 43] at ¶ 2. It "develops, manufactures, sells and licenses products and services that enable designers to create, model and verify complex integrated circuit designs." *Id.* Synopsys owns a tool called PrimeTime that "provides customers with a trusted solution for timing sign-off, a required verification step before manufacturing" a digital circuit. *Id.* at ¶ 3. The PrimeTime software includes hundreds of proprietary input and output formats, including commands, variables, and parameters. *Id.* at ¶ 19.

In June 2011, Synopsys sued Extreme DA Corporation, which owned software called GoldTime. *Id.* at ¶ 22. Synopsys alleged that GoldTime copied the proprietary PrimeTime input and output formats. In October 2011, Synopsys acquired Extreme DA and now owns all rights to GoldTime. *Id.* at ¶ 24.

ATopTech is an EDA company that develops tools for the physical design of integrated circuits. *Id.* at ¶ 4. ATopTech makes a "place and route" tool known as Aprisa that can "talk to" or interoperate with the PrimeTime tool. *Id.* at ¶ 3; Docket No. 188 at 2-3. In June 2010, ATopTech licensed GoldTime from Extreme DA. Am. Compl. at ¶ 31. When Synopsys acquired Extreme DA in October 2011, Synopsys also acquired Extreme DA's rights under its license agreement with ATopTech. *Id.* at ¶ 31.

Synopsys contends that ATopTech's products, including Aprisa, unlawfully copy PrimeTime and GoldTime input and output formats. *Id.* at ¶¶ 9, 35. Synopsys also contends that ATopTech improperly accessed SolvNet—Synopsys' password-protected website that hosts software, user guides, and support documentation—to download proprietary information about the

---

motion for leave to file a motion for reconsideration. Civil L.R. 7-9(b). "No response need be filed and no hearing will be held concerning the motion for leave to file a motion to reconsider" unless the court determines otherwise. Civil L.R. 7-9(d). The parties' briefing on the motion for sanctions fully argues the source code issue that is the subject of the motion for reconsideration. For this reason, the court does not require additional briefing.

operation of PrimeTime and other Synopsys software. *Id.* at ¶ 41.

In the Amended Complaint, Synopsys brings claims for (1) federal copyright infringement, (2) patent infringement, (3) breach of contract and (4) breach of the implied covenant of good faith and fair dealing. *Id.* On July 22, 2014, pursuant to the parties' stipulation, Judge Chesney stayed the patent claims pending a decision by the Patent and Trial Appeal Board of the United States Patent and Trademark Office on whether to institute *inter partes* review of the patents-in-suit. *See* Docket No. 142. On April 9, 2015, Judge Chesney lifted the stay and granted Synopsys' motion to bifurcate the patent claims from its copyright and breach of contract claims. *See* Docket No. 280.

### B. Procedural History

With respect to the non-patent claims, Synopsys has sought a wide swath of information regarding the design and development of ATopTech's Aprisa and Apogee products, source code, and documents related to the input and output formats for those products. On August 28, 2014, this court ordered phased discovery, and instructed ATopTech to produce certain documents. Docket No. 166. In response, ATopTech produced unredacted copies of portions of its user guides and manuals for several versions of Aprisa and Apogee (specifically, the "Aprisa/Apogee Parameter Guide" and "Aprisa/Apogee Reference Manual"). Synopsys claims that this production revealed "over 500 instances of copying of Synopsys' input/output formats" (although ATopTech disputes both Synopsys' definition of "copying" and the way that Synopsys counted instances of copying). *See* Docket No. 193.

#### 1. February 12, 2015 Order

Subsequent to ATopTech's production of excerpts from product guides and manuals, Synopsys requested an order compelling further production. Specifically, Synopsys sought: (1) Synopsys and Extreme DA materials; (2) user and product documentation for Aprisa and Apogee; (3) design and development documentation for Aprisa and Apogee; (4) sales and marketing documentation for Aprisa and Apogee; and (5) source code and (6) executable files for Aprisa and Apogee. *See* Docket No. 193. The court held a hearing on these requests on February 12, 2015 and granted in part Synopsys's motion to compel, ordering the following:

> [1] ATopTech shall produce all Synopsys and Extreme DA materials in ATopTech's possession. However, if ATopTech believes a particular document is clearly outside the scope of this case, the parties shall meet and confer.
>
> [2] ATopTech shall produce all ATopTech user and product documentation for Aprisa and Apogee, but may redact information that is not relevant to input or output formats.
>
> [3] ATopTech shall produce all design and development documentation for Aprisa and Apogee that references the input/output formats of Aprisa or Apogee, as well as any references to GoldTime or PrimeTime, or the interoperability of Aprisa or Apogee with Synopsys' or Extreme DA's products.
>
> [4] ATopTech shall provide sales and marketing documentation for Aprisa and Apogee, including sales and license agreements.
>
> ATopTech must produce all of the above-referenced discovery by **March 16, 2015**.

Docket No. 232 at 1-2. The court also ordered the parties to meet and confer further regarding Synopsys's request for source code and executable files. The parties did so, but were unable to resolve their disputes without judicial intervention. The parties subsequently filed another joint discovery letter. *See* Docket No. 243.

### 2. March 16, 2015 Order

The court held a hearing on Docket No. 243 on March 12, 2015, and issued an order on March 16, 2015. Docket No. 255.

In that order, the court noted that "[a]t the hearing, ATopTech's counsel confirmed that the discovery produced to date contains all of the input formats for its Aprisa and Apogee software, and ATopTech could provide an attestation under oath to that effect." *Id.* The court therefore ordered that "by March 16, 2015, ATopTech shall produce an attestation under oath that the discovery produced to date contains all input formats for its Aprisa and Apogee software."

Next, the court found that the executable files for Aprisa and Apogee would reveal output formats not captured in ATopTech's user documentation and manuals, and ordered that "ATopTech shall produce to Synopsys a copy of the executable files for Aprisa and Apogee by March 16, 2015." *Id.* at 5.

Finally, after evaluating Synopsys's arguments, the court denied the request for the source

4

code, concluding as follows:

> The court therefore remains unconvinced that Synopsys is entitled to source code for the Aprisa and Apogee products, at least with respect to its copyright claim. Synopsys has not explained how the source code will reveal copied input or output formats that Synopsys will not already be able to identify through ATopTech's document production or forthcoming production of executables, or how the source code is relevant to Synopsys' case for damages or ATopTech's defenses . . . . Because production of source code would be duplicative of discovery Synopsys already possesses or will shortly possess, and the risk to ATopTech resulting from the exposure of its valuable proprietary information is significant, the court denies Synopsys' motion to compel ATopTech to produce source code for Aprisa and Apogee.

Docket No. 255 at 7-8.

Synopsys now moves for sanctions, arguing that ATopTech's production has violated the court's discovery orders. Synopsys also seeks reconsideration of the court's order denying its request for production of source code.

## II.  LEGAL STANDARDS

Synopsys moves for sanctions pursuant to Federal Rule of Civil Procedure 37 and the court's inherent power. Rule 37 authorizes the imposition of various sanctions for discovery violations, including a party's failure to obey a court order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A). If a party fails to obey an order to provide or permit discovery, the court "may issue further just orders," including by directing that certain facts be taken as established, prohibiting the disobedient party from supporting or opposing certain claims or defenses, striking pleadings, or treating the failure as contempt of court. Fed. R. Civ. P. 37(b)(2)(A). Instead of or in addition to these sanctions, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

A court may use its inherent power to impose sanctions for discovery abuses that may not be a technical violation of the discovery rules. *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988). "Regarding a court's inherent powers to sanction, the Supreme Court has said that such powers are to be used carefully." *Banga v. Experian Info. Solutions*, No. C-08-4147 SBA

(EMC), 2009 WL 2407419, at *1 (N.D. Cal. Aug. 4, 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.")). "[I]nherent-power sanctions [must] be preceded by a finding of bad faith, or conduct tantamount to bad faith." *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (citations omitted). "[R]ecklessness, of itself, does not justify the imposition of sanctions, [but] sanctions are available when recklessness is combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* (citation and formatting omitted).

### III.    DISCUSSION

Synopsys contends that ATopTech should be sanctioned because it violated this court's February 12, 2015 and March 16, 2015 orders by failing to fully produce several categories of discovery. The court considers each category in turn.

#### A.    User and Product Documentation for Aprisa and Apogee

On February 12, 2015, the court ordered ATopTech to "produce all ATopTech user and product documentation for Aprisa and Apogee, but [permitted ATopTech to] . . . redact information that is not relevant to input or output formats."

Synopsys contends that ATopTech violated this court's orders by producing only "seemingly random excerpts from post-2009[3] user guides," which omitted "roughly 80%" of the pages from each user guide. As an example, Synopsys submitted several versions of Release 13.11 of the Aprisa/Apogee User Guide, and points out that certain pages from Versions 2 and 4 were produced but the same pages from Version 3 were omitted, for no apparent reason. Mot. at 9; Michael Decl. Exs. 2-4.

With respect to the contention that ATopTech's production was "seemingly random," ATopTech explains that its documents differ in pagination from year to year, and not every page that contains a "challenged" input or output format appears in the same place in the same format

---

[3] ATopTech avers that its first user guides were published in 2009, and "no User Guides exist before 2009." Opp. at 5.

6

1  the following year. Opp. at 5.   ATopTech asserts that it "engaged contract attorneys at
2  considerable expense, and supervised them in the production of all pages of the User Guide,
3  Application Notes, and Error Guides that contain or refer to the input/output formats (or any of
4  them) that Synopsys accuses ATopTech of copying." *Id.*  ATopTech also explains that it
5  performed quality checks during this process; that Synopsys's specific examples of pages omitted
6  in different versions of the user guides can be explained by inadvertent error; that ATopTech
7  would have agreed to quality check its production again had Synopsys raised this issue prior to
8  this motion for sanctions; and that ATopTech will perform another quality check to confirm that
9  every page from the user documentation for Aprisa and Apogee containing a reference to the
10 challenged input and output formats has been produced.

11     ATopTech's description of its production and quality control process, while helpful, does
12 not address the larger question, which is whether it properly followed the court's order.  Although
13 ATopTech does not make a clear and direct statement, it appears to have interpreted the court's
14 order as requiring it to produce only those pages of the user guides that reference the specific
15 examples of alleged copying identified by Synopsys.  For example, ATopTech avers that it has
16 satisfied the court's order by producing "all pages from the ATopTech User Guides as well as
17 from its records entitled Application Notes and Error Guides that contain or refer to the
18 input/output 'formats' (meaning  the commands, options, parameters/variables and/or
19 objects/attributes) *that Synopsys accuses* ATopTech of copying." Opp. at 3.  *See also* Opp. at 5
20 (referring to production of pages containing references to "the *challenged* input or output
21 'format'".)  Similarly, ATopTech contends that most of the unproduced pages from the user
22 guides "relate to commands or functions for ATopTech's place and route product and not any of
23 the *accused* input/output formats." *Id.* at 4.

24     The court did not limit production to documents which refer to input or output formats
25 *specifically identified* by Synopsys as violating the copyright laws.  The February 12, 2015 order
26 permitted ATopTech to redact information "that is not relevant to input or output formats."  Thus,
27 ATopTech should produce information regarding all input or output formats, not just selected
28 ones.

7

1 In sum, ATopTech appears to have applied too fine a filter in deciding which documents should be produced in this category, and what properly could be redacted . ATopTech has not presented compelling reasons for withholding portions of the user guides. It raises a generic concern that ATopTech and Synopsys are "direct competitors" but does not explain why the production of user guides, which are commercially available and distributed to customers, would cause harm to ATopTech. Accordingly, in order to prevent any further misunderstanding about the scope of production, ATopTech shall produce complete copies of its user documentation to Synopsys by **May 22, 2015.** As to the issue of sanctions, the court's prior order permitted redaction, and ATopTech's conduct did not amount to a clear violation of the order. The court therefore declines to impose sanctions on ATopTech for this conduct.

**B.     Design and Development Documentation for Aprisa and Apogee**

The court ordered ATopTech to "produce all design and development documentation for Aprisa and Apogee that references the input/output formats of Aprisa or Apogee, as well as any references to GoldTime or PrimeTime, or the interoperability of Aprisa or Apogee with Synopsys' or Extreme DA's products." [Docket No. 232.] Synopsys contends that ATopTech's production is insufficient and sanctionable.

On March 16, 2015, ATopTech produced "Release Notes" for Aprisa and Apogee, dated from 2009 onward. Synopsys contends that Release Notes are not design and development documents because their name suggests that they are generated at the conclusion of the development and design cycle to explain the software to users (not developers). Mot. at 9; Walker Decl. at ¶ 22. Synopsys also contends that Aprisa was released in 2006, so the production of Release Notes dating from 2009 is insufficient. Finally, Synopsys contends that ATopTech produced only excerpts of the Release Notes, rather than complete copies.

In response, ATopTech explains the history of the company and the origin of the Release Notes. ATopTech states that it was formed in 2004 by four individuals, two of whom were primarily responsible for writing the software that forms ATopTech's only basic product,

1    Aprisa/Apogee.[4]  Opp. at 6.  According to ATopTech, its "first major sale of any product occurred
2    in 2008" and before that time "the engineers did not keep separate records of their work in
3    developing their products."  ATopTech describes the development of its recordkeeping system as
4    follows:

> In 2008, when it actually had a major customer, ATopTech created a record-keeping system that it referred to as "Release Notes."  These were its basic "design and development" documents up until 2008.  As its work with its first major customer began to call for product changes and improvements, ATopTech began a formal database system to keep track of any change made in the software, including who requested it and who put it into place.

10   Opp. at 6.  This formal database is called the JIRA database.  The earliest JIRA entry is dated July
11   2008, although the database "includes archived notes for the period prior to 2008."  *Id.* at 7.
12   Among other things, the JIRA database contains information about the identities of the engineers
13   who made certain changes and the identities of customers who requested those changes.  *Id.*  On
14   March 31, 2015, two days before Synopsys filed its motion for sanctions, ATopTech produced
15   additional materials related to the design and documentation for Aprisa and Apogee from the JIRA
16   database.  ATopTech avers that it has searched the JIRA database and produced "every entry in
17   the entire JIRA database that contains or refers to any of the input/output 'formats' that Synopsys
18   alleges that ATopTech copied."  *Id.*  Thus, according to ATopTech, it has "produced all the design
19   and/or development documents it has been able to locate that pertain to the input/output formats at
20   issue in this case."  *Id.*
21       In its reply brief, Synopsys contends that it still has problems with ATopTech's
22   production.  First, ATopTech's production is restricted to design and development documentation
23   "that references the input/output formats of Aprisa or Apogee."  Synopsys seeks production of all
24   portions of the Release Notes and the JIRA database, even if they do not refer to the allegedly
25   copied formats.  ATopTech has not argued that the production of all Release Notes (subject to the

---

[4] Synopsys notes that ATopTech is no longer a small company, since it now employs over a hundred people, including approximately 60 engineers.  *See* Reply at 5.  However, there is no dispute that ATopTech was small during the time it was initially designing and developing Aprisa and Apogee.

9

1  parties' stipulated protective order) will be burdensome or oppressive, or would unduly jeopardize
2  commercially sensitive information.  The court therefore orders ATopTech to produce complete
3  copies of all of the Release Notes for Aprisa and Apogee by **May 22, 2015**.  This will avoid the
4  "overfiltering" problem described in the earlier section.

5  With respect to the JIRA database, the court notes again that it is inappropriate to limit
6  production to only portions of the JIRA database which refer to input or output formats
7  specifically identified by Synopsys as violating copyright laws.  **By May 22, 2015,** ATopTech
8  must produce all JIRA documents that reference any input or output format of Aprisa and Apogee,
9  regardless of whether they were specifically identified by Synopsys as having been copied.  To the
10 extent that Synopsys argues that it is entitled to more than that, it appears from the parties'
11 briefing that they have not adequately met and conferred about the JIRA database.  They did not
12 provide the court with any information about JIRA's size and content.  Accordingly, the court
13 orders the parties immediately to meet and confer about the issue, using the rulings in this order as
14 a benchmark.

15 Next, Synopsys notes that the JIRA printouts reference "requirement spec" documents,
16 which Synopsys believes are "another type of design and development documentation that has
17 been withheld."  Reply at 4.  Because Synopsys raises this question on reply, ATopTech has not
18 been given the opportunity to respond and potentially resolve the point.  The issue therefore is not
19 ripe for adjudication.  The parties are ordered immediately to meet and confer about this issue.

20 Finally, ATopTech avers that it did not have a formal recordkeeping system for design and
21 development documentation until 2008, such that information prior to 2008 "would be reflected in
22 the e-mail exchanges back and forth, and at this stage, neither party has set forth a protocol for the
23 discovery of e-mail records."  Opp. at 6.  Synopsys's reply brief notes that the parties have already
24 agreed to an ESI discovery protocol, so ATopTech's refusal to search through emails for design
25 and development documentation is unwarranted.  It appears that the parties are raising this issue
26 for the first time in the briefing without first meeting and conferring about it.  Again, it is not ripe
27 for judicial intervention, and the parties must immediately meet and confer.

28 ATopTech is ordered to produce full copies of all of its Release Notes for Aprisa and

10

Apogee **by May 22, 2015**. By the same deadline, ATopTech must also produce all JIRA documents that were withheld because they did not refer to input or output formats specifically accused by Synopsys. The parties shall meet and confer immediately about (1) whether other portions of the JIRA database should be produced; (2) the "requirement spec" issue; and (3) design and development documentation that may exist in emails.

As ATopTech's production in this category did not clearly violate the court's order, sanctions are not warranted.

### C. Sales and Marketing Documentation for Aprisa and Apogee

The court also ordered ATopTech to "provide sales and marketing documentation for Aprisa and Apogee, including sales and license agreements." Docket No. 232. Synopsys contends that ATopTech's production of sales[5] documents violated the court's order because ATopTech has only produced a one-page spreadsheet created for purposes of this litigation.

In response, ATopTech notes that it "was (and is) an extremely small company with little in the way of a marketing budget . . . . [and] ATopTech has not had a great many sales and its revenue has been quite limited, and thus is readily presented in a spreadsheet." Opp. at 7. The spreadsheet contains revenue by quarter for the years 2004-2014 and identifies all of ATopTech's customers for Aprisa and Apogee products by name and year. *See* Michael Decl. Ex. 5. ATopTech contends that, based on the parties' communications, it understood that a summary spreadsheet of revenue would be sufficient to meet Synopsys's discovery request. Nonetheless, in further discussions subsequent to the filing of the instant motions, ATopTech agreed to provide Synopsys with annual financial statements. Opp. at 7.

In its reply brief, Synopsys notes that ATopTech has not yet provided the promised financial statements. By **May 22, 2015,** ATopTech shall produce its annual financial statements to Synopsys. The court finds no basis for issuing sanctions.

### D. Executable Files for Aprisa and Apogee

At the time that Synopsys filed its motion for sanctions, ATopTech had produced one

---

[5] Synopsys appears to take issue only with ATopTech's production of sales-related material, not its production of marketing material or licensing agreements.

11

executable file for one version of its combined Aprisa and Apogee software. Mot. at 11. Synopsys seeks sanctions because it believes "ATopTech . . . was required to submit **all** versions of its executable file, not just the single version it selected to produce." *Id.* (emphasis added).

This court's March 16, 2015 order stated that "ATopTech shall produce to Synopsys a copy of the executable files for Aprisa and Apogee by March 16, 2015." Docket No. 255 at 5. The order did not specify the versions of those programs for which ATopTech was required to produce the executable files, and the parties did not raise the issue or argue the point at the hearing leading up to that order. Indeed, ATopTech notes that at the hearing preceding the March 16, 2015 order, "Synopsys did not say that it was demanding production of executable file versions going back to the beginning of the company," and since Synopsys had produced an executable file for only one version of its software, ATopTech made a corresponding production of its executable file. Opp. at 8. Because the earlier order did not specify which executable files ATopTech was required to produce, the court declines to impose sanctions.

ATopTech states that following further meet and confer sessions, ATopTech has "now provided all executables for all releases of Aprisa/Apogee. Only minor bug fixes and the like have not been provided." *Id.* at 8, n. 1. *Accord* Reply at 4 ("On April 16 . . . ATopTech produced additional executable files."). In its reply brief, Synopsys contends that ATopTech's supplemented production is still incomplete because ATopTech has only produced releases dating to 2007 "despite its CEO's admission that Aprisa first 'shipped to customers in December 2006.'" Reply at 4. The court therefore orders ATopTech to produce executable files for all versions of Aprisa and Apogee, including any from prior to 2007, by **May 22, 2015**.

**E.    Source Code for Aprisa and Apogee**

Synopsys seeks sanctions for what it describes as ATopTech's "false" and "misleading" representations to the court regarding whether ATopTech's user documentation and/or executable files contained all of the input formats[6] in the Aprisa/Apogee software. The gist of Synopsys'

---

[6] The representations made by ATopTech regard only whether all of the *input* formats can be found in the documentation and executable files. The parties do not raise any disputes about ATopTech's representations about the *output* formats of Aprisa/Apogee.

12

1  complaint is that in earlier hearings and filings, ATopTech represented to the court that all input

2  formats for Aprisa/Apogee could be found in its user documentation, but now asserts that all input

3  formats for Aprisa/Apogee can be found in its user documentation *and/or* executable files.

4        The March 16, 2015 order states: "At the hearing, ATopTech's counsel confirmed that the

5  discovery produced to date contains all of the input formats for its Aprisa and Apogee software,

6  and ATopTech could provide an attestation under oath to that effect. Accordingly, the court

7  orders that . . . ATopTech shall produce an attestation under oath that the discovery produced to

8  date contains all input formats for its Aprisa and Apogee software." Docket No. 255 at 4. On

9  March 16, 2015, ATopTech filed the declaration of Henry Chang, the Vice President of Product

10  Management for ATopTech, who avers that "all commands, variables and parameters in the

11  Aprisa/Apogee software are found in the Reference Manuals [and] Parameter Guides [produced

12  prior to March 16, 2015] *and/or available in the executable code files being provided today.*"

13  Docket No. 254-1 at ¶ 2 (emphasis added).

14        The parties devote substantial argument to dissecting ATopTech's earlier statements to the

15  court, and debating whether or not they were misleading. Synopsys cites to ATopTech's

16  statements in discovery letters and during the March 12, 2015 hearing, in which ATopTech

17  appears to represent that all of the input formats for Aprisa/Apogee could be found in the user

18  documentation. In response, ATopTech tacitly acknowledges that it did not provide fully accurate

19  information to the court by characterizing its representations as "substantially correct." The court

20  finds that ATopTech's later attestation— that all input formats could be found in the user

21  documentation *plus* the executable files—amounted to a change in the representation that it

22  initially made to the court.

23        Synopsys seeks sanctions, in the form of compelled production of the source code and

24  payment of attorneys' fees, for ATopTech's earlier inaccurate representations to the court.

25  However, ATopTech's earlier representations do not amount to disobedience of a court order or a

26  failure to produce discovery, and are therefore not subject to sanctions under Rule 37. With

27  respect to sanctions pursuant to the court's inherent power, the court notes that without question,

28  ATopTech should have attended to the accuracy of its statements to the court. Inaccuracies

weaken the court's confidence in a party's representations; intentional misrepresentations are subject to sanctions. However, Synopsys has not demonstrated that ATopTech acted in bad faith by making its earlier representations. For this reason, the court cannot exercise its inherent authority to impose sanctions. *See Gomez*, 255 F.3d at 1134 (finding of bad faith or conduct tantamount to bad faith required for imposition of inherent-power sanctions).

ATopTech's prior inaccurate representation to the court forms at least part of the basis for Synopsys's bid for reconsideration of the court's order denying production of source code. To the extent Synopsys argues that ATopTech's changed representation supports a reversal of the court's earlier order, the court disagrees. That order was premised on several rationales, described above: (1) Synopsys did not require source code to access the input and output formats in Aprisa/Apogee because they are available through other, less intrusive discovery; (2) source code is not relevant to Synopsys's case for actual or statutory damages stemming from ATopTech's alleged copyright infringement; and (3) source code is not relevant to Synopsys's case against ATopTech's anticipated *de minimis* defense. The revelation that all input formats can be located in a combination of the user documentation and the executable files, rather than just the user documentation alone, changes nothing.

However, Synopsys also argues that ATopTech's changed representation is still inaccurate. On this point, Synopsys provides the declaration of Dr. Martin Walker. Dr. Walker claims to have identified "numerous commands" that are not found in either ATopTech's user manuals or "identified by following ATopTech's instructions for accessing commands through the executable."[7] Mot. Reconsideration at 5; Walker Decl. at 9-17. Dr. Walker asserts that he was able to identify some formats through his own examination of the executable file. Even so, Synopsys argues that it is entitled to the source code because Dr. Walker believes it will reveal additional input formats not available through the user documentation and executable file. Walker Decl. at ¶¶ 44-45.

---

[7] Synopsys contends that the information provided by Dr. Walker constitutes "[t]he emergence of new material facts ... occurring after the time of [the court's prior] order" that provides the basis for Synopsys' motion for reconsideration. *See* Civil L.R. 7-9(b)(2).

14

In response, ATopTech contradicts Dr. Walker's assertion that Synopsys needs the source code in order to reveal all of the input formats in Aprisa/Apogee. ATopTech has provided two declarations, from Henry Chang and Dr. Andrew Kahng. Chang explains in great detail how all of the input formats for Aprisa/Apogee can be found in the discovery produced to date. *See, e.g.,* Chang Sanctions Decl. at ¶ 12 ("Dr. Walker[] [argues] … that one cannot see the actual commands, including the actual options, objects, and default values, used in Aprisa/Apogee without access to the source code for Aprisa/Apogee. This is not correct. The executable code does in fact provide to the user the actual commands, including options, objects, and default values, used by Aprisa/Apogee. This includes not only the 'formats' for each of the commands that are provided to customers, but also all the 'formats' used by ATopTech engineers. Nothing is omitted.").[8]

The court is persuaded by Chang's thorough declaration that the input formats in Aprisa/Apogee are all available through the user documentation plus the executable files.[9]

---

[8] Specifically, Chang explains that ATopTech provided Synopsys with license keys so that Synopsys could access commands available to ATopTech's customers, as well as internal commands and "hidden" commands available only to ATopTech's engineers. Chang Sanctions Decl. at ¶¶ 6, 10. ATopTech also provided Dr. Walker with instructions on how to use the generic help commands in the software (the "help -d" and "help *" commands), which are "typical commands normally used in the EDA industry for locating the contents of executable files." Chang Sanctions Decl. at ¶ 7. The commands identified by Dr. Walker as not being accessible through the help commands in the Aprisa/Apogee software are "alias names for existing commands" (which the court notes Dr. Walker was nonetheless able to access through the executable file alone, regardless of whether he could access them through the help functions). Chang Sanctions Decl. at ¶ 8; Walker Decl. at ¶ 37. Chang also explains that despite Dr. Walker's claim that he cannot identify the options for each command using the help functions, (*see* Walker Decl. at ¶¶ 38-39), "[i]n fact, all such options are available from the executable code . . . . [and] [a]ll these options are present in the executable code and can be accessed by using the 'help-d' for each command." Chang Sanctions Decl. at ¶ 9. *See also* Kahng Decl. at ¶ 28 ("[I]t is plainly visible upon first typing the commands that the Aprisa tool outputs considerable information from 'help -d' and 'help *', contrary to Dr. Walker's claims of 'missing information.'"). Chang also notes that "If [Dr. Walker] found himself unable to locate these options, a simple phone call would have again remedied the issue." Chang Sanctions Decl. at ¶ 9. As for Dr. Walker's contention that the executable file he reviewed would not contain "deprecated" commands—i.e., commands present in previous versions of the software but omitted in subsequent versions—this argument is improper on a motion for reconsideration since it is one that Synopsys could have made prior to the Court's March 16, 2015 order, *see infra* n. 9, and in any event ATopTech has provided (or will shortly provide) executable files for all previous versions of Aprisa/Apogee, where these deprecated commands will appear. Walker Decl. at ¶ 41; Chang Sanctions Decl. at ¶ 11.

[9] The court did not rely on Dr. Kahng's declaration because, unlike the Chang declaration, it does not squarely address the question of whether Synopsys needs the source code to discover all of the

15

Synopsys does not dispute Chang's explanation of how to locate all the input formats in the Aprisa/Apogee executables.[10] As such, Synopsys has not convinced the court that new material facts have emerged since its March 16, 2015 order that drive a different outcome. The discovery produced by ATopTech to date gives Synopsys access to all of the input and output formats in Aprisa/Apogee, such that the production of commercially sensitive source code would be duplicative.[11] The court therefore **denies** Synopsys's motion for leave to file a motion for reconsideration, and finds no basis for sanctions.

## IV.  CONCLUSION

In conclusion, the court **denies** Synopsys's motion for leave to file a motion for reconsideration and **denies** Synopsys's motion for sanctions. The court orders ATopTech to produce the following by **May 22, 2015:** (1) complete versions of its user documentation; (2) complete copies of the Release Notes for Aprisa and Apogee; (3) documents from JIRA withheld on the basis that they did not relate to input or output formats specifically accused by Synopsys; (4) annual financial statements; and (5) executable files for all versions of Aprisa and Apogee, including any from prior to 2007. The parties are ordered immediately to meet and confer about

//

//

---

Aprisa/Apogee input formats. Dr. Kahng's declaration explains how he was able to confirm that specific commands—approximately 700 commands from Synopsys's PrimeTime software and 100 commands identified by Synopsys as having been copied by ATopTech—could be located using the Aprisa/Apogee executable without requiring access to source code. Kahng Decl. at ¶¶ 31-53.

[10] Synopsys raises additional arguments that are not appropriate on a motion for leave to file a motion for reconsideration because they are not "new material facts" emerging after the date of the March 16, 2015 order. For this reason, the court will not consider these arguments. Synopsys contends that discovery of source code is necessary so that Synopsys can view the programmers' comments within the source code, descriptive names in the source code, and "declaring" code, all of which Synopsys contends may "provide additional information that cannot be found in the documentation or the executable." *See* Walker Decl. at ¶¶ 46, 48-49; Opp. at 6. But these are all arguments that Synopsys could have made prior to the court's March 16 Order. Even so, they are not particularly persuasive, as Synopsys does not explain how unexecuted comments in the source code, descriptive names, or declaring code could assist it in making its copyright infringement case.

[11] This ruling only applies to the non-patent claims in this lawsuit.

16

(1) whether further production from the JIRA database is warranted; (2) the "requirement spec" issue; and (3) design and development documentation that may exist in email form.

**IT IS SO ORDERED.**

Dated: May 18, 2015

_____
Donna M. Ryu
United States Magistrate Judge