United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SYNOPSYS, INC.,

Plaintiff,

v.

ATOPTECH, INC.,

Defendant.
_____________________________________/

No. C-13-2965 MMC

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Before the Court is plaintiff Synopsys, Inc.'s ("Synopsys") "Motion for Leave to File Second Amended Complaint," filed August 6, 2015, pursuant to Rule 15 of the Federal Rules of Civil Procedure. Defendant ATopTech, Inc. ("ATopTech") has filed opposition, to which Synopsys has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

ATopTech and Synopsys sell software tools for the design and testing of integrated circuits ("chips"). Because of the complexity of modern chip design, engineers cannot design the physical layout of a chip without the aid of what is known as "place-and-route"

[1]By order filed September 9, 2015, the Court found the matter appropriate for decision on the parties' respective written submissions, vacated the hearing scheduled for September 11, 2015, and took the matter under submission.

software. Synopsys offers a place-and-route software product, called IC Compiler, which competes with ATopTech's place-and-route software, Aprisa.[2]

Verification software, also necessary in modern chip design, is used to verify the timing of the electronic signals of an integrated circuit design by testing its electrical and timing performance under various operating conditions. Synopsys offers a verification software product called PrimeTime. Extreme DA was a company that sold a verification software product called GoldTime. In 2011, Synopsys acquired Extreme DA. Although ATopTech does not sell a verification software product, its place-and-route software must be able to work in conjunction with verification software in order to compete in the market.

In the operative complaint, the Amended Complaint, Synopsys asserts seven causes of action, alleging claims for copyright infringement (Count I), patent infringement (Counts II, III, IV, and V), breach of contract (Count VI), and breach of the implied covenant of good faith and fair dealing (Count VII).[3] In support of Count I, Synopsys alleges ATopTech had access to its verification software, specifically, its "PrimeTime and GoldTime software and user documentation" (see Am. Compl. ¶ 50), and "copied portions of" that software "in the form of proprietary GoldTime and PrimeTime input and output formats" (id. ¶ 53).[4]

By the instant motion, Synopsys first seeks leave to amend Count I to add a claim that ATopTech "infringed Synopsys'[s] copyrights by copying input and output formats from Synopsys's competing place-and-route product (IC Compiler)." (Pl.'s Mot. 4:11-17; see also Michael Decl. Ex. A, at 12.) Specifically, Synopsys alleges that ATopTech used the IC

---

[2] ATopTech also makes a related product called Apogee. As "[t]he parties have generally regarded these as a single product" (see Def.'s Opp. 5 n. 6), and ATopTech uses the term Aprisa to "refer[] to both programs" (id.), the Court likewise will do so.

[3] Counts VI and VII are mistitled Counts XI and XII.

[4] "Input formats" are "proprietary commands, options, variables, parameters, objects and attributes, as well as data types and default values" that a user enters into a software program. (Michael Decl. Ex. A. ("Proposed Second Amended Complaint") ¶ 19.) "Output formats" are the "feedback" that a software program provides to the user. (See id.; see also Order, filed March 16, 2015 (describing output formats as "the format or the general appearance and type of information that is provided to the user as a display or as a file").)

Compiler formats in ATopTech's Aprisa software product. Additionally, Synopsys moves to add a count of replevin, by which it seeks "to repossess over 220,000 pages of Synopsys documents" allegedly in ATopTech's possession. (See Pl.'s Mot. 4:18-20; see also Proposed Second Amended Complaint ¶¶ 115-21.)

## LEGAL STANDARD

Leave to amend a pleading shall be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(1)(B).[5] Although Rule 15 generally "favor[s]" amendment, "liberality in granting leave to amend is subject to several limitations." Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989). In determining whether to allow amendment, a district court considers four factors: "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). Such factors are not given equal weight; prejudice to the opposing party is the most important factor, see Eminence Capital, LLC. v. Apseon, 316 F.3d 1048, 1052 (9th Cir. 2002), and delay alone is insufficient reason to deny leave to amend, see Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999).

Here, ATopTech does not contend the proposed amendments are futile. The Court thus considers the three disputed factors: bad faith, undue delay, and prejudice.

## DISCUSSION

### A. Bad Faith

ATopTech argues that the instant motion is made in bad faith because, according to ATopTech, Synopsys's reason for seeking to amend is to salvage its case in light of a

[5] ATopTech contends Synopsys must make a showing of "good cause" pursuant to Rule 16 in order to amend. The Court disagrees. A party must show good cause under Rule 16 only when granting the party's motion would alter a scheduling order. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607 (9th Cir. 1992) ("Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled.") (emphasis added). Here, the scheduling order did not set a deadline for amendment of the pleadings. (See Pretrial Preparation Order, filed September 19, 2014.) Consequently, allowing Synopsys to amend would not require a change to the scheduling order, and Rule 16 is inapplicable.

statement made during discovery by Synopsys's Vice President of Sales, which statement, ATopTech asserts, precludes any recovery of damages based on PrimeTime or GoldTime. (See Def.'s Opp. 15.) Synopsys responds that ATopTech's argument is "premised on a fundamental misunderstanding of copyright damages." (See Pl.'s Reply 10:6-7.)

The Court, however, need not resolve the parties' dispute as to the scope of damages at this time, as ATopTech has cited no authority holding a party's state of mind, which, needless to say, could encompass a variety of considerations, is relevant when that party moves to amend to add a claim for which it can articulate factual and legal support. Courts have found bad faith, for example, where a party seeks to amend in order to prolong the litigation "by adding new but baseless legal theories," see Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 881 (9th Cir. 1999), or by filing "repetitious motions," Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1520 (9th Cir. 1983). No such showing has been made here.

Accordingly, the Court does not find the instant motion is made in bad faith, and next turns to the remaining factors.

**B. Undue Delay**

To assess whether a party has unduly delayed in seeking to amend, the Court looks to "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006). If, at the time of the initial pleading, the moving party was unaware of the facts underlying the proposed amendment, the Court considers the amount of time that has passed between the time at which the party "obtain[ed] a relevant fact" and the time at which the party "seek[s] a leave to amend." See id. (finding undue delay based on amount of time between date buyer "first discovered the possibility" product it purchased was counterfeit and date it sought leave to amend to add breach of contract claim predicated thereon).

Here, in its proposed replevin claim, Synopsys alleges "ATopTech has made unauthorized copies" of proprietary Synopsys material (Proposed Second Amended

Complaint ¶ 118). In its original complaint, filed June 26, 2013, Synopsys alleged that ATopTech "engaged in unauthorized access to and downloading of proprietary articles, application notes, FAQs, multimedia files, and other documentation describing proprietary details and operation of PrimeTime and IC Compiler." (Pl.'s Am. Compl. ¶ 41.) Thus, at the time of the original pleading, Synopsys knew, or, at a minimum, was on notice as to, "the facts and theories" that form the basis for its proposed replevin claim. See AmerisourceBergen Corp., 465 F.3d at 953.

In any event, ATopTech argues, Synopsys should have discovered both of its new claims by at least November 2013. As evidence in support thereof, ATopTech has submitted a Synopsys slide show presentation dated November 25, 2013, which exhibit, ATopTech argues, shows that, sometime prior to that date, Synopsys became aware of the command names used in Aprisa. (See Alexander Decl. Ex. B, at 1.) The Court agrees. Although Synopsys responds that "[n]one of the command names in that presentation are contained in the list of input formats identified as copied from IC Compiler" (see Suppl. Michael Decl. ¶ 3), the context in which they appear indicates Synopsys would not have had knowledge of those particular command formats without also having knowledge of the command formats that Synopsys now alleges were copied.

Even assuming, arguendo, Synopsys at the time of the above-referenced presentation did not have knowledge of the commands here at issue, ATopTech contends, and Synopsys does not dispute (see Suppl. Michael Decl. ¶ 4), that Synopsys was aware of Aprisa's input and output formats no later than a year later, by November 13, 2014, when ATopTech produced to Synopsys in the course of discovery unredacted versions of Aprisa's Reference Manual and Parameter Guides. Synopsys argues that its delay in reviewing the Manual and Guides is excusable because those materials were marked "Highly Confidential - Restricted to Outside Counsel of Record Only" (id.) and could not be turned over to an expert for analysis. The Court is not persuaded. Although the extent of the alleged copying is not specified in Synopsys's motion or Proposed Second Amended Complaint, both of which refer to the copying of "input and output formats" (see, e.g., Pl.'s

Mot. 4 (asserting ATopTech infringed Synopsys's copyrights by "copying input and output formats"); Proposed Second Amended Complaint ¶ 54 (alleging ATopTech "copied significant portions of the IC Compiler, PrimeTime, and GoldTime input and output formats")), ATopTech contends, and Synopsys has not disputed, that Synopsys's claim is predicated on an assertion that ATopTech copied the names of, rather than the underlying code for, the formats. (See Def.'s Opp. 5:6-7 (asserting "there is no claim that a single line of code relating to any command was copied"); see also Order, filed March 16, 2015, at 3:7-9, 7:27-8:4 (denying Synopsys's request for production of Aprisa's "source code"; finding source code irrelevant to copyright cause of action alleging infringement of "input/output formats").) Given the nature of such proprietary material, Synopsys fails to show it needed an expert opinion in order to determine whether it had a claim for copyright infringement based thereon.

Moreover, Synopsys admits that "the facts underlying Synopsys' new allegations . . . surfaced after ATopTech's March 16, 2015 production" of documents (see Pl.'s Mot. 8:20-21), namely, "product manuals, product release notes, and other additional technical documentation for IC Compiler, PrimeTime and other Synopsys products." (Michael Decl. ¶ 5.) As noted, Synopsys did not file its motion for leave to amend until August 6, 2015, nearly five months later and more than two months after the close of fact discovery on June 30, 2015. Synopsys states it spent the intervening months "confirming its suspicion" that ATopTech had copied IC Compiler. (See Pl.'s Mot. 8:25; see also Michael Decl. ¶ 9.) Given the impending discovery deadline, however, Synopsys should have known it did not have the option of an extended confirmation process. Consequently, even if measured from Synopsys's preferred date of March 16, 2015, the Court finds a delay of nearly five months to "confirm" its claims is undue. See EPIS, Inc. v. Fidelity and Guar. Life Ins., 156 F. Supp. 2d 1116, 1132-33 (N.D. Cal. 2001) (denying leave to amend where moving party did not file motion until three months after deposition revealed facts underlying proposed amendment and fact discovery would have to be reopened).

In sum, "[a]lthough delay is not a dispositive factor in the amendment analysis, it is

relevant," Lockheed Martin Corp., 194 F.3d at 986, and, in this instance, weighs against amendment.

**C. Prejudice**

"Prejudice is the touchstone of the inquiry under rule 15(a)." Eminence Capital, 316 F.3d at 1052. If no showing of prejudice is made, there is a presumption in favor of granting leave to amend. See id. The party opposing amendment bears the burden of showing prejudice. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987).

ATopTech argues it would be prejudiced if the motion were granted because the proposed amendment would necessitate the reopening of both fact and expert discovery, and "the Court's schedule would be torpedoed." (Def.'s Opp. 1:9-10.) Numerous courts have held that allowing a party to amend to introduce a new theory of liability requiring additional discovery at a late stage of litigation is unduly prejudicial. See, e.g., Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989) (holding "[t]o put [defendant] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would cause undue prejudice") (collecting cases) (internal quotation and citation omitted).

Here, Synopsys's motion comes at a late stage of the proceedings. Fact discovery closed on June 30, 2015 (see Pretrial Preparation Order, filed September 19, 2014), five weeks before Synopsys filed the instant motion. Further, the deadline to designate experts, both initial and rebuttal, has passed, and expert discovery will close at the end of this month. (See id.) If Synopsys is allowed to amend to allege claims based on a different product than that on which its claims to date have been based, ATopTech will need to conduct additional fact and expert discovery, which, as ATopTech points out, would necessarily affect not only the February 1, 2016, trial date, but the entire pretrial schedule under which the parties and the Court have been proceeding for the past twelve months. (See id. (setting trial and pretrial dates, including October 30, 2015, dispositive motion filing deadline)); see also EPIS, Inc., 156 F. Supp. 2d at 1133 (finding defendant would be

prejudiced where "non-expert discovery [would] have to be reopened and the expert discovery deadline extended" to allow for discovery on plaintiff's new theories).

District courts "set schedules and establish deadlines to foster the efficient treatment and resolution of cases," and, as the Ninth Circuit has observed, "[t]hose efforts will be successful only if the deadlines are taken seriously by the parties." See Wong v. Regents of University of California, 410 F.3d 1052, 1060 (9th Cir. 2004) (holding district court did not abuse its discretion where it precluded plaintiff from introducing opinions of expert witnesses identified three weeks after discovery deadline and eight and a half months before scheduled trial date); see also Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming district court's finding of prejudice where discovery closed five days after plaintiff moved to amend).

Synopsys contends that ATopTech should not be entitled to conduct further discovery by reason of the proposed amendment because Synopsys notified ATopTech by e-mail on May 27, 2015, that it intended to amend to add a claim based on IC Compiler, which e-mail, according to Synopsys, alerted ATopTech to the need to begin conducting discovery about IC Compiler at that time.[6] Synopsys, however, cites to no authority supporting its assertion that ATopTech, upon receiving Synopsys's e-mail, was obligated to proceed with full discovery into the contemplated claims or else risk losing the opportunity to do so. Indeed, as ATopTech points out, ATopTech, immediately upon receipt of

[6]Synopsys also notes that, prior to the above-referenced e-mail, ATopTech, on April 10, 2015, made a general request for a Rule 30(b)(6) witness to testify about "the creation or development of each command, option, parameter/variable, object and attribute, output format, and default value and range that [Synopsys] claim[s] ATopTech has infringed" (see Michael Decl. Ex. M, at 5.) and that, after said e-mail, Synopsys, on June 12, 2015, identified, in addition to a 30(b)(6) witness for PrimeTime, a 30(b)(6) witness for IC Compiler, which witness was deposed by ATopTech. As a result, Synopsys argues, ATopTech has had ample opportunity to obtain whatever discovery it needs as to Synopsys's proposed additional claim. The Court disagrees. ATopTech has submitted excerpts from that deposition transcript, in which the witness testified he had not seen "the list of commands options, parameters and attributes that Synopsys alleges that ATopTech infringed," and therefore did not testify about them. (See Alexander Decl. Ex. E (Sheng Depo. Tr. 74:18-22).) Although Synopsys argues ATopTech asked a "poorly worded question" (Pl.'s Reply 8:5-6), the Court is not persuaded, and further notes that ATopTech's efforts to follow up with another question were met with repeated objection (id. at 75:1-77:7).

Synopsys's e-mail, informed Synopsys that such a "very substantial amendment" was "inappropriate at this stage of the case" (see Alexander Decl. Ex. A, at 2) and that ATopTech would not agree to its filing, after which Synopsys, for almost two and a half months, took no action to pursue the matter further.

Next, citing various motions to compel, Synopsys argues ATopTech "routinely resisted discovery" (Pl's Mot. 6:18), thereby delaying the production of relevant evidence. (See Michael Decl. ¶ 4.) The motions to which Synopsys refers, however, were not uniformly decided in Synopsys's favor. (See Order, filed April 3, 2014 (denying Synopsys's motion to compel); Order, filed August 28, 2014 (granting in part and denying in part Synopsys's request for production); Order, filed February 12, 2015 (same); Order, filed March 16, 2015 (same); Order, filed May 18, 2015 (denying Synopsys's motion for sanctions).

Lastly, in its Reply, Synopsys argues its proposed amendments would not prejudice ATopTech because even if discovery is reopened to encompass a claim based on IC Compiler, such discovery would not be "costlier or more burdensome" than it would be if Synopsys were to file that claim in a separate action. (Pl's Reply 2:1-2.) Irrespective of any such comparative cost analysis, which, the Court notes, was not provided, the Court, as discussed above, has found ATopTech will be prejudiced if required, at this stage of the proceedings in the above-titled case, to defend against Synopsys's new claims.

Accordingly, this factor weighs against amendment.

**CONCLUSION**

The Court, having weighed the factors relevant to its determination of the instant motion, finds those factors weigh decisively against amendment, and, accordingly, Synopsys's motion for leave to file a second Amended Complaint is hereby DENIED.

**IT IS SO ORDERED.**

Dated: September 17, 2015

MAXINE M. CHESNEY
United States District Judge