Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@JonesDay.com
Patrick T. Michael (State Bar No. 169745)
pmichael@jonesday.com
Krista S. Schwartz (State Bar No. 303604)
ksschwartz@JonesDay.com
David C. Kiernan (State Bar No. 215335)
dkiernan@JonesDay.com
Joe C. Liu (State Bar No. 237356)
jcliu@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SYNOPSYS, INC.,** | **Case No. 3:13-cv-02965-MMC (DMR)** |
| **Plaintiff,** | **PLAINTIFF SYNOPSYS' MOTION TO DISMISS ATOPTECH'S THIRD AMENDED COUNTERCLAIMS AND TO STRIKE IMMATERIAL FACTUAL ALLEGATIONS AND AFFIRMATIVE DEFENSE NOS. 11 AND 15** |
| **v.** | |
| **ATOPTECH, INC.,** | |
| **Defendant.** | |
| | **Date:         November 13, 2015** |
| | **Time:         9:00 a.m.** |
| | **Judge:        Hon. Maxine M Chesney** |
| | **Courtroom:   7, 19th Floor** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.    FACTS ...................................................................................................... 2

III.  ATOPTECH FAILS TO STATE A CLAIM ..................................................... 3

    A.    ATOPTECH'S SECTION 1 CLAIM FAILS (COUNT III).................................... 4

        1.    ATopTech Has Failed To Allege that the EULA Causes Actual Harm To Competition ................................ 4

        2.    ATopTech's Section 1 Claim Fails for Independent Reasons ................... 7

        3.    ATopTech Has Alleged No Facts Regarding the MAP-in Agreement ...................................................... 8

    B.    ATOPTECH'S SHERMAN ACT SECTION 2 CLAIM FAILS (COUNT VI) ......................................................... 9

        1.    Synopsys' Licensing Restrictions Have Not Harmed Competition........... 9

        2.    ATopTech Allegations Regarding Alleged Product Alterations Are Improper and Unsupported by the Facts ..................... 9

        3.    ATopTech's Allegations of Objectively Baseless Litigation are also Improper and Unsupported by Facts ........................ 11

    C.    ATOPTECH'S UNFAIR COMPETITION LAW CLAIMS FAIL (COUNT VIII)........................................................ 12

IV.   ATOPTECH'S IMMATERIAL FACTUAL ALLEGATIONS SHOULD BE STRICKEN ....................................................... 13

V.    ATOPTECH'S AFFIRMATIVE DEFENSE NOS. 11 AND 15 MUST BE STRICKEN ....................................................... 14

    A.    Affirmative Defense No. 11 Was Previously Stricken By The Court .................. 14

    B.    Affirmative Defense No. 15 Is Insufficiently Pled And Must Be Stricken ......... 15

VI.   CONCLUSION .................................................................................................. 17

1

# TABLE OF AUTHORITIES

2

Page

3

C<small>ASES</small>

4

5
*Alaska Airlines, Inc. v. United Airlines, Inc.,*
    948 F.2d 536 (9th Cir. 1991) .................................................................................9

6

7
*Allen v. AVT Event Techs., Inc.,*
    2013 WL 3157905 (N.D. Cal. June 20, 2013) ......................................................14

8

9
*Apple Inc. v. Psystar Corp.,*
    658 F.3d 1150 (9th Cir. 2011) .............................................................................7

10

11
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................3, 14

12
*Asset Mktg. Sys., Inc. v. Gagnon,*
    542 F.3d 748 (9th Cir. 2008) .............................................................................17

13

14
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...........................................................................3, 10, 14

15

16
*Brantley v. NBC Universal,*
    675 F.3d 1192 (9th Cir. 2012) .........................................................................4, 7

17

18
*C.R. Bard, Inc. v. M3 Sys., Inc.,*
    157 F.3d 1340 (Fed. Cir. 1998) .....................................................................11, 12

19

20
*Cal. Computer Prods. v. IBM,*
    613 F.2d 727 (9th Cir. 1979) .............................................................................8

21
*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ......................................................................................12

22

23
*Colonial Med Grp., Inc. v. Catholic Healthcare W.,*
    2010 WL 2108123 (N.D. Cal. May 25, 2010) .........................................................3

24

25
*Digital Sun v. Toro Co.,*
    2011 WL 1044502 (N.D. Cal. Mar. 22, 2011) .....................................................12

26

27
*eBay, Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) ...........................................................................................7

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Energex Enters., Inc. v. Anthony Doors, Inc.*,
    250 F. Supp. 2d. 1278 (D. Colo. 2003) ..................................................................4

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ..................13, 14

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983) .......................................................................8, 10

*Hampton v. Paramount Pictures Corp.*,
    279 F.2d 100 (9th Cir. 1960) ...........................................................................16

*Handgards, Inc. v. Ethicon, Inc.*,
    601 F.2d (9th Cir. 1979) .............................................................................11, 12

*Image Tech. Servs. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) ..........................................................................7

*In re Adderall XR Antitrust Litigation*,
    754 F.3d 128 (2d Cir. 2014) ............................................................................8

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .................................................................................13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120, 1125 (9th Cir. 2009) ...................................................................13

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ..........................................................................3

*Kottle v. Nw. Kidney Ctrs.*,
    146 F.3d 1056 (9th Cir. 1998) .........................................................................11

*Lambert Corp. v. LBJC Inc.*,
    2014 WL 2737913 (C.D. Cal. June 16, 2014) .........................................................16

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*,
    884 F.2d 504 (9th Cir. 1989) ...........................................................................4

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ...........................................................................9

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Nat'l Soc. of Prof'l Eng'rs. v. United States*,

4

    435 U.S. 679 (1978)............................................................................................4

5

*Neubronner v. Milken*,

6

    6 F.3d 666 (9th Cir. 1993)...............................................................................12

7

*Novell, Inc. v. Microsoft Corp.*,

8

    731 F.3d 1064 (10th Cir. 2013)........................................................................8

9

*Petrella v. MGM*,

    134 S. Ct. 1962 (2014)....................................................................................16

10

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,

11

    508 U.S. 49 (1993)..........................................................................................11

12

*Schiff v. Barrett*,

13

    2011 WL 570164 (N.D. Cal. Feb. 14, 2011)..................................................13

14

*Schor v. Abbott Labs.*,

15

    457 F.3d 608 (7th Cir. 2006)............................................................................8

16

*Sec. People, Inc. v. Classic Woodworking, LLC*,

17

    2005 WL 645592 (N.D. Cal. Mar. 4, 2005)...................................................14

18

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comm'cns, Inc.*,

    376 F.3d 1065 (11th Cir. 2004).....................................................................4, 7

19

*Spectrum Sports v. McQuillan*,

20

    506 U.S. 447 (1993)..........................................................................................9

21

*State of Ill. ex rel. Burris v. Panhandle E. Pipe Line Co.*,

22

    935 F.2d 1469 (7th Cir. 1991)..........................................................................8

23

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*,

24

    786 F.2d 1400 (9th Cir. 1986)........................................................................17

25

*Synopsys, Inc. v. ATopTech, Inc.*,

26

    2015 WL 4719048 (N.D. Cal. Aug. 7, 2015)........................................ passim

27

*United States v. Westinghouse Elec. Corp.*,

    648 F.2d 642 (9th Cir. 1981)............................................................................8

28

**TABLE OF AUTHORITIES**<br>(continued)

Page

*USS-Posco Indus. v. Contra Costa Co. Bldg. & Constr. Trades Council, AFL-CIO*,
    31 F.3d 800, 810 (9th Cir. 1994)..............................................................................11

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)..........................................................................................8, 10

*William S. v. Lassen Cnty.*,
    2006 WL 929398 (E.D. Cal. Apr. 11, 2006).........................................................13

STATUTES

15 U.S.C. § 1 ...........................................................................................1, 4, 7, 10

15 U.S.C. § 2 ........................................................................................................1, 9

Cal. Bus. & Prof. Code § 17200 ......................................................................1, 12

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ..........................................................................................12, 13

Fed. R. Civ. P. 12(b)(6)...........................................................................................3

Fed. R. Civ. P. 12(f) ........................................................................................13, 14

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that on November 13, 2015 at 9:00 a.m. before the Honorable

3   Maxine Chesney, United States District Court, San Francisco, California, Plaintiff Synopsys, Inc.

4   ("Synopsys") will, and hereby does, move the Court pursuant to Federal Rules of Civil Procedure

5   12(b)(6) and 12(f) for an Order dismissing Defendant ATopTech, Inc.'s ("ATopTech") Third

6   Amended Counterclaims and striking immaterial factual allegations and unsupported affirmative

7   defenses.

8      Synopsys respectfully requests that Counts III, VI, and VIII be dismissed with prejudice

9   for failure to state a claim upon which relief can be granted.  Synopsys also requests that

10   paragraphs 90-101, 105-111 and 165(b)-(c) be stricken as immaterial and impertinent as they

11   relate solely to claims that have already been dismissed with prejudice.  Finally, Synopsys

12   requests that Affirmative Defense Nos. 11 and 15 be stricken.

13      Synopsys' Motion is based on this Notice of Motion and Motion, the accompanying

14   Memorandum of Points and Authorities, the complete files and records in this action, oral

15   argument of counsel, and such other and further matters as this Court may consider.

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Dismiss TACC
Case No. 3:13-cv-02965-MMC (DMR)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    <u>INTRODUCTION</u>

In the Second Amended Countercomplaint ("SACC"), ATopTech challenged Synopsys' End-User Software License and Maintenance Agreement ("EULA") restrictions under Sections 1 and 2 of the Sherman Act and California's Unfair Competition Law ("UCL").  It claimed that the EULA restrictions prevented ATopTech and others from gaining access to PrimeTime outputs, which it alleged were necessary for developing "competitive place-and-route software."  SACC ¶ 90, ECF No. 306.  The Court dismissed ATopTech's Section 1 claim and derivative monopolization and UCL claims because "ATopTech ha[d] not shown the EULA harms competition, and, instead, ha[d] only alleged harm to itself."  *Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at *6 (N.D. Cal. Aug. 7, 2015).  Among other things, the Court found harm to competition implausible where other products had garnered 34% of the place-and-route market.

ATopTech's second attempt to state a claim fares no better than its first.  ATopTech now contends—without support—that ATopTech and Cadence "***have used*** and must use data from PrimeTime customer output reports to make their place-and-route software correlate with PrimeTime."  Third Amended Counterclaim ("TACC"), ¶ 87, ECF No. 378.  But this allegation does not help ATopTech.  Instead, it underscores that the licensing restrictions have had no actual impact on competition.  Indeed, ATopTech and Cadence have whatever data they need to develop software that correlates with PrimeTime.  In short, ATopTech still has failed to allege harm to competition.  Accordingly, ATopTech's Section 1 claim and the remaining derivative claims should be dismissed with prejudice.

ATopTech's Section 1 claim also fails for independent reasons.  The heart of ATopTech's Section 1 claim is that Synopsys should aid competitors like ATopTech by providing access to its software.  The antitrust laws impose no such duty.

ATopTech also realleges its monopolization claim based on theories that were dismissed twice before.  Those claims should be stricken because ATopTech did not receive leave to amend them.  Alternatively, the claims should be dismissed because they are unsupported by any facts.

1   **II.     BACKGROUND**

2       **A.     FACTS**

3           ATopTech and Synopsys license software used to design and test integrated circuits

4   ("chips").  Because of the complexity of modern chip design, in general, engineers cannot design

5   the physical layout of a chip without what is known as "place-and-route" software.  TACC, ¶¶ 68,

6   74.[1]  Synopsys offers  place-and-route tools, IC Compiler and IC Compiler II, which "compete[]

7   directly" with ATopTech's place-and-route software, Aprisa.  *Id.* ¶¶ 71-72.  The respective shares

8   in what ATopTech calls the "place-and-route market" as estimated by a "leading industry

9   analyst" are Synopsys 65%, Cadence 30%, Mentor Graphics 4%, and ATopTech 1%.  *Id.* ¶ 67.

10  ATopTech "believes its market share may be slightly higher, but still less than 3%."  *Id.* ¶ 72.

11          Static timing verification software is also used for chip design.  *Id.* ¶¶ 78-79.  It "is used to

12  verify the timing of the electronic signals of an integrated circuit design by testing its electrical

13  and timing performance . . . under various operating conditions."  *Id.* ¶ 74; *see also* ¶ 79.

14  Synopsys offers static timing verification software known as PrimeTime.  *Id.* ¶ 75.  ATopTech

15  does not sell such software.  *Id.* ¶ 83.  "Based on a report from an industry analyst, ATopTech

16  estimates that the respective market shares" in what ATopTech calls the verification market are

17  Synopsys 88%, Cadence 8%, and CLK 4%.  *Id.* ¶ 74.  ATopTech's estimate for Synopsys is

18  misleading and not supported by the report it cites.[2]

19          ATopTech alleges that place-and-route software "must be interoperable" and "correlate"

20  _____

21          [1] The following allegations are taken from the TACC and assumed true for purposes of
    this motion only.

22          [2] Synopsys disputes the product and geographic market definitions and market shares
    alleged in the TACC, including at ¶¶ 67-89.  For example, ATopTech relies on the report Gary
23  Smith EDA, *RTL Market Trends 2014:  The Future for RTL,* (Nov. 2014) to support its market
    share figures.  As ATopTech acknowledges, that report lists the following market shares for
24  verification and signal integrity software:  Synopsys 70%, Ansoft 16%, Cadence 7%, Atrenta 4%
    and CLK 3%.  *Id.* p. 16.  ATopTech states that it "back[ed] out" "data for two companies that
25  offer signal integrity software."  TACC, ¶ 74, n. 14.  Mr. Smith's report, however, specifically
    instructs that that signal integrity and timing manufacturers cannot be separated, "because some
26  tools can be categorized in signal integrity and/or timing, making it *virtually impossible* to split
    that revenue."  *RTL Market Trends,* p. 16 (emphasis added).  Despite this, ATopTech removed
27  the 20% market shares from Ansoft and Atrenta and reassigned almost all of it to Synopsys,
    inflating Synopsys' share to a purported 88%.  Synopsys reserves this all other objections to
28  ATopTech's market analysis and accepts them as true <u>only</u> for purposes of deciding this motion
    to dismiss.

1    with static timing verification software and the "level of interoperability and compatibility

2    between place-and-route software and static timing verification software is a critical competitive

3    dynamic." *Id.* ¶ 83; *see also* ¶ 85.  ATopTech alleges that it and others need "data" and "related

4    information" from PrimeTime "output reports" to develop place-and-route software that is

5    interoperable and correlates with PrimeTime.  *Id.* ¶¶ 87-88.

6         Paragraph 2.9(f) of the EULA states that customers who license PrimeTime "may not (and

7    may not allow anyone else to): use [PrimeTime] or its output to develop or enhance any product

8    that competes with a Synopsys product." *Id.* ¶ 102.  ATopTech alleges that the EULA prohibits

9    licensees from sharing PrimeTime output reports with ATopTech and others, which prevents

10   ATopTech and others from developing "competitive place-and-route software." *Id.* ¶ 102; *see*

11   *also* ¶ 135.

12        ATopTech also alleges that Synopsys' Milkyway Development Kit license agreement

13   ("MAP-in Agreement") states that "You may not . . . disclose the results of any benchmarking of

14   the LICENSED SOFTWARE; except and only to the extent that such activity is expressly

15   permitted by applicable law notwithstanding this limitation." *Id.* ¶ 102.  The TACC, however,

16   does not allege that "benchmarking" is necessary to develop competing products or that the

17   restriction has in any way hindered ATopTech or any other company.

18   **III.    ATOPTECH FAILS TO STATE A CLAIM**

19        To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient

20   evidentiary facts (as opposed to ultimate facts) that "'state a claim to relief that is plausible on its

21   face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

22   544, 570 (2007)).  "'[A] plaintiff's obligation to provide the grounds of his entitlement to relief

23   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

24   action will not do.'" *Colonial Med. Grp., Inc. v. Catholic Healthcare W.*, 2010 WL 2108123, at

25   *2 (N.D. Cal. May 25, 2010) (quoting *Twombly*, 550 U.S. at 555).  The complaint must "answer

26   the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa*

27   *U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).  The factual allegations must make a claim for

28   relief plausible, not merely conceivable.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 679.

A.     **ATOPTECH'S SECTION 1 CLAIM FAILS (COUNT III).**

Section 1 prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade among the several States."  15 U.S.C. § 1.  To state a claim under the Sherman Act's rule of reason, ATopTech  must demonstrate: "(1) a contract combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) *which actually injures competition*."  *Brantley v. NBC Universal*, 675 F.3d 1192, 1197 (9th Cir. 2012) (emphasis added). [3]  "In addition to these elements, plaintiffs must also plead (4) that they were harmed by the defendant's anti-competitive contract, combination, or conspiracy, and that this harm flowed from an 'anti-competitive aspect of the practice under scrutiny.'  This fourth element is generally referred to as 'antitrust injury' or 'antitrust standing.'" *Id.* (internal citations omitted).  As this Court recognized, "[a]ntitrust injury requires pleading an injury to 'competition,' not competitors." *Synopsys*, 2015 WL 4719048 at *4.[4]  In short, the alleged conduct must "'harm the competitive process . . . *harm to one or many competitors will not suffice*.'"  *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comm'cns, Inc.*, 376 F.3d 1065, 1070-71 (11th Cir. 2004) (*quoting Dickson v. Microsoft Corp.*, 309 F.3d 193, 206 (4th Cir. 2002)) (emphasis added).

1.     **ATopTech Has Failed To Allege that the EULA Causes Actual Harm To Competition.**

ATopTech repeats its allegation that by restricting customers' use of PrimeTime outputs, the EULA prevents ATopTech and others from developing "competitive place-and-route software."  *Id.* ¶ 102; *see also* ¶ 135.  As this Court previously held, these allegations are

---

[3] The Court previously recognized that the rule of reason applies to ATopTech's claims. *Synopsys*, 2015 WL 4719048 at *6.  Indeed, "[c]ovenants in restraint of trade which are ancillary to a legitimate transaction," such as the licensing of intellectual property, are analyzed under the rule of reason.  *Nat'l Soc. of Prof'l Eng'rs. v. United States*, 435 U.S. 679, 689 (1978); see *also Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1283-84 (D. Colo. 2003) (non-compete clause in trade secret disclosure not a per se violation of Section 1).

[4] *See also Brantley*, 675 F. 3d at 1198 (plaintiffs "must plead an injury to competition beyond the impact on the plaintiffs themselves"); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*, 884 F.2d 504, 508 (9th Cir. 1989) ("Ordinarily, the factual support needed to show injury to competition must include proof of the relevant . . . markets and demonstration of the restraint's anticompetitive effects in that market.").

1    insufficient to show that the EULA harmed competition.  *Synopsys*, 2015 WL 4719048 at *3.

2    Indeed, ATopTech again admits that, despite the EULA restrictions, ATopTech has between one

3    and three percent of the place-and-route market, Cadence has thirty percent and Mentor Graphics

4    has four percent.  TACC, ¶¶ 67, 72.  Thus, as before, "ATopTech's allegations make clear that

5    ATopTech does not need access to PrimeTime and its output reports in order to develop place-

6    and-route software . . . .  If access to PrimeTime and its output reports was, in fact, necessary for

7    the development of competitive place-and-route software, there would be no such competing

8    products, let alone a product capable of garnering almost a third of the market."  *Synopsys*, 2015

9    WL 4719048 at *3.

10        In dismissing the SACC, the Court also noted that ATopTech had failed to "allege that

11   other competitors need or have used access to PrimeTime or its output reports in order to develop

12   interoperable place-and-route software, nor does such access appear necessary, where, as noted

13   above, Synopsys' competitors have garnered approximately a third of the market without such

14   access."  *Id.* at *6.  On its second try, ATopTech has added an allegation about competitors'

15   alleged use of data from PrimeTime and allegations about the benefits of correlation between

16   place-and-route software and verification software.  Neither addition shows actual harm to

17   competition.

18        First, ATopTech alleges that it "and other place-and-route software makers such as

19   Cadence have used and must use data from PrimeTime customer output reports to make their

20   place-and-route software correlate with PrimeTime."  *Id.* ¶ 87.[5]  This allegation directly undercuts

21   ATopTech's claim that the EULA has prevented competitors from developing competing

22   software or software that interoperates and correlates with PrimeTime.  Indeed, ATopTech now

23   admits that ATopTech and Cadence have whatever data they need to develop a product that

24   correlates with PrimeTime.

25        Despite this admission, ATopTech goes on to contend that "Cadence has managed to

26   ────────────────────
         [5] ATopTech does not provide any support for its new allegation that "Cadence ha[s] used
27   and must use data from PrimeTime customer output reports."  ATopTech cites to only its
     copyright expert as support.  He <u>does not</u> state that Cadence has used or must use data from
     output reports.  Nor does he state that Cadence's software correlates with PrimeTime or address
28   how Cadence was able to develop software that correlates with PrimeTime.

1    avoid the full anti-competitive effect of" the EULA restrictions "because it makes its own static

2    timing verification software and therefore has a certain percentage of static timing verification

3    software customers that also purchase Cadence's place-and-route software." *Id.* This makes no

4    sense and is contrary to ATopTech's own admissions. As an initial matter, nowhere in the TACC

5    does ATopTech allege facts showing any "effect" of the EULA restrictions on Cadence, much

6    less an "anticompetitive effect." In fact, as noted above, the TACC makes clear that it has had no

7    effect whatsoever—by ATopTech's own admission, Cadence has developed software that

8    correlates with PrimeTime. Moreover, the market shares referenced by ATopTech also show that

9    Cadence has developed software that works with PrimeTime. Specifically, Cadence is alleged to

10   have 30% of the place-and-route market, but only 8% of the verification market. Assuming

11   ATopTech is correct that the 8% of customers use only Cadence's place-and-route software

12   (TACC ¶ 87), that means a much larger percentage of Cadence's place-and-route customers use

13   PrimeTime.[6]

14        In short, ATopTech's admissions clearly demonstrate that the EULA restrictions have not

15   prevented ATopTech, Cadence or any another company (*e.g.*, Mentor Graphics) from developing

16   a competitive product.

17        Second, ATopTech adds two paragraphs (¶¶ 84 & 85) quoting passages from the report of

18   its purported copyright expert regarding the alleged necessity of correlation between place-and-

19   route and verification software. These new allegations do not address any impact, much less an

20   anticompetitive impact, of the EULA restrictions on the place-and-route market. In fact, neither

21   the two paragraphs nor the expert report, discuss the EULA restrictions at all.

22        Other than the allegation regarding Cadence's use of data and allegations regarding

23   correlation, ATopTech has alleged no other facts to try to show that the EULA actually harmed

24   competition. For example, it has alleged no facts showing the state of the market before

25   Paragraph 2.9(f) was introduced and how the introduction of the EULA restrictions impacted the

---

26   [6] Further, the TACC alleges that a significant percentage of Synopsys' PrimeTime
     customers are using non-Synopsys place-and-route software. The TACC alleges that Synopsys
27   holds 88% of the verification market, but only 65% of the place-and-route market. *Id.* ¶¶ 74, 67.
     This means that up to 23% of Synopsys' PrimeTime customers are using non-Synopsys place-
28   and-route tools.

1   market, which is what one would expect in an antitrust complaint.  In short, ATopTech has not

2   alleged facts showing that the EULA has actually harmed competition.  At most, it has alleged

3   harm to itself, which is not enough.  *Brantley*, 675 F. 3d at 1198 (plaintiffs "must plead an injury

4   to competition beyond the impact on the plaintiffs themselves"); *Spanish Broad.*, 376 F.3d at

5   1071 ("[H]arm to one or many competitors will not suffice.'").  Accordingly, its Section 1 claims

6   should be dismissed with prejudice.

7              **2.      ATopTech's Section 1 Claim Fails for Independent Reasons.**

8              ATopTech's Section 1 claim also fails because the license restriction is valid under the

9   antitrust laws.

10             ATopTech does not dispute that Synopsys can prohibit customers from using its

11  copyrighted PrimeTime software to develop competing products.  Nor could it.  Synopsys has the

12  right to exclude others from using its copyrighted software and to impose conditions on how and

13  when it can be used.  *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006) (copyright

14  holder has right to exclude others); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1160 (9th Cir.

15  2011) (copyright holder may conditionally license its works).  Even a "monopolist's desire to

16  exclude others from its protected work is a presumptively valid business justification for any

17  immediate harm to consumers."  *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1218

18  (9th Cir. 1997) (internal quotations omitted).

19             Instead, ATopTech claims that Synopsys cannot restrict the use of PrimeTime output

20  reports.  But the output reports that ATopTech seeks are the equivalent of using the PrimeTime

21  software to develop a competing program.  The only way to generate the outputs is to use

22  PrimeTime.  Thus, if it is permissible to prohibit the use of PrimeTime to develop a competing

23  product (ATopTech does not allege otherwise), it is also permissible to prohibit the use of the

24  outputs that can be generated only by use of PrimeTime.  Use of the outputs necessarily involves

25  use of PrimeTime.

26             Reduced to its essence, ATopTech's claim is that Synopsys should provide (directly or

27  indirectly) competitors with PrimeTime output reports so that competitors can develop products

28  that compete directly with Synopsys' IC Compiler or IC Compiler II.  The antitrust laws impose

Motion to Dismiss TACC
Case No. 3:13-cv-02965-MMC (DMR)

1  no such duty.  In *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, the Supreme

2  Court explained, even a monopolist has "no duty to aid competitors" or to "share the source of

3  [its] advantage" with competitors because doing so "may lessen the incentive for the monopolist,

4  the rival, or both to invest in those economically beneficial facilities" and "may facilitate the

5  supreme evil of antitrust:  collusion."  540 U.S. 398, 407-08 (2004); *see also Foremost Pro*

6  *Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545 (9th Cir. 1983) ("The antitrust laws did not

7  impose a duty on Kodak to assist … manufacturers of competing cameras, film, paper or

8  chemicals to survive or expand"); *State of Ill. ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935

9  F.2d 1469, 1484 (7th Cir. 1991) ("[M]onopolists needn't acquiesce to every demand placed upon

10 them by competitors or customers; a monopolist's duties are negative—to refrain from

11 anticompetitive conduct—rather than affirmative—to promote competition.").[7]  And courts have

12 held that the antitrust laws do not require even an alleged dominant company to compete against

13 itself by licensing its intellectual property to others.  *See United States v. Westinghouse Elec.*

14 *Corp.*, 648 F.2d 642, 647 (9th Cir. 1981).[8]

15        As the Supreme Court explained in *Trinko*, requiring competitors to aid each other would

16 facilitate collusion among competitors, stifle investment in new products and innovation, and

17 would be unadministrable, requiring courts to act as "central planners" for the economy, setting

18 the price and terms of compelled sharing.  *Trinko*, 540 U.S. at 407-08.

19                    **3.      ATopTech Has Alleged No Facts Regarding the MAP-in Agreement.**

20        ATopTech also alleges that Synopsys' MAP-in Agreement restricts the use of

21 "benchmarking of the LICENSED SOFTWARE."  *Id.* ¶ 102.  It does not allege, however, that

---

22 [7] *See also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013) ("Even a monopolist generally has no duty to share (or continue to share) its intellectual or physical

23 property with a rival."); *Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) ("Cooperation is a *problem* in antitrust, not one of its obligations."); *Cal. Computer Prods. v. IBM*, 613 F.2d

24 727, 744 (9th Cir. 1979) (CalComp) ("IBM, assuming it was a monopolist . . . was under no duty to help CalComp or other peripheral equipment manufacturers survive or expand").

25 [8] Courts have recognized a "limited exception" to an alleged monopolist's freedom to refuse to deal with competitors where a party unilaterally terminates a voluntary (and profitable)

26 course of dealing and forsakes short-term profits.  *See In re Adderall XR Antitrust Litigation*, 754 F.3d 128, 135-136 (2d Cir. 2014) (affirming dismissal for failing to meet *Aspen Skiing* narrow

27 exception to the long recognized right" of a firm's freedom to determine with who it will deal). Here, the TACC contains no allegations of a voluntary and profitable course of dealing existed

28 between Synopsys and ATopTech or that Synopsys sacrificed short-term profits.

1   "benchmarking" is necessary to develop competing products or that the restriction has in any way

2   hindered ATopTech or any other company.  ATopTech makes no mention of benchmarking data

3   or what competitive harm arises as a result of Synopsys' restrictions on the sharing and use of

4   such data.  Thus, the Court should dismiss all claims based on the MAP-in Agreement.

5         **B.**     **ATOPTECH'S SHERMAN ACT SECTION 2 CLAIM FAILS (COUNT VI).**

6   To state a valid claim, ATopTech must allege "'(1) the possession of monopoly power in

7   the relevant market and (2) the willful acquisition or maintenance of that power as distinguished

8   from growth or development as a consequence of a superior product, business acumen, or historic

9   accident.'"  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 541 (9th Cir. 1991).  A

10   claim for attempted monopolization requires "(1) that the defendant has engaged in predatory or

11   anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability

12   of achieving monopoly power."  *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993).

13   ATopTech alleges that Synopsys monopolized the place-and-route market by allegedly

14   "(a) refusing to allow competitors in the place-and-route software market access to PrimeTime

15   customer output reports;" "(b) periodically altering the verification tests within its PrimeTime

16   static timing verification software without disclosing this information to competitors;" and "(c)

17   filing and pursuing baseless copyright and patent litigation."  TACC ¶ 165.  As before, ATopTech

18   has failed to state a claim.

19         **1.**     **Synopsys' Licensing Restrictions Have Not Harmed Competition.**

20   ATopTech's primary claim of monopolization is based on the EULA restrictions.  This

21   Court dismissed the claim because "ATopTech ha[d] failed to allege harm to competition."

22   *Synopsys*, 2015 WL 4719048 at *9.  For the reasons stated above, ATopTech still has not alleged

23   facts showing that the EULA harmed competition in the place-and-route market.  Accordingly,

24   the claims should be dismissed with prejudice.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802,

25   812 (9th Cir. 1988) (Section 2 claim failed because no injury in the relevant market alleged).

26         **2.**     **ATopTech Allegations Regarding Alleged Product Alterations Are**

27              **Improper and Unsupported by the Facts.**

28   ATopTech again contends (for a third time), without factual support, that Synopsys

1   monopolized the market by "periodically altering the verification tests within its PrimeTime static

2   timing verification software without disclosing this information to competitors to prevent the

3   interoperability of competitors' place-and-route software."  TACC ¶ 165(b).  This claim fails for

4   two reasons.

5           First, this claim was not authorized by the Court.  The Court's Order authorized

6   ATopTech to amend *only* the Section 1 claim to allege harm to competition and the

7   monopolization claim to the extent it was based on the Section 1 claim.  In other words,

8   ATopTech was permitted to amend the monopolization claim to add facts showing that the EULA

9   injured competition.  *Synopsys*, 2015 WL 4719048 at *9.  ATopTech did not receive

10  authorization to amend allegations that it had previously raised in successive complaints.

11  Accordingly, the monopolization claim based on product alterations should be stricken.

12          Second, even if the Court were to address the unauthorized monopolization claim, it

13  should be dismissed with prejudice.  As with its other claims, ATopTech has failed to allege facts

14  showing that ATopTech's conduct has actually injured competition.  Moreover, ATopTech

15  provides no factual support for the claim.  For example, it fails to provide any details about what

16  "verification tests within PrimeTime" were altered, when they were altered, or how the alterations

17  prevented interoperability.  Without such information, Synopsys cannot analyze or understand the

18  claim, including whether such claims are barred by the statute of limitations.  Nor has ATopTech

19  provided any facts to support its allegation that Synopsys altered its "verification tests . . . to

20  prevent the interoperability of competitors' place-and-route software."  *See* TACC ¶ 165(b).

21  Without a "plausible suggestion" that the alleged alterations to PrimeTime's verification tests

22  were aimed at monopolizing the market, the TACC cannot survive a motion to dismiss.  *See*

23  *Twombly*, 550 U.S. at 566, 570.  Finally, the crux of the claim is that Synopsys refuses to disclose

24  certain information to competitors to ensure that their products interoperate with PrimeTime.  As

25  discussed above, firms have no duty to assist competitors to ensure that their products work better

26  or interoperate.  *See Trinko*, 540 U.S. at 411; *Foremost Pro*, 703 F.2d at 545.

27

28

Motion to Dismiss TACC
Case No. 3:13-cv-02965-MMC (DMR)

1         **3.**         **ATopTech's Allegations of Objectively Baseless Litigation are also**

2                  **Improper and Unsupported by Facts.**

3       ATopTech next seeks to resurrect its allegations that Synopsys' litigation conduct

4 supports a monopolization claim.  ATopTech did not receive leave to amend its monopolization

5 claim to reallege, *for a fourth time*, its claim based on objectively baseless litigation.  In

6 dismissing this claim, the Court previously noted that ATopTech failed to allege *any* facts in

7 support of this monopolization theory.  *Synopsys*, 2015 WL 4719048 at n.16.  Because ATopTech

8 already tried (and failed) to allege objectively baseless litigation in its previous complaints, it was

9 without authorization to amend these allegations in the TACC.  Again, the Court's previous Order

10 provided ATopTech an opportunity to cure *new* claims, not reassert those it has repeatedly

11 alleged for over nine-months.

12       Moreover, ATopTech, now as before, has failed to support its claim.  Seeking government

13 redress is Constitutionally protected activity and cannot serve as the basis for antitrust liability.

14 *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, *Inc.,* 508 U.S. 49, 56 (1993)

15 ("[T]hose who petition government for redress are generally immune from antitrust liability.").

16 Immunity is lost "only if a party engages in 'sham' petitioning."  *See USS-Posco Indus. v. Contra*

17 *Costa Co. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 810 (9th Cir. 1994).  To

18 establish "sham petitioning," the complaint must demonstrate with *specificity* that the lawsuit is

19 (1) "objectively baseless, in the sense that no reasonable litigant could realistically expect success

20 on the merits" and (2) subjectively motivated by bad faith.  *Prof'l Real Estate Investors*, 508 U.S.

21 at 60; *see also Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998).  A claimant must

22 show "clear and convincing evidence of bad faith."  *See  Handgards, Inc. v. Ethicon, Inc.*, 601

23 F.2d 996 (9th Cir. 1979).  Relying only on "a failed legal theory" is not enough.  *See C.R. Bard,*

24 *Inc. v. M3 Sys.*, *Inc.,* 157 F.3d 1340, 1368-69 (Fed. Cir. 1998) ("Neither the bringing of an

25 unsuccessful suit … nor the effort to enforce a patent that falls to invalidity, subjects the suitor to

26 antitrust liability.").

27       ATopTech's conclusory allegations, "based on information and belief," fall far short of

28 these pleading requirements.  ATopTech does not specify which claims it alleges to be

1    objectively baseless, including whether the alleged objectively baseless claims are limited to

2    those claims that the Court previously dismissed.  *Cf. C.R. Bard*, 157 F.3d at 1368-69 (failed legal

3    theory insufficient to invoke sham exception).  Indeed, ATopTech ignores the fact that none of

4    Synopsys' original claims were dismissed with prejudice and all claims included in Synopsys'

5    Amended Complaint survived a motion to dismiss.  Further, ATopTech has failed to allege any

6    indication of bad faith, much less "clear and convincing evidence of bad faith."  *See Handgards*,

7    601 F.3d at 996.  Finally, ATopTech's "information and belief" accusations are improper to the

8    extent they are not accompanied by a statement of facts on which those beliefs are based.

9    *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ( "a plaintiff who makes allegations on

10   information and belief must state the factual basis for the belief") (applying heightened pleading

11   standard of Fed. R. Civ. P. 9(b)).

12            **C.       ATOPTECH'S UNFAIR COMPETITION LAW CLAIMS FAIL (COUNT**

13                   **VIII).**

14           California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice."

15   Cal. Bus. & Prof. Code § 17200.  ATopTech's counterclaim is a formulaic, boilerplate UCL

16   allegation, failing to even identify which prong of the statute it invokes.

17           To the extent ATopTech seeks to assert an "unlawful" claim under the UCL, the claim is

18   derivative of the Sherman Act claims and fails for the reasons stated above.  ECF No. 342, p. 17;

19   *see also Digital Sun v. Toro Co.*, 2011 WL 1044502, at *5 (N.D. Cal. Mar. 22, 2011) ("Because

20   the Sherman Act violation is insufficiently pled, it follows that [plaintiff] has also failed to plead

21   any violation of the Unfair Competition Law.").

22           Assuming ATopTech seeks to impose UCL liability pursuant to the "unfair" prong, it

23   must allege "an incipient violation of an antitrust law" or a violation of the "policy or spirit of one

24   of those laws."  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187

25   (1999).  As the Court explained in previously dismissing ATopTech's UCL claims, the conduct

26   ATopTech challenges is either "anticompetitive and thus simultaneously violates both the

27   antitrust laws and their 'policy and spirit' or it violates neither."  ECF No. 18.  As established

28   above, ATopTech has not alleged harm to competition, and thus has not alleged a violation of any

1    antitrust laws or the policy or spirit of such laws.

2         Finally, assuming ATopTech is attempting to allege fraudulent conduct, it must plead its

3    allegations under Rule 9(b)'s heightened pleading standards. *Kearns v. Ford Motor Co.*, 567 F.3d

4    1120, 1125 (9th Cir. 2009). This requires particularized allegations of fraud, including "actual

5    reliance on . . . allegedly deceptive or misleading statements…." *In re Tobacco II Cases*, 46 Cal.

6    4th 298, 306 (2009). Here, ATopTech does not allege fraud.

7    **IV.   ATOPTECH'S IMMATERIAL FACTUAL ALLEGATIONS SHOULD BE**

8         **STRICKEN**

9         A court may "strike from a pleading an insufficient defense or any redundant, immaterial,

10   impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike may be granted on

11   the grounds of immateriality or impertinence when the allegations are unrelated to the

12   controversy. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir.1993), *rev'd on other*

13   *grounds*, 510 U.S. 517 (1994). Courts have found that allegations related to previously dismissed

14   claims should be stricken because they confuse the issues and are immaterial to the remaining

15   active claims. *See William S. v. Lassen Cnty.*, 2006 WL 929398, at *4 (E.D. Cal. Apr. 11, 2006)

16   (striking from complaint plaintiff's allegation that defendants failed to hire him based on his

17   alleged disability when the court previously dismissed his failure to hire claim; plaintiff's

18   argument that the allegation was relevant as evidence of defendants' pattern or practice of

19   discrimination was unpersuasive in light of the confusion caused by the allegation's continued

20   inclusion in the complaint); *see also Schiff v. Barrett*, 2011 WL 570164, at *2 (N.D. Cal. Feb. 14,

21   2011) (striking as immaterial allegations relating to claims previously barred).

22        ATopTech has retained the vast majority of the factual allegations underlying the

23   dismissed claims. *See, e.g.,* TACC ¶¶ 90-101, 105-11. ATopTech's attempt to retain these

24   allegations are little more than a backdoor attempt to confuse the issues and reimpose upon

25   Synopsys the burden of litigating claims that the Court has already disposed of. In addition,

26   ATopTech has not simply retained factual allegations, but has added more allegations to

27   dismissed causes of action. For example, though the Court dismissed ATopTech's Clayton Act

28   claim of unlawful merger, ATopTech has added additional factual detail.

1    ATopTech's failure to amend the complaint consistently with the Court's Order has

2    forced Defendants to repeatedly brief the same deficiencies. Such a waste of time and resources

3    justifies a motion to strike. *Fogerty*, 984 F.2d at 1527 (motions to strike are designed to "avoid

4    the expenditure of time and money that must arise from litigating spurious issues by dispensing

5    with those issues prior to trial").  Further, even if ATopTech's antitrust allegations survive this

6    motion to dismiss and are ultimately bifurcated (*see* TACC p. 15, n.2) from Synopsys' copyright

7    claims, the existence of these allegations will do nothing more than confuse the issues as the

8    parties embark on discovery, widening the scope of the discovery and increasing its costs. *See id*;

9    *see also Twombly*, 550 U.S. at 546 (noting expensive nature of antitrust discovery).

10   **V.    ATOPTECH'S AFFIRMATIVE DEFENSE NOS. 11 AND 15 MUST BE**

11   **STRICKEN.**

12   A court may "strike from a pleading an insufficient defense or any redundant, immaterial,

13   impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A defense may be insufficient "as a

14   matter of pleading or as a matter of substance." *Sec. People, Inc. v. Classic Woodworking, LLC*,

15   2005 WL 645592, at *2 (N.D. Cal. Mar. 4, 2005).  The sufficiency of an Answer's pleading of

16   affirmative defenses are subject to the *Iqbal* and *Twombly* standard; thus affirmative defenses

17   must allege well-pled facts that state plausible affirmative defenses.  *See, e.g., Allen v. AVT Event*

18   *Techs., Inc.*, 2013 WL 3157905, at *2 (N.D. Cal. June 20, 2013).

19   **A.    AFFIRMATIVE DEFENSE NO. 11 WAS PREVIOUSLY STRICKEN BY**

20   **THE COURT.**

21   The Court previously struck Affirmative Defense No. 11 to the extent it was "based on

22   Synopsys' alleged misrepresentations to customers."  *Synopsys*, 2015 WL 4719048 at *11.

23   Nevertheless, ATopTech, retained the full text of the affirmative defense, and it is still based on

24   Synopsys' alleged misrepresentations to customers.  *See* TACC ¶ 51 ("Having represented to

25   customers, including customers of ATopTech, that all reasonable steps to permit interoperability

26   would be permitted, Synopsys is stopped from now attempting to assert copyright claims to

27   various 'formats' which are necessary and appropriate to the interoperability that Synopsys

28   represented would be allowed.").  Accordingly, Affirmative Defense No. 11 must be stricken, as

1    previously instructed by the Court.

2        **B.    AFFIRMATIVE DEFENSE NO. 15 IS INSUFFICIENTLY PLED AND**
3                 **MUST BE STRICKEN.**

4        The Court previously struck ATopTech's Fifteenth Affirmative Defense, finding that it

5    was "devoid of any factual support." *Synopsys*, 2015 WL 4719048 at *11.  ATopTech has not

6    cured this deficiency.  Instead, it has alleged a number of irrelevant facts that do not support the

7    litany of affirmative defenses (*e.g.*, equitable estoppel, including laches, waiver, estoppel, implied

8    license, and unclean hands) asserted in Affirmative Defense No. 15.

9        First, ATopTech alleges that Synopsys has made the copyrighted works "available to

10   universities and colleges and encourage[ed] them to teach the use of these commands without any

11   indication that it would later claim that use of these command terms would infringe a copyright

12   interest it would claim."  TACC ¶ 55.  Notably, ATopTech does not plead that Synopsys

13   encouraged anyone, including ATopTech, to copy the works.

14       Second, ATopTech alleges that "Synopsys has known for more than 10 years prior to

15   bringing this action" that third parties published materials "in a manner affirmatively indicating

16   that they were not subject to any claim of copyright."  *Id.*  ATopTech does not allege any facts

17   explaining how these third party publishers indicated that the works were not subject to a claim of

18   copyright.  Nor does ATopTech plead that any of these publications were made on Synopsys'

19   behalf.

20       Third, ATopTech alleges that Synopsys "encouraged adoption of [the copyrighted] terms

21   by EDA engineers broadly."  *Id.*  ATopTech fails to plead that Synopsys ever encouraged

22   competing vendors to create unauthorized copies of its copyrighted works.  Finally, ATopTech

23   alleges that Synopsys "benefitted from millions of dollars of sales of its software products

24   promoted in this manner."  *Id.*  Yet ATopTech does not plead that ATopTech itself relied on any

25   of the alleged conduct when it chose to copy Synopsys' copyrighted works.

26       As shown below, none of the laundry list of equitable defenses is adequately supported

27   under these facts.

28

Motion to Dismiss TACC
Case No. 3:13-cv-02965-MMC (DMR)

**Equitable Estoppel**

Equitable estoppel requires, among other things, that Synopsys "intend that [its] conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960). That third party book authors encourage "adoption" of Synopsys' copyrighted works and that Synopsys educates students on the use of its works at most give rise to the unsurprising conclusion that Synopsys wants its products to be widely adopted and used by paying customers. Nothing in ATopTech's pleading suggests that Synopsys intended for ATopTech to copy the copyrighted works. Equitable estoppel also requires that ATopTech "must rely on the former's conduct to [its] injury." *Id.* ATopTech assertion that Synopsys benefits from the adoption of its copyrighted works is unrelated to the requirement that ATopTech rely on Synopsys' purported actions.

**Laches**

Laches was eliminated from copyright law when Congress enacted a three-year statute of limitations on copyright infringement actions, absent extraordinary circumstances. *Petrella v. MGM*, 134 S. Ct. 1962, 1974 (2014); *Lambert Corp. v. LBJC Inc.*, 2014 WL 2737913, at *5 (C.D. Cal. June 16, 2014). Even setting aside what might qualify as an "extraordinary circumstance," the touchstone of laches is an reasonable delay in filing suit. But ATopTech fails to allege that Synopsys was aware of ATopTech's infringing conduct "10-15 years" ago (indeed, ATopTech was not even in business 10-15 years ago) or to allege that it could have filed suit substantially earlier. Instead, ATopTech generally alleges that Synopsys knew of broad use "in EDA software tools." This does not state a claim of laches under any standard.

**Implied License/Waiver**

Nor do any of the facts pleaded plausibly give rise to an implied license to ATopTech. ATopTech alleges that Synopsys' authorized customers have an "implied license to use [the copyrighted] terms in the design of their products," "to provide their test results using [the copyrighted] terms to vendors of their choice," and "to request those terms be used in place-and-route software of their choice in order to correlate with PrimeTime software." TACC, ¶ 55. ATopTech does not allege that an implied license to Synopsys' customers to "request" a feature

1    grants any rights at all to ATopTech.  Nor does ATopTech allege that it requested that Synopsys

2    create the work and that Synopsys intended for ATopTech to distribute that work.  *See Asset*

3    *Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008).

4         **Unclean Hands**

5         Finally, ATopTech does not even attempt to explain its defense of "unclean hands," which

6    requires ATopTech to demonstrate, among other things, that Synopsys "was involved in a scheme

7    to defraud the public."  *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786

8    F.2d 1400, 1408 (9th Cir. 1986).  ATopTech has made no such showing.

9    **VI.**    **CONCLUSION**

10        For the forgoing reasons, Synopsys' requests the Court dismiss Counts III, VI and VIII

11   with prejudice, strike paragraphs 90-101 and 105-11 as immaterial, and strike ATopTech's

12   Eleventh and Fifteenth Affirmative Defenses.  Having now had four attempts to state a claim,

13   ATopTech's TACC should be dismissed with prejudice and without leave to amend.

14

15   Dated: November 5, 2015                    Respectfully submitted,

16                                              Jones Day

17

18                                             By:/s/ *David C. Kiernan*

19                                                 David C. Kiernan

20                                             Counsel for Plaintiff
                                               SYNOPSYS, INC.

21

22   NAI-1500571182

23

24

25

26

27

28