Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@JonesDay.com
Patrick T. Michael (State Bar No. 169745)
pmichael@JonesDay.com
Krista S. Schwartz (State Bar No. 303604)
ksschwartz@JonesDay.com
Joe C. Liu (State Bar No. 237356)
jcliu@JonesDay.com
Nathaniel P. Garrett (State Bar No. 248211)
ngarrett@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Heather N. Fugitt (State Bar No. 261588)
hfugitt@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone: +1.650.739.3939
Facsimile: +1.650.739.3900

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SYNOPSYS, INC.,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**ATOPTECH, INC.,**<br><br>   **Defendant.** | **Case No. 3:13-cv-02965-MMC (DMR)**<br><br>**PLAINTIFF SYNOPSYS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON DEFENDANT ATOPTECH'S AFFIRMATIVE DEFENSES**<br><br>**Date:**     December 4, 2015<br>**Time:**     9:00 a.m.<br>**Judge:**    **Hon. Maxine M. Chesney**<br>**Courtroom:**   **7, 19th Floor** |

PUBLIC - REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on December 4, 2015 at 9:00 a.m. before the Honorable

4  Maxine M. Chesney, United States District Court, San Francisco, California, Plaintiff Synopsys,

5  Inc. will, and hereby does, move the Court for an Order under Rule 56 of the Federal Rules of

6  Civil Procedure granting partial summary judgment in plaintiff's favor on Defendant ATopTech,

7  Inc.'s First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fifteenth Affirmative Defenses.

8  This motion is based on the accompanying Memorandum of Points and Authorities, Declaration

9  of Patrick T. Michael and exhibits attached thereto, Declaration of David T. Blaauw and exhibits

10 attached thereto, the complete files and records in this action, oral argument of counsel, and such

11 other and further matters as the Court may consider.

12

## RELIEF REQUESTED

13

Plaintiff respectfully requests that the Court grant partial summary judgment in plaintiff's

14 favor on defendant's First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fifteenth

15 Affirmative Defenses.

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.      STATEMENT OF ISSUES TO BE DECIDED ................................................ 1

II.     INTRODUCTION ......................................................................................... 1

III.    BACKGROUND ........................................................................................... 2

        A.      The Electronic Design Automation (EDA) Design Flow ...................... 2

        B.      The Parties and Their Products .......................................................... 3

        C.      Procedural History ............................................................................ 4

IV.     LEGAL STANDARD ................................................................................... 4

V.      ARGUMENT ............................................................................................... 5

        A.      ATOPTECH CANNOT MEET ITS BURDEN TO PROVE FAIR USE
                (THIRD AFFIRMATIVE DEFENSE) ...................................................... 5

                1.      ATopTech's Use of the Copyrighted Material Is Purely
                        Commercial and Is Not "Transformative" ................................... 5

                        (a)      ATopTech's Use of the Copyrighted Material Is
                                 Commercial ..................................................................... 6

                        (b)      ATopTech's Use Is Not Transformative.............................. 6

                2.      Synopsys' Copyrighted Input and Output Formats Are More
                        Expressive Than Functional...................................................... 9

                3.      ATopTech Copied Quantitatively and Qualitatively Important
                        Portions of Synopsys' Works.................................................. 11

                4.      ATopTech's Infringement Harms the Market for PrimeTime and
                        Derivative Works of PrimeTime............................................... 13

        B.      SYNOPSYS ALSO IS ENTITLED TO SUMMARY JUDGMENT ON
                MANY OF ATOPTECH'S REMAINING AFFIRMATIVE DEFENSES ......... 15

                1.      First Affirmative Defense—Statute of Limitations................... 15

                2.      Fourth Affirmative Defense—Merger ..................................... 16

                3.      Fifth Affirmative Defense—Scènes à Faire............................. 18

                4.      Sixth Affirmative Defense—De Minimis ................................. 19

                5.      Eighth Affirmative Defense—Good Faith ............................... 20

                6.      Ninth Affirmative Defense—Excuse of Performance .............. 20

                7.      Tenth Affirmative Defense—Estoppel and Waiver.................. 21

                        (a)      Estoppel ......................................................................... 22

                        (b)      Waiver ........................................................................... 24

                8.      Fifteenth Affirmative Defense—Equitable Defenses ............... 24

                        (a)      Laches ........................................................................... 24

                        (b)      Implied License .............................................................. 25

VI.     CONCLUSION............................................................................................ 25

# TABLE OF AUTHORITIES

Page

CASES

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001)......................................................................24

*Asset Mktg. Sys., Inc. v. Gagnon*,
    542 F.3d 748 (9th Cir. 2008)........................................................................25

*Atari Games Corp. v. Nintendo of Am. Inc.*,
    975 F.2d 832 (Fed. Cir. 1992).....................................................................16

*Balsley v. LFP, Inc.*,
    691 F.3d 747 (6th Cir. 2012).........................................................................9

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
    742 F. Supp. 2d 1101 (C.D. Cal. 2010) .................................................21, 22

*Brayton Purcell LLP v. Recordon & Recordon*,
    487 F. Supp. 2d 1124 (N.D. Cal. 2007) ......................................................21

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994).......................................................................................6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).......................................................................................4

*Davis v. Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001)..........................................................................7

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997)......................................................................9

*Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*,
    627 F.3d 376 (9th Cir. 2010).........................................................................4

*Elvis Presley Enters. v. Passport Video*,
    349 F.3d 622 (9th Cir. 2003), *overruled on other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011) (per curiam) ..............................................................................................6, 7, 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Fisher v. Dees,*
   794 F.2d 432 (9th Cir. 1986)..................................................................................19

*Freedman v. Select Info. Sys., Inc.,*
   No. C-82-6448, 1983 WL 270 (N.D. Cal. Jan. 31, 1983)......................................21

*Hampton v. Paramount Pictures Corp.,*
   279 F.2d 100 (9th Cir. 1960)..................................................................................22

*Harper & Row, Publishers v. Nation Enters.,*
   471 U.S. 539 (1985) ........................................................................................ passim

*Micro Star v. Formgen Inc.,*
   154 F.3d 1107 (9th Cir. 1998)...........................................................................9, 14

*Monge v. Maya Magazines, Inc.,*
   688 F.3d 1164 (9th Cir. 2012).........................................................................13, 20

*Oracle Am., Inc. v. Google Inc.,*
   750 F.3d 1339 (Fed. Cir. 2014)...................................................................... passim

*Oracle Am., Inc. v. Google Inc.,*
   810 F. Supp. 2d 1002 (N.D. Cal. 2011) ...........................................................14, 19

*Oracle USA, Inc. v. Rimini St., Inc.,*
   6 F. Supp. 3d 1108, 1126 (D. Nev. 2014) .............................................................16

*Petrella v. MGM,*
   134 S. Ct. 1962 (2014) ...........................................................................................24

*Polar Bear Prods. v. Timex Corp.,*
   384 F.3d 700 (9th Cir. 2004)..................................................................................15

*Pye v. Mitchell,*
   574 F.2d 476 (9th Cir. 1978)..................................................................................20

*Sega Enters. v. Accolade, Inc.,*
   977 F.2d 1510 (9th Cir. 1992)..................................................................................9

*United States v. King Features Entm't, Inc.,*
   843 F.2d 394 (9th Cir. 1988)............................................................................21, 24

**TABLE OF AUTHORITIES**
(continued)

Page

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
    342 F.3d 191 (3d Cir. 2003)............................................................9, 14

*Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*,
    447 F.3d 769 (9th Cir. 2006)................................................................11

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000)................................................................5

*Zomba Enterprises, Inc. v. Panorama Records, Inc.*,
    491 F.3d 574 (6th Cir. 2007)..................................................................7


**STATUTES**

17 U.S.C. § 107 ......................................................................................5

17 U.S.C. § 507(b) ................................................................................15


**OTHER AUTHORITIES**

4-13 Nimmer on Copyright § 13.07 (2015) .........................................22

Fed. R. Civ. P. 56(a)................................................................................4

Webster's Third New Int'l Dictionary 1858 (2002) ............................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      <u>STATEMENT OF ISSUES TO BE DECIDED</u>**

Whether Synopsys is entitled to summary judgment in its favor on ATopTech's First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fifteenth Affirmative Defenses.

**II.      <u>INTRODUCTION</u>**

ATopTech copied numerous input and output formats from Synopsys' PrimeTime software into ATopTech's Aprisa software.  Unable to dispute copying, ATopTech asserted 19 affirmative defenses to Synopsys' copyright infringement and breach of contract claims—from copyright defenses like fair use to equitable defenses like estoppel.  When ATopTech revealed the bases for its defenses, two common themes emerged:  ATopTech misunderstands the legal requirements for many defenses, and has no evidence to support them under the proper standards.

To support its Third Affirmative Defense—fair use—ATopTech relies on facts irrelevant to the four fair use factors.  First, it focuses on the different overall purposes of PrimeTime and Aprisa, and disregards that both products use the copyrighted input and output formats for the same purpose.  Second, it emphasizes the functional nature of PrimeTime, but ignores the expressive content of the asserted input and output formats that Synopsys created.  Third, in addressing the amount and substantiality of its copying, ATopTech fails to address the qualitative significance of its copying and erroneously focuses on the quantity of its copying in relation to its own product, while the law requires the quantity to be analyzed in relation to Synopsys' product.  As for the fourth factor, ATopTech ignores the impact of its copying on the market for Synopsys' derivative works, including Synopsys' IC Compiler software, which competes directly with Aprisa.  In short, ATopTech lacks sufficient evidence to carry its burden on the fair use defense.

ATopTech's other copyright-specific defenses fare no better.  By disregarding that the clock for the Copyright Act's statute of limitations only begins to run once a plaintiff discovers the violation, ATopTech fails to offer any evidence on the core inquiry of its First Affirmative Defense.  ATopTech confuses the legal framework for the merger (Fourth Affirmative Defense) and *scènes à faire* (Fifth Affirmative Defense) doctrines by focusing on alternatives and external factors at the time of copying rather than at the time of creation, and thus lacks evidence to meet

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

its burdens.  As with the third fair use factor, ATopTech misunderstands the *de minimis* defense (Sixth Affirmative Defense), and thus only addresses the significance of its copying in relation to its own work, rather than in relation to Synopsys' work.  And, its "good faith" defense (Eighth Affirmative Defense) is no defense to copyright infringement at all.

ATopTech's Ninth Affirmative Defense, which is limited to Synopsys' breach of contract claim, turns on an erroneous reading of the contract; Synopsys' predecessor in interest never addressed whether its product infringed any third-party intellectual property, and its assertion of ownership was not false.  ATopTech's Tenth and Fifteenth Affirmative defenses attempt to state a series of equitable defenses—including estoppel, waiver, laches, and implied license—none of which are supported by evidence.

ATopTech has not and cannot meet its burden on these affirmative defenses. Accordingly, the Court should enter summary judgment in Synopsys' favor on ATopTech's First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fifteenth Affirmative Defenses.

## III.  BACKGROUND

### A.  The Electronic Design Automation (EDA) Design Flow

This action concerns electronic design automation "EDA" software.  EDA software is used by engineers to design and test integrated circuits (ICs).  *See* Blaauw Decl. ¶ 6; Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 8-9.[1]  The EDA design flow includes multiple steps, each involving various EDA software tools.  *See* Blaauw Decl. ¶ 6; Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 10-18. Steps in a typical design flow include (a) logic synthesis, which takes a designer's abstract representation of desired circuit behavior and generates a combination of logic gates—typically including hundreds of thousands if not millions of gates—that implement the desired circuit behavior; (b) place-and-route, which determines how to physically lay out the combination of logic gates within a specified area (place) and wire them together (route); and (c) timing sign-off to verify that timing of the circuit meets the designer's timing constraints.  *See* Blaauw Decl. ¶¶ 7-10; Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 12-17.

An important issue in designing a circuit is timing, or how fast the circuit will process

---

[1] By citing the opinions of certain ATopTech experts in this motion, Synopsys is not conceding the admissibility of any testimony ATopTech may seek to offer from those experts.

signals.  At various points in the EDA flow, designers use static timing analysis to verify and improve the timing of the design.  *See* Blaauw Decl. ¶ 9; Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 14, 21-22.  This typically requires many iterations.  Blaauw Decl. ¶ 9.  While a stand-alone static timing analysis tool (such as Synopsys' PrimeTime) is often used in conjunction with other EDA tools to perform this iterative analysis, other EDA tools often include their own timing analysis engines because timing is a very important issue.  *See* Blaauw Decl. ¶¶ 9-10, 13; Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 21-22.  At the end of the EDA design flow, many designers will again use the stand-alone static timing analysis tool to verify that the design meets the designer's timing requirements before sending the design to be fabricated.  This last step is sometimes called timing "sign-off."  *See* Blaauw Decl. ¶ 10; Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 16-17.

Each EDA tool typically has a set of input and output formats used to receive input from the user (in the case of input formats), and provide output to the user (in the case of output formats).  *See* Blaauw Decl. ¶ 11; Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 33, 35.  The user's input to the tool must conform to the particular input formats supported by the tool.  For PrimeTime (as well as various other Synopsys products, and ATopTech's Aprisa product), those input formats consist of a set of commands, options to commands, parameters (also called variables), objects and attributes.  *See* Blaauw Decl. ¶ 11; Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 33, 35.  Both PrimeTime and Aprisa also provide outputs in the form of reports that lay out results calculated by the tool using organized and labeled formats.  Blaauw Decl. ¶ 11.

**B.    The Parties and Their Products**

Synopsys is a leading provider of EDA software.  Since 1986, Synopsys has been developing EDA software that enables engineers to design and create integrated circuits.  Michael Decl. Ex. 2 (10-K) at 2.  Synopsys released its first product, a logic synthesis tool named Design Compiler, in 1988.  Michael Decl. Exs. 3, 4 (DC Copyright Reg).  Building off of Design Compiler, in 1997 Synopsys released its industry-leading static timing analysis tool, PrimeTime.  Michael Decl. Ex. 5 (Bootehsaz Tr.) at 18:11-20:8.  And building off of those tools (and others), in 2004 Synopsys released its place-and-route tool, IC Compiler, and more recently IC Compiler II.  Michael Decl. Ex. 6 (IC Compiler website); Ex. 7 (Sheng Tr.) 37:4-7.

ATopTech also develops EDA software.  In particular, ATopTech develops a place-and-route tool—Aprisa—that competes with Synopsys' IC Compiler.  Michael Decl. Ex. 1 (Kahng Rpt.) ¶ 126; Ex. 8 (Thune Tr.) at 125:14-24.  In 2010, ATopTech entered a contractual relationship with another EDA company, ExtremeDA, which offered a static timing analysis product, GoldTime, that competed with PrimeTime.  *See* Michael Decl. Ex. 9 (Hoogenstryd Ex. 11).  In 2011, Synopsys acquired ExtremeDA, and became the assignee of the Connections Program License Agreement ("CPLA") between ExtremeDA and ATopTech.  *Id.* at 13.

### C.    Procedural History

Synopsys sued on June 26, 2013 for copyright infringement and breach of the CPLA, among other claims.  ECF No. 1.  In response, ATopTech asserted numerous affirmative defenses, several of which this Court struck with leave to replead.  *See, e.g.*, ECF No. 342.  Most recently, Synopsys moved to strike the Fifteenth Affirmative Defense pled in ATopTech's Third Amended Cross-Complaint.  *See* ECF No. 382 at 15-17.  That motion is still pending.

## IV.    LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on an issue, the moving party bears the burden only of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  Once the moving party carries its initial burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The nonmoving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (internal citations omitted).

## V.   ARGUMENT

### A.   ATOPTECH CANNOT MEET ITS BURDEN TO PROVE FAIR USE (THIRD AFFIRMATIVE DEFENSE)

Fair use is an affirmative defense to copyright infringement.  *Harper & Row, Publishers v. Nation Enters.*, 471 U.S. 539, 561 (1985).  Under the fair use doctrine, an otherwise infringing use of a copyrighted work might be excused as "fair" if it was "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research."  17 U.S.C. § 107.  These examples provide guidance for application of the four factors relevant to a fair use defense:  "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  *Id.*; *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1373 (Fed. Cir. 2014).  As the defendant, ATopTech bears the burden to prove its fair use defense.  "If there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work."  *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000).  Because ATopTech cannot meet its burden to establish that its use of Synopsys' copyrighted input and output formats is fair, Synopsys is entitled to summary judgment.

### 1.   ATopTech's Use of the Copyrighted Material Is Purely Commercial and Is Not "Transformative"

The first fair use factor, which examines the purpose and character of the use, involves two sub-issues:  (1) "whether the use serves a commercial purpose," and (2) whether and to what extent the new work is transformative.  *Oracle*, 750 F.3d at 1374.  Because the "purpose and character" of ATopTech's use of Synopsys' input and output formats is "commercial" and not "transformative," the first factor weighs heavily against fair use.

### (a)    ATopTech's Use of the Copyrighted Material Is Commercial

"'[Every] commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'" *Harper & Row*, 471 U.S. at 562 (citation omitted).  The fact that a defendant's use of copyrighted material "is commercial as opposed to non-profit weighs against a finding of fair use." *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003), *overruled on other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (per curiam); *see also Oracle*, 750 F.3d at 1375.  It is undisputed that ATopTech uses Synopsys' copyrighted input and output formats for purely commercial purposes. ███████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ███████████████████████████████  ATopTech's commercial purpose weighs heavily against a finding of fair use.

### (b)    ATopTech's Use Is Not Transformative

A "transformative" use is one that "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  This inquiry focuses on how the copyrighted material is used *within a work*, rather than the overall use of the original and new works.  Thus, "[c]ourts have described new works as 'transformative' when 'the works use copyrighted material for purposes distinct from the purpose of the original material.'" *Oracle*, 750 F.3d at 1374 (quoting *Elvis Presley Enters.*, 349 F.3d at 629).  Rather than offer evidence that its Aprisa product uses the copyrighted input and output formats for a different purpose than Synopsys' PrimeTime product uses those formats, ATopTech contends only that the products themselves have different purposes.  That the products may have different purposes is irrelevant to the question whether ATopTech transformed the use of the formats *within the products*.  Thus, ATopTech has no evidence on the fundamental question of transformative use.  It is undisputed that the copied formats are put to the same use within Aprisa and PrimeTime.  ATopTech's use of Synopsys' copyrighted material is therefore not transformative.

Relying on its expert, Dr. Kahng, ATopTech contends its use is transformative because Aprisa is a place-and-route tool while PrimeTime is a static timing analysis tool. Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 123-26. But the question is whether a defendant transformed the copyrighted material itself, not whether the plaintiff has incorporated that material into a different product. *See Elvis Presley Enters.*, 349 F.3d at 629 (using copyrighted film clips in documentary was not transformative because clips were "simply rebroadcast for entertainment purposes that Plaintiffs rightfully own"); *Davis v. Gap, Inc.*, 246 F.3d 152, 174-75 (2d Cir. 2001) (finding non-transformative a photo advertisement in which a model was wearing copyrighted eye wear, even though the advertisement and the eyeglasses are two different products that serve two different purposes). Put another way, "the end-user's utilization of the product is largely irrelevant; instead, the focus is on whether [the] alleged infringer's use [of the copyrighted material] is transformative." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 582 (6th Cir. 2007). ATopTech's approach to transformative use is incorrect as a matter of law. It has no evidence that Aprisa uses the copied input and output formats for a different purpose than those formats are used in PrimeTime, and thus cannot show a transformative use.

In fact, while PrimeTime and Aprisa may be different types of EDA software, the infringed input and output formats play *identical* roles in PrimeTime and Aprisa—both are used in connection with static timing analysis. ████████████████████████

1    Michael Decl. Ex. 11 (Thune Tr.) at 82:2-15.[2] ████████████████████████████████

2    ████████████████████████████████████████████████████

3          ███████████████████████████████████████████████

4          ████████████████████████████████

5    Michael Decl. Ex. 12 (Bai Tr.) at 61:17-62:11 (objection omitted); *see Oracle*, 750 F.3d at 1375

6    ("Where the use 'is for the same intrinsic purpose as [the copyright holder's] … such use

7    seriously weakens a claimed fair use.'") (citations omitted).  A comparison of PrimeTime and

8    Aprisa documentation merely reinforces that the copied formats have the same purpose and

9    message.  *See* Blaauw Decl. ¶¶ 14-15 & Ex. 3 (Transformative Chart).

10    ███████████████████████████████████████████████████

11    █████████████████████████████████████████████████████

12    ██████████████████████████████████████████. Michael Decl. Ex. 12 (Bai Tr.) at

13    79:24-80:16; Ex. 13 (J. Wang Tr.) at 147:12-148:7. ████████████████████████

14    ████████████████████████████████████████████████████████

15    ████████████████████████████████████████████████████████

16    ██████████████████████████████████████ Michael Decl. Ex. 14 (Tzeng Tr.) at

17    110:13-111:3 (emphasis added).  That is, customers wanted Aprisa to have the same input and

18    output formats—and for those formats to have the same purpose—as PrimeTime.

19          Dr. Kahng frames the issue in terms of correlation. ██████████████████████

20    ████████████████████████████████████████████████████████

21    ████████████████████████████████████████████████████████

22    ████████████████████████████████████████ Michael Decl. Ex. 1

23    (Kahng Rpt.) at 27:5-6.  Thus, according to its own expert, ATopTech copied PrimeTime's input

24    and output formats so that users of Aprisa and PrimeTime would have access to the same timing

25    features using precisely the same expression.  That is an identical use, not a transformative use.

26    ███████████████████████████████████████████████████████

27    ████████████████████████████████████████████████████████

28    ████████████████████████████████████████████

*See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1113 n.6 (9th Cir. 1998) (MAP files that instructed plaintiff's copyrighted videogame to compile derivative 'levels' of the game "can hardly be described as transformative," because both works served the same purpose—displaying levels of the videogame); *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012) (use was not transformative where copyrighted "picture was unaltered other than for minor cropping and was merely reprinted in a different medium—a magazine rather than a website," because the use in each medium was the same—"to shock, arouse, and amuse").  The non-transformative use of Synopsys' copyrighted input and output formats also weighs heavily against a finding of fair use.

### 2.      Synopsys' Copyrighted Input and Output Formats Are More Expressive Than Functional

The second factor, which is not "terribly significant in the overall fair use balancing," concerns "the nature of the copyrighted work" or the degree to which it is creative and expressive, rather than informational or functional.  *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997).  Although computer programs have functional components, where "there are many possible ways of accomplishing a given task or fulfilling a particular market demand, the programmer's choice of program structure and design may be highly creative and idiosyncratic."  *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992).  Thus, the touchstone of the analysis is whether the *specific elements that have been copied* are more expressive than functional.  *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 199 (3d Cir. 2003) (differentiating between "functional character and purpose of the database" that stored copied clips, and the character of copied clips themselves).  ATopTech, however, focuses on the overall function of PrimeTime.  Thus, ATopTech lacks evidence that Synopsys' copyrighted input and output formats are more functional than expressive.

Dr. Kahng's core opinion is that ████████████████████████████████████ Michael Decl. Ex. 1 (Kahng Rpt.) at 57.  Dr. Kahng does not opine that Synopsys failed to employ expressive choice when it developed PrimeTime's input and output formats.  Instead, he posits that adopting different terminology ████████████████████████████████ ████████      Michael Decl. Ex. 1 (Kahng Rpt.) ¶ 104; *see also id.* ¶ 100 ████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████[3]  But commercial viability of an infringing product is

irrelevant to whether the formats Synopsys included in PrimeTime are expressive.  To the extent

ATopTech addresses the expressive nature of any copyrighted elements of PrimeTime, Dr. Kahng

merely notes his preference for the "straightforward" formats used by Synopsys rather than the

"quaint" naming conventions of a competitor.  Michael Decl. Ex. 1 (Kahng Rpt.) ¶ 99.  But even

electing to use "straightforward" formats reflects an expressive design choice.  *Compare*

Webster's Third New Int'l Dictionary 1858 (2002) (defining "quaint" as "uncommon, old-

fashioned, or unfamiliar but often agreeable or attractive in character, appearance, or action"),

*with id.* at 2254 (defining "straightforward" as "free from circumlocution or obscurity").  And Dr.

Kahng does not offer any analysis of Synopsys' output formats, thereby conceding that those

elements of the copyrighted work are expressive.

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Michael Decl. Ex. 12 (Bai Tr.) at

65:16-21, 72:4-11, 80:18-81:6.  Instead of "report_timing," for example, ███████████████

████████████████████████████████████████████████████████████████████

██████████████████████ Michael Decl. Ex. 1 (Kahng Rpt.) ¶ 109.  And it is undisputed that

Synopsys invested significant time and money in the development of its command set and output

format.  Synopsys' R&D Group Director of PrimeTime testified that its input and output formats

(sometimes referred to as the user interface or "UI" by Synopsys) is "integral" to the development

of PrimeTime.  Michael Decl. Ex. 16 (Kucukcakar Tr.) at 54:15-56:17.  Indeed, PrimeTime holds

UI review meetings to consider each proposed format addition or change, evaluate alternatives,

---

[3] Dr. Kahng contends that Aprisa and PrimeTime must interoperate for Aprisa to be commercially viable and that ATopTech's use of the PrimeTime formats is therefore "fair."  But interoperability is not a concern here because those products do not directly interact with one another; that is, the Aprisa software does not call on methods in the PrimeTime software or vice versa.  ████████████████████████████████████████████████████████████████

████████████████████████████ Michael Decl. Ex. 17 (Chang Tr.) at 27:23-28:23; Ex. 18 (Liu Tr.) at 167:11-168:17; Ex. 14 (Tzeng Tr.) at 114:1-22.  Rather than interoperability, what Dr. Kahng is referring to is correlation between the two tools, or how close the timing results are that are returned by the tools.  *See, e.g.*, Michael Decl. Ex. 12 (Bai Tr.) at 32:18-33:02.  Correlation, however, is irrelevant to fair use.

and decide whether the proposal is consistent with Synopsys' design goals.  *Id.*  That the software was developed with substantial investment over many years further "weighs against" a finding of fair use.  *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 780 (9th Cir. 2006).

### 3.    ATopTech Copied Quantitatively and Qualitatively Important Portions of Synopsys' Works

The third fair use factor—"the amount and substantiality of the portion used in relation to the copyrighted work as a whole"—requires an evaluation of "both the quantity of the work taken and the quality and importance of the portion taken," including whether the infringer took "'the heart'" of the work.  *Elvis Presley Enters*, 349 F.3d at 630 (quoting *Campbell*, 510 U.S. at 586).  ATopTech lacks any evidence relevant to this factor because it misunderstands the legal standard.  Specifically, ATopTech does not have any evidence regarding the qualitative importance of the copied formats to Synopsys' software, and its quantitative analysis incorrectly focuses on the amount of copying as a percentage of its own software, rather than Synopsys' software.

The qualitative aspect of the third fair use factor focuses on the value or importance of the copied portions of the copyrighted work to the work itself.  For example, in *Harper & Row*, the Supreme Court found that the use of 300 words from Gerald Ford's 200,000-word unpublished memoir was not fair use, because "[t]he portions actually quoted were selected … as among the most powerful passages in those chapters."  471 U.S. at 565-66.  Similarly, the Ninth Circuit held that copying even short passages of Elvis Presley's copyrighted performances was not fair use because, "although the clips are relatively short when compared to the entire shows that are copyrighted, they are in many instances the heart of the work.  What makes these copyrighted works valuable is Elvis' appearance on the shows, in many cases singing the most familiar passages of his most popular songs."  *Elvis Presley Enters.*, 349 F.3d at 630.  ATopTech's expert provided no analysis of the qualitative importance of the copied formats.  Michael Decl. Ex. 1 (Kahng Rpt.) ¶¶ 130-36 (offering only quantitative analysis of ATopTech's copying).

In fact, ATopTech copied the input and output formats at the "heart" of PrimeTime—its timing engine. ███████████████████████████████████████████████
███████████████████████. Michael Decl. Ex. 8 (Thune Tr.) at 155:25-156:1. ██████████████

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮. Michael Decl. Ex. 19 (Y. Wang Tr.) at 134:5-12 ▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮ *see also id.* at 193:3-9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮

11 Quantitative analysis focuses on the amount copied in relation to the copyrighted work,

12 not the accused work. In the words of Judge Learned Hand, "'no plagiarist can excuse the wrong

13 by showing how much of his work he did not pirate.'" *Harper & Row*, 471 U.S. at 565 (quoting

14 *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936), *cert. denied*, 298 U.S.

15 669 (1936)). ATopTech attempts to do just that, claiming that its copying should be excused

16 because many of Aprisa's input formats were not copied from Synopsys. *See* Michael Decl. Ex. 1

17 (Kahng Rpt.) ¶¶ 130-36. That is irrelevant.

18 When the number of input formats ATopTech copied from Synopsys is compared in

19 relation to the number of input formats in *PrimeTime* as a whole, it is clear that ATopTech copied

20 a substantial quantity of input formats. ATopTech copied at least 119 commands, 199 options, 57

21 variables, and 75 attributes into Aprisa from PrimeTime, amounting to 24% of Synopsys' non-

22 SDC commands, 29% of Synopsys' non-SDC options, 13% of Synopsys' non-SDC variables, and

23 over 11% of Synopsys, non-SDC attributes. Blaauw Decl. ¶¶ 18-19.[4]

24 In short, not only has ATopTech offered no evidence regarding the amount and

25 substantiality of its copying as compared to PrimeTime as whole, but it cannot rebut the fact that

26 [4] Synopsys makes available a subset of its input formats—known as Synopsys Design Constraints or SDC—to other EDA tool providers under an open source license. Michael Decl.

27 Ex. 20 (SDC webpage). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Michael Decl. Ex. 17 (Chang Tr.) at 100:22-102:1), so a proper quantitative analysis, as presented here, removes SDC

28 formats from the calculation.

it copied quantitatively and qualitatively substantial portions of Synopsys' copyrighted work. The third factor also weighs heavily against fair use.

### 4.   ATopTech's Infringement Harms the Market for PrimeTime and Derivative Works of PrimeTime.

The fourth factor, which the Supreme Court has held "is undoubtedly the single most important element of fair use," considers "the effect of the use upon the potential market for or value of the copyrighted work." *Harper & Row*, 471 U.S. at 566-567 (citations omitted). "More important, to negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.'" *Id.* at 568 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)) (emphasis added in *Harper & Row*). "This inquiry must take account not only of harm to the original but also of harm to the market for derivative works." *Id.*; *see also Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1181 (9th Cir. 2012) (the "potential market" in factor four "includes harm to derivative works"). ATopTech never addresses the market for derivative works nor the impact of potential widespread copying on the market for Synopsys' works, and thus cannot offer any evidence on this "most important" fair use factor.

Instead, Dr. Kahng's analysis is limited to the impact of Aprisa's use of the copyrighted input and output formats on the market for PrimeTime itself. ████████████████████████

████████████████████████████████████████████████████████████

Michael Decl. Ex. 1 (Kahng Rpt.) at 62-63. But he never addresses the market for derivative works. ████████████████████████████████████████████████

████████████████████████████████████ Michael Decl. Ex. 21 (Tregillis Rpt.) at 11. The PrimeTime team shares source code, command names, and operational information with the IC Compiler team to achieve consistency in user experience between the tools. *See* Michael Decl. Ex. 16 (Kucukcakar Tr.) at 44:13-45:21, 150:15-23; Ex. 7 (Sheng Tr.) at 40:6-42:16; Ex. 23 (Hoogenstryd Tr.) at 107:21-108:10. Given that PrimeTime was a preexisting work to IC Compiler and that those products share elements, IC Compiler is a derivative work of PrimeTime. Blaauw Decl. ¶¶ 16-17.

Thus, ATopTech has invaded and is negatively impacting an *actual* market for derivative works, not just a potential one. ██████████████████████████████████████

██████████████████████████████████. Michael Decl. Ex. 21 (Tregillis Rpt.) at 3.  And if this behavior were widespread, the market for IC Compiler would be further impacted as other infringers took business from Synopsys.[5]  *See Micro Star*, 154 F.3d at 1112 (finding harm to a derivative market even though the infringing software did not contain any copyrighted element, because the "copyright owner holds the right to create sequels" regardless of whether the same language is used); *Video Pipeline*, 342 F.3d at 202-03 (cutting trailers from films would supplant market for copyright holder's own trailers, which are derivative works of the copyrighted films). ████████████████████████████████████████████

████████████████████████████████. Michael Decl. Ex. 25 (Kahng Rebuttal) ¶ 42.

Moreover, Dr. Kahng's contention that ATopTech's infringement enhances the value of and market for PrimeTime is meritless and unsupported speculation.  First, Dr. Kahng does not explain how Aprisa would drive sales of what he claims is the industry standard sign-off tool already.  *See* Michael Decl. Ex. 1 (Kahng Rpt.) ¶ 17 ████████████████████████████

████████████████████████████████████████████ Second, and fatal to Dr. Kahng's opinion, is that arguments that there will be no harm to the copyrighted work itself are unavailing where, as here, the evidence shows the infringement affected the market for derivative works. *See, e.g.*, *Oracle Am., Inc. v. Google Inc.*, 810 F. Supp. 2d 1002, 1012-13 (N.D. Cal. 2011) (rejecting argument that this factor favored fair use because "Android has contributed positively to the market for the copyrighted works by increasing the number of Java language developers" where there was evidence the infringement locked Oracle out of a derivative market for Java—the smartphone market).

In summary, the effect of ATopTech's use on the potential market for or value of Synopsys' copyrighted works, like the other factors, weighs heavily against fair use.  Because ATopTech has not offered evidence to carry its burden on the fair use factors, Synopsys is

---

[5] In fact, the effect on Synopsys' market would be even broader because Synopsys tries to use consistent input and output formats across all of its tools, not just PrimeTime and IC Compiler.  Michael Decl. Ex. 22 (Cureton Tr.) at 30:9-34:6 (addressing common terms in PrimeTime and "other products").

entitled to summary judgment on ATopTech's Third Affirmative Defense.

**B.     SYNOPSYS ALSO IS ENTITLED TO SUMMARY JUDGMENT ON MANY OF ATOPTECH'S REMAINING AFFIRMATIVE DEFENSES**

ATopTech's affirmative defenses based on the statute of limitations, merger, *scènes à faire*, *de minimis*, good faith, breach, estoppel, waiver, and other equitable doctrines also warrant summary judgment.  As with its "evidence" of fair use, ATopTech lacks any evidence to support those defenses, relying instead on its erroneous understanding of the applicable legal rules.

### 1.     First Affirmative Defense—Statute of Limitations

ATopTech's First Affirmative defense asserts that Synopsys is not entitled to "any claim for damages or relief arising from any act of copyright infringement that allegedly occurred more than three years prior to the commencement of this action" because any such claim is barred by 17 U.S.C. § 507(b).  ECF No. 378.  The statute of limitations, however, "does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."  *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 706-07 (9th Cir. 2004).  As a matter of law, ATopTech cannot satisfy its burden of proof on the statute of limitations.

ATopTech has not presented any evidence that Synopsys was aware of ATopTech's infringement, or reasonably should have been aware of such infringement, more than three years before Synopsys filed this suit on June 26, 2013.  In fact, ATopTech did not even seek discovery on this topic.  Nor does ATopTech's pleading allege any facts that could support a statute of limitations defense.  *See* ECF No. 378 ¶ 41.  And ATopTech's damages expert does not address whether the statute of limitations is applicable in this case or discuss any facts bearing on Synopsys' knowledge.  Instead he simply provides damages calculations for both scenarios—for all of ATopTech's infringement and for infringement within the asserted limitations period.  Michael Decl. Ex. 21 (Tregillis Rpt.) at 3, 41.

Synopsys had no opportunity to learn of the infringement more than three years before it filed suit. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████.  *See* Michael Decl. Ex. 8 (Thune Tr.) at 202:2-204:21, 235:22-236:25; Ex. 11 (Thune Tr.) at 64:16-65:16; ECF No. 283-1 ¶ 4 ████████████████████ ████████████████████████).  Synopsys, as a competitor, had no access to those products, and ATopTech only disclosed its product documentation in discovery, after Synopsys sued.  In fact, ATopTech denied copying *any* Synopsys proprietary material just weeks before this suit.  Michael Decl. Ex. 31 (6/17/13 Michael - Eberhart Email).  Because there is no evidence that Synopsys knew or reasonably should have known about the infringement before June 26, 2010, Synopsys is entitled to summary judgment on ATopTech's statute-of-limitations defense.  *See Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1108, 1126 (D. Nev. 2014) (granting summary judgment on statute-of-limitations defense to copyright infringement where no evidence supported copyright holder's actual or imputed knowledge).

## 2.    Fourth Affirmative Defense—Merger

ATopTech's Fourth Affirmative Defense asserts that Synopsys' copyrighted works "do not constitute protected expression under the doctrine of merger, in that the asserted elements of the formats are expressions of processes and functions that are necessary to correlate with and interoperate with an essential sign-off software tool."  ECF No. 378 ¶ 44.  ATopTech misstates the legal standard for merger, which focuses on the availability of alternative expressions *at the time the copyrighted work was created*, and it lacks any evidence to support its merger defense under the correct legal standard.

The doctrine of merger provides that, "when there are a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and the expression becomes unprotected." *Oracle*, 750 F.3d at 1359 (citations omitted).  "The unique arrangement of computer program expression … does not merge with the process so long as alternate expressions are available." *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 840 (Fed. Cir. 1992).  This analysis focuses on the options that were available to the copyright holder at the time it created the copyrighted works, not "on the options available to [the infringer] at the time of copying." *Oracle*, 750 F.3d at 1361.

ATopTech has no evidence that there was only one option available to Synopsys at the

time it created the copyrighted input and output formats.  Dr. Kahng did not even attempt to

establish that there were no alternatives available to Synopsys at the time of creation. ███

███████████████████████████████████████████ *See* Michael Decl. Ex. 1 ████

█████████████████████████████████████████████████████

████████████████████ *id.* ¶ 99 (█████████████████████

█████████████████████████████ Michael Decl. Ex. 24 (Kahng Tr.)

at 196:25-197:1 ███████████████████████████████████

████████████ In fact, in attempting to rebut a Synopsys expert's demonstration of the

wide array of alternatives available for each asserted format, █████████████████

███████████████████████████████████████████████

███████████████████████████████████ Michael Decl. Ex. 25

(Kahng Rebuttal) at 18 ¶ 38 (exclamation point in original).  As in *Oracle*, Synopsys was not

"selecting among preordained names and phrases to create" its formats; rather, it had thousands of

options as to the selection and arrangement of the formats ATopTech copied.  750 F.3d at 1361.

"Because 'alternative expressions [we]re available,' there is no merger." *Id.* (quoting *Atari*, 975

F.2d at 840).

ATopTech's focus on the purported necessity "to correlate with and interoperate" with

PrimeTime is misplaced.  ECF No. 378 ¶ 44.  First, merger is not concerned with what options

were available to the infringer.  *Oracle*, 750 F.3d at 1361.  Second, there is no dispute that once

Synopsys created its formats and attracted customers to its tools, competing EDA tool vendors

like ATopTech would want to use those formats to make a transition away from Synopsys tools

easier on those customers.  But nothing prevented ATopTech from creating its own formats to

achieve the same results provided by Synopsys' tools.  *See* Michael Decl. Ex. 1 (Kahng Rpt.)

¶ 100 █████████████████████████████████████████████

███████████████████████████████ "In such circumstances, the chosen

expression simply does not merge with the idea being expressed." *Oracle*, 750 F.3d at 1361.

In short, the doctrine of merger requires a showing that there was only one way to express

an idea at the time of authorship.  ATopTech cannot meet this burden.

### 3.      Fifth Affirmative Defense—*Scènes à Faire*

ATopTech's Fifth Affirmative Defense asserts that Synopsys' copyrighted works "lack originality, are industry standards and practices, are necessary for interoperability, and are not protectable under the doctrine of *scènes à faire*."  ECF No 378 ¶ 45.  Much as it does with its related merger defense, ATopTech misstates the legal standard by focusing on external factors when it began copying Synopsys' asserted formats, and fails to provide any evidence to support its *scènes à faire* defense under the proper legal standard, which turns on external factors at the time the copyrighted works were created.

"In the computer context, the scene[s] a faire doctrine denies protection to program elements that are dictated by external factors such as the mechanical specifications of the computer on which a particular program is intended to run or widely accepted programming practices within the computer industry." *Oracle*, 750 F.3d at 1363 (internal citation and quotation marks omitted).  That users or industry participants later become accustomed to copyrighted elements does not provide a defense to infringement because, "[l]ike merger, the focus of the scenes a faire doctrine is on the circumstances presented to the creator, not the copier." *Id.* at 1364.

ATopTech does not provide any evidence that Synopsys' input and output formats were dictated by external factors *at the time the formats were created*.  It contends that the formats at issue "are industry standards and practices," "are necessary for interoperability," "are commonplace expressions in the industry," "are naturally associated with the software and hardware constraints, functions and standards in the industry," and are "widely accepted circuit design terms within the industry" (ECF No 378 ¶ 45), but provides no evidence that these external factors dictated Synopsys' choices when Synopsys created the formats.  *See* Michael Decl. Exs. 33-35 (Bootehsaz Charts).

Instead, ATopTech attempts to present evidence that Synopsys' asserted formats became a *de facto* standard after their creation.  For example, Dr. Kahng cites a book about PrimeTime commands as evidence that the commands in that book are "used widely in U.S. Universities." Michael Decl. Ex. 1 (Kahng Rpt.) ¶ 65 (citing Himanshu Bhatnagar, "Advanced ASIC Chip

Synthesis: Using Synopsys® Design Compiler(TM) Physical Compiler(TM) and PrimeTime®" Kluwer 1999).  But a book about the widespread use of PrimeTime commands merely establishes that those commands are associated with PrimeTime, not that those commands were in widespread use or standard ways of expressing the corresponding features *before* Synopsys created them.  Similarly, although Dr. Kahng focuses on "pre-2010" sources describing the state of the industry in the 2000s (Michael Decl. Ex. 1 (Kahng Rpt.) at 28-34), public use of Synopsys' copyrighted formats after they were created is irrelevant to the *scènes à faire* doctrine.  The question is not whether Synopsys' tools ultimately found widespread acceptance, but whether "external factors" dictated the form of expression of Synopsys' copyrighted works at the time of their creation.  *Oracle*, 750 F.3d at 1363-64.  ATopTech has not and cannot present any such evidence.  Thus, Synopsys is entitled to summary judgment on the Fifth Affirmative Defense.

### 4.     Sixth Affirmative Defense—*De Minimis*

ATopTech's Sixth Affirmative Defense asserts that any similarity between the asserted and accused works is "*de minimis*."  ECF No. 378 ¶ 46.  Again, ATopTech misstates the law. The *de minimis* defense recognized by the Ninth Circuit turns on the significance of the copying in relation to the copyrighted work, not on similarity between the original and copied works. Because ATopTech offers no evidence that it has only copied an insignificant part of Synopsys' copyrighted work, Synopsys is entitled to summary judgment on its *de minimis* defense.

A "taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation."  *Fisher v. Dees*, 794 F.2d 432, 434 (9th Cir. 1986).  "The extent of the copying 'is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole.'" *Oracle*, 810 F. Supp. 2d at 1008 (quoting *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)).  Thus, to the extent a "*de minimis* defense to copyright infringement" exists, it turns on the significance of the copied elements in relation to the copyrighted work, not the copied work. *Oracle*, 750 F.3d at 1378-79 (affirming JMOL that no reasonable jury could find copying of nine lines of code *de minimis* given testimony that they "were qualitatively significant and [defendant] copied them in their entirety").

ATopTech has presented no evidence that its copying is qualitatively or quantitatively insignificant in relation to Synopsys' copyrighted work; in fact, undisputed evidence establishes that the opposite is true. *See supra* Part V.A.3 (discussion of factor three of the fair use analysis). To the extent that ATopTech seeks to address the "similarity between … copyrighted Synopsys input and output formats … and the input and output formats" in Aprisa or to argue that "there is neither substantial similarity between the input and output formats nor infringement of any copyright rights in those formats" (ECF No. 378 ¶ 46), that is a question of infringement.[6] Synopsys is entitled to summary judgment, however, on the asserted *de minimis* defense.

### 5.   Eighth Affirmative Defense—Good Faith

ATopTech's Eighth Affirmative Defense asserts that "Plaintiff's claims are barred, in whole or in part, because ATopTech's conduct was at all times in good faith and with innocent intent …." ECF No. 378 at 10-11 ¶ 48. Good faith, however, is not a defense to infringement. As a matter of law, "the innocent intent of the defendant constitutes no defense to liability." *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (quotation omitted); *see also Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven where the defendant believes in good faith that he is not infringing a copyright, he may be found liable."). Synopsys is entitled to summary judgment on ATopTech's Eighth Affirmative Defense.

### 6.   Ninth Affirmative Defense—Excuse of Performance

ATopTech's Ninth Affirmative Defense asserts that Synopsys, as ExtremeDA's assignee, breached the CPLA between ExtremeDA and ATopTech, and failed to perform essential conditions in that agreement because ExtremeDA falsely represented that it "owned all right, title, and interest in the licensed software GoldTime," and thus Synopsys is now barred from enforcing the contract against ATopTech. ECF No. 378 ¶ 49. This defense, which by its terms is limited to Synopsys' breach of contract cause of action, is in the nature of excuse of performance. Because ATopTech has no evidence to support its factual contentions, and its interpretation of ExtremeDA's contractual representations is erroneous, its defense fails as a matter of law. *See*

---

[6] Synopsys reserves its right to challenge any argument ATopTech may make regarding the significance of the copied formats to Aprisa on the basis, among others, that ATopTech has refused to allow inspection of its source code, preventing Synopsys from fully evaluating the significance of those formats to ATopTech's product.

*United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988) (granting summary judgment on issue turning on contract interpretation).

In the CPLA, ExtremeDA represented that it ███████████████████ ███████████████████████████████████████████████████████ ███████████████████████ Michael Decl. Ex. 9 (Hoogenstryd Ex. 11) § 3.3. ATopTech has no evidence showing that ExtremeDA falsely represented that it owned all right, title, and interest in GoldTime. Instead, ATopTech contends the representation was false because "the input and output formats in the licensed software were copied by ExtremeDA from PrimeTime." ECF No. 378 ¶ 49. But the contract says nothing about infringement of other intellectual property. GoldTime is a derivative work of PrimeTime (in that it copied PrimeTime's formats). And, the "development and distribution of derivative work 'does not imply any exclusive right in the preexisting material.'" *Freedman v. Select Info. Sys., Inc.*, No. C-82-6448, 1983 WL 270, at *3 (N.D. Cal. Jan. 31, 1983) (quoting 17 U.S.C. § 103(b)). ExtremeDA's representation was limited to its ownership of GoldTime and the intellectual property rights embodied in that derivative work. ExtremeDA did not make any representations about any third party's intellectual property, much less a blanket representation that GoldTime did not infringe Synopsys' intellectual property rights in the input and output formats from which it was derived.

Because ATopTech has no evidence that ExtremeDA's representation was false, ATopTech has no basis to argue that its performance under the CPLA was excused. Synopsys is entitled to judgment as a matter of law on the Ninth Affirmative Defense.

**7.     Tenth Affirmative Defense—Estoppel and Waiver**

ATopTech's Tenth Affirmative Defense asserts that Synopsys encouraged use of its input and output formats in the EDA industry and therefore "is estopped from asserting its copyright and contract claims and waived any such claims when it extended the CPLA." ECF No. 378 ¶ 51. Estoppel and waiver are disfavored. *See Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1115 (C.D. Cal. 2010); *Brayton Purcell LLP v. Recordon & Recordon*, 487 F. Supp. 2d 1124, 1128 (N.D. Cal. 2007). ATopTech lacks evidence to support either.

(a)     **Estoppel**

ATopTech does not identify the species of estoppel pled, but its emphasis on Synopsys encouraging the use of the asserted formats implies equitable estoppel.  *See* 4-13 Nimmer on Copyright § 13.07 (2015) (listing varieties of estoppel).  To prevail on that theory, ATopTech must establish that "(1) [Synopsys] knew of [ATopTech]'s allegedly infringing conduct; (2) [Synopsys] intended that [ATopTech] rely upon [Synopsys'] conduct or act so that [ATopTech] has a right to believe it is so intended; (3) [ATopTech] is ignorant of the true facts; and (4) [ATopTech] detrimentally relied upon [Synopsys'] conduct."  *Bangkok Broad.*, 742 F. Supp. 2d at 1115; *see also Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).  Although ATopTech's failure of proof on a single element dooms its defense, ATopTech lacks evidence to support any of the elements.

*First*, ATopTech lacks evidence that Synopsys knew of ATopTech's allegedly infringing conduct. ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████. Michael Decl. Ex. 8 (Thune Tr.) at 202:2-204:21. And ATopTech only disclosed its product documentation in discovery after Synopsys filed suit.

*Second*, there is no evidence Synopsys intended for ATopTech to rely upon its alleged conduct to permit copying of the asserted formats or acted so that ATopTech had a right to believe Synopsys intended to permit copying. ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████ No. 378 ¶ 50; *see also* Michael Ex. 1 (Kahng Rpt.) at 29-34.  That Synopsys encouraged *authorized* use of its works is not evidence that Synopsys encouraged unauthorized copying of it formats, just as an author's promotion of her book is not evidence that the author encouraged others to copy passages from the book in competing works.  Indeed, it is undisputed that Synopsys' copyrighted manuals bear a copyright notice and a statement that Synopsys'

█████████████████████████████████████████████████

███████████████████████████████ *E.g.*, Michael Decl. Ex. 26 (Lee Ex.

6); Ex. 27 (Lee Tr.) at 96:19-103:20; *see also* Ex. 28 (ATopTech 1790124).

*Third*, ATopTech has not presented evidence that it was ignorant of the fact that Synopsys

prohibits copying of its copyrighted input and output formats. ████████████████

█████████████████████████████████████████████████

████████████████ *See, e.g.*, Michael Decl. Ex. 12 (Bai Tr.) at 44:6-46:18, 49:13-24

█████████████████████████████████████████████████

████████████████████████████████████; Michael Decl. Ex. 8

(Thune Tr.) at 149:4-12 ███████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████ *See* Michael Decl. Ex. 29 (Chern Tr.) at 143:2-16; Ex. 30 (Chern Ex.

16) ███████████████████████████████████████████████

██████████████████████████████████████████████

███████ (emphasis added). ██████████████████████████

█████████████████████████████████████████████. *See* Michael

Decl. Ex. 29 (Chern Tr.) at 123:4-9 ████████████████████████

███████████████████████████████████████████.

*Fourth*, ATopTech cannot prove reliance on Synopsys' conduct in light of the evidence

above that Synopsys expressly notified users of its software and recipients of its documentation of

its copyright, that ATopTech understood Synopsys' works were proprietary, and that ATopTech

nonetheless copied Synopsys' copyrighted works. ████████████████████████

█████████████████████████████████████████████████

███████████ *See* Michael Decl. Ex. 8 (Thune Tr.) at 142:13-25.  ATopTech cannot prove

reliance when it never asked Synopsys for permission to use Synopsys' proprietary commands.

In short, ATopTech lacks any evidence to support an estoppel defense.

1

2

3

4

5

6

7

8

9

10

11

12

#### (b)     Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it."  *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988).  For the reasons discussed above, ATopTech has not presented any evidence to support Synopsys' intentional relinquishment of its copyrights; rather, Synopsys has given broad notice of those rights and enforced them when it learned of infringement.  Synopsys' encouragement of *authorized* use of its software does not amount to waiver.  *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (providing consumers with MP3 technology designed to increase sales of copyrighted works did not constitute waiver). ATopTech also lacks evidence to support that Synopsys waived its rights by extending the CPLA. Specifically, ATopTech has presented no evidence that Synopsys knew of ATopTech's infringing conduct at the time it extended the CPLA.

13

### 8.     Fifteenth Affirmative Defense—Equitable Defenses

14

15

16

17

18

19

20

21

ATopTech's Fifteenth Affirmative Defense asserts a laundry list of equitable defenses— "equitable estoppel, including laches, waiver, estoppel, implied license, and/or unclean hands." ECF No. 378 ¶ 55.  The Court previously struck this defense, finding it "devoid of any factual support" ( ECF No. 342), and Synopsys has once again moved to dismiss it (ECF No. 382).  As pled, the allegations of the Fifteenth Affirmative Defense are derivative of the Tenth Affirmative Defense.  As to the estoppel and waiver theories, these defenses fail as an evidentiary matter for the reasons stated above.  *See supra* Part V.B.7.  The remaining defenses included in the Fifteenth Affirmative Defense also fail as a matter of law.[7]

22

#### (a)     Laches

23

24

25

26

Laches is not a defense to a copyright infringement action commenced within the statute of limitations.  *Petrella v. MGM*, 134 S. Ct. 1962, 1967 (2014).  Synopsys filed suit within the statute of limitations.  *See supra* Part V.B.1.  Moreover, ATopTech has not presented any evidence of unreasonable delay, let alone extraordinary circumstances, to justify laches.  In fact,

27

28

---

[7] ATopTech failed to address unclean hands in its opposition to Synopsys' motion to dismiss, and thus concedes that the dismissal of its defense on that theory is proper.  ECF No. 390 at 13.  Accordingly, Synopsys does not address it here.

undisputed evidence establishes that Synopsys did not delay its suit against ATopTech at all; rather, ATopTech refused to provide its manuals to Synopsys in pre-suit discussions and ATopTech denied that it had "copied *any* Synopsys proprietary information" just weeks before the suit was filed.  Michael Decl. Ex. 31 (6/17/13 Michael - Eberhart Email) (emphasis added). Synopsys is entitled to summary judgment on ATopTech's laches defense.

### (b)     Implied License

A license may be implied "when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754-55 (9th Cir. 2008) (citations, internal quotation marks, and footnote omitted).  ATopTech cannot present evidence to support any of these elements.  The asserted input and output formats pre-date ATopTech's existence (Michael Decl. Exs. 33-35 (Bootehsaz Charts)), and thus Synopsys could not have created those formats at ATopTech's request.  Moreover, there is no evidence that Synopsys intended ATopTech to copy and distribute those formats; this lawsuit is proof to the contrary.  ATopTech admits it never obtained a license to PrimeTime.  Michael Decl. Ex. 36 (Response to RFA 25).  ATopTech's implied license theory also fails as a matter of law.

## VI.    <u>CONCLUSION</u>

For these reasons, summary judgment should be granted for Synopsys on ATopTech's First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fifteenth Affirmative Defenses.

Dated: October 30, 2015                          Respectfully submitted,

                                                 Jones Day


                                                 By: /s/ Patrick T. Michael
                                                     Patrick T. Michael

                                                 Counsel for Plaintiff
                                                 SYNOPSYS, INC.

NAI-1500602203