Paul Alexander (No. 49997)
ARNOLD & PORTER LLP
1801 Page Mill Road, Suite 110
Palo Alto, CA 94304-1216
Telephone:   (650) 798-2920
Facsimile:   (650) 798-2999
E-Mail:  Paul.Alexander@aporter.com

Martin R. Glick (No. 40187)
Daniel B. Asimow (No. 165661)
Willow White Noonan (No. 277584)
ARNOLD & PORTER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024
Telephone:   (415) 471-3100
Facsimile:   (415) 471-3400
E-Mail:  Marty.Glick@aporter.com
E-Mail:  Daniel.Asimow@aporter.com
E-Mail:  Willow.Noonan@aporter.com

Denise McKenzie (No. 193313)
Ryan Nishimoto (No. 235208)
ARNOLD & PORTER LLP
777 South Figueroa Street
Forty-Fourth Floor
Los Angeles, CA 90017-5844
Telephone:   (213) 243-4000
Facsimile:   (213) 243-4199
E-Mail:  Denise.McKenzie@aporter.com
E-Mail:  Ryan.Nishimoto@aporter.com

Attorneys for Defendant
ATOPTECH, INC.

REDACTED PUBLIC VERSION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ATOPTECH, INC., <br><br> Defendant. | Case No. 3:13-cv-02965 MMC (DMR) <br><br> **DEFENDANT ATOPTECH, INC.'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:      December 4, 2015 <br> Time:      9:00 a.m. <br> Place:     Courtroom 7, 19th Floor <br> Judge:    Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

INTRODUCTION ...................................................................................................1

RELEVANT FACTS AND PROCEDURAL HISTORY......................................4

I.     SYNOPSYS' SOFTWARE AND CLAIMED COPYRIGHTS ...........................4

II.    ATOPTECH'S SOFTWARE AND SYNOPSYS' COPYING ALLEGATIONS ........................................................................................6

III.   THE "CPLA" AND SYNOPSYS' CONTRACT CLAIMS .................................8

ARGUMENT ...........................................................................................................9

I.     SYNOPSYS HAS AFFIRMATIVELY DISCLAIMED MOST OF THE ALLEGEDLY COPIED TERMS, AND THEREFORE HAS NO STANDING TO SUE FOR THEIR INFRINGEMENT......................................11

II.    SYNOPSYS HAS NO VALID COPYRIGHT IN THE UNEXPRESSIVE TERMS THAT IT ASSERTS IN THIS CASE. .................................................14

III.   SYNOPSYS HAS IDENTIFIED NO VALID COMPILATION OF TERMS SUBJECT TO COPYRIGHT PROTECTION. ..........................................18

IV.   THE OUTPUT FORMATS GENERATED BY PRIMETIME ARE NOT ELIGIBLE FOR COPYRIGHT PROTECTION. .................................................20

V.    SYNOPSYS CANNOT ESTABLISH INFRINGEMENT OF ANY PROTECTABLE EXPRESSION AS A MATTER OF LAW...........................21

VI.   ATOPTECH IS ENTITLED TO SUMMARY JUDGMENT ON SYNOPSYS' BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS. ...........................................22

     A.    Synopsys Has No Evidence of Breach of Contract or the Covenant of Good Faith Arising from the CPLA. ................................................22

     B.    Synopsys Has Conceded It Can Identify No Harm or Damage Arising from Performance of the CPLA. .................................................24

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanz Behavioral Mgmt. Res., Inc. v. Miraflor,*
    21 F. Supp. 2d 1179 (C.D. Cal. 1998) ........................................................................ 21

*AFL Telecommc'ns LLC v. SurplusEQ.com Inc.,*
    946 F. Supp. 2d 928 (D. Ariz. 2013) ............................................................ 11, 12, 13

*Alberto-Culver Co. v. Andrea Dumon, Inc.,*
    466 F.2d 705 (7th Cir. 1972) ....................................................................................... 16

*Apple Computer, Inc. v. Microsoft Corp.,*
    35 F.3d 1435 (9th Cir. 1994) .......................................................... 10, 11, 12, 21, 22

*Baker v. Selden,*
    101 U.S. 99 (1880) ....................................................................................................... 21

*Bibbero Sys., Inc. v. Colwell Sys., Inc.,*
    893 F.2d 1104 (9th Cir. 1990) .................................................................................... 21

*Brown Bag Software v. Symantec Corp.,*
    960 F.2d 1465 (9th Cir. 1992) ................................................................ 10, 14, 21, 22

*CMM Cable Rep, Inc. v. Ocean Coast Props.,*
    97 F.3d 1504 (1st Cir. 1996) ...................................................................................... 15

*Eng'g Dynamics, Inc. v. Structural Software, Inc.,*
    26 F.3d 1335 (5th Cir. 1994) ...................................................................................... 10

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ................................................................ 10, 11, 16, 18, 19, 20

*Fid. Info. Servs., Inc. v. Debtdomain GLMS Pte Ltd.,*
    No. 09 Civ. 7589(LAK)(KNF), 2012 WL 1681792 (S.D.N.Y. May 15, 2012) ......... 13

*Hutchins v. Zoll Med. Corp.,*
    492 F.3d 1377 (Fed. Cir. 2007) ............................................................ 15, 16, 19, 20, 22

*Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.,*
    266 F.2d 541 (2d Cir. 1959) ....................................................................................... 16

*Mora v. U.S. Bank, N.A.,*
    No. 11-6598 SC, 2012 U.S. Dist Lexis 79357 (N.D. Cal. Jun. 7, 2012) .................... 22

*Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.,*
    264 F.3d 622 (6th Cir. 2001) ...................................................................................... 16

ATOPTECH'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:13-cv-02965-MMC (DMR)

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989)........................................................................................ 15

*Oracle America, Inc. v. Google Inc.*,
    750 F.3d 1339 (Fed. Cir. 2014)................................................................................... 17

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
    527 F.3d 1218 (11th Cir. 2008)................................................................................... 13

*Oskar Sys., LLC v. Club Speed, Inc.*,
    745 F. Supp. 2d 1155 (C.D. Cal. 2010)................................................................ 12, 13

*Prunte v. Universal Music Grp., Inc.*,
    699 F. Supp. 2d 15 (D.D.C. 2010), *aff'd*, 425 Fed Appx. 1 (D.C. Cir. 2011) ............ 16

*Righthaven LLC v. Hoehn*,
    716 F.3d 1166 (9th Cir. 2013)..................................................................................... 13

*Sega Enters. Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992)..................................................................................... 21

*Sem-Torq, Inc. v. K Mart Corp.*,
    936 F.2d 851 (6th Cir. 1991)................................................................................. 18, 20

*Stern v. Does*,
    978 F. Supp. 2d 1031 (C.D. Cal. 2011), *aff'd*, 512 Fed. Appx. 701 (9th Cir. 2013) .................. 17

*Streetwise Maps, Inc. v. Van-Dam, Inc.*,
    159 F.3d 739 (2d Cir. 1998)........................................................................................ 12

*Synygy, Inc. v. ZS Assocs., Inc.*,
    Civ. No. 07-3536, 2015 WL 899408 (E.D. Pa. Mar. 3, 2015).................................... 13

*Wyatt Tech. Corp. v. Malvern Instr. Inc.*,
    No. CV-07-08298 DDP, 2009 WL 2365647 (C.D. Cal. Jul. 29, 2009), *aff'd*, 526
    Fed Appx. 761 (9th Cir. 2013) ............................................................................. 10, 21

**STATUTES**

17 U.S.C.
    § 101.......................................................................................................................... 4, 18
    § 103(b)........................................................................................................................ 12
    § 411(a) ....................................................................................................................... 11


37 C.F.R.
    § 202.1(a) .................................................................................................................... 14
    § 202.1(c) .................................................................................................................... 21

Fed. R. Civ. P.
    56(c) ................................................................................................................. 11
    56(g) ................................................................................................................. 11

**OTHER AUTHORITIES**

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*
    §12.10[B][1] (rev. ed.2010) ........................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF SYNOPSYS, INC. AND ITS COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on December 4, 2015, at 9:00 a.m., or as soon thereafter as the matter may be heard, at 450 Golden Gate Avenue, San Francisco, California, Defendant ATopTech, Inc. ("ATopTech") will and hereby does move for summary judgment on Claims I, XI and XII of Synopsys, Inc.'s ("Synopsys") First Amended Complaint ("FAC").

This motion is based upon the Notice of Motion, Memorandum of Points and Authorities, the Declaration of Paul Alexander ("Alexander Decl."), the pleadings on file in this matter, and any other such matters and evidence as may be presented to the Court at the time of hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This lawsuit presents an unprecedented claim by Synopsys:  that it owns the short, simple and, for the most part, commonly used *names* of commands, options and the like in its software. The code behind the commands is not in issue.  ATopTech wrote its own software code, independently.  It is the *names* of the commands—generally two- or three-word terms such as "get_pins" or "report_timing"—that are in issue.  These names reflect the basic vocabulary by which electronic design automation ("EDA") engineers design, model and test integrated circuits ("IC's").  Under the guise of copyright, Synopsys asserts that it owns much of this vocabulary, even though large parts of it are industry-standard EDA terms, many of which are decades old.  The implications of this to the EDA industry are enormous.

The gravamen of Synopsys' claim is that ATopTech "copied significant portions of [Synopsys'] PrimeTime and GoldTime[1] proprietary input and output formats into [ATopTech's] Aprisa user documentation and software."  First Amended Complaint ("FAC") ¶54.  These "input formats," the undisputed facts now confirm, are literally the short, English-language *names* of commands, options, variables/parameters, objects and attributes scattered throughout Synopsys' software and documentation, not the commands themselves.  Synopsys alone wishes to own and

---

[1] "GoldTime" is a program developed by separately by a different company, Extreme DA, which Synopsys acquired in 2012.  Synopsys later withdrew GoldTime from the market. Interestingly, the developers of GoldTime had also used many of the same industry standard terms that Synopsys now claims to own.

ATOPTECH'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:13-cv-02965-MMC (DMR)

control the use of all of these names, even though many have been commonly used for years—*many at Synopsys' own urging*.

An illustrative example is the command ██████████ an indisputably central term that has been used in the EDA industry for decades.  It instructs the software to issue a report on the timing of the IC's operation, which is generally required for "sign-off" before an IC is released for manufacture.  An EDA engineer can specify options, variables, objects and attributes—which are equally short and literal—terms such as ██████ and ████ or ████████ to specify what circuits should be included (or excluded) in the report.  The objective is to ensure that the timing of the electrical signals that flow through the IC arrive at the proper places at the correct times so that the IC performs properly.  Most of these command names have been used by EDA engineers in many different companies for years for this purpose.

The commands in PrimeTime and Aprisa, like many other EDA applications, use a scripting language called Tool Command Language, shortened to "Tcl" (pronounced "tickle").  Crucially, not only did Synopsys use and follow the conventions of an open-source language, it actively promoted unrestricted use of common terminology and a "Common Command Interpreter," or "CCI."  Synopsys has even hosted and participated in "Interoperability Developer Forums."  *See* Ex. 4.[2] During this same period, and as part of an industry conference, Synopsys' Principal Engineer, Dr. Dwight Hill, published in 2004 an article explicitly calling for wide-spread use of Tcl and uniform naming conventions via CCI:

> If several tools use the same database, but have disparate interfaces . . . it will be impossible to transfer a script written in one to another.  But when the tools are united under Tcl/CCI it becomes feasible to share scripts . . . .  Rather than having each tool define *commands* independently, it becomes possible for the *commands* to be pre-analyzed for compatibility (or at least non-interference.) . . . *The second most important thing in architecting these interfaces is that the same concept have the same name in all tools that use it.  The Most Important Factor is that different concepts have different names in all tools.*  (Ex. 3.)[3]

The availability of Tcl and the Synopsys policy articulated by its Principal Engineer were by

---

[2] In this presentation, a Synopsys engineer advocated its command conventions as industry standards and even explicitly presented publicly the utility of several of the very command names (such as ████████████ as to which Synopsys now claims that it owns a copyright.  Unless indicated otherwise, "Ex. _" refers to exhibits to the Alexander Declaration.

[3] Vestiges of Synopsys' bygone desire for tool interoperability can still be found on its website, at http://www. Synopsys.com/community/interoperability.

ATOPTECH'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:13-cv-02965-MMC (DMR)

themselves inducements for other industry participants to use common names and terms for EDA applications. But additionally, Synopsys published particular formats referred to as "Synopsys Design Constraints" or "SDC." Those were written using Tcl and made available to users free of any royalty obligation thus further encouraging other players in the industry to select common names. Synopsys has affirmatively alleged that these "SDC" command, option and variable terms are "not the subject of this lawsuit." FAC ¶20.

It was exactly at the time that Synopsys was urging and facilitating common usage and PrimeTime was widely available in classrooms and on the internet, that ATopTech was engaged in creating Aprisa—2004 to 2006. Synopsys did not even attempt to register PrimeTime with the Copyright Office until December 2010 (when it submitted a 2006 version of the program). When it did so, perhaps with its prior public urgings of uniform names usage in mind, it expressly *disclaimed* from its registration all materials that predated its December 2006 release, including the vast majority of the terms it now asserts in this lawsuit.

The sophisticated software programs at issue each employ thousands of commands, options, variables and the like. The names of certain terms in ATopTech's Aprisa overlap with a small fraction of commonly named terms from Synopsys' PrimeTime and GoldTime, albeit Aprisa executes every single term with *entirely different code*. Synopsys' razor-thin claim rests on the notion that a miniscule overlap of terms, and similar formatting in the "output formats" returned by "report_timing" and its ilk, constitute infringement, despite the names appearing in a different order and using different combinations of related terms than in the PrimeTime software and User Guides. Synopsys' copyright claim should fail for multiple, independent reasons.

*First*, Synopsys did not register—indeed, it *affirmatively disclaimed*—a copyright for all but a few of the terms that it now accuses Synopsys of copying. Synopsys therefore lacks standing to sue for infringement of those terms because they are specifically excluded from Synopsys' copyright registration. Registration is, as a matter of law, a prerequisite to a party's right to sue for claimed copyright infringement. The undisputed evidence before the Court on this motion, including Synopsys' own copyright registrations, confirms that Synopsys lacks effective registration as to almost all of the terms it now asserts. ATopTech is therefore entitled to judgment in its favor

on those.  Likewise, Synopsys cannot sue for infringement of the asserted "output formats," because they too are disclaimed and mere forms used to convey user-generated data.

*Second*, Synopsys has no copyright in the names of the terms at issue in this case.  While PrimeTime and GoldTime are eligible for copyright, Synopsys cannot own the name of each individual, non-creative term contained in the programs due to the rule against copyright in names and short phrases.  Synopsys' own conduct confirms this.  In the early 2000's, Synopsys publicly presented many of these command names and urged interoperability, with no reference to supposed copyrights in the names.  EDA professionals have been using these terms for many years.  Until recently, Synopsys preached the gospel of using common terms across EDA tools.

*Third,* Synopsys fails to assert a protectable "compilation" of the names of commands, options, variables, objects and attributes.  Instead, it has presented its experts' alphabetical lists of the "input formats" of PrimeTime and GoldTime as representative of a user interface.  These lists were not "selected, coordinated or arranged" by Synopsys and fail the "original work of authorship" test of 17 U.S.C. § 101.  Moreover, the particular lists of names that Synopsys now seeks to assert were never registered by Synopsys and cannot form the basis of a lawsuit.

*Fourth*, even if Synopsys could assert a protectable compilation, under Ninth Circuit law it would, at most, be entitled to it exceptionally "thin" protection.  In that situation, Aprisa must use a "virtually identical" compilation in order for infringement to exist.  The undisputed facts show that the collection of terms in Aprisa is not "virtually identical" to that of PrimeTime.  As a result, ATopTech is entitled to judgment as a matter of law on this basis as well.

Finally, Synopsys has produced no evidence of a breach of the Connections Program License Agreement ("CPLA") or of the implied covenant of good faith and fair dealing arising from that agreement.  ATopTech is entitled to summary judgment on these two claims as well, which have basically been a sidelight in this case.

## RELEVANT FACTS AND PROCEDURAL HISTORY

### I.   SYNOPSYS' SOFTWARE AND CLAIMED COPYRIGHTS

PrimeTime (and GoldTime before Synopsys bought it and removed it from the market) are software tools that perform what is referred to in the EDA industry as "static timing analysis," or

ATOPTECH'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:13-cv-02965-MMC (DMR)

"STA."  STA software is generally referred to in the industry as timing "sign off" software, meaning that the timing tests it contains usually must be passed before an IC will be approved for manufacture.  Ex. 20, at 5-6.  Synopsys introduced PrimeTime in 1996, but did not register it with the Copyright Office until December 13, 2010, which it registered the December 12, 2006 release ("PT 2006.12").  ECF No. 43-1.  ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████  Most importantly, Synopsys' registration affirmatively states that "[p]rior works by claimant and licensed-in components" are "excluded from this claim."  ECF No. 43-1.  Subsequent PrimeTime registrations contain identical disclaimers of all prior works and licensed-in components.  ECF Nos. 43-2 ("PT 2010.06"), 43-4 ("PT 2012.06"), 43-5 ("PT 2012.12").  As will be discussed below, virtually all of the terms at issue—or "input formats," as Synopsys refers to them—were a part of the prior works expressly disclaimed by Synopsys when registering the works in suit.

Synopsys did not develop GoldTime, but rather acquired GoldTime when it purchased a company called Extreme DA in 2012.  FAC ¶5.  Synopsys registered GoldTime for the first and only time in April 2013—two months before it filed this lawsuit—when it registered the December 2011 release ("GT 2011.12").  ECF No. 43-3.  As with PrimeTime, Synopsys registered GT 2011.12's "new and revised computer code and supporting documentation" and affirmatively disclaimed from registration all "[p]rior works by Extreme DA LLC and licensed-in components."  *Id.*

PrimeTime and GoldTime each have two interfaces: a graphic user interface and a command line interface.  Ex. 20, at 7.  Only the latter is at issue here, and no claim is made regarding the Aprisa GUI.  With respect to the command line interface, users type in command terms, or use a pre-written "script" file to enter, combinations of commands and related terms such as options, variables, objects and attributes.[4]  Ex. 20, at 7-9, 16.  █████████████████████████ ███████████████████████████████████████████████████████ ████████████████████     ██████████████████████     ███████████

---

[4] Synopsys refers to names of commands, options, variables, objects and attributes collectively as "input formats."  For purposes of this brief, we call them "terms."

[5] ████████████████████████████████████████     █████████████████████

ATOPTECH'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:13-cv-02965-MMC (DMR)

1 ███████████████████████████████████████████████████

2 ███████████ Consequently, we will generally refer to PrimeTime in the remainder of this

3 Motion since Synopsys no longer sells GoldTime.

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████

7 █████████ ███████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████████████ Perhaps even more importantly, Synopsys has not

10 identified any actual collection of command names (or "input formats") but rather has consistently

11 argued that it is entitled to a copyright interest in each name it decides to use merely by putting that

12 name into its software and user guides.  As discussed below, Synopsys and its experts have asserted

13 that every name of a command, option or the like that is found in Aprisa and is also found in

14 PrimeTime, constitutes copyright infringement.

15 **II.    ATOPTECH'S SOFTWARE AND SYNOPSYS' COPYING ALLEGATIONS**

16 ATopTech makes one basic product: its "place and route" program Aprisa.[7]  ATopTech

17 began developing Aprisa in early 2004, and made its first commercial sale in December 2006.  Ex.

18 20, at 17-18.  "Place-and-route" entails placing components on a computer chip and connecting

19 them with wiring.  *Id.*  In the IC design flow, place-and-route precedes STA.  *Id.*  Aprisa contains a

20 timing engine that allows users to evaluate the timing performance of their chip designs as they are

21 being developed and before the design proceeds to the final timing "sign-off" stage using the

22 PrimeTime STA software.  *Id.*  The crux of Synopsys' copyright infringement allegations is that,

23 beginning in 2004, ATopTech copied hundreds of timing-related terms, syntax and, in a few cases,

24 default values from the PrimeTime UI into Aprisa's software and user documentation.  FAC ¶54;

25 ────────────────────
[6] ████████████████████████████████████████████

26 ████████████████████████████████████████████

27 ────────────────────

28 [7] Aprisa makes a related product known as Apogee, which is generally sold with Aprisa and also provides basic chip layout functions.  The parties have generally regarded these as a single product, and the term Aprisa as used here refers to both programs.  Ex. 20, at 18.

ATOPTECH'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:13-cv-02965-MMC (DMR)

Ex. 20, at 17-21, 73-84; Ex. 23.  Most of the terms at issue have been in Aprisa since its earliest

available releases.  *See* Ex. 16, at 4-1, 4-2, 4-3.

To set forth Synopsys' copyright claim in this case, one of its experts, Dr. Martin Walker,

created 659 pages of lists reflecting the thousands of terms that have been used in PrimeTime since

December 2006, and in GoldTime since June 2011.  In making these lists, Dr. Walker drew upon

both the PrimeTime software and various documentation accompanying the releases.  Ex. 16.  Dr.

Walker divided the terms into three categories: commands and options (Exhibit 3-1 and 3-7),

variables and their default values (Exhibit 3-2 and 3-8) and objects and attributes (Exhibit 3-3 and

3-9).[8]  Dr. Walker listed the terms in each category alphabetically and indicated the earliest date for

which a given term was first used in PrimeTime or GoldTime.  *Id.*

Dr. Walker next created similar lists for Aprisa, and in 452 pages set forth the names of

Aprisa's commands and options (Dr. Walker's Ex. 4-1), parameters[9] and their default values ( his

Ex. 4-2), and objects and attributes (his Ex. 4-3).  *See* Ex. 16.  The table below lists the approximate

number terms identified by Dr. Walker in each program:[10]

| Program | Command/Option | Variable | Object/Attribute | Total Terms Used |
|---------|----------------|----------|------------------|------------------|
| PrimeTime | 3000 | 400 | 2100 | 5500 |
| GoldTime | 2500 | 120 | 650 | 3370 |
| Aprisa | 8000-9000 | 4000 | 1400 | 13,400 |

A second Synopsys expert, Dr. James Storer, took Dr. Walker's lists and created Exhibit 5,

containing lists of terms allegedly copied from PrimeTime into Aprisa, which is comprised of every

term that uses the same name and, in addition, those non-identical terms which Dr. Storer said were

"substantially similar" even though they were not the same.  Ex. 21.  In total, Dr. Storer separately

identifies 118 commands, 408 options, 57 variables, and 99 objects/attributes terms as copied, for a

total of 682 terms.  Ex. 20, at 73-74.  Yet the vast majority have been in PrimeTime since before PT

2006.12 or GoldTime since before GT 2011.12, and were disclaimed when Synopsys registered

---

[8] Exhibits 3-1 to 3-3 concern PrimeTime, while Exhibits 3-7 to 3-9 concern GoldTime. Exhibits 3-4 to 3-6 concern IC Compiler, which is not at issue.  ECF No. 377, at 9.

[9] What Synopsys calls "variables" in PrimeTime and GoldTime, ATopTech calls "parameters" in Aprisa.

[10] *See* Ex. 6, at 32-33.  As ATopTech's expert Dr. Kahng explains, these totals are approximate.  To avoid submitting unnecessary amounts of paper, we have included representative pages of Dr. Walker's lists with this motion.  *See* Ex. 16.

ATOPTECH'S MOTION FOR SUMMARY JUDGMENT
                                              Case No. 3:13-cv-02965-MMC (DMR)

these programs.  *See* Exs. 2, 10-12.  Others are "SDC" terms which Synopsys allows ATopTech to use pursuant to a license.  Ex. 20, at 85.  Although its experts devote some attention to these and attempt at points to include options to SDC commands in their analysis, ATopTech itself has alleged that they terms are "not the subject of this lawsuit."  FAC ¶20.  And some, it turns out, are not actually in Aprisa or PrimeTime at all.  Ex. 2.  As discussed in Part I, *infra*, non-copyrightable terms cannot form the basis of an infringement analysis, yet form over 90% of Dr. Storer's Exhibit 5.  After removing such terms, all that remains are 9 command terms, 34 option terms, 7 variable terms and 5 objection/attribute terms, a total of 55 terms—or less than 2% of the total number of terms used in either PrimeTime or GoldTime.  Ex. 1.  At no point does Dr. Storer explain how any of these terms are grouped together in the actual operation of the software or User Guides that form the copyright registration.  Instead, he and Dr. Walker simply create lists of names separated into three groups and then listed in alphabetical order.  This is not what was filed with the Copyright Office and bears no resemblance to what Synopsys actually registered.

With respect to the manuals and written documentation that accompany the software that Synopsys registered with the Copyright Office, ATopTech's expert, Dr. Andrew Kahng, performed a computer-assisted analysis of the manuals and documentation for PrimeTime, GoldTime and Aprisa.  Ex. 6, at 73-79.  The purpose of the analysis was to determine whether there was textual similarity between written documentation for Aprisa and written documentation for PrimeTime or GoldTime.  Dr. Kahng's analysis showed no similarities between their respective texts.  *Id.*

In fact, there is virtually no similarity at all.  To illustrate this, submitted with this brief are the sections of the Aprisa and PrimeTime User Guides describing one of the most important command terms, "report_timing."  Exs. 24-25.  The text, descriptions of functionality, and the syntax used are, as demonstrated with highlighting, substantially different, not similar.

## III.   THE "CPLA" AND SYNOPSYS' CONTRACT CLAIMS

In May, 2010, ATopTech and a company then known as Extreme DA entered into an agreement called the "Extreme DA Corp Connections Program License Agreement" or "CPLA."  Ex. 26.  At the time, Extreme DA had developed its own STA signoff software known as "GoldTime." ███████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ███████████████████████████████████████████

3 █████████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ██████████████████████████████████████████████████

6 ████████████████████

7     Synopsys has claimed that ATopTech breached the CPLA, though its claims have remained

8 vague.  Extreme DA itself has never asserted a breach and no witness from Extreme DA has been

9 identified that any alleged breach occurred.  █████████████████████████████

10 ████████████████████████████████████████████

11 █████████████████████████████████████████████

12 ████████████████████████████ This made sense because GoldTime was an

13 STA "signoff" software tool and Aprisa was and is a "place and route" tool.  The two tools did not

14 compete but rather complemented each other.  █████████████████████████

15 ████████████████████████████

16      █████████████████████████████████████████

17 ████████████████████ Use of the same command terminology is, ██████████████

18 ████████████ public statements confirm, an industry accepted means of enhancing

19 interoperability.  At most, what Synopsys is claiming in this case is ATopTech and Extreme DA

20 collaborated to adopt some of the same command, option and related terms in both programs so that

21 they would be interoperable.  ████████████████████████████

22 █████████████████████████████████████████████████

23 ████████████████████████████████████████████

24 █████████████████████████████████████████████

25 ███████████████████████████████████████████

26 █████████████████████████████████

27                              **ARGUMENT**

28     To withstand summary judgment on its copyright claim, Synopsys must first demonstrate a

1   valid copyright registration in the material that it seeks to assert. That registration must cover, and

2   not exclude or disclaim, all matter that is the basis for the copyright suit. Absent this showing, the

3   court has no subject matter jurisdiction over the claim and the defendant is entitled to judgment in

4   its favor.

5        Even if Synopsys establishes that it has a valid copyright in a relevant work, it must show

6   that ATopTech copied *protected* elements of that work. *See Apple Computer, Inc. v. Microsoft*

7   *Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) ("*Apple*"). For purposes of this motion, ATopTech does

8   not contest that it accessed and used the names of certain PrimeTime terms when developing

9   Aprisa, in order to enable Aprisa to interoperate with PrimeTime. However, not all copying is

10   infringement. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 360 (1991); *Eng'g Dynamics,*

11   *Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1347 (5th Cir. 1994) ( "anyone may copy

12   uncopyrightable elements in a copyrighted work").

13        In the Ninth Circuit, when determining if copying amounts to infringement, courts apply a

14   two-part test with both extrinsic and intrinsic components. *Apple*, 35 F.3d at 1442. "[T]he extrinsic

15   test now objectively considers whether there are substantial similarities in *both* ideas and

16   expression, whereas the intrinsic test continues to measure expression subjectively." *Id.* (emphasis

17   in original). At the summary judgment stage, only the extrinsic test is relevant. *Wyatt Tech.*

18   *Corp. v. Malvern Instr. Inc.*, No. CV-07-08298 DDP (MANx), 2009 WL 2365647, at *3 (C.D. Cal.

19   Jul. 29, 2009), *aff'd*, 526 Fed Appx. 761 (9th Cir. 2013). As the court in *Apple* explained:

20          [B]ecause only those elements of a work that are protectable and used without the

21        author's permission can be objectively compared when it comes to the ultimate question
           of illicit copying, we use analytic dissection to determine the scope of copyright

22        protection before works are considered "as a whole." 35 F.3d at 1443 (citing *Brown Bag*
           *Software v. Symantec Corp.*, 960 F.2d 1465, 1475-76 (9th Cir. 1992)).

23        Thus, the Ninth Circuit instructs that the following steps be followed when analyzing the

24   scope of protection in a work: "(1) The plaintiff must identify the *source(s)* of the alleged similarity

25   between his work and the defendant's work. . . .(2) Using analytic dissection, and, if necessary,

26   expert testimony, the court must determine whether any of the allegedly similar features are

27   protected by copyright…(3) Having dissected the alleged similarities and considered the range of

28   possible expression, the court must determine the scope of the plaintiff's copyright—that is, decide

1    whether the work is entitled to 'broad' or 'thin' protection." *Id.* at 1443 (emphasis in original).

2    Application of analytic dissection leads to one conclusion: summary judgment should be

3    granted in ATopTech's favor.  Alternatively, ATopTech is entitled to an order stating that the vast

4    majority of the asserted claims are not copyrightable.  *See* Fed. R. Civ. P. 56(c), (g).

5    **I.    SYNOPSYS HAS AFFIRMATIVELY DISCLAIMED MOST OF THE ALLEGEDLY
         COPIED TERMS, AND THEREFORE HAS NO STANDING TO SUE FOR THEIR
6        INFRINGEMENT.**

7    Beyond the failures described in this Motion, there is an overarching fact that, as a matter of

8    law, decimates Synopsys' copyright claim: Synopsys lacks standing to sue for most of the allegedly

9    copied terms.  Synopsys failed to register any release of PrimeTime published prior to December

10   2006.  In both the registration of the December 2006 version (the earliest alleged in this case) and in

11   subsequent registrations, Synopsys expressly disclaimed from coverage the vast majority of the

12   terms that it now accuses ATopTech of copying.  Having disclaimed registration of those terms,

13   Synopsys lacks standing to sue for their infringement, regardless of whether they are copyrightable.

14   Before suing for infringement of a work, a party must first register and deposit the work

15   with the Copyright Office; without a registration, there is no standing to sue.  17 U.S.C. § 411(a)

16   ("No action for infringement of the copyright in any work shall be instituted until registration of the

17   copyright claim has been made in accordance with this title.").  One also cannot sue for

18   infringement of materials that are not original to the registered work or have been expressly

19   excluded from its registration.  *See AFL Telecommc'ns LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d

20   928, 941 (D. Ariz. 2013); *see also Feist*, 499 U.S. at 348 ("The mere fact that a work is copyrighted

21   does not mean that every element of the work may be protected.").

22   Synopsys has asserted a registered copyright in PrimeTime based on its registration of PT

23   2006.12 and three subsequent releases, as well as GT 2011.12.  ECF Nos. 43-1 to 43-5.  Yet with

24   each registration of each work, Synopsys stated that the version of PrimeTime (or GoldTime) being

25   registered was a derivative work, without identifying any actual prior, original work.  Synopsys'

26   registrations then go on to *expressly disclaim registration of any previously released material* (as

27   well as licensed-in components, which does on not appear to be pertinent here).  *Id.*  This disclaimer

28   is binding.  *See AFL*, 946 F. Supp. 2d at 941.  Previous material is excluded from the registration of

a derivative work, and the registration applies only to any new material that is added in the work that is being registered.  17 U.S.C. § 103(b) ("The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work . . . .").  Most of the command terms that Synopsys now seeks to assert are in the disclaimed versions and were not added in the 2006.12 version, the earliest registered version asserted in this case.

Therefore, Synopsys lacks standing to sue for any terms added to PrimeTime prior to the PT 2006.12 release, and any terms added to GoldTime prior to the GT 2011.12 release.  ATopTech is entitled to judgment in its favor with respect to any claim of copyright infringement based on terms or other material that appeared in previously released matter.  That alone largely decides this case, because virtually all of the terms upon which Synopsys premises its claim of infringement are terms that have been expressly excluded from the registrations that form the basis for Synopsys' copyright claims in this case.  *See* Ex. 2 (identifying terms subject to disclaimer by Synopsys).

Moreover, in addressing any remaining claim of infringement for matter that is included within the alleged copyright registrations, in conducting its analytic dissection, the Court must remove virtually all of the allegedly copied names of commands, options, variables, objects and attribute from consideration.  *See Apple*, 35 F.3d at 1445; Ex. 2.

Synopsys cannot invoke the narrow exception to the standing requirement known as the "effective registration doctrine".  *See AFL*, 946 F. Supp. 2d at 940.  When the elements are met, a party that owns both an unregistered original work and a registered derivative work has standing to sue for infringement of both.  *See Streetwise Maps, Inc. v. Van-Dam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998).  This doctrine is inapplicable here for several reasons.  First, the PrimeTime and GoldTime registrations do not identify the original, underlying works.  *See* ECF Nos. 43-1 to 43-5; *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1163 (C.D. Cal. 2010) ("[C]ourts have found registration of a derivative work insufficient to encompass the original, preexisting work where the registration certificate failed to properly identify the original work from which the subsequent work was derived (and upon which the infringement claim was based)."); *cf. Streetwise*, 159 F.3d at 746 (registration of derivative clearly described original work).  Second, the effective

registration doctrine does not apply to non-original and *affirmatively disclaimed* portions of works, *i.e.*, any terms contained in pre-PT 2006.12 and pre-GT 2011.12 releases. *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229-30 (11th Cir. 2008); *Synygy, Inc. v. ZS Assocs., Inc.*, Civ. No. 07-3536, 2015 WL 899408 (E.D. Pa. Mar. 3, 2015); *AFL*, 946 F. Supp. 2d at 941.

Further, and just as important, the effective registration doctrine does not allow belated, tactical registrations of the kind made by Synopsys. From 2004 to 2006, when ATopTech was developing Aprisa and the bulk of the alleged copying took place, Synopsys had not registered PrimeTime with the Copyright Office and was actively encouraging the use of common terms across EDA platforms. *See* Exs. 3, 4. This remained true when Aprisa was released in 2006. Four years *after that*, in December 2010, Synopsys first registered PrimeTime, when it simultaneously sought certificates for PT 2006.12 and PT 2010.12, albeit with the disclaimers noted above. ECF 43-1 to 43-5. Thus, by the time Synopsys obtained its first registration for PrimeTime, ATopTech had already been using most of the disputed term for *years*. The effective registration doctrine is therefore inapplicable. *See Oskar Sys.*, 745 F. Supp. 2d at 1163 ("Plaintiff has not pointed to any authority that supports what it is attempting here—to register and sue on a version of a software program that was created *after* the version that Defendants allegedly copied, by belatedly characterizing the registered work as derivative of an earlier work that was created before the alleged infringement.") (emphasis in original). As the court in *Oskar Systems* noted, "[a]dopting such a rule would frustrate the purpose of copyright registration and open the door to fraud." *Id.*; *see also Fid. Info. Servs., Inc. v. Debtdomain GLMS Pte Ltd.*, No. 09 Civ. 7589(LAK)(KNF), 2012 WL 1681792, at *3 n.2 (S.D.N.Y. May 15, 2012) (holding that plaintiff lacked copyright in, and could not sue for infringement of, unregistered version of software that defendant allegedly copied prior to plaintiff's first registration). The Court cannot proceed unless Synopsys can establish the existence of subject matter jurisdiction. It is Synopsys' burden to establish standing. Synopsys cannot meet that burden given the undisputed facts in this case.[11]

---

[11] Synopsys cannot remedy the Court's lack of jurisdiction over pre-2006 terms by now registering PrimeTime releases predating PT 2006.12. *See Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1171 (9th Cir. 2013) (noting that "jurisdiction is based on facts that exist at the time of filing," and a plaintiff who lacks standing under the Copyright Act as of the time of filing cannot cure the jurisdictional defect by later acquiring necessary rights).

Synopsys may note that certain of the claimed terms predate PrimeTime.  *See* Ex. 8, at 110:3-113:4; Exs. 10-12.  That, however, would do nothing but confirm that Synopsys has no viable claim for infringement of PrimeTime.  A plaintiff cannot rely on its registrations of entirely different works to prove originality and infringement of a work-in-suit—even if it created the other works.  *See Brown Bag*, 960 F.2d at 1473.  Further, as the Court has already held, it is too late for Synopsys to identify a copyright in some other program as the basis for this suit.  ECF No. 377 (denying Synopsys' motion to add claim for infringement of IC Compiler).  Synopsys has identified the copyright registrations that it seeks to assert in this case; it turns out that virtually all of the commands, options, variables and the like that Synopsys would now like to assert were disclaimed in those registrations.

The Court should therefore hold that ATopTech is entitled to summary judgment on all asserted terms that predate PT 2006.12 or GT 2011.12.

## II.   SYNOPSYS HAS NO VALID COPYRIGHT IN THE UNEXPRESSIVE TERMS THAT IT ASSERTS IN THIS CASE.

The next reason that the terms claimed by Synopsys are not copyrightable also carries dispositive weight: the terms are uncreative, non-copyrightable "words and short phrases" that are part of the common vocabulary used by EDA engineers.  *See* 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles, and slogans" are not copyrightable).  The commands at issue— for example ████████████████████████████████████████████████████████████

████████████████████████████████—are, by design, straightforward descriptions of the function to be carried out.  ███████████████████████████████████████████████████

████████████████████████████████████████ ██████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

---

[12] Likely for that very reason, "report_timing", and an overlapping set of options, is used by many EDA companies.  *See* Ex. 27.

1  ████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████ ███████████

4  ██████████████ ████████████████████████████████

5  ████████████████ █ ████████████████████████████

6  ███████████████████████████████████████████████

7  ████████████████████.

8        Because "[p]hrases and expressions conveying an idea typically expressed in a limited

9  number of stereotyped fashions are not subject to copyright protection," Synopsys cannot claim

10 ownership of ████████ and other basic EDA vocabulary.  *See Narell v. Freeman*, 872 F.2d

11 907, 911 (9th Cir. 1989).  Courts recognize that such "fragmentary words and phrases," especially

12 when "dictated solely at functional considerations," lack the creativity required for copyright

13 protection. *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1384 (Fed. Cir. 2007) (citing *CMM Cable

14 Rep, Inc. v. Ocean Coast Props.*, 97 F.3d 1504, 1519 (1st Cir. 1996)).  In *Hutchins*, the plaintiff's

15 claimed copyright consisted of "standard instructions for performing CPR," including two

16 instructions the defendant copied verbatim ("check breathing"; "call for help") and many others that

17 were similar.  492 F.3d at 1384-85.  The district court held that the instructions lacked sufficient

18 "creative expression" to "transcend the[ir] functional core" and granted summary judgment for the

19 defendant; the Federal Circuit affirmed.  *Id.* at 1385 (citation omitted).

20        Similarly, in *Narell*, the Court held that the following "commonly-used expressions" were

21 not "expressive elements" entitled to copyright protection: describing an extended family as a

22 "staggering network," a muddy street as a "cow path," and a river bank covered by alligators as

23 "crawling with alligators."  872 F.2d at 911.  Despite the defendant having admittedly copied "over

24 300 words" in total to create a work on based on the same subject matter, the Ninth Circuit affirmed

25 summary judgment in the defendant's favor because only such "ordinary phrases" were copied.  *Id.*

26 at 909, 912.  The Federal and Ninth Circuits are not alone in holding that such short, ordinary

27 ───────────────
   [13] ████████████████████████████████████

28 ████████████████████████████████████████████████

1    phrases are not copyrightable.  *See, e.g.*, *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705,

2    711 (7th Cir. 1972) (phrase "most personal sort of deodorant" not copyrightable as "merely a 'short

3    phrase or expression' which hardly qualifies as an 'appreciable amount of original text'") (quoting

4    *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544 (2d Cir. 1959)).[14]

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ██   Even if true, those points are irrelevant.   ███████████████████

8    ████████████████████████████████████████████████████████████████

9    ██████████████████████████████████████████   This would enable

10   their interchangeability across all tools, even competitors'—Synopsys' long-stated goal until

11   recently.  Exs. 3, 4.  In the context of EDA, the terms lacked creativity from the outset.  *See Feist*

12   *Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (noting that "original" for copyright

13   purposes means both that a work was independently created "*and that it possesses at least some*

14   *minimal degree of creativity*") (emphasis added); *CMM Cable Rep*, 97 F.2d at 1520 (denying

15   protection to phraseology used in work-themed marketing scheme that "involve[d] cliched language

16   that is typically used to convey the idea of employment"); *see also Murray Hill Publ'ns, Inc. v.*

17   *ABC Commc'ns, Inc.*, 264 F.3d 622, 627, 633 (6th Cir. 2001) (finding the following non-

18   copyrightable: "Good morning, Detroit. This is J.P. on JR in the A.M. Have a swell day.").  Even

19   the first person to use "check breathing" or the like to teach CPR did not earn a monopoly on that

20   phrase, as such instructions are "indispensable for applying CPR, and remain in the public domain."

21   *Hutchins*, 492 F.3d at 1385.[15]  Just like "check breathing," "report_timing" and its uncreative

22   brethren are indispensable to EDA timing analysis, and must remain in EDA's public-domain

23

24   ———————————————

25   [14] *See also Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 25-30 (D.D.C. 2010),
     *aff'd*, 425 Fed Appx. 1 (D.C. Cir. 2011) (holding that phrases like "fire in the hole", "get it poppin'",
26   "wish a muthafugga would", "just running their mouths", "shoot to kill", "I'm a maniac" were not
     subject to copyright protection).

27   [15] This is so even though one can think of alternatives to "check breathing," like "monitor
     respiration," "observe air intake," "assess inhalation" and so forth.  Therefore, Dr. Storer's claim
28   that there are viable alternatives to "report_timing" is misguided.  *See* Ex. 28.  The mere existence
     of alternates does not prove a term or phrase creative.

1   lexicon whence they came.[16]

2        Synopsys may attempt to rely on *Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339, 1362-

3   63 (Fed. Cir. 2014), to support its copyright claim.  This case, however, bears no resemblance to the

4   facts presented in *Oracle v. Google*.  In that case, the court had before it a series of "Application

5   Program Interfaces" or "API's," each of which were comprised of multiple lines of computer code

6   written by Oracle's predecessor.   The *Oracle* court was not confronting generic, industry-standard

7   words and phrases passed off as creative works.  Further, Oracle was "not seeking copyright

8   protection for a specific short phrase or word," but rather, for 7,000 lines of source code that Google

9   had copied verbatim. *Id.* at 1363.  Because Oracle "exercised creativity in the selection and

10   arrangement" *of the code* that made up its API's, the Federal Circuit held that the District Court

11   erred in artificially parsing the code into short phrases. *Id.*

12        Here, by contrast, Synopsys has not asserted that ATopTech copied a single line of code,

13   much less a cohesive compilation reflecting its original "selection and arrangement" of terms.

14   Indeed, no code is at issue at all, but rather the scattered use of a small subset of common command

15   English language terms such as ███████████ along with equally generic terms for options,

16   variables, objects and attributes.  The proposition that a copyright may be asserted in thousands of

17   lines of computer code that have been created is, in a proper case, an appropriate application of

18   copyright law.  It is limited to the creativity expressed in that code, which did not exist before its

19   author created it.  An attempt to apply copyright law to common English language words is an

20   entirely different—and extremely misguided—proposition that no court has approved.  If

21   ███████████ can be copyrighted, the presumably other command terms such as "save," "print,"

22   or even "control-alt-delete" can be copyrighted as well.  Indeed, it is difficult to see exactly what the

23   limits would be of the type of copyright claim that Synopsys seeks to assert in this case.  And, it is

24   even more difficult to see how allowing copyright to apply to such common English language terms

25   could fulfill the purposes of the Copyright Act.  That is why the courts have not permitted such a

---

26       [16] Synopsys' experts have disagreed, but that is of no moment because originality is a

27   question of law for the Court to decide. *Stern v. Does*, 978 F. Supp. 2d 1031, 1038 (C.D. Cal. 2011), *aff'd*, 512 Fed. Appx. 701 (9th Cir. 2013) ("When a defendant challenges the quantum of the plaintiff's originality or creativity as a matter of law, 'these matters should be resolved solely by the

28   judge.'") (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §12.10[B][1] (rev. ed.2010)).

claim.  Synopsys should not be permitted to have this Court be the first to find a copyright in these short, fundamentally uncreative English-language words and phrases.

### III.   SYNOPSYS HAS IDENTIFIED NO VALID COMPILATION OF TERMS SUBJECT TO COPYRIGHT PROTECTION.

Synopsys is plainly not entitled to copyright protection for the individual names of the EDA terms at issue.  Synopsys might have sought to identify a valid and properly copyrightable compilation of terms that might qualify for copyright protection.  Synopsys has not done so.  In fact, it has done the opposite.

For the Court to consider whether there is a protectable compilation separate and apart from individual input formats, it was incumbent on Synopsys to show that it "selected, coordinated or arranged" otherwise non-protectable input formats in such a way that the ensuing work reflects Synopsys' creativity.  17 U.S.C. § 101; *Feist*, 499 U.S. at 358-59.  However, Synopsys' expert Dr. Storer did very much the opposite.  He addressed each individual term as a separate instance of copyright infringement and, further, addressed only the incremental selection of *individual* terms, which took place over a period of more than a decade.  Ex. 20, at 43-46.  What is missing from Dr. Storer's report, and from Synopsys' case entirely, is any testimony or evidence that Synopsys consciously "selected, coordinated or arranged" these terms in such a way as to form a new and creative work.  *See Sem-Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 855 (6th Cir. 1991) (rejecting claim of compilation in "set" of five generic signs that was "no greater than the sum of its individual unprotected parts").  To the contrary, Dr. Storer's report (as well as Dr. Walker's) points only to alphabetical lists of names of commands and options (Exhibits 3-1 and 3-7), variables (Exhibits 3-2 and 3-8) and objects and attributes (Exhibits 3-3 and 3-9) that not Synopsys, but *its litigation expert witnesses* selected and arranged for this litigation.

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████    Thus, Dr. Walker's lists are not original to Synopsys and are not compilations within the meaning of Section 101.  Rather, they are indices of the thousands of terms that have

1   appeared in many years' worth of PrimeTime and GoldTime releases, organized in a manner that is

2   not creative as a matter of law.  *See Feist*, 499 U.S. at 363 ("there is nothing remotely creative about

3   arranging names alphabetically").  And while they are *derived* from materials deposited with the

4   Copyright Office, Synopsys has not registered its experts' indices, and therefore cannot sue for their

5   alleged infringement based on these lists for this reason as well.

6         Synopsys might have attempted, at least, to claim copyright protection for some identified

7   combination of the terms that it experts list.  But as its experts' reports and exhibits demonstrate,

8   Synopsys chose not to.  Rather, it alleges that it owns a protectable copyright in *any* of the terms in

9   the lengthy alphabetical lists that Dr. Storer and Dr. Walker have created for purposes of this

10  litigation.  Since that is what they have done, the Court should take them at their word and

11  determine whether such an incredibly broad claim of copyrightability can be made.  As the cases

12  discussed above demonstrate, it cannot.  Synopsys cannot claim a valid copyright in the words used

13  in the EDA profession.  To hold otherwise would inevitably be to allow a dominant competitor to

14  claim a monopoly in the very language of the profession.  That is directly antithetical to the

15  purposes of the Copyright Act.

16        Even if there were a protectable "compilation" of PrimeTime terms as a whole, Synopsys

17  has not shown that, in using a small subset of those terms, ATopTech employed the same "form of

18  presentation and compilation."  *See Hutchins*, 492 F.3d at 1385 ("Although the compilation of

19  public information may be subject to copyright in the form in which it is presented, the copyright

20  does not bar use by others of the information in the compilation.") (citing *Feist*, 499 U.S. at 348-

21  49).  Synopsys' experts have noted that Aprisa shares at most only 682 total terms with either

22  PrimeTime and GoldTime—out of many thousands of terms used in each program.  Ex. 20, at 73-

23  74.  When Dr. Walker examined the terms in *Aprisa*, he entered queries that returned a log file with

24  "a lot of other text" in addition to the commands, options and other terms at issue here, text that Dr.

25  Walker *removed* when creating his Exhibit 4, the list of Aprisa terms.  Ex. 19, at 74:21-83:22.

26  Without running Aprisa, he could not recall, and his report did not state, exactly what he removed.

27  *Id.* at 79:13-80:13.  Thus, the testimony of Synopsys' own experts shows that Aprisa does not use

28  the same "form of presentation and compilation" as employed in PrimeTime and GoldTime.

1    Therefore, even if Synopsys had identified a relevant compilation, ATopTech would still be entitled

2    to judgment as a matter of law.  *See Hutchings*, 492 F.3d at 1385; *Sem-Torq*, 936 F.3d at 855.

3    **IV.   THE OUTPUT FORMATS GENERATED BY PRIMETIME ARE NOT ELIGIBLE
4          FOR COPYRIGHT PROTECTION.**

5           In claiming that ATopTech has infringed a copyright in PrimeTime's "output formats"

6    (FAC ¶50), Synopsys seeks protection for "what content should be displayed and how the content

7    should be presented to the user" when using PrimeTime.  Ex. 20, at 34.  Summary judgment is

8    warranted because Synopsys has disclaimed registration for PrimeTime output reports, and because

9    the reports are not copyrightable under the blank forms doctrine.

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████  As

12   discussed in Part I, *supra*, Synopsys has disclaimed registration of all pre-PT 2006.12 materials as a

13   part of PrimeTime, meaning it lacks standing to sue for infringement of its claimed output formats

14   as well.

15          In any event, the output formats are not copyrightable.  When a user enters a command

16   sequence or runs a script in either PrimeTime or Aprisa, the program generates a report describing

17   how the IC design performed.[17]  Synopsys has identified, via its expert Dr. Storer, the following

18   "creative" elements of its reports that also appear in Aprisa: (1) the order in which data are

19   presented, (2) "using a string of dashes (-------) to provide visual separation," (3) a particular

20   arrangement of certain information in certain columns, (4) using a line of asterisks to start the

21   report, and (5) using the label "Report:" at the top of the report.  Ex. 20, at 48-50.  Here, Synopsys

22   is seeking a copyright in the *idea* of depicting information in a certain format.[18]  This is improper

23   under the "blank forms rule," which "denies copyrightability to forms consisting entirely of spaces

24   _____

25   [17] As exhibits to his report, Synopsys' Dr. Walker provided output reports he created by
     running scripts in PrimeTime and Aprisa.  Exs. 17-18.  The information reflected in these reports
26   was dictated by *his* choices of which commands, options, variables, objects and attributes to
     include.  *See* Ex. 16, at 13 ("I note that because the precise output that is generated by the software
27   is dependent on the inputs to the software, and there are thousands of permutations of options to
     commands that generate output reports, there are innumerable variations to the output formats.").

28   [18] Synopsys is not seeking to protect the *data* generated and displayed in output reports.  Nor
     could it, as "fact are not copyrightable."  *Feist*, 499 U.S. at 344.

for the recording of information, whether labeled or unlabeled, that are not accompanied by text conveying information, such as instructions regarding the use of forms." *Advanz Behavioral Mgmt. Res., Inc. v. Miraflor*, 21 F. Supp. 2d 1179, 1189 (C.D. Cal. 1998) (citing *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1107 (9th Cir. 1990)); *see also* 37 C.F.R. §202.1(c) (denying copyright to "[b]lank forms . . ., report forms, order forms and the like, which are designed for recording information and do not in themselves convey information").

Presenting information using a table and particular columns are "common ways to display information" and not copyrightable. *See Wyatt Tech. Corp.*, 2009 WL 2365647, at *6; *see also Baker v. Selden*, 101 U.S. 99, 100, 107 (1880) (where plaintiff's copyrighted book described bookkeeping system using "a peculiar arrangement of columns and headings," plaintiff had no "exclusive right to make and use account-books, ruled and arranged as designated by him and described and illustrated in said book"). Even if generic formats could be copyrighted, Dr. Storer and Synopsys never explain how this particular arrangement reflects Synopsys' creativity, instead asserting that "[t]here were many possible alternative formats available to Synopsys." Ex. 20, at 50. The fact that Synopsys could have arbitrarily used a different format, but didn't, does not make the chosen format protectable. Summary judgment is proper.

## V.   SYNOPSYS CANNOT ESTABLISH INFRINGEMENT OF ANY PROTECTABLE EXPRESSION AS A MATTER OF LAW.

As the foregoing shows, analytic dissection reveals nothing protectable in PrimeTime to compare with Aprisa, and summary judgment should be entered for ATopTech. *See Brown Bag*, 960 F.2d at 1476-77 (affirming summary judgment of no substantial similarity where analytic dissection had removed all similarities protected by copyright).

Even if the Court finds it necessary to proceed to the third step, the terms that Synopsys asserts contain almost no original expression and merit extremely "thin" copyright protection. *See Apple*, 35 F.3d at 1443; *see also Wyatt Tech.*, No. CV 07-8298 DDP, 2009 WL 2365647, at *4 ("Because computer programs can have creative elements but are also fundamentally functional, software tends to enjoy relatively weak protection and is subjected to a high standard for similarity before there will be infringement") (citing *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524-

26 (9th Cir. 1992)).  In *Apple*, the Court deemed it proper to only protect the plaintiff's GUI against "virtually identical copying," in part because the defendant had a license to use many of the features and because of the limited number of ways in which the GUI involved there could be expressed.  35 F.3d at 1442.  Here, Synopsys' overall lack of originality in the terms at issue via the use of standard EDA language, its disclaimer of a copyright in most of allegedly copied terms, its licensing of still others as SDC terms and its failure to identify a protectable compilation, leaves at most a small handful of terms, showing only minute expression, to be protected.  *See* Ex. 1.  Consequently, the Court should hold that only verbatim copying of the *entire* PrimeTime command line interface can amount to copyright infringement.  *See Apple*, 35 F.3d at 1447.

Of the thousands of terms in PrimeTime, ATopTech copied only a fraction into Aprisa, and did so only for the purpose of enhancing interoperability of the programs—a goal that Synopsys was publicly advocating at the time.  Ex. 3; Ex. 4, ;Ex. 20, at 20-21.  The two programs have only fragmentary similarity in their names for certain terms in the software and user documentation, but not in any discernable selection, coordination or arrangement.  *See Hutchins*, 492 F.3d at 1385.  For this reason, the Court should hold that Aprisa is not substantially similar to PrimeTime as a matter of law.  *See Apple*, 35 F.3d at 1439 (affirming summary judgment due to lack of virtual identity in user interface); *Brown Bag*, 960 F.2d at 1476-77.

## VI. ATOPTECH IS ENTITLED TO SUMMARY JUDGMENT ON SYNOPSYS' BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS.

### A. Synopsys Has No Evidence of Breach of Contract or the Covenant of Good Faith Arising from the CPLA.

To prevail on its claim for breach of contract, Synopsys must establish: (1) the existance of a contract, (2) Synopsys' performance of the contract or excuse for nonperformance, (3) ATopTech's breach, and (4) the resulting damage to Synopsys.  *Mora v. U.S. Bank, N.A*., No. 11-6598 SC, 2012 U.S. Dist Lexis 79357, at*18 (N.D. Cal. Jun. 7, 2012).  Synopsys has identified no evidence of breach.  Moreover, Synopsys Federal Rule 30(b)(6) witnesses on the CPLA testified that ████████ ███████████████████████████████████████████████████████████████████ ██████████████████.  The undisputed evidence thus negates at least two of the elements of

1  Synopsys breach of contract claims and likewise an essential element of a claim for alleged breach

2  of the covenant of good faith and fair dealing.  ATopTech is therefore entitled to summary

3  judgment on these claims.  Based on the undisputed facts, ATopTech has established that it did not

4  breach the CPLA and there was no resulting damage to Synopsys.

5      Synopsys claims that ATopTech breached the CPLA by copying the names of GoldTime

6  "formats" into Aprisa.  FAC ¶97.  No evidence supports these claims.

7

8      Therefore, Synopsys

9  cannot claim that there is a breach of contract or of any covenant of good faith and fair dealing of

10  the CPLA with respect to these commands.  Second, the only evidence on the actual purpose and

11  intent of the CPLA is testimony and documentary evidence that supports only one conclusion:  that

12  ATopTech was entitled to use GoldTime during the period the CPLA was in effect in order to

13  "develop" Aprisa so that it would be interoperable with GoldTime, which plainly encompassed

14  adopting the same command terminology, which undeniably enhances interoperability. As Mr.

15  Thune, who entered into the CPLA on behalf of ATopTech,

16

17      Synopsys has

18  presented no contrary evidence; none exists.

19      All of the evidence that exists on this part of the case confirms that

20

21      Synopsys has provided no evidence showing that

22  anything that ATopTech and Extreme DA did during the performance of the CPLA constituted a

23  breach of the terms of that agreement or a breach of the covenant of good faith and fair dealing.[20]

[19] The terms switch and command are interchangeable.  *See* Ex. 31, at 211:7-15.

[20] At various times in this case, Synopsys has alleged that that somehow ATopTech may have breached the CPLA by disclosing "confidential information" to a customer.  FAC ¶97. However, the only customer that Synopsys has identified during discovery and expert reports is Broadcom.  It is undisputed that Broadcom was already a customer of both Extreme DA for GoldTime and Synopsys for PrimeTime when ATopTech and Extreme DA entered into the CPLA. Thus, Broadcom already knew all of the names used as "input format" or "output format" for both GoldTime and PrimeTime.  Here, Broadcom is the only alleged receiving party and it

1   ████████████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████████

3   Synopsys alleges that ATopTech performed reversed engineering.  ATopTech has provided

4   unrefuted evidence that ████████████████████████████████████████████

5   █████████████ Synopsys' witness on the CPLA identified no reverse engineering but, to the

6   contrary, ██████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████

8   ███████████████████████████████████ This was the purpose of the CPLA according to

9   Synopsys' own witness.  Synopsys has identified no evidence of any reverse engineering or, indeed,

10  any other conduct of ATopTech that could form the basis for  a claim of breach of the CPLA.

11       Section 7.3 of the CPLA states █████████████████████████████████

12  █████████████████████████████████ Synopsys claims that ATopTech

13  possessed and used GoldTime after the contract terminated.  FAC ¶99.  ████████████

14  ████████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████ Synopsys has not

16  produced any evidence to refute this, nor has it presented any evidence that ATopTech made any

17  use of GoldTime after Synopsys terminated the CPLA.

18       **B.    Synopsys Has Conceded It Can Identify No Harm or Damage Arising from**

19          **Performance of the CPLA.**

20       During discovery, Synopsys identified Robert Hoogenstryd and Joseph Logan as their

21  company witnesses to testify on behalf of Synopsys with respect to its claims under the CPLA.  On

22  behalf of Synopsys, ██████████████████████████████████████████

23  ────────────────────────

(continued…)

24

25  already had access to all GoldTime  and PrimeTime information.  There can therefore be no claim
    of breach even if ATopTech did somehow share the name of an input format (or anything else, for
    that matter) with Broadcom.

26       Further, section 5.1 (i) of the CPLA states that ██████████████████████████
                                                                                     The
27  GoldTime commands that Synopsys is now claiming are confidential have been posted on the
    internet for many years, on university web sites, blogs, and a myriad of other web sites.  *See* Ex. 5.
28  Therefore, they are generally known and available to the public domain.

1

2

3

4

5

6

Ex. 27, at 61:1-13.  To be certain on this issue, ATopTech's counsel revisited the issue:

7

8

9

10

*Id.* at 64:13-24.

For his part,

13

14

15

16

This generalized testimony—more indicative of a lack of knowledge than anything case—cannot form the basis for a claim of breach of contract or the covenant of good faith.  Synopsys, therefore, can present no admissible or credible evidence to sustain a claim either of breach of or of damage associated with the CPLA.  ATopTech is entitled to summary judgment on these claims.

**CONCLUSION**

For the foregoing reasons, ATopTech respectfully requests that the Court enter summary judgment as to Counts I, XI and XII of Synopsys' Amended Complaint.

Dated:  October 30, 2015                              ARNOLD & PORTER LLP

By:/s/  *Paul Alexander*
Paul Alexander

Attorneys for Defendant
ATOPTECH, INC.

35346592v13

ATOPTECH'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:13-cv-02965-MMC (DMR)