Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@JonesDay.com
Patrick T. Michael (State Bar No. 169745)
pmichael@JonesDay.com
Krista S. Schwartz (State Bar No. 303604)
ksschwartz@JonesDay.com
Joe C. Liu (State Bar No. 237356)
jcliu@JonesDay.com
Nathaniel P. Garrett (State Bar No. 248211)
ngarrett@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Heather N. Fugitt (State Bar No. 261588)
hfugitt@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone: +1.650.739.3939
Facsimile: +1.650.739.3900

Attorneys for Plaintiff
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC., | Case No. 3:13-cv-02965-MMC (DMR) |
| Plaintiff, | PLAINTIFF SYNOPSYS, INC.'S OPPOSITION TO ATOPTECH'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ATOPTECH, INC., | Date:        December 4, 2015 |
| Defendant. | Time:        9:00 a.m. |
| | Judge:       Hon. Maxine M. Chesney |
| | Courtroom:   7, 19th Floor |

**PUBLIC - REDACTED VERSION OF DOCUMENT BEING SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

                                                                                      **Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .................................................................................................. 2

III.  LEGAL STANDARD ......................................................................................... 4

IV.   ATOPTECH IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE
      COPYRIGHT CLAIM. ....................................................................................... 4

      A.   ATopTech's Mischaracterization of Synopsys' Claim Taints Its Entire
           Copyright Analysis and Dooms Its Motion. ............................................... 5

      B.   ATopTech Cannot Prevail On Its So-Called "Standing" Argument..................... 7

           1.   Registration Is Not Jurisdictional And ATopTech Waived Any
                Defense Based on Section 411(a). ............................................................ 7

           2.   Synopsys Is Entitled to Enforce Its Properly Registered Derivative
                Works, Including Preexisting Material It Authored.................................. 8

                (a)   Synopsys' Registration of PrimeTime as a Derivative Work
                      Does Not Affect the Scope or Enforceability of Its
                      Copyright in Preexisting Material. ..................................................... 8

                (b)   Under the Effective Registration Doctrine, Synopsys Is
                      Entitled to Enforce Its Copyright in Preexisting Material
                      Contained in Later Versions of PrimeTime. .................................. 10

                (c)   ATopTech's Contrary Interpretation Is Impractical. .................. 14

           3.   Even Under ATopTech's Erroneous Interpretation of Section
                411(a), It Has Not Met Its Burden on Summary Judgment. .................... 14

      C.   ATopTech's Evidence Does Not Rebut the Presumption of Originality.............. 15

           1.   Synopsys' Input Formats Are Copyrightable............................................ 16

           2.   Synopsys' Output Formats Are Copyrightable. ....................................... 20

      D.   ATopTech Has Not Established Noninfringement as a Matter of Law. .............. 21

V.    THERE IS A TRIABLE ISSUE OF FACT ON THE CONTRACT CLAIMS................ 23

      A.   Synopsys Has Raised Triable Issues of Fact Regarding Breach......................... 23

      B.   Synopsys Has Raised Triable Issues of Fact Regarding Injury. ......................... 25

VI.   CONCLUSION .................................................................................................. 25

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Advanz Behavorial Mgmt. Res., Inc. v. Miraflor,*

5
    21 F. Supp. 2d 1179 (C.D. Cal. 1998) ......................................................21

6

*AFL Telecommunications LLC v. SurplusEQ.com Inc.,*

7
    946 F. Supp. 2d 928 (D. Ariz. 2013) ................................................11, 12

8

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.,*
    747 F.3d 673 (9th Cir. 2014) ...............................................................12

9

10

*Alberto-Culver Co. v. Andrea Dumon, Inc.,*
    466 F.2d 705 (7th Cir. 1972) ...............................................................19

11

*Apple Computer, Inc. v. Microsoft Corp.,*

12
    35 F.3d 1435 (9th Cir. 1994) ............................................................5, 22

13

*Apple, Inc. v. Psystar Corp.,*

14
    673 F. Supp. 2d 931 (N.D. Cal. 2009) .....................................................8

15

*Aspen Tech., Inc. v. M3 Tech., Inc.,*

16
    569 F. App'x 259 (5th Cir. 2014) .........................................................10

17

*Bay Area Roofers Health v. Sun Life Assur. Co.,*
    73 F. Supp. 3d 1154 (N.D. Cal. 2014) .....................................................25

18

19

*Bibbero Sys., Inc. v. Colwell Sys., Inc.,*
    893 F.2d 1104 (9th Cir. 1990)...............................................................21

20

21

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.,*
    No. 10-CV-419-GPC WVG, 2012 WL 6553403 (S.D. Cal. Dec. 13, 2012) ...........10

22

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*

23
    No. C 10-3428 PSG, 2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ..................10, 12

24

*Brown Bag Software v. Symantec Corp.,*

25
    960 F.2d 1465 (9th Cir. 1992)...............................................................16

26

*Celotex Corp. v. Catrett,*

27
    477 U.S. 317 (1986)...........................................................................4

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Christopher Phelps & Assocs. v. Galloway*,

4
   492 F.3d 532 (4th Cir. 2007)..................................................................................11

5

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

6
   68 Cal. App. 4th 445 (Cal. Ct. App. 1998) ...........................................................24

7

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
   97 F.3d 1504 (1st Cir. 1996) .................................................................................19

8

9

*Computer Assocs. Int'l v. Altai, Inc.*,
   982 F.2d 693 (2d Cir. 1992).............................................................................5, 21

10

11

*Cosmetic Ideas Inc. v. IAC/InteractiveCorp*,
   606 F.3d 612 (9th Cir. 2010).................................................................................14

12

13

*Dezendorf v. Twentieth Century-Fox Film Corp.*,
   99 F.2d 850 (9th Cir. 1938)...................................................................................17

14

15

*Emerson v. Davies*,
   8 F. Ca. 615 (C.C.D. Mass. 1845)........................................................................18

16

17

*Engineering Dynamics, Inc. v. Structural Software, Inc.*,
   26 F.3d 1335 (5th Cir. 1994).......................................................................6, 20, 21

18

*Express, LLC v. Fetish Group, Inc.*,
   424 F.Supp.2d 1211 (C.D. Cal. 2006) ..................................................................18

19

20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)........................................................................................15, 16

21

22

*Fidelity Information Services, Inc. v. Debtdomain GLMS Pte Ltd.*,
   No. 09 CIV. 7589 LAK KNF, 2012 WL 1681792 (S.D.N.Y. May 15, 2012)........13

23

24

*Hutchins v. Zoll Med. Corp.*,
   492 F.3d 1377 (Fed. Cir. 2007).............................................................................19

25

26

*Kontrick v. Ryan*,
   540 U.S. 443 (2004)................................................................................................7

27

*Modern Pub., a Div. of Unisystems, Inc. v. Landoll, Inc.*,
   841 F. Supp. 129 (S.D.N.Y 1994).........................................................................16

28

Pl.'s Opposition to Defendant's Motion for Summary
Judgment; Case No. 3:13-cv-02965-MMC (DMR)

**TABLE OF AUTHORITIES**
(continued)

Page

*Murray Hill Publications, Inc. v. ABC Commc'ns, Inc.*,
   264 F.3d 622 (6th Cir. 2001) ................................................................................... 18

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989) ................................................................................... 18

*Oracle Am., Inc. v. Google Inc.*,
   750 F.3d 1339 (Fed. Cir. 2014) ........................................................................ passim

*Oracle Am., Inc. v. Google Inc.*,
   No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 68707 (N.D. Cal. May 16,
   2012) ....................................................................................................................... 12

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
   527 F.3d 1218 (11th Cir. 2008) ............................................................................... 12

*Oskar Systems, LLC v. Club Speed, Inc.*,
   745 F. Supp. 2d 1155 (C.D. Cal. 2010) ............................................................. 12, 13

*Paycom Payroll, LLC v. Richison*,
   758 F.3d 1198 (10th Cir. 2014) ................................................................................. 7

*Powerine Oil Co., Inc. v. Superior Court*,
   37 Cal. 4th 377 (Cal. 2005) ..................................................................................... 24

*Prunte v. Universal Music Grp., Inc.*,
   699 F. Supp. 2d 15 (D.D.C. 2010) .......................................................................... 19

*Range Road Music, Inc. v. E. Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ................................................................................. 21

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) .............................................................................................. 1, 7

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir 2013) .................................................................................. 14

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ................................................................................. 13

*Sem-Torq, Inc. v. K Mart Corp.*,
   936 F.2d 851 (6th Cir. 1991) ................................................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Shaw v. Lindheim,*
    919 F.2d 1353 (9th Cir. 1990).................................................................21

*Streetwise Maps, Inc. v. VanDam, Inc.,*
    159 F.3d 739 (2d Cir. 1998)...........................................................10, 13

*Swirsky v. Carey,*
    376 F.3d 841 (9th Cir. 2004)........................................................5, 22, 23

*Synygy, Inc. v. ZS Associates, Inc.,*
    No. CIV.A. 07-3536, 2015 WL 899408 (E.D. Pa. Mar. 3, 2015)...................12

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC,*
    692 F.3d 1009 (9th Cir. 2012)........................................................4

**STATUTES**

17 U.S.C. § 101 ...................................................................................17

17 U.S.C. § 102(a) ..............................................................................8

17 U.S.C. § 103(b) .................................................................9, 10, 12

17 U.S.C. § 107 ...................................................................................8

17 U.S.C. § 408(a) ........................................................................8, 13

17 U.S.C. § 409(9) ..............................................................................9

17 U.S.C. § 410(c) ............................................................................16

17 U.S.C. § 411(a) ..................................................................... passim

17 U.S.C. § 702 ...................................................................................9

Cal. Civil L.......................................................................................15

Copyright Act..............................................................................8, 17

**OTHER AUTHORITIES**

37 C.F.R. § 202.1(c).............................................................................21

**TABLE OF AUTHORITIES**
(continued)

Page

Fed. R. Evid. 401, 402 ...................................................................................................2, 15

Fed. R. Evid. 702 ...............................................................................................................15

Fed. R. Evid. 801, 802, 901, 902 ........................................................................................2

Local Rule 7-5..................................................................................................................15

Pl.'s Opposition to Defendant's Motion for Summary
Judgment; Case No. 3:13-cv-02965-MMC (DMR)

1    I.      **INTRODUCTION**

2         ATopTech's motion attacks a straw man.  Although Synopsys claims infringement of its

3    copyrighted input formats—commands, options, variables, objects and attributes that have *both*

4    names and syntax—ATopTech summarily asserts Synopsys only claims protection of "names"

5    and then challenges the registration, copyrightability, and infringement of those "names."  Mot. at

6    1.  Because ATopTech misstates Synopsys' copyright claim, it cannot prevail on its motion.

7         ATopTech's arguments also fail on other grounds.  ATopTech's "standing" argument

8    ignores binding Supreme Court precedent that 17 U.S.C. § 411(a) "does not implicate the subject-

9    matter jurisdiction of federal courts."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010).

10   Section 411(a) is a claim-processing rule, which ATopTech waived.  ATopTech also

11   misunderstands copyright registration and the doctrine of "effective registration," which permits

12   enforcement of preexisting material in a registered derivative work when the same party also

13   owns the copyright in the preexisting work.

14        ATopTech's copyrightability argument ignores the presumption of originality, misapplies

15   the "words and short phrases" doctrine by failing to look beyond names to the syntax of each

16   input format, and ignores that Synopsys also claims a copyright in its overall collection of input

17   formats.  As for Synopsys' output formats, which *convey information*, ATopTech relies on the

18   inapposite "blank forms" doctrine, which concerns forms designed for *recording information*.

19        ATopTech's noninfringement argument fares no better.  ATopTech admits direct copying,

20   which ends the analysis.  Further, ATopTech wrongly argues for a more stringent standard for

21   evaluating similarity than is found in the law or supported by the facts in this case.  The creativity

22   of the material copied and the evidence of ATopTech's broad access to the copyrighted materials

23   supports a low standard of substantial similarity that Synopsys easily meets.  In fact, ATopTech's

24   slavish copying would satisfy even the most stringent standard.

25        Lastly, ATopTech cannot meet its burden on the contract claims.  Testimony contradicting

26   the unambiguous purpose of "no copying" terms in the contract does not change those terms or

27   excuse ATopTech's breach.  And there is ample evidence of harm to submit the claims to a jury.

28        The Court should deny ATopTech's motion in its entirety.

1

## II.    **BACKGROUND**

2      Since 1986, Synopsys has developed electronic design automation (EDA) software for the

3   design and test of integrated circuits.  In 1997, Synopsys released its industry-leading timing

4   analysis tool, PrimeTime, which built upon Synopsys' preexisting works, such as Design

5   Compiler.  Michael Decl. Ex. 1 (Bootehsaz Tr.) at 18:11-20:8.  Synopsys promotes authorized use

6   of its EDA software, while maintaining ownership and providing clear notice of its copyrights.

7   *See, e.g.*, Exs. 2-4 (PrimeTime Manual Copyright Notices).[1]

8      Synopsys' EDA tools include both graphical user interfaces and command line interfaces.

9   Storer Decl. Ex. 1 (Storer Report) at 7.  Synopsys chose the scripting language Tcl as the basis for

10  its command line interfaces and has spent decades creating a set of proprietary input formats

11  extending that language.  *Id.* at 7-8, 13-17; Michael Decl. Ex. 1 (Bootehsaz Tr.) at 106:18-24.

12  Each input format consists of a command name, followed by a series of arguments (the number,

13  format, and order of arguments to be provided depends on the syntax of the particular command).

14  Storer Report at 8; Michael Decl. Ex. 1 (Bootehsaz Tr.) at 56:5-19, 114:25-115:10.  Synopsys had

15  virtually unlimited options in choosing names, argument structure, and syntax for each of its

16  commands.  Storer Report at 16; Storer Decl. Ex. 4; Michael Decl. Ex. 1 (Bootehsaz Tr.) at

17  58:21-59:5.  And the process Synopsys employs when creating its input formats involves a

18  significant amount of creative effort, innovation, and business and technical judgment.  Storer

19  Report at 16; Michael Decl. Ex. 22 (Kucukcakar Tr.) at 92:17-22; Ex. 1 (Bootehsaz Tr.) at 62:7-

20  24, 98:19-99:15.  The same is true of Synopsys' output formats, which is the set of content and

21  formatting used to display information in response to the user's input, including the arrangement

22  of the output, formatting of results to the user, and identification of output.  Storer Report at 47.

23      In 2010, Synopsys registered the 2006 version of PrimeTime (PrimeTime 2006.12)—

24  including software and user documentation—as a derivative work.  Michael Decl. Ex. 5

25  ───────────
    [1] In a lengthy introduction otherwise devoid of citations, ATopTech cites an article and a
26  presentation purportedly authored by Synopsys employees.  Alexander Decl. Exs. 3 & 4.  But the
    article is unauthenticated and hearsay.  Fed. R. Evid. 801, 802, 901, 902.  And both are irrelevant
    because they do not establish an intent to relinquish copyright.  Fed. R. Evid. 401, 402.
27  Unfortunately, this pattern repeats throughout ATopTech's motion; many alleged facts lack
    supporting citation, ATopTech relies on inadmissible attorney argument lacking foundation, and
28  the motion often misrepresents the evidence cited.

1   (Registration Certificate).  It subsequently registered three later versions of PrimeTime and, after

2   acquiring ExtremeDA in 2011, a version of GoldTime.  *See* Am. Compl., ECF No. 43, Exs. 1-5.

3   ███████████████████████████████████████████████████████████████

4   ███████████████████████████████████████  *See* Alexander Decl. Ex. 26.  After ATopTech failed to

5   comply with the CPLA's audit provisions and Synopsys uncovered evidence of PrimeTime input

6   formats copied into ATopTech's Aprisa software, Synopsys filed this suit.  Compl., ECF No 1.

7        In discovery, Synopsys unearthed evidence of massive copying by ATopTech, facilitated

8   by over 220,000 pages of Synopsys documents and 3,600 PrimeTime timing reports ATopTech

9   had in its possession.  *See* Michael Decl. ¶ 26; Storer Report at 87.  Comparisons of Synopsys and

10   ATopTech manuals illustrate copying of both names and syntax of PrimeTime's input formats:

11   ███████████████████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████

18   *See* Michael Decl. Exs. 6-7 (ATopTech 1790688, 0021164).[2]  The same is true of output formats

19   and other aspects of the manuals.  *See* Storer Report at 48; Storer Decl. Ex. 5 at 22-24.

20        Although ATopTech baldly states it "wrote its own software code, independently" (Mot.

21   at 1:14-15), its assertion is belied by hundreds of thousands of pages of Synopsys documentation

22   ATopTech referenced while it was writing its code.  Michael Decl. ¶ 26; Storer Report at 73-89.

23   Moreover, ATopTech refused to allow inspection of its source code, which is the only way for

24   Synopsys (and the Court) to ascertain the depth of ATopTech's infringement.  Nonetheless,

25   _____

26   [2] ATopTech's contention that "Synopsys has not asserted that ATopTech copied a single line of code" (Mot. at 17) disregards that input formats must be copied into the source code in order for the software to run the method called by a user.  Indeed, ATopTech has admitted that

27   Synopsys' "commands, options, parameters, objects and attributes … are all present in the Aprisa/Apogee source code."  ECF No. 415-6.  Further, ATopTech refused to produce source

28   code.  It cannot now point to undisclosed source code to claim an absence of copying.

1  through a painstaking process of running commands in ATopTech's executables, Synopsys'

2  experts identified hundreds of PrimeTime input formats in Aprisa.  Storer Report at 73-74.  And

3  depositions yielded admissions that ATopTech copied input formats at the heart of PrimeTime:



7  Michael Decl. Ex. 16 (S. Deng Tr.) at 92:24-93:3; *accord* Ex. 8 (Y. Wang Tr.) at 134:5-12.

8  Despite this evidence, ATopTech moves for summary judgment on Synopsys' claims,

9  asserting that "Synopsys publicly presented many of these commands names and urged

10  interoperability, with no reference to supposed copyrights in the names."  Mot. at 4:6-8.  Even if

11  true, this would not permit ATopTech's copying without a license.  In fact, ATopTech knew of

12  Synopsys' rights in PrimeTime and could not have believed it had a license to copy Synopsys'

13  software.  Each PrimeTime manual in ATopTech's possession contains a conspicuous (large font,

14  bold, capital letters) notice, "Copyright Notice and Proprietary Information," and states:

15  ## Copyright Notice and Proprietary Information

16  Copyright © 2006 Synopsys, Inc. All rights reserved. This software and documentation contain confidential and proprietary information that is the property of Synopsys, Inc. The software and documentation are furnished under a license agreement and may be used or copied only in accordance with the terms of the license agreement. No part of the software and documentation may be reproduced, transmitted, or translated, in any form or by any means, electronic, mechanical, manual, optical, or otherwise, without prior written permission of Synopsys, Inc., or as expressly provided by the license agreement.

17  Michael Decl. Ex. 6 (ATopTech 1790125).  ATopTech's suggestion that Synopsys somehow

18  encouraged ATopTech's unauthorized copying is both irrelevant and false.

19

20  ### III.  LEGAL STANDARD

21  The party moving for summary judgment bears the burden of demonstrating the absence

22  of a genuine issue of fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A

23  genuine issue of material fact exists if there is evidence from which a jury could reasonably

24  render a verdict in favor of [Synopsys], the non-moving party."  *U.S. Auto Parts Network, Inc. v.

25  Parts Geek, LLC*, 692 F.3d 1009, 1014 (9th Cir. 2012).  All reasonable inferences must be drawn

26  in Synopsys' favor.  *Id.*

27  ### IV.  ATOPTECH IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE COPYRIGHT CLAIM.

28  To prevail on infringement, a copyright holder must show (1) it owns the copyright in the

1   asserted work and (2) the defendant "copied protected elements" of that work.  *Swirsky v. Carey*,

2   376 F.3d 841, 844 (9th Cir. 2004).  Copyright protects a computer program's literal elements—

3   source code and object code—and non-literal elements, such as "the program's sequence,

4   structure, and organization, as well as the program's user interface."  *Oracle Am., Inc. v. Google*

5   *Inc.*, 750 F.3d 1339, 1355-56 (Fed. Cir. 2014).  The declaring code for the input formats

6   Synopsys asserts in this action exist in PrimeTime's source code, and the input formats, along

7   with the output formats, also comprise non-literal elements of Synopsys' copyrighted software.

8        "When assessing whether the non-literal elements of a computer program constitute

9   protectable expression, the Ninth Circuit has endorsed an 'abstraction-filtration-comparison'

10   test."  *Id.* at 1357; *accord Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir.

11   1994) (referring to "the same analysis, although articulated differently," as "analytical

12   dissection").  That test "eschews bright line approaches and requires a more nuanced assessment

13   of the particular program at issue in order to determine what expression is protectable and

14   infringed."  *Oracle*, 750 F.3d at 1357.  In the abstraction step, the court breaks down the

15   copyrighted program into its constituent parts.  *Id.* at 1358.  In the filtration step, the court "sift[s]

16   out all non-protectable material," which requires "examining the structural components at each

17   level of abstraction" identified in the initial step.  *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d

18   693, 706-07 (2d Cir. 1992).  Finally, the court compares the protectable elements with the

19   accused program to evaluate infringement.  *Oracle*, 750 F.3d at 1358.

20        ATopTech's summary judgment motion is directed to the latter two steps.  It contends the

21   asserted input and output formats are not protectable, and any elements properly before the Court

22   are inadequate to prove infringement.  But ATopTech never applies the abstraction step.  Instead,

23   it erroneously asserts Synopsys is only seeking to protect certain "terms" that ATopTech

24   indisputably copied from PrimeTime.  ATopTech cannot prevail on summary judgment by

25   mischaracterizing the copyrighted elements Synopsys claims ATopTech infringed.

26   **A.      ATopTech's Mischaracterization of Synopsys' Claim Taints Its Entire**
         **Copyright Analysis and Dooms Its Motion.**

27

28        From the outset, Synopsys made clear its copyright claims relate to ATopTech's copying

of Synopsys' input and output formats.  Compl., ECF No. 1 ¶ 35; Am. Compl., ECF No. 43 ¶ 35.
Breaking down the PrimeTime interface (of which the input and output formats are a part) into its
constituent parts yields four levels of abstraction:  (1) main purpose of the program; (2) interface
mechanism; (3) input and output formats; and (4) naming *and syntax* of individual input format
elements, and the labeling, spacing, and layout of individual output formats.  Storer Report at 91.
Thus, Synopsys' input and output formats are distinct elements of PrimeTime's interface, which
itself is an "analytically distinct" part of the program.  *Engineering Dynamics, Inc. v. Structural
Software, Inc.*, 26 F.3d 1335, 1344 (5th Cir. 1994) *opinion supplemented on denial of reh'g*, 46
F.3d 408 (5th Cir. 1995).  Analyzing infringement requires consideration of each distinct element
of the copyrighted works.  *See Oracle*, 750 F.3d at 1359 (analyzing "declaring code"—"lines that
specify the names, parameters"—separately from names or parameters on their own).

Synopsys claims infringement of its collection of input and output formats, as well as
infringement of individual formats.  Synopsys' collection of input and output formats constitute a
protectable level of abstraction distinct from the individual formats in the collection.  Synopsys'
input formats are the set of commands, options, variables, objects and attributes, including both
the name and syntax[3] for each element, all of which govern what the user's input must look like.
Storer Report at 91.  Output formats comprise the set of content and formatting used to display
information in response to the user's input.  *Id.*

In its motion, however, ATopTech largely ignores Synopsys' output formats and only
addresses one aspect of the input formats—the "**names** of commands, options, variables, objects
and attributes," which ATopTech calls "terms."  Mot. at 5 n.4 (emphasis added).  The
copyrighted formats, however, are far more than individual names.  After the background section
of its brief, ATopTech never even mentions the **syntax** of Synopsys' input formats.  ATopTech
offers no legal authority to support limiting Synopsys' claims to names, relying instead on the
conclusory argument of its attorneys.  Nor does it offer any evidence, in the form of expert
opinion or otherwise, to support ignoring the input and output formats as discrete elements, and

---

[3] Input format syntax dictates "how to specify the command in the script or on the command line."  Michael Decl. Ex. 1 (Bootehsaz Tr.) at 56:6-7.  Among other things, syntax includes types and default values.  *See* Storer Report at 8-9.

1   focusing solely on the names.  And, because ATopTech never addresses a single input format, let

2   alone the collection of input formats Synopsys also asserts, it does not offer any evidence on the

3   elements of Synopsys' copyrighted works at issue in this litigation—the input formats,

4   individually and collectively—as opposed to the "terms" it extracted from those formats.  This

5   fundamental failure of proof compels the denial of ATopTech's motion as to the copyright

6   claims.  Further, as detailed below, it is fatal to every part of ATopTech's copyright analysis,

7   including its contention that Synopsys lacks "standing" to assert its copyrighted works.

8           **B.      ATopTech Cannot Prevail On Its So-Called "Standing" Argument.**

9           ATopTech acknowledges Synopsys registered PrimeTime and GoldTime, but argues 17

10  U.S.C. § 411(a) is a jurisdictional bar to Synopsys' claim for copyright infringement of any

11  "terms" in the 2006 registered version of PrimeTime that were incorporated from earlier versions

12  of PrimeTime.  Mot. at 11-14.  This argument misstates not only Synopsys' copyright claims, but

13  the nature of § 411(a), the copyright registration process, and the effective registration doctrine.

14          **1.      Registration Is Not Jurisdictional And ATopTech Waived Any Defense
                       Based on Section 411(a).**
15

16          Contrary to ATopTech's assertion that registration creates a "standing" requirement

17  necessary to establish "subject matter jurisdiction" (Mot. at 10:3, 11:15, 13:23-28), the Supreme

18  Court has explicitly held that copyright registration is *not* jurisdictional and "§ 411(a) does not

19  implicate the subject-matter jurisdiction of federal courts."  *Reed Elsevier*, 559 U.S. at 169.

20  ATopTech's failure to cite this controlling Supreme Court precedent exposes the fatal defect in its

21  motion.  ATopTech's motion based on jurisdiction and standing should be denied at the outset.

22          Moreover, as the Supreme Court made clear, § 411(a) is a nonjurisdictional "claim

23  processing" rule.  *Id.* at 161-162, 169.  Claim-processing rules are affirmative defenses, which

24  can be waived.  *See Kontrick v. Ryan*, 540 U.S. 443, 456-59 (2004) (upholding dismissal of

25  objection based on claim-processing rule not timely invoked).  Parties who fail to raise a § 411(a)

26  defense in a timely fashion waive the right to challenge registration.  *See, e.g.*, *Paycom Payroll,*

27  *LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014) (citing *Reed Elsevier*, 559 U.S. at 1203).

28          ATopTech never raised § 411(a) or a contention that Synopsys in any way failed to satisfy

1  the registration requirement under the Copyright Act in its answer, including the third amended

2  answer it filed just two months ago.  *See, e.g.*, Third Am. Answer, ECF No. 378, ¶¶ 48-59.

3  Instead, ATopTech made a strategic decision to sandbag and hold § 411(a) in reserve until raising

4  it on summary judgment as a purported jurisdictional bar to this action—contrary to Supreme

5  Court precedent.  ATopTech waived any defense based on Synopsys' copyright registrations.  *See*

6  *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 936 (N.D. Cal. 2009) (defendant waived 17

7  U.S.C. § 107 defense as a result of "its failure to assert the defense after a year of litigation").

8
   ## 2.  <u>Synopsys Is Entitled to Enforce Its Properly Registered Derivative Works, Including Preexisting Material It Authored.</u>
9

10  ATopTech's § 411(a) defense also fails on the merits.  Using the forms required by the

11  Copyright Office, Synopsys properly registered the 2006 version of PrimeTime (as well as

12  several later versions and a version of GoldTime) as a derivative work of earlier Synopsys works.

13  Under the long-established effective registration doctrine, Synopsys is entitled to enforce not only

14  the new and revised elements in the registered derivative works, but the preexisting material it

15  authored that is also contained in those registered works.  In arguing otherwise, ATopTech

16  misreads Copyright Office forms and cases applying the effective registration doctrine, and

17  advocates a position that would wipe out decades of established case law.  Moreover, as a

18  practical matter, adopting ATopTech's position would not preclude Synopsys' copyright claims;

19  it would merely delay them, reinforcing the absurdity of ATopTech's position.

20
   ### (a)  Synopsys' Registration of PrimeTime as a Derivative Work Does Not Affect the Scope or Enforceability of Its Copyright in Preexisting Material.
21

22  As an initial and fundamental matter of copyright law, a copyright is independent of its

23  registration.  From the moment of its creation, the law automatically protects "original works of

24  authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).  And under the

25  Copyright Act, registration is "not a condition of copyright protection."  17 U.S.C. § 408(a).

26  Thus, while Synopsys registered the 2006.12 version of PrimeTime, Synopsys has copyrights in

27  all of its works (including preexisting versions of PrimeTime going back to at least 1997) and is

28  absolutely entitled to protect its copyrights in those works.

Pl.'s Opposition to Defendant's Motion for Summary Judgment; Case No. 3:13-cv-02965-MMC (DMR)

For sure, the copyright in a "derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). That copyright, however, is "independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." *Id.* To effectuate this principle, the Register of Copyrights is charged with creating an application form for registering copyrights that includes, "in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. § 409(9). ATopTech fundamentally misunderstands the registration process.

The Register of Copyrights offers both paper and online application forms. Oman Decl. ¶ 15 & Exs. 4-5 (Application Forms). Each includes a section—entitled "Derivative Work or Compilation" in the former and "Limitation of Claim" in the latter—that is filled out only if registering a derivative work or compilation. Oman Decl. ¶¶ 16-20 & Exs. 4-5. Each section directs the applicant to identify "preexisting material" the work is "based on or incorporates" in one field—"Preexisting Material" in the paper application and "Material Excluded" in the online application—and additional material covered by the claim in another field —"Material Added to This Work" in the paper application and "New Material Included" in the online application. Oman Decl. ¶¶ 16-19 & Exs. 4-5. The applicant does not control—and may not alter—the form language. Oman Decl. ¶¶ 13, 15. And the forms' descriptions do not alter the legal effect of copyright protection or of a copyright registration. Oman Decl. ¶¶ 21-22. The Copyright Office does not create substantive copyright law; it only administers it. *See* 17 U.S.C. § 702.

Because Synopsys used the online application form, the registration certificates at issue here reflect the nomenclature from the online form. The "Limitation of copyright claim" section is filled out precisely because Synopsys identified its 2006.12 version of PrimeTime as a derivative work when completing the online form. Michael Decl. Ex. 5 (2006 Registration Certificate); Oman Decl. ¶ 11; *see also* Michael Decl. Ex. 10 (Deposit Cover Letter); Oman Decl. ¶ 24 & Exs. 13-14 (Excerpts from Deposit). Likewise, the "Material excluded" field states "Prior

works by claimant" precisely because PrimeTime 2006.12 is derivative of Synopsys' *own* preexisting works.  Michael Decl. Ex. 5 (2006 Registration Certificate).  So does the inclusion of a version number in the "Title of Work," the identification of "PrimeTime" generally as a "Previous or Alternative Title," and the identification of "***New and revised*** computer code and supporting documentations and manuals." *Id.* (emphasis added).  In short, the registration certificate expressly identifies PrimeTime 2006.12 as a derivative work that is based on and incorporates Synopsys' prior works, precisely as the Copyright Office requires.

> **(b)     Under the Effective Registration Doctrine, Synopsys Is Entitled to Enforce Its Copyright in Preexisting Material Contained in Later Versions of PrimeTime.**

With those principles in mind, the case law has consistently recognized the effective registration doctrine:  where the plaintiff "is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work … will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998); *see also Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 269 (5th Cir. 2014) (noting adoption by "at least five circuits" of the effective registration doctrine).  In registering the 2006.12 version of PrimeTime (and later versions) as derivative of its prior works, Synopsys effectively registered its copyright in the preexisting materials it included in the registered versions, and thus can enforce both the input and output formats added or revised in the expressly registered works, and the formats included in those works that were also in earlier underlying works Synopsys owns.

The rationale of the effective registration doctrine is simple: "'when the author of a derivative work also has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author.'" *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *4 (N.D. Cal. Jan. 10, 2013) (internal quotation omitted); *see also Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC WVG, 2012 WL 6553403, at *7 (S.D. Cal. Dec. 13, 2012) ("an exception to § 103(b) exists when the same designer owns both the preexisting and derivative works").  When there is common ownership of preexisting and derivative works, "[t]he

1    scope of registration need not precisely trace the scope of the copyright for the holder to sue."

2    *Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 539 (4th Cir. 2007).  Synopsys

3    indisputably owns all versions of PrimeTime (and GoldTime) and thus is deemed to have

4    effectively registered earlier versions of those programs and its other prior works, entitling it to

5    sue on the preexisting materials contained in the registered versions.

6          Despite this well-established law, ATopTech relies on *AFL Telecommunications LLC v.*

7    *SurplusEQ.com Inc.*, 946 F. Supp. 2d 928 (D. Ariz. 2013) to argue that because Synopsys

8    "disclaimed registration" of prior works, it is prevented from enforcing elements of its own

9    preexisting copyrighted work incorporated into PrimeTime 2006.12.  In *AFL*, however, the court

10   found the copyright holder was not entitled to summary judgment of infringement because its

11   moving papers failed to demonstrate that, in identifying a "[p]revious version" of its software in

12   the "materials excluded" field of the registration certificate, it did not "specifically disclaim[]

13   previous versions" of its work.  *Id.* at 941.  The court distinguished the case before it from

14   circumstances in which a registration certificate stated "that the work for which it sought

15   protection was derivative of previous versions of the [work]."  *Id.*  The court concluded that "*for*

16   *purposes of its summary judgment motion*, AFL has failed to satisfy the registration requirement

17   with regard to any previous version of the software."  *Id.* (emphasis added).

18         Synopsys, on the other hand, specifically registered PrimeTime 2006.12 as derivative of

19   its "Prior works," which necessarily includes previous versions of PrimeTime.  *See* Oman Decl. ¶

20   11.  Thus, *AFL* is both factually and procedurally distinguishable.  *See* 2-7 Nimmer on Copyright

21   § 7.16[B][5][c] n.343.4 ("[h]ad the claimant registered its work as derivative of previous versions,

22   then the [*AFL*] court indicated that it would have ruled to the contrary").  Moreover, ATopTech's

23   "disclaimer" argument would literally eviscerate the effective registration doctrine.  As explained

24   above, the "Materials Excluded" field in the online application is where a copyright holder

25   identifies "preexisting material" that the derivative work is based on or incorporates.  If that same

26   "preexisting material" cannot be enforced through a derivative work registration, the effective

27   registration doctrine would be dead.  Similarly, the statute cannot be read to preclude copyright

28   protection for preexisting material based solely on a Copyright Office registration application

Pl.'s Opposition to Defendant's Motion for Summary
                                                     Judgment; Case No. 3:13-cv-02965-MMC (DMR)

form that identifies preexisting material incorporated into a derivative work as "excluded."  *See* 17 U.S.C. § 103(b) (registering a derivative work "does not affect … any copyright protection in the preexisting material"); Oman Decl. ¶ 22.  *AFL* is neither applicable nor controlling here.[4]

ATopTech also argues the effective registration doctrine does not apply because Synopsys failed to "identify the original, underlying works" in its registrations.  Mot. at 12:22-23.  But, as shown above, Synopsys specifically identified "Prior works by claimant" in its registrations. *E.g.*, Michael Decl. Ex. 5 (PrimeTime 2006.12 Certificate of Registration).  Moreover, the Ninth Circuit does not require the registration for a derivative or collective work to identify the titles of each preexisting work incorporated.  *See Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 680 (9th Cir. 2014) ("The statute expressly requires only 'identification,' in the singular, not titles of preexisting works incorporated."); *see also Brocade*, 2013 WL 831528, at *3-4 (finding registrations excluding "previously created computer code" incorporated that code "by virtue of the [later] codes' status as derivative works").  Indeed, Synopsys' registrations are consistent with Copyright Office guidance and industry practice.  *See* Oman Decl. ¶ 23; *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 68707, at *5-6 (N.D. Cal. May 16, 2012) (overruling challenges to registration of Java versions "registered as derivative works (or compilations) of 'Prior works by claimant and licensed-in components' with the addition of 'New and revised computer code and accompanying documentation'").

ATopTech's authorities are inapposite.  In *Oskar Systems, LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1161 (C.D. Cal. 2010), the plaintiff did not register its work as a derivative work; rather, it later attempted to "identify the registered work as a derivative work" only after the defendants moved for summary judgment.  In *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1231 (11th Cir. 2008), the plaintiff was attempting to rely on the registration of a derivative work that did not include the material in the earlier, underlying work plaintiff wanted to enforce.  And *Synygy, Inc. v. ZS Associates, Inc.*, No. CIV.A. 07-3536, 2015 WL 899408, at *24 (E.D. Pa. Mar. 3, 2015), does not address effective registration at all; instead, the court declined to apply a presumption of validity due to ambiguity in the registration certificate.

---

[4] If *AFL* is read more broadly, as ATopTech proposes, then it would be wrongly decided.

1  ATopTech's description of Synopsys' registrations as "belated" and "tactical" confuses

2  copyright and registration.  Mot. at 13:5-6.  Synopsys continually notified the world of its

3  copyright in PrimeTime.  *See, e.g.,* Michael Decl. Ex. 2-4 (Various PrimeTime Manuals).  And

4  ATopTech's suggestion that it was lulled into copying is belied by the many Synopsys documents

5  ATopTech possessed, all which contain a conspicuous Copyright Notice.  Synopsys also had no

6  obligation to register the copyright in its original work to ensure its enforceability at a later date.[5]

7  *See* 17 U.S.C. § 408(a) ("**Registration Permissive**"); 2-7 Nimmer on Copyright § 7.16[B][5][a]

8  ("registration can be effectuated at any time—even after infringement has occurred").

9  Unlike in *Oskar*, Synopsys did not sue on a later, registered version of the software and

10  belatedly characterize it as derivative only after litigation was underway; Synopsys claimed

11  PrimeTime as a derivative work from the outset, and has only sought to enforce the registered

12  work and its own copyrighted pre-existing work that is part of that derivative work.  And,

13  contrary to *Fidelity Information Services, Inc. v. Debtdomain GLMS Pte Ltd.*, No. 09 CIV. 7589

14  LAK KNF, 2012 WL 1681792, at *3 n.2 (S.D.N.Y. May 15, 2012), Synopsys is not suing for

15  infringement commencing before it had a valid copyright; it had a copyright in PrimeTime long

16  before the first version of Aprisa accused in this litigation was released in 2007.[6]  Michael Decl.

17  Ex. 1 (Bootehsaz Tr.) at 19:16-20:5 (PrimeTime first developed between 1994 and 1997); *S.O.S.,*

18  *Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989) ("Copyright protection subsists from the

19  moment the work is 'fixed in any tangible medium of expression'") (quoting 17 U.S.C. § 102(a)).

20  Synopsys' actions are authorized by and consistent with the copyright laws.

21  In short, Synopsys is the owner of the registered versions of PrimeTime and its earlier

22  works incorporated therein.  It is entitled to enforce all of the formats in its registered works.

23

24  [5] Synopsys' promotion of PrimeTime for authorized purposes also is entirely consistent with its rights as the copyright holder.  Michael Decl. Exs. 2-4, 23 (Copyright Notices & License).

25  [6] ATopTech seeks to backdate its copying to 2004 so it can argue that it infringed pre-

26  2006 versions of PrimeTime.  ATopTech cannot make this argument, however, because the earliest version of Aprisa it produced is an executable dated November 2007 and ATopTech has vigorously resisted production of its source code—the evidence that might establish earlier

27  infringement by an ATopTech product.  Thus, like *Streetwise* and unlike *Oskar* and *Fidelity*, the infringing product in this case was released in 2007, after the creation of the registered

28  PrimeTime 2006.12 and prior works.

1

(c)      ATopTech's Contrary Interpretation Is Impractical.

2          At base, ATopTech contends that Synopsys was required to register each version of

3   PrimeTime independently.  The statutes and the Copyright Office do not require such action,

4   however.  The Copyright Office permits a general identification of an author's preexisting

5   material incorporated into a derivative work.  *See* Oman Decl. ¶ 25.  To require otherwise would

6   frustrate the registration of works developed over time and increase the Copyright Office's

7   administrative burden.  *Id.*  The practical effect of ATopTech's argument would be procedural,

8   not a substantive loss of rights.  ATopTech acknowledges it challenges the registration of "terms"

9   from Synopsys' earlier works, distinct from their copyrightability.  *See* Mot. at 11:12-13.  Thus,

10  Synopsys could apply for registration of its earlier versions of PrimeTime, giving it the immediate

11  right to seek amendment of its complaint or file a new action based on the earlier versions.[7]  *See*

12  *Cosmetic Ideas Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 621 (9th Cir. 2010) ("receipt by the

13  Copyright Office of a complete application satisfies the registration requirement of § 411(a)").

14  The impracticality of ATopTech's interpretation of the statutes and the Copyright Office

15  guidance reinforces that Synopsys' registration was proper.

16         **3.      Even Under ATopTech's Erroneous Interpretation of Section 411(a),
               It Has Not Met Its Burden on Summary Judgment.**

17

18         Of course,  Synopsys claims a collection of input *formats*, not simply the "names" or

19  "terms" of various input format elements as ATopTech argues.  *See supra* Part IV.A.1.

20  ATopTech makes no attempt to identify the specific input formats—including both name and

21  syntax—that were first included in PrimeTime 2006.12, let alone address the entire set of input

22  formats in that release.  Its § 411(a) argument fails on that basis alone.

23         In fact, there are many examples of input formats included for the first time in the 2006

24  version of PrimeTime that ATopTech copied, but which ATopTech would exclude on the faulty

25  reasoning that individual "terms" in those formats were first included in an earlier version of

26  ───────────────

       [7] Because § 411(a) does not create a jurisdictional bar, ATopTech's reliance on
27  *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1171 (9th Cir 2013), is misplaced.  *See* Mot. at 13 n.11.
    Thus, if the Court adopts ATopTech's argument, Synopsys respectfully requests leave to amend
28  upon applying for registration of its earlier versions of PrimeTime.  Requiring Synopsys to file a
    new action for any portion of its infringement claims based on formats first included in prior
    works it indisputably owns would be a tremendous waste of party and judicial resources.

PrimeTime.  For example, the ▆▆▆▆▆▆▆▆▆ command, added to PrimeTime in August 1997, was revised in the registered December 2006 version of PrimeTime to include the ▆▆▆▆▆▆▆▆ option, which is to be immediately followed by an argument (i.e., additional information) that must be in the form of either ▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ is the default.  Michael Decl. Ex. 6 (ATopTech 1790732).  ATopTech copied that revised syntax, including default values, exactly.[8]  Walker Decl. Ex. 2 (Aprisa Log File).  And it is the combination of the "names" of each of the input format elements together with the syntax that governs those elements and how they may be combined, that constitute the input formats at issue.  Michael Decl. Exs. 11-12 at 4 (Synopsys Answers to Interrogatory Nos. 1-2).  Regardless of the applicability of § 411(a), ATopTech cannot prevail on summary judgment by misstating the nature of Synopsys' claims.

Finally, the "evidence" ATopTech submits to contend that individual "terms" existed before they were included in PrimeTime 2006.12 is inadmissible.  Exhibits 1 and 2 to the Alexander Declaration are attorney generated and the accompanying paragraphs 1 and 2 are attorney argument about which elements of Synopsys' works may be included in an infringement analysis, in violation of Local Rule 7-5.  N.D. Cal. Civil L.R. 7-5(b).  Mr. Alexander is not qualified and has no basis to opine on copyrightability or substantial similarity; nor is he qualified to determine whether elements of a copyrighted work are properly considered in an infringement analysis.  Fed. R. Evid. 702.  Further, any such attorney argument or "evidence" is irrelevant. Fed. R. Evid. 401, 402.  ATopTech cannot rely on attorney argument in the guise of evidence.

**C.      ATopTech's Evidence Does Not Rebut the Presumption of Originality.**

"To qualify for copyright protection, a work must be original to the author."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citing *Harper & Row, Publishers Inc. v. Nation Enters.*, 471 U.S. 539, 547-49 (1985)).  And to be original, a work only needs to

---

[8] ATopTech's motion misrepresents Synopsys' copying allegations, and states Synopsys alleges that only "in a few cases" did ATopTech copy default values from PrimeTime.  Mot. at 6-7.  Not so.  In fact, the citations ATopTech relies upon for that proposition confirm ATopTech's misrepresentation.  For example, Dr. Storer expressly states in the "Direct Evidence of Copying" section of his report that "ATopTech copied over 118 PrimeTime commands, 408 options, 57 variables/parameters, 99 attributes, *as well as governing syntax (including default values)* to make Aprisa/Apogee."  ECF No. 405-3, Ex. 23 at 73 (emphasis added).

1   have been "independently created by the author" (as opposed to copied from other authors) and

2   possess "at least some minimal degree of creativity."  *Id.* at 345-46 (citing *Harper & Row,*

3   *Publishers Inc. v. Nation Enters.*, 471 U.S. 539 at 547-49).  The "requisite level of creativity is

4   extremely low; even a slight amount will suffice."  *Id.* at 345.  Registered copyrights are entitled

5   to a presumption of originality.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1474

6   (9th Cir. 1992) (citations omitted); *see also Modern Pub., a Div. of Unisystems, Inc. v. Landoll,*

7   *Inc.*, 841 F. Supp. 129, 132 (S.D.N.Y 1994) (registration certificates "constitute prima facie (and

8   unrebutted) evidence that [derivative works are] original and hence protectable").[9]  Evidence that

9   other companies' computer programs include similar elements to those of a registered computer

10   program "is insufficient to rebut the presumption of originality in the absence of any evidence

11   that the plaintiff copied from these other programs."  *Brown Bag*, 960 F.2d at 1474-75 (quoting

12   *Johnson Controls, Inc. v. Phoenix Control Sys.*, 886 F.2d 1173, 1175 (9th Cir. 1989)).

13        Here, ATopTech has not put forward any evidence that Synopsys copied its input and

14   output formats from others.[10]  Instead, ATopTech challenges the originality and creativity of the

15   copyrighted works under a series of inapplicable copyrightability doctrines.  *See Oracle*, 705 F.3d

16   at 1358 ("questions regarding originality are considered questions of copyrightability").

17   ATopTech cannot rebut the presumption of originality.

### 1.   Synopsys' Input Formats Are Copyrightable.

19        ATopTech's copyrightability arguments rely on its mischaracterization of the copyrighted

20   works and elements asserted.  Synopsys' input formats comprise the set of commands, options,

21   variables, objects and attributes, including the name and syntax of those elements.  Storer Report

22   at 91.  Because Synopsys' input formats consist of more than just "terms" and Synopsys

23   identified the compilation of input formats it seeks to protect, ATopTech's challenges fail.

24        ATopTech improperly dissects Synopsys' copyrighted works into fragmented and isolated

25   _____

   [9] A certificate of copyright registration obtained within five years of the date of first
26   publication is *prima facie* evidence of ownership and validity. 17 U.S.C. § 410(c).  And, in the
   context of derivative works, even later registrations can create presumption of validity, as
27   discussed above.  Synopsys is entitled to that presumption given its registration of PrimeTime
   2006.12 in 2010 is inside the 5 year window.  ATopTech does not address that presumption at all.

28        [10] In fact, Synopsys presented evidence that the input format elements at issue in this
   litigation are original to it.  *See* Michael Decl. Exs. 13-15 (Bootehsaz Charts).

Pl.'s Opposition to Defendant's Motion for Summary
                Judgment; Case No. 3:13-cv-02965-MMC (DMR)

"words and short phrases," that it alternately refers to as "names" or "terms," and fails to analyze those elements in the context of the larger input formats of which they are a part. Mot. at 14-18. "[T]he relevant question for copyrightability purposes is not whether the work at issue contains short phrases … but, rather, whether those phrases are creative." *Oracle*, 750 F.3d at 1362. "[B]y dissecting the individual [input formats] at issue into short phrases, [ATopTech] fail[s] to recognize that an original combination of elements can be copyrightable." *Id.*

As in *Oracle*, Synopsys exercised creativity in the selection and arrangement of its input formats, both in the broader collection of formats and in the names and syntax of individual input formats. Storer Report at 40-47. To begin with, Synopsys could have chosen an entirely different naming scheme for its input format elements, such as using a mix of lower and upper case letters to separate parts of the name, or using only short names of 10 characters or less, rather than selecting a descriptive naming scheme where words are separated by underscores and follow an action-verb_noun naming rule. *Id.* at 41. In terms of syntax, for example, Synopsys could have used only variables to indicate additional command behaviors, rather than using options. *Id.* at 41-42. And even after electing to use options, Synopsys could have chosen a different syntax for indicating options (other than preceding options with '-' ). *Id.* at 42. There is nothing preordained about the input formats—including the name and syntax of the formats—Synopsys created. Rather, there were many alternative names and syntaxes available for each individual input format element and, as a consequence, many possible alternative collections of input formats. *Id.* at 42-43; Storer Decl. Ex. 4. Choosing an expression for any given input format is bounded only by the creativity of the people developing those formats. Storer Report at 43.[11]

Moreover, each input format consists of more than just a word or short phrase.[12] Synopsys' syntax—including the order of arguments following a command, how many arguments

---

[11] ATopTech's contention that, notwithstanding Synopsys' expert testimony, the Court should displace the jury because "originality is a question of law" (Mot. at 17 n.16) is not the law in the Ninth Circuit. *See, e.g.*, *Dezendorf v. Twentieth Century-Fox Film Corp.*, 99 F.2d 850, 851 (9th Cir. 1938) (question of originality "is one of fact, not of law").

[12] The Copyright Act specifically confers copyright protection on "computer program[s]," defined as "a set of statements or instructions." 17 U.S.C. § 101; *see also Oracle*, 750 F.3d at 1367 ("a set of commands … may contain expression that is eligible for copyright protection"). Reducing PrimeTime's input formats to isolated words—rather than analyzing the PrimeTime command set—would render copyright protection for computer programs a dead letter.

1    are required, whether arguments are required or optional, whether there are default values and

2    what those defaults are, what the expected data type is for each variable, and whether specific

3    characters are needed in connection with an element—are a protectable part of its application

4    programming interface ("API"), which consists of the entire command set.  *See* Storer Report at

5    8-9, 28.  These, too, are protectable elements of PrimeTime.  *See Oracle*, 750 F.3d at 1355.

6        ATopTech's attempt to distinguish *Oracle* by noting the defendant in that case copied

7    7,000 lines of source code confuses the analysis of copyrightability and infringement.[13]  *See*

8    *Oracle*, 750 F.3d at 1353 (noting district court's "fail[ure] to distinguish between the threshold

9    question of what is copyrightable—which presents a low bar—and the scope of conduct that

10   constitutes infringing activity").  The number of lines of API declaring code that were copied may

11   bear on infringement, but it is irrelevant to whether the manner in which the input format

12   elements "are used or strung together exhibits creativity."  *Oracle*, 750 F.3d at 1363; *see also*

13   *Express, LLC v. Fetish Group, Inc.*, 424 F.Supp.2d 1211, 1225 (C.D. Cal. 2006) ("requisite

14   originality for copyright protection can also be found in the combination of unoriginal (and

15   therefore uncopyrightable) elements").  As PrimeTime's architect noted in addressing the

16   creativity in PrimeTime, that "every word in the English language" is constructed using the

17   alphabet does not strip the unique combinations Synopsys created of copyright protection.

18   Michael Decl. Ex. 1 (Bootehsaz Tr.) at 98:19-99:15.  That proposition is fundamental to

19   copyright law.  *See Emerson v. Davies*, 8 F. Ca. 615, 619 (C.C.D. Mass. 1845) (Story, J.) ("If no

20   book could be the subject of copy-right which was not new and original in the elements of which

21   it is composed, there could be no ground for any copyright in modern times….").

22       Notably, with one exception, ATopTech's cited cases do not involve computer programs;

23   rather, they concern the copying of a handful of words in other types of works.  *See Narell v.*

24   *Freeman*, 872 F.2d 907, 912 (9th Cir. 1989) (defendant novelist had "not copied the equivalent of

25   a unique line or stanza, but has duplicated a few ordinary phrases and paraphrased largely factual

26   statements"); *Murray Hill Publications, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 633 (6th Cir.

27

28       [13] Nor should ATopTech be able to distinguish *Oracle* based on the number of lines of
     code copied when it refused to produce source code.

2001) (single line was "an insignificant part of" a movie); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1521 (1st Cir. 1996) (individual phrases like "payday," "punch in," and "go on the clock" used in radio promotion); *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (phrase "most personal sort of deodorant" on packaging); *Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 25-30 (D.D.C. 2010) (short phrases in rap lyrics). And *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1384-85 (Fed. Cir. 2007), addressed a plaintiff's attempt to copyright 27 unoriginal phrases like "call for help" and "check breathing," in a CPR-guidance system solely because he was the first to use the phrases in a digitized form.

Finally, Synopsys' input formats are, in fact, selected, coordinated, and arranged, from the individual input formats to the entire PrimeTime command set, as a whole.  Storer Report at 15 (Synopsys "review meetings involve discussions and debates about changes (whether modifications or additions) to **the set** of PrimeTime commands, options, variables/parameters, objects/classes and attributes"), and at 38 ("Synopsys puts significant creative effort into designing, selecting and reviewing **names and syntax** of PrimeTime and … user interface elements") (emphasis added).  Contrary to ATopTech's argument, Synopsys is not relying on its experts' lists of terms.  The exhibits to Dr. Storer's report do not address only individual names of commands, options, and variables, but identify how those elements interrelate, and the numerous options available to Synopsys when it created the names and the syntax governing those elements. *See* Storer Decl. Exs. 3, 4. [14]  *Sem-Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 855 (6th Cir. 1991), in which the plaintiff claimed a set of five individual unprotected lawn signs, is wildly inapposite. Further, ATopTech again tries to leverage its refusal to produce source code to gain a tactical advantage; that Synopsys' experts had to run commands through ATopTech's executables to discern the names and syntax of the various elements was necessitated by their inability to view the source code.  That does not mean, however, that the resulting lists of elements are not an accurate summary of the expert's analysis and what elements they found in the executables.

---

[14] ATopTech also minimizes the quantity of copying Dr. Storer discovered.  After accounting for licensed SDC input formats in Aprisa, Dr. Storer's analysis revealed copying of over 118 unique PrimeTime commands, 408 unique options, 57 unique variables/parameters, 99 unique attributes, *as well as governing syntax* (including default values).  Storer Report at 73-74.

1

### 2.      Synopsys' Output Formats Are Copyrightable.

2       That output formats are copyrightable is also well established.  More than twenty years

3   ago, the Fifth Circuit relied on a decision of this District to find that "some output formats will

4   contain sufficient original expression to merit protection."  *Engineering Dynamics*, 26 F.3d at

5   1342 (citing *Broderbund Software, Inc. v. Unison World, Inc.*, 648 F. Supp. 1127 (N.D. Cal.

6   1986)).  A key consideration is whether "there are numerous ways in which … output formats

7   could have been structured in order to achieve the program's purpose."  *Id.* at 1344.  ATopTech

8   cannot meet its burden to rebut the presumption that Synopsys' output formats are original,

9   creative, and copyrightable.

10      The collection of PrimeTime output formats is the collection of content and formatting

11  used to display information in response to the user's input, including the arrangement of the

12  output, formatting of results to the user, and identification of output.  Storer Report at 47.  In

13  creating its output formats, Synopsys made many design choices, such as including a line of

14  asterisks to demarcate the initial, overview information for the report (the name and options for

15  the report, as well as the design the report pertains to), using a string of dashes to provide visual

16  separation before output data, and including flag and reason columns to label the output.  Storer

17  Report at 49.  For every element in PrimeTime's reports, alternative formats existed and could

18  have been chosen by Synopsys, including the order in which data is listed.  *Id.*  The wide range of

19  alternatives available to Synopsys at the time of creation establishes that its selections were

20  original and creative.  *See Engineering Dynamics*, 26 F.3d at 1345 (rejecting output format

21  copyrightability challenge where defendant did "not assert that there is only one way or a limited

22  number of ways in which such tables may be or are usually set forth").

23      ATopTech challenges copyrightability of the output formats on two grounds.  First, it

24  repeats the § 411(a) argument, which fails for the reasons discussed above—even if ATopTech

25  did not waive its § 411(a) defense, Synopsys' registration of PrimeTime 2006.12 as a derivative

26  work effectively registered the prior Synopsys works on which it was based—and for the

27  additional reason that the PrimeTime output formats at issue are different from earlier output

28  formats on which ATopTech relies.  *Compare* Storer Report at 48, *with* Alexander Decl. Ex. 15.

Second, ATopTech argues that Synopsys is seeking to copyright the "*idea*" of depicting information in a certain format.  Mot. at 20.  Not so.  As the Fifth Circuit explained, "output formats structure the results of calculations performed by the program informatively for the user.  These formats do not self-evidently convey only an 'idea.'"  *Engineering Dynamics*, 26 F.3d at 1345.  ATopTech's reliance on the "blank forms rule" is equally misplaced.  That doctrine concerns blank forms designed "for the *recording of information*," not conveying information, as Synopsys' output formats do.  *Advanz Behavorial Mgmt. Res., Inc. v. Miraflor*, 21 F. Supp. 2d 1179, 1189 (C.D. Cal. 1998); *accord* 37 C.F.R. § 202.1(c) (distinguishing "[b]lank forms … which are designed for recording information" from forms that "convey information"); *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1107 (9th Cir. 1990) (until a blank form is "filled out, it conveys no information").  Finally, even if presenting information using columns is a common way to display information, that does not establish that the particular columns in the specific order Synopsys selected, let alone the overarching compilation of elements Synopsys selected to display its output, is noncreative.  *See Engineering Dynamics*, 26 F.3d at 1345 (rejecting argument that "column-by-column formats" were insufficiently original for copyright protection).  Synopsys has presented ample evidence to the contrary.  *See* Storer Report at 47-50.

**D.     ATopTech Has Not Established Noninfringement as a Matter of Law.**

ATopTech's noninfringement argument fails because there is direct evidence of actual copying, and thus no requirement to compare the similarity of the infringing and copied works.  "'Substantial similarity' is not an element of a claim of copyright infringement."  *Range Road Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012).  "Because, in most cases, direct evidence of copying is not available, a plaintiff may establish copying by showing that the infringer had access to the work and that the two works are substantially similar."  *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990).  Where there is direct evidence of copying, however, substantial similarity is irrelevant.  *See Range Road*, 668 F.3d at 1154 (showing of similarity "is irrelevant in a case like this one, in which [plaintiffs] produced evidence that the public performances entailed direct copying of copyrighted works"); *see also Computer Assoc.*, 982 F.2d at 701.  Here, depositions of ATopTech employees provide direct evidence of

1  copying—direct evidence that ATopTech does not dispute or address in its motion.  As noted

2  above, ATopTech copied hundreds of input formats.

3

4

5  Ex. 8 (Y. Wang Tr.) at 134:5-12.The

6  undisputed direct evidence of ATopTech's copying alone compels denial of ATopTech's motion

7  on noninfringement grounds.

8      ATopTech's suggestion that "the Court should hold that only verbatim copying of the

9  entire PrimeTime command line interface can amount to copyright infringement" has no support

10  in the law.  Mot. at 22:8-9.  ATopTech's "verbatim copying" standard is not found in the *Apple*

11  case on which it relies, and is even more stringent than the "virtually identical copying" standard

12  discussed in that case.  While "verbatim copying" can demonstrate "substantial similarity" (or

13  even "virtually identical copying"), there is no "verbatim copying" standard in copyright law and

14  ATopTech's suggestion that this court should hold otherwise is improper.

15      Nor should Synopsys be required to show "virtual identity" simply because ATopTech

16  argues the protectable expression is "thin."  Mot. at 21:23-22:4.  This case bears no resemblance

17  to *Apple*, where "90% of the allegedly infringing features" were authorized by license and there

18  were only a "limited number of ways" to express the interface.  35 F.3d at 1442.  Here, the

19  disputed input and output formats are not authorized by license.  And, as explained by Dr. Storer,

20  the range of creative expression reflected in the input/output formats is massively complex, with

21  many different possible structures and design choices extending across hundreds (if not

22  thousands) of elements.  *See* Storer Report at 16, 42-50; Storer Decl. Ex. 4.  Even ATopTech's

23  own expert admits to the limitless possibilities for expressing input and output formats.  Michael

24  Decl. Ex. 17 (Kahng Tr.) at 196:25-197:1

25  The proper standard is "substantial similarity."[15]

26  [15] "Where a high degree of access is shown, [the Ninth Circuit] requires a lower standard
of proof of substantial similarity."  *Swirsky*, 376 F.3d at 844.  The sheer volume of copyrighted

27  Synopsys material in ATopTech's possession, coupled with the evidence of qualitative and
quantitative similarity, prevents a finding of noninfringement as a matter of law.  ATopTech does

28  not dispute it had a high degree of access, nor could it, having produced over 220,000 pages of
Synopsys manuals and user guides and 3,600 PrimeTime timing reports.  *See* Michael Decl. ¶ 26.

1    In any event, Synopsys prevails under either standard.  In addition to the direct evidence

2    of ATopTech's copying, there can also be no dispute that ATopTech copied verbatim or nearly

3    verbatim hundreds of input formats, including their names and governing syntax, and output

4    formats from PrimeTime.  *See* Storer Report at 73-81; Storer Decl. Ex. 3; Ex. 5 at 22-24.

5    Moreover.

6    ████████████████    Michael Decl. Ex. 18 (Thune Tr.) at 155:25-156:1 ████████████

7    ████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████

10   ████.  Michael Decl. Ex. 8 (Y. Wang Tr.) at 134:5-12, 193:3-9. ████████████████

11   ████████████████████████████ (Michael Decl. Ex. 16 (Deng Tr.) at 143:4-24)█

12   ████████████████████    Michael Decl. Ex. 19 (Bai Tr.) at 129:18-130:7.

13   While ATopTech disputes substantial similarity, if Synopsys presents even an "'indicia of

14   a sufficient disagreement concerning the substantial similarity of [the] two works,' then the case

15   must be submitted to a trier of fact."  *Swirsky*, 376 F.3d at 844 (quoting *Brown Bag*, 960 F.2d at

16   1472).  The expert evidence and documentation submitted by Synopsys in support of this

17   opposition more than satisfy that standard.

18   **V.     THERE IS A TRIABLE ISSUE OF FACT ON THE CONTRACT CLAIMS.**

19   ATopTech argues Synopsys cannot prove breach or injury.  It is wrong on both counts.[16]

20   **A.     Synopsys Has Raised Triable Issues of Fact Regarding Breach.**

21   Synopsys alleges numerous breaches of the CPLA, yet ATopTech addresses only a few

22   with limited detail.  Synopsys need only demonstrate a triable issue of fact on a single breach

23   theory to compel denial of ATopTech's motion, but there are triable issues as to each such theory.

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

26   ████████████████████████████████    *See* Alexander Decl. Ex. 26.

27   [16] Because ATopTech only moves on the injury element of the implied covenant claim

28   (*see* Mot. at 22:28-23:2), its motion as to that claim must be denied if there is a triable issue on
     injury, regardless of the Court's decision on the breach element of the express contract claim.

1    ATopTech argues it did not breach these restrictions or, in the alternative, the restrictions do not

2    apply.  Neither argument is supported by ATopTech's evidence or the law.  Although ATopTech

3    falsely contends that "virtually all" GoldTime commands were already in Aprisa before the

4    parties entered into the CPLA,[17] adding even a single GoldTime command to Aprisa after the

5    CPLA is a breach of §§ 3.2(v) and (viii).  And, far more than a single GoldTime command was

6    added after ATopTech entered into the CPLA.  In fact, 41 GoldTime commands and 101

7    GoldTime options were added *after* May 2010.  *See* Storer Decl. Ex. 3.  While ATopTech argues

8    the CPLA's "purpose" of promoting interoperability trumps its express provisions setting forth

9    impermissible uses of GoldTime (Mot. at 23), that interpretation would render the entirety of

10    Section 3.2 of the CPLA—the "Restrictions" section—superfluous, contrary to established

11    principles of contract interpretation.  *See City of Atascadero v. Merrill Lynch, Pierce, Fenner &*

12    *Smith, Inc.*, 68 Cal. App. 4th 445, 473 (Cal. Ct. App. 1998).  And extrinsic evidence of alleged

13    intent contradicting an agreement's plain language is irrelevant in any event.  *Powerine Oil Co.,*

14    *Inc. v. Superior Court*, 37 Cal. 4th 377, 396 (Cal. 2005).[18]

15    ████████████████████████████████████████████████████████████

16    ████████████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████████████

20    ████████████████████████████████████████████████████████████

21    ████████████████████████████████████████████████████████████

22

_____

[17]  *Compare* Mot. at 23 ("virtually all"), *with* Alexander Decl. Ex. 31 at 208:13-17 ("a lot").

[18] ATopTech also mischaracterizes this testimony, as its ████████████████████ Alexander Decl. Ex. 31 at 208:18-25. ████████████████████████████████████████████████ Alexander Decl. Ex. 32 at 137:12-13.

[19] And, even in addressing source code, ████████████████████████████████████████████ ATopTech Ex. 33 at 214:15-215:7.  That testimony falls far short of establishing that ATopTech did not breach the CPLA.

1

2

3

4

5

6

7

8

9      **B.      Synopsys Has Raised Triable Issues of Fact Regarding Injury.**

10         ATopTech also contends that Synopsys cannot demonstrate any harm it suffered as a

11     result of ATopTech's breach of the CPLA and the covenant of good faith and fair dealing.  As

12     support, ATopTech cites to deposition testimony of Synopsys witnesses, including Mr. Joseph

13     Logan.  However, Mr. Logan's testimony, as well as the report of Synopsys' damages expert,

14     provides evidence of Synopsys' harm stemming from both breaches.

15         Synopsys' 30(b)(6) witness, Mr. Logan,

16                                                          Michael Decl. Ex. 21 (Logan Tr.) at

17     39:24-40:10

18

19                                    ATopTech challenges Mr. Logan's credibility (Mot. at

20     25:18), but credibility is not an issue for summary judgment.  *See Bay Area Roofers Health v. Sun*

21     *Life Assur. Co.*, 73 F. Supp. 3d 1154, 1160 (N.D. Cal. 2014) (court "does not make credibility

22     determinations" on summary judgment).  Further, Synopsys' damages expert submitted a report

23     detailing the economic harm caused by ATopTech's breaches.  Napper Decl. Ex. A (Napper Rpt)

24     at 49-50.  Thus, ATopTech cannot show the absence of triable issue as to damages.

25     **VI.    CONCLUSION**

26         For these reasons, the Court should deny ATopTech's motion in its entirety.

27         [20] Finally, in a footnote, ATopTech argues that it did not breach the

28     , but the undisputed evidence shows that ATopTech included GoldTime
       formats in its manuals, which it presented to customers.  *See* Storer Report at 110-11 & n.289.



1

2     Dated: November 13, 2015                    Respectfully submitted,

3                                                 Jones Day

4

5                                                 By: /s/ Patrick T. Michael _____
                                                      Patrick T. Michael

6                                                 Counsel for Plaintiff
                                                  SYNOPSYS, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pl.'s Opposition to Defendant's Motion for Summary
                                                  Judgment; Case No. 3:13-cv-02965-MMC (DMR)