IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., | No. C-13-2965 MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ATOPTECH, INC., | |
| Defendant. | |

Before the Court are defendant ATopTech, Inc.'s ("ATopTech") "Motion for Summary Judgment," filed October 31, 2015, and plaintiff Synopsys, Inc.'s ("Synopsys") "Motion for Summary Judgment on Defendant ATopTech's Affirmative Defenses," filed October 30, 2015. Both matters came on regularly for hearing on December 18, 2015. Paul Alexander and Martin R. Glick of Arnold & Porter LLP appeared on behalf of ATopTech. Patrick T. Michael and Krista S. Schwartz of Jones Day appeared on behalf of Synopsys. Having considered the parties' respective written submissions and the arguments of counsel at the hearing, the Court hereby rules as follows.

//
//
//

**I. ATopTech's Motion for Summary Judgment**

    **A. Count I: Copyright Infringement**

    1. To the extent Synopsys bases its copyright claims on asserted infringement of input and output formats used in unregistered versions of its static timing analysis software, PrimeTime and GoldTime, that pre-date the registered, derivative versions of those software programs, the Court, for the reasons stated by Synopsys in its opposition and by the Court on the record at the hearing, finds a triable issue exists as to whether Synopsys disclaimed its right to sue to enforce its copyrights therein. (See, e.g., Amended Compl. Ex. 1 (Certificate of Registration) (stating, in "Material excluded" section, "[p]rior works by claimant"); Oman Decl. Ex. 1 (Copyright Office Circular 14), at 3 (directing copyright applicants to identify all preexisting works on which derivative work is based in section titled "Material excluded").)

    For the reasons stated by ATopTech in its motion, however, the Court finds Synopsys has not satisfied the registration requirement with respect to those earlier works. See 17 U.S.C. § 411(a) (providing "[n]o action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title"). In particular, contrary to Synopsys's argument, Synopsys cannot avail itself of the effective registration doctrine, as its applications for registration of the derivative works fail to identify with sufficient specificity the unregistered preexisting works on which such derivative works are based. Although Synopsys correctly points out that an applicant need only "identify," rather than provide titles for, the preexisting works on which a derivative work is based, see Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co., 747 F.3d 673, 680 (9th Cir. 2014), the description used here by Synopsys, "[p]rior works by claimant," unlike "previous version," the language recommended by the Copyright Office (see Oman Decl. Ex. 2 (Copyright Office Circular 61), at 1), does not suffice to provide a meaningful identification, particularly where, as here, Synopsys produces a variety of other electronic design automation ("EDA") works. Synopsys's reliance on Brocade Commc'ns

Systems, Inc. v. A10 Networks, Inc., 2013 WL 831528, at *3 (N.D. Cal. Jan. 10, 2013) and Oracle Am., Inc. v. Google Inc., 2012 U.S. Dist. LEXIS 68707 (N.D. Cal. May 16, 2012), in which the district court approved effective registration of preexisting works described respectively as "previously created computer code" and "prior works by claimant" is unavailing, as there is no indication in either case that the adequacy of such language was raised.

Accordingly, to the extent Count I is based on asserted infringement of input and output formats used in unregistered versions of its static timing analysis programs that pre-date the registered, derivative versions of those programs, ATopTech's motion for summary judgment will be granted.[1]

2. To the extent Synopsys bases its copyright infringement claims on asserted infringement of input and output formats used for the first time in a registered version of its static timing analysis software, the Court, for the reasons stated by Synopsys in its opposition and by the Court on the record at the hearing, finds the following triable issues exist as to eligibility for copyright protection and as to infringement.

a. Synopsys has raised a triable issue as to whether Synopsys's input formats are expressive. (See, e.g., Alexander Decl., filed Oct. 31, 2015 ("Oct. Alexander Decl.") Ex. 6 (Kahng Rebuttal Report), at 13-14 (concluding Synopsys's input formats are "standard and commonly used in EDA" and "obvious"); Storer Decl. Ex. 1, at 40 (explaining "process for designing and creating a collection [of] input formats for PrimeTime involves numerous creative and expressive choices").)

b. Synopsys has raised a triable issue as to whether Synopsys's input formats constitute compilations. (See, e.g., Storer Decl. Ex. 2, at 5 (listing individual PrimeTime command names alphabetically); Storer Decl. Ex. 1, at 8-9 (describing and illustrating

---

[1] In its opposition, Synopsys requests, in the event such order is issued, "leave to amend upon applying for registration of its earlier versions of PrimeTime." (See Pl.'s Opp. at 14 n.7.) Should Synopsys hereafter register such preexisting works and move for leave to amend, the Court will consider Synopsys's request at that time.

3

sequence in which program user enters command name, arguments, options, and punctuation).)

    c. Synopsys has raised a triable issue as to whether Synopsys's output formats constitute blank forms. (See, e.g., Storer Decl. Ex. 1, at 49 (identifying output format as comprising "st[r]ing of dashes . . . to provide visual separation" and use of "line of asterisks to indicate the start of the report"); Storer Decl. Ex. 1, at 47 (describing output format as "content and formatting used to display information in response to the user's input").)

    d. As to the issue of infringement, the Court finds ATopTech has failed to satisfy its initial burden to produce evidence "negating an essential element of the nonmoving party's claim . . . or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). In particular, Exhibit 1 to the Oct. Alexander Declaration, the sole evidence cited by ATopTech on the issue of whether Aprisa input formats are substantially similar to PrimeTime input formats, is sustained on the ground that said exhibit lacks the requisite foundation. Moreover, even assuming ATopTech's evidence is admissible, Synopsys has raised a triable issue as to substantial similarity. (See, e.g., Storer Decl. Ex. 1, at 74 (opining Aprisa "input formats – including commands, options, variables/parameters, objects/classes and attributes – are so strikingly similar to those in PrimeTime . . . that there is no other conclusion than they were copied from PrimeTime").)

**B. Counts VI and VII: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**[2]

For the reasons stated by Synopsys in its opposition and by the Court on the record at the hearing, the Court, as set forth below, finds triable issues exist as to Synopsys's contract claims.

    1. Synopsys has raised a triable issue as to whether ATopTech's use of PrimeTime

---

[2] In the Amended Complaint, Counts VI and VII are misnumbered as Counts XI and XII.

4

and GoldTime formats, and/or the timing of ATopTech's cessation of use and return of any of Synopsys's licensed materials, constitutes a breach of any express or implied term of the Connections Program License Agreement ("CPLA"). See Wolf v. Superior Court, 114 Cal. App. 4th 1343, 1351 (2004) (setting forth rules for construing meaning of term in contract; noting existence of "two equally plausible interpretations of the language of a contract . . . present[s] a question of fact which precludes summary judgment") (internal quotation and citation omitted); (see, e.g., Oct. Alexander Decl. Ex. 26 (CPLA) § 1 (providing contract was "established to coordinate, enable, and support the interoperability of Participant Products . . . with Extreme DA Licensed Software"); id. Ex. 26 (CPLA) § 3.2(iv), (viii) (providing "Participant shall not . . . disassemble, decompile, reverse-engineer or otherwise attempt to reconstruct, identify or discover any . . . underlying user interface techniques . . . of the Licensed Software" nor "make copies, in whole or in part, of any Licensed Software product or other material provided by Extreme DA without the prior written consent of Extreme DA"); id. Ex. 34 (Chang Tr.) at 24:2-26:25 (describing removal of Synopsys's GoldTime materials from ATopTech's servers); id. Ex. 26 (CPLA) § 7.3 (providing "[u]pon the termination of this Agreement, Participant shall immediately cease all use of the Licensed Software, and shall either return or destroy the Licensed Software and all Extreme DA Confidential Information")).

    2. Synopsys has raised a triable issue as to whether Synopsys has suffered harm as a result of ATopTech's alleged breach of the CPLA and the implied covenant of good faith and fair dealing. (See, e.g., Oct. Alexander Decl. Ex. 29 (Hoogenstryd Tr.), at 61:5-13 (testifying [as Synopsys's Rule 30(b)(6) witness] he has "not reached any conclusion with regard to harm" to Synopsys due to breach of CPLA); Napper Decl. Ex. A (Napper Report), at 49-50) (estimating Synopsys suffered $10,289,897 in losses due to breach of CPLA).

    Accordingly, ATopTech's motion for summary judgment on the contract claims will be denied.

## II. Synopsys's Motion for Summary Judgment[3]

### A. First Affirmative Defense: Statute of Limitations

As to whether Synopsys's copyright claims are barred in part by the applicable three-year statute of limitations, the Court finds Synopsys has failed to satisfy its initial burden. See Nissan Fire & Marine Ins., 210 F.3d at 1102. In particular, Synopsys's citations to ATopTech's statements that ATopTech's documents are "confidential" (see Oct. Michael Decl. Ex. 8 (Thune Tr.) at 236:25) and that "generally" it does not make its "Aprisa/Apogee References Manual and the Aprisa/Apogee Parameter Guide" available to competitors (see Alexander Sealing Decl., filed April 16, 2015, ¶ 4), are insufficient to support a finding that Synopsys first learned of its infringement claim within the three-year limitations period.

Accordingly, to the extent Synopsys seeks summary judgment on the First Affirmative Defense, the motion will be denied.

### B. Third Affirmative Defense: Fair Use

For the reasons stated in ATopTech's opposition and by the Court on the record at the hearing, the Court finds triable issues exist as to each of the following factors. See 17 U.S.C. § 107 (listing factors court considers in "determining whether the use made of a work in any particular case is a fair use").

1. ATopTech has raised a triable issue as to whether "the nature of the copied work" is functional or expressive. (See, e.g., Oct. Michael Decl., filed Oct. 30, 2015 ("Oct. Michael Decl.") Ex. 12 (Bai Tr.) at 80:21-81:6 (acknowledging software's function of "calculat[ing] values . . . has nothing to do with the particular name of a parameter"); id. Ex. 1 (Kahng Report) at 57 (concluding "STA tools such as PrimeTime and GoldTime are 'functional' in nature").)

2. ATopTech has raised a triable as to "the amount and substantiality of the portion

---

[3] By the instant motion, Synopsys seeks judgment on the First, Third through Sixth, Eighth through Tenth, and Fifteenth Affirmative Defenses.

6

1  used in relation to the copyrighted work as a whole." (See, e.g., Oct. Michael Decl. Ex. 1
2  (Kahng Report) at 58-62 (estimating Aprisa contains 7 of 651 total PrimeTime commands,
3  44 of 2000 total PrimeTime options, 8 of 329 total PrimeTime variables/parameters, 72 of
4  1145 total PrimeTime attributes, and 7 of 29 total PrimeTime object classes); Blaauw Decl.
5  ¶¶ 18-19 (estimating Aprisa contains 119 of 496 total PrimeTime commands, 199 of 691
6  total PrimeTime options, 57 of 424 total PrimeTime variables/parameters, and 75 of 657
7  total PrimeTime attributes).)
8      3. ATopTech has raised a triable issue as to "the effect of the use upon the potential
9  market for or value of the copyrighted work" or upon any "derivative works." See Harper &
10 Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 567 (1985) (holding court
11 considering effect of defendant's use on market "must take account not only of harm to the
12 original but also of harm to the market for derivative works"); (see, e.g., Blaauw Decl. ¶ 17
13 (concluding IC Compiler is derivative of PrimeTime); Oct. Michael Decl. Ex. 21 (Tregillis
14 Report), at 3 (opining "[f]or the 2007-2014 damages period, lost profits to Synopsys on IC
15 Compiler and IC Compiler II are $7.7 million"); Napper Decl. Ex. 2 at 15-16 (stating IC
16 Compiler's "predecessor" is "Physical Compiler," not PrimeTime)).
17     Accordingly, to the extent Synopsys seeks summary judgment on the Third
18 Affirmative Defense, the motion will be denied.
19     **C. Fourth and Fifth Affirmative Defenses: Merger and Scènes à Faire**
20     A triable issue exists as to whether the input formats at issue could "only be
21 expressed in so many ways" or, "as a practical matter," are "indispensable, or at least
22 standard." See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1444 (9th Cir.
23 1994); (see, e.g., Oct. Michael Decl. Ex. 24 (Kahng Tr.) at 196:25-197:2 (acknowledging
24 "there are thousands of viable alternatives just for one report_timing alone"); id. Ex. 25
25 (Kahng Rebuttal Report) ¶ 39 (explaining "surprisingly few alternatives for command and
26 other format names" remain "once a small number of initial choices . . . have been made")
27 (emphasis in original)).
28

7

Accordingly, to the extent Synopsys seeks summary judgment on the Fourth and Fifth Affirmative Defenses, the motion will be denied.

### D. Sixth Affirmative Defense: De Minimis

A triable issue exists as to whether ATopTech's use of Synopsys's input formats "is so meager and fragmentary that the average audience would not recognize the appropriation."  See Fisher v. Dees, 794 F.2d 432, 434 n.2 (9th Cir. 1986); (see, e.g., Blaauw Decl. ¶¶ 18-19 (estimating Aprisa contains 119 of 496 total PrimeTime commands, 199 of 691 total PrimeTime options, 57 of 424 total PrimeTime variables/parameters, and 75 of 657 total PrimeTime attributes); Oct. Michael Decl. Ex. 1 (Kahng Report) at 58-62 (estimating Aprisa contains 7 of 651 total PrimeTime commands, 44 of 2000 total PrimeTime options, 8 of 329 total PrimeTime variables/parameters, 72 of 1145 total PrimeTime attributes, and 7 of 29 total PrimeTime object classes)).

Accordingly, to the extent Synopsys seeks summary judgment on the Sixth Affirmative Defense, the motion will be denied.

### E. Eighth Affirmative Defense: Good Faith

ATopTech has withdrawn good faith as a defense.  (See Def.'s Opp. at 25:12-17.)

Accordingly, to the extent Synopsys seeks summary judgment on said defense, Synopsys's motion will be denied as moot.

### F. Ninth Affirmative Defense: Excuse of Performance

1. To the extent ATopTech bases excuse of performance on the theory that Synopsys breached the CPLA by extending such agreement multiple times without disclosing Synopsys's position that Extreme DA lacked ownership rights in the formats at issue, Synopsys's motion will be granted, for the reason that ATopTech cites to no authority holding ATopTech would be excused from performing its obligations under the CPLA by reason of such circumstances.

2. To the extent ATopTech bases excuse of performance on the theory that Synopsys refused to share GoldTime commands in violation of Synopsys's obligations

1 under the CPLA, Synopsys's motion will be denied, as the Court finds Synopsys fails to
2 satisfy its initial burden. In particular, Synopsys's motion cites to no evidence bearing on
3 said theory.
4     Accordingly, to the extent Synopsys seeks summary judgment on the Ninth
5 Affirmative Defense, the motion will be granted in part and denied in part.

    **G. Tenth Affirmative Defense: Equitable Estoppel**

7     As to equitable estoppel, the Court finds a triable issue, as set forth below, exists as
8 to each of the four elements of said defense. See Hampton v. Paramount Pictures Corp.,
9 279 F.2d 100, 104 (9th Cir. 1960) (noting elements that "must be present to establish the
10 defense of estoppel" are "(1) [t]he party to be estopped must know the facts; (2) he must
11 intend that his conduct shall be acted on or must so act that the party asserting the
12 estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true
13 facts; and (4) he must rely on the former's conduct to his injury").

14     1. ATopTech has raised a triable issue as to whether Synopsys "kn[e]w the fact[]" of
15 ATopTech's infringement. (See, e.g., Alexander Sealing Decl., filed Apr. 16, 2015, ¶ 4
16 (stating "ATopTech generally does not make [its Aprisa/Apogee References Manual and
17 Aprisa/Apogee Parameter Guide] available to its competitors"; Alexander Decl., filed Nov.
18 13, 2015 ("Nov. Alexander Decl.") Ex. 22 (Haider Tr.), at 24:1 (testifying that
19 representatives from Synopsys regularly attend annual "Design Automation Conference");
20 id. Ex. 7, at 9 (ATopTech slideshow titled "DAC [Design Automation Conference] 2006,"
21 containing statement that Aprisa is "PrimeTime compatible" and "correlates with PrimeTime
22 extremely well").)

23     2. ATopTech has raised a triable issue as to whether Synopsys "intend[ed] that [its]
24 conduct . . . be acted on" or "so act[ed] that [ATopTech] ha[d] a right to believe it is so
25 intended." (See, e.g., Oct. Michael Decl. Ex. 28 (copyright notice displayed on Synopsys's
26 software manuals, stating "software and documentation . . . may be used or copied only in
27 accordance with the terms of the license agreement"); Wang Decl. ¶ 5 (stating that,

9

1  "[d]uring the period beginning in 2004 when [ATopTech engineers] were developing Aprisa,
2  . . . Synopsys conducted and participated in industry conferences . . . in which many
3  Synopsys representatives affirmatively advocated the use of common terms and methods
4  in order to enhance the interoperability of its software in the EDA industry with others," and
5  that ATopTech's "engineers attended some of these conferences").)[4]

6        3. ATopTech has raised a triable issue as to whether ATopTech was "ignorant of
7  the true fact" of Synopsys's copyrights and intent to exclude others.  (See, e.g., Oct.
8  Michael Decl. Ex. 12 (Bai Tr.) at 44:6-46:18 (testifying he was aware that Synopsys marks
9  each of its manuals with a copyright notice); Wang Decl. ¶ 5 (stating "during the period that
10 we [ATopTech engineers] were developing Aprisa, we understood that Synopsys actually
11 encouraged the use of the same names for commands, options, variables, objects and
12 attributes," and "[a]t no time during this period did we hear from Synopsys or anyone else
13 that Synopsys claimed a copyright ownership over the names themselves").)

14       4. ATopTech has raised a triable issue as to whether ATopTech "rel[ied] on the
15 [Synopsys's] conduct to [ATopTech's] injury."  (See, e.g., Oct. Michael Decl. Ex. 28
16 (copyright notice displayed on Synopsys's software manuals, which states "software and
17 documentation are furnished under a license agreement and may be used or copied only in
18 accordance with the terms of the license agreement"); Wang Decl. ¶ 8 (ATopTech engineer
19 testifying that based on "Synopsys['s] numerous statements encouraging the use of Tcl, the
20 achievement of interoperability, and the use of SDC format command names during this
21 period," ATopTech engineers "concluded that, to the extent we adopted the same or similar
22 names for certain functions in Aprisa, we were doing so without any objection from
23 Synopsys")).

---

[4]Synopsys's objection, on the ground of lack of foundation, to Wang's statement that "engineers attended some of these conferences" is overruled.  In his declaration, Wang states he was "one of the engineers at ATopTech involved in the development of . . . Aprisa software" (see Wang Decl. ¶ 1); he thus was in a position to have had knowledge of such attendance.  The Court does not address herein Synopsys's objections to other evidence cited by ATopTech in support of estoppel, as the Court has not relied on that evidence in reaching its decision.

Accordingly, to the extent Synopsys seeks summary judgment on the Tenth Affirmative Defense, the motion will be denied.

### H. Fifteenth Affirmative Defense: Laches

The Court finds Synopsys's conclusory assertion that ATopTech "has not presented any evidence of unreasonable delay, let alone extraordinary circumstances," insufficient to satisfy its initial burden. See Nissan Fire & Marine Ins., 210 F.3d at 1105 (noting "moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence").

Accordingly, to the extent Synopsys seeks summary judgment on the Fifteenth Affirmative Defense, the motion will be denied.

### I. Implied License and Waiver

On November 18, 2015, the Court dismissed ATopTech's implied license and waiver defenses with leave to amend. Thereafter, on December 14, 2015, ATopTech filed its Fourth Amended Answer, wherein neither such defense is included.

Accordingly, to the extent Synopsys seeks summary judgment on implied license and waiver as affirmative defenses, Synopsys's motion will be denied as moot.

## CONCLUSION

### 1. ATopTech's Motion for Summary Judgment

A. To the extent Count I, Copyright Infringement, is based on asserted infringement of input and output formats used in unregistered versions of Synopsys's static timing analysis software programs that pre-date the registered versions of those programs, ATopTech's motion for summary judgment is hereby GRANTED.

B. In all other respects, ATopTech's motion is hereby DENIED.

### 2. Synopsys's Motion for Summary Judgment

A. To the extent ATopTech bases its Ninth Affirmative Defense, Excuse of Performance, on the theory that Synopsys breached the CPLA by extending such agreement multiple times without disclosing Synopsys's position that Extreme DA lacked

ownership rights in the formats at issue, Synopsys's motion is hereby GRANTED.

B.  In all other respects, Synopsys's motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: January 7, 2016

_____
MAXINE M. CHESNEY
United States District Judge