```
                                    Volume 10

                                    Pages 2130 - 2195

                 UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

SYNOPSYS, INC.,                )
                               )
          Plaintiff,           )
                               )
  VS.                          )     NO. C 13-02965 MMC
                               )
ATOPTECH, INC.,                )
                               )
          Defendant.           )
_____)

                           San Francisco, California
                           Monday, March 7, 2016

                    TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff Synopsys, Inc.:
                         JONES DAY
                         555 California Street, 26th Floor
                         San Francisco, CA  94104-1500
                         (415) 626-3939
                         (415) 875-5700 (fax)
                 BY:  PATRICK THOMAS MICHAEL
                      ROBERT ALLEN MITTELSTAEDT
                      NATHANIEL GARRETT
                      MATTHEW SILVEIRA

For Plaintiff Synopsys, Inc.:
                         JONES DAY
                         77 West Wacker, Suite 3500
                         Chicago, IL 60601-1692
                         (312) 782-3939
                 BY:  KRISTA SUE SCHWARTZ

Reported By:  Lydia Zinn, CSR No. 9223, FCRR,
              Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporters
```

2131

**APPEARANCES**:

For Defendant ATopTech, Inc.:
ARNOLD & PORTER LLP
1801 Page Mill Road, Suite 110
Palo Alto, CA  94304
(415) 356-3085
(650) 356-3099 (fax)
BY:  **PAUL ALEXANDER**
**PHILIP WILLIAM MARSH**

For Defendant ATopTech, Inc.:
ARNOLD & PORTER LLP
Three Embarcadero Center
7th Floor
San Francisco, CA  94111-4024
(415) 677-6515
(415) 677-6262 (fax)
BY:  **SEAN MICHAEL CALLAGY**
**MARTIN R. GLICK**
**WILLOW WHITE NOONAN**

For Defendant ATopTech, Inc.:
ARNOLD & PORTER LLP
777 South Figueroa Street
Los Angeles, CA 90017-5844
(213) 243-4118
(213) 243-4199 (fax)
BY:  **DENISE L. MCKENZIE**

1    **Monday - March 7, 2016**                              **9:15 a.m.**

2                    **P R O C E E D I N G S**

3                         **---oOo---**

4       (Proceedings were heard out of the presence of the jury:)

5            **THE CLERK:**  Please be seated.

6            **THE COURT:**  Okay.  Good morning.  We're continuing

7    outside the presence of the jury in Synopsys v. ATopTech.

8       A whole flurry of papers were delivered to me this morning

9    in courtesy copy form that apparently were filed, I don't know,

10   sometime over the weekend.  I didn't bother to look.  So I

11   really have had no significant amount of time or any reasonable

12   amount of time to look over these.

13      If you really expect me to be absorbing these matters and

14   actually basing a ruling on them, I think you're asking too

15   much at this late stage in the case, and that these materials

16   could have been provided earlier if you expected the Court to

17   rule on them.

18      So I'm not going to really consider that they've been

19   filed in connection with any ruling I'm going to make.  If

20   we -- I've glanced over them.  To the extent that I don't

21   intend to get bogged down with going back over all these

22   materials in connection with whatever instructions are, we

23   might still be able to look at them in some context.  But,

24   frankly, it's just not helpful to do this, and so you think

25   you've made a record, but it's not going to help you at this

CHARGING CONFERENCE

 1   stage.

 2       So the next question is:  Where did we leave off with the

 3   instructions?  Where are we?  Now, Mr. Marsh?

 4           MR. MARSH:  Good morning, Your Honor.

 5           THE COURT:  Good morning.

 6           MR. MARSH:  I believe we left off talking about

 7   copyright damages, if I'm not mistaken.

 8           THE COURT:  That's where I've got it flipped open to.

 9   So just looking here, we have 17.22 from Synopsys and ATopTech.

10   Now, the concern is how to describe, I guess, the idea of not

11   having a double recovery.  Is that pretty much the only

12   concern?

13           MR. MARSH:  That's certainly one concern.

14       And if Your Honor will indulge me, I'm going to hand off

15   to Mr. Callagy, who's going to handle this.  I just wanted to

16   observe where we were when we left off since he wasn't here.

17           THE COURT:  All right.  And then where -- in terms of

18   keeping the court reporter or not, are we going to be

19   addressing anything that needs a court reporter at this point?

20           MR. MARSH:  Your Honor, we did have some concerns.

21   We've exchanged jury instructions that were revised according

22   to what happened in court.  We've talked about those with

23   opposing counsel, and we have some concerns.  I don't know if

24   the Court would like to take those up on the record or not.

25           THE COURT:  What's the nature of the concern?  Is it

**CHARGING CONFERENCE**

1   accuracy in recording what the Court said it would give, or is

2   it a dispute over the substance of the instruction at this

3   point?

4          **MR. MARSH:**  There are some minor substantive issues

5   that we'd like to raise now that we've seen it in black and

6   white.  We don't want to retread old ground, but there are a

7   couple of issues we could discuss.  We could do that now or

8   later if you'd like.

9          **THE COURT:**  I think we can do it later --

10         **MR. MARSH:**  Understood.

11         **THE COURT:**  -- and keep going forward at this point.

12         **MR. MARSH:**  Thank you.

13         **THE COURT:**  All right.  So hearing nothing further,

14   then, I'm going to excuse the court reporter to be on

15   telephonic standby.

16         (Discussion held off the record at 9:18 a.m.)

17            (Proceedings resumed at 3:54 p.m.)

18      (Proceedings were heard out of presence of the jury:)

19         **THE COURT:**  Okay.  We're on the record outside the

20   presence of the jury in Synopsys v. ATopTech for the purpose of

21   the Court stating for the record the instructions that the

22   Court is going to give, and also to describe for the record the

23   verdict form that the Court has indicated it will use.

24      The Court and counsel for the respective parties have been

25   working on the instructions and the verdict form for better

1    part of two days; and the way that we're going to proceed is

2    that I will indicate, as best as I can, what the instruction is

3    that I'm giving, whether there is or is not any objection to

4    it, and a brief history, if I can do that fairly succinctly, as

5    to how we arrived at the instruction.

6         As I indicated the other day, in the interest of time, a

7    party need not, if they've already addressed the issue in the

8    context of a motion or other writing, repeat the argument in

9    that motion or other writing as long as they're satisfied that

10   their position on the legal underlying issue is correctly set

11   out in full.

12        And then as to the wording of any instruction, a party is

13   presumed to have preferred the instruction in the original form

14   unless we indicate otherwise, or I indicate otherwise, or

15   somebody else does.

16        If the Court does not give the instruction in its original

17   form and does agree to give it in modified form, the party

18   submitting the instruction is deemed to have accepted the

19   modification rather than no instruction on that particular

20   point without giving up their original position and, again,

21   unless otherwise stated on the record.

22        If a party has argued against any issue even being

23   submitted to the jury on a particular point, I'll try to just

24   say that briefly; but, again, if I do, as long as the party has

25   made their point in their motion for judgment or some other

1   motion, then that should be covered fairly well.

2       I will start with the instructions as to which the parties

3   do agree and indicate that I'm going to give these

4   instructions.  If there's a small change in any one or the

5   other, I will indicate what that small change is going to be.

6       These are the parties' agreed-upon final instructions.  As

7   far as the format, plaintiff's counsel has agreed to create a

8   set of instructions that matches the Court's orders on the

9   instructions; and that particular task will not result in a

10  filed document submitted by that party, although the final form

11  of the instructions will be ultimately filed as the

12  instructions.  But that particular task is solely clerical in

13  nature, and plaintiff hasn't given up any position that they

14  took earlier by reason of creating that set.

15      And the Court has indicated that each instruction should

16  have a title, and if the parties do have a dispute about the

17  title which hasn't been called to my attention yet, they need

18  to tell me as soon as possible.

19      We are removing any indication of what the authorities are

20  that support the instruction or who asked for it, and it won't

21  say -- I don't think any of them are going to say "Final

22  Instruction" with a number.  They'll just have the title.

23      So the Court will be giving the following standard

24  instructions that come essentially out of the Ninth Circuit

25  pattern book and start at page 12 of the document that's titled

1   "Proposed Undisputed Jury Instructions."

2        All right.  So starting on page 12:

3        Duty of the Jury.

4        What is Evidence.

5        What is not Evidence.

6        Credibility of Witnesses.

7        Impeachment Evidence.

8        Charts and Summaries.

9        Burden of Proof with the first sentence removed, which is

10  essentially something of a stage direction.

11       And I may have various things I'll say to the jury in

12  brief moving from one set to another just so that the jurors

13  can get ready to hear a particular type of instruction.

14       I am not giving, however, the instruction that appears on

15  page 19 of that set titled "Copyright Subject Matter

16  Compilation."  I believe that, you know, now I can't remember

17  who still wanted it.  I am refusing it as unnecessary, and I

18  believe it was the -- was it the plaintiff who wanted that or

19  the defendant?

20            **MS. SCHWARTZ:**  I believe it was the defendant,

21  Your Honor.

22            **THE COURT:**  Okay.

23            **MR. MARSH:**  Your Honor, we raised that, and we

24  actually have a separate proposed disputed jury instruction on

25  compilation that we prefer.

1        THE COURT:  Okay.  So this is actually withdrawn by

2   everybody -- all right -- for different reasons that we'll get

3   to later.  The plaintiff is withdrawing it as unnecessary, and

4   the defendant is withdrawing it in favor of a separate

5   instruction that they've proposed.

6      Okay.  All right.  Continuing with what I am giving, at

7   page 20 now, the instruction titled "Breach of Implied" -- oh,

8   that's gone.  All right -- "Breach of Implied Covenant of Good

9   Faith and Fair Dealing," although we didn't come back to this

10   and I was going to give it with a brief modification, has been

11   withdrawn by all sides.  The plaintiff not -- well, actually,

12   the plaintiff wanting to pursue that, I believe, idea and the

13   Court finding there was no sufficient evidence in the record to

14   support that instruction or that issue.

15        MR. MARSH:  Your Honor, just to clarify for the

16   record, I think you granted our JMOL on that; correct?

17        MR. MITTELSTEADT:  Your Honor, actually we withdrew

18   it.

19        THE COURT:  Oh.  When?

20        MR. MITTELSTEADT:  When we were going over the

21   instruction.  Mr. Garrett was up there, and I just went up

22   there and I said, "We'll withdraw it."

23        THE COURT:  Okay.  All right.  Then it is withdrawn,

24   not refused, and it's withdrawn by everybody because the issue

25   is not being submitted to the jury.  Thank you for reminding me

1    of that.

2         So then let me try again what I am giving, on page 21,

3    Introduction to Contract Damages; at page 22, Duty to

4    Deliberate with one minor change to substitute for "presiding

5    juror," "foreperson."

6              **MR. GARRETT:**  Your Honor, sorry to interrupt.  I just

7    noticed on page 21, Introduction to Contract Damages, has a

8    reference to breach of the implied covenant of good faith and

9    fair dealing.

10             **THE COURT:**  Oh, thank you.  Now, where is that?

11             **MR. GARRETT:**  It's on the second -- well, it's line

12   3.

13             **THE COURT:**  Line 3.

14        Okay.  Yes, thank you.  In that case -- is that the only

15   place you spotted it in that instruction?  Everybody take one

16   more look.

17        If that's the case, then for purposes of this

18   instruction -- and, Ms. Schwartz, you may have to go back to

19   that one -- I will give it but modified to remove the reference

20   to "implied covenant of good faith and fair dealing."

21        Thank you, Mr. Garrett.

22        Then I will give Return of Verdict and, again, substitute

23   "foreperson" for "presiding juror."

24        That, I believe, covers the set of instructions titled

25   "Undisputed."

1    All right.  Then we go to the instructions that were

2  individually requested by the parties.  The final sets of those

3  instructions have been deemed to have supplanted any previous

4  individual submissions on behalf of the parties, and the

5  parties agree with that.  So it's Document Number 633 for the

6  defendant and 640 for the plaintiff.

7    Okay.  The first instruction that appears in both parties'

8  sets is 17.1.  These references, unless otherwise indicated,

9  are all to the Ninth Circuit Model Jury Instructions for civil

10 cases.

11   So 17.1, Copyright Defined, I am going to be giving as

12 modified and using the plaintiff's version.  So to the extent

13 the defendant's version differs from the plaintiff's, it's

14 refused in favor of Plaintiff's 17.1 modified, and I will

15 indicate the modifications.

16   The first is to remove the words "substantially similar"

17 at line 13.  This is essentially over the plaintiff's objection

18 because the plaintiff has asked that the Court use as the

19 standard of proof for copying, or the description of copying,

20 "substantially similar."  And I have found -- and I do not know

21 if this is on the record yet, but I'm being told it has been

22 found on the record -- I have found that the proper standard

23 for this case is virtually identical, and that the reason for

24 that was -- and I thought this was on the record -- but the

25 reason for that is that the nature of the work falls on the

CHARGING CONFERENCE

1  continuum closer to that end that favors this particular

2  description.

3      Although there are different ways that these syntaxes may

4  be put together, the Court finds that essentially they're made

5  up of directives or commands to be given to the computer and do

6  not fall closer to the creative and not reserved by any means

7  for artistic work but, nonetheless, in this instance falls

8  closer to the other end of the spectrum.

9      And so for that reason we've taken "substantially similar"

10 out and just left the word "copies unmodified" at line 13.

11 Later the Court then expands on the idea of the particular

12 standard applicable here.

13     The Court is also moving a concept from 17.4 as requested

14 by the plaintiff into this instruction at line 15 so that

15 following the word "infringement," the phrase "and may do so

16 even after a copyrighted work has become an industry standard."

17 At the very end of this instruction, the Court is adding, "In

18 this case, there is no dispute that Synopsys owns the

19 copyrights at issue."

20     Does anyone want to say anything further regarding this

21 instruction at this time?

22                     (No response.)

23         **THE COURT:**  If not, I will move to the next one.

24     The next instruction in the plaintiff's set is 17.2.  The

25 next instruction in the defendant's is 17.0.  I am refusing

1   17.0 as unnecessary because this issue really is not something

2   that the jury will be considering.

3        And that takes us, then, to 17.2.

4        I'll stop briefly after each instruction that I cover in

5   case any party wants to add to the record.

6        Okay.  Now I'm on 17.2.  Hmm, what did I do with 17.2?

7   It's titled "Copyright Subject Matter."  Did you decide to call

8   it "Copyright Subject Matter" or "Copyright Subject Matter

9   Generally."

10       **MS. SCHWARTZ:**  I believe it's "Copyright Subject

11  Matter" just to simplify it.

12       **THE COURT:**  Subject matter?  Okay.  There was a

13  slight difference in the way the parties headed up their

14  versions.

15       **MS. SCHWARTZ:**  Actually, I thought this one,

16  Your Honor, was -- I thought this one you declined to give the

17  Synopsys version.

18       **MR. MARSH:**  That was our understanding as well,

19  Your Honor.

20       **THE COURT:**  Okay.  And I -- oh, yes.  I think I just

21  refused it as covered elsewhere, essentially.

22       Okay.  Thank you.  For whatever reason, I think I had a

23  notation as to an intermediate idea that ultimately we

24  resolved.

25       Okay.  Either covered elsewhere or the specifics could be

1  incorporated by reference to the evidence by counsel.  So we

2  didn't need to name the particular versions of PrimeTime,

3  et cetera.

4      All right.  Now --

5          MR. MARSH:  Your Honor, excuse me.

6          THE COURT:  Yes.

7          MR. MARSH:  On Instruction 17.1, I may have just

8  missed it in my notes, but where we lined out "substantially

9  similar," I thought this morning that we had talked about and

10  the parties had agreed on including instead "virtually

11  identical," but perhaps I missed --

12          THE COURT:  No.  Actually, I didn't agree to put it

13  there because it was something of a general introductory

14  instruction; and so rather than put any detail as to the

15  standard there, I just left it as "copies" and then we go to it

16  afterwards.

17      So all right.

18          MR. MARSH:  Understood.  Thank you.

19          THE COURT:  All right.  Thank you.

20      The defendant may have preferred to have it there, but I

21  declined to add it there.  Okay.

22          MR. MARSH:  Correct, we would prefer.

23          THE COURT:  But I did agree to take out

24  "substantially similar," which seemed misleading at that point.

25      Okay.  Sorry.  Where am I?  Are we at 17.3, which the

CHARGING CONFERENCE

```
 1  defendant asked for and I don't think the plaintiff did?  Just
 2  a moment.
 3                    (Pause in proceedings.)
 4           THE COURT:  I think I'm giving this as modified.  Is
 5  that what we agreed to?  I'm having trouble reading my own
 6  writing.
 7           MR. MARSH:  That was our understanding, Your Honor.
 8           THE COURT:  All right.  With a modification as
 9  follows, then, using the defendant's version -- and I don't
10  think we have a plaintiff's version -- the sentence that begins
11  "Only the particular expression of an idea" -- well, it's the
12  whole sentence -- it reads, "Only the particular expression of
13  an idea can be copyrighted," and added to that sentence are the
14  words "way of expressing or."  So it reads, "Only the
15  particular way of expressing or expression of an idea can be
16  copyrighted."
17      Now, that -- also the last sentence is being stricken.
18  Now, what I don't recall -- I believe that the plaintiff did
19  not want the last sentence, and I agreed with that.  And, of
20  course, the defendant is presumed or assumed to have wanted it
21  to remain in.
22      The interlineation, essentially at that line 3 to 4 area,
23  was asked for by the plaintiff -- all right -- and so that's
24  the record on that.
25           MR. SILVEIRA:  Sure.  And we just add to the record
```

1  that we do object to the giving of that instruction, period.

2        THE COURT:  Oh, okay.  So I am giving it but as

3  modified, the modifications being at the plaintiff's request

4  once the Court, over their objection, decided to give an

5  instruction on this subject.

6        MR. SILVEIRA:  Correct.

7        THE COURT:  Thank you.

8     All right.  Then we go -- am I correct? -- to 17.4?  Or,

9  no.  There's 17.12 -- no.  You see, these are not quite in

10  order numerically, but the defendant's next instruction is

11  17.12 and the plaintiff's is 17.4 and the defendant has a 17.4.

12  So I guess I'll go to 12.

13     All right.  And does the plaintiff have a 17.12?

14        MR. GARRETT:  No, Your Honor.

15        THE COURT:  All right.  Then I'll do 17.12.

16     This is an instruction entitled "Copyright Originality,"

17  and I said I would give it but as modified.  Is that what

18  counsel's recollection is as well?

19        MR. MARSH:  That was our recollection --

20        MS. SCHWARTZ:  Yes.

21        MR. MARSH:  -- that the Court had stricken the last

22  paragraph.

23        THE COURT:  Correct.  That was the sweat-of-the-brow

24  idea, so that we were left with a description of originality.

25        MS. SCHWARTZ:  That's our understanding as well,

1    Your Honor.

2         **THE COURT:**  Okay.  And so I am giving it as modified,

3    and then plaintiff is assumed to have objected to the Court

4    giving it.

5        So now we're at 17.4., both sides having requested that

6    instruction, and I am refusing the defendant's in favor of the

7    plaintiff's instruction as modified.  So I will now go to the

8    plaintiff's instruction.

9         What did I do with that?

10                    (Pause in proceedings.)

11        **THE COURT:**  Hmm, okay.  And, Counsel, you may need to

12    help me with this one.

13        **MR. MARSH:**  Your Honor, I believe this was the new

14    instruction that was handed up to the bench.

15        **THE COURT:**  Right, and that's -- oh, here it is.

16    When I put it into the stack, I did not put it where I had

17    intended to.  No wonder I lost it.

18        All right.  So what's happened now is that the plaintiff

19    at the Court's request has endeavored to set forth their -- I'm

20    sorry -- the types of alleged copying that they're relying on

21    for the basis of their claim.

22        And so we are keeping the first sentence of the

23    instruction as asked for by the plaintiff, removing the second,

24    which got essentially airlifted into another instruction as I

25    indicated.

1          I did not agree to give the language in the second

2     paragraph quite as it's set out here, although we do instruct

3     the jury in so many words that the plaintiff is the owner of

4     the copyrights, and that came up now added to another

5     instruction.

6          Then there was language that had said originally, "You are

7     further instructed that the PrimeTime command set and its

8     commands, variables, and attributes are original and

9     protectable by copyright law."

10         The Court was not prepared to give that.  I have never

11    made a finding as to whether the command sets standing alone

12    are protectable because the plaintiff, for purposes of this

13    trial, was not claiming that.

14         And so the plaintiff had then put together what they are

15    claiming, which I then stated are original and protected by

16    copyright.  And so that now appears as the third paragraph in

17    the form of the instruction that I'm giving, and in between we

18    have a second paragraph about what the plaintiff is not

19    claiming.

20         The instruction then goes on pretty much to track the

21    instruction as originally requested with certain modifications

22    that the Court said that it would impose.

23         For clarification at what was line 12 as requested, I've

24    added the word "those," so "those original elements," and did

25    the same thing at line 13 in the original, and those happen to

1   come out the same -- at the same lines in the final form to add

2   the word "those."

3       And to make things clearer, the last paragraph instead of

4   reading "If you find that Synopsys has proved that ATopTech

5   copied the original elements from the copyrighted work, your

6   verdict should be for Synopsys.  If, on the other hand,

7   Synopsys has failed to prove this element, your verdict should

8   be for ATopTech," we've changed that a bit, and I don't know if

9   there's any real objection to that change.

10      There may be in this way:  There were two issues here;

11  copyright infringement and breach of contract.  And so I added

12  or said that that one sentence is going to be, "Your verdict

13  should be for Synopsys on the issue of infringement."

14      The defendant objects to submitting the claim of breach of

15  contract to the jury, and had a Rule 50 motion on that, which I

16  have denied, and the court clerk should reflect that in the

17  minutes.

18      Okay.  And the other motion that I ruled on and said on

19  the record before we got to this point was with which motion,

20  because I'm not sure the clerk recorded that ruling?

21          MR. CALLAGY:  There was the motion as to GoldTime as

22  a copyrighted work.

23          THE COURT:  No.  That -- has that come up yet?

24          MR. CALLAGY:  I'm not sure we're there yet.

25          THE COURT:  No, I don't think we're there yet.  No,

1  there was something else that I thought that someone harkened

2  back to, and I think it was maybe one of the defendants, but

3  I'm not sure at this point.  So I may have to go back and recap

4  on those.

5      In any event, and then rather than say "On the other

6  hand," to track it, we went back to the same type of language

7  that, "Then if they failed to prove, your verdict should be for

8  ATopTech on the issue of infringement."

9      So that's the Court's ruling on 17.4.

10          **MR. MARSH:**  So, Your Honor, on this issue, just to

11  make sure that the record is clear --

12          **THE COURT:**  Right.

13          **MR. MARSH:**  -- we have proposed a Trial Brief to help

14  the Court perform the filtration required by the Ninth Circuit.

15  We think that would be more appropriate than the plaintiff

16  proposing what is in and what is not at this stage.  We

17  understand the Court's ruling, and we're just making our record

18  here.

19          **THE COURT:**  All right.  Thank you.

20      The defendant did submit a very detailed Trial Brief, but

21  the Court found that some of the things covered there, the

22  Court did not feel it could express to the jury in the way

23  requested and that ultimately it became impracticable,

24  essentially, to winnow out what was going out and what was

25  staying in as long as the plaintiff wasn't claiming these other

1    elements.

2        So all right.  Then we -- what's our next instruction

3    then?  Are we at 17.15?

4        Oh, wait.  The defendant asked for 17.5, Copyright

5    Ownership of a Valid Copyright, and I was refusing that

6    instruction as not in issue in light of what I essentially am

7    instructing the jury on as to originality and valid.

8        Okay.  Then we have the defendant asking for 17.17 and 14

9    before getting to 15.  So if I take 17.17 first, I'm refusing

10   17.17 because I believe this entire concept is covered by the

11   Court's instruction regarding what is copyrightable and what

12   the plaintiff is claiming.

13       17.14, I have a note that it was withdrawn.  That was

14   on -- oh, no.  I'm sorry.  Compilation was withdrawn from the

15   joint proposal by the defendant -- or withdrawn by the

16   defendant from the joint proposal instructions in favor of this

17   instruction, which the Court then is going to refuse as -- I

18   think I'm refusing it because it's covered and because it's an

19   instruction that, if anything, is an instruction the plaintiff

20   might want and the plaintiff doesn't want it.  But if the

21   defendant wants to be heard on this further, you may be.

22       **MR. MARSH:**  Only to say, Your Honor, that our view is

23   that this claim is a compilation claim, which further supports

24   the virtual identity standard being required by the Court in

25   this matter.

```
 1          THE COURT:  All right.  That's a fair enough
 2   argument, but behind the scenes at this point; and so in light
 3   of my ruling on -- now, I don't know if you're using "virtual
 4   identity" because I don't know if "identity" is quite the word
 5   for saying something's identical.  All right?  "Virtual
 6   identity" sounds like, you know, the SIM people or something,
 7   you know.
 8          MR. MARSH:  Perhaps I should have said it as it said
 9   in the cases, which is "virtually identical copying."
10          THE COURT:  All right.  Thank you.
11       Either way.  I mean, just in case anybody's using that
12   term anywhere, we ought to go to it and look at it in the
13   instructions because I think it's something not quite accurate.
14       We have now gotten up to 17.15.
15       Mr. Silveira?
16          MR. SILVEIRA:  Sorry, Your Honor.  17.13 is in there
17   as well.  That's derivative works.
18          THE COURT:  In the plaintiff's?
19          MR. SILVEIRA:  In plaintiff's, that's right.
20          THE COURT:  Did I jump over it?  I may have.  Just a
21   minute.
22       Oh, yes, I did.
23       Okay.  17.13 titled "Subject Matter Derivative Works."
24   Now, this is a whole confusing thing because the Ninth Circuit
25   committee has seen fit to put two different kinds of derivative
```

**CHARGING CONFERENCE**

1  concepts together:  One, where a copyright owner may be arguing

2  that a defendant's work is an infringing derivative work of the

3  plaintiff's copyrighted work; and another point at which the

4  plaintiff is arguing that one of their own works is derivative

5  of the infringed work and, thus, needs to be considered with

6  respect to fair use and any adverse effect on that derivative

7  work in addition to the immediately relied-upon infringed work.

8      What I've ended up doing is separating those two concepts

9  out.  That request is at the defendant -- I'm sorry -- is by

10 the defendant, so that separation is at the defendant's request

11 in the first instance.

12     I have then taken the part of the instruction that would

13 be relevant to fair use and agreed that I would give that

14 language -- or language concerning derivative works in

15 connection with the fair use instruction.  And so I would have

16 to get up to the fair use instruction, which the plaintiff

17 didn't ask for in any form, I believe, because the plaintiff

18 had a motion for judgment on fair use.

19     I have denied the plaintiff's motion for judgment on fair

20 use; and if it's not already reflected in the record, it should

21 be.  Okay.

22         **MS. SCHWARTZ:**  Your Honor, one point.  Plaintiff's

23 did have a fair use instruction --

24         **THE COURT:**  Oh.

25         **MS. SCHWARTZ:**  -- on page 12 of --

CHARGING CONFERENCE

1          **THE COURT:**  All right.  Well, then, maybe that's what
2    I used, because I'm just seeing here that I didn't give the
3    defendant's fair use.  Thank you.
4        All right.  Going back then.  All right.  The concept
5    of -- oh, wait.  That's not right.
6        Where is the plaintiff's fair use instruction?  What page?
7          **MS. SCHWARTZ:**  It's on page 12 of the ECF 640.
8    That's the one that, unfortunately, was out of order.
9          **THE COURT:**  That's not -- oh, yes.
10       All right.  Well, I refused the plaintiff's because I said
11   I was giving the defendant's modified or as modified.
12       Then the defendant's is which page of your proposal,
13   Mr. Marsh?
14         **MR. MARSH:**  Also page 12, but of ECF 633, Your Honor.
15         **THE COURT:**  Oh, okay.  Yes.
16       Now, what did I say, then -- I guess -- that's very
17   strange.
18       All right.  I think I may have put an incorrect
19   cross-reference when I was making my own note.  Hang on.
20       Okay.  Where's the -- oh, my.  Okay.  Hang on.
21       The instruction comes up in the plaintiff's set 17.13.
22   Now, here's what I'm doing.  Okay.  I'm refusing this
23   instruction all over the plaintiff's, I guess, objection.
24   First, it did not appear to the Court that we are dealing with
25   a derivative work when we are looking at Aprisa.  Although the

**CHARGING CONFERENCE**

1    Court agrees that one does not have to change the -- from --

2    I'm sorry.

3         The Court agrees that you don't have to change from one

4    modality to another, such as from pictorial to auditory, or

5    something of that nature, in order to have a derivative work;

6    that in this instance, the work just doesn't meet any of the

7    definitions.  The defendant either copied enough of the

8    plaintiff's work or it didn't, but it didn't really do anything

9    with it that the Court is finding would be actionable other

10   than virtually identical copying.

11        All right.  So I thought this created a problem in terms

12   of looking at Aprisa as infringing given the Court's

13   determination to use "virtually identical" as opposed to

14   "substantially similar."  And if I'm wrong about that, I can be

15   wrong about this too, because it's all part and parcel of the

16   same idea, which the plaintiff objects to the Court finding as

17   I did.

18        To the extent that we got to a definition of what a

19   derivative work is and where it fits into the concept of fair

20   use, the Court then modified the defendant's fair use

21   instruction and the parties, once the Court said that it was

22   going to only give a definition of "fair use" -- I'm sorry --

23   only give a definition of "derivative" that goes along with

24   fair use, the parties came to an agreement to use the statutory

25   language.

1       But what I'm a little bit unclear about is whether the

2   plaintiff ultimately preferred that language, in any event, or

3   whether they still preferred their definition as set forth in

4   their instruction.

5           **MS. SCHWARTZ:**  I think we ultimately preferred our

6   definition as set forth in our instruction.

7           **THE COURT:**  Okay.  And once the Court was not going

8   to use that definition and was potentially going to use the

9   defendant's, then the plaintiff agreed that we could use the

10  statutory in lieu of the defendant's, or preferred that having

11  lost the initial argument.

12      And the defendant, what was their ultimate preference,

13  their original language or the statute?

14          **MR. MARSH:**  I believe our preference was our original

15  language; but then as we worked it out, we were willing to go

16  with the statutory language.

17          **THE COURT:**  Okay.  Nobody disagrees with the accuracy

18  of the statutory definition, and the plaintiff preferred that

19  to the defendant's language so I'm using the statutory

20  definition.

21      Now, in looking at the instruction, which is on page 12 of

22  the defendant's set, the modification to that instruction,

23  which is titled "Affirmative Defense - Fair Use," at line 3 the

24  Court has added the phrase at the end of the sentence that ends

25  on that line "if it would advance the public interest."

1        Then at the plaintiff's request, the phrase -- or the

2   sentence, "ATopTech has the burden of proving this defense by a

3   preponderance of the evidence," will be moved from its place as

4   the last sentence in the second paragraph to be given at the

5   start of the last paragraph -- okay -- with the idea that the

6   defendant has the burden of proving all parts of that defense,

7   which should come, then, at the end of the instruction rather

8   than after one part of the instruction.

9        Then in item number 4, not the paragraph but numbered

10  item 4, "the effect on the market for PrimeTime" has been

11  modified to read "the effect on the potential market for or

12  value of PrimeTime."

13       And I believe that's at the plaintiff's request, but let

14  me confirm that.  Is that at the plaintiff's request, adding --

15            **MR. SILVEIRA:**  Yes, that is at our request.

16            **THE COURT:**  All right.  And also in that sentence

17  where the phrase reads "including the effect on the market for

18  derivative works of PrimeTime," the Court has made that "the

19  effect on the potential market for or value of derivative works

20  of PrimeTime."

21       And then the question is the definition of a derivative

22  work.  Is that going to be in this instruction or a separate

23  one?

24            **MR. MARSH:**  Our understanding from the Court earlier

25  today off the record was that that would be a separate

 1  instruction that followed this fair use instruction.

 2          MS. SCHWARTZ:  That's my understanding as well.

 3          THE COURT:  Okay.  I think the plaintiff might have

 4  preferred it all in the single instruction, but because it's

 5  fairly long and it's only one of the aspects of 17.18, the

 6  Court felt it was better that it be separate.  And so what will

 7  that be called?  Would that be called "Derivative Work -

 8  Defined"?  Or what are you calling that?

 9          MS. SCHWARTZ:  Seems like "Copyright - Definition of

10  Derivative Work," or something along those lines, would work.

11          THE COURT:  Okay.  All right.  I'm not hearing any

12  demure to that.

13          MR. MARSH:  Your Honor, if I may.  On the derivative

14  work point, just to make the record clear because this was said

15  off the record, we object to the characterization of Aprisa as

16  a derivative work of any product of Synopsys, and particularly

17  PrimeTime.  That was never mentioned or brought into evidence.

18  That was never a theory of the case, and we were notified of

19  this for the first time during the jury instructions.  It

20  wasn't a theory that was ever advanced during the trial.

21          THE COURT:  All right.

22          MS. SCHWARTZ:  That's paragraph --

23          THE COURT:  I wasn't necessarily -- excuse me --

24  convinced that the plaintiff had to label the infringing work

25  as derivative or not earlier.  You may be right.  But even if

1  you're not, the Court found that the work didn't meet a

2  definition of "derivative" -- all right? -- as I saw it, and

3  the plaintiff objects to that.

4        MS. SCHWARTZ:  Understood.  And I just want to

5  clarify for the record that paragraph 55 of our Complaint calls

6  Aprisa a derivative work, so it's a theory that we put at issue

7  in the case from the very first Complaint.

8        THE COURT:  All right.  Thank you.

9      So I did not rely, as I say, on a notice idea for purposes

10  of making the ruling I did.

11      Now, because these instructions are not in numerical order

12  necessarily and they also don't run in the same way in each

13  set, I want to make sure that I haven't overlooked something.

14  Mr. Garrett reminded me about 17.13.

15      Are we at 15 yet or not?

16        MR. SILVEIRA:  Could I make a couple more points on

17  the record regarding 17.18 before we move from that one?

18        THE COURT:  Did we ever get to that?

19        MR. SILVEIRA:  We were just talking about fair use in

20  the instruction.

21        THE COURT:  Oh, yes.  All right.

22        MR. SILVEIRA:  It's just three points, Your Honor.

23        THE REPORTER:  Excuse me, Mr. Silveira.  Could you

24  please come forward to the microphone?  Thank you.

25        THE COURT:  And then I think that you may have to

**CHARGING CONFERENCE**

1  find one lawyer who is going to argue the instructions because

2  otherwise we're just going to have too many people jumping up.

3           MR. SILVEIRA:  No problem, Your Honor.

4           THE COURT:  All right.

5           MR. SILVEIRA:  Just three points.  One, we object to

6  giving any interoperability instruction at all, if there is one

7  to be given.  We had suggested our language.  We object to any.

8           THE COURT:  Don't talk that fast.  Okay?  You've got

9  to slow down.

10          MR. SILVEIRA:  No problem, Your Honor.

11          THE COURT:  All right.  Just repeat what you said.

12          MR. SILVEIRA:  Sure.  So we object to any giving of

13  an interoperability instruction in the fair use instruction.

14          THE COURT:  All right.  You object to the Court

15  giving an interoperability instruction at all --

16          MR. SILVEIRA:  At all.

17          THE COURT:  -- because there is a -- is there a

18  Rule 50 motion on this?

19          MR. SILVEIRA:  There is a Rule 50 motion, Your Honor.

20          THE COURT:  Is it titled "Interoperability"?

21          MR. SILVEIRA:  It's entitled "Fair Use."

22          THE COURT:  "Fair Use"?  Okay.  I am -- I've denied

23  that motion, and it should show in the minutes that I've denied

24  the Rule 50 motion on fair use.

25      One part of it, as I understand it now being argued, is

1  interoperability, which the plaintiff wanted me to find as a

2  matter of law that there was no interoperability issue here;

3  and that what the defendant was describing as a problem was, as

4  a matter of law, not interoperability.  And there is a long

5  discussion in the plaintiff's motion about that, which I did

6  not find persuasive because I felt there was a question of fact

7  as to how the term was used in various ways in our case.

8      Okay.

9          MR. SILVEIRA:  The second objection was we wanted to

10  object to not stating that the jury is required to consider

11  each factor and weigh them.

12      And then the third point --

13          THE COURT:  Wait a minute.  Where is that in your

14  proposed instruction?  Because I'm not giving your instruction,

15  so to the extent it had any of that language.

16          MR. SILVEIRA:  Right.  And I believe that we raised

17  during argument yesterday.

18          THE COURT:  Well, forgetting where you raised it off

19  the record.

20          MR. SILVEIRA:  Right.

21          THE COURT:  I'm just saying that if it is in your

22  proposed instruction on fair use, for example --

23          MS. SCHWARTZ:  I don't know that it was in the

24  proposed instructions.  We want to make sure to preserve that

25  since we mentioned it yesterday off the record, that we mention

1   it on the record as well today.

2            THE COURT:  That you would like which language to go

3   into a fair use instruction if the Court gives one?

4            MR. SILVEIRA:  Sure.  It would be right before the

5   four factors, that "You are required to consider each of the

6   following four factors and weigh them."

7            THE COURT:  Oh.  Well, one of the problems with all

8   these instructions is that we keep telling them they should do

9   something as opposed to they have to do it.  There's a

10  difference.

11       I gather that you are using the language that comes out of

12  the Ninth Circuit, which is a little more soft-pedaled than

13  what actually the law might be if you looked at the law.

14       So once we were using that, the Court had stayed with that

15  particular -- not tradition, but --

16           MR. MARSH:  Voice perhaps.

17           THE COURT:  Pardon?

18           MR. MARSH:  Voice?

19           THE COURT:  There's another word I want that's just

20  not coming to me but, anyway, I will double-check.

21       17.18, according to the Ninth Circuit, we ought to say

22  "should."  All right.  So you want me to say "you have to," and

23  the Court is going to stick with "should."

24           MR. SILVEIRA:  Okay.

25       And then the third thing, we also had proposed

1  yesterday -- off the record we proposed adding that the fourth

2  factor is the most important.

3         THE COURT:  Oh, yes.  And I --

4         MR. SILVEIRA:  We wanted to preserve it.

5         THE COURT:  Yes.  I refused that with the idea that

6  that's essentially I won't call it musing by the Court of

7  Appeals, but in their analysis in looking at whether the

8  evidence is sufficient to support fair use, their weighing of

9  these factors, they're putting the greatest weight on the

10  fourth factor, the effect on the market or potential market for

11  the copyrighted work or its derivative works.

12      If the Court were making this analysis, the Court would

13  probably acknowledge also that it understands that that could

14  be the most or is the most important; but to tell a jury that,

15  I think, is problematic, frankly.  If when they get all through

16  and they find fair use, even though there's been an

17  overwhelming showing as to the effect on the copyrighted work

18  or the market for it, then the defendant could argue just, as a

19  matter of law, they can't find this, not when there's such a

20  significant factor here.  But I wasn't prepared to tell the

21  jury that that's the most important and then start trying to

22  rank them.  Where do the others fall into line?

23      So for our purposes, I felt better just to follow the --

24  and let me double-check 17.18 for a moment.

25      I don't think that the Ninth Circuit had suggested that

 1  that was an option, if I'm -- or even -- let alone mandatory,

 2  they didn't even put in it was an option.  I think it's safer

 3  to leave it out.

 4      **MR. SILVEIRA:**  We had taken that language from

 5  *Harper & Row*, just to be clear.

 6      **THE COURT:**  No, no, I understand, but at this point I

 7  think it's preferable for the reason I stated.

 8      Okay.  Now are we leaving 17.18 and going to 17.15 or not?

 9      **MR. GARRETT:**  I believe 17.15, Your Honor.

10      **THE COURT:**  Thank you.

11      So now going to 17.15, which is -- well, I had two dueling

12  instructions with even markedly different titles.

13      I'm refusing the defendant's in favor of the plaintiff's

14  as modified, and we're changing the title to read "Proof of

15  Copying" but as opposed to "Access and Substantial Similarity."

16      The plaintiff would have, I think, preferred the original

17  title because it goes with how the plaintiff originally asked

18  for the instruction; but once I had modified it over the

19  plaintiff's objection, then the plaintiff was, I think, not

20  objecting to calling it "Proof of Copying."

21      This has to do with really a core issue in the case, which

22  is:  Does the plaintiff have to show virtually identical or

23  just substantially similar?

24      So let me make sure that is where we are with this.

25      Yes.  Okay.  There have been a lot of discussions off the

1  record, I don't know how much, if any, has been on the record,

2  as to two lines of cases that discuss copying.  One line of

3  cases looks at how you prove circumstantially that a defendant

4  copied and states that if the defendant had access, then all

5  the plaintiff has to show is the defendant had access and the

6  works are substantially similar, and that would be good enough

7  to show the defendant copied.

8      And then there's a whole other line of cases that looks

9  very carefully at this continuum of creativity of expression or

10  artistic, to a certain extent but not necessarily having to be

11  artistic, for purposes of whether or not a plaintiff would have

12  to show the works are virtually identical or only substantially

13  similar.  And the two lines of cases don't discuss at all each

14  other.  It's like they're in two different worlds.

15      In trying to reconcile where these cases fit and to

16  reconcile them with each other, plaintiff's counsel, and

17  Mr. Silveira had the main argument on this, argued that perhaps

18  they should be considered as just one issue, copying, and that

19  we should use "substantial similarity."  And the Court

20  acknowledged maybe it's one issue.  If it is, it's going to be

21  "virtually identical."

22      Not too long ago I endeavored to find some way to,

23  perhaps, articulate what's going on at these two points, which

24  may not be any better than anything I said earlier, but I'm

25  going to put it on the record for whatever it's worth, and that

**CHARGING CONFERENCE**

1    is the concept of what actually constitutes copying.

2         In other words, if someone came in and just admitted they,

3    quote/unquote, copied the plaintiff's work, what would that

4    mean; and would that simply take away this idea of substantial

5    similarity for showing copying and leave us with some other

6    issue?

7         So what I ended up with was the following:  If what we're

8    trying to do at one stage is distinguish between wholly

9    independent thought on the defendant's part and using the

10   plaintiff's copyrighted work as a starting point and either

11   conceding it or having that be shown circumstantially, then

12   what we are probably looking at at that point is what the

13   plaintiff would have to show to show that the defendant used

14   the plaintiff's work as a starting point.

15        And it's possible that at that point you could say that

16   the plaintiff just needs to show that the defendant had access

17   to the work and they were reasonably similar.

18        Then we would get to:  What did the defendant end up with

19   when they used the plaintiff's work as a starting point?  And I

20   had been hypothesizing a poor artist that goes to the museum,

21   looks at the Mona Lisa, tries to copy it, and does a really bad

22   job, or just tries to use it as inspiration and comes pretty

23   close to it.  Either way, whatever they're trying to do really

24   isn't so much important.  They started with the plaintiff's

25   work.  What did they end up with?

**CHARGING CONFERENCE**

1    If this is a work of, let's say, literature, you might

2  say, then, all they have to do is show it's substantially

3  similar, and that will be good enough for our purposes and that

4  will be actionable.  And if it's a work of a more technical

5  nature with fewer ways to express, for example, a command to

6  the computer even in its full syntax, then we may be looking at

7  having to show they're virtually identical, and so we have

8  somewhat a scope of protection because the Court in those other

9  cases does talk about thin protection and what does that mean.

10    So I don't know if we should stick with this since I came

11  to that thought kind of after we settled or I settled on this

12  version of 17.15.

13    But, in either case, there is substantial evidence in the

14  record that the defendant at least used the plaintiff's work as

15  a starting point if not an ending point.  The thrust of their

16  defense has been fair use.  Not that they came up with all

17  these ideas themselves.  I don't know that there's anything in

18  the record to support a finding that they sat around in a room

19  and came up with the exact same commands in this syntax.

20    So what we really need here is -- in the Court's view, I'm

21  looking at it what's the scope of the protection.  Is it broad?

22  Is it narrow?  I decided it was narrow or, using one of the

23  Court's terms, "thin," I guess.

24    So it currently reads over the, you know, strenuous

25  objection of the plaintiff:  (reading)

CHARGING CONFERENCE

1    "Synopsys has the burden of proving that ATopTech

2    copied original elements from Synopsys' copyrighted

3    works PrimeTime Versions A, B, C, and D.  Synopsys

4    may show that ATopTech copied from those copyrighted

5    works by showing by a preponderance of the evidence

6    that ATopTech had access to those copyrighted works,

7    and that challenged elements of ATopTech's Aprisa and

8    original protected elements of Synopsys' PrimeTime

9    works are virtually identical."

10    Okay.  So that's what I came up with, and I cannot

11 remember now exactly what the defendant didn't like about that

12 final form, Mr. Marsh.  The plaintiff doesn't like it for all

13 the obvious reasons.  And what part, if any, did the defendant

14 object to?

15    **MR. MARSH:**  Possibly several things.  I mean,

16 obviously we prefer the filtering instruction that we had and

17 filtering the way that we said in our Trial Brief.

18    **THE COURT:**  Well, that doesn't answer this question

19 of once you filtered out whatever the plaintiff can and cannot

20 rely on -- in other words, filtered out everything the

21 plaintiff can't rely on, which I believe that I've done and

22 told the jury what the plaintiff can rely on as protected --

23 now we turn and look at the defendant.  In other words, I don't

24 think it has anything to do -- filtration doesn't have anything

25 to do with this issue.  This is infringement.  That's

1  copyrightability.

2       Okay.  So now we're on infringement.  What does the

3  plaintiff have to show?  They could just come in and say, which

4  they want to say, "You're infringing because your Aprisa looks

5  similar to our PrimeTime."

6       And I'm saying that they have to say -- or that they're

7  going to have to say, "You're infringing because it's virtually

8  identical," which, by the way, Dr. Storer did say except in a

9  few exceptions.  There were a few exceptions where he wasn't

10 prepared to say they were virtually identical except as to the

11 command name.

12            **MR. MARSH:**  So allow me to clarify.

13            **THE COURT:**  Okay.

14            **MR. MARSH:**  We agree that virtually identical is the

15 correct standard here.  We agree that that's the case for a

16 couple of reasons.  One, the nature of the work is functional;

17 and, two, the nature of the work is a compilation as all the

18 evidence showed.

19      We disagree a little bit with the characterization about

20 conceding copying or no evidence to the contrary of that.  In

21 our view, the evidence in the trial showed that what the

22 ATopTech engineers did is they saw the functional names that

23 are at issue here in the command set, and they took those

24 functional names and developed some functionality from that.

25      But that being said, specific to this instruction, we had

1  some issues with the wording as it pertained to the elements.

2          THE COURT:  Well, what was your preferred language to

3  the words "challenged elements"?

4          MR. MARSH:  In our view, Your Honor, as we mentioned

5  off the record, what was asserted throughout this case, all of

6  the witnesses talked about, it was mentioned during opening,

7  was the command set.

8          THE COURT:  You want "command set" instead of

9  "challenged elements"?

10          MR. MARSH:  Correct.

11          THE COURT:  Okay.  And the Court is not going to use

12  "command set" just because that was one way of describing what

13  the plaintiff is relying on, but it's not the only way and it

14  might be misleading to say "command sets."

15      And so I'm going to use what they've challenged.  Then

16  they'll get up and say what they're challenging.  And assuming

17  it's what I said they could say was infringable -- i.e.,

18  copyrightable and protected and original -- then the jury can

19  decide whether or not that level of copying occurred to the

20  extent required by me.

21      Okay.  That's all I can say on that.

22      Okay.  Now, we covered 17.13; right?

23          MR. GARRETT:  Yes, Your Honor.

24          MS. SCHWARTZ:  Yes.

25          THE COURT:  So now we're at -- okay.  And we covered

1   17.18.

2       And one of the problems I'm having a little trouble

3   tracking it is because as I say, these are not going

4   numerically even in numerical order from the defendant's

5   standpoint, and then they don't match up to the plaintiff's

6   either.

7       So I've ended up on landing on 17.20 for the defendant and

8   17.16 for the plaintiff.

9       17.20 for the defendant is withdrawn because the plaintiff

10  has withdrawn the claim of vicarious infringement.  So the

11  defendant's 17.20 and the defendant's 17.21 are both withdrawn

12  because plaintiff had withdrawn their claim; and the plaintiff

13  did so with the understanding that at the time that they come

14  before the Court, that's assuming they get a liability finding,

15  and seek an injunction, that the Court is willing to consider

16  the behavior on which they were basing those instructions,

17  which is the use of the table that cross-references the new

18  improved ATopTech terms with the commands -- if you want to say

19  "command set" for our purposes -- command set from PrimeTime

20  that by that point all of the ATopTech users had been using and

21  gotten accustomed to.

22      So -- and I said that I would consider it.  I'm not sure

23  that it's an infringing act; but if it is, I will consider it

24  in terms of any type of injunctive relief, including stop doing

25  A and stop doing B.

**CHARGING CONFERENCE**

1    And that's as far as I can say for now.  In other words,

2  with that understanding, since the plaintiff really wasn't

3  claiming at this point particular damages based on the table,

4  there wasn't really much for the jury to consider for damages

5  purposes there.  The table is still being raised by the

6  defendant on certain issues of the valuation of the copyrighted

7  work to the whole of the Aprisa product.

8    Okay.  So then we have *de minimis* copying and --

9         **MR. MARSH:**  Your Honor?

10         **THE COURT:**  Pardon me?

11         **MR. MARSH:**  I don't know if we were clear here about

12  Plaintiff's Proposed Instruction 17.16, which is on page --

13         **THE COURT:**  Oh, I don't know.  What page is it on?

14         **MR. MARSH:**  Page 8 of ECF 640.

15         **THE COURT:**  Okay.  It comes way before all those

16  earlier instructions numerically, and that's not 17.16.  Did

17  you say page 8 of your set?

18         **MR. MARSH:**  No.  Of the plaintiff's.

19         **THE COURT:**  Oh.  I'm sorry.  The plaintiff's on

20  page 8.

21    Oh, I didn't say how I'm giving it as modified, but I

22  didn't get there yet.

23    Okay.  So I intend to give plaintiff's 17.16 as modified

24  to take out the phrase -- no.  I'm sorry.  Am I giving it

25  modified or just giving it?  I think I'm just giving it.

1    The defendant wanted me to simply say the last sentence,

2  that ATopTech doesn't dispute it had access to the copying --

3  to copies of PrimeTime, and not to give any instruction, I

4  guess, in the form of 17.16.  Is that it?

5         **MR. MARSH:**  Your Honor, we discussed this this

6  morning.  I guess perhaps I not accurately recorded it.  My

7  understanding was this was out.  This was not disputed.

8         **THE COURT:**  Maybe it was out in full ultimately.

9         **MR. GARRETT:**  That's not correct.

10        **THE COURT:**  Okay.  Am I giving it as modified or just

11 giving it?

12        **MS. SCHWARTZ:**  As modified.

13        **MR. SILVEIRA:**  As modified.

14        **MR. GARRETT:**  The last sentence we had copied from

15 the defendant's instruction and Your Honor ordered that be

16 stricken, their concession of access.

17        **THE COURT:**  Okay.  Would the defendant rather have

18 that in or not?  I'm not sure why I took it out.

19        **MR. MARSH:**  Well, I think we would just rather not

20 have the instruction.  It's unclear why we need it --

21        **THE COURT:**  Okay.

22        **MR. MARSH:**  -- in this case.  We worry about

23 potential confusion with the jury.

24        **THE COURT:**  Okay.  I'm just going to leave it and

25 take out the last sentence because then you don't need the

1    instruction.

2         Okay.  It's not clear exactly what the defendant is

3    conceding they did see and do, and what have you.

4         Now that takes us to -- am I on page 15 of the defendant's

5    and 9 of the plaintiff's?  Where are we here?

6         And did the reporters want to have a changing of the

7    guard, is that why we had a different reporter came in?

8              **THE REPORTER:**  Yes, please.

9              **THE COURT:**  How long does that take you to do?

10             **THE REPORTER:**  Just a couple minutes.

11             **THE COURT:**  Do you want to take five or ten?  Let's

12   take five.  Catch your breath.  Come back.  Be ready to tell me

13   what pages we're on.

14        Okay.  Thank you.

15             (Recess taken from 5:02 p.m. to 5:10 p.m.)

16             **THE COURT:**  Have you regrouped here?

17             **MR. MARSH:**  Yes, Your Honor.

18             **THE COURT:**  Which instruction are we on for each of

19   you?  In other words, if I were flipping through, have I come

20   to the defendant's at page 15 and plaintiff's at page 9?  Is

21   that right?

22             **MR. GARRETT:**  Correct for plaintiffs.

23             **MS. SCHWARTZ:**  I think that's right.

24             **MR. MARSH:**  Correct, Your Honor.

25             **THE COURT:**  So I'll just go to defendant's at page

1   15.  De minimis copying.  I've refused that, because I have

2   ruled that this case, as a matter of law, cannot constitute de

3   minimis copying.  And is there -- do you have a motion on that?

4           **MR. GARRETT:**  (Nods.)

5           **THE CLERK:**  Oh.

6           **THE COURT:**  The plaintiff does.  And the plaintiff's

7   motion is granted.

8       So Miss Lucero has the face pages for all of the

9   post-trial -- post-evidence motions.  And so I just want to

10  make sure I covered them all when we get through.  If she's

11  missing some rulings, I'll put those on the record.

12      And then on the plaintiff's side they have an

13  instruction -- the special instruction on substantial

14  similarity.  That's refused, in light of my ruling as to

15  virtually identical.  And, of course, the plaintiff objects as

16  noted.  Then the defendant has an instruction on the statute of

17  limitations.  And I am refusing this instruction, and granting

18  plaintiff's Rule 50 motion on the statute-of-limitations

19  defense --

20          **THE CLERK:**  Okay.

21          **THE COURT:**  -- for the reason that the Court finds

22  that the defendant has failed to show that the plaintiff knew

23  or should have known of the infringing conduct before they

24  actually conducted the review of materials that they were given

25  access to, which is after the -- well, it's well within the

1    three years before the plaintiff filed a lawsuit.  So that

2    defense -- the Court -- over the defendant's objection, has

3    been removed from the case.

4         The plaintiff's instruction under 17.20, vicarious

5    infringement -- have I ruled?  Well, that's withdrawn, because

6    the plaintiff isn't relying, for the reasons stated.

7         And likewise with contributory infringement, 17.21, if I

8    didn't say that directly earlier.

9         Then we have -- wait one minute.  I've already commented,

10   but if I haven't said it formally.  The plaintiff's 17.18

11   fair-use instruction is refused, in favor of giving the

12   defendant's, as modified.

13        Then 17.22.  Each side has an instruction on that.  I'm

14   refusing the plaintiff's in favor of giving the defendant's, as

15   modified.  And the modification is to add the word "actual"

16   before the word "damages" at line 5 and a half.

17        I think the plaintiff actually wanted me to modify the

18   defendant's to put "actual" in, but I'm not positive about

19   that.  Does anybody remember at this point how we got to

20   "actual"?

21            MR. MARSH:  That was my recollection, Your Honor.

22            THE COURT:  It was to distinguish between the

23   defendant's profits and the plaintiff's lost savings or lost

24   profits.  And, just to put it succinctly, as the Court

25   understands that issue, the plaintiff is seeking lost profits

**CHARGING CONFERENCE**

on the sales the plaintiff says it would have made, if ATopTech
hadn't made a sale of Aprisa.  To the extent the plaintiff is
not arguing that the defendant made a sale of Aprisa that the
plaintiff would have made, the plaintiff is seeking the
defendant's profit on those sales.

    And then they have two different calculations from their
expert; one taking a more conservative view as to which sales
the plaintiff would have made, absent Aprisa; and has then put
the leftovers from that into the group that would --

    Wait a minute.  Where did I start on that?  I'm sorry.

        **MR. MITTELSTAEDT:**  For which we get infringer's
profits.

        **THE COURT:**  Right.  Yes.  Okay.  Thank you.

    All right.  So anyway, I'm giving the -- does anybody want
to say anything more about 17.22?

     Then we have defendant's 17.22A, which is essentially a
special instruction that the defendant is seeking under *Sunset
Lamp*.  I am refusing that instruction in favor of the
plaintiff's 17.23, as modified.

    Now, what happened there is that the definition of what
would be a cognizable relationship between infringement and
harm -- the definition of it is being taken by the defendant
from a Southern District of New~York case.  I felt it would be
preferable to use a pattern instruction, if one were available,
preferably from the Ninth Circuit; but they don't have one on

1 causation that would be in any way applicable here.

2      The plaintiff used an instruction from -- let's see --

3 from the state pattern instructions.  And so I think we're

4 using plaintiff's 17.23 modified, first of all, to say *A*

5 *plaintiff is entitled to recover actual damages caused by a*

6 *defendant's infringement.  In this case, actual damages are*

7 *measured by Synopsys' lost profits, which is the amount of*

8 *profits, if any, Synopsys would have earned, absent ATopTech's*

9 *infringement.*  Then that instruction was modified, actually, to

10 lead into an instruction that the plaintiff then created using

11 the California civil jury instructions; and in particular

12 Instruction 430.

13      I believe the order in which we're going to proceed is

14 that I give 17.23, which I just read.  Then we have the

15 infringer's profits.  And Synopsys requested 17.24, as did the

16 defendant, on refusing the defendant's in favor of plaintiff's

17 17.24; but I think we're modifying that -- aren't we? -- as

18 modified, which I haven't described yet.

19      All right.  Were you going to say anything before I

20 launched into the modification?

21      **MR. CALLAGY:**  Yes, Your Honor.  Just for the record,

22 the defendants object to the use of CACI instruction.  As

23 stated off the record this morning, we believe that the

24 language from the case relied upon by Synopsys is the

25 appropriate one -- the appropriate language here:  "Necessary,

1   direct, immediate," et cetera; that that is consistent with

2   504(b) and the Ninth Circuit's own authorities in *Polar Bear*,

3   as well as *Mackie versus Rieser*, one of the cases we cited in

4   our brief concerning our motion for judgment as a matter of law

5   on IC Compiler lost profits.  I just wanted to make that clear

6   for our record.

7           **THE COURT:**  Okay.  And it was already clear, because

8   you're not getting your instruction, so you're assumed to want

9   yours, and not to want what the plaintiff proposed; but what

10  I'm not clear on is whether the plaintiff is satisfied with the

11  instruction that is now called "17.23A," or not.

12          **MR. SILVEIRA:**  Yeah, we are.  We are satisfied with

13  what you're --

14          **THE COURT:**  Okay.  Then what I'm doing with 17.24,

15  infringer's profits, is to add the word "deductible expenses,"

16  where the word "expenses" came up a couple of times in the

17  first and the second paragraph; and the second time in the

18  fourth paragraph.

19      The language added to the second paragraph also is as

20  follows at the end:  *In calculating gross revenue, ATopTech's*

21  *losses in any given years may not be offset against its profits*

22  *in any other year*.

23      -- and that there will also be, in addition, in the fourth

24  paragraph, aside from the word "deductible," the second --

25  there's a sentence added before the last sentence to read:  *In*

1  *this case, evidence of ATopTech's general and administrative*

2  *expenses in 2009 to 2014 and it's legal expenses in 2015 may*

3  *not be counted as part of ATopTech's deductible expenses.*

4       Now, that brings into play a number of issues concerning

5  damages.

6       The plaintiff has, I believe, a Rule 50 motion that the

7  defendant should get any kind of instruction on their own

8  expenses being deductible from their profits, because they

9  didn't prove them up adequately.  That motion has been denied

10  in part and, I guess, granted in part, which I would then

11  describe.

12       All right.  The defendant is relying on certain financial

13  statements that were admitted by stipulation, without the need

14  of a foundational witness.  They did not call their expert, as

15  the plaintiff points out.  Plaintiff also pointed out that in

16  one of those exhibits, instead of simply labeling broad

17  categories of expenses without the individual components

18  thereof, the defendant actually listed all the expenses and

19  then you gave them some general headings at the top of the

20  page.  Under the general heading of "General and

21  Administrative," they included legal fees.

22       The parties then discussed whether legal fees could be

23  recoverable.  And, having read the authorities cited by the

24  plaintiff, the Court was satisfied that legal fees are not

25  categorically barred, but have to be shown to be connected with

1  either the production or sale of the alleged infringing

2  material.

3       In this case we do know there were legal fees, because the

4  case had been pending since 2013, and I don't believe Arnold &

5  Porter is a charitable institution.  This isn't directly in

6  front of the jury, but there is this concession of legal fees

7  in a very large bill in 2015.

8       And to a certain extent, it's objected to by everybody,

9  because the defendant wants to be able to recover everything

10 that's shown as an expense in those exhibits.  And the

11 plaintiff wants the defendant to recover none of the expenses

12 shown in those exhibits.

13      The Court has determined that the expenses that were

14 itemized that arguably, then, in any given year would have made

15 up the categories that are generally listed in the earlier

16 years would be recoverable, given that there's only one product

17 that the defendant makes, and that the nature of the expenses

18 would be legitimate, with the exception of the legal fees,

19 which they haven't in any way tied to this particular case.

20 And so we don't know --

21      And to the extent that we have some speculation that in

22 2015, all or at least a big chunk of that large bill was

23 attributable to defending the instant case, the Court didn't

24 feel that that would be a proper deduction because, in effect,

25 then the defendant would be asking the plaintiff to pay the

1    defendant's legal fees, and the plaintiff, itself, can't even

2    get those in this case if they win.  And it doesn't even -- it

3    didn't seem to be appropriate for a number of reasons.

4         Other legal fees, whether they go to maintaining a lease

5    on premises or even possibly defending against somebody else's

6    infringement action, might be recoverable, but not --

7         We can't tell how much any of the earlier bills, other

8    than the ones in 2013 and forward that started to look pretty

9    large, and were probably due to this litigation -- we can't

10   tell if the other years actually included legal fees; but

11   because of the way this is set up, they certainly could have.

12   And the defendant has the burden in this case of showing that

13   the expenses are recoverable.

14        So the Court is finding, first of all, that legal fees are

15   out, that any category that has legal fees is out, and that I'm

16   not simply starting with 2013, because there could be other

17   legal fees that were included in the years between 2009 and

18   2013.

19        So the defendant also had a back-up position, even if the

20   Court was going to take these fees out, that they should start

21   with 2013 when this case started; but I've found, for the

22   reasons stated, that we should go back to 2009.

23        So that gave rise to all these modifications which I've

24   read into the record as to deductible expenses, and to whether

25   you can carry a loss over.  The Court found that the plaintiff

**CHARGING CONFERENCE**

1   is entitled to the defendant's profits.  To the extent they

2   didn't make a profit, then the plaintiff doesn't recover

3   anything in that regard; but the defendant doesn't get to

4   reduce those profits by a loss that they sustained at some

5   point.

6        So if anyone wants to add anything further -- a lot of

7   this is fleshed out in the briefing.  So, as I say, the

8   plaintiff's motion is granted in part and denied in part.  And

9   I don't know if we have anything else to say on that.

10       Okay.  Then I'm up to -- on the plaintiff's side what

11  we're going to call "17.23A," because it's not 17.23, which is

12  to take that instruction, which originally was called "17.23,"

13  and give it, as modified, to remove the first paragraph -- not

14  first paragraph -- first sentence, and to just use this as a

15  definition of a causal relationship.  And we are using the word

16  "causal relationship" for the defendant's own profits; and we

17  are using "caused by" in 17.23 for the plaintiff's lost

18  profits.  So the word "cause" is now showing in both.

19       And then I'm giving what is essentially 430 out of the

20  California instructions:  *A causal relationship exists when a*

21  *defendant's infringing conduct is a substantial factor in*

22  *causing a plaintiff's harm*.  And then the rest reads as that

23  instruction is going to read.  This wasn't part of their

24  original set.  It was added.

25            **MR. GARRETT:**  And, Your Honor, we brought this to

1  court this morning, and have not filed it, out of an abundance

2  of caution.  It might be worthwhile to read the rest, so it's

3  in the record somewhere.

4       THE COURT:  All right.  The instruction continues on:

5  *A substantial factor in causing harm is a factor that a*

6  *reasonable person would consider to have contributed to the*

7  *harm.  It must be more than a remote or trivial factor.  It*

8  *does not have to be the only cause of the harm.  Conduct is not*

9  *a substantial factor in causing harm if the same harm would*

10 *have occurred without that conduct.*

11     Now, the defendant cited only for their causation

12 instruction to -- wait a minute now.  The defendant's causation

13 instruction is number -- where is it?  Sorry.

14     MR. CALLAGY:  That was 17.22A.

15     THE COURT:  Right.  17.22A was based solely on --

16 let's see -- *Sunset Lamp* and -- just one moment -- and

17 Second Circuit authority.  And so the Court decided to rely on

18 as close as we could find to home, which was California.

19     MR. CALLAGY:  Not to be a broken record, just also

20 the Ninth Circuit authority we cited in our JMOL brief.

21     THE COURT:  What are you relying on?  And I'll look

22 at that, just to make sure.

23     MR. CALLAGY:  The *Polar Bear Productions* case.

24     THE COURT:  One second.  Okay.  First of all, I've

25 got to find your brief.  This is your -- which brief?

1          **MR. CALLAGY:**  This is the brief in support of our

2   motions for judgment as a matter of law filed last night.

3          **THE COURT:**  Okay.  One minute.

4       That was the two-page brief?

5          **MR. CALLAGY:**  The two-page filing was just the motion

6   paper.  That was a substantive brief.

7          **THE COURT:**  I'm trying to find where that is.

8          **MR. CALLAGY:**  Document Number 660.

9          **THE COURT:**  Okay.  Wait a minute.  Yes, I have that.

10      Now that motion -- just to go back for a moment, what page

11  are you on, just so that we're clear on this?

12         **MR. CALLAGY:**  Of that brief?  It's page 5.

13         **THE COURT:**  Okay.  One minute.  All right.  And where

14  are you talking here about causation?

15         **MR. CALLAGY:**  That -- it would be on page 6, lines 2

16  through 10.

17         **THE COURT:**  Well, that's what I was asking.  Okay.

18         **MR. CALLAGY:**  Yeah.

19         **THE COURT:**  So just a minute.

20      Well, you don't cite the particular language you used

21  about this direct immediate.  Did they use "direct immediate"

22  in *Polar Bear*?

23         **MR. CALLAGY:**  That's not in *Polar Bear*.  That is from

24  the *Sunset Lamp* case.  That is cited later in the brief.

25         **THE COURT:**  Right.  In other words, knob is disputing

1   that a causal connection needs to be made, and that the

2   defendant has argued that the plaintiff didn't make it as to

3   IC Compiler; didn't make it for breach of contract; for

4   GoldTime, but I didn't go back.  I have to be honest.  Getting

5   these things, you know, at the last minute, I didn't go back

6   and read *Polar Bear*.  I think I have it, but I didn't go back

7   and read it, because you didn't cite it for the particular

8   language that you wanted.

9        And everybody agrees there's got to be some cognizable

10  causal connection; but if they didn't use that language, and

11  *Sunset Lamp* that came out of the Second Circuit did, I just

12  felt it was better to use an instruction that was more local.

13           **MR. GARRETT:**  And, Your Honor, we did look at *Polar*

14  *Bear* last night.  And where we were relying was the pin cite

15  708, where they say the causation --

16           **THE COURT:**  Keep your voice up.

17           **MR. GARRETT:**  Oh, I'm sorry.

18       The Ninth Circuit says the causation requirement of 504(b)

19  action -- this requirement is akin to tort principles of

20  causation and damages.  So we felt, therefore, we should look

21  at tort principles.

22           **THE COURT:**  Yeah.  That's a good point.  And I think

23  you cited that earlier -- I mean, that concept earlier when we

24  were off the record.  So thank you for just adding that.  So it

25  wasn't just, you know, the home-team kind of idea, in a sense

1  of -- if they say it in California, it's better than New York.

2  We did have this other point.

3      Okay.  So now I lost track of where we were.  So have we

4  gotten up to -- somebody want to tell me where you think we

5  are?  We just finished the defendant's 17.22 and 17.22A.

6          MR. GARRETT:  The plaintiffs, I believe, are at

7  17.25.  Statutory damages.  It should be easy.

8          THE COURT:  Right.  Okay.  And I've already -- I

9  think I already said I refused the defendant's 17.24 in favor

10  of the plaintiff's modified.

11      All right.  17.25.  Getting up to that, the plaintiff has

12  withdrawn 17.25, because they are not claiming statutory

13  damages.  They've elected not to pursue them.  As result, the

14  defendant withdrew their version, as well.

15      Then in 17.26, for the same reasons, both sides withdrew

16  their instructions; and likewise, 17.27.

17      We are now up to the state-law claims; in particular,

18  breach of contract.  We no longer have breach of the implied

19  covenant of good faith and fair dealing, for the reasons

20  stated.  The Court had found that there was no -- there was

21  insufficient evidence.  And the defendant -- I'm sorry.  The

22  plaintiff, in any event, has withdrawn that claim.

23      So now we're looking at breach of contract.  There's an

24  introductory instruction.  I'm not clear if I refused the

25  defendant's instruction under 300 of the California pattern

1   instructions in favor of plaintiff's version, or if the

2   defendant actually withdrew their instruction in light of the

3   fact I was giving the plaintiff's instruction modified.

4       What happened here is that the defendant was not happy

5   with the fact that the plaintiff had their whole position

6   essentially laid out in instruction -- I mean, in

7   Instruction 300.  And they were left with just saying, "We deny

8   it" in one line.

9       So I felt that we did not need to have the Court

10  cataloging the plaintiff's evidence in support of breach, and

11  that we should simply use the first -- I think I'm taking the

12  first sentence of that instruction, and bringing it over to

13  start Instruction 303, so that it's a more neutral paragraph.

14  So the new 303 would read, "Synopsys claims that Synopsys and

15  ATopTech entered into a contract called a 'Connections Program

16  License Agreement,' or 'the CPLA' for short, and that ATopTech

17  breached that agreement."

18      We would then go over to 303 --

19      Well, that would be the start.

20      And then we would list the elements in 303, with some

21  slight changes to track more carefully 303, and also to make

22  clear that we are talking here about actual damages, and not

23  nominal.  So the word "actual" was added to the instruction at

24  line 4 to read, "to recover actual damages."

25      And then, instead of the Court just telling the jury that

**CHARGING CONFERENCE**

1    "Synopsys must prove that:" it now would read "Synopsys must

2    prove all of the following:"  That was to satisfy the

3    defendant's concern that the jurors might not understand that

4    all of these elements had to be proved.  And I believe the

5    actual pattern instruction does say all of the following, and

6    then started every single one of the numbered items with the

7    word "that," which the parties and the Court agreed really

8    doesn't need to be said.

9        So the rest of the instruction tracks until you get down

10   to Item 5.  And the Court felt it was important, again, to have

11   a word "cause" there, so that the jurors could hearken back to

12   the causation instruction.  And so it now would read, "Synopsys

13   sustained harm caused by ATopTech's breach of contract," as

14   opposed to "Synopsys was harmed by ATopTech's breach of

15   contract."

16       Now, let me just find out.  Is the plaintiff satisfied --

17   well, I'm going to assume the plaintiff would have liked to

18   have laid out their whole case in 300, but that they'll accept

19   the modification as second best in that regard.

20       And the defendant -- what's your position at this point?

21   Did you withdraw 300, in light of what I'm doing with it?  And

22   then I'll refuse your 303 in light of what I did with the

23   plaintiff's?

24           **MR. CALLAGY:**  I think that's right, Your Honor.

25           **THE COURT:**  Okay.  Fair enough.

CHARGING CONFERENCE
2189

1    So then we come to a defendant's instruction called

2  "reverse engineering."And I think that's been withdrawn.  Is

3  that right, or not?

4         **MR. CALLAGY:**  Yes, Your Honor.

5         **THE COURT:**  Okay.  Then I have the plaintiff's

6  instruction under 327:  Assignment not contested.

7    The defendant originally didn't object, then seemed to

8  have some concerns.  I'm going to give it, as modified, to

9  soften it up a little bit.  And so it now would read, "Although

10 Synopsys was not a party to the original CPLA contract,

11 Synopsys may bring a claim for breach of contract because its

12 predecessor, Extreme DA, entered into the CPLA with ATopTech,

13 and transferred the rights under the CPLA to Synopsys."

14   And then the last sentence is stricken.  Okay.

15   I may have to make a quick call before I can come back

16 out, but let me see if I can just get a couple of these done.

17   I'm giving plaintiff's 352.  And I think it's the same as

18 the defendant's.  If there's any small change, then I'm giving

19 the plaintiff's.  Otherwise, I'm just giving everybody's.

20   Then Synopsys has an instruction on nominal damages.  The

21 defendant had initially argued that a party has to show actual

22 damage in order to have a viable cause of auction for breach of

23 contract.  I'm finding, given the authorities submitted by the

24 plaintiff, that they can recover nominal damages.  And even

25 though they haven't shown any harm, which is a little strange.

1  And that's why we said in an earlier instruction that they have

2  to show harm for actual damages.  And I will give nominal over

3  whatever objection still remains.

4       Okay.  Then we have to get to the Verdict Form.

5       I'm -- that could take a while.

6            MR. CALLAGY:  Your Honor, just a housekeeping matter.

7  I think there was the *scènes à faire* and merger instructions

8  requested by the defendant.  And I believe the Court --

9            THE COURT:  All right.  Where are they?  Because I

10  went through every one of these.

11            MR. CALLAGY:  They were a separate filing.  I think

12  that's the source of the --

13            THE COURT:  Well, any instructions requested by the

14  defendant on *scènes à faire* or merger are refused, for the

15  reason that the Court finds that those concepts are wrapped

16  into the issue of copyrightability, which the Court has

17  determined, as a matter of law, with respect to those elements

18  that the Court is allowing to go forward to the jury.

19       Okay.  Now we have the Verdict Form, and what else?

20            MR. CALLAGY:  Also to memorialize some of the other

21  rulings on the motions.

22            THE COURT:  Right.  Ms. Lucero, would you look at

23  your list, and tell me what's left of those that don't have a

24  ruling on them?

25            THE CLERK:  Just this one.

 1  (Whereupon a document was tendered to the court.)

 2       THE COURT:  She's says -- quote, unquote -- "just

 3  this one," handing me defendant ATopTech Inc.'s motion for

 4  judgment as a matter of law.

 5       And to just go over the parts for a moment, in case --

 6  okay.  Denied.  Okay.  I'm denying this breach of contract --

 7  as to breach of contract.

 8       Denying as moot breach of the covenant of good faith and

 9  fair dealing.

10       Denied as to copyright infringement of -- copyright

11  infringement.  No.  That was granted.

12       MR. CALLAGY:  That's granted.

13       THE COURT:  Okay.  So hang on.  So the ruling is

14  going to be granted in part and denied in part.  And I'll just

15  run through quickly.

16       Then I've already said denied as to breach of contract.

17       Denying as moot, because the claim was withdrawn with

18  respect to breach of the covenant.

19       Granted as to Synopsys' claim for copyright infringement

20  of GoldTime.

21       Plaintiff is not pursuing it by introducing evidence.  The

22  defendant is concerned maybe at a later date they could come

23  back if the Court doesn't rule on this.

24       With respect to PrimeTime output formats -- that was

25  denied.

```
 1        Statutory damages is -- I don't know.  Is that denied as
 2   moot, or granted?
 3        MS. SCHWARTZ:  I believe denied as moot, since we
 4   have elected not to pursue --
 5        THE COURT:  Okay.  So that's denied as moot.
 6        And lost profits from IC Compiler is denied.
 7        And vicarious and contributory -- are those -- that would
 8   be denied as moot?
 9        And those are the rulings.  So granted in part, and denied
10   in part.
11        And, Ms. Lucero, I'll hand this back to you, so you can --
12        THE CLERK:  Okay.
13        THE COURT:  Now, if anybody knows of any other post
14   evidentiary motions that are out there, I need to rule on those
15   if I haven't.
16        Let me ask this.  Okay.  If each side is deemed to prefer
17   the Verdict Form in the form they first submitted it -- and
18   let's say that's deemed -- what we have left is a verdict form
19   that the Court felt would work.  And no one has said it
20   provides a misstatement of the law, at least, under the laws
21   the Court has founded in the case; in other words, what issues
22   are in; what issues aren't.
23        Under those circumstances, do we have to put this Verdict
24   Form on the record, and all of its many details?
25        MR. MARSH:  Your Honor, for defendants, I think we
```

**CHARGING CONFERENCE**

1  would be fine working that out with the plaintiff.  I think we

2  could do that without putting it on the record, in other words.

3          **THE COURT:**  All right.  In other words, we have

4  worked through it.  And everybody likes their, you know,

5  version that they submitted best, but when the Court wasn't

6  prepared to give either one of those or use either one of them

7  -- and I do want to make clear that the plaintiff -- I don't

8  know.  Did you actually file your most recent version?  Do you

9  want to do that at some point?

10          **MS. SCHWARTZ:**  We would like to do so, Your Honor.

11  We did not.  We can do that.

12          **THE COURT:**  Okay.  I think you should, because it's

13  deemed to supplant your earlier version.

14      And again, nobody is considered to have given up a legal

15  argument by proposing a form of instruction once the Court has

16  ruled against that original legal argument, or including an

17  issue in a verdict form if the Court has said that the Court is

18  going to include that.  So at that point, it's just trying to

19  deal with whatever the Court has ruled.

20      I think that we've gone through.  If counsel, when you put

21  this together, one or the other or both of you sees that there

22  may be some glitch either in the instructions that go between

23  the questions, or any other problem that hasn't been called to

24  the Court's attention, please bring that up first thing

25  tomorrow morning.  We can always modify it.  This case is not

1  going to the jury in two seconds after I arrive tomorrow, or

2  even after the jury arrives.

3      Now, just in case anyone's ever reading this on review,

4  it's now 10 to 6:00.  And we're all still here.  And we got

5  here very early.  And we had a similar day on Friday.  And it's

6  really taken a couple of days not so much because of the way

7  the instructions were put together, but because of all of the

8  underlying issues that came up, and came to the fore at the

9  end.

10     Does anyone want to say anything further before we break

11  until 8:30 tomorrow morning?

12         MR. MITTELSTAEDT:  I just want to ask the Court:

13  What's Your Honor's protocol when the jury is out, when it's

14  deliberating?

15         THE COURT:  In what way?

16         MR. MITTELSTAEDT:  In terms of how short notice

17  counsel have to be available.

18         THE COURT:  Okay.  Well, first of all, everyone

19  doesn't have to be here, but someone who is capable of dealing

20  with any questions the jury might have has to be here.  Someone

21  with final authority to say:  This is how I want you to, you

22  know, answer that question, or whatever issue comes up.

23     But that person can't go wandering around the world or go

24  back to their office.  All right?  They have to stay within

25  hailing distance.  And if you've got a cell number, and if

CHARGING CONFERENCE

1  somebody wanted to stretch their legs, walking around the

2  building, you know, just so as you can get back in again and

3  get up here, that's what we care about.

4       Otherwise, you should hang out in the attorneys' lounge.

5  You can decide how many people have to do that.

6       Yeah.  That's the protocol.  We simply can't wait until

7  somebody travels here from anywhere else.

8            **MR. MITTELSTAEDT:**  Understood.

9            **THE COURT:**  Okay.  Anything further?  Hearing

10  nothing, I'll see you tomorrow at 8:30.  Thank you for your

11  help today.

12  (At 5:49 p.m. the proceedings were adjourned.)

13                        ---oOo---

1

2

3                       **CERTIFICATE OF REPORTER**

4           I certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7  DATE:   Monday, March 7, 2016

8

9

10

11  _____

12           Jo Ann Bryce, CSR No. 3321, RMR, CRR
                  U.S. Court Reporter

13

14

15

16  _____

17           Lydia Zinn, CSR No. 9223, FCRR
                  U.S. Court Reporter

18

19

20

21

22

23

24

25