1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7   SYNOPSYS, INC.,                           Case No.  13-cv-02965-MMC   (DMR)

              Plaintiff,

8

9       v.                                    **ORDER RE: ATOPTECH'S MOTIONS
                                              TO COMPEL SYNOPSYS TO
10  ATOPTECH, INC,                            PRODUCE SOURCE CODE**

              Defendant.                      Re: Dkt. Nos. 779, 780
11

12          ATopTech has filed two somewhat overlapping discovery letter briefs seeking to compel

13  production of Synopsys' source code.  ATopTech moves to compel pursuant to the disclosures

14  required by Patent Local Rules 3-2(b) and 3-2(e), [Docket No. 780 (Patent L.R. Motion to Compel

15  "PLR MTC")], as well as in response to its requests for production of documents ("RFPs").

16  [Docket No. 779 ("RFP MTC")].  The court has determined that these matters are suitable for

17  resolution without oral argument.  Civil L.R. 7-1(b).

18  I.      **ATOPTECH'S MOTION TO COMPEL PRODUCTION OF SOURCE CODE
            UNDER PATENT LOCAL RULES 3-2(E) AND 3-2(B)**
19
20          Synopsys has produced some source code.  PLR MTC at 1.  ATopTech contends that

21  Synopsys' production is insufficient under Patent Local Rules 3-2(e) and 3-2(b).

22          A.      **Patent Local Rule 3-2(e)**

23          Under Patent Local Rule 3-2(e), if a party claiming patent infringement identifies

24  instrumentalities pursuant to Patent Local Rule 3-1(g), it shall produce or make available for

25  inspection and copying "documents sufficient to show the operation of any aspects or elements of

26  such instrumentalities the patent claimant relies upon as embodying any asserted claims."  Patent

27  L.R. 3-2(e).

28          In its Rule 3-1(g) disclosures, Synopsys identified the following products and versions as

United States District Court
Northern District of California

practicing the claimed inventions:[1]

- Blast and Talus[2] as practicing at least each of claims 1, 17, 21, 26 and 40 of the '941 Patent.[3]

- Design Compiler (Metro Release to the latest release), PrimeTime (Orient Release to the latest release), and IC Compiler products as practicing at least each of the claims 1-8 of the '127 Patent.

PLR MTC, Ex. A [Docket No. 780-1] at 6-7.

ATopTech's dispute appears to relate to Synopsys's production of source code of Design Compiler, PrimeTime, and IC Compiler in relation to the '127 patent.  PLR MTC at 2 (citing Ex. B [Docket No. 780-2] at 5).  Synopsys has produced source code for the earliest and most recent versions of Design Compiler (1998.02 and 2015.06); for five versions of PrimeTime (1998.02, 1998.08, 2002.03, 2002.09, and 2015.06);[4] and for three versions for IC Compiler (2007.12, 2011.09, and 2015.06).  PLR MTC at 4; Ex. B at 5.

Synopsys has refused to produce source code for the other versions of Design Compiler, PrimeTime and IC Compiler that it identified under Patent Local Rule 3-1(g) and that it specifically listed in its response to Interrogatory No. 1.  PLR MTC, Ex. A at 6-7; Ex. B at 5.  Nor has it stipulated that the versions it has produced are representative of the other versions that it has identified as practicing claims of the '941 and '127 patents.  PLR MTC at 2 at n.6; Ex. B.

---

[1] On August 15, 2016, the court entered the parties' stipulation of partial dismissal of Synopsys' claims of infringement of the '348 patent.  Order of Partial Dismissal [Docket No. 839].  Therefore, the court does not discuss disclosures or arguments related to the '348 patent.

[2] The Blast program was later re-named Talus, and the parties refer to the product as Blast/Talus in their letters.  *See* RFP MTC at 3.  The court will do the same.

[3] ATopTech does not contend that Synopsys' production for Blast/Talus is insufficient.  PLR MTC at 2, 4; Ex. B [Docket No. 780-2] at 5 (indicating that the 2007, 2010, 2013 versions of Blast/Talus have been produced).

[4] The court notes a slight discrepancy in the parties' positions.  Synopsys contends that it has produced the earliest as well as the most recent versions of PrimeTime; however, ATopTech's highlighting in Exhibit B to the PLR MTC indicates the Synopsys has provided source code for version 2015.06, which is the version prior to the most recent version.  *Compare* PLR MTC at 4 ("Synopsys produced the earliest versions of . . . PrimeTime and [its] most recent versions.") *with* Ex. B. at 5.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    This aspect of ATopTech's motion is granted as follows.  Synopsys shall either produce

2    source code sufficient to show the operation of any aspects or elements of each version of the

3    products identified in its 3-1(g) disclosures and interrogatory response that it relies upon as

4    embodying the asserted claims, or it shall stipulate that the source code it has produced is

5    representative of the other non-produced versions of the products.

6    **B.      Patent Local Rule 3-2(b)**

7    Patent Local Rule 3-2(b) requires a party claiming patent infringement to produce or make

8    available for inspection and copying "[a]ll documents evidencing the conception, reduction to

9    practice, design, and development of each claimed invention, which were created on or before the

10   date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-

11   1(f), whichever is earlier."  Patent L.R. 3-2(b).

12   Pursuant to Rule 3-2(b), Synopsys produced documents and source code for Design

13   Compiler version 1998.02 (Metro) and PrimeTime version 1998.02 (Metro), and states that it

14   "lacks knowledge of any further documents that evidence the conception, reduction to practice,

15   design, and development of the claimed inventions."  PLR MTC at 4.  The court understands this

16   as a representation by Synopsys that it has no responsive source code or other documents to

17   disclose under Rule 3-2(b) for Blast, Talus or other versions of Design Compiler and Prime Time.[5]

18   Rule 3-2(b) obviously cannot require the disclosure of documents that do not exist.

19   ATopTech simply contends that "Synopsys has not produced source code for all of the

20   relevant versions of Design Compiler and PrimeTime, Blast, or Talus in existence at the time of

21   and immediately before the priority dates of the asserted patents."  *Id.* at 2.  It does not explain

22   how Synopsys's production is incomplete or why it believes that Synopsys may possess other

23   versions that "evidenc[e] the conception, reduction to practice, design, and development of each

24   claimed invention." *Id.*  As to ATopTech's request that the court "compel Synopsys to produce the

25   1998-99 versions of PrimeTime," (PLR MTC at 3), ATopTech has not explained why Rule 3-2(b)

26   _____

27   [5] Synopsys contends that it "has made clear that the additional product versions that ATopTech seeks to compel do not practice the claimed inventions, and that Synopsys is not relying on those
28   product versions as evidence that its products practice the claims."  PLR MTC at 4.

1   requires its production.

2           ATopTech has failed to explain the deficiencies in Synopsys's production pursuant to Rule

3   3-2(b).  This aspect of ATopTech's motion is therefore denied.

4   **II.     ATOPTECH'S MOTION TO COMPEL PRODUCTION OF SOURCE CODE IN
            RESPONSE TO RFPS**

5           ATopTech also moves to compel Synopsys to produce source code in response to its RFPs.

6           ATopTech contends that "Synopsys has not provided any source code versions that pre-

7   date the critical prior art dates under 35 U.S.C. §102(b),[6] even though ATopTech specifically

8   requested those versions and pointed out to Synopsys that they were responsive to RFPs 31, 32."[7]

9   _____

10  [6] 35 U.S.C. section 102(b) provides:

11  **(1) Disclosures made 1 year or less before the effective filing date of the claimed invention.**--
    A disclosure made 1 year or less before the effective filing date of a claimed invention shall not be

12  prior art to the claimed invention under subsection (a)(1) if--
            **(A)** the disclosure was made by the inventor or joint inventor or by another who obtained

13          the subject matter disclosed directly or indirectly from the inventor or a joint inventor; or
            **(B)** the subject matter disclosed had, before such disclosure, been publicly disclosed by the

14          inventor or a joint inventor or another who obtained the subject matter disclosed directly or
            indirectly from the inventor or a joint inventor.

15  **(2) Disclosures appearing in applications and patents.**--A disclosure shall not be prior art to a

16  claimed invention under subsection (a)(2) if—
            **(A)** the subject matter disclosed was obtained directly or indirectly from the inventor or a

17          joint inventor;
            **(B)** the subject matter disclosed had, before such subject matter was effectively filed under

18          subsection (a)(2), been publicly disclosed by the inventor or a joint inventor or another
            who obtained the subject matter disclosed directly or indirectly from the inventor or a joint

19          inventor; or
            **(C)** the subject matter disclosed and the claimed invention, not later than the effective

20          filing date of the claimed invention, were owned by the same person or subject to an
            obligation of assignment to the same person.

21  35 U.S.C. § 102(b).

22

23  Thus, "the 'critical date' is one year before the application for the patent is filed."  *Synopsys, Inc.
    v. Mentor Graphics Corp.*, No. C 12-6467 MMC, 2015 WL 4365494, at *4 n.2 (N.D. Cal. July 16,

24  2015) (citing *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 67 (1998) (noting date one year before

25  application for patent "constitutes the critical date for purposes of the on-sale bar of 35 U.S.C. §
    102(b)")).

26  [7] ATopTech's RFP No. 31 requests "Source Code for all versions of the Synopsys Software."

27  RFP MTC, Ex. A [Docket No. 79-1] at 24.  RFP No. 32 requests "All documents which provide
    the entire source code for all versions of Synopsys Software since January 1, 1997 to the present,

28  including but not limited to all source files, library files, header files, project and make files, and
    source files for the routines that are called out in the header files, and which are sufficient to allow

United States District Court
Northern District of California

RFP MTC at 1.

ATopTech specifically seeks to compel Synopsys to produce source code for PrimeTime and Design Compiler that predates the '127 critical date, for Blast/Talus prior to the '941 critical date, and for IC Wizard, Calypso, Dolphin and Sonar prior to the '967 critical date. RFP MTC at 2-3. ATopTech contends that such material is relevant to its invalidity arguments, because "source code files Synopsys selected and produced to support its claims that PrimeTime and Design Compiler practice the '127 patent's asserted claims indicate that those files and their functionality date back to well before the critical date for the '127 patent." *Id.* at 2 (n.2 trial transcript and press release indicating release dates). ATopTech makes the same argument with respect to Blast/Talus and IC Wizard. *Id.* at 3 (noting that the Section 102(b) critical date for the '941 patent is April 28, 1998 and that the earliest version of source code that Synopsys has produced for Blast/Talus is from 2007; arguing that IC Wizard was included in the '967 provisional patent application and offered for sale, shipped, and had customer testimonials prior to the '967 critical date).[8]

Synopsys counters that it has "already produced 'the earliest version[s]' of source code upon which [it] is relying under Patent L.R. 3-2," as well as "the version that immediately precedes [the]earliest version[s]." PLR MTC at 5. This argument amounts to a sidestep. Synopsys's Rule 3-2 productions flow from Synopsys's arguments supporting validity of its

---

the compilation of a functioning copy of each version of each product made available to the public." *Id.* at 25.

[8] ATopTech seeks to compel source code for IC Wizard, Calypso, Dolphin and Sonar prior to the '967 critical date and points out that Synopsys has provided no source code for these products. RFP MTC at 3. In support of its argument for relevance to its invalidity arguments, ATopTech states that the '967 patent's provisional application included a product brochure for a completed IC Wizard product and that news sources indicate that IC Wizard was offered for sale, shipped, and had customer testimonials prior to the critical date for the '967 patent. *Id.* at 3.

Although ATopTech contends that Calypso, Dolphin, and Sonar "are all related and based on or incorporate IC Wizard," ATopTech's arguments regarding prior art and relevancy to its invalidity contentions only specifically relate to IC Wizard. *Id.* ATopTech's characterization that these other products are related to, based on, or incorporate IC Wizard does not provide an argument for the relevancy or need for source code for Calypso, Dolphin, and Sonar, separate from or in addition to the need for source code for IC Wizard preceding the '967 patent critical date. ATopTech fails to meet the burden for a motion to compel source for Calypso, Dolphin, and Sonar, and the court denies this request.

United States District Court
Northern District of California

1    patents.  This is not congruent with the documents that ATopTech seeks to support its invalidity

2    arguments.

3              It appears that Synopsys has only produced Design Compiler version 1998.02 (Metro) and

4    PrimeTime version 1998.02 (Metro).  PLR MTC at 4.  Source code regarding the invention date,

5    especially prior to the critical date, is relevant to ATopTech's invalidity claims.  *See eDirect*

6    *Publ'g, Inc. v. LiveCareer, Ltd.*, No. C 14-80125 WHA, 2014 WL 2527401, at *4 (N.D. Cal. June

7    4, 2014) (granting a motion to compel source code that could be invalidating prior art; noting that

8    "patentees should not stonewall in the discovery of prior art that invalidates asserted patents").

9              ATopTech should thus be allowed discovery of some source code prior to the critical dates

10   of the respective patents in order to support its invalidity arguments.  However, Synopsys rightly

11   points out that ATopTech's RFPs, which sought every version of source code for every product

12   released by Synopsys for at least the last nineteen years, are overly broad and burdensome.  PLR

13   MTC at 4.  *See, e.g., Straight Path IP Grp., Inc. v. Blackberry Ltd.*, No. C 14-80150 WHA, 2014

14   WL 3401723, at *5 (N.D. Cal. July 8, 2014) (denying motion to compel "overbroad and

15   burdensome" requests for production that sought, inter alia, "[a]ll source code" from a third party).

16             Therefore, the court grants ATopTech's motion to compel, but only in part.  Synopsys

17   shall produce the source code for versions of PrimeTime and Design Compiler that immediately

18   predate the '127 critical date,  the source code for the version of Blast/Talus that immediately

19   precedes the '941 Section 102(b) critical date, and source code for IC Wizard for the version that

20   immediately precede the '967 critical date.[9]  ATopTech's motion to compel is otherwise denied.

21             **IT IS SO ORDERED.**

22   Dated: September 16, 2016

23   _____

24             Donna M. Ryu
        United States Magistrate Judge

25

26   _____

27   [9] ATopTech appears to concede that these versions are the most relevant.  RFP MTC at 2 ("The
     requested source code is directly relevant to a number of issues in the case . . . but its relevance to
     invalidity is significant and illustrates the necessity of an order compelling Synopsys to produce

28   responsive source code, especially versions immediately preceding the relevant Section 102(b)
     critical dates.").