UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ATOPTECH, INC,<br><br>    Defendant. | Case No. 13-cv-02965-MMC  (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER RE REQUESTS FOR ADMISSIONS**<br><br>Re: Dkt. No. 809 |

Defendant ATopTech, Inc. seeks an order deeming Requests for Admissions ("RFA") Nos. 4, 13-15, 17-19, and 26-325 admitted, or in the alternative, an order compelling Plaintiff Synopsys, Inc. to admit or deny them. Synopsys counters that its responses to RFA Nos. 4, 13-15, and 17-19 are proper, and that it does not have to answer RFA Nos. 26-325 because they exceed the 25-RFA limit agreed to by the parties. The court finds that this matter is appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the parties' arguments and for the reasons set forth below, ATopTech's motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 36 authorizes a party to serve "a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). RFAs "are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case, and second, to narrow the issues by eliminating those that can be." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). The goal of RFAs is to "eliminate from the trial matters as to which there is no genuine dispute." *People of the State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955). For this reason, "requests for admissions are not principally discovery devices." *Safeco of*

*Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998).  "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  Fed. R. Civ. P. 36(a)(4). "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  *Id*.  "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  *Id*.  "The grounds for objecting to a request must be stated.  A party must not object solely on the ground that the request presents a genuine issue for trial."  Fed. R. Civ. P. 36(a)(5).  "The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).

## II.     DISCUSSION

### A.     RFA Nos. 4, 13-15, and 17-19

ATopTech contends that Synopsys failed to properly admit or deny these RFAs as required by Federal Rule of Civil Procedure 36(a)(4).   Synopsys asserts that its responses were proper.

#### 1.     RFA Nos. 4 and 17

RFA No. 4 asks Synopsys to admit that PrimeTime relies on the same commands, design database, timing algorithms, delay calculation, and libraries as Design Compiler.   RFA No. 17 asks Synopsys to admit that PrimeTime incorporates the same commands, design database, timing algorithms, delay calculation, and libraries as Design Compiler.

Synopsys objects that these RFAs are vague and ambiguous because (1) the RFAs do not specify a version of PrimeTime or Design Compiler; (2) the phrase "relies on" is unclear; and (3) the RFAs ask about a number of different elements and as such, are overly broad and unclear as to their scope.  Subject to those objections, Synopsys "admits that certain, but not all, commands and functionality are present in both Design Compiler and PrimeTime."  [Docket No. 809-1 at 5, 10].

Synopsys's responses are evasive.  To the extent that PrimeTime relies on or incorporates

2

1  some of the same commands, design database, timing algorithms, delay calculation and libraries
2  as Design Compiler, Synopsys can address any perceived lack of clarity by defining the scope of
3  those terms, and then it can admit the RFAs as to those shared elements, and deny them as to
4  others.  Additionally, Synopsys does not explain why ATopTech must specify the version of
5  PrimeTime and Design Compiler in this question; indeed, its responses imply that all versions of
6  PrimeTime share the same basic elements.  With respect to these two RFAs, as well as the other
7  RFAs discussed below, to the extent that there are relevant differences between the versions of
8  PrimeTime and Design Compiler for purposes of a particular RFA, Synopsys should set forth the
9  specifics regarding those differences in its responses.  The court grants ATopTech's motion as to
10 these RFAs and orders Synopsys to supplement its responses.

### 2. **RFA Nos. 13 and 14**

RFA No. 13 asks Synopsys to admit that PrimeTime was available for purchase at least as of May 19, 1997.  RFA No. 14 asks Synopsys to admit that PrimeTime was offered for sale at least as of May 19, 1997.

Synopsys objects that the RFAs are vague and ambiguous because they do not specify a version of PrimeTime, and the phrases "available for purchase" and "offered for sale" are unclear.  Subject to those objections, Synopsys "admits that it announced the 'official release' of PrimeTime in a press release issued on or about May 19, 1997."  [Docket No. 809-1 at 9].

Again, Synopsys's responses are evasive.  The phrases "available for purchase" and "offered for sale" are reasonably clear.  *See U.S. ex. rel Englund v. Los Angeles County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) (explaining "when the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request" (citation and internal quotation marks omitted)).  As Synopsys knows that PrimeTime was "officially released" on or about May 19, 1997, Synopsys should be able to admit or deny whether it was available for purchase or offered for sale at least as of that date.   The court grants ATopTech's motion as to these RFAs and orders Synopsys to supplement its responses.

### 3.  **RFA No. 15**

RFA No. 15 asks Synopsys to admit that PrimeTime included the static timing analyzer

3

incorporated into Design Compiler.

Synopsys objects that the RFA is vague and ambiguous because it does not specify a version of PrimeTime and Design Compiler. Synopsys also objects that the term "the static timing analyzer incorporated into Design Compiler" is vague and ambiguous as to which specific source code it references. Subject to those objections, Synopsys "admits that certain, but not all, commands and functionality are present in both Design Compiler and PrimeTime." [Docket No. 809-1 at 9].

Synopsys's response is evasive and answers an entirely different question. If the meaning of the term "the static timing analyzer incorporated into Design Compiler" depends on specific source code, Synopsys should explain its objection its response and answer the request as best as it can. The court grants ATopTech's motion as to this RFA and orders Synopsys to supplement its response.

### 4. RFA Nos. 18 and 19

RFA No. 18 asks Synopsys to admit that Synopsys combined technology from Design Compiler into PrimeTime. RFA No. 19 asks Synopsys to admit that Synopsys was motivated to combine technology from Design Compiler into PrimeTime.

Synopsys objects that the RFAs are vague and ambiguous because they do not specify a version of PrimeTime and Design Compiler, nor do they specify what "technology" was "combined." Synopsys further objects that the term "motivated to combine technology" seeks a legal conclusion. Subject to those objections, Synopsys "admits that certain, but not all, commands and functionality are present in both Design Compiler and PrimeTime." [Docket No. 809-1 at 10-11]

The court overrules Synopsys' objection that the phrase "motivated to combine technology" calls for a legal conclusion. To the extent the RFA calls for an application of law to fact, it is proper. *See* Fed. R. Civ. P. 36(a)(1) (Rule 36 authorizes a party to serve "a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to . . . (A) facts, the application of law to fact, or opinions about either."); *see also Watterson v. Garfield Beach CVS LLC*, No. 14-cv-0721-HSG (DMR), 2015 WL 2156857, at *4 (N.D. Cal. May 7, 2015)

4

1  (finding that RFA asking plaintiff to admit or deny whether the WellRewards program are
2  "wellness programs" as that term is defined under 26 C.F.R. § 54.9802–1(f)(1) were proper as
3  applications of law to facts). However, these RFAs are vague and ambiguous because they are
4  more open-ended. They do not specify any particular technology, which renders the phrase
5  "motivated to combine technology" unacceptably unclear. Moreover, the thrust of these RFAs
6  appears to call for information that is narrative in nature; as such, these RFAs would have been
7  more appropriately addressed through interrogatories, or as deposition questions. The court denies
8  ATopTech's motion as to these RFAs.

### B.     RFA Nos. 26-325

ATopTech has propounded 325 RFAs. Rule 36 does not set a numerical limit on the RFAs a party may propound, but the parties may agree to limits. ATopTech argues that there is no limit on number of RFAs in the patent phase of this case and that Rule 36 controls. The court disagrees. In their September 12, 2014 Joint Case Management Statement, the parties agreed to certain discovery limits, including a 25 RFA limit. [Docket No. 172 at 9:11-13]. The parties also agreed to "meet and confer on limits for *additional* interrogatories and requests for admissions relating to Synopsys' patent claims" (emphasis added). [Docket No. 172 at 9:17-19]. As such, the parties specifically agreed to meet and confer on whether they needed additional RFAs for the patent phase. After meeting and conferring, the parties agreed to 25 additional interrogatories and additional hours for fact and expert depositions for the patent portion of the case, without expressing agreement on more RFAs. [Docket No. 291 at 2]. The parties' conduct also demonstrates the existence of a 25 RFA limit. Understanding that the parties had not agreed to additional RFAs for the patent phase, Synopsys did not serve any RFAs in the patent phase, as it had served all 25 RFAs in the copyright phase. [Docket No. 809 at 3, 4, n.4]. This court finds that the parties originally agreed to a 25 RFA limit and did not later alter that agreement. Therefore, ATopTech may not propound RFAs in excess of 25.

//
//
//

### III. CONCLUSION

In conclusion, ATopTech's motion is **GRANTED IN PART** and **DENIED IN PART**.  Within 14 days, Synopsys shall amend their RFA responses in a manner consistent with this order.

**IT IS SO ORDERED.**

Dated: November 15, 2016



Donna M. Ryu
United States Magistrate Judge